IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 25-19605-LSS |
| | ) | (Chapter 11) |
| 5410 30TH STREET DC LLC | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

**MOTION TO CONVERT CASE TO CHAPTER 7**

Come now IBI Falcon US LLC ("IBI Falcon") and IBI SBL Investment LP, by and through undersigned counsel, pursuant to Section 1112 of Title 11 of the United States Code, and moves to convert the above-captioned chapter 11 case of 5410 30th Street DC LLC (the "Debtor") to chapter 7, and in support thereof states as follows:

**I.   Introduction**

More than 100 days into this case, the Debtor has taken no concrete or discernable steps toward reorganizing. In a bankruptcy built around a single asset, the Debtor has not engaged a realtor to market or sell the subject property (the "Property"), has not sought leave of court to engage an auctioneer, has not sought leave of court to enter into an agreement with a stalking horse buyer, and has seemingly done little more than file a spurious motion accusing IBI Falcon of violating the automatic stay. Meanwhile, interest has continued to accrue on the claims of secured creditors, real estate taxes have remained unpaid (thereby eroding the claims of secured creditors from above) and, presumably, the Debtor has amassed legal fees that now present an administrative burden upon an already-insolvent estate.

While this motion formally seeks conversion pursuant to the allowances of Section 1112(b)(4)(A) of Title 11 of the United States Code—the Debtor's estate is suffering a continuing loss or diminution, and there is no reasonable likelihood of reorganization—a larger point merits

1

emphasis: the Debtor is loitering in chapter 11 at the expense of creditors, and doing so in a manner that seemingly prizes inaction over action and hostility over cooperation. It is increasingly difficult to credit this as a good faith bankruptcy filing, as opposed to a longshot frolic aimed at frustrating creditors whilst stalling for time. And it is thusly increasingly evident, too, that this is a case that should be entrusted to the stewardship of a chapter 7 trustee, who may tend to the sensible and prompt marketing of the Property and relieve creditors of the Debtor's intransigence.

II.     **Argument: Conversion is Appropriate**

The mold of this case is not unusual: an entity with a single real estate asset, burdened by myriad liens, has sought chapter 11 relief and promptly proceeded to take no discernable steps toward actually reorganizing. Protected by the automatic stay, the Debtor has not seen fit to make payments to secured creditors in an effort to arrest the accrual of interest, nor has the Debtor bothered to pay taxes, nor has the Debtor so much as sought leave of court to engage the services of a realtor. The Debtor has, rather, sat mostly dormant. Such is not the design of chapter 11 and, unsurprisingly, such is also grounds for conversion to chapter 7.

Title 11 of the United States Code (the "Bankruptcy Code") provides that matters under chapter 11 may be converted or dismissed, after notice and a hearing, for "cause." 11 U.S.C. § 1112(b)(1). The same statutory provision then goes on to non-exhaustively delineate what may constitute such cause, including, *inter alia*, "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4).

The accrual of unpaid, post-petition interest obligations to secured creditors may constitute a "continuing loss," just as may the accrual of post-petition professional fees that are not offset by a debtor's post-petition income. *See, e.g.*, *Morreale v. 2011-SIP-1 CRE/CADC Venture, LLC*, 533 B.R. 320, 324 (D. Colo. 2015) ("Fully evaluating the present condition of a bankruptcy estate

surely involves looking at accruing liabilities, even if the exact amount of those liabilities has yet to be determined. The Court sees no relevance to the fact that the Bankruptcy Court here only looked at one significant accruing liability (attorneys' fees)."); *In re Plymouth Oil Co., L.L.C.*, 2014 Bankr. LEXIS 3278, at *6-7 (Bankr. N.D. Iowa Aug. 1, 2014) ("The Court finds that there is substantial and continuing loss or diminution of Debtor's estate. Debtor no longer has a plant or mill to do business and Debtor's monthly reports show no income. Additionally, Debtor operating account has decreased to a mere $65 as of the February operating report. Meanwhile, attorney's fees and bankruptcy fees continue to increase. Simply put, Debtor has no income or hope of income from operations and liabilities continue to grow. This shows a 'substantial and continuing loss or diminution of the estate.'") (citing *In re ARS Analytical, LLC*, 433 B.R. 848, 862 (Bankr. D.N.M. 2010)).

As more pithily observed, just a few years ago, by the United States Court of Appeals for the Sixth Circuit: "No asset growth plus ongoing costs equals continuing loss." *Cal. Palms Addiction Recovery Campus, Inc. v. Vara (In re Cal. Palms Addiction Recovery Campus, Inc.)*, 87 F.4th 734, 740 (6th Cir. 2023) (citing *Loop Corp. v. U.S. Tr.*, 379 F.3d 511, 516 (8th Cir. 2004); 7 Collier on Bankruptcy ¶ 1112.04 (16th ed. 2023)).

Here, the Debtor has steadfastly reported having a single real estate asset (the Property) worth $5 million, having pre-petition secured obligations of $5 million, having pre-petition priority debt of $30,000.00, and having pre-petition unsecured debt of $563,000.00. *See* October Operating Report, DE #45, at p. 2; November Operating Report, DE #72, at p. 2; December Operating Report, DE #91, at p. 2.[1] The Debtor's bank account has a balance of $50.00. *See* DE #91-1.

---

[1] It bears notation that while the Debtor has thrice indicated, on operating reports, a pre-petition secured debt obligation of $5 million, the Debtor's schedules only put this number at $3,651,531.91. It is altogether unclear from where the additional $1.35 million is derived.

3

Meanwhile, the claim of IBI Falcon—which the Debtor has posited to be fully secured, based on the seemingly-generous value assigned to the Property—is accruing interest at the rate of $1,481.33 per day. *See* Payoff Statement, attached hereto as Exhibit A. What was a claim of $2,676,531.91 on the petition date, *id.*, has now accrued $158,502.31 in post-petition interest during the course of the 107 days the Debtor has remained in chapter 11. It stands to reason similar interest has accrued in favor of other secured creditors; while far-from-certain based on the paucity of the Debtor's filings in this case, there is a rather distinct possibility the lien of IBI Falcon is not alone in growing through the accrual of post-petition interest.

In fact, regardless of the posture of other secured claims, it is clear the claim of IBI Falcon is being eroded from above by simple virtue of the fact that the Debtor has not paid the real estate taxes that came due post-petition and that continue to accrue. *See* Real Property Tax Bill, attached hereto as Exhibit B; *In re Cong. 819, LLC*, 2013 Bankr. LEXIS 1237, at *28 (Bankr. D.D.C. Mar. 28, 2013) ("Because tax liens are a superior lien on real property, the consequence is that PNC's lien position is being eroded from above by the accrual of real estate taxes on the property if there is no equity in the property."). What was a $34,357.28 obligation if paid by November 9, 2025 has now increased to an at-least $35,324.56 obligation. And while roughly $1,000.00 may not appear overly material in the prism of a case with several million dollars in claims, the sum is nonetheless some 2,000% of the balance of the Debtor's checking account.

The unpaid taxes, unfortunately, present yet another concern: the balance due is "based on the Taxable Assessment of $1,092,380.00." *Id.* And while there exists a notorious incongruity between actual real estate values and those pronounced by tax assessors, the Debtor's $5 million

4

self-valuation in this case—the sole thing suggesting there ought not be an immediate motion for stay relief—is almost five times the tax-assessed value of the asset.[2]

At bottom, the Debtor has an asset that is not producing any income whatsoever, burdened by claims for which interest and fees are accruing post-petition. This is the precise variety of "continuing loss" referenced in Section 1112. And, given the Debtor's failure to so much as seek leave to employ a realtor post-petition, coupled with the Debtor's otherwise-dormant approach to chapter 11, there is assuredly, too, "the absence of a reasonable likelihood of reorganization." The Debtor's own operating reports put the estate upside down. Moreover, with the full value of the asset securing claims of creditors, it is altogether unclear—even at a $5 million valuation—how the Debtor would raise funds to pay administrative expenses, including the fees of counsel.

### III.  Conclusion

WHEREFORE, IBI Falcon respectfully prays this Honorable Court (i) convert this case to a proceeding under chapter 7;[3] and (ii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

---

[2] To be sure, IBI Falcon *does* believe the Property is worth more than $1.09 million—the tax-assessed value is almost assuredly low. But, equally, IBI Falcon seriously doubts the Debtor's value of $5 million. As noted on IBI Falcon's proof of claim, it is believed the Property's value is closer to $3,655,000.00. *See* Claims Register #2-1 at p. 2.

[3] Absent a bar order, there would be *de minimis* utility in seeing this case dismissed, for fear the Debtor would simply seek to engage the mechanics of chapter 22. Accordingly, IBI Falcon favors conversion over dismissal and strongly suspects one or more secured creditors would be content to negotiate a carve-out with a chapter 7 trustee.

                                                                                                          Respectfully submitted,

Dated: January 29, 2026                      By: /s/ Maurice B. VerStandig
                                                                      Maurice B. VerStandig, Esq.
                                                                      Bar No. 18071
                                                                      The VerStandig Law Firm, LLC
                                                                      9812 Falls Road, #114-160
                                                                      Potomac, Maryland 20854
                                                                      Phone: (301) 444-4600
                                                                      Facsimile: (301) 444-4600
                                                                      mac@mbvesq.com
                                                                      *Counsel for IBI Falcon US LLC and*
                                                                      *IBI SBL Investment LP*

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on this 29th day of January, 2026, a copy of the foregoing was served electronically upon filing via the ECF system, with copies to:

- Deirdre Theresa Johnson     dtjesq@dtjohnsonlaw.com
- L. Jeanette Rice     Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- US Trustee - Greenbelt     USTPRegion04.GB.ECF@USDOJ.GOV

     I FURTHER CERTIFY that on this 29th day of January, 2026, a copy of the foregoing was also sent via US Mail, postage prepaid, to all parties on the mailing matrix attached hereto as Exhibit C.

                                                                      /s/ Maurice B. VerStandig
                                                                      Maurice B. VerStandig