**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND**
*Greenbelt Division*

In re: 5410 30th Street DC, LLC

Case No.: 25 − 19605

Debtor

Chapter 11

AMENDED DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF LIQUIDATION
PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

Respectfully submitted,

Date: March 5, 2026

**/s/ Deirdre T. Johnson, Esq**

Deirdre T. Johnson, Esq
Bar No. MD14227
9701 Apollo Dr, Suite 301
Upper Marlboro, MD  20774
Phone: (301) 742-5385
dtjesq@dtjohnsonlaw.com
*Counsel for the Debtor*

TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 4

A. Introduction and Summary ............................................................................ 4

B. Disclaimer .................................................................................................... 5

II. BACKGROUND INFORMATION ...................................................................... 6

A. The Debtor's Businesses and Description of the Property….. ............................ 6

B. The IBI Falcon Debt ...................................................................................... 6

C. The Santorini Capital Debt ............................................................................ 6

III. EVENTS LEADING TO BANKRUPTCY ......................................................... 7

IV. THE BANKRUPTCY CASE ............................................................................ 7

A. The Bankruptcy Filing ................................................................................... 7

B. Continuation of the Business ......................................................................... 7

C. Professionals Retained .................................................................................. 8

D. Management ................................................................................................. 8

E. Significant Events ......................................................................................... 8

(1) Meeting of Creditors .................................................................................. 8

(2) Schedules and Statement of Financial Affairs .............................................. 8

F. Claims Asserted against the Estate ................................................................ 8

G. The Debtor's Assets and Liabilities ............................................................... 9

V. IMPLEMENTATION OF THE PLAN ................................................................. 9

A. Purpose of the Plan ...................................................................................... 9

B. Overview ...................................................................................................... 9

C. Operations ................................................................................................. 10

VI. TREATMENT OF CLAIMS UNDER THE PLAN ........................................... 10

VII. CLASSIFICATION OF CLAIMS .................................................................. 11

VIII. TREATMENT OF CLAIMS......................................................................... 11

IX. VOTING PROCEDURES AND REQUIREMENTS ........................................ 13

A. Vote Required for Acceptance by a Class ..................................................... 14

B. Classes Entitled to Vote ............................................................................... 14

C. Classes Not Entitled to Vote ........................................................................ 14

D. Voting Procedures ........................................................................................ 14

X. OTHER PLAN COMPONENTS .................................................................... 15

A. Distribution Procedures ................................................................................ 15

B. Treatment of Disputed Claims ...................................................................... 16

C. Conditions of Effectiveness of Plan .............................................................. 17

D. Effect of Confirmation .................................................................................. 18

E. Administrative Provisions ............................................................................. 20

XI. RISKS AND CONSIDERATIONS ............................................................... 22

A. Risk Factors .................................................................................................. 22

B. Bankruptcy Considerations ........................................................................... 22

XII. PLAN CONFIRMATION AND CONSUMMATION .................................. 23

A. Confirmation Hearing .................................................................................... 23

B. Plan Confirmation Requirements under the Bankruptcy Code ...................... 23

C. Best Interests Test ......................................................................................... 23

D. Section 1129(b) ............................................................................................. 24

XIII. ALTERNATIVE TO CONFIRMATION AND CONSUMMATION OF THE PLAN ... 25

A. Chapter 7 Liquidation ................................................................................... 25

XIV. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ............... 25

XV. RECOMMENDATION AND CONCLUSION .............................................. 26

CERTIFICATE OF SERVICE ............................................................................. 27

## TERMS OF CONSTRUCTION

Capitalized terms used and not otherwise defined in this Disclosure Statement shall have the meaning set forth in the Jointly Administered Plan of Liquidation Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Plan") of 5410 30th Street DC, LLC, a copy of which is attached as **Exhibit 1** hereto and is incorporated herein by reference. In the event a capitalized term is not defined therein, then it shall have the meaning given in the Bankruptcy Code or the

Bankruptcy Rules. In the event a capitalized term is not defined in the Plan, the Bankruptcy Code, or the Bankruptcy Rules, then it shall have the meaning such term has in ordinary usage, and if one or more meaning for such term exists in ordinary usage, then it shall have the meaning which is most consistent with the purposes of this Disclosure Statement, the Plan and the Bankruptcy Code. The terms of this Disclosure Statement shall not be construed against any Person but shall be given a reasonable construction, consistent with the purposes hereof and of the Plan and the Bankruptcy Code.

# I. INTRODUCTION

### A. Introduction and Summary

On October 14, 2025, Debtor 5410 30th Street DC, LLC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court. The Debtor is in possession of it's assets, and intends to continue to operate and manage their affairs as a debtor in possession pursuant to § 1184 of the Bankruptcy Code.

The Bankruptcy Code requires that the party proposing a Chapter 11 plan prepare and file with the Bankruptcy Court a document called a "disclosure statement." 11 U.S.C. § 1125. Under the Bankruptcy Code, the Debtor has the exclusive right to propose a plan of liquidation for the first 120 days after the Petition Date, which period may be extended by the Bankruptcy Court. Creditors will be asked to vote to approve the plan and confirmation of such plan will be subject to Bankruptcy Court approval. The Debtor prepared this Disclosure Statement in connection with solicitation of votes for acceptance of the Plan. This Disclosure Statement is intended to provide adequate information of a kind, and in sufficient detail, to enable the Debtor's Creditors to make an informed judgment about the Plan, including whether to accept or reject the Plan. As described more fully herein, the Debtor asserts that the Plan is in the best interests of all Creditors and the Estate. The Debtor urges the Holders of Impaired Claims entitled to vote to accept the Plan and to evidence such acceptance by properly voting and timely returning their Ballot.

To the extent that the information provided in this Disclosure Statement and the Plan (including any attached exhibits and Plan Supplements) are in conflict, the terms of the Plan (including any attached exhibits and Plan Supplements) will control. Creditors should refer only to this Disclosure Statement and the Plan to determine whether to vote to accept or reject the Plan. The Debtor asserts that approval of the Plan is indisputably in the best interests of the Debtor's Creditors. Creditors may request additional copies of this Disclosure Statement and/or any voluminous exhibits that are referenced but not attached from the Debtor's counsel at the following address:

Deirdre T. Johnson, Esq
9701 Apollo Dr, Suite 301
Upper Marlboro, MD  20774
dtjesq@dtjohnsonlaw.com

Pursuant to the Bankruptcy Code, only Creditors who actually vote on the Plan will be counted for purposes of determining whether the required number of acceptances have been obtained. Failure to deliver a properly completed Ballot by the Voting Deadline will result in an abstention; consequently, the vote will neither be counted as an acceptance nor rejection of the Plan.

**B. Disclaimer**

NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN.   PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, OTHER EXHIBITS, SUPPLEMENTS TO THE PLAN AND THIS DISCLOSURE STATEMENT. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME HEREAFTER. ALL CREDITORS SHOULD READ CAREFULLY AND CONSIDER FULLY THE "RISKS AND CONSIDERATION" SECTION OF THIS DISCLOSURE STATEMENT BEFORE VOTING FOR OR AGAINST THE PLAN. TO THE EXTENT OF ANY INCONSISTENCY BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLAN SHALL CONTROL.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS, OR ANY FUTURE ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT, LIABILITY, STIPULATION, ESTOPPEL, OR WAIVER. THIS DISCLOSURE STATEMENT SUMMARIZES CERTAIN PROVISIONS OF THE PLAN, STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE PLAN, EVENTS IN THE DEBTOR'S CHAPTER 11 CASES AND FINANCIAL INFORMATION. ALTHOUGH THE DEBTOR BELIEVES THAT THE PLAN AND RELATED SUMMARIES ARE FAIR AND ACCURATE, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS. FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTOR IN THEIR VARIOUS FILINGS IN THIS CHAPTER 11 CASE AND FROM OTHER PARTIES' FILINGS, EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED. ANY VALUE GIVEN AS TO ASSETS OF THE DEBTOR ARE BASED UPON AN ESTIMATION OF SUCH VALUE. ALTHOUGH THE DEBTOR HAS UNDERTAKEN REASONABLE AND DILIGENT EFFORTS TO PRESENT ACCURATE AND COMPLETE INFORMATION, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING THE FINANCIAL INFORMATION, IS COMPLETELY ACCURATE.   THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS BEING PROVIDED BY THE

DEBTOR AND NOT BY ITS COUNSEL, AND IS INCLUDED FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.

THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST THE DEBTOR. YOU ARE URGED TO CONSULT YOUR OWN COUNSEL AND FINANCIAL TAX ADVISORS ON ANY QUESTIONS OR CONCERNS RESPECTING TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS.

The Order approving this Disclosure Statement sets forth the deadlines, procedures and instructions for voting to accept or reject the Plan and for filing objections to confirmation of the Plan. For those who are entitled to vote, a Ballot is also enclosed. Voting instructions accompany each Ballot. Each Holder of a Claim entitled to vote on the Plan should read this Disclosure Statement and Plan, the Order approving this Disclosure Statement, and the instructions accompanying the Ballot in their entireties before voting on the Plan. CONSULTATION WITH COUNSEL IS ALSO RECOMMENDED.

## II. BACKGROUND INFORMATION

### A. The Debtor's Business and Description of the Property

5410 30th Street DC, LLC is a Maryland limited liability company formed on February 14, 2023, with its headquarters located in Bowie, Maryland. 5410 30th Street DC, LLC is engaged in the business of residential renovation and development. Zanetta Williams serves as the Sole 100% Member of 5410 30th Street DC, LLC.

5410 30th Street DC, LLC owns a sole business asset, the real property / residence located at 5631 Macarthur Blvd NW Washington, DC 20016.

### B. The IBI Falcon US LLC Debt

IBI Falcon US, LLC (hereinafter "IBI Falcon") is the Debtor's senior secured creditor. IBI Falcon has filed a Claim against the Debtor in the amount of $$2,676,531.91. This debt is listed as "Disputed: on the Debtor's Schedule D – Creditors Who Have Claims Secured by Property.

### C. The Santorini Capital, LLC Debt

Santorini Capital, LLC (hereinafter "Santorini Capital") is the Debtor's junior secured creditor. To date, Santorini Capital has not filed a Claim against the Debtor. However, Debtor listed Santorini Capital on Schedule D – Creditors Who Have Claims Secured by Property in the amount of $975,000.00.

### III. **EVENTS LEADING TO BANKRUPTCY**

The Debtor's bankruptcy filing was precipitated by lengthy debilitating disruptions in loan servicing and financing, including insufficient funding for renovation, the lender's repeated delays and failures in issuing required construction draws, and a significant gap in lender support during which the lender and its servicer were largely unreachable for approximately two to three months and loan servicing was effectively halted and consequently the debtor's projects were negatively impacted and forced into default. It was later discovered that Upright/Fund that Flip (the debtor's lender) had experienced a financial crisis where Upright/Fund that Flip had investor funds frozen due to the bankruptcy of their banking-as-a-service partner, Synapse Financial Technologies. In addition, for approximately one year, the lender failed to act on the Debtor's repeated efforts to cure and reinstate the loan. These events collectively forced the Debtor to suspend construction activities, imposed substantial financial strain on the Debtor's business, creating a cascading financial negative impact that adversely affected cash flow and the Debtor's ability to timely complete, stabilize, and market the Property and forced another property into foreclosure. The Debtor further determined that, the delayed reinstated and completion of the property caused an entrance of the completed project into market conditions that were different that what was initially planned. The market changed significantly in a year's time. The real estate market is and has been strained since the property was listed for sale. The Debtor determined that seeking to reorganize or liquidate its affairs through the Bankruptcy process will allow it to maintain and ultimately increase the enterprise value to the benefit of the Debtor, Creditors, and any other parties-in-interest.

### IV. **THE BANKRUPTCY CASE**

#### A. **The Bankruptcy Filing**

On October 14, 2025, Debtor 5410 30th Street DC, LLC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court. Subsequently, the Bankruptcy Court notified the parties that the meeting of creditors would take place on November 17, 2025, that the last day to file Proofs of Claim for all Creditors, except governmental units, is February 17, 2026, and that the last day to file Proofs of Claim for governmental units is April 13, 2026.

The Debtor, with the assistance of counsel and financial advisors, have determined in their business judgment that a sale of the sole real property asset will maximize the benefit to the Debtor's estate, creditors, and other parties in interest.

#### B. **Continuation of the Business**

After the Petition Date, the Debtor has continued to operate the Businesses as a debtor in possession under the Bankruptcy Code. Pursuant to the Bankruptcy Code, the Debtor is required to comply with certain statutory reporting requirements, including the filing of monthly operating reports. Upon completion of the Plan (attached as Exhibit 1), and filing of all outstanding tax returns, the Debtor shall not continue to exist as a limited liability company, and shall terminate such existence under applicable law.

7

### C.  Professionals Retained

In connection with the commencement of the Chapter 11 Case, the Debtor sought and obtained Bankruptcy Court approval for the retention of Deirdre T. Johnson, Esq. as their bankruptcy counsel. Zanetta Williams, the sole member of the Debtor LLC is a licensed real estate agent with Keller Williams Realty, and will effectuate the sale of the sole real property asset.

### D.  Management

At the filing of the Debtor's petition, and prior thereto, Zanetta Williams served as the LLC's sole member.  Ms. Williams will remain in this position through the duration of the Bankruptcy Case.

### E.  Significant Events

#### 1.  Meeting of Creditors

The meeting of creditors pursuant to Section 341 of the Bankruptcy Code was conducted on November 17, 2025 by the Office of the United States Trustee. The Debtor answered all appropriate inquiries for which they possessed information at that time, and thereafter provided all information requested of them to the Office of the United States Trustee.

#### 2.  Schedules and Statement of Financial Affairs

The Debtor filed their Statements of Financial Affairs and Schedules on October 29, 2025.

### F.  Claims Asserted against the Estate

The Debtor has undertaken a review of the Proofs of Claim filed to prepare a preliminary reconciliation of the filed Proofs of Claim with the Debtor's Schedules and their books and records with a view to eliminate duplicative or erroneous Claims and to ensure only valid Claims are ultimately Allowed.

Three (3) Proofs of Claim have been filed against the Debtor. Based on a review of the Proofs of Claim, no (0) Proofs of Claims are asserted as Priority Tax Claims; one (1) Proof of Claim totaling $2,676,531.91 is asserted as a Secured Claim; and two (2) Proofs of Claim are asserted as Unsecured Claims aggregating $541,287.90.

Administrative Expense Claims, other than Professional expenses, have been paid by the Debtor in the ordinary course. As of February 10, 2026, not including Professional expenses, the Debtor recorded administrative expenses in the approximate amount of $1,500.00, although the Debtor expects additional billing for Professional fees to be forthcoming. The Debtor estimates that, as of the Effective Date of the Plan, the Debtor will have $0 in unpaid administrative expenses, not including Professional expenses.

8

### G. The Debtor's Assets and Liabilities

#### 1. Asset – Real Property

As stated above, the Debtor owns a sole business asset, the real property / residence located at 5631 Macarthur Blvd NW Washington, DC 20016. The Debtor disputes the Claim filed by the senior secured creditor, IBI Falcon US, LLC.

#### 2. Liabilities

**a.    Administrative Expenses.** The Debtor has incurred and continues to incur liabilities for Professional fees and expenses in connection with this Chapter 11 Case. The Debtor estimates that, as of the Effective Date, they have been billed approximately $1,500.00 for fees and expenses of Professionals in this Chapter 11 Case, although the Debtor expects additional billing for Professional accrued fees to be forthcoming.

**b.    Secured Claims**

1. Secured Claim of IBI Falcon US, LLC. IBI Falcon US, LLC is the Debtor's senior secured creditor. IBI Falcon has filed a Claim against the Debtor in the amount of $XXX,XXX.XX. This debt is listed as "Disputed: on the Debtor's Schedule D – Creditors Who Have Claims Secured by Property.

2. Secured Claim of Santorini Capital, LLC. Santorini Capital, LLC is the Debtor's junior secured creditor. Santorini Capital has not yet filed a Claim against the Debtor.

**c. Priority Tax Claims.** The Debtor listed the District of Columbia Government Office of Tax and Revenue on Schedule E/F as a Creditor in the amount of $30,000.00 for real property taxes. Additional property tax assessments may be forthcoming. The District of Columbia Government Office of Tax and Revenue has not yet filed a Claim against the Debtor.

**d.    Unsecured Claims.** As of the Petition Date, the Debtor recorded a total of approximately $593,000.00 in Unsecured Claims. The Debtor has performed a preliminary claims reconciliation of (a) the Claims listed in the Debtor's Schedules, (b) the Proofs of Claims filed, and (c) Disputed Claims. Based on this analysis, the total of Unsecured Claims is in the amount of $1,046,287.90.

## V.    IMPLEMENTATION OF THE PLAN

### A. Purpose of the Plan.

The purpose of the Plan is to provide a means for the Debtor to complete the sale of the sole business asset, provide a meaningful Distribution to all Allowed Claims, and thereafter conduct an orderly winding down of the business.

### B. Overview

Upon confirmation of the Plan, the Debtor will implement the terms of the Plan, including selling the sole business asset and making Distributions to Holders of Allowed Claims as set forth in the Plan. The Plan provides that all Allowed Claims will be paid in order of their priority, and any sale of the Debtor's Real Property will be free and clear of all liens, claims and encumbrances pursuant to the Confirmation Order.

9

The Plan provides for payments to Holders of Allowed Claims. Payments made under the Plan on or after the Effective Date will be derived from the proceeds of the Sale of the Debtor's Real Property Asset. All Claims against the Debtor shall be classified and treated pursuant to the terms of the Plan. As noted more fully below, the Plan contains four (4) Classes of Claims.

Overall, the Plan provides that Holders of Allowed Administrative Expense Claims and Holders of Allowed Priority Tax Claims will be paid in full on the latest of (a) the Effective Date, (b) the tenth (10th) Business Day after the date upon which such Claim becomes an Allowed Claim, (c) the date upon which such Allowed Claim becomes due according to its terms, or (d) as otherwise ordered by a Final Order of the Bankruptcy Court.

### C. Operations

Subject to the provisions of the Plan, the Debtor shall be authorized to operate the business only to the extent required to sell the sole business asset free of any restrictions contained in the Bankruptcy Code or Bankruptcy Rules, and to wind down the business operations thereafter.

## VI. **TREATMENT OF CLAIMS UNDER THE PLAN**

As required by the Bankruptcy Code, this Plan places Claims into various Classes according to their right to priority. However, in accordance with the provisions of § 1123(a)(1) of the Bankruptcy Code, Administrative Claims, certain Priority Claims, and Priority Tax Claims are deemed "unclassified." These Claims are not considered impaired pursuant to §1129(a)(9)(A) or (C), and they do not vote on this Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Debtor has not placed these Claims in a Class. The treatment of these unclassified Claims is as provided below.

**6.1 Allowed Administrative Claims**. Each Holder of an Allowed Administrative Claim, subject to the General Administrative Claims Bar Date, shall be Paid in Cash in accordance with the priority of distribution set forth in § 507(a)(2) of the Bankruptcy Code, on the tenth (10th) Business Day after the sale of the Debtor's sole residential real property asset closes, or as otherwise ordered by a Final Order of the Bankruptcy Court. Any Holder of an Allowed Administrative Claim may agree to a different, but not better, treatment of its Claim, in which event the Debtor shall pay such Claim in accordance with such agreement. In the case of a Professional with an Allowed Administrative Claim, that Professional shall be paid first from any retainer held by such Professional, and as to a balance, if any, after application of the retainer, shall be paid from Cash.

**6.2 Allowed Priority Claims**. Each Holder of an Allowed Priority Claim shall be Paid in Cash in accordance with the priority of distribution set forth in § 507(a)(2), (a)(3), or (a)(8) of the Bankruptcy Code, on the tenth (10th) Business Day after the sale of the Debtor's sole residential real property asset closes, or as otherwise ordered by a Final Order of the Bankruptcy Court. Any Holder of an Allowed Priority Claim may agree to a different, but not better, treatment of its Claim, in which event the Debtor shall pay such Claim in accordance with such agreement.

**6.3 Priority Tax Claims**. Each Holder of an Allowed Priority Tax Claim shall receive under this Plan on account of such Claim, payments in Cash in accordance with §507(a)(8) as specified in § 1129(a)(9)(C) of the Bankruptcy Code commencing on the tenth (10th) Business Day after the sale of the Debtor's sole residential real property asset closes, or as soon as reasonably practicable after the date of a Final Order Allowing such Priority Tax Claim. Any

Holder of an Allowed Priority Tax Claim may agree to a different, but not better, treatment of its Claim, in which event the Debtor shall pay such Claim in accordance with such agreement.

      6.3.1 District of Columbia Government Office of Tax and Revenue. Claims made by the District of Columbia Government Office of Tax and Revenue, explicitly designated and, if Allowed as a "Priority" Claim, shall receive the "Priority Tax Claim" treatment as specified in this section. The District of Columbia Government Office of Tax and Revenue has not filed a Claim, however, the Debtor has listed them om Schedule E/F for real estate taxes in the amount of $30,000.00.

## VII. CLASSIFICATION OF CLAIMS

**7.1. General Overview**. As required by §§ 1122 and 1123, this Plan places Claims into various Classes according to their right to priority and other relative rights. A Claim is in a particular Class for purposes of voting on, and of receiving Distributions pursuant to the Plan only to the extent such Claim has not been paid, released, or otherwise settled prior to the Effective Date. Administrative Expense Claims and Priority Claims of the kinds specified in § 507(a)(2) and (a)(8) have not been classified and are excluded from the following classes in accordance with § 1123(a)(l).

**7.2. Designation of Classes**. This Plan provides for the establishment of the following Classes of Claims:

| CLASS | DESIGNATION | IMPAIRMENT | ENTITLED TO VOTE |
|-------|-------------|------------|------------------|
| 1 | Allowed Secured Claim of IBI Falcon | YES | YES |
| 2 | Allowed Secured Claim of Santorini Capital | YES | YES |
| 3 | Allowed Priority Unsecured Claims | YES | YES |
| 4 | Allowed General Unsecured Claims | YES | YES |
| 5 | Equity Interests | NO | NO |

**7.3. Classes Impaired and Entitled to Vote.** Classes 1 through 4 are Impaired and thus are entitled to vote on the Plan.

## VIII. TREATMENT OF CLAIMS

Allowed Claims shall be treated under this Plan in the manner set forth in this Article 8. The treatment of, and the consideration to be received by, Holders of Allowed Claims hereunder shall be in full and final satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims (of any nature whatsoever), including any Liens securing such Allowed Claims. All Allowed Claims will be paid in order of their priority, and any sale of the Debtor's Real Property will be free and clear of all liens, claims and encumbrances pursuant to the Confirmation Order.

**8.1. Class 1: Allowed Secured Claim of IBI Falcon**

      A. Treatment: To the extent that the Claim of IBI Falcon is an Allowed Claim, the Holder of the IBI Falcon Secured Claim shall receive payment in full of the undisputed portion of its Allowed Secured Claim, including principal, interest, Allowed attorneys' fees incurred prior to the Petition Date and during the Bankruptcy Case in enforcing its rights under the Loan Documents, and any other allowed charges required by the Loan Documents, through the date on

which the undisputed portion of the Allowed Claim is Paid in Full, on the later to occur of (i) as soon as practicable on or after the Closing Date, or (ii) the Effective Date. Any disputed amounts claimed by IBI Falcon shall be paid into escrow at Closing and released only upon agreement of the Debtor and IBI Falcon or upon Final Order of the Court. The Debtor anticipates paying IBI Falcon on its Allowed Secured Claim at Closing.

 B. <u>Lien Retention</u>: The Holder of the IBI Falcon Secured Claim shall release any lien on the Real Property Asset, with any such lien attaching to the proceeds of any sale. The Confirmation Order and any Sale Order shall provide that IBI Falcon is paid at Closing and that purchasers of Debtor's Property are purchasing the Property free and clear of any liens, claims and encumbrances.

 C. <u>Impairment</u>: Class 1 is Impaired by this Plan and, therefore, the Holder of the Claim in Class 1 is entitled to vote to accept or reject the Plan, subject to Section 9.C, below.

### 8.2. <u>Class 2: Allowed Secured Claim of Santorini Capital LLC</u>

 A. <u>Treatment</u>: To the extent that the Claim of Santorini Capital is an Allowed Claim not previously paid, the Holder of the Santorini Capital Secured Claim shall receive payment in full of its Allowed Secured Claim, including principal, interest, Allowed attorneys' fees incurred prior to the Petition Date and during the Bankruptcy Case in enforcing its rights under the Loan Documents, and any other allowed charges required by the Loan Documents, through the date on which the Allowed Claim is Paid in Full, on the later to occur of (i) as soon as practicable on or after the Closing Date, or (ii) the Effective Date. The Debtor anticipates paying Santorini Capital on its Allowed Secured Claim at Closing.

 B. <u>Lien Retention</u>: The Holder of the Santorini Capital Secured Claim shall release any lien on the Real Property Asset, with any such lien attaching to the proceeds of any sale. The Confirmation Order and any Sale Order shall provide that Santorini Capital is paid at Closing and that purchasers of Debtor's Property are purchasing the Property free and clear of any liens, claims and encumbrances.

 C. <u>Impairment</u>: Class 2 is Impaired by this Plan and, therefore, the Holder of the Claim in Class 1 is entitled to vote to accept or reject the Plan.

### 8.3. <u>Class 3: Allowed Priority Unsecured Claims</u>

 A. <u>Treatment</u>: After Class 1 and 2 Claims have been paid in full, Holders of Allowed Priority Unsecured Claims shall receive payments on their Allowed Priority Unsecured Claims in order of their priority. The Confirmation Order and any Sale Order(s) shall provide that purchasers are purchasing the Debtor's Property free and clear of any liens, claims and encumbrances.

 B. <u>Impairment</u>: Class 3 is Impaired by this Plan and, therefore, each Holder of a Claim in Class 3 is entitled to vote to accept or reject the Plan.

### 8.4. <u>Class 4: Allowed General Unsecured Claims</u>

 A. <u>Treatment</u>:  After payment in full of all Allowed Administrative Expenses (including, without limitation, professional fees, sale-related costs, commissions, and closing expenses), Allowed Priority Claims, and Allowed Secured Claims in accordance with this Plan, the Holder of each Allowed General Unsecured Claim shall receive a pro rata distribution, if any, from Net Sale Proceeds and/or other available estate funds remaining after such payments.

The Debtor's plan is funded solely through the sale of the Debtor's Real Property Asset. No distributions will be made from any other assets, operations, or sources of the debtor or its sole member.

No distribution shall be made on account of any General Unsecured Claim that is disputed, contingent, unliquidated, or unsupported by sufficient documentation unless and until such claim becomes an Allowed Claim by agreement or Final Order of the Court.

Any General Unsecured Claim for which a timely Proof of Claim is not filed in accordance with applicable Bankruptcy Rules and orders of the Court shall be deemed disallowed and shall not receive any distribution under this Plan.

No distribution shall be made on account of any General Unsecured Claim unless such claim constitutes an Allowed Claim supported by sufficient documentation in accordance with Bankruptcy Rule 3001 and applicable law.

The Debtor reserves all rights to object to any General Unsecured Claim, including on the grounds that such claim does not arise from, relate to, or benefit the Debtor's estate or the Property.

Distributions, if any, shall be made as soon as reasonably practicable following the closing of any sale of the Property and reconciliation of claims.

The Claims Register listing all General Unsecured Claims is attached to the Disclosure Statement as **Exhibit 2**.

B. Impairment: Class 4 is Impaired by this Plan and, therefore, each Holder of a Claim in Class 4 is entitled to vote to accept or reject the Plan.

**8.5. <u>Class 5: Equity Interests</u>**

A. <u>Treatment</u>: All equity interests in the Debtor shall be retained by the Debtor's Sole Member. To the extent any funds remain after payment in full of all Allowed Administrative Expenses, Allowed Priority Claims, and other Allowed Claims in accordance with this Plan, any remaining funds shall be distributed to the Debtor's Sole Member.

B. Impairment: Class 5 is unimpaired by this Plan and, therefore, each Holder of a Claim in Class 5 is not entitled to vote to accept or reject the Plan.

Accordingly if the sale of the property generates proceeds in excess of the amounts necessary to satisfy all Allowed Administrative, Priority, Secured and Unsecured Claims, such surplus proceeds will be distributed to the Debtor's sole member in accordance with the Plan.


## IX. VOTING PROCEDURES AND REQUIREMENTS

Only Impaired Classes of Claims are entitled to vote. If the Claim or Claims you hold are not in one of those Classes, you are not entitled to vote, and thus you will not receive a Ballot from the Debtor's counsel. Holders of Claims that are entitled to vote should read the Ballot provided by the Debtor's counsel and follow the accompanying instructions carefully.

**ANY QUESTIONS CONCERNING THE BALLOT OR ANY OTHER CONTENTS OF THE SOLICITATION PACKAGE SHOULD BE DIRECTED TO THE DEBTOR'S COUNSEL AT (301) 742-5385 OR BY EMAIL AT <u>DTJESQ@DTJOHNSONLAW.COM</u>.**

**A. <u>Vote Required for Acceptance by a Class</u>**

As a Holder of an Allowed Claim in a voting Class, your acceptance of the Plan is very important. At least one voting Class must vote to accept the Plan. If any voting Class votes to accept the Plan, the Debtor will attempt to invoke the "cramdown" provisions of the Bankruptcy Code with respect to Holders of any Claims in a Class that votes to reject the Plan.

A Class of Claims entitled to vote to accept or reject the Plan shall be deemed to accept the Plan if the Holders of Claims in such voting Class that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Claims that vote in such Class vote to  accept the Plan.

**B. <u>Classes Entitled to Vote</u>**

Pursuant to § 1126 of the Bankruptcy Code, each Impaired Class of Claims that will receive a Distribution pursuant to the Plan may vote separately to accept or reject the Plan. Each Holder of an Allowed Claim in such an Impaired Class as of the Voting Record Date shall receive a Ballot and may cast a vote to accept or reject the Plan.

**C. <u>Classes Not Entitled to Vote</u>**

The following Holders of Claims are not entitled to vote if, as of the Voting Record Date, the Claim (i) has been disallowed, (ii) is the subject of a pending objection, or (iii) was listed on the Debtor's Schedules as unliquidated, contingent or disputed and a Proof of Claim was not filed or was filed for an unliquidated, contingent or Disputed Claim, unless on or before the Voting Record Date the Bankruptcy Court enters a Final Order directing otherwise. However, if a Claim is disallowed in part, the Holder shall be entitled to vote the Allowed portion of the Claim.

**D. <u>Voting Procedures</u>**

**The preferred method of voting and communication is by email to dtjesq@dtjohnsonlaw.com.**

The Debtor's counsel will facilitate the solicitation and voting process, if any. If you have any questions regarding voting procedures, your eligibility to vote, to accept or reject the Plan, to object to the Plan, or if you need additional copies of documents included in the solicitation package, please contact the Debtor's counsel at the below mailing address, phone number, and email address:

Deirdre T. Johnson, Esquire
9701 Apollo Dr, Suite 301
Upper Marlboro, Maryland 20774
(301) 742-5385
dtjesq@dtjohnsonlaw.com

**BALLOTS CAST BY HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN MUST BE ACTUALLY RECEIVED BY THE DEBTOR'S COUNSEL AT THE ABOVE ADDRESS BY THE VOTING DEADLINE. THE DEBTOR RESERVES THE RIGHT TO DECIDE WHETHER OR NOT TO COUNT BALLOTS RECEIVED BY THE DEBTOR'S COUNSEL AFTER THE VOTING DEADLINE.**

If a Ballot is damaged or lost, you may contact the Debtor's counsel to request another Ballot. Any Ballot received by the Debtor's counsel which does not indicate an acceptance or rejection of the Plan will not be counted.

## X. OTHER PLAN COMPONENTS

### A. **Distribution Procedures**

Only Allowed Claims may receive Distributions under and in accordance with the Plan.

#### 1. Allocation of Distributions

Unless otherwise provided herein, Distributions to any Holder of an Allowed Claim shall be allocated first to the principal portion of any such Allowed Claim, and, only after the principal portion of any such Allowed Claim is satisfied in full, to any portion of such Allowed Claim comprising interest or other charges (but solely to the extent that such interest or other charges are an allowable portion of such Allowed Claim). All payments shall be made in accordance with the priorities established by the Bankruptcy Code.

#### 2. Delivery of Distributions and Undeliverable Distributions

Distributions to Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the Schedules filed with the Bankruptcy Court unless superseded by the address as set forth on the Proofs of Claim filed by such Holders or other writing notifying the Debtor of a change of address. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Debtor is notified of such Holder's then current address, at which time all missed Distributions shall be made to such Holder, without interest from the date of the first attempted Distribution. All Claims for undeliverable Distributions shall be made on or before sixty (60) days after the date such undeliverable Distribution was initially made.

#### 3. Time Bar for Check Payments

Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Debtor by the Holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the sixty (60) day period following the date of issuance of such check. After such date, all funds held on account of such voided check shall, in the discretion of the Debtor, be used to satisfy the costs of administering and fully consummating this Plan, to the extent such costs would otherwise be paid from available Cash, or become available Cash for Distribution in accordance with this Plan, and the Holder of any such Claims shall not be entitled to any other or further Distribution under this Plan on account of such Claim.

#### 4. Setoffs

The Debtor may, in accordance with § 553 of the Bankruptcy Code and applicable non-bankruptcy law, setoff against any Allowed Claim and the Distributions to be made pursuant to this Plan on account of such Claim (before any Distribution is made on account of such Claim), the claims, rights and causes of action of any nature that the Debtor may hold against the Holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the

allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claims, rights and causes of action that the Debtor may possess against such Holder. The Debtor shall have the exclusive right and authority to settle claims and recognize setoff rights.

### 5. Cure Non-Compliance

If any Party in Interest holding any Allowed Claim fails to receive a payment as provided under the Plan, or if any Party in Interest questions the Debtor's compliance with the Plan in any way, such party shall give the Debtor written notice thereof, and the Debtor may cure such non-compliance within sixty (60) days of such notice.

## B. Treatment of Disputed Claims

### 1. No Distribution Pending Allowance

Notwithstanding any other provision of the Plan, no payments shall be distributed under this Plan on account of any Disputed Claim unless and until such Claim becomes an Allowed Claim.

### 2. Resolution of Disputed Claims

Notwithstanding any other provision of this Plan to the contrary, after the Confirmation Date, unless otherwise ordered by the Bankruptcy Court after notice and a hearing, Parties in Interest shall have the right (except as to applications for allowances of compensation and reimbursement of expenses under §§ 330 and 503 of the Bankruptcy Code, and except as to any objections which have been filed prior to the Confirmation Date by any party) to make and file objections to Claims and shall serve a copy of each objection upon the Holder of the Claim to which the objection is made as soon as practicable, but in no event later than forty-five (45) days after the Confirmation Date. From and after the Confirmation Date, all objections shall be litigated to a Final Order except to the extent the Debtor elects to withdraw any such objection or the Debtor and the claimant elect to compromise, settle or otherwise resolve any such objection, in which event they may settle, compromise or otherwise resolve any Disputed Claim for an amount of $10,000.00 or more subject to approval of the Bankruptcy Court and for amounts of $9,999.99 or less without approval of the Bankruptcy Court.

### 3. Estimation

The Debtor may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to § 502(c) of the Bankruptcy Code regardless of whether the Debtor has previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during litigation concerning any objection to such Claim. In the event that the Bankruptcy Court estimates any Disputed Claim, the estimated amount may constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim. All of the aforementioned Claim objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. On and after the Confirmation Date, Claims which have been estimated subsequently may be compromised, settled, withdrawn or otherwise resolved subject to approval by the Bankruptcy Court as provided in this Plan.

16

#### 4. Reserve Accounts for Disputed Claims

On and after the Effective Date, the Debtor shall hold in the Disputed Claims Reserve funds in an aggregate amount sufficient to pay to each Holder of a Disputed Claim the amount that such Holder would have been entitled to receive under this Plan if such Claim had been an Allowed Claim on the Effective Date. Funds withheld and reserved for payments to Holders of Disputed Claims shall be held and deposited by the Debtor in one or more segregated reserve accounts, as determined by the Debtor, to be used to satisfy such Claims if and when such Disputed Claims become Allowed Claims.

#### 5. Investment of Disputed Claims Reserve

The Debtor shall be permitted, from time to time, in their sole discretion, to invest all or a portion of the funds in the Disputed Claims Reserve in savings accounts, United States Treasury Bills, interest-bearing certificates of deposit, tax exempt securities or investments permitted by § 345 of the Bankruptcy Code or otherwise authorized by the Bankruptcy Court, using prudent efforts to enhance the rates of interest earned on such funds without inordinate credit risk or interest rate risk. All interest earned on such funds shall be held in the Disputed Claims Reserve and, after satisfaction of any expenses incurred in connection with the maintenance of the Disputed Claims Reserve, including taxes payable on such interest income, if any, shall be transferred out of the Disputed Claims Reserve and, in the discretion of the Debtor, be used to satisfy the costs of administering and fully consummating this Plan or become available Cash for Distribution in accordance with this Plan.

#### 6. Release of Funds from Disputed Claims Reserve

If at any time or from time to time after the Effective Date, there shall be funds in the Disputed Claims Reserve in an amount in excess of the Debtor's maximum remaining payment obligations to the then existing Holders of Disputed Claims under this Plan, such excess funds shall become available to the Debtor generally and shall, in the discretion of the Debtor be used to satisfy the costs of administering and fully consummating this Plan or become available Cash for Distribution in accordance with this Plan.

#### D. Conditions of Effectiveness of Plan

Under the Plan, in order for the Effective Date to occur, the conditions of the Debtor as set forth in the Plan and described below must be satisfied or waived:

The conditions precedent to the Effective Date of the Plan as to the Debtor are as follows:

1. The Bankruptcy Court shall have entered the Confirmation Order;

2. Any other order necessary to satisfy any conditions to effectiveness of the Plan shall be a Final Order; and

3. All other documents provided for under the Plan shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited by such documents.

If any of the conditions to consummation and the occurrence of the Effective Date as to the Debtor have not been satisfied or duly waived by the Debtor (i) on or before the first Business Day that is more than thirty (30) days after the Confirmation Date or (ii) by such later date as is proposed by the Debtor after notice and a hearing approved by the Bankruptcy Court, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to consummation are either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated for failure to satisfy the conditions precedent, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any Administrative Expenses, Claims against the Debtor, (b) prejudice in any manner the rights of the Holder of any Administrative Expense, against the Debtor, or (c) prejudice in any manner the rights of the Debtor in its bankruptcy case.

### E. Effect of Confirmation

#### 1. Binding Effect

Except as otherwise provided in § 1141 of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this Plan shall bind any Holder of a Claim against, or Interests in, the Debtor and their respective successors and assigns, whether or not the Holder of the Claim has timely filed a proof of its Claim, the Claim or Interest of such Holder is Impaired under this Plan and whether or not such Holder has accepted the Plan.

#### 2. Avoidance

Except as otherwise expressly provided in the Plan or in the Confirmation Order, upon entry of the Confirmation Order, the following are avoided under this Plan: any liens arising out of or in connection with judgment liens, or any other liens against the Debtor, the Debtor's Property or the Debtor's estate, including liens in favor of any Claimants not contemplated by this Plan. Lien Creditors holding such avoided Claims shall execute, and otherwise cooperate to affect, any releases reasonably required by the Debtor to obtain releases of such Claims.

#### 3. Injunction against Interference with Plan

Upon entry of the Confirmation Order, all Holders of a Claim along with their respective present or former assignees, employees, agents, officers, directors or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

#### 4. Injunction against Certain Actions

As of the Confirmation Date, all Holders of a Claim are permanently enjoined, from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) to enforce the Claim against the Debtor or an Affiliate, or any of their property or any direct or indirect successor in interest to the Debtor or any property of any such successor; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether

18

directly or indirectly, any judgment, award, decree or order relating to the Claim against the Debtor or an Affiliate or any of their property or any direct or indirect successor in interest to the Debtor or any property of any such successor; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind relating to the Claim against the Debtor or any direct or indirect successor in interest to the Debtor or any property of any such successor; and (d) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the fullest extent permitted by applicable law.

### 5. Rights of Action

On and after the Confirmation Date, the Debtor shall have the exclusive right and standing to enforce for the benefit of the Debtor and their Creditors, any and all present or future rights, claims or causes of action against any person and rights of the Debtor that arose before or after the Petition Date, including, but not limited to, rights, claims, causes of action, avoiding powers, suits and proceedings arising under §§ 510, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code. On and after the Confirmation Date, all persons are permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of or respecting any claim, debt, right or cause of action of the Debtor for which the Debtor retains sole and exclusive authority to pursue in accordance with this Section.

### 6. Discharge

Confirmation of the Plan shall discharge all debts of and Claims against the Debtor and their assets other than for obligations expressly provided by this Plan or the Confirmation Order. The discharge of the Debtor shall be effective as to each Claim regardless of whether a Proof of Claim therefore was filed, whether the Claim is an Allowed Claim, or whether the Holder thereof votes to accept or reject the Plan. On the Effective Date, as to every discharged Claim or Interest, any Holder of such Claim shall be precluded from asserting against the Debtor or their assets, any other or further Claim based upon any document, instrument, act, omission, transaction or other activity of any kind or nature which occurred before the Effective Date. The order confirming the Plan shall provide that the commencement or continuation of any action, employment of process or act to collect, offset, enforce or recover the Claims discharged are enjoined. Pursuant to § 524(e) of the Bankruptcy Code, the discharge of the Debtor does not affect the liability of any third party on a debt of the Debtor.

### 8. Exculpation

Neither the Debtor, nor any of their members, attorneys, attorneys of the members, consultants, advisors and agents (acting in such capacity) shall have or incur any liability to any entity for any act taken or omitted to be taken in connection with and subsequent to the commencement of the Chapter 11 Case, the formulation, preparation, dissemination, implementation, confirmation or approval of this Plan, any other plan of reorganization or liquidation or any compromises or settlements contained herein, any disclosure statement related thereto or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the transactions set forth in the Plan or in connection with any other proposed plan; provided, however, that the foregoing provisions shall not affect the liability that otherwise would result from any such act or omission to the extent that such act or omission

19

is determined in a Final Order to have constituted gross negligence or willful misconduct. Each of the foregoing parties in all respects shall have been and shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities during the Chapter 11 Case and under this Plan.

### 9. Exemption from Certain Transfer Taxes

Pursuant to § 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan which is ultimately confirmed, is not taxable under any law imposing a stamp or similar tax. Moreover, any transfer of assets from the Debtor to any other entity in accordance with, in contemplation of, or in connection with the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment pursuant to § 1146(a) of the Bankruptcy Code.

### F. Administrative Provisions

#### 1. Retention of Jurisdiction

The Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to, the Chapter 11 Case and this Plan pursuant to, and for the purposes of §§ 105(a) and 1142 of the Bankruptcy Code and for, among other things the following purposes until such time as the Debtor's obligations under the Plan are fully discharged:

(a) To determine any and all pending adversary proceedings, applications and contested matters;

(b) To hear and determine any objection to any Claims or Interests;

(c) To liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated Claim;

(d) To adjudicate all Claims to any lien on any of the Debtor's assets or any proceeds thereof;

(e) To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated, and/or if the Effective Date never occurs;

(f) To issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code;

(g) To consider any modifications of this Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(h) To hear and determine all applications for compensation and reimbursement of expenses of Professionals under §§ 330, 331 and 503(b) of the Bankruptcy Code;

(i) To enforce and interpret the Plan and to hear and determine any dispute or any other matter arising out of or related to this Plan;

(j) To recover all assets of the Debtor, wherever located;

(k) To hear and determine matters concerning state, local and federal taxes in accordance with §§ 346, 505 and 1146 of the Bankruptcy Code;

(l) To enforce and interpret the discharge of Claims effected by this Plan and to enter and implement such orders as may be appropriate with regard thereto;

(m) To hear any other matter consistent with the provisions of the Bankruptcy Code;

(n) To enter a final decree closing the Chapter 11 Case; and

(o) To hear and determine such other issues as the Court deems necessary and reasonable to carry out the intent and purposes of this Plan.

### 2. Professional Fees and Expenses

After the Effective Date, the Debtor shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the Professionals employed by the Debtor in connection with the implementation and consummation of this Plan, the claims reconciliation process and any other matters as to which such Professionals may be engaged.

### 3. Waiver of Certain Fees

All Holders of Claims waive all penalties, default interest and/or late fees that may have accrued on their Claims other than as provided for in this Plan.

### 4. U.S. Trustee Fees

The Debtor is current, and shall remain current, in paying all fees owed to the United States Trustee until the Chapter 11 Case is closed.

### 5. Payment of Statutory Fees

All fees payable pursuant to Chapter 123 of Title 28, United States Code, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid by the Debtor.

### 6. Modification of the Plan

The Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan at any time prior to the entry of the Confirmation Order. After the entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with § 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan. A Holder of an Allowed Claim or Interest that is deemed to have accepted this Plan shall be deemed to have accepted this Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim or Interest of such Holder.

### 7. Withdrawal or Revocation of the Plan

The Debtor may withdraw or revoke this Plan at any time prior to the Confirmation Date. If the Debtor withdraws or revokes this Plan prior to the Confirmation Date Deadline or if the Confirmation Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or

against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

### 8. Cram Down

The Debtor may utilize the provisions of § 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of this Plan over the rejection, if any, of any Class entitled to vote to accept or reject this Plan.

### 9. Exemption from Certain Transfer Taxes

To the extent that the issuance of an asset under the Plan falls within the exception of Bankruptcy Code § 1146(a), no stamp or similar tax is payable upon such transfer. Pursuant to § 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan which is ultimately confirmed, is not taxable under any law imposing a stamp or similar tax. Moreover, any transfer of assets from the Debtor to any other entity (including the contemplated transfer of real property pursuant to the Plan) in accordance with, in contemplation of, or in connection with the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment pursuant to § 1146(a) of the Bankruptcy Code.

### 10. Governing Law

Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the United States of America and, when applicable, the State of Maryland, without giving effect to the principles of conflicts of law thereof.

## XI. RISKS AND CONSIDERATIONS

### A. Risk Factors

Prior to deciding whether and how to vote on the Plan, each Holder of a Claim should consider carefully all of the information in this Disclosure Statement and should particularly consider the risk factors inherent in the Debtor's plan of liquidation.

### B. Bankruptcy Considerations

Although the Debtor believes that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will confirm the Plan as proposed. Moreover, there can be no assurance that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate the re-solicitation of votes. Although the Debtor believes that the Effective Date will occur soon after the Confirmation Date, there can be no assurance as to such timing.

In the event the conditions precedent described in the Plan have not been satisfied, or waived (to the extent possible) by the Debtor or applicable party (as provided for in the Plan) as

of the Effective Date, then the Confirmation Order will be vacated, no Distributions will be made pursuant to the Plan, and the Debtor and all Holders of Claims and Interests will be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred.

## XII. **PLAN CONFIRMATION AND CONSUMMATION**

### A. Confirmation Hearing

Bankruptcy Code § 1128(a) requires the Bankruptcy Court, after appropriate notice, to hold a hearing on confirmation of a Plan. On, or as promptly as practicable after, the filing of the Plan and this Disclosure Statement, the Debtor will request, pursuant to the requirements of the Bankruptcy Code and the Bankruptcy Rules, that the Bankruptcy Court schedule the Confirmation Hearing. Notice of the Confirmation Hearing will be provided to all known Creditors, Interest Holders or their representatives. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any subsequent adjourned Confirmation Hearing. Pursuant to Bankruptcy Code § 1128(b), any party-in-interest may object to confirmation of a plan. Any objection to confirmation of the Plan must be in writing, must conform to the Bankruptcy Rules, must set forth the name of the objector, the nature and amount of Claims or Interests held or asserted by the objector against the Debtor, the basis for the objection and the specific grounds of the objection, and must be filed with the Bankruptcy Court, with a copy to Chambers, together with proof of service thereof, and served upon (i) the U.S. Trustee's Office; (ii) counsel for Debtor, Deirdre T. Johnson, Esq, 9701 Apollo Dr, Suite 301, Upper Marlboro, MD, 20774, dtjesq@dtjohnsonlaw.com; and (iii) such other parties as the Bankruptcy Court may order.

Bankruptcy Rule 9014 governs objections to confirmation of the Plan.

**UNLESS AN OBJECTION TO CONFIRMATION OF THE PLAN IS TIMELY SERVED UPON THE PARTIES LISTED ABOVE AND FILED WITH THE BANKRUPTCY COURT, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT IN DETERMINING CONFIRMATION OF THE PLAN.**

### B. Plan Confirmation Requirements under the Bankruptcy Code

At the Confirmation Hearing, the Bankruptcy Court will consider the terms of the Plan and determine whether the Plan terms satisfy the requirements set out in § 1129 of the Bankruptcy Code.

### C. Best Interests Test

The Bankruptcy Code requires that, with respect to an Impaired Class of Claims or Interests, each Holder of an Impaired Claim or Interest in such Class either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the amount (value) such Holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date. Chapter 7 is not desirable as it would result in (a) a termination of the Debtor's operation, and (b) loss of the Debtor's ability to sell certain valuable real estate. Further, in a Chapter 7 liquidation assets would be disposed of in

23

a shorter timeframe and would likely result in proceeds commensurate with forced liquidation values, as opposed to orderly liquidation values contemplated under the Plan.

The Debtor's costs of a Chapter 7 liquidation would necessarily include fees payable to a trustee in bankruptcy, as well as fees likely to be payable to attorneys, advisors, and other professionals that such a Chapter 7 trustee may engage to carry out its duties under the Bankruptcy Code. Other costs of a Chapter 7 liquidation would include the expenses incurred during the bankruptcy case and allowed by the Bankruptcy Court in the Chapter 7 case, such as reimbursable compensation for the Debtor's Professionals, including, but not limited to, attorneys, financial advisors, appraisers, and accountants.

The foregoing types of claims, costs, expenses, and fees that may arise in a Chapter 7 liquidation case would be paid in full from the proceeds of the sale of the Debtor's sole asset before the balance of those sales proceeds would be made available to pay pre-Chapter 11 priority and unsecured claims.

### D. Section 1129(b)

Section 1129(b) of the Bankruptcy Code provides that the Bankruptcy Court may confirm a plan even if a class of impaired claims or interests votes to reject the plan if the plan does not unfairly discriminate and is fair and equitable with respect to each impaired class of claims or interests that has not accepted the plan.

#### 1. No Unfair Discrimination

The "no unfair discrimination" test requires that the plan not provide for unfair treatment with respect to classes of claims or interests that are of equal priority, but are receiving different treatment under the plan.

#### 2. Fair and Equitable

The fair and equitable requirement applies to classes of claims of different priority and status, such as secured versus unsecured. The plan satisfies the fair and equitable requirement if no class of claims receives more than 100% of the allowed amount of the claims in such class. Further, if a class of claims is considered a dissenting class ("Dissenting Class"), *i.e.*, a class of claims that is deemed to reject the plan because the required majorities in amount and number of votes is not received from the class, the following requirements apply:

#### a. Class of Secured Claims:

Each holder of an impaired secured claim either (i) retains its liens on the subject property, to the extent of the allowed amount of its secured claim and receives deferred cash payments having a value, as of the effective date of the plan, of at least the allowed amount of such claim, (ii) has the right to credit bid the amount of its claim if its property is sold and retains its liens on the proceeds of the sale (or if sold, on the proceeds thereof) or (iii) receives the "indubitable equivalent" of its allowed secured claim.

#### b. Class of Unsecured Creditors:

Either (i) each holder of an impaired unsecured claim receives or retains under the plan distributions of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the Dissenting Class will not receive anything under the plan.

The Debtor believes the Plan will satisfy the "fair and equitable" requirement notwithstanding that certain Classes of Claims are deemed to reject the Plan because no Class that is junior to such Class will receive or retain any property on account of the Claims in such Class.

## XIII. ALTERNATIVE TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Debtor believes the Plan is in the best interests of its Creditors and should accordingly be accepted and confirmed. If the Plan as proposed, however, is not confirmed, the following three alternatives may be available to the Debtor: (a) a liquidation of the Debtor's assets pursuant to Chapter 7 of the Bankruptcy Code, (b) a plan of reorganization may be proposed and confirmed, or (c) the Debtor's asset may be sold pursuant to Bankruptcy Code § 363.

### A. Chapter 7 Liquidation

If a plan pursuant to Chapter 11 of the Bankruptcy Code is not confirmed by the Bankruptcy Court, the Chapter 11 Case may be converted to a liquidation case under Chapter 7 of the Bankruptcy Code in which a trustee would be elected or appointed, pursuant to applicable provisions of Chapter 7 of the Bankruptcy Code, to liquidate the assets of the Debtor for distribution in accordance with the priorities established by the Bankruptcy Code. A discussion of the effect that a Chapter 7 liquidation would have on the recoveries of Holders of Claims is set forth in Section XII hereof. The Debtor believes that such a liquidation would result in smaller Distributions being made to the Debtor's Creditors than those provided for in the Plan because (i) the likelihood that Debtor's primary asset, the Property, would have to be sold or otherwise disposed of in a less orderly fashion, (ii) additional administrative expenses attendant to the appointment of a trustee and the trustee's employment of attorneys and other professionals, and (iii) additional expenses and Claims, some of which may be entitled to priority.

## XIV. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

Each Holder of a Claim should consult its own tax advisor to determine what effect, if any, the treatment afforded its respective Claim by the Plan may have under federal, state and local tax laws and the laws of any applicable foreign jurisdictions.

No statement in this Disclosure Statement should be construed as legal or tax advice. Neither the Plan proponents nor their Professionals assume any responsibility or liability for the tax consequences the Holder of a Claim may incur as a result of the treatment afforded its Claim under the Plan.

The principal income tax consequence for a Creditor relates to its ability to deduct a portion of its Claim in the event the Creditor does not receive full payment of its Allowed Claim. Here, however, Allowed Claims are being paid in full. Section 166 of the Internal Revenue Code of 1986, as amended ("IRC") (relating to the deductibility of bad debts) generally provides that:

(a) a totally worthless business bad debt is deductible only in the tax year in which it becomes worthless;

(b) a partially worthless business bad debt is deductible in an amount not in excess of the part charged off on the taxpayer's within the taxable year; and

(c) in the case of a taxpayer other than a corporation, a nonbusiness bad debt which becomes completely worthless during that taxable year is deductible as a short-term capital loss and is subject to the limitations imposed on the deductibility of such losses.

For purposes of IRC section 166, a "nonbusiness debt" means a debt other than

(a) one created or acquired in connection with the taxpayer-creditor's trade or business or

(b) the loss from the worthlessness of which was incurred during the operation of the taxpayer-creditor's trade or business.

Pursuant to Treas. Reg. § 1.166-2(c), a bankruptcy filing is generally an indication of the worthlessness of at least a part of an unsecured and unperfected debt. In bankruptcy cases, a debt may become worthless before settlement in some instances, and in others only when a settlement has been reached. In either case, the mere fact that bankruptcy proceedings are terminated in a later year, thereby confirming the conclusion that the debt is worthless, does not authorize the shifting of the deduction under IRC section 166 to such later year. Pursuant to Treas. Reg. § 1.166-1(2)(ii), only the difference between the amount received in distribution of assets of a debtor, and the amount of the claim may be deducted under IRC § 166 as a bad debt.

Generally, a taxpayer is entitled to a bad debt deduction with respect to accounts receivable only if the taxpayer has recognized as income the accounts receivable in the year in which the bad debt deduction is claimed or a prior taxable year. Thus, bad debt deductions for worthless or partially worthless accounts receivable are normally available only to accrual method taxpayers. Likewise, worthless debts arising from unpaid wages, salaries, fees, rents and similar items of taxable income are not allowed as a bad debt deduction unless such items have been reported as income in the year for which the deduction as a bad debt is claimed or for a prior taxable year.

Business bad debts deductible under IRC § 166 generally may be deducted using either the specific charge-off method or, if certain requirements are met, the nonaccrual experience method. Under the specific charge-off method, specific business bad debts that become either partially or totally worthless during the tax year may be deducted in the manner permitted by IRC § 166.

If a deduction is taken for a bad debt which is recovered in whole or part in a latter tax year, the taxpayer may have to include in gross income the amount recovered, except, under limited circumstances, the amount of the deduction that did not reduce taxes in the year deducted.

## XV. **RECOMMENDATION AND CONCLUSION**

The Debtor believes the Plan is in the best interests of all Creditors and urges the Holders of Impaired Claims entitled to vote to accept the Plan and to evidence such acceptance by properly voting and timely returning their Ballots.

5410 30th STREET DC, LLC

By: /s/ Zanetta Williams
_____

Name:  Zanetta Williams
_____

Title:  Sole Member
_____

/s/ Deirdre T. Johnson, Esq
_____

Deirdre T. Johnson, Esq
Bar No. MD14227
9701 Apollo Dr, Suite 301
Upper Marlboro, MD 20774
Phone: (301) 742-5385
dtjesq@dtjohnsonlaw.com
*Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of March, 2026, a copy of the foregoing Amended Chapter 11 Disclosure Statement and Plan was served electronically upon filing via the ECF system, with copies to:

- L. Jeanette Rice Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- US Trustee - Greenbelt USTPRegion04.GB.ECF@USDOJ.GOV
- Maurice VerStandig – MAC@MBVESQ.COM

I FURTHER CERTIFY that on this 5th day of March, 2026, a copy of the foregoing was also sent via US Mail, postage prepaid, to:

Attn: Albeiro Medina
T&AA Construction
11820 Parklawn Dr, Suite 380
Rockville, MD 20852

BHI Construction
9342 Annapolis Rd
Lanham, MD 20706

Santorini Capital LLC
Suite 200
2000 Massachusetts Ave, NW
Washington, DC 20036

/s/ Deirdre T. Johnson, Esq
_____

Deirdre T. Johnson, Esq
Deirdre T Johnson, Attorney at Law
9701 Apollo Dr, Suite 301
Upper Marlboro, MD 20772

# EXHIBIT 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
*Greenbelt Division*

In re: 5410 30th Street DC, LLC                    Case No.: 25 − 19605

Debtor                                             Chapter 11

---

**AMENDED CHAPTER 11 PLAN OF LIQUIDATION
OF 5410 *30th Street DC, LLC***

---

5410 30th Street DC, LLC, the debtor and debtor in possession (the "Debtor") proposes the following Plan of Liquidation pursuant to Chapter 11 of the United States Bankruptcy Code.

ARTICLE 1
<u>INTRODUCTION</u>

On October 14, 2025, Debtor 5410 30th Street DC, LLC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court.   The Debtor is in possession of its assets, and intends to continue to manage its affairs as a debtor in possession pursuant to §1184 of the Bankruptcy Code.

<u>The Debtor</u>

5410 30th Street DC. LLC is a Maryland limited liability company formed on February 14, 2023, with its headquarters located in Bowie, Maryland.   Zanetta Williams serves as the Sole 100% Member of 5410 30th Street DC, LLC.

The Debtor's bankruptcy filing was precipitated by lengthy debilitating disruptions in loan servicing and financing, including insufficient funding for

1

renovation, the lender's repeated delays and failures in issuing required construction draws, and a significant gap in lender support during which the lender and its servicer were largely unreachable for approximately two to three months and loan servicing was effectively halted and consequently the debtor's projects were negatively impacted and forced into default. It was later discovered that Upright/Fund that Flip (the debtor's lender) had experienced a financial crisis where Upright/Fund that Flip had investor funds frozen due to the bankruptcy of their banking-as-a-service partner, Synapse Financial Technologies. In addition, for approximately one year, the lender failed to act on the Debtor's repeated efforts to cure and reinstate the loan. These events collectively forced the Debtor to suspend construction activities, imposed substantial financial strain on the Debtor's business, creating a cascading financial negative impact that adversely affected cash flow and the Debtor's ability to timely complete, stabilize, and market the Property and forced another property into foreclosure. The Debtor further determined that, the delayed reinstated and completion of the property caused an entrance of the completed project into market conditions that were different that what was initially planned. The market changed significantly in a year's time. The real estate market is and has been strained since the property was listed for sale. The Debtor determined that seeking to reorganize its affairs through the Bankruptcy process will allow it to maintain and ultimately increase the enterprise value to the benefit of the Debtor, Creditors, and any other parties-in-interest.

Chapter 11 allows a debtor to propose a plan of reorganization and/or liquidation. This Plan provides for the orderly liquidation of the Debtor's business through the sale of the sole business asset, the real property located at 5631 Macarthur Blvd NW Washington, DC 20016. The Plan anticipates distribution to the Allowed Claims of Creditors from the proceeds of the sale. Each of the Debtor's assets and claims are identified below. The net proceeds from the sale of the

2

Debtor's asset will be distributed to Holders of Allowed Claims against the Debtor in accordance with their rights and priorities under the Bankruptcy Code and under other applicable law.

### Explanation of the Confirmation and Voting Process

Enclosed in the same envelope as this Plan is the Debtor's Disclosure Statement and a cover letter.  The Disclosure Statement is being sent along with this Plan in order to provide to you critical information about the Debtor, to help you understand this Plan, and to evaluate the merits of this Plan.  Final approval of the Disclosure statement will be considered at the hearing on Confirmation of the Plan. The Disclosure Statement describes this Plan and the procedures for voting on the Plan.  It also discusses the Debtor's business, the Debtor's assets and liabilities, and projections for completion and implementation of the Plan.   Creditors are encouraged to read this Plan, the Disclosure Statement and all exhibits thereto in their entirety.

Subject to certain restrictions and requirements as set forth in §1127 of the Bankruptcy Code, Bankruptcy Rule 3019 and those restrictions on modifications to the Plan, as set forth therein, the Debtor expressly reserves the right to alter, amend, modify, revoke, or withdraw the Plan one or more times, prior to the Effective Date.

IN THE OPINION OF THE DEBTOR, THE TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN CONTEMPLATES A GREATER AND FASTER AND MORE CERTAIN RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES FOR THE REORGANIZATION OR OTHER MEANS OF LIQUIDATION OF THE DEBTOR.   ACCORDINGLY,   THE   DEBTOR   BELIEVES   THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTEREST OF ALL

CREDITORS AND RECOMMENDS THAT CREDITORS VOTE TO ACCEPT THE PLAN.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THE PLAN AND IN THE ACCOMPANYING DISCLOSURE STATEMENT CONCERNING THE HISTORY OF THE DEBTOR'S BUSINESS, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTOR, TRANSACTIONS TO WHICH THE DEBTOR WAS OR IS A PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON HOLDERS OF CLAIMS AGAINST THE DEBTOR ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTOR AND NOT TO ANY OTHER PARTY.

## ARTICLE 2
## DEFINITIONS AND RULES OF CONSTRUCTION

2.1    Definitions.   Unless the context otherwise specifies or requires, the following terms shall have the meanings herein specified, such definitions as applicable equally to the singular and plural forms of such terms and to all genders:

2.1.1 "Administrative Claim" means a Claim for costs and expenses of the administration of the Bankruptcy Case which is entitled to administrative priority status pursuant to §§503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, a Claim of a professional employed at the expense of the Estate and any fees or charges asserted against the Estate under 28 U.S.C. §1930.

2.1.2 "Affiliate" means any Person that is an "affiliate" within the meaning of §101(2) of the Bankruptcy Code.

2.1.3 "Allowed Amount" means the dollar amount in which a Claim is allowed.

4

2.1.4 "<u>Allowed</u>" with respect to any Claim means:  (i) a Claim against the Debtor which has been listed on the Debtor's Schedules, as such Schedules may be amended from time to time pursuant to Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been filed, (ii) any Claim for which a Proof of Claim was properly and timely filed in accordance with any order of the Bankruptcy Court, the Plan, the Bankruptcy Code, and the Bankruptcy Rules, as to which no objection to allowance is made by the Debtor' or a Party in Interest or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder or (iii) any claim expressly allowed by a Final Order or pursuant to the Plan. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim has been timely filed, is not considered Allowed and shall be expunged on the Effective Date without further action by the Debtor and without any further notice to or action, order or approval of the Bankruptcy Court.  The Debtor asserts that, if you failed to file a Proof of Claim and the Debtor's Schedules do not acknowledge your debt, your right to vote and participate in the distribution from the Plan does not exist.  A recognized list of Claims for voting purposes is set forth in the Claims Register and Listing, which lists claims against the Debtor, and is attached as Exhibit 2 to the Disclosure Statement.

2.1.5  "<u>Allowed Class [#] Claim</u>"  means an Allowed Claim in the particular Class described.

2.1.6 "<u>Ballot</u>" means the ballot, the form of which has been approved by the Bankruptcy Court, accompanying the Disclosure Statement provided to each Holder of a Claim entitled to vote to accept or reject this Plan.

2.1.7 "<u>Bankruptcy Case</u>" means the Chapter 11 bankruptcy case commenced by the Debtor on the Petition Date and pending before the Bankruptcy Court under Case No. 25-19605-LSS.

2.1.8 "<u>Bankruptcy Code</u>" means Title 11 of the United States Code, 11 U.S.C. §§101 et seq., as in effect on the Petition Date, together with all amendments and modifications thereto.

2.1.9 "<u>Bankruptcy Counsel</u>" means Deirdre T. Johnson, Esq.

2.1.10 "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the District of Maryland or, as the context requires, any other court of competent jurisdiction exercising jurisdiction over the Bankruptcy Case.

2.1.11 "<u>Bankruptcy Rules</u>" means (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under §2075 of Title 28 of the United States Code, (b) the Federal Rules of Civil Procedure, as amended and promulgated under §2072 of Title 28 of the United States Code, (c) the Local Rules of the Bankruptcy Court, and (d) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto to the extent applicable to the Bankruptcy Case or proceedings herein, as the case may be.

2.1.12 "<u>Bar Date</u>" means the last date for creditors chose claims or interests are not scheduled or are scheduled as disputed, contingent, or unliquidated in the Debtor's Schedules to file Proofs of Claim. The Bar Date is February 17, 2026 (i) for Creditors other than Governmental Units and (ii) April 13, 2026 for Governmental Units.

2.1.13 "<u>Business Day</u>" means any day other than (a) a Saturday, (b) a Sunday, (c) a "legal holiday" (as "legal holiday" is defined in Bankruptcy Rule 9006(a)), or (d) a day on which commercial banks in the State of Maryland are required or authorized to close by law.

2.1.14 "Cash" means cash, cash equivalents and other readily marketable direct obligations of the United States, as determined in accordance with generally accepted accounting principles, including bank deposits, certificates of deposit (CDs), checks, and similar items. When used in the Plan with respect to a distribution under the Plan, the term "Cash" means lawful currency of the United States, a certified check, a cashiers check, a wire transfer of immediately available funds from any source, or a check drawn on a domestic bank.

2.1.5 "Claim" has the meaning ascribed to such term in §101(5) of the Bankruptcy Code

2.1.16 "Class" means a category of Claims classified in Article 4 of this Plan pursuant to §§1122 and 1123 of the Bankruptcy Code.

2.1.17 "Clerk" means the Clerk of the Bankruptcy Court.

2.1.18 "Clerk's Office" means the Office of the Clerk of the Bankruptcy Court.

2.1.19 "Closing" means the closing of a sale transaction pursuant to the Sale Order(s).

2.1.20 "Closing Date" means the date on which the closing of a sale transaction occurs pursuant to a Sale Order entered with, or in supplementation of, the Confirmation Order.

2.1.21 "Collateral" means Property in which the Estate has (or had) an interest and that secures (or secured), in whole or in part, whether by agreement, statute, or judicial decree, the payment of a Claim.

2.1.22 "Confirmation" or "Confirmation of the Plan" means the approval of the Plan by the Bankruptcy Court at the Confirmation Hearing.

2.1.23 "Confirmation Date" means the date on which the Confirmation Order is entered on the Docket by the Clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 5003(a).

7

2.1.24 "<u>Confirmation Hearing</u>" means the hearing which will be held before the Bankruptcy Court to consider Confirmation of the Plan and related matters pursuant to §1128(a) of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time. The date and time of the commencement of the Confirmation Hearing is set forth in the Disclosure Statement Approval Order.

2.1.25 "<u>Confirmation Order</u>" means the order of the Bankruptcy Court in the Bankruptcy Case confirming the Plan pursuant to §1129 and other applicable sections of the

2.1.26 "<u>Creditor</u>" means the Holder of a Claim, with the meaning of §101 of the Bankruptcy Code, including Secured Creditors, Unsecured Creditors, and Creditors with Administrative Claims, Priority Tax Claims, and Priority Claims.

2.1.27 "<u>Debt</u>" has the meaning ascribed to such term in §101(12) of the Bankruptcy Code.

2.1.28 "<u>Debtor</u>" means 5410 30th Street DC, LLC, a Maryland limited liability company, as Debtor and Debtor in Possession under the Bankruptcy Case.

2.1.29 "<u>Debtor in Possession</u>" means the Debtor, as Debtor in Possession in the Bankruptcy Case.

2.1.30 "<u>Disallowed Claim</u>" means any Claim which has been disallowed by an order of the Bankruptcy Court, which order has not been stayed pending appeal.

2.1.31 "<u>Disclosure Statement</u>" means that certain Disclosure Statement for Debtor's Plan of Liquidation Pursuant to Chapter 11 of the United States Bankruptcy Code, including all Exhibits thereto, as submitted and filed by the Debtor pursuant to §1125 of the Bankruptcy Code and approved by the Bankruptcy Court in the Disclosure Statement Approval Order.

2.1.32 "<u>Disclosure Statement Approval Order</u>" means that certain order of the Bankruptcy Court, dated <u>TBD</u>, 2026, conditionally approving, among

8

other things, the Disclosure Statement as containing adequate information pursuant to §1125 of the Bankruptcy Code, and setting various deadlines in connection with final approval of the Disclosure Statement and Confirmation of the Plan.

2.1.33 "Disputed Claim" means any Claim or portion thereof (other than a Disallowed Claim) that is not an Allowed Claim and (a) as to which a Proof of Claim has been filed with the Clerk's Office or is deemed filed under applicable law or order of the Bankruptcy Court, or (b) which has been included in the Schedules, and, in the case of subparagraph (a) and (b) above, as to which an objection has been or may be timely filed or deemed filed under the Plan, the Bankruptcy Code, the Bankruptcy Rules, or an Order of the Bankruptcy Court and any such objection has not been (1) withdrawn, (ii) overruled by an order of the Bankruptcy Court, or (iii) sustained by an order of the Bankruptcy Court. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the amount subject to objection.

2.1.34 "Disputed" when used as an adjective herein (such as Disputed Administrative Claim, Disputed Priority Tax Claim, Disputed Priority Claim, Disputed Secured Claim, and Disputed Unsecured Claim) has a corresponding meaning.

2.1.35 "Disputed Claims Reserve" means Cash to be set aside by the Debtor in a separate interest-bearing account, in an amount sufficient to pay Disputed Claims in accordance with the provisions hereof, and as to be maintained as set forth more fully herein.

2.1.36 "Distribution" means the Cash that is required to be distributed under this Plan to the Holders of Allowed Claims.

2.1.37 "Distribution Date" means the date or dates under the Plan when a Distribution is required to be made in accordance with the Plan.

2.1.38 "<u>Docket</u>" means the docket in the Bankruptcy Case maintained by the Clerk.

2.1.39 "<u>Effective Date</u>" means a date selected by the Debtor, but in no event later than ninety (90) days after the Confirmation Date.

2.1.40 "<u>Entity</u>" has the meaning ascribed to such term in §101(15) of the Bankruptcy Code.

2.1.41 "<u>Estate</u>" means the Debtor's bankruptcy estate created pursuant to §541 of the Bankruptcy Code.

2.1.42 "<u>Exculpated Parties</u>" has the meaning ascribed to such term in Article 10.

2.1.43 "<u>Exhibit</u>" means an exhibit to the Disclosure Statement.

2.1.44 "<u>Final Order</u>" means an order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified, or amended and (i) as to which the time to appeal or seek reconsideration or rehearing thereof or file a petition for certiorari has expired; (ii) in the event of a motion for reconsideration or rehearing or petition for certiorari has been filed, such motion or petition shall have been denied by an order or judgment of the Bankruptcy Court or other applicable court; or (iii) in the event an appeal is filed and pending, a stay pending appeal has not been entered; provided, however, that with respect to an order or judgment of the Bankruptcy Court allowing or disallowing a Claim, such order or judgment shall have become final and non-appealable; and provided further, however, that the possibility of a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

2.1.45 "<u>General Administrative Claims Bar Date</u>" means the date by which all requests for payment of Administrative Claims shall be filed with the

10

Bankruptcy Court and served upon the Debtor, which date shall be no later than sixty (60) days after the Effective Date.

    2.1.46 "Governmental Unit" has the meaning ascribed to such term in §101(27) of the Bankruptcy Code.

    2.1.47 "Holder" means as to any Claim, (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, (ii) if no Proof of Claim has been filed with respect to such claim, the owner or holder of such Claim as such is reflected in the Schedules or the books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court, (iii) if the owner or holder of such Claim has assigned or transferred the Claim to a third party and the Debtor has received sufficient written evidence of such assignment or transfer, the assignee or transferee; or (iv) any subrogee of a holder of a Secured Claim.

    2.1.48 "Impaired" refers to any Claim that is impaired within the meaning of §1124 of the Bankruptcy Code.

    2.1.49 "Indemnification Rights" means any obligations or rights of the Debtor to indemnify, reimburse, advance, or contribute to the losses, liabilities, or expenses of an Indemnitee pursuant to the Debtor's articles of organization, operating agreement, or policy of providing indemnification, applicable law, or a specific agreement in respect of any claims, demands, suits, causes of action, or proceedings against an indemnitee based upon any act or omission related to an Indemnitee's service with, for, or on behalf of the Debtor. Indemnification rights include, but are not limited to Zanetta Williams, Sole Member of the Debtor LLC.

    2.1.50 "Indemnitee" means all present and former members, partners, agents, or representatives of the Debtor LLC entitled to assert Indemnification Rights.

2.1.51  "<u>Lenders</u>"  means senior secured creditor (a) IBI Falcon US, LLC, and (b) junior secured creditor Santorini Capital, LLC.  Further definitions relating to the Lender(s) and their respective collateral and loan documents are contained in this Section 2.1.

2.1.52  "<u>Liabilities</u>"  means any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now, or hereafter owing, arising, due or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, in law, equity or otherwise, of or relating to the Debtor or any predecessor thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtors or any predecessor thereof, and Property of the Debtor, the business or operations of the Debtor, the Bankruptcy Case, or the Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any claim of or relating to successor liability, transferee liability,  or other similar theory.

2.1.53  "<u>Lien</u>"  means, with respect to any property, any mortgage, pledge, security interest, lien, right of first refusal, option or other right to acquire, assignment, charge, claim, easement, conditional sale agreement, title retention agreement, defect in title, or other encumbrance  or hypothecation or restriction of any nature pertaining to or affecting such Property, whether voluntary  or involuntary and whether arising by law, contract or otherwise.

2.1.54  "<u>Net Sale Proceeds</u>"  means the cash generated from the sale of one or more Real Property Assets, less the expenses, closing costs, taxes, Post-Confirmation Expenses, and Administrative Claims incurred in furtherance of such sale.

2.1.55   "Official Bankruptcy Forms" means forms promulgated and required by the Bankruptcy Court.

2.1.56   "Paid in Full"  means the Debtor's payment obligation to a particular Creditor under this Plan has been fully satisfied.

2.1.57   "Party in Interest"  means the Debtor, or any Creditor of them.

2.1.58   "Person"  means any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency or political subdivision thereof, or any Entity  or other institution of any type whatsoever, including any "person" as such term is defined in §101(41) of the Bankruptcy Code.

2.1.59   "Petition Date"  means October 14, 2025 which is the date on which the Debtor commenced the Bankruptcy Case by filing it voluntary petition under Chapter 11 of the Bankruptcy Code.

2.1.60   "Plan" means the Debtor's Plan of Liquidation Pursuant to Chapter 11 of the United States bankruptcy Code dated February 10, 2026, as the same may be amended, supplemented, modified or amended and restated from time to time in accordance with the provisions of the Plan and the Bankruptcy Code.

2.1.61   "Plan Documents" means all documents that aid in effectuating the Plan.

2.1.62   "Plan Term" means the period required for liquidation of all Real Property Asset(s) and distribution of proceeds.  It is estimated to be a 24 month Plan Term with distributions occurring as rapidly as possible at, or promptly following, a closing on a sale of Debtor's Real Property Asset.

2.1.63   "Post-Confirmation Expenses"  means the fees and expenses incurred by the Debtor or its Professionals following the Confirmation Date (including the fees and costs of Professionals) for the purpose of (i) objecting to and resolving Disputed Claims and Disputed Liens; (ii) selling the real property asset;

13

(iii) effectuating Distributions under the Plan; or (iv) otherwise consummating the Plan and closing the Debtor's Bankruptcy Case.

2.1.64 "Prepetition" means arising or accruing prior to the Petition Date.

2.1.65 "Priority Claim" means a Claim, other than an Administrative Claim or Priority Tax Claim, entitled to priority in payment pursuant to §507 of the Bankruptcy Code.

2.1.66 "Priority Tax Claim" means a Claim of a Governmental Unit that is entitled to a priority in payment pursuant to §507(a)(8) of the Bankruptcy Code.

2.1.67 "Professional" means any person employed in the Bankruptcy Case pursuant to a Final Order of the Bankruptcy Court in accordance with §§327 or 1103 of the Bankruptcy Code.

2.1.68 "Proof of Claim" means a proof of claim filed by a Creditor with the Bankruptcy Court in which the Creditor sets forth the amount of its Claim in accordance with Bankruptcy Rule(s) 3001, 3002, or 3003.

2.1.69 "Property" means any property or asset of any kind, whether real, leased, personal or mixed, tangible or intangible, whether now existing or hereafter acquired or arising, and wherever located , and any interest of any kind therein, including without limitation the Real Property Assets.

2.1.70 "Real Property Asset" means the real property located at 5631 Macarthur Blvd NW Washington, DC 20016.

2.1.71 "Released Parties" means the Debtor, the Debtor's Estate, and their professionals.

2.1.72 "Sale Order" means one or more order(s) authorizing the sale of Assets/Property free and clear of liens, claims, and encumbrances, to be entered by the Court approving the sale of the Debtor's Real Property Asset pursuant to §363

14

of the Bankruptcy Code pursuant to or in supplementation of the Confirmation Order.

2.1.73 "Schedules" means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor pursuant to Bankruptcy Code §521, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended from time to time through the Confirmation Date.

2.1.74 "Secured Claim" means any Claim of a Creditor that is (a) secured in whole or in part, as of the Petition Date, by a Lien (i) on Collateral and (ii) which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or (b) subject to setoff under §553 of the Bankruptcy Code, but, with respect to both (a) and (b) above, only to the extent of the value of such Creditor's interest in the Estate's interest in such Collateral or the amount subject to setoff, as the case may be. Except as otherwise provided in the Plan, if the value of a Creditor's interest in the Estate's interest in such collateral or the amount subject to setoff is less than the amount of the Allowed Claim, then such deficiency shall constitute an Unsecured Claim.

2.1.75 "Secured Creditor" means any Creditor holding a Secured Claim.

2.1.76 "Tax" means any tax, charge, fee, levy, or other assessment by any federal, state, local, or foreign taxing authority, including without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation, and withholding tax. "Tax" shall include any interest or additions attributable to, or imposed on or with respect to, such assessments.

2.1.77  "<u>Tax Claim</u>"  means any Claim, pre-petition or post-petition, relating to a Tax.

2.1.78  "<u>Unimpaired</u>" refers to a Claim that is not impaired.

2.1.79  "<u>Unsecured Claim</u>" means any Claim which is not an Administrative Claim, Priority Tax Claim, Priority Claim, or a Secured Claim, including (a) any Claim arising from the rejection of an executory contract or unexpired lease under §365 of the Bankruptcy Code, (b) except as otherwise provided in the Plan, any portion of a Claim to the extent the value of the Creditor's interest in the Estate's interest in the Collateral securing such Claim is less than the amount of the Allowed Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Allowed Claim, as determined pursuant to §506(a) of the Bankruptcy Code, (c) any Claim arising from the provision of goods or services to the Debtor prior to the Petition Date, and (d) any Claim designated as an Unsecured Claim elsewhere in the Plan.

2.1.80 "<u>Unsecured Creditor</u>" means any Creditor holding an unsecured Claim.

2.1.81  "<u>Unsecured Priority Claim</u>"  means Claims of Governmental Units for pre-petition tax liability.  The unclassified Unsecured Priority Claims expressly exclude claims under §507(a)(1)(a).

2.1.82  "<u>U.S. Trustee</u>" or "<u>United States Trustee</u>" means the office of the United States Trustee.

2.2  <u>Rules of Construction</u>.  Capitalized terms used in this Plan shall have the meaning set forth herein.  In the event a capitalized term is not defined herein, then it shall have the meaning given in the Bankruptcy Code or the Bankruptcy Rules.  In the event a capitalized term is not defined in any of the Plan, the Bankruptcy Code, or the Bankruptcy Rules, then it shall have the meaning such term has in ordinary usage and if one or more meaning for such term exists in ordinary usage, then it shall

16

have the meaning which is most consistent with the purposes of this Plan and the Bankruptcy Code.  The terms of this Plan shall not be construed against any person, but shall be given reasonable construction , consistent with the purposes hereof, and of the Bankruptcy Code.

The words "herein", "hereof", "hereunder", and others of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.


ARTICLE 3
TREATMENT OF ADMINISTRATIVE EXPENSE
CLAIMS, PRIORITY CLAIMS, AND PRIORITY TAX CLAIMS

As required by the Bankruptcy Code, this Plan places Claims into various Classes according to their right to priority.  However, in accordance with the provisions of §1123(a)(1) of the Bankruptcy Code, Administrative Claims, certain Priority Claims, and Priority Tax Claims are deemed "unclassified".  These Claims are not considered impaired pursuant to  §1129(a)(9)(A) or (C), and they do not vote on this Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtor has not placed these Claim(s) in a Class.  The treatment of these unclassified Claims is provided below.

3.1    <u>Allowed Administrative Claims</u>.    Each Holder of an Allowed Administrative Claim, subject to the General Administrative Claims Bar Date, shall be paid in accordance with the priority of distribution set forth in §507(a)(2) of the Bankruptcy Code, as ordered by a Final Order of the Bankruptcy Court. Any Holder of an Allowed Administrative Claim may agree to a different, but not better, treatment of its Claim, in which event the Debtor shall pay such Claim in accordance with such agreement.  In the case of a Professional with an Allowed Administrative Claim, that Professional shall be paid first from any retainer held by such

Professional, and as to a balance, if any, after application of the retainer, shall be paid from Cash.

3.2     <u>Allowed Priority Claims</u>.  Each Holder of an Allowed Priority Claim shall be paid in Cash in accordance with the priority of distribution set forth in §507(a)(2), (a)(3)m or (a)(7) of the Bankruptcy Code, on the latest of (a) the tenth (10th) Business Day after the day upon which such Claim becomes an Allowed Claim, (b) the date upon which such Allowed Claim becomes due according to its terms, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.  Any Holder of an Allowed Priority Claim may agree to a different, but not better, treatment of its Claim, in which event the Debtor shall pay such Claim in accordance with such agreement.

3.3     <u>Priority Tax Claims</u>.  Each Holder of an Allowed Priority Tax Claim shall receive under this Plan  on account of such Claim, payment in Cash in accordance with §507(a)(8) as specified in §1129(a)(9)(C) of the Bankruptcy Code commencing on the latter of (i) the Effective Date or as soon thereafter a reasonably practicable, or (ii) as soon as reasonably practicable after the date of a Final Order Allowing such Priority Tax Claim.  Any Holder of an Allowed Priority Tax Claim may agree to a different, but not better, treatment of its Claim, in which event the Debtor shall pay such Claim in accordance with such agreement.

A.     <u>Washington, District of Columbia</u>.    The District of Columbia Government Office of Tax and Revenue is listed on Debtor's Schedule E/F as a Priority tax Creditor in the amount of $30,000.00 for real property taxes.

ARTICLE 4
<u>CLASSIFICATION OF CLAIMS</u>

18

4.1 <u>General Overview</u>. As required by §§1122 and 1123, this Plan places Claims into various Classes according to their right to priority and other relative rights. A Claim is in a particular Class for purposes of voting on, and of receiving Distributions pursuant to the Plan only to the extent such Claim has not been paid, released, or otherwise settled prior to the Effective Date. Administrative Expense Claims and Priority Claims of the kinds specified in §507(a)(2) and (a)(8) (set forth in Article 2 herein) have not been classified and are excluded from the following classes in accordance with §1123 (a)(1).

4.2 <u>Designation of Classes</u>. This Plan provides for the establishment of the following Classes of Claims:

| CLASS | DESIGNATION | IMPAIRMENT | ENTITLED TO VOTE |
|-------|-------------|------------|------------------|
| 1 | Allowed Secured Claim of IBI Falcon | YES | YES |
| 2 | Allowed Secured Claim of Santorini Capital | YES | YES |
| 3 | Allowed Priority Unsecured Claims | YES | YES |
| 4 | Allowed General Unsecured Claims | YES | YES |

# ARTICLE 5
## <u>TREATMENT OF CLAIMS</u>

Allowed Claims under this Plan shall be treated in the manner set forth in this Article 5. The treatment of, and the consideration to be received by Holder of Allowed Claims hereunder shall be in full and final satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims (of any nature whatsoever), including any Liens securing such Allowed Claims. All Allowed Claims will be paid in order of their priority, and any sale of the Debtor's Real

Property shall be free and clear of all Liens, claims, and encumbrances pursuant to the Confirmation Order.

### 5.1    Class 1: Allowed Secured Claim of IBI Falcon

A.    Treatment: To the extent the claim of IBI Falcon is an allowed claim, the holder shall receive payment in full of the allowed secured claim as determined by agreement of the parties or final order of the court, from net sale proceeds at closing. Any disputed amounts claimed by IBI Falcon shall be paid into escrow at Closing and released only upon agreement of the Debtor and IBI Falcon or upon Final Order of the Court. The Debtor anticipates paying the allowed secured claim of IBI falcon from net proceeds at closing.

B. Lien Retention: The Holder of the IBI Falcon Secured Claim shall release any lien on the Real Property Asset, with any such lien attaching to the proceeds of any sale. The Confirmation Order and any Sale Order shall provide that IBI Falcon is paid at Closing and that purchasers of Debtor's Property are purchasing the Property free and clear of any liens, claims and encumbrances.

C. Impairment: Class 1 is Impaired by this Plan and, therefore, the Holder of the Claim in Class 1 is entitled to vote to accept or reject the Plan

### 5.2    Class 2: Allowed Secured Claim of Santorini Capital LLC

A. Treatment: To the extent that the Claim of Santorini Capital is an Allowed Claim not previously paid, the Holder of the Santorini Capital Secured Claim shall receive payment in full of its Allowed Secured Claim, including principal, interest, Allowed attorneys' fees incurred prior to the Petition Date and during the Bankruptcy Case in enforcing its rights under the Loan Documents, and any other allowed charges required by the Loan Documents, through the date on which the Allowed Claim is Paid in Full, on the later to occur of (i) as soon as

practicable on or after the Closing Date, or (ii) the Effective Date.  The Debtor anticipates paying Santorini Capital on its Allowed Secured Claim at Closing.

B. Lien Retention: The Holder of the Santorini Capital Secured Claim shall release any lien on the Real Property Asset, with any such lien attaching to the proceeds of any sale. The Confirmation Order and any Sale Order shall provide that Santorini Capital is paid at Closing and that purchasers of Debtor's Property are purchasing the Property free and clear of any liens, claims and encumbrances.

C. Impairment: Class 2 is Impaired by this Plan and, therefore, the Holder of the Claim in Class 2 is entitled to vote to accept or reject the Plan.


5.3    Class 3: Allowed Priority Unsecured Claims

A. Treatment: After Class 1 and 2 Claims have been paid in full, Holders of Allowed Priority Unsecured Claims shall receive payments on their Allowed Priority Unsecured Claims in order of their priority. The Confirmation Order and any Sale Order(s) shall provide that purchasers are purchasing the Debtor's Property free and clear of any liens, claims and encumbrances.

B. Impairment: Class 3 is Impaired by this Plan and, therefore, each Holder of a Claim in Class 3 is entitled to vote to accept or reject the Plan.


5.4    Class 4: Allowed General Unsecured Claims

A. Treatment: After payment in full of all Allowed Administrative Expenses (including, without limitation, professional fees, sale-related costs, commissions, and closing expenses), Allowed Priority Claims, and Allowed Secured Claims in accordance with this Plan, the Holder of each Allowed General Unsecured Claim shall receive a pro rata distribution, if any, only to the extent net sale proceeds remain after payment in full of Administrative claims, priority claims and allowed secured claims.

21

No distribution shall be made on account of any General Unsecured Claim that is disputed, contingent, unliquidated, or unsupported by sufficient documentation unless and until such claim becomes an Allowed Claim by agreement or Final Order of the Court.

Any General Unsecured Claim for which a timely Proof of Claim is not filed in accordance with applicable Bankruptcy Rules and orders of the Court shall be deemed disallowed and shall not receive any distribution under this Plan.

No distribution shall be made on account of any General Unsecured Claim unless such claim constitutes an Allowed Claim supported by sufficient documentation in accordance with Bankruptcy Rule 3001 and applicable law.

The Debtor reserves all rights to object to any General Unsecured Claim, including on the grounds that such claim does not arise from, relate to, or benefit the Debtor's estate or the Property.

Distributions, if any, shall be made as soon as reasonably practicable following the closing of any sale of the Property and reconciliation of claims.

The Claims Register listing all General Unsecured Claims is attached to the Disclosure Statement as Exhibit 2.

B. Impairment: Class 4 is Impaired by this Plan and, therefore, each Holder of a Claim in Class 4 is entitled to vote to accept or reject the Plan.

**5.5    Class 5: Equity Interests**

A. Treatment: All equity interests in the Debtor shall be retained by the Debtor's Sole Member. To the extent any funds remain after payment in full of all Allowed Administrative Expenses, Allowed Priority Claims, and other Allowed Claims in accordance with this Plan, any remaining funds shall be distributed to the Debtor's Sole Member.

22

B. Impairment: Class 5 is unimpaired by this Plan and, therefore, each Holder of a Claim in Class 5 is not entitled to vote to accept or reject the Plan.

## ARTICLE 6
## IMPLEMENTATION OF THE PLAN

6.1    This Article 6 explains the means by which the Debtor intends to effectuate the reorganization provided for hereunder and how the Debtor intends to fund the obligations to Creditors undertaken in this Plan.  This Article 6 also provides information on other material issues bearing upon the performance of this Plan.

6.2    Funding.  This Plan will be funded from one (1) source:  Net Sale Proceeds generated by the sale of the Debtor's Real Property Asset in accordance with the Confirmation Order and any Sale Order.

6.2.1  Sale of Real Property Asset.   This Plan contemplates the sale of Debtor's Real Property Asset.   The Confirmation Order shall incorporate by reference and/or provide for supplemental orders authorizing the sale free and clear of liens, claims, and encumbrances, and authorizing the Debtor to take all actions required to consummate the sale of the Real Property Asset.  The sale of the Real Property Asset pursuant to the Sale Order and this Plan, in all respects, shall be a sale pursuant to §§105 and 363 of the Bankruptcy Code, in accordance with and under the provisions §1123 of the Bankruptcy Code, under a Plan confirmed pursuant to §1129 of the Bankruptcy Code, effectuated pursuant to §1141 of the Bankruptcy Code, and in accordance with §1146 of the Bankruptcy Code and exempt from the payment of transfer and recordation taxes.[1]  See Fla Dept of

---

[1] Section 1146(a) states that "[t]he issuance, transfer, or exchange of a security, or the making of a delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax."

Revenue v Picadilly Cafeterias, Inc., 2007 U.S. LEXIS 13007, 552 U.S. 1074, 128 S. Ct. 741, 169 L. Ed. 2d 579, 76 U.S.L.W. 3303. Closing on the sale of Debtor's Real Property Asset shall convey title to the purchaser free of all liens, claims, encumbrances and interests to the extent provided in the Sale Order, and without successor liability. The purchaser of the Debtor's Real Property Asset shall conclusively be considered to have purchased such Asset "in good faith" pursuant to Bankruptcy Code §363(m), and the Confirmation Order shall include a specific finding and determination to that effect. If a Person who asserts a lien with respect to the Real Property Asset so sold does not object to this Plan, such Person shall be deemed to have consented to the sale free and clear of such Person's asserted Lien.

6.3    Conditions of Effectiveness of Plan. Under the Plan, in order for the Effective Date to occur, the conditions of the Debtor as set forth in the Plan and described below must be satisfied or waived:

The conditions precedent to the Effective Date of the Plan as to the Debtor are as follows:

1. The Bankruptcy Court shall have entered the Confirmation Order;

2. Any other order necessary to satisfy any conditions to effectiveness of the Plan shall be a Final Order; and

3. All other documents provided for under the Plan shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefitted by such documents.

If any of the conditions to consummation and the occurrence of the Effective Date as to the Debtor have not been satisfied or duly waived by the Debtor (i) on or before the first Business Day that is more than thirty (30) days after the Confirmation Date or (ii) by such later date as is proposed by the Debtor after notice and a hearing approved by the Bankruptcy Court, the Confirmation Order may be vacated by the

Bankruptcy Court; provided, however,  that notwithstanding the filing of such motion, the Confirmation Order shall not be vacated if each of the conditions to the consummation is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion.  If the Confirmation Order is vacated for failure to satisfy the conditions precedent, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any Administrative Expenses, Claims against the Debtor, (b) prejudice in any manner the rights of the Holder of any Administrative Expense, against the Debtor, or (c) prejudice in any manner the  rights of the Debtor in its Bankruptcy Case.

6.4    Failure to Achieve Effective Date.  In the event that the transactions contemplated in the Sale Order do not occur for any reason, or the Effective Date does not otherwise occur, The Debtor shall have the right to modify the Plan pursuant to §1127 of the Bankruptcy Code, and all Creditors expressly reserve the right to support or oppose such Plan modification.

6.5    Continued Corporate Existence.   Upon completion of the Plan, and filing of all outstanding tax returns, the Debtor shall not continue to exist as a limited liability company, and shall terminate such existence under applicable law.

ARTICLE 7

ACCEPTANCE OR REJECTION OF THE PLAN

7.1    Each Impaired Class Entitled to Vote Separately.   The holders of Claims in each impaired Class of Claims shall be entitled to vote separately to accept or reject the Plan.  Because this Plan pays all Allowed Creditors in order of their

priority in complete liquidation of all Property, the Debtor asserts that all Classes are impaired and are entitled to vote.

7.2    <u>Acceptance by an Impaired Class</u>.  Consistent with §1126(c) of the Bankruptcy Code and except as provided for in §1126(c) of the Bankruptcy Code, an impaired Class of Claims shall have accepted this Plan if it is accepted by at least two thirds in dollar amount and more than one half in number of the Holders of Allowed Claims of such Class that have timely and properly voted on this Plan.

7.3    <u>Impairment Controversies</u>.   If a controversy arises as to whether any Claim of Class of Claims is Impaired under the Plan, such Claim or Class of Claims shall be treated as specified in the Plan unless the Bankruptcy Court shall determine such controversy upon motion of the party challenging the characterization of a particular Claim or a particular Class of Claims under the Plan.

7.4    <u>Cram Down</u>.  The Debtor may utilize the provisions of §1129(b) of the Bankruptcy Code to satisfy the requirements of confirmation of this Plan over the rejection, if any, of any Class entitled to vote to accept or reject this Plan.


## ARTICLE 8
## PROVISIONS GOVERNING DISTRIBUTIONS

8.1    <u>Allocation of Distributions</u>.   Except as otherwise provided herein, distributions to any Holder of an Allowed Claim shall be allocated first to the principal portion of any such Allowed Claim , and, only after the principal portion of any such Allowed Claim is satisfied in full, to any portion of such Allowed Claim comprising interest or other charges (but solely to the extent that such interest or

other charges are an allowable portion of such Allowed Claim). All payments shall be made in accordance with the priorities established by the Bankruptcy Code.

8.2   <u>Delivery of Distributions and Undeliverable Distributions</u>. All distributions To Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the Schedules filed with the Bankruptcy Court unless superseded by the address as set forth on the Proof of Claim filed by such Holder(s) or other writing notifying the Debtor of a change of address. If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Debtor is notified of such Holder's then-current address, at which time any/all missed distributions shall be made to such Holder, without interest from the date of the first attempted distribution. All Claims for undeliverable distributions shall be made on or before sixty (60) days after the date such undeliverable distribution was initially made. After such date, all unclaimed property shall, at the discretion of the Debtor, be used to satisfy the costs of administering and fully consummating the Plan, to the extent such costs would otherwise be paid from available Cash, or become available Cash for distribution in accordance with the Plan, and the Holder of any such Claim shall not be entitled to any other or further distribution under the Plan on account of such Claim.

8.3   <u>Cure Non-Compliance</u>. If any Party in Interest holding any Allowed Claim fails to Receive a payment as provided under the Plan, or if any Party in Interest questions the Debtor's compliance with the Plan in any way, such Party shall give the Debtor written notice thereof, and the Debtor may cure such non-compliance within sixty (60) days of such notice.

8.4   <u>Time Bar for Check Payments</u>. Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not negotiated within sixty (60) days

after the date of issuance thereof. The Holder of the Allowed Claim to whom a check originally was issued shall make any request for reissuance of a check so voided to the Debtor. Any such request for reissuance shall be made on or before thirty (30) days after the expiration of the sixty (60) day period following the date of issuance of such check. After such date, all funds held on account of such voided check shall, at the discretion of the Debtor, be used to satisfy the costs of administering and fully consummating the Plan, to the extent such costs would otherwise be paid from available Cash, or become available Cash for distribution in accordance with the Plan, and the Holder of any such Claim shall not be entitled to any other or further distribution under the Plan on account of such Claim.

8.5     <u>Setoffs</u>. The Debtor may, in accordance with §553 of the Bankruptcy Code and applicable non-bankruptcy law, setoff against any allowed Claim and the distributions to be made pursuant to this Plan on account of such Claim (before any distribution is made on account of such Claim) the claims, rights, and causes of action of any nature that the Debtor may hold against the Holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claims, rights, and causes of action that the Debtor may possess against such Holder. The Debtor shall have the exclusive right and authority to settle claims and recognize setoff rights.

ARTICLE 9
PROCEDURES FOR RESOLVING
<u>AND TREATING DISPUTED CLAIMS</u>

9.1     <u>No Distribution Pending Allowance</u>. Notwithstanding any other provision of this Plan, no payments shall be distributed under this Plan on account of any Disputed Claim unless and until such Claim becomes an Allowed Claim.

28

9.2    <u>Resolution of Disputed Claims</u>.    Notwithstanding any other provision of this Plan to the contrary, after the Confirmation Date, unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Debtor shall have the exclusive right (except as to applications for allowances of compensation and reimbursement of expenses under §§330 and 503 of the Bankruptcy Code, and except as to any objections which have been filed prior to the Confirmation Date by any party) to make and file objections to Claims and shall serve a copy of each objection upon the Holder of the Claim to which the objection is made as soon as practicable , but in to event later than sixty (60)  days after the Confirmation Date. From and after the Confirmation Date, all objections shall be litigated to a Final Order except to the extent the Debtor elects to withdraw any such objection or the Debtor and the Holder elect to compromise, settle, or otherwise resolve any Disputed Claim for an amount of Ten Thousand Dollars ($10,000.00) or more subject to the approval of the Bankruptcy Court  and for amounts of Nine Thousand Nine Hundred Ninety Nine and 99/100 Dollars ($9,999.99) or less without approval of the Bankruptcy Court.

9.3    <u>Estimation</u>.    The Debtor may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to §502(c) of the Bankruptcy Code regardless of whether the Debtor has previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim  at any time, including during litigation concerning any objection to such Claim.  In the event that the Bankruptcy Court estimates any Disputed Claim, the estimated amount may constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim.  All of the aforementioned Claim objection, estimation and resolution procedures are cumulative and not necessarily exclusive

of one another.   On and after the Confirmation Date, Claims which have been estimated subsequently   may be compromised, settled, withdrawn, or otherwise resolved subject to approval by the Bankruptcy Court as provided in this Plan.

9.4    <u>Cancellation of Liens</u>.  Except as otherwise provided herein, as of The Effective Date, any Lien securing any Secured Claim shall be deemed released and discharged, and the Holder of each such Secured Claim shall be authorized and directed to release any Collateral  or other property of the Debtor held by such Holder and to take such actions as may be reasonably requested by the Debtor to evidence release of such Lien, including without limitation, by the execution, delivery, and filing or recording of such releases as may be requested by the Debtor.

ARTICLE 10
DISCHARGE, EXCULPATION FROM
<u>LIABILITY,RELEASE, AND GENERAL INJUNCTION</u>

10.1    <u>Discharge of Claims</u>.    Except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall operate as a discharge, pursuant to §1141(d) of the Bankruptcy Code to the fullest extent permitted by applicable law, as of the Effective Date, of the Debtor, and any of their successors or assigns, from any and all Debts, Liabilities or Claims of any nature whatsoever against the Debtor that arose at any time prior to the Effective Date, including any and all Claims for principal and interest, whether accrued before, on, or after the Petition Date.  Except as otherwise expressly provided herein or in the Confirmation Order, but without limiting the generality of the foregoing, on the Effective Date, the Debtor and any of their successors or assigns shall be discharged, to the fullest extent permitted by applicable law, from any Claim or Debt that arose prior to the Effective Date and from any and all Debts of the kind specified in §§502(g), §502(h), or §502(i) of the Bankruptcy Code, whether or not (a) a Proof of

30

Claim based on such Debt was filed pursuant to §501 of the Bankruptcy Code, (b) a Claim based on such Debt is an Allowed Claim pursuant to §502 of the Bankruptcy Code, or (c) the Holder of a Claim based on such Debt has voted to accept the Plan. As of the Effective Date, all Persons, including all Holders of claims, shall be forever precluded and permanently enjoined from asserting directly or indirectly against the Debtor, and any of their successors and assigns, any other or further Claims, Debts, rights, causes of action, remedies, Liabilities or interests based upon any act, omission, document, instrument, transaction, event, or other activity of any kind or nature that occurred prior to the Effective date or that occurs in connection with implementation of the Plan, and the Confirmation Order shall contain appropriate injunctive language to that effect.  In accordance with the foregoing, except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall be a judicial determination of the discharge or termination of all such Claims and other Debts and liabilities against the Debtor, pursuant to §§524 and 1141 of the Bankruptcy Code, to the fullest extent permitted by applicable law, and such discharge shall void any judgment obtained against the Debtor, at any time, to the extent that such judgment relates to a discharged or terminated Claim, Liability, Debt, or interest.  Notwithstanding the foregoing, the Debtor shall remain obligated to make payments and distributions to the Holders of Allowed Claims as required pursuant to the Plan.

      10.2  <u>Release</u>.  Upon completion of all payments under the Plan, for good and valuable consideration, the adequacy of which is hereby confirmed, Creditors Claims shall be discharged and not have or incur, and the Debtor is hereby released from, any claim, obligation, cause of action,  or liability to one another, for any act or omission before or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the operation of the Debtor's business (other than liabilities incurred in the ordinary course of business), this

Chapter 11 case, the filing of this case, the formulation, preparation, dissemination, approval, confirmation, administration, implementation, or consummation of the Plan.

      10.3   <u>Exculpation from Liability</u>.  Neither the Debtor, nor the Sole Member of the LLC, nor any of their attorneys, consultants, advisors, and agents (acting in such capacity) (collectively, the "Exculpated Parties") shall have or incur any liability to any person or Entity for any act taken or omitted to be taken in connection with or arising out of the commencement of the Chapter 11 Case, the formulation, preparation, dissemination, implementation, confirmation or approval of this Plan, any other plan of reorganization or any compromises or settlements contained herein, any disclosure statement related thereto or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the transactions set forth in the Plan or in connection with any other proposed plan; provided, however, that the foregoing provisions shall not affect the liability that otherwise would result from any such act or omission to the extent that any such act or omission is determined in a Final Order to have constituted gross negligence, willful misconduct or bad faith.  Each of the foregoing parties in all respects shall have been and shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities during the Chapter 11 Case and under this Plan.  The rights granted under this paragraph are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law.  Nothing in this Section 10.3 or elsewhere in this Plan shall release, discharge, or exculpate any non-Debtor party from (a) any claim owed to the United States government or its agencies, including any liability arising  under the Internal Revenue Code or criminal laws of the United States, (b)  any claim arising pre-petition, or (c)  any

claim of any Claimant except as expressly set forth herein.  This exculpation from liability provision is an integral part of the Plan and is essential to its implementation.

10.4   <u>General Injunction</u>.  Pursuant to §§105, 363, 365, 524, 1123, 1129, and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for herein, as of the Confirmation Date, except as otherwise expressly provided for herein or in the Confirmation Order, all Persons that have held, currently hold, or may hold a Claim, Debt, Lien, judgment, arbitration award, or liability that is discharged or terminated pursuant to the terms of this Plan are and shall be permanently enjoined and forever barred from taking any of the following actions on account of any such discharge or terminated Claims, Debts, Liens, judgments, arbitration awards, or liabilities, other than actions brought to enforce any rights or obligations under the Plan or the Plan Documents:

    (a)    commencing or continuing in any manner, directly or indirectly, any action or other proceeding (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against the Debtor and any of their successors and assigns, and their assets or property;

    (b)    enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, arbitration award or order against the Debtor and any of their successors and assigns, and the assets or property of any of them;

    (c)    creating, perfecting, or enforcing any Lien or encumbrance against the Debtor and any of their successors and assigns, and the assets or property of any of them;

    (d)    asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability, or obligation due to the Debtor and any of their successors and assigns, and the assets or property of any of them;

    (e)    commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or

    (f)    interfering with or in any manner whatsoever disturbing the rights and remedies the Debtor and any of their successors and assigns, and the assets or property of any of them, under the Plan

and the Plan Documents and the other documents executed in connection therewith.

The Debtor shall have the right to independently seek enforcement of this general injunction provision. This general injunction provision is an integral part of the Plan and is essential to its implementation.

10.5    Term of Certain Injunctions and Automatic Stay.

10.5.1  All injunctions or automatic stays for the benefit of the Debtor pursuant to §§105, 362 or other applicable provision of the Bankruptcy Code, or otherwise provided for in the Bankruptcy Case, and in existence on the Confirmation Date, shall remain in full force and effect following the Confirmation Date, unless otherwise agreed by the Debtor or ordered by the Bankruptcy Court.

10.5.2  With respect to lawsuits, if any, pending in courts in any jurisdiction (other than the Bankruptcy Court) that seek to establish the Debtor's liability on Prepetition Claims asserted herein and that are stayed pursuant to §362 of the Bankruptcy Code , such lawsuits shall be deemed dismissed as of the effective date, unless the Debtor affirmatively elects to have such liability established by such other courts, and any pending motion(s) seeking relief from the automatic stay for the purposes of continuing any such lawsuits in such other courts shall be deemed denied as of the Effective Date, and the automatic stay shall continue in effect, unless the Debtor affirmatively elects to have the automatic stay lifted and to have such liability established by such other courts; and the Prepetition Claims at issue in such lawsuits, if any, shall be determined and either allowed or disallowed in whole or in part by the Bankruptcy Court pursuant to the applicable provisions of the Plan, unless otherwise elected by the Debtor as provided herein.

10.5.3  Lawsuits, if any, pending in courts in any jurisdiction (other than the Bankruptcy Court) that seek to establish liability of the Debtor on

34

Prepetition Claims asserted therein shall be deemed dismissed with prejudice as of the Effective Date.

10.6   <u>Liability for Tax Claims</u>.   Unless it is a tax arising from the sale contemplated by this Plan, a taxing Governmental Unit has asserted a Claim against the Debtor before the Bar Date established therefore, no Claim of such Governmental Unit shall be Allowed against the Debtor or their member(s), or agents for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtor, any of their member(s), or affiliates, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period, or (ii) an audit of any return for a period before the Petition Date.

10.7   <u>Regulatory or Enforcement Actions</u>.   Nothing in this Plan shall restrict any federal government regulatory agency from pursuing any regulatory or police enforcement action against the Debtor, or their successors or assigns, but only to the extent not prohibited by the automatic stay of §362 of the Bankruptcy Code or discharged or enjoined pursuant to §§524 or 1141(d) of the Bankruptcy Code.


ARTICLE 11
<u>RETENTION OF JURISDICTION</u>

11.1   <u>Jurisdiction of the Bankruptcy Court</u>.   Unless otherwise provided by a prior Order in the Bankruptcy Case, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to,  the Bankruptcy Case and this Plan pursuant to, and for the purposes of §§105(a) and 1142 of the Bankruptcy Code and for, among other things the following purposes until such time as the Debtor's obligations under the Plan are fully discharged:

(a)    To hear and determine any and all pending adversary proceedings, applications, and contested matters;

(b)    To hear and determine any objections to any Claims'

(c)    To liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated Claim;

(d)    To adjudicate all Claims to any Lien on any of the Debtor's assets, or proceeds thereof;

(e)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated, and/or if the Effective Date never occurs;

(f)    To issue such orders in aid of execution of this Plan to the extent authorized by §1142 of the Bankruptcy Code;

(g)    To consider any modifications of this Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(h)    To hear and determine all applications for compensation and reimbursement of expenses of Professionals under §§330, 331, and 503(b) of the Bankruptcy Code;

(i)    To enforce and interpret the Plan and to hear and determine any dispute or any other matter arising out of or related to this Plan;

(j)    To recover all assets of the Debtor, wherever located;

(k)    To hear and determine matters concerning state, local, and

federal taxes in accordance with §§346, 505, and 1146 of the Bankruptcy Code;

(l)    To enforce and interpret the discharge of Claims affected by this Plan and to enter and implement such orders as may be appropriate with regard thereto;

(m)    To hear any other matter consistent with the provisions of the Bankruptcy Code;

(n)    To enter a final decree closing the Bankruptcy Case; and

(o)    To hear and determine such other issues as the Court deems necessary and reasonable to carry out the intent and purposes of this Plan.

## ARTICLE 12
## TAX CONSEQUENCES OF THE PLAN

12.1   <u>No Tax on Transfers</u>.   Pursuant to §1146(a) of the Bankruptcy Code: (i) the issuance, distribution, transfer or exchange of interests or other Property; (ii) the creation, modification, consolidation, or recording of any deed of trust or other security interest, the securing of additional indebtedness by such means or by other means in furtherance of or in connection with this Plan, the Confirmation Order, and any related documents; (iii) the making, assignment, modification or recording of any lease or sublease; (iv) the sale or transfer of Real Property Asset(s), shall be deemed exempt from all taxes arising from such sale or transfer which would otherwise be imposed at the time of transfer or sale, which are determined by consideration for or value of the Property being transferred, or as a percentage thereof, including taxes imposed by the State of Maryland and/or the District of Columbia or other applicable law, or (v) the making, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, the Confirmation Order, any related documents or any transaction contemplated above, or any transaction(s) arising out of, contemplated by or in any way related to the foregoing, including without limitation the Real Property, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real estate transfer tax, mortgage recording

tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall be, and hereby are directed to forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

12.2   <u>Tax Consequences to Holders of Claims</u>.   The implementation of this Plan may have federal, state, and local tax consequences to the Holders of Claims. No tax opinion has been sought or will be obtained with respect to any tax consequences of this Plan.   HOLDERS OF CLAIMS ARE ADVISED TO CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM OF THE TRANSACTIONSS CONTEMPLATED BY THIS PLAN.

12.3   <u>Federal Income Tax Consequences to the Debtor</u>.  The implementation of this Plan may have federal, state, and local tax consequences to the Debtor's member(s).  THE DEBTORS MEMBER(S) ARE ADVISED TO CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THIS PLAN.

## ARTICLE 13
## <u>MISCELLANEOUS PROVISIONS</u>

13.1   <u>Professional Fees and Expenses</u>.   As of the Effective Date, the Debtor shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the Professionals

employed by the Debtor in connection with the implementation and consummation of this Plan, the claims reconciliation process, and any other matters as to which such Professionals may be engaged.

13.2    <u>Waiver of Certain Fees</u>.    Unless otherwise provided in this Plan, all Holders of Allowed Unsecured Claims or Allowed Priority Claims waive all penalties, default interest, and/or late fees that may have accrued on their Claims. Nothing in this Plan shall impair or affect the Holders of Allowed Secured Claims to collect penalties, default interest and/or late fees.

13.3    <u>U.S. Trustee Fee</u>. The Debtor is and shall remain current in paying all fees owed to the U.S. Trustee until the Bankruptcy Case is closed.

13.4    <u>Payment of Statutory Fees</u>.    All fees payable pursuant to Chapter 123 of Title 28, United States Code, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid by the Debtor.

13.5    <u>Modification of the Plan</u>. The Debtor reserves the exclusive right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan and to solicit acceptances of any amendments or modifications hereto, before the Confirmation Date.

After the entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with §1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan. A Holder of an Allowed Claim that is deemed to have accepted this Plan shall be deemed to have accepted this Plan as modified if the proposed

modification does not materially and adversely change the treatment of the Claim of such Holder.

13.6   <u>Withdrawal or Revocation</u>.   The Debtor may withdraw or revoke this Plan at any time prior to the Confirmation Date. If the Debtor withdraws or revokes this Plan prior to the Confirmation Date or if the Confirmation Date does not occur for any reason, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

13.7   <u>Courts of Competent Jurisdiction</u>.   If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of this Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

13.8   <u>Notice to Debtor</u>.   Any notices, or requests of, the Debtor by a Party in Interest under or in connection with this Plan shall be in writing and served either (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following Parties:

>   Deirdre T. Johnson, Esq
>   9701 Apollo Dr, Suite 301
>   Upper Marlboro, MD  20774

13.9   <u>Severability</u>.   In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of this Plan is invalid, void, or

unenforceable, the Bankruptcy Court, with the consent of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose off the term or provision to be held invalid void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.10 <u>Governing Law</u>. Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the United States of America and, when applicable, the State of Maryland, without giving effect to the principles of conflicts of law thereof.

13.11 <u>Headings</u>. Headings are used in this Plan for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

5410 30th Street DC, LLC

By: /s/ Zanetta Williams

Name: Zanetta Williams

Title: Sole Member

# EXHIBIT 2

# District of Maryland
# Claims Register

### 25-19605 5410 30th Street DC LLC

**Judge:** Lori S. Simpson      **Chapter:** 11
**Office:** Greenbelt      **Last Date to file claims:** 02/17/2026
**Trustee:** For Internal Use Only      **Last Date to file (Govt):** 04/13/2026

| | | |
|---|---|---|
| *Creditor:*    (32988016)    <u>History</u><br>BHI Construction, and Any/All Affiliates<br>9342 Annapolis Rd<br>Lanham, MD 20706 | **Claim No: 1**<br>*Original Filed<br>Date:* 10/30/2025<br>*Original Entered<br>Date:* 10/30/2025 | *Status:*<br>*Filed by:* CR<br>*Entered by:* admin<br>*Modified:* |

Amount claimed: $124435.90
Priority  claimed:  $15150.00

*History:*
<u>Details</u>   ⬣   <u>1-1</u>   10/30/2025 Claim #1 filed by BHI Construction, and Any/All Affiliates, Amount claimed: $124435.90
                      (admin)

*Description:*
*Remarks:*

| | | |
|---|---|---|
| *Creditor:*    (33150151)<br>IBI Falcon US LLC<br>c/o Maurice VerStandig<br>The VerStandig Law Firm, LLC<br>9812 Falls Road, #114-160<br>Potomac, Maryland 20854 | **Claim No: 2**<br>*Original Filed<br>Date:* 01/29/2026<br>*Original Entered<br>Date:* 01/29/2026 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Maurice Belmont VerStandig<br>*Modified:* |

Amount  claimed: $2676531.91
Secured claimed: $2676531.91

*History:*
<u>Details</u>   ⬣   <u>2-1</u>   01/29/2026 Claim #2 filed by IBI Falcon US LLC, Amount claimed: $2676531.91 (VerStandig, Maurice)

*Description:* (2-1) Money Loaned
*Remarks:*

| | | |
|---|---|---|
| *Creditor:*    (33159402)<br>T&AA CONSTRUCTION LLC<br>21220 Dorsey Spring Pl<br>21220 Dorsey Spring Pl<br>Germantown, MD 20876 | **Claim No: 3**<br>*Original Filed<br>Date:* 02/06/2026<br>*Original Entered<br>Date:* 02/06/2026 | *Status:*<br>*Filed by:* CR<br>*Entered by:* admin<br>*Modified:* |

Amount claimed: $416852.00
Priority  claimed: $249776.00

*History:*
<u>Details</u>   ⬣   <u>3-1</u>   02/06/2026 Claim #3 filed by T&AA CONSTRUCTION LLC, Amount claimed: $416852.00 (admin)

*Description:*
*Remarks:*

## Claims Register Summary

**Case Name:** 5410 30th Street DC LLC
**Case Number:** 25-19605
**Chapter:** 11
**Date Filed:** 10/14/2025
**Total Number Of Claims:** 3

| | |
|---|---|
| Total Amount Claimed* | $3217819.81 |
| Total Amount Allowed* | |

*Includes general unsecured claims

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

| | Claimed | Allowed |
|---|---|---|
| Secured | $2676531.91 | |
| Priority | $264926.00 | |
| Administrative | | |
| Other | $276361.90 | |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 02/10/2026 10:20:19 | | |
| PACER Login: | dtjohn98 | Client Code: | |
| Description: | Claims Register | Search Criteria: | 25-19605 Filed or Entered From: 1/1/1900 Filed or Entered To: 2/10/2026 |
| Billable Pages: | 1 | Cost: | 0.10 |