IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | | |
|---|---|---|
| In re: | | |
| 5410 30th Street DC, LLC, | | Case No.: 25-19605 |
| Debtor | | Chapter 11 |

## DEBTOR'S OBJECTION TO AMENDED PROOF OF CLAIM NO. 2

## FILED BY IBI FALCON US LLC

5410 30th Street DC LLC, the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through undersigned counsel, hereby objects to Amended Proof of Claim No. 2 (Claims Register 2-2) (the "Amended Claim") filed by IBI Falcon US LLC ("IBI Falcon" or "Claimant") pursuant to 11 U.S.C. § 502(b), Fed. R. Bankr. P. 3007, and Local Bankruptcy Rule 3007-1.

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (G), and (O).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Relief is sought under 11 U.S.C. §§362(a), 502(b), 506(a), and 544(a), and Fed. R. Bankr. P. 3007, 9014, and 9020.

## II. INTRODUCTION

3. The Debtor filed a petition for Chapter 11 bankruptcy (DE#1) protection on October 14, 2025 (the "Petition Date").

4. When the bankruptcy schedules were subsequently filed on October 29, 2025, the debt to IBI SBL Investment LLP / IBI Falcon US, LLC was listed on Schedule D – Claims Secured by Property as "disputed" (DE#15).

5. On January 29, 2026, IBI Falcon filed Proof of Claim #2-1 asserting a secured claim to enforce the promissory note (Proof of Claim  2-1 Document #2) in the amount of $2,676,531.91.

6. The Debtor filed an objection to the claim on February 26, 2026 (DE #116), alleging that the Claimant asserted a secured claim against the Debtor's sole real property asset but failed to demonstrate that it is the holder of the promissory note or otherwise entitled to enforce the Note, and further stating that he claim therefore lacks prima facie validity and should be disallowed.

7. In response, an Amended Proof of Claim was filed By IBI Falcon (DE# 126) on March 28, 2026 asserting a secured claim of $2,676,531.91 against the Debtor's primary asset—the real property located at 5631 MacArthur Boulevard NW, Washington, D.C. 20016 (the "Property").

8. IBI Falcon's Amended Claim should be disallowed in its entirety, or at minimum reclassified as wholly unsecured, for the following independently sufficient reasons:

   a) The allonges purporting to endorse the promissory note  bear only an "effective date" — not an execution date — and contain no evidence of when they were actually signed. (See Amended Proof of Claim 2-2, Document #4 and Amended Proof of Claim 2-2, Document 6).  Filed only after the Debtor objected to the original claim, the allonges are presumptively backdated instruments that do not establish IBI Falcon's standing as of the Petition Date;

b) Instruments affecting real property must be properly executed and acknowledged according to law by the person granting or contracting his or her right, title, or interest in the real property (See D.C. Code § 42-407). Where signatories have no legally recorded power of attorney, no actual authority exists (no written grant of power), and no apparent authority exists (no recorded instrument that would put third parties on notice). Here, the chain of title to both the note and the deed of trust is broken by unauthorized signatories acting without any legally recorded power of attorney, in direct violation of D.C. Code § 21-2603.03, rendering both assignments void or voidable;

c) The fees and charges embedded in the Amended Claim are unsupported by valid written agreements, and significant portions are attributable to void or unauthorized instruments.

d) The Debtor further notes that IBI Falcon's Response to the Debtor's original objection (DE #126) contains inflammatory and prejudicial characterizations of the Debtor's legitimate exercise of its statutory right to object to a proof of claim. Those characterizations are addressed in a concurrently filed Motion to Strike, and the Debtor objects to any use of IBI Falcon's pejorative language from DE #126 as bearing on any collateral proceeding in this case.

e) The Debtor files concurrently:

(i) a Motion for Determination That IBI Falcon Is Not a Party in Interest Pursuant to 11 U.S.C. §§ 101(5), 101(10), and 1109(b);

(ii) a Motion to Strike Prejudicial and Inflammatory Characterizations from DE #126; and

(iii) a Motion for Leave to Conduct Rule 2004 Examination and Discovery. The Debtor incorporates by reference the facts, arguments, and exhibits from its previously filed Motion to Enforce the Automatic Stay and for Sanctions (DE #60).

## II. BACKGROUND AND COMPLETE TIMELINE

### A. The Loan and Original Parties

9. On May 3, 2023, the Debtor executed a Promissory Note (the "Note") in the original principal amount of $2,222,000.00 payable to FTF Lending, LLC ("FTF Lending") (See Proof of Claim 2-1, Document #2 and Amended Proof of Claim 2-2, Document 2), with a stated maturity date of June 1, 2024 and an applicable interest rate of 12.49% per annum.

10. Simultaneously, the Debtor executed a Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Deed of Trust") encumbering the Property, recorded in the DC Land Records on May 10, 2023 as Instrument No. 2023039109 (See Proof of Claim 2-1, Document #3 and Amended Proof of Claim 2-2, Document 3).

11. IBI Falcon claims to hold both the Note and the Deed of Trust through two purported transfers. The Debtor disputes the legal effectiveness of each transfer.

### B. Complete Timeline of Material Events

| Date | Event | Status |
|------|-------|--------|
| May 3-10, 2023 | Note executed; Deed of Trust executed and recorded (Inst. 2023039109). | |
| March 6, 2024 | First Allonge 'effective date' — signed by Nolan Helline (title: Capital Markets Financial Analyst). NO execution date on document. No POA of record authorizing Helline. | |

| | | |
|---|---|---|
| March 27, 2024 | First Assignment of Deed of Trust recorded (Inst. 2024028399). No POA of record authorizing Helline to convey FTF Lending's interest. | |
| June 1, 2024 | Note matures. Loan goes into default. | |
| June 30, 2025 | Second Allonge and Second Assignment 'effective date.' NO execution date on Second Allonge. Gingo Palumbo POA not of public record. | |
| July 8-9, 2025 | Second Assignment executed July 8 and recorded July 9, 2025 (Inst. 2025067961). POA not yet recorded — 89 days premature. | |
| July 10, 2025 | IBI SBL Investment LP purports to execute loan extension — 10 days after having allegedly transferred the Note to IBI Falcon. | |
| Oct 6, 2025 | Gingo Palumbo POA finally recorded in DC Land Records — 89 days after the Second Assignment it purported to authorize. (*See* Exhibit #1) | |
| Oct 12, 2025 | Payoff statement issued directing payment to 'IBI Falcon High Yield, LP' — a legally distinct entity from the Claimant. | |
| Oct 14, 2025 | PETITION DATE. Automatic Stay commences under 11 U.S.C. § 362(a). | |
| Oct 15, 2025 | BNC attempts notice to IBI Falcon at Tel Aviv address (incorrect zip code). IBI Falcon listed as 'BYPASSED RECIPIENT' due to foreign address. | |
| Oct 16, 2025 | Michael J. Palumbo of Gingo Palumbo Law Group LLC — IBI Falcon's own Attorney-in-Fact and legal representative — emails Debtor's principal directly, identifies himself as IBI Falcon's representative, provides his Ohio address, and transmits a Notice of Intent to Foreclose on this exact Property. IBI Falcon's agent has actual knowledge of the Debtor and this Property as of this date. (Exhibit #4) | NOTICE TO AGENT |
| Oct 17, 2025 | Debtor's counsel receives BNC undeliverability notice for Tel Aviv address. Debtor immediately takes steps to re-serve. | |
| Oct 18, 2025 | Debtor re-serves bankruptcy notice via USPS First-Class Mail to: (1) corrected Tel Aviv address; and (2) Gingo Palumbo Law Group LLC, 4700 Rockside Road, Suite 440, Independence, Ohio 44131 — the address Palumbo provided in his Oct 16 email. | |
| ~Oct 21, 2025 | Per USPS service standards (3 days from zip 20774 to Ohio), Gingo Palumbo receives mailed bankruptcy notice. Notice to agent = notice to principal. IBI Falcon has imputed notice of the bankruptcy. (*See* Exhibit #2) | NOTICE IMPUTED |
| Nov 11, 2025 | IBI Falcon's Affidavit of Non-Residential Mortgage Foreclosure executed by Michael J. Palumbo — the same attorney who emailed the Debtor on Oct 16. Signed 26 days after agent received mailed notice. (*See* DE #60, Exhibit 1) | |
| Nov 13, 2025 | Affidavit of Foreclosure recorded in DC Land Records (Doc. 2025110562) — 30 days post-petition, 23 days after agent received mailed notice. (See DE #60, Exhibit #1) | STAY VIOLATION |

| Nov 18-19, 2025 | Deed of Appointment of Substitute Trustee executed and recorded (Doc. 2025112580) — 36 days post-petition, 29 days after agent received mailed notice. (See DE #60, Exhibit 2) | STAY VIOLATION |
|---|---|---|
| 0Dec 3, 2025 | Debtor files Motion to Enforce Automatic Stay and for Sanctions (DE #60). | |
| Dec 17, 2025 | IBI Falcon files Opposition claiming it had no notice of the bankruptcy when it recorded the foreclosure instruments.— contradicted by its own agent's October 16 email.(DE #68) | |
| Mar 28, 2026 | IBI Falcon files Amended Proof of Claim, attaching allonges for the first time — bearing only 'effective dates,' not execution dates - and that were not included in the original filing. (*See* Amended Proof of Claim 2-2, Document #4 and Amended Proof of Claim 2-2, Document 6) | |

## IV. LEGAL STANDARD

12. A filed proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a).

13. Upon objection, the Court must determine the allowed amount of the claim as of the petition date. 11 U.S.C. § 502(b).

14. A claim unenforceable against the debtor under applicable law shall be disallowed. 11 U.S.C. § 502(b)(1).

15. The filing of an amended claim does not moot a pending objection where the amendment fails to cure substantive deficiencies. See In re Bryant, 397 B.R. 903 (Bankr. N.D. Ind. 2008).

16. Where the legal effectiveness of the instruments underlying a claim is challenged on the face of the record, the burden shifts to the claimant to establish it is the lawful holder of a valid, enforceable claim. See In re Harford Sands Inc., 372 F.3d 637, 640 (4th Cir. 2004).

## V. GROUNDS FOR DISALLOWANCE OR REDUCTION

### A. The Allonges Are Presumptively Backdated and Do Not Establish IBI Falcon's Standing as of the Petition Date

17. In bankruptcy, a claimant must establish standing at the commencement of the case. (See Velardo v. Bank of America (In re Velardo), 596 B.R. 448, 456 (Bankr. N.D. Cal. 2018)) and In re Veal, 450 B.R. 897, 912 (B.A.P. 9th Cir. 2011)).

18. To be the holder of the Note as of October 14, 2025, IBI Falcon must demonstrate that the allonges were executed, delivered to it—and affixed to the Note—before that date. It cannot do so.

19. An "effective date" is often a retroactive mechanism, a legal accounting device used to designate when the parties wish a transaction to be treated as having occurred—not evidence of when the transaction actually occurred -  and it cannot substitute for such evidence.

20. By contrast, a standard negotiable instrument endorsement is dated with an execution date—the actual date of signing—because under the Uniform Commercial Code, the transfer of a negotiable instrument requires contemporaneous execution, delivery, and (where an allonge is used) affixation to the instrument. See UCC § 3-201 (negotiation requires transfer of possession); UCC § 3-204(a) (endorsement must be on the instrument or a firmly affixed paper).

21. Here, both allonges bear only an "effective date"—not an execution date, a signing date, a notarization date, or any other indication of when the instruments were actually signed.

22. The First Allonge states: "The effective date of this Endorsement and Allonge is 03/06/2024." (See Amended Proof of Claim 2-2, Document #4).

23. The Second Allonge states: "The effective date of this Endorsement and Allonge is 06/30/2025." (See Amended Proof of Claim 2-2, Document 6)

24. Standard negotiable instrument practice requires an execution date—the actual date of signing—precisely because under the Uniform Commercial Code, transfer of a negotiable instrument requires contemporaneous execution, delivery, and (where an allonge is used) physical affixation. See UCC § 3-201 (negotiation requires transfer of possession); UCC § 3-204(a) (endorsement must be on the instrument or firmly affixed paper).

25. The deliberate use of an "effective date" rather than an execution date on instruments purporting to negotiate a $2,222,000.00 promissory note is facially anomalous and legally insufficient to establish the date of transfer.

26. Where a creditor wishes to establish its status as holder as of the petition date, it must demonstrate actual execution before that date—not merely the retroactive designation of one.

27. The suspicion created by the undated signatures is compounded—indeed, effectively confirmed—by the filing sequence in this case, which confirms what the missing execution dates suggest: IBI Falcon filed its original Proof of Claim with a complete copy of the Note but without attaching either allonge. (See Proof of Claim 2-1).

28. The allonges appeared for the first time in the Amended Claim, filed March 28, 2026— only after the Debtor objected to the original claim on the precise ground that no allonges had been produced. (*See* Amended Proof of Claim 2-2).

29. This filing sequence constitutes a judicial admission that the allonges were not in IBI Falcon's possession, or were not associated with the Note – and definitely were not affixed to the note - at the time of the original filing.

30. If IBI Falcon had held properly executed and affixed allonges, there is no conceivable reason they would have been omitted.

31. The only inference supported by this record is that the allonges were prepared and executed after the Debtor's objection, and that the "effective dates" were inserted precisely to create the appearance that the transfers had occurred before the bankruptcy was filed.

32. Therefore, IBI Falcon is not a holder of the Note under D.C. Code § 28:1-201(b)(21) and lacks standing to enforce it under D.C. Code § 28:3-301.  IBI Falcon's claim must be disallowed for lack of standing.

33. The Debtor further notes that the Note itself—an eleven-page instrument—contains ample blank space on the signature page for a direct endorsement.

34. The Note's signature page (page 92 of the filed record) contains ample blank space for a direct endorsement, yet contains no endorsement whatsoever, which means no endorsement was made on the face of the instrument at any time. An allonge is proper only where there is insufficient space on the instrument itself for an endorsement.

35. The decision to use separate allonge documents where space existed on the Note—combined with their eleven-month and five-month respective absences from the case file—is powerful evidence that these instruments were created after the fact and were never physically associated with the Note before or at the time of the purported transfers.

36. Because IBI Falcon cannot demonstrate that the allonges were executed, delivered, and affixed to the Note before October 14, 2025, it cannot establish that it held the Note at the commencement of this case, and its claim must be disallowed for lack of standing.

**B. The First Assignment and First Allonge Are Void for Lack of Recorded Power of Attorney and Unauthorized Signature —Nolan Helline Acted Without Recorded Authority**

37. D.C. Code § 21-2603.03 requires that where an agent executes an instrument conveying an interest in real property, the power of attorney must be recorded with or prior to that instrument.

38. The First Assignment, recorded March 27, 2024, was signed by Nolan Helline as purported agent for FTF Lending, LLC.

39. No power of attorney authorizing Mr. Helline to convey FTF Lending's interest in the Deed of Trust was ever recorded in the DC Land Records - not before, contemporaneously with, or after the First Assignment (See Exhibit #5).

40. The First Assignment contains no cross-reference to any recorded power of attorney.

41. Recording the POA is a condition precedent to a valid conveyance by an agent under D.C. law.

42. Because that condition was never satisfied, the First Assignment is a defective grant under D.C. law, and the purported transfer never legally occurred.

43. Separately, the First Allonge was signed by Nolan Helline, whose stated title is "Capital Markets Financial Analyst." (*See* Amended Proof of Claim 2-2, Document 4).

44. This title does not, as a matter of law or commercial custom, carry authority to endorse a $2,222,000.00 negotiable instrument on behalf of a corporate entity.

45. Under UCC § 3-403, adopted at D.C. Code § 28:3-403, an unauthorized signature does not operate as the signature of the represented person.

46. No corporate resolution, board authorization, or power of attorney establishing Mr. Helline's authority to bind FTF Lending has been produced.

47. The First Allonge is therefore ineffective, and the Note was never validly negotiated to IBI SBL Investment LP.

48. Because IBI SBL never validly received the Note, the Second Allonge—purporting to transfer the Note from IBI SBL to IBI Falcon—is also void; one cannot endorse and transfer an instrument one does not hold.

C. The Second Assignment Is Void—The Power of Attorney Was Recorded 89 Days After the Assignment It Purported to Authorize

49. The Second Assignment was recorded July 9, 2025 (See Amended Claim 2-2, Document 7).

50. The power of attorney (POA) authorizing Anthony J. Gingo / Gingo Palumbo Law Group LLC to act on behalf of IBI SBL Investment LP was not recorded in the DC Land Records until October 6, 2025—89 days after the Assignment it purported to authorize (See Exhibit #1).

51. D.C. Code § 21-2603.03 requires the POA to be recorded "with or prior to" the instrument it authorizes. Here, this requirement was not satisfied. This is not a technical deficiency; it

is the failure of a condition precedent to a valid conveyance under D.C. law, rendering the Second Assignment a defective grant.

52. An independent deficiency further reinforces this conclusion: the Second Assignment itself contains no reference to any recorded power of attorney by instrument number or recording date, as D.C. law requires when the POA is recorded prior to the instrument.

53. No person examining the DC Land Records on July 9, 2025 could have verified Mr. Gingo's authority to execute the assignment from the public record.

54. The instrument is defective and fails to provide the constructive notice that is the fundamental purpose of the recording system.

55. Under 11 U.S.C. § 544(a)(3), the Debtor-in-Possession holds the rights of a bona fide purchaser of real property as of the Petition Date and may avoid this imperfectly perfected lien transfer.

56. The Debtor further notes that Michael J. Palumbo—who signed IBI Falcon's post-petition foreclosure instruments as "Authorized Signatory"—is an attorney at Gingo Palumbo Law Group LLC, the same firm that served as IBI SBL's Attorney-in-Fact for the Second Assignment, and that was in active communication with the Debtor about this property on October 16, 2025. This overlapping network of agents and principals warrants rigorous scrutiny of every instrument bearing a Gingo Palumbo signature in this transaction.

D. The Second Allonge's Effective Date Predates IBI SBL's Authority to Assign and Is Undermined by IBI SBL's Post-Transfer Conduct

57. The Second Allonge bears an effective date of June 30, 2025 (See Amended Proof of Claim 2-2, Document 6), purporting to transfer the Note from IBI SBL to IBI Falcon.

58. Yet the record reflects that on July 10, 2025—ten days after this alleged divestiture—IBI SBL Investment LP purported to execute a loan extension agreement extending the maturity date (See Exhibit #3).

59. An entity that has transferred all of its interest in a note has no authority to modify that note's terms.

60. This conduct is either evidence that no genuine transfer had occurred as of June 30, 2025, undermining the claimed effective date, or that the extension is void for lack of authority. Either way, the $22,220.00 extension fee associated with that agreement is not allowable.

E. The Allonges Were Not Firmly Affixed to the Note—Original Filing Is a Judicial Admission

61. Under UCC § 3-204(a), adopted at D.C. Code § 28:3-204(a), a valid endorsement must be written on the instrument or on a paper "so firmly affixed thereto as to become a part thereof."

62. IBI Falcon filed its original Proof of Claim—including the complete Note—without attaching either allonge. This filing constitutes a judicial admission that the allonges were not firmly affixed to the Note at that time.

63. The Note's signature page contains blank space for a direct endorsement, making the use of separate allonges anomalous. IBI Falcon is not a "holder" of the Note under D.C. Code § 28:1-201(21) and lacks standing to enforce it as a holder under D.C. Code § 28:3-301.

F. IBI Falcon's Agent Had Actual Notice of the Bankruptcy on October 16, 2025, Rendering the November Stay Violations Willful

64. Debtor filed a Motion against IBI Falcon for Violation of the Automatic Stay (DE# 60).

65. IBI Falcon's Opposition to the Stay Motion (DE #68) claims no notice of the bankruptcy until November 19, 2025. This is contradicted by IBI Falcon's own documentation.

66. On October 16, 2025—two days after the Petition Date—Michael J. Palumbo of Gingo Palumbo Law Group LLC emailed Zanetta M. Williams, the Debtor's principal, identifying himself as IBI Falcon's representative and transmitting a Notice of Intent to Foreclose on this exact Property (*See* Exhibit #4).

67. Mr. Palumbo is IBI Falcon's Attorney-in-Fact through Gingo Palumbo Law Group LLC. Under the Restatement (Third) of Agency § 5.02, notice to an agent is imputed to the principal.

68. Notice to Gingo Palumbo on October 16, 2025 is notice to IBI Falcon on October 16, 2025.

69. Upon receiving the BNC undeliverability notice on October 17, 2025, the Debtor immediately re-served bankruptcy notice on October 18, 2025 via USPS First-Class Mail to Gingo Palumbo Law Group LLC at 4700 Rockside Road, Suite 440, Independence, Ohio 44131—the address Palumbo provided in his October 16 email.

70. Per USPS service standards for First-Class Mail from zip code 20774 to Ohio (3 business days), Gingo Palumbo received mailed notice on or about October 21, 2025.

71. IBI Falcon recorded the Affidavit of Foreclosure on November 13, 2025—23 days after its agent received mailed notice—and the Appointment of Substitute Trustee on November 19, 2025—29 days after its agent received mailed notice (*See* DE# 60, Exhibit 2).

72. The Appointment of Substitute Trustee replaced the original trustee with a foreclosure attorney (Russell S. Drazin), whose sole function under a deed of trust is to conduct a foreclosure sale.

73. These were not acts taken in innocent ignorance of the bankruptcy. They were deliberate steps toward foreclosure taken with actual and imputed knowledge of the automatic stay, in willful violation of 11 U.S.C. § 362(a)(1), (3), and (4). See In re Lampkin, 116 B.R. 450 (Bankr. D. Md. 1990); In re Seaton, 462 B.R. 582 (Bankr. E.D. Va. 2011); In re Walters, 868 F.2d 665 (4th Cir. 1989).

74. The attorneys' fees and costs incurred by the Debtor in connection with these violations constitute actual damages recoverable under 11 U.S.C. § 362(k)(1).

G. IBI Falcon Is Not a Holder in Due Course

75. Even assuming the endorsements were valid, IBI Falcon cannot be a holder in due course under D.C. Code § 28:3-302 because the Note was overdue at the time of the purported transfer (matured June 1, 2024; effective date of Second Allonge June 30, 2025—thirteen months later).

76. Under D.C. Code § 28:3-302(a)(2)(iii), a purchaser with notice that an instrument is overdue cannot qualify. IBI Falcon therefore takes the Note subject to all personal defenses available to the Debtor.

## H. The Lien Is Avoidable Under 11 U.S.C. § 544(a)(3)

77. As Debtor-in-Possession, the Debtor holds the avoidance powers of a trustee under 11 U.S.C. § 544(a)(3).

78. As of the Petition Date, a bona fide purchaser examining the DC Land Records would find:

> (i) the First Assignment executed by an agent with no recorded POA and no cross-reference to any such instrument; and

> (ii) the Second Assignment executed by an agent whose POA was not recorded until 89 days later, and which the Assignment itself does not cross-reference.

79. A reasonable title examiner would be on inquiry notice that the chain of title was broken.

80. These imperfectly perfected assignments fail to provide constructive notice and are avoidable, rendering IBI Falcon's claim wholly unsecured.

81. The Debtor reserves the right to prosecute this avoidance by adversary proceeding.

## I. The Claimed Fees Are Not Contractually Authorized

82. Under 11 U.S.C. § 506(b), a secured creditor may include only fees that are provided for under the agreement and reasonable. The Amended Claim (2-2) includes the following contested charges that must be disallowed:

> A. Extension Fee (1%, $22,220.00) through June 30, 2025: No documentation of a valid written extension election per Note Section 3.5 has been produced.

B. Forbearance Fee (2%, $44,440.00): The Note contains no forbearance fee provision on its face. No written forbearance agreement has been produced. This fee must be disallowed.

C. Second Extension Fee (1%, $22,220.00) through September 30, 2025: Purportedly executed by IBI SBL Investment LP on July 10, 2025—ten days after IBI SBL had allegedly transferred the Note to IBI Falcon. Void for lack of authority.

D. Post-Petition Foreclosure Costs: Any fees, trustee fees, or costs associated with the void November 2025 foreclosure instruments are not chargeable to the estate.

## J. The Default Interest Calculation Is Disputed

83. The payoff statement (Amended Claim 2-2, Document 8) calculates interest from June 27, 2024—26 days after the June 1, 2024 maturity date, with no explanation for the gap.

84. The Debtor disputes that a valid Event of Default was declared with proper notice, that the 24% default rate was properly triggered, and that the calculation methodology and period are correct.

85. A complete daily accrual schedule is required before any default interest may be allowed.

## K. The Payoff Statement Directs Payment to a Different Entity

86. The payoff statement directs payment to "IBI Falcon High Yield, LP"—a legally distinct entity from "IBI Falcon US LLC," the named Claimant (*See* Amended Claim 2-2, Document 8)).

87. If IBI Falcon High Yield, LP is the entity entitled to payment, then IBI Falcon US LLC is not the real party in interest, and the claim should be disallowed or corrected accordingly.

L. IBI Falcon's Prejudicial Characterizations of the Debtor Must Not Be Considered

88. IBI Falcon's Response to the Debtor's original objection of the Claim (DE #126) characterizes the Debtor's legitimate exercise of its statutory right to object to a proof of claim as: "reminiscent of a tactic favored by consumer mortgage debtors during the fiscal crisis of the late aughts," describes the Debtor's legal arguments as "factually and/or legally spurious," and makes collateral accusations about the Debtor's conduct in the case.

89. These characterizations are inflammatory, irrelevant to the allowability of the Amended Claim, and appear designed to influence this Court's disposition of the Claimant's pending motion to convert this case (DE #95).

90. A debtor's right to object to a proof of claim is expressly preserved by 11 U.S.C. § 502(a) and Fed. R. Bankr. P. 3007 and cannot be penalized through inflammatory advocacy.

91. The Debtor has filed a concurrent Motion to Strike these characterizations and respectfully requests this Court disregard them entirely in adjudicating the present objection and all related proceedings.

VI. THE OBJECTION IS NOT MOOT

92. IBI Falcon argues the Amended Claim moots the Debtor's objection, citing In re Edwards and In re Milano.

93. Those cases applied mootness only where an amendment cured all of the specific deficiencies raised.

94. Here, the Amended Claim cures nothing: the undated and unaffixed allonges, the broken chain of title, the unrecorded powers of attorney, the unauthorized endorsements, the unsupported fees, and the post-petition stay violations all existed in the original claim and persist unchanged in the Amended Claim.

95. Attaching previously withheld documents does not retroactively validate defective instruments.

96. This objection is directed to the Amended Claim and is ripe for adjudication on its merits.

## VII. RESERVATION OF RIGHTS

97. The Debtor reserves all rights to:

(i) amend or supplement this Objection upon completion of Rule 2004 discovery, including discovery into the actual execution dates and chain of custody of the allonges;

(ii) file an adversary proceeding to avoid the purported liens under 11 U.S.C. §§ 544, 548, and 549; and

(iii) assert all additional defenses that may become ripe upon further development of the record.

## VIII. CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that this Honorable Court enter an order:

A. Sustaining the Debtor's Objection to Amended Proof of Claim No. 2;

B. Disallowing the Amended Claim in its entirety pursuant to 11 U.S.C. § 502(b)(1) on the grounds that it is unenforceable under applicable law and that IBI Falcon cannot establish standing as holder of the Note as of the Petition Date;

C. In the alternative, reclassifying the Amended Claim as wholly unsecured pursuant to 11 U.S.C. §§ 506(a) and 544(a)(3);

D. In the further alternative, reducing the allowed amount of the Amended Claim to eliminate all unauthorized extension fees, the unsupported forbearance fee, improperly applied default interest, and all amounts attributable to void or unauthorized instruments;

E. Declaring the Affidavit of Non-Residential Mortgage Foreclosure (Doc. No. 2025110562) and the Deed of Appointment of Substitute Trustee (Doc. No. 2025112580) void ab initio as acts taken in willful violation of the automatic stay;

F. Awarding the Debtor actual damages, attorneys' fees, and punitive damages under 11 U.S.C. § 362(k) for IBI Falcon's willful violation of the automatic stay;

G. Finding IBI Falcon in civil contempt pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9020; and

H. Granting such other and further relief as this Honorable Court may deem just and proper.

Respectfully submitted,

Dated: April 15, 2026

By: /s/ Deirdre T. Johnson, Esq.
Deirdre T. Johnson, Esq.
Bar No. MD14227
9701 Apollo Dr, Suite 301
Upper Marlboro, MD 20774
(301) 742-5385 | dtjesq@dtjohnsonlaw.com
*Counsel for Debtor, 5410 30th Street DC LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of April, 2026, a copy of the foregoing was served electronically via the Court's ECF system upon all parties registered to receive notice, including Maurice B. VerStandig, Esq. (mac@mbvesq.com) and the Office of the United States Trustee (USTPRegion04.GB.ECF@USDOJ.GOV).

/s/ Deirdre T. Johnson, Esq.



**EXHIBIT**

Doc #: 2025098143
10/06/2025 04:32 PM

A

# LIMITED POWER OF ATTORNEY

by and between

**IBI SBL INVESTMENT LP,**
a Delaware limited partnership,
as Principal

and

**GINGO PALUMBO LAW GROUP LLC,**
an Ohio limited liability company,
as Agent and Attorney in Fact

Effective Date:
September 10, 2024

## LIMITED POWER OF ATTORNEY

**IBI SBL INVESTMENT LP**, a Delaware limited partnership,
as Principal

to

**GINGO PALUMBO LAW GROUP LLC**, an Ohio limited liability company,
as Agent and Attorney in Fact

KNOW ALL BY THESE PRESENTS:

THIS LIMITED POWER OF ATTORNEY is made and entered on September 10, 2024, by and between IBI SBL INVESTMENT LP, a Delaware limited partnership, (the "**Principal**"), having a primary place of business located at 9 Ahad Ha'am Street, 18th Floor, Tel Aviv, Israel 6129101, and GINGO PALUMBO LAW GROUP LLC, an Ohio limited liability company (the "**Agent**" or the "**Attorney in Fact**"), having a primary place of business located at 4700 Rockside Road, Suite 440, Independence Ohio 44131, in connection with, and in furtherance of, that certain General Engagement Correspondence and Fee Agreement dated September 9, 2024, as amended, modified, and/or supplemented from time to time ("**Fee Agreement**").

In connection with the Fee Agreement, IBI SBL INVESTMENT LP agrees to appoint GINGO PALUMBO LAW GROUP LLC, and any member or agent thereof, with full power of substitution, as the Principal's true and lawful agent and attorney in fact with full power and authority in the place and stead of the Principal, and in the name of the Principal, from time to time, for the purpose of (a) taking any action and executing any instruments or documents that Principal may deem reasonably necessary, including, without limitation, carrying out the terms of the Attorney in Fact's representation of the Principal related to (i) the Principal's inter-lender relationships, including assignments of loan documents to or from such other entities, and (ii) the Principal's enforcement of certain rights and remedies under loan documents executed in favor of the Principal and/or the Principal's investors and/or assigned to the Principal and/or assigned to the Principal's investors by any prior holders of the documents evidencing the loan(s) under which the Principal acts as holder, servicer, and/or subservicer; (b) effectuating the purposes of any agreement entered into by the Principal which the Principal may deem reasonably necessary to accomplish certain tasks; and/or (c) taking any action and executing any instrument or document that the Principal may deem reasonably necessary to accomplish such tasks as may arise from time to time in the execution of and discharge of the Principal's business duties; and

NOW, THEREFORE, the Principal does hereby:

1.      constitute and appoint the Attorney in Fact, by and through either Michael J. Palumbo or Anthony J. Gingo, with full power of substitution, as the Principal's true and lawful attorney in fact with full power and authority in the place and stead of the Principal, and in the name of the Principal, from time to time, only and after the Principal expressly authorizes the Attorney in Fact, in writing (including, but not limited to, via text or email), to take any action and execute any instruments or documents that Principal may deem reasonably necessary, including, without limitation:

a.   execute, acknowledge, seal and deliver deed of trust/mortgage, note endorsements, lost note affidavits, assignments of deed of trust/mortgage, and other recorded documents, satisfactions/releases/reconveyances of deed of trust/mortgage, subordination and modifications, tax authority notifications and declarations, deeds, bills of sale, and other instruments of sale, conveyance and transfer, appropriately completed, with all ordinary and necessary endorsements, acknowledgements, affidavits, and supporting documents as may be necessary or appropriate to effect its execution, delivery, conveyance, recordation, or filing; and

b.   execute and deliver insurance filings and claims, affidavits, substitutions of counsel, non-military affidavits, notices of rescission, foreclosure deeds, transfer tax affidavits, verifications of complaints, notices to quit, bankruptcy declarations for the purpose of filing motions to lift stays, and other documents or notice filings on behalf of the Principal in connection with insurance, foreclosure, bankruptcy and eviction actions; and

c.   endorse and collect any checks or other instruments payable to the Principal; and

d.   pursue any deficiency, debt or other obligation, including, but not limited to, those arising from foreclosure or other sale, promissory note or check, and to collect, negotiate, or otherwise settle any deficiency claim, including interest and attorney's fees; and

e.   transfer and/or deposit of collection or payoff funds from any custodial accounts as needed; and

f.   do any other act or complete any other document or instrument that arises in the normal course of representing the Principal in the prosecution and/or defense of all mortgage loans and real estate owned properties subject to the terms of the Memorandum of Understanding (as supplemented from time to time by any Engagement and Fee Agreement); and

g.   take such other actions and exercise such rights which may be taken by the Principal with respect to any mortgaged property, including, but not limited to, realization upon all or any part of a mortgage loan, any collateral thereof, or guaranty thereof; and

2.   further authorize and empower the Attorney in Fact, for and in the place and stead of the Principal and in the name of the Principal: (a) to file and record this Power of Attorney with the appropriate public officials provided the Attorney in Fact promptly notify Principal of any recording of the same.

The Principal covenants and grants unto the Attorney in Fact full authority and power to execute any documents and instruments and to do and perform any act that is necessary or appropriate to effect the intent and purposes of the foregoing authority and powers hereunder. The Principal further ratifies and confirms each act that the Attorney in Fact shall lawfully do or cause to be done in accordance with the authority and powers granted hereunder. The Principal covenants and agrees that, from time to time at the request of the Attorney in Fact, the Principal shall execute instruments confirming all of the foregoing authority and powers of the Attorney in Fact.

Once the Attorney in Fact accepts the designation of Attorney in Fact under this Power of Attorney or exercises authority granted to the Attorney in Fact by the Principal, a fiduciary relationship is created between the Attorney in Fact and the Principal.  Unless otherwise modified in this Power of Attorney, the duties of the Attorney in Fact include the duty to do all of the following: (a) act in good faith, with reasonable care for the best interests of the Principal; (b) take no action beyond the scope of representation outlined in the Fee Agreement and/or the authority given to the Attorney in Fact in this Power of Attorney; (c) keep a complete record of all receipts, disbursements, and transactions conducted for the Principal.

This Power of Attorney is not intended to extend the powers granted to the Attorney in Fact under the Fee Agreement or to allow the Attorney in Fact to take any action not authorized by or contemplated under the Fee Agreement.

Without actual notice to the contrary, any third-party may rely on authorities and powers granted hereunder and any actions of the Attorney in Fact pursuant to such authorities and powers as the valid, binding and enforceable actions of the Principal and that all conditions hereunder to the exercise of such actions by the Attorney in Fact have been completed and are satisfied.  No third-party to whom this Power of Attorney is presented, as authority for the Attorney in Fact to take any action or actions contemplated hereby, shall be required to inquire into or seek confirmation from the Principal as to the authority of Attorney in Fact to take any action described herein, or as to the existence of or fulfillment of any condition to this Power of Attorney, which is intended to grant to Attorney in Fact unconditionally the authority to take and perform the actions contemplated here in.

The Principal may amend or revoke this Power of Attorney at any time by a signed instrument delivered to the Attorney in Fact.  If this Power of Attorney has been filed or recorded in public records, then any amendment or revocation also will be similarly filed or recorded, but a similar filing or recording of the amendment or revocation will not be necessary to effectuate the amendment or revocation with respect to the Attorney in Fact and to all persons who have actual knowledge of the amendment or revocation.

This Power of Attorney is entered into and shall be governed by the laws of the State of Delaware, without regard to conflicts of law principles of such State.

Any third party may rely upon a copy of this Power of Attorney, to the same extent as if it were an original and shall be entitled to rely on a writing signed by the Principal to establish conclusively the identity of a particular right, power, capacity, asset, liability, obligation, property, loan, or commitment of the Principal for all purposes of this Power of Attorney.

The Principal authorizes the Attorney in Fact to certify, deliver, and/or record a copy of and/or the original of this Power of Attorney.

This Power of Attorney shall be effective as of September 10, 2024, and shall remain in full force and effect thereafter until a written notice of revocation hereof shall have been executed by the Principal.

[END OF PAGE - SIGNATURE PAGE(S) TO FOLLOW]

THE PRINCIPAL IS FULLY INFORMED AS TO THE CONTENTS OF THIS POWER OF ATTORNEY AND UNDERSTANDS THE FULL IMPORT OF THIS GRANT OF POWER TO THE ATTORNEY-IN-FACT.

IN WITNESS WHEREOF, the Principal, by and through the Principal's authorized agent, has executed this Power of Attorney effective as of September 10, 2024.

PRINCIPAL:
IBI SBL INVESTMENT LP,
a Delaware limited partnership

By:     Amir Golan
Its:    Managing Partner and Authorized Signatory

NOTARIAL CERTIFICATE

STATE OF OHIO Israel )
                     ) SS:
COUNTY OF CUYAHOGA Tel, Aviv )

On this 26th day of June, 2025 before me, the undersigned notary public, personally appeared Amir Golan, duly authorized Managing Partner and Authorized Signatory of IBI SBL Investment LP, who proved to me through satisfactory evidence of identification, which was an Israeli passport, to be the person whose name is signed on this Instrument, and who acknowledged to me that he signed the Instrument voluntarily for its stated purpose and acknowledged the foregoing to be his free act and deed and the free act and deed of IBI SBL Investment LP.

**Ran Marcus**
License No' 15709, Notary 2063419
132 Menachem Begin st. Tel Aviv - Yafo
Tel: 03-7501234 Fax: 03-7501238

Notary Public

[NOTARIAL SEAL]



No. 1335/25 'on

# AUTHENTICATION OF SIGNATURE OF A PERSON
## SIGNING ON BEHALF
### OF A limited PARTNERSHIP

אימות חתימתו
של אדם
בשם שותפות מוגבלת

==============================

I the undersigned

**Ran Marcus, Notary**
132 Menachem Begin St, Tel Aviv, Israel
Notary license No **2063419**
Hereby certify that on <u>29.06.2025</u>
Mr.(s)

<u>Golan Amir Raviv</u>
His identity was proved to me
By Israeli passport # 37861954
Issued on the **15.08.2023**
In Jerusalem in Israel

And I am convinced that the person standing before me
understood fully the significance of the action and
voluntarily signed the attached document marked with
the letter **A** on behalf of

**IBI SBL Investment LP**
By virtue of their position and authority
As authorized signatories on behalf of
the company I approve,
Submitted to me a minutes
As written evidence, to my satisfaction, for
The purpose of proving their permission to
sign the attached document
On behalf of the above L.P.

**IBI SBL Investment LP**
In witness whereof, I hereby authenticate
the signature of Mr.<u>(s) Golan Amir Raviv</u>
by my own signature and seal

TODAY, <u>29.06.2025</u>

**Notary Seal**

**Signature**

---

אני הח"מ
**רן מרכוס, נוטריון**
מרח' מנחם בגין 132, תל אביב, ישראל
מס' רישיון נוטריוני 2063419
מאשר בזה כי ביום <u>29.06.2025</u>
מר(ת)

<u>גולן אמיר רביב</u>
שזוהה עפ"י דרכון ישראלי
מס' 37861954
שהונפק ביום 15.08.2023
בירושלים, בישראל

ושוכנעתי כי הניצב בפני הבין
הבנה מלאה את משמעות הפעולה
וחתם מרצונו החופשי על המסמך
המצורף בזה ומסומן באות "א", בשם

**IBI SBL Investment LP**
בתוקף תפקידו וסמכותו
כמורשה חתימה מטעם ובשם החברה אני מאשר
שהוגש לי פרוטוקול
כראיה בכתב, להנחת דעתי, לשם הוכחת רשותו
לחתום על  המסמך הרצ"ב
בשם השותפות הנ"ל.

**IBI SBL Investment LP**
ולראיה הנני מאמת את חתימתו של
<u>גולן אמיר רביב הנ"ל,</u>
בחתימת ידי ובחותמתי

היום, <u>29.06.2025</u>

חתימת הנוטריון

חותם

שכ"ט נוטריוני בסך 268 + מע"מ



# APOSTILLE
### (Convention de la Haye du 5 Octobre 1961)

**1. STATE OF ISRAEL**　　　　　　　　מדינת ישראל .1

This public document　　　　　　　מסמך ציבורי זה

2. Has been signed by　　*Ran Marcus*　　נחתם בידי .2

Advocate _____ רן מרקוס _____ עו"ד

3. Acting in capacity of Notary　　המכהן בתור נוטריון .3

4. Bears the seal/stamp of　　נושא את החותם/החותמת .4

the above Notary　　　　　של הנוטריון הנ"ל

### Certified　　　　　　אושר

5. At the Magistrates Court of Herzliya　　בבית משפט השלום בהרצליה .5

6. Date _____ 2 9 -06- 2025 _____　2 9 -06- 2025 ביום .6

7. By an official appointed by　　על ידי מי שמונה בידי שר .7

Minister of Justice under the　　המשפטים לפי חוק הנוטריונים,

Notaries Law, 1976.　　התשל"ו 1976

8. Serial number *612439/2*　　612439/2 מס' סידורי .8

9. Seal/Stamp _____　_____ הוחותם / החותמת .9

10. Signature *LK*　　*DS* חתימה .10

## ACCEPTANCE OF APPOINTMENT BY AGENT AND ATTORNEY IN FACT

IN WITNESS WHEREOF, Gingo Palumbo Law Gorup LLC, as Agent and Attorney in Fact and by and through a member thereof, has executed this Power of Attorney effective as of September 10, 2024.

AGENT AND ATTORNEY IN FACT:
GINGO PALUMBO LAW GROUP LLC,
an Ohio limited liability company

By:    Michael J. Palumbo
Its:    Co-Managing Member

## NOTARIAL CERTIFICATE

STATE OF OHIO      )
                    ) SS:

COUNTY OF CUYAHOGA    )

On this 26th day of June, 2025 before me, the undersigned notary public, personally appeared Michael J. Palumbo, duly authorized Co-Managing Member of Gingo Palumbo Law Group LLC, who proved to me through satisfactory evidence of identification, which was an Ohio driver license, to be the person whose name is signed on this Instrument, and who acknowledged to me that he signed the Instrument voluntarily for its stated purpose and acknowledged the foregoing to be his free act and deed and the free act and deed of Gingo Palumbo Law Group LLC.

Attorney Anthony J. Gingo
Resident Cuyahoga County
Notary Public, State of Ohio
My Commission Has No Expiration Date
Sec 147.03 RC

Notary Public

```
Doc #: 2025098143
Filed & Recorded
10/06/2025 04:32 PM
DANIEL ALTOMARE
DEPUTY RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
   RECORDING FEES        $25.00
   SURCHARGE             $5.00
TOTAL:                   $30.00
```

Case 25-19605   Doc 132   Filed 04/15/26   Page 31 of 39



OES IT TAKE A P    ✕    | 📧 Service Standards | USPS    ✕    +

usps.com/service-standards/

**📧USPS.COM** | Quick Tools | Send | Receive | Shop | Business | International | Help | 🔍

⊕ English   📍 Locations   ❓ Support   📧 Informed Delivery   Register / Sign In

## USPS Transit Time Map

View expected delivery times for domestic shipping services based on USPS service standards.

Exceptions apply ⓘ and delivery time is not guaranteed.

> ⓘ **New! Priority Mail® Next Day**
>
> Our new next-day delivery option reaches over 72 million business and residential customers throughout the country.
>
> Explore Priority Mail Next Day

## Get Started!

- Enter the 5-digit ZIP Code™ you're shipping from.
- Drag and zoom the map to see the area you're mailing to, as well as Alaska, Hawaii, and U.S. territories.

* Required field

| * Mailing A Shipping Services | * Entry Point 5-digit ZIP Code™ | |
|---|---|---|
| First-Class Mail® Letters and Flats ⌄ | 20774 | Search |

⟳ Reset Map

📍 Origination   🟪 2 Days   🟨 3 Days   🟪 4 Days   🟧 5 Days          Esri, HERE, Garmin, NGA, USGS

With Priority Mail® Next Day, the expected delivery date reflects a delivery time of 1 business day and is based on the specified origin, destination, and dropoff time in most cases. The expected delivery date does not come with a money-back guarantee.

For any USPS Ground Advantage® packages that contain HAZMAT, the service standards for USPS Ground Advantage Over 1 lb - 70 lbs apply.

**📧USPS.COM**

| HELPFUL LINKS | ON ABOUT.USPS.COM | OTHER USPS SITES | LEGAL INFORMATION |
|---|---|---|---|
| Contact Us | About USPS Home | Business Customer Gateway | Privacy Policy |
| Site Index | Newsroom | Postal Inspectors | Terms of Use |
| FAQs | USPS Service Updates | Inspector General | FOIA |
| Feedback | Forms & Publications | Postal Explorer | No FEAR Act/EEO Contacts |
| | Government Services | National Postal Museum | Fair Chance Act |
| USPS JOBS | Rights & Permissions | Resources for Developers | Accessibility Statement |
| Careers | | PostalPro | |

* Required field

* Mailing & Shipping Services

First-Class Mail® Letters and Flats ⌄

* Entry Point 5-digit ZIP Code™

20774

**Search**



○ **Reset Map**

● Origination    ▮ 2 Days    ▮ 3 Days    ▮ 4 Days    ▮ 5 Days

Esri, HERE, Garmin, NGA, USGS

With Priority Mail® Next Day, the expected delivery date reflects a delivery time of 1 business day and is based on the specified origin, destination, and drop-off time in most cases. The expected delivery date does not come with a money-back guarantee.

For any USPS Ground Advantage® packages that contain HAZMAT, the service standards for USPS Ground Advantage Over 1 lb - 70 lbs apply.

Case 25-19605    Doc 132    Filed 04/15/26    Page 33 of 39





USPS.COM    Quick Tools    Send    Receive    Ship    Business    International    Help    Q

## Mail & Shipping Services

USPS has express and standard mail services to fit your needs. Depending on what items you're sending (and when you want them delivered), choose based on:

- Fastest delivery speed
- Most affordable price
- Shipping online vs. at a Post Office™ location

## Compare Mail Services

Compare USPS mail services by starting retail prices, delivery speed, and more. Most services automatically include USPS Tracking® (except First-Class Mail® service), and you can add insurance and extra services.

Save on shipping: If you're using Priority Mail Express®, Priority Mail®, or USPS Ground Advantage® service, you can ship online with Click-N-Ship® and get lower Commercial Rates. Businesses can get additional savings by opting in to the Business Rate Card.

| | Fastest Delivery Speed | Simple, Affordable, Reliable | Postcards & Envelopes |
|---|---|---|---|
| | Fast air delivery for your most important mail and packages (with some Flat Rate options). | Save money, shipping packages by ground. | Mail, like postcards, letters in small envelopes (up to 3.5 oz), and large envelopes (up to 13 oz). |
| Description | Priority Mail Express® | Priority Mail® | USPS Ground Advantage® | First-Class Mail® |
| | You're sending something urgent that must arrive in 1–2 days.¹ You need delivery certain. delivery with money-back guarantee.¹ | You're sending important items that need to arrive in 1–3 days.¹ | Low rates for packages with expected delivery in 2–5 days¹ (like the primary option for HAZMAT² items that can't travel by air). | You're sending a letter envelope (under 3.5 oz) or large envelope (under 13 oz) that's flat and bends easily. |
| Price | Flat Rate Envelope: From $33.30 USPS Shipping Box or Your Own Box By Weight/Zone: From $33.00 | Flat Rate Envelope: From $11.40 USPS Shipping Box (Flat Rate): From $12.40 Your Own Box By Weight/Zone: From $10.30 | From $7.40 | From $0.61 (postcards); From $0.79 (letters); From $1.45 (large envelopes); |
| Delivery Speed | 1–2 days¹ | 2–3 days¹ | 2–5 days¹ | 1–5 days |

Expand All Compared Features ∨

## Compare Mail Services

Compare USPS mail services by starting retail prices, delivery speed, and more. Most services automatically include USPS Tracking® (except First-Class Mail® service), and you can add insurance and extra services.

Save on Shipping: If you're using Priority Mail Express®, Priority Mail®, or USPS Ground Advantage® service, you can ship online with Click-N-Ship® and get lower Commercial Rates. Businesses can get additional savings by opting in to the Business Rate Card.

| | Fastest Delivery Speed | Simple, Affordable, Reliable | Postcards & Envelopes |
|---|---|---|---|
| | Fast air delivery for your most important mail and packages (with some Flat Rate options). | Save money shipping packages by ground. | Mail, like postcards, letters in small envelopes (up to 3.5 oz), and large envelopes (up to 13 oz). |

| Description | Priority Mail Express® | Priority Mail® | USPS Ground Advantage® | First-Class Mail® |
|---|---|---|---|---|
| | You're sending something urgent that must arrive in 1-3 days.[1] You need date-certain delivery with money-back guarantee.[2] | You're sending important items that need to arrive in 2-3 days.[4] | Low rates for packages with expected delivery in 2-5 days[5] (also the primary option for HAZMAT items that can't travel by air). | You're sending a letter envelope (under 3.5 oz) or large envelope (under 13 oz) that's flat and bends easily. |
| Price | Flat Rate Envelope: From $33.25 USPS Shipping Box or Your Own Box By Weight/Zone: From $33.00 | Flat Rate Envelope: From $11.95 USPS Shipping Box (Flat Rate): From $12.65 Your Own Box By Weight/Zone: From $10.20 | From $7.30 | From $0.61 (postcards) From $0.78 (letters) From $1.63 (large envelopes) |
| Delivery Speed | 1-3 days[3] | 2-3 days[4] | 2–5 days[5] | 1-5 days |

EXHIBIT

3

AMENDMENT AND EXTENSION OF PROMISSORY NOTE AND LOAN DOCUMENTS AND
REAFFIRMATION OF GUARANTY

THIS **AMENDMENT AND EXTENSION OF LOAN PROMISSORY NOTE AND LOAN
DOCUMENTS AND REAFFIRMATION OF GUARANTY** (the "**Amendment**") is made and effective
as of June 30, 2025 (the "**Effective Date**"), by and between **5410 30TH STREET DC LLC, a Maryland
limited liability company** (the "**Borrower**"), **ZANETTA MARIE WILLIAMS, an individual**, and **IBI
SBL INVESTMENT LP, a Delaware limited partnership** ("**Lender**" or "**IBI SBL Investment LP**"),
successor by assignment to FTF LENDING, LLC, a Delaware limited liability company ("**FTF Lending
LLC**").

ZANETTA MARIE WILLIAMS, individually, collectively, and/or jointly and severally, is/are
referred to in this Amendment as the "**Guarantor**".

Borrower, Guarantor, and Lender, individually, collectively, and/or jointly and severally, is/are
referred to in this Amendment as the "**Party**" or the "**Parties**".

MODIFICATION

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which
are hereby acknowledged, the Parties hereto agree as follows:

1.   All capitalized terms used in this Amendment not otherwise defined shall have the meanings
     assigned to such terms under the Loan Documents, including, without limitation, (a) that certain
     Amendment and Extension of Promissory Note and Loan Documents and Reaffirmation of
     Guaranty dated September 1, 2024, and (b) that certain Amendment and Extension of Promissory
     Note and Loan Documents and Reaffirmation of Guaranty dated June 18, 2025.

2.   The maturity date under the Note shall be amended from June 30, 2025 to September 30, 2025 (the
     "**Extended Maturity Date**"). The maturity date shall not be amended until Lender has received a
     fully signed Amendment from each Borrower and Guarantor.

3.   Rehabilitation of the Property shall be 100.00% completed, as verified by an inspector's report, on
     or before July 30, 2025. Lender shall select and/or approve the selection of the inspector, and
     Borrower shall pay and/or reimburse Lender for all of the inspector's fees/costs related to the
     inspection. Gas and electrical connection as required by Washington Gas and Pepco, respectively,
     shall not be taken into consideration of 100.00% completion of rehabilitation. Gas and electrical
     connection timeframes are outside of Borrower's control. However, Borrower shall confirm/prove
     that the request to complete said connections by Washington Gas and Pepco, respectively, were
     accomplished within 7 days of execution of this Amendment.

4.   All Borrower's monthly interest installment payments due and payable to Lender on the date set
     forth in the Note and in the amount calculated by Lender to be due and payable under the Note
     shall be deferred until the Extended Maturity Date.

5.   The amount of $22,220.00 representing the 1.000% extension fee from June 18, 2025 to June 30,
     2025 based upon the unpaid principal balance of $2,222,000.00 shall be due and payable. Borrower
     agrees to pay, and Lender agrees to accept, said fee on or before the Extended Maturity Date.

Borrower: 5410 30th Street DC LLC<br>Loan: 399504816

6. The amount of $44,440.00 representing the 2.000% forbearance fee based upon the unpaid principal balance of $2,222,000.00 shall be due and payable. Borrower agrees to pay, and Lender agrees to accept, said fee on or before the Extended Maturity Date.

7. The amount of $22,220.00 representing the 1.000% extension fee from June 30, 2025 to September 30, 2025 based upon the unpaid principal balance of $2,222,000.00 shall be due and payable. Borrower agrees to pay, and Lender agrees to accept, said additional extension fee on or before the Extended Maturity Date.

8. Except for the terms specifically set forth in this Amendment, each Borrower and Guarantor acknowledges and agrees that the Loan Documents shall remain in full force and effect until all of the indebtedness is fully repaid and any other obligations under the Loan Documents have been satisfied.

9. This Amendment may be executed wet-ink signature, Electronic Signature (defined below), or any combination thereof. Such Electronic Signature is intended to authenticate this Amendment and to have the same force and effect as a wet-ink signature to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 U.S.C. § 7001, *et seq.*), or other similar state law based on the Uniform Electronic Transactions Act. "Electronic Signature" means any electronica sound, symbol, or process attached to or logically associated with a record and executed and adopted by a party with the intent to sign such record.

[END OF PAGE – SIGNATURE PAGE TO FOLLOW]

Borrower: 5410 30th Street DC LLC
Loan: 399504816

IN WITNESS WHEREOF, the Borrower, by and through the Borrower's authorized signatory, has executed and delivered this Amendment and Extension of Promissory Note and Loan Documents and Reaffirmation of Guaranty to the Lender as of the Effective Date.

BORROWER:
5410 30TH STREET DC LLC,
a Maryland limited liability company

**Signature:** *Zanetta M. Williams*
Zanetta M. Williams (Jul 10, 2025 20:18 EDT)
**Email:** zanettaw@yahoo.com

By:   Zanetta Marie Williams
Its:    Sole Member and Manager

IN WITNESS WHEREOF, the Guarantor, in the Guarantor's individual capacity, has executed and delivered this Amendment and Extension of Promissory Note and Loan Documents and Reaffirmation of Guaranty to the Lender as of the Effective Date.

GUARANTOR:
ZANETTA MARIE WILLIAMS,
an individual and resident of the State of Maryland

**Signature:** *Zanetta M. Williams*
Zanetta M. Williams (Jul 10, 2025 20:18 EDT)
**Email:** zanettaw@yahoo.com

By:   Zanetta Marie Williams

IN WITNESS WHEREOF, the Lender, by and through the Lender's authorized signatory, has executed this Amendment and Extension of Promissory Note and Loan Documents and Reaffirmation of Guaranty as of the Effective Date.

LENDER:
IBI SBL INVESTMENT LP,
a Delaware limited partnership

**Signature:** 
Dor Sagron (Jul 13, 2025 11:33 GMT+3)
**Email:** dor@ibi.co.il

By:   Dor Sagron
Its:    Vice President and Authorized Signatory

3

EXHIBIT

4

**From:** Michael Palumbo <michael@gplawllc.com>
**To:** Zanetta M. Williams <zanettaw@yahoo.com>
**Sent:** Thursday, October 16, 2025 at 04:03:46 PM EDT
**Subject:** RE: 5631 MacArthur Boulevard Washington DC 20016 - 5410 30th Street DC LLC

Dear Ms. Williams:

Good afternoon.

This office represents IBI Falcon US LLC, successor by assignment to IBI SBL Investment LP, successor by assignment to FTF Lending, LLC.

Attached please find a copy of the Notice of Default and Maturity, Opportunity to Cure, and Notice of Intent to Foreclose. Please govern yourself accordingly.

Please call/email me with any questions/concerns.

Thank you.


Sincerely,

Michael J. Palumbo
**Gingo Palumbo Law Group LLC**
Summit One
4700 Rockside Road, Suite 440
Independence, Ohio 44131
Direct: (216) 503-9512
Fax: (888) 827-0855
Cell: (330) 301-0369



**THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination, other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer. If applicable, this email is sent to the person or entity to which it is addressed and is sent for settlement purposes only pursuant to Federal and Ohio Rules of Evidence 408 and shall remain confidential and privileged. IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.



EXHIBIT
5

## District of Columbia - Recorder of Deeds

**Search Criteria:** Search Type: Name / Square / Lot; Lot: 0043; Square: 1446

Displaying 1-16 of 16 Items



| DOCUMENT # | BOOK TYPE | NAME | OTHER NAME | DOC TYPE | RECORDED | ROLL/FRAME | SQUARE | LOT |
|---|---|---|---|---|---|---|---|---|
| 2025112580+ | OPR | **GR** 5410 30TH STREET DC LLC | **GE** DRAZIN RUSSELL S. | APPOINTMENT SUBSTITUTE TRUSTEE | 11/19/2025 | | 1446 | 0043 |
| 2025110562 | OPR | **GR** IBI FALCON US LLC | **GE** 5410 30TH STREET DC LLC | FORECLOSURE AFFIDAVIT | 11/13/2025 | | 1446 | 0043 |
| 2025106567+ | OPR | **GR** 5410 30TH STREET DC LLC | **GE** IBI FALCON US LLC | FINANCING STATEMENT ASSIGNMENT | 10/31/2025 | | 1446 | 0043 |
| 2025067961+ | OPR | **GR** 5410 30TH STREET DC LLC | **GE** IBI FALCON US LLC | TRUST ASSIGNMENT | 07/09/2025 | | 1446 | 0043 |
| 2025052461 | OPR | **GR** DC MUNICIPAL INVESTMENTS,LLC | **GE** 5410 30TH STREET DC LLC | LIS PENDENS | 05/29/2025 | | 1446 | 0043 |
| 2025038726 | OPR | **GR** 5410 30TH STREET DC LLC | **GE** DONEGAN BRIAN P | TRUST | 04/18/2025 | | 1446 | 0043 |
| 2025017114+ | OPR | **GR** 5410 30TH STREET DC LLC | **GE** IBI SBL INVESTMENT LP | FINANCING STATEMENT ASSIGNMENT | 02/19/2025 | | 1446 | 0043 |
| 2024028399+ | OPR | **GR** 5410 30TH STREET DC | **GE** IBI SBL INVESTMENT LP | TRUST ASSIGNMENT | 03/27/2024 | | 1446 | 0043 |
| 2024012685+ | OPR | **GR** 5410 30TH STREET DC HAMILTON LLC | **GE** SANTORINI CAPITAL LLC | ASSIGNMENT | 02/09/2024 | | 1446 | 0043 |
| 2024012684 | OPR | **GR** 5410 30TH STREET DC LLC | **GE** DONEGAN BRIAN P | TRUST | 02/09/2024 | | 1446 | 0043 |
| 2023039110+ | OPR | **GR** 5410 30TH STREET DC LLC | **GE** FTF LENDING, LLC | FINANCING STATEMENT | 05/10/2023 | | 1446 | 0043 |
| 2023039109+ | OPR | **GR** 5410 30TH STREET DC LLC | **GE** FIRST AMERICAN TR SERVICES OF DC, LLC | TRUST | 05/10/2023 | | 1446 | 0043 |
| 2023039108 | OPR | **GR** DRAGACEVAC ZORAN | **GE** 5410 30TH STREET DC LLC | DEED | 05/10/2023 | | 1446 | 0043 |
| 2023003898 | OPR | **GR** DRAGACEVAC ZORAN | **GE** DC DEPARTMENT OF BUILDINGS | COVENANT | 01/17/2023 | | 1446 | 0043 |
| 2022111543 | OPR | **GR** DRAGACEVAC ZORAN | **GE** DEPARTMENT OF TRANSPORTATION | COVENANT | 11/08/2022 | | 1446 | 0043 |
| 2022111542 | OPR | **GR** DRAGACEVAC ZORAN | **GE** DEPARTMENT OF ENERGY AND ENVIRONMENT | COVENANT | 11/08/2022 | | 1446 | 0043 |