IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 25-19605-LSS |
| | ) | (Chapter 11) |
| 5410 30TH STREET DC LLC | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

**OPPOSITION TO MOTION TO DETERMINE
IBI FALCON US LLC IS NOT A PARTY IN INTEREST**

Comes now IBI Falcon US LLC ("IBI Falcon"), by and through undersigned counsel, in opposition to the motion to determine IBI Falcon is not a party in interest (the "Motion"), DE #133, filed by 5410 30th Street DC LLC (the "Debtor"), and states as follows:

**I.      Introduction**

The Motion was not filed in good faith. The Debtor, in a campaign that appears more aimed at harassment of a secured creditor than at actual ascertainment of relief, has invented a quotation that does not exist, fundamentally misstated how assignments of deeds of trust work under applicable law, conflated the holder of a note with a holder in due course, made at least one objectively false statement about the maturity date of a promissory note, failed to mention that the Debtor has acknowledged the veracity of a transfer the Debtor is now endeavoring to collaterally attack, and failed to mention that the Debtor has waived and released the very defenses the Debtor is now raising. Much of this violence to Rule 9011 has occurred in the Debtor's newly-filed objection to the claim of IBI Falcon (the "Claim Objection"), DE #132. Some of this frivolity has occurred in the Motion. But insofar as the documents were filed together, and are interrelated, there is some import in recognizing these issues before an opposition to the Claim Objection is filed at a later date. *See* Local Rule 3007-1(a).

1

To be sure, the Debtor acknowledges that adjudication of the Claim Objection is a condition precedent to resolution of this Motion. *See* Motion, DE #133, at ¶ 6. And there is thusly something of a premature nature of this opposition, though IBI Falcon believes it important to timely and formally oppose the Motion even if only by noting, *inter alia*, that (i) denial of the Claim Objection would necessarily result in denial of the Motion; and (ii) the Motion—especially to the extent reliant on the Claim Objection—is rooted in manifest bad faith.

For these reasons, and as extrapolated upon *infra*, the Motion should be denied.

## II.    Argument: The Debtor is Misapprehending—and, on at Least One Occasion, Invention—Controlling Law

As noted *supra,* the general thesis of the Motion is that because the Claim Objection should be sustained, the Motion should be granted. And the general thesis of the Claim Objection, in turn, is that there exists some technical flaw in how IBI Falcon came to hold a promissory note (the "Note") signed by the debtor and/or in how IBI Falcon became the beneficiary of a deed of trust securing the Note (the "Deed of Trust"). The Debtor never asserts the Note should be payable to someone else, or the Deed of Trust creates a lien that ought to favor someone else; the Debtor simply asserts—in what feels an invitation to engage in a thinly-veiled game of jurisprudential "gottya!"—that if IBI Falcon cannot jump through a series of highly technical hoops, the Debtor should, in turn, be able to rid its sole asset of the first position lien thereupon. Not only is such a conceptually problematic construct but, far worse, the Debtor is premising its theories of the case upon objectively and fundamentally errant theories of law—inclusive of at least one quotation that does not actually exist.

### a.  A Quotation Has Been Seemingly-Invented

Starting with the invented quotation: the Claim Objection posits, *inter alia*, "[u]nder UCC § 3-204(a), adopted at D.C. Code § 28:3-204(a), a valid endorsement must be written on the

2

instrument or on a paper 'so firmly affixed thereto as to become a part thereof.'" Claim Objection, DE #132, at ¶ 61 (putatively quoting D.C. Code § 288:3-204(a)). This is not true. Section 28:3-204(a) of the District of Columbia Code does not contain the quoted words. Nor does the relevant section contain analogous or comparable language (i.e., this is not a typographical error born of transliteration). The relevant portion of the District of Columbia Code reads, *en toto*:

> "Indorsement" means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of (i) negotiating the instrument, (ii) restricting payment of the instrument, or (iii) incurring indorser's liability on the instrument, but regardless of the intent of the signer, a signature and its accompanying words is an indorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than indorsement. For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument.

D.C. Code § 28:3-204(a).

The words "so firmly affixed thereto as to become a part thereof" do not appear in this statute. And, upon search, the words do not appear anywhere else in the District of Columbia Code (meaning this is not a typographical error in the form of citation).

### b. The Debtor is Confusing the "Holder" of a Note with a "Holder in Due Course"

A key component of the Debtor's Claim Objection is that IBI Falcon cannot qualify as a "holder in due course" and, thusly, cannot enforce the Note. This portion of the Debtor's argument is particularly vital because the Debtor cannot deny that IBI Falcon has possession of the Note. Nor can the Debtor deny that the Deed of Trust has been assigned to IBI Falcon. So the Debtor seeks to undermine the manner in which IBI Falcon came to hold the paper by urging, quite passionately, that IBI Falcon does not qualify as a "holder in due course." The problem with this is that IBI Falcon is the holder of the Note and is seeking to enforce the Note as the holder thereof—

3

not as a holder in due course. It does not appear that the Debtor appreciates the distinction between a "holder" and a "holder in due course."

The Claim Objection asserts, *inter alia*, "[e]ven assuming the endorsements were valid, IBI Falcon cannot be a holder in due course under D.C. Code § 28:3-302 because the Note was overdue at the time of the purported transfer (matured June 1, 2024; effective date of Second Allonge June 30, 2025- thirteen months later)." Claim Objection, DE #132, at ¶ 75.

As a starting point, this is demonstrably false. The maturity date of the Note was extended to September 1, 2024. *See* June 2024 Agreement (defined *infra*), attached hereto as Exhibit A. The maturity date was then extended to June 18, 2025. *See* September 2024 Agreement (defined *infra*), attached hereto as Exhibit B. The maturity date was then extended, once more, to June 30, 2025. *See* June 2025 Agreement (defined *infra*), attached hereto as Exhibit C. So the Note was *not* overdue at the time of the transfer to IBI Falcon. And IBI Falcon accordingly *can* qualify as a holder in due course.

Critically, however, IBI Falcon does not need to be a holder in due course. IBI Falcon, rather, merely needs to be the holder of the Note. As noted by the United States Bankruptcy Court for the District of Columbia (the jurisdiction in which the collateral in this case is situated):

> Richardson asserts that Nationstar did not receive the Note from Ocwen in good faith and thus cannot be a holder in due course. However, she does not dispute that the Note was assigned to Nationstar, and has not challenged the recitation in the proof of claim that Nationstar "directly or through an agent, has possession of the promissory note." She has failed to adduce any facts showing that Nationstar is not a holder of the Note. As a holder of the Note, Nationstar has rights in the Note regardless of whether it is a holder in due course. If it is a holder in due course, that would preclude assertion of many defenses to the Note obligation that existed at the time it became a holder. The point, however, is that, as discussed above, Richardson has not presented evidence showing that she had a defense to the Note as of December 17, 2013, the date Nationstar became a holder. Because she has not shown that there was such a defense, it does not matter whether Nationstar is a holder in due course or only a holder.

4

*Richardson v. Nationstar Mortg. (In re Richardson)*, 2018 Bankr. LEXIS 2865, at \*4-5 (Bankr. D.D.C. Sep. 20, 2018) (citing D.C. Code § 28:3-301; D.C. Code § 28:3-305(b)).

Judge Teel's point is certainly correct: under the District of Columbia Code, the "holder of the instrument" is entitled to enforce a given instrument. D.C. Code § 28:3-301. And it would thusly seem that IBI Falcon—as the party undisputedly in possession of the Note—is entitled to enforce the Note

### c. The Debtor's Focus on Allonges Misses that IBI Falcon is in Possession of the Note

A significant part of the Claim Objection is devoted to the Debtor's various theories about when allonges where executed, who executed each allonge, and the placement of signatures on allonges in lieu of on the Note itself. As happens to be the case, IBI Falcon has properly complied with every legal rigor on these fronts (something that ought not be missed). But even if, *arguendo*, the Debtor's theories proved accurate, and one or more allonges were not executed on the dates indicated, IBI Falcon would *still* be the holder of the Note and entitled to enforce the Note.

As noted above, *see, supra,* § II(b), under District of Columbia law, the "holder of the instrument" is entitled to enforce an instrument. D.C. Code § 28:3-301. And "holder," in turn, is defined as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." D.C. Code § 28:1-201(21)(A).

Here, there is no dispute but that IBI Falcon is the "person in possession" of the Note. Nor does there appear to be any dispute but that, through two allonges, the Note has been made payable to IBI Falcon. So IBI Falcon is assuredly the "holder" of the Note under the District of Columbia Code.

The Debtor actually appears to know this, even though the Debtor does not expressly acknowledge as much in the Motion or in the Claim Objection. Such may well be why the Debtor

5

posits, in attacking the two allonges, *inter alia*, "[u]nder UCC § 3-403, adopted at D.C. Code § 28:3-403, an unauthorized signature does not operate as the signature of the represented person." Claim Objection, DE #132, at ¶ 45. Problematically, however, such is not nearly an honest summary of the cited statutory text, which reads:

> Unless otherwise provided in this article or Article 4, an unauthorized signature is ineffective except as the signature of the unauthorized signer in favor of a person who in good faith pays the instrument or takes it for value. An unauthorized signature may be ratified for all purposes of this article.

D.C. Code § 28:3-403(a).

Stated otherwise: even if, *arguendo*, there were an issue with one or both of the allonges, such would be wholly inconsequential—and of absolutely no legal moment—so long as (i) IBI Falcon paid for the Note; (ii) IBI Falcon otherwise took the Note for value; *or* (iii) the transfer has been ratified. And while some evidence may be needed to demonstrate the first two alternative prongs, the third criterion is plain from the record in this case: All three historic noteholders are on notice of this bankruptcy proceeding, yet only IBI Falcon has filed a proof of claim. *See* D.C. Code § 28:3-403 cmt. 3 ("Ratification is a retroactive adoption of the unauthorized signature by the person whose name is signed and may be found from conduct as well as from express statements."). Moreover, and quite importantly, the Debtor has repeatedly recognized the transfer of the Note from the originator to IBI Falcon's predecessor holder. *See, infra*, § III.

There is a more basic problem with the Debtor's theory, though: "[t]ransfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument. . ." D.C. Code § 28:3-203(b). Or, stated otherwise, as long as IBI Falcon has been transferred the Note, IBI Falcon has the right to enforce the Note—regardless of what allonges were, or were not, created along the way, as well as regardless of whether or not deeds of trust were formally assigned along the way. As explained by the District of Columbia

6

Court of Appeals: "The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter." *Smith v. Wells Fargo Bank*, 991 A.2d 20, 30 n.19 (D.C. 2010) (quoting *Carpenter v. Longan*, 83 U.S. 271, 275 (1873)).

### d. The Deed of Trust Assignments are Both Valid and Unnecessary

The Debtor also attacks the assignments of the Deed of Trust, arguing that because a power of attorney was allegedly not recorded until after an assignment was recorded, the assignment is accordingly void. This is wrong for two reasons: (i) there is no obligation to record a power of attorney before recording a trust assignment; and (ii) there is no obligation to enter into—much less record—an assignment of a deed of trust.

The Claim Objection theorizes, *inter alia*, "D.C. Code § 21-2603.03 requires that where an agent executes an instrument conveying an interest in real property, the power of attorney must be recorded with or prior to that instrument," Claim Objection, DE #132, at ¶ 37, and "[r]ecording the POA is a condition precedent to a valid conveyance by an agent under D. C.," *id.* at ¶ 41. These are not accurate statements of law.

First, the referenced provision of the District of Columbia Code only provides that a power of attorney must be recorded before a *deed* is recorded. *See, e.g.*, D.C. Code § 21-2603.03 ("If a power of attorney authorizes the agent to sell, grant, or release any interest in real property, it shall be executed in the same manner as a deed and **shall be recorded with or prior to the deed executed pursuant to the power of attorney**. . .") (emphasis added). The assignment of rights in a trust created under a deed of trust is assuredly not to be confused with an actual deed conveying real property. The trustee under the deed of trust is the one who legally holds the property; the assignment of a deed of trust does not alter the trustee or the property ownership—the assignment simply effectuates a change in the beneficiary of the trust.

7

Second, and more plainly: a deed of trust does not need to ever be assigned—the deed of trust follows the promissory note it secures. *See, e.g.*, *Smith*, 991 A.2d at 30 n.19 ("The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter."). *See also Quinteros v. Capital Ventures Int'l LLC (In re Quinteros)*, 2020 Bankr. LEXIS 2712, at *10 (Bankr. D.D.C. Sep. 29, 2020) ("As the debtor notes, an assignment of a note carries the mortgage with it. As long as Capital Ventures is the assignee of the *Note*, it matters not whether the *Mortgage* was assigned to it.") (citing *Northup v. Reese*, 67 So. 136, 137 (Fla. 1914); internal citations omitted) (emphasis in original).

So as long as IBI Falcon is in possession of the Note (which, as discussed *supra*, gives IBI Falcon the rights of a holder), IBI Falcon is, too, entitled to enforce the Deed of Trust. And this point matters a great deal: as long as IBI Falcon has the Note, IBI Falcon *is* the first position secured creditor in this case—notwithstanding any of the legally errant arguments espoused by the Debtor in the Motion or the Claim Objection.

III.     The Debtor Has Released All of the Claims it is Now Trying to Pursue

There is another overriding problem with the Motion and the Claim Objection: the Debtor—long before seeking chapter 11 relief—waived seemingly all of the defenses it is now endeavoring to raise. The Debtor also acknowledged the validity of the transfer of the Note—and the assignment of the Deed of Trust—from the note originator (FTF Lending LLC) to IBI SBL Investment LP (the entity that eventually transferred the same to IBI Falcon). Yet the Debtor is now endeavoring to ignore the relevant acknowledgments—and the agreements through which that acknowledgement was made—and pursue claims that have been waived and released.

Before seeking bankruptcy relief, the Debtor negotiated for a series of extensions of the Note. The latter three such agreements were deemed effective as of (i) June 2024 (the "June 2024

Agreement"), attached hereto as Exhibit A; (ii) September 2024 (the "September 2024 Agreement"), attached hereto as Exhibit B;[1] and (iii) June 2025 (the "June 2025 Agreement"), attached hereto as Exhibit C. Each off the three agreements bargained valuable consideration—in the form of a loan extension—to the Debtor. And each of the three agreements, in turn, contained covenants, representations, warranties and releases to which the Debtor remains bound.

Specifically, the September 2024 Agreement recites, *inter alia*, "FTF Lending LLC transferred and assigned the Loan Documents to IBI SBL Investment LP on or about March 6, 2024," and "IBI SBL Investment LP is the current holder of the Loan Documents." *See* September 2024 Agreement, attached hereto as Exhibit B, at p. 1. The same document goes on to provide, in reference to the two foregoing recitals (as well as other recitals), "[t]he foregoing recitals are incorporated herein by reference and are true and accurate in all material respects and contain no material misrepresentations or omissions." *Id.* at § 1.

The June 2025 Agreement similarly provides, *inter alia*, "FTF Lending LLC transferred and assigned the Loan Documents to IBI SBL Investment LP on or about March 6, 2024," and "IBI SBL Investment LP is the current holder of the Loan Documents." *See* June 2025 Agreement, attached hereto as Exhibit C, at p. 1. Much as with the predecessor agreement, that document further contains' the parties' agreement that "[t]he foregoing recitals are incorporated herein by reference and are true and accurate in all material respects and contain no material misrepresentations or omissions." *Id.* at § 1.

The September 2024 and June 2025 agreements also each contain fully-capitalized clauses providing:

---

[1] The September 2024 Agreement was signed by the Debtor on March 21, 2025. *See* September 2024 Agreement, attached hereto as Exhibit B, at p. 8.

EACH BORROWER AND GUARANTOR FULLY ACKNOWLEDGES THAT EACH BORROWER AND GUARANTOR HAS CONDUCTED WHATEVER INVESTIGATION EACH BORROWER AND GUARANTOR DEEMS NECESSARY TO ASCERTAIN ALL FACTS AND MATTERS RELATING TO THIS AMENDMENT.

*Id.* at § 10(e).

The documents also contain provisions in which the Debtor "ratifies and affirms . . . its liability to Lender pursuant to the terms of the Loan. . .," *id.* at § 13, with "Lender" being defined as IBI SBL Investment LP, *id.* at p. 1. And, not surprisingly, the agreements also contain blanket releases—including releases of all defenses to enforcement of the relevant loan documents. *Id.* at ¶ 10(a).

So the Debtor—which is now threatening to expend untold resources, and force IBI Falcon to incur extraordinary fees, in connection with an investigation into whether or not the Note and Deed of Trust were properly transferred from their originators to IBI SBL Investment LP—has already formally covenanted, on at least two occasions, that such is precisely what happened. The Debtor has also waived every defense it may have had to collection, by IBI SBL Investment LP, on at least two occasions. Yet the Debtor is now trying to raise the waived defenses in the Claim Objection and litigate the veracity of events the Debtor has already formally acknowledged to have occurred. This is many things—good faith is not one of them.

### IV.    Conclusion

WHEREFORE, IBI Falcon respectfully prays this Honorable Court (i) deny the Motion; and (ii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

10

Respectfully submitted,

Dated: April 29, 2026

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for IBI Falcon US LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of April, 2026, a copy of the foregoing was served electronically upon filing via the ECF system, with copies to:

- Deirdre Theresa Johnson    dtjesq@dtjohnsonlaw.com
- L. Jeanette Rice    Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- US Trustee - Greenbelt    USTPRegion04.GB.ECF@USDOJ.GOV
- Maurice Belmont VerStandig    mac@mbvesq.com, lisa@mbvesq.com;mahlon@dcbankruptcy.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

/s/ Maurice B. VerStandig
Maurice B. VerStandig

11