IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 25-19605-LSS |
| | ) | (Chapter 11) |
| 5410 30TH STREET DC LLC | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

### MOTION FOR PROTECTIVE ORDER TO
### PREVENT DEBTOR FROM DEPOSING CREDITOR'S COUNSEL

Comes now IBI Falcon US LLC ("IBI Falcon"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26(c), and moves this Honorable Court to enter an order prohibiting 5410 30th Street DC LLC (the "Debtor") from taking the deposition of Michael Palumbo ("Mr. Palumbo"), outside counsel for IBI Falcon, and in support thereof states as follows:

### I.      Introduction

This Honorable Court granted the Debtor's opposed motion for entry of a scheduling order, therein setting a deadline for the taking of Mr. Palumbo's deposition. *See* Order, DE #156. While the Debtor is yet to formally issue a notice of deposition or subpoena for Mr. Palumbo, counsel for the Debtor has now inquired as to dates upon which said deposition may be taken. *See* E-mail of May 8, 2026, attached hereto as Exhibit A. IBI Falcon—contemporaneously with the filing of this motion—*is* providing proposed dates for the deposition, understanding that discovery needs to move expediently and recognizing that IBI Falcon ought not assume this motion will be granted (especially when a portion of the argument made herein was previously made in opposition to the Debtor's motion for entry of a scheduling order inclusive of Mr. Palumbo's deposition). However, IBI Falcon is also proposing said deposition be taken far enough out in time to allow this motion to first be entertained.

1

There is thusly a somewhat-awkward posture to the instant issue: on one hand, deposing an opposing party's counsel is an extraordinary action and case law instructs a hefty showing is to be made before such is permitted in any federal case. On the other hand, IBI Falcon respects that this issue was previously raised when opposing the Debtor's motion for entry of a scheduling order, *see* DE #155, and was unavailing in that context. The scheduling order does, however, expressly reserve the rights of the parties to seek protective orders. *See* Order, DE #156 at p. 3 ("ORDERED, that nothing in this Order shall be deemed to limit any party's right to assert applicable privileges or to seek a protective order under Federal Rule of Civil Procedure 26(c) (as incorporated by Federal Rule of Bankruptcy Procedure 7026); provided, however, that any such assertion or motion shall be raised promptly and shall not be used to defeat the schedule herein. . ."). And, given the gravity of having its outside counsel sit for deposition, IBI Falcon would accordingly be remiss to not first formally seek a protective order.

At bottom, the argument expounded upon *infra* is fairly simple: precedent provides that parties ought not be able to depose one another's counsel absent first making a fairly burdensome showing. The Debtor in this case has not so much as attempted to make that showing. So, notwithstanding entry of a scheduling order providing for Mr. Palumbo's deposition, IBI Falcon respectfully urges its outside counsel ought not be compelled to sit for a deposition and, to the contrary, a protective order should be entered prohibiting the Debtor from proceeding with such a deposition.

## II.     Standard

The Federal Rules of Civil Procedure—as topically incorporated and made applicable by Federal Rules of Bankruptcy Procedure 7026 and 9014—expressly permit, *inter alia*:

> A party or any person from whom discovery is sought may move for a protective
> order in the court where the action is pending—or as an alternative on matters

relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery;

Fed. R. Civ. P. 26(c).[1]

Ordinarily, "[t]he party moving for a protective order bears the burden of establishing good cause." *Harbor Bank of Md. v. Anderson (In re Anderson)*, 594 B.R. 309, 314 (Bankr. D. Md. 2016) (citing *Finkle v. Howard Cnty., Md.*, 2014 U.S. Dist. LEXIS 166636 (D. Md. Dec. 2, 2014)). *See also Webb v. Green Tree Servicing LLC*, 283 F.R.D. 276, 278-79 (D. Md. 2012) (holding similarly). However, where, as here, a protective order is sought to prohibit the deposition of a party's opposing counsel, "the party seeking the deposition must 'establish a legitimate basis for requesting the deposition and demonstrate that the deposition will not otherwise prove overly disruptive or burdensome.'" *Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 440 (D. Md. 2012) (quoting *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 86 (M.D.N.C. 1987)).

### III.   Argument: The Deposition of Mr. Palumbo Should be Prohibited

As noted *supra*, there exists a rebuttable presumption against permitting the deposition of a party's opposing counsel, and the burden thusly falls on the proponent of a deposition to show why such is proper. Here, the Debtor cannot meet that burden. To the contrary, the record herein is such that all non-privileged information obtainable from Mr. Palumbo can be obtained from

---

[1] If Mr. Palumbo is to be deposed, such will occur within the jurisdiction of the United States Bankruptcy Court for the Northern District of Ohio, insofar as Mr. Palumbo is situated within Columbus, Ohio. *See* Fed. R. Civ. P. 45(c)(1). However, in the interests of streamlining discovery and avoiding unnecessary delay correlative to bringing a separate court up to speed on this matter, this motion is being filed in this Honorable Court, as allowed by Rule 26.

3

other witnesses and, as such, there is no need to undertake the extraordinary measure of deposing counsel for IBI Falcon.

The United States District Court for the District of Maryland has cited approvingly to the Eighth Circuit's ruling in *Shelton v. Am. Motors Corp.*, in which a three-prong test is developed for application in situations where the deposition of an opposing party's attorney is sought:

> We do not hold that opposing trial counsel is absolutely immune from being deposed. We recognize that circumstances may arise in which the court should order the taking of opposing counsel's deposition. But those circumstances should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel []; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

*Fangman v. Genuine Title, LLC*, 2016 U.S. Dist. LEXIS 79166, at \*8-9 n.9 (D. Md. June 17, 2016) (quoting *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)). This is also the test that has been expressly adopted in the neighboring District of Columbia Circuit. *See White v. Boarman*, 2011 WL 13266589, at \*2 (D.D.C. 2011) (quoting *Shelton*, 805 F.2d at 1327). Perhaps more notably, this is also the test that was approvingly cited (and invoked) by Judge Mannes when he was a judge of this Honorable Court:

> The fact that the proposed opponent is an attorney, or even an attorney for the party to the suit, is not an absolute bar to taking his or her deposition. . . . But the opportunity to take the deposition of opposing counsel may invite abuse. As the Eighth Circuit observed, 'in recent years the boundaries of discovery have steadily expanded, and it appears that the practice of taking the deposition of opposing counsel has become an increasingly popular vehicle of discovery. To be sure, the Federal Rules of Civil Procedure do not specifically prohibit the taking of opposing counsel's deposition. . . . We view the increasing practice of taking opposing counsel's deposition as a negative development in the area of litigation, and one that should be employed only in limited circumstances.'

*In re Fotso,* No. 05-29843PM, 2006 Bankr. LEXIS 4206, at \*4 (Bankr. D. Md. Nov. 22, 2006) (quoting Wright-Miller-Marcus, Federal Practice and Procedures § 2102 (1994) (quoting *Shelton*, 805 F.2d at 1327)).

4

Here, it is utterly unclear what discoverable knowledge is putatively held by Mr. Palumbo that cannot be gleaned from IBI Falcon. While Mr. Palumbo has counseled IBI Falcon in connection with the loan at issue in this case, the loan was not originated by IBI Falcon and the whole of the discoverable and relevant loan documents—even if physically present in his office— are legally possessed by his clients (which documents, through the discovery process, will be produced to the Debtor). Equally, to whatever extent Mr. Palumbo has had any interactions with the Debtor's principal, such are written communications that are presumptively possessed by the Debtor (and which Mr. Palumbo would *not* object to producing himself outside the confines of a deposition).

Indeed, Mr. Palumbo's only knowledge relevant to this case is directly attributable to (i) his review of relevant documents, furnished by his client, all of which his client can produce (and will produce) in discovery to the extent they are not privileged; (ii) his ministerial execution of documents as his client's attorney-in-fact (and attorney-at-law), which is hardly fodder for discovery unless the Debtor is questioning the validity of Mr. Palumbo's signature (something that would seem far-fetched); and (iii) his communications with his client, which are highly privileged and not subject to discovery. Mr. Palumbo has no other pertinent knowledge—he has not interfaced with the Debtor, except as discussed above; he has never personally visited the building that is the collateral for the loan at issue in this case; he did not personally collect payments from the Debtor; and he did not elect to lend monies to the Debtor.

Accordingly, in assessing the second prong of the *Shelton* test, there is no information that Mr. Palumbo can uniquely produce, except for information that is either irrelevant or privileged. While he could testify to what legal advice he has given his client and the foundation of that advice, such would be the epitome of privileged material well outside the permissive contours of

discovery. And while he could testify to his other interactions with IBI Falcon as the entity's counsel, such would be equally privileged in nature and, too, would be starkly irrelevant to the case at bar.

This leaves the third element: whether information is crucial to the case at bar. Since there is no information that Mr. Palumbo can uniquely provide, except for privileged information, it is difficult to fathom how that information could be crucial to the matter *sub judice*. It is not merely that Mr. Palumbo lacks unique possession of discoverable information crucial to this case; it is, too, that the only information he uniquely has is uniformly privileged in nature. Everything else can be gleaned through IBI Falcon and the documents that IBI Falcon will be producing pursuant to this Honorable Court's scheduling order.[2]

In short, none of the three *Shelton* elements can be satisfied, and it is accordingly appropriate to prohibit the Plaintiff from deposing Mr. Palumbo.

More macroscopically, it bears notation that case law rather strictly informs why such a high burden is imposed on a party seeking to depose an opposing attorney, recognizing the unique mischief that can be undertaken through such a process. As far back as 1947, the Supreme Court of the United States had occasion to touch upon the perils of subjecting a lawyer to discovery:

> In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal

---

[2] While the Debtor is still yet to actually issue any discovery requests, IBI Falcon is responding to this Honorable Court's scheduling order, DE #156, by collecting relevant documents, ensuring the same are in the possession of bankruptcy counsel, and ensuring such are Bates stamped and produced in accord with the schedule set forth.

beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947).

More recently, the United States District Court for the Southern District of Mississippi—in a case invoking the same *Shelton* test as has been embraced in this Honorable Court—explained, "[a]s this court has stated in previous cases, depositions of opposing counsel are discouraged, as they disrupt the adversarial process and lower the standards of the profession. Thus, a party should not be permitted to take the deposition of another party's attorney except in the most unusual of circumstances." *Wilson v. Scruggs*, 2003 WL 23521358, at *1 (S.D. Miss. 2003) (citing *Shelton*, 805 F.2d 1323, 1327 (8th Cir.1986), *Hickman*, 329 U.S. at 513; *Jones v. Board of Police Commissioners of Kansas City, Missouri*, 176 F.R.D. 625 (W.D. Mo. 1997); *Caterpillar Inc. v. Friedemann*, 164 F.R.D. 76 (D. Or. 1995); *Buford v. Holladay*, 133 F.R.D. 487, 491 (S.D. Miss. 1990).

As observed by the United States District Court for the District of Kansas: "While the Federal Rules do not prohibit the deposition of an attorney for a party, experience teaches that countenancing unbridled depositions of attorneys often invites delay, disruption of the case, harassment, and unnecessary distractions into collateral matters." *Mike v. Dymon, Inc.*, 169 F.R.D. 376, 378 (D. Kan. 1996) (quoting *Hay & Forage Indus. v. Ford New Holland, Inc.*, 132 F.R.D. 687, 689 (D. Kan. 1990)).

7

IV.     **Conclusion**

WHEREFORE, IBI Falcon respectfully prays this Honorable Court (i) enter an order protecting its outside counsel, Mr. Palumbo, from being subject to deposition; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: May 11, 2026

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for IBI Falcon US LLC*

**RULE 26(c) / LOCAL RULE 7026-1(f) CERTIFICATION**

Prior to entry of a scheduling order in this matter, I conferred with counsel for the Debtor, on April 27, 2026, regarding the scope of discovery to be taken. That call lasted for 0.7 hours and I believe the call commenced at or about 1:00 pm prevailing eastern time. In a follow-up exchange, imprinted on the docket of this Honorable Court, I emphasized that IBI Falcon is not agreeable to the deposition of its counsel being taken, in light of the nature of case law governing such depositions. *See* Opposition, DE #155, at p. 5. I also shared this position (sans citations to case law) in a letter previously sent to counsel for the Debtor. *See* Letter, DE #154-1, at p. 2 ("Nor have I agreed that the deposition of Michael J. Palumbo, Esq. may be taken (something of particular concern insofar—as titularly indicated— he is an attorney, and there are thusly myriad privilege-centric concerns here as well as work product-centric concerns)."). Counsel for the Debtor has,

8

however, now asked for deposition dates for Mr. Palumbo. And while such is admittedly not the same as formally issuing a subpoena, I now file this motion in the interests of expediting consideration of the matter. *See* Order, DE #156, at p. 3 ("ORDERED, that nothing in this Order shall be deemed to limit any party's right to assert applicable privileges or to seek a protective order under Federal Rule of Civil Procedure 26(c) (as incorporated by Federal Rule of Bankruptcy Procedure 7026); **provided, however, that any such assertion or motion shall be raised promptly** and shall not be used to defeat the schedule herein. . .") (emphasis added).

/s/ Maurice B. VerStandig
Maurice B. VerStandig


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of May, 2026, a copy of the foregoing was served electronically upon filing via the ECF system, with copies to:

- Deirdre Theresa Johnson    dtjesq@dtjohnsonlaw.com
- L.    Jeanette    Rice    Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- US Trustee - Greenbelt    USTPRegion04.GB.ECF@USDOJ.GOV
- Maurice Belmont VerStandig    mac@mbvesq.com, lisa@mbvesq.com;mahlon@dcbankruptcy.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

/s/ Maurice B. VerStandig
Maurice B. VerStandig

9