**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF MARYLAND (GREENBELT DIVISION)**

| | | |
|---|---|---|
| In re: | \| | |
| 5410 30th Street DC, LLC, | \| | Case No.: 25-19605 |
| Debtor | \| | Chapter 11 |
| | \| | |

DEBTOR'S SUPPLEMENT TO MOTION TO ENFORCE THE AUTOMATIC STAY AND FOR SANCTIONS FOR WILLFUL VIOLATION OF 11 U.S.C. § 362, AND RENEWED REQUEST FOR CIVIL CONTEMPT, INJUNCTIVE RELIEF, AND PUNITIVE DAMAGES

5410 30th Street DC, LLC (the "Debtor" and "Debtor-in-Possession"), by and through undersigned counsel, hereby supplements its Motion to Enforce the Automatic Stay and for Sanctions for Willful Violation of 11 U.S.C. § 362 [DE #60] (the "Motion"), and in support of an Order finding IBI Falcon US LLC and IBI SBL Investment LP (collectively, "IBI") in willful and continuing violation of the automatic stay, holding IBI in civil contempt, awarding actual and punitive damages, and entering injunctive relief, states as follows:

## I. Procedural Posture

1. The Debtor filed its Voluntary Petition under Chapter 11, on October 14, 2025 (the "Petition Date").

2. On December 3, 2025, the Debtor filed the Motion [DE #60].

3. On December 17, 2025, IBI filed an Opposition [DE #68], representing under counsel's signature: "*For the avoidance of any doubt or ambiguity: no property of the Debtor has been*

*foreclosed.* **No property of the Debtor will be foreclosed absent leave of this Honorable Court** *or dismissal of this case.*" and "*IBI Falcon has … **taken no further actions outside of this Honorable Court**.*" Opposition [DE #68] at 1.

4. On April 20, 2026, the Court conducted a hearing on the Motion and related matters. By Order entered April 22, 2026, the Court continued the hearings, granted the Debtor leave to conduct Rule 2004 examination, gave the Debtor sixty (60) days to take discovery on IBI's standing as a party in interest, and set a virtual status conference for June 25, 2026.

5. Within eight (8) days of the hearing, IBI's principals began a sustained, multi-channel direct-contact campaign targeting the Debtor's managing member personally, in willful violation of the automatic stay and in direct contradiction of the sworn representations made by IBI's bankruptcy counsel to this Court.

## II. The Continuing Course of Stay Violations — April 28 through May 3, 2026

6. **April 28, 2026 (Tuesday) — First missed voice call**. Oren Streit, an IBI executive, placed a WhatsApp voice call to the Debtor's managing member, Zanetta M. Williams, at her personal mobile telephone. The call was missed. *See* Williams Decl. ¶ 6 & Ex. 5.

7. **April 30, 2026 (Thursday) — Second missed voice call**. Amir Golan, the Managing Partner of IBI in Tel Aviv, Israel, placed a WhatsApp voice call from +972 54-761-6860 (the same Israeli mobile number reflected in Mr. Golan's email signature, *infra*) to Ms. Williams. The call was missed. *See* Williams Decl. ¶ 7 & Ex. 5.

8. **On or about April 29 – May 3, 2026 — The WhatsApp threat sequence**. Mr. Streit engaged Ms. Williams in a WhatsApp text exchange that began with: "*Hi Zanetta, The managing*

*partner want to talk with you. Wanted to speak with you and the managing partner. Can we jump into a call today at your morning?*" *See* Williams Decl. Ex. 1. Ms. Williams asked who the managing partner was. Mr. Streit identified Mr. Golan and pressed for an immediate call. When Ms. Williams asked what the call would be about, Mr. Streit wrote, in pertinent part:

> "*Zanetta, we want to see if we can get into an agreement with you. We are ready to dismiss the bankruptcy and eventually **you will loose [sic] the property and bear a lot of legal costs**. We can jump to a call to try and settle or we can **continue at FC [foreclosure] with your bankruptcy**. I am fine with both – your choices.*"
>
> *See* Williams Decl. ¶ 13 & Ex. 3.

9. **Ms. Williams expressly directed IBI to her counsel**. Ms. Williams responded:

> "*Good Morning Oren. I apologize for the delay. The day got away from Me. Please reach out to my attorney regarding the proposed settlement. Her name is Deirdre Johnson and her email address is dtjesq@dtjohnsonlaw.com.*"

10. **IBI expressly refused**. Four minutes later, Mr. Streit replied:

> "**We prefer to discuss commercial terms with you directly**."
>
> *See* Williams Decl. ¶¶ 15–16 & Ex. 4.

11. **May 3, 2026 (Sunday) — The Golan email**. At 11:02 a.m. UTC on May 3, 2026, Amir Golan emailed Ms. Williams directly at her personal email address (zanettaw@yahoo.com), copying undersigned counsel and copying Oren Streit, Tova Greenbaum (IBI), and Anthony Gingo (counsel to IBI Falcon and the Ohio notary on the recorded foreclosure affidavit). The email was marked "Importance: High." A true and correct copy is attached as Exhibit 6 to the Williams Declaration. The email states, in pertinent part:

> "*As you are aware, we are the holder of the first mortgage on the property located at 5631 MacArthur Boulevard. At this stage, **we are proceeding with the enforcement process** in respect of the property. ... If your client is open to*

*discussing such a path, we would be glad to engage and review any concrete proposal. Absent progress in that direction, we will continue to move forward with the process as required. **If the process continues without a resolution, it is very likely to result in the loss of the property and Zanetta's equity**.*"

12. Each of the foregoing communications was made (i) post-petition; (ii) with full knowledge of the bankruptcy and of undersigned counsel's representation of the Debtor; (iii) directly to the Debtor's managing member; and (iv) without authorization from undersigned counsel. None was a communication through bankruptcy counsel of record. None was filed with this Court.

### III.   The Cease-and-Desist Demand and IBI's Response

13. On May 5, 2026, undersigned counsel transmitted a written cease-and-desist demand to Maurice B. VerStandig, Esq., counsel of record for IBI, by email (the "C&D Letter"). The C&D Letter attached the WhatsApp screenshots and the May 3 email; itemized the contacts; demanded that IBI's principals immediately cease all direct communication with the Debtor and Ms. Williams; demanded preservation of all related electronic records; and demanded written confirmation within twenty-four (24) hours that IBI had implemented an appropriate litigation hold and instructed its principals to communicate only through bankruptcy counsel of record. *See* Williams Decl. Ex. 8.

14. Later the same day, Mr. VerStandig responded by letter (the "VerStandig Response"), a true and correct copy of which is attached as Exhibit 9 to the Williams Declaration. The VerStandig Response is, in substance, a doctrinal denial accompanied by a partial concession. It is not a cure.

15. <u>No substantive cease commitment</u>. Mr. VerStandig writes only that he "*will certainly ensure*" the Debtor's "*desire for communications between the parties to cease*" is "*relayed to my*

*client*." He does not represent that his clients have agreed to cease, that the contacts will in fact stop, that a litigation hold has been implemented, or that any of the conduct will be undone.

16. <u>A reservation of the right to continue</u>. Mr. VerStandig immediately follows the "relay" statement with: "*Though, again, I must stress that I do not believe any such communications are— or would be—violative of the Automatic Stay*." That sentence informs this Court that IBI takes the legal position that the conduct documented above is permissible and may be resumed at any time.

17. <u>A new and material admission</u>. Mr. VerStandig discloses for the first time, on the face of the VerStandig Response, that "*the debtor's principal has personally guaranteed the subject obligations*." *See* VerStandig Response (May 5, 2026), Williams Decl. Ex. 9. That admission is significant in two respects. First, it confirms that IBI's contacts with Ms. Williams were not innocent "principals talking" but were aimed at, among other things, collection on a personal guaranty — conduct § 362(a)(6) prohibits when it operates as coercion of the Debtor through pressure on its principal. Second, it places squarely before this Court the question whether IBI may use the threat of pursuing the personal guarantor as a means to extract concessions from the Debtor in violation of the stay, and whether the stay should be extended under 11 U.S.C. § 105(a) and the principles of *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986), to enjoin IBI from pursuing Ms. Williams personally during the pendency of the Debtor's bankruptcy case.

## IV. IBI's Doctrinal Defenses Fail

## A. The stay is not limited to attorney conduct.

18. The VerStandig Response argues that the contacts at issue are between "*principals of our respective clients*" and accordingly "*do not appear to run afoul of the prohibition on attorneys*

*contacting represented parties in the absence of their counsel*." That argument conflates two separate doctrines and addresses only one. Whatever its force as to Maryland Attorneys' Rule of Professional Conduct 19-304.2, the argument is irrelevant to § 362.

19.  Section 362(a) is not limited to attorneys. By its terms, the automatic stay applies to "*all entities*" — a defined term that includes natural persons, corporations, partnerships, and limited liability companies. 11 U.S.C. §§ 101(15), 362(a). Acts "*to collect*" or "*to enforce*" a claim are stayed regardless of whether the actor is the creditor itself, the creditor's principal, the creditor's officer, or the creditor's attorney. *See, e.g.*, *In re Atlantic Bus. & Cmty. Corp.*, 901 F.2d 325, 328 (3d Cir. 1990) (post-petition collection contacts by creditor's principal violated stay); *In re Sucre*, 226 B.R. 340 (Bankr. S.D. NY. 1998) (creditor's post-petition phone calls and visits to debtor violated stay); *In re Bennett*, 317 B.R. 313 (Bankr. D. Md. 2004).

20.  The conduct at issue here was undertaken by IBI's principals. Nothing in the law of the automatic stay treats "principal-to-principal" contact as categorically permissible. To the contrary, a creditor cannot circumvent the stay by routing collection contacts through its officers rather than its attorneys.

**B.   Settlement discussions are not categorically permitted; coercive collection contacts are forbidden.**

21.  The VerStandig Response asserts that "*discussions between parties, during the course of a bankruptcy proceeding, are necessarily encouraged—not forbade*." That overstates the law. Section 362 forbids any act to collect a claim against the Debtor; it does not categorically bless contacts simply because they are styled as "settlement" discussions. Where, as here, the "discussion" consists of (a) explicit threats that the Debtor's principal will "*loose [sic] the property*

*and bear a lot of legal costs*," (b) an ultimatum that IBI "*will continue at FC*" absent capitulation, and (c) a confession that "*we are proceeding with the enforcement process*," the contacts are not lawful settlement communications. They are coercive collection contacts forbidden by § 362(a)(6). *See In re Brock Util. & Grading, Inc.*, 185 B.R. 719, 720–21 (Bankr. E.D.N.C. 1995) (creditor's post-petition correspondence threatening enforcement violated § 362(a)(6)); *Simon v. FIA Card Services, N.A.* 732 F.3d 259, 2013 (U.S. App. 2013) (collection contact framed as "settlement offer" violated stay).

## C.   The personal guaranty, far from excusing the contacts, aggravates them.

22.   The VerStandig Response invokes the existence of a personal guaranty — disclosed to undersigned for the first time in that letter — as a justification for the contacts: "*especially where, as here, the debtor's principal has personally guaranteed the subject obligations*." The argument has it backwards.

23.   The existence of a guaranty does not authorize a creditor to use the threat of personal liability against the principal as leverage to coerce the corporate Debtor into surrendering estate property. Where, as here, the contacts threaten loss of the Property (an estate asset) and pressure the Debtor's principal to drop opposition to the foreclosure (or accept "dismiss[al] of the bankruptcy"), they fall squarely within § 362(a)(3) and (a)(6) regardless of the existence of a personal guaranty. *See In re Bennett*, 317 B.R. at 316; *In re Sucre*, 226 B.R. at 568.

24.   The Debtor reserves the right to seek extension of the automatic stay to Ms. Williams in her capacity as personal guarantor under § 105(a) and *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986), based on the "unusual circumstances" presented by IBI's campaign of direct pressure on the principal as a means of disrupting the Debtor's reorganization. The Debtor will, if necessary,

file a separate motion for that relief; for present purposes, the personal guaranty is relevant insofar as it (i) confirms IBI's collection focus on the principal, (ii) confirms the coercive purpose of the contacts, and (iii) negates IBI's suggestion that the contacts were innocuous business communications.

## D.   The express written refusal to communicate through counsel forecloses any claim of inadvertence.

25.   Even if IBI's asserted defenses had any force as to inadvertent contacts, they cannot survive Mr. Streit's express written refusal to honor Ms. Williams's direction to contact counsel. After Ms. Williams identified undersigned by name and provided counsel's email address, Mr. Streit replied four minutes later: "*We prefer to discuss commercial terms with you directly*." That admission removes any conceivable defense based on inadvertence, business custom, or misunderstanding, and conclusively establishes that the contacts were intentional, knowing, and continuing.

## V.   Each Communication Independently Violated § 362(a)(1), (3), (4), and (6)

26.  **§ 362(a)(6) — act to collect a claim**. The WhatsApp threats and the May 3 email are textbook collection contacts that demand a settlement, threaten loss of the Property and the Debtor's equity, and use the threat of foreclosure to coerce capitulation.

27.  **§ 362(a)(1) — commencement or continuation**. The May 3 email expressly admits IBI is "*proceeding with the enforcement process*." The WhatsApp ultimatum — "*continue at FC with your bankruptcy*" — confirms the same.

28. **§ 362(a)(3) — possession or control**. Coercing the Debtor's managing member to surrender the Property under threat of loss of equity is an act to obtain possession or exercise control over property of the estate.

29. **§ 362(a)(4) — enforcement of a lien**. Continuing "the enforcement process" with respect to the Deed of Trust is an act to enforce a lien against estate property.

## VI.   The Violations Are Willful and Civil Contempt Is Warranted

30. A violation is willful if the creditor knew of the bankruptcy and intentionally engaged in the act constituting the violation. *In re Bennett*, 317 B.R. at 316; *Barnett v. Edwards*, 214 B.R. 613, 620 (B.A.P. 9th Cir. 1997).

31. IBI's knowledge is undisputed: by April 28, 2026, IBI's bankruptcy counsel had filed a notice of appearance, an Opposition, a Motion to Convert, and additional pleadings, and had appeared at the April 20, 2026 hearing.

32. The acts were intentional, sustained, and continuing. The WhatsApp record reflects deliberate back-and-forth; the May 3 email was drafted, marked "Importance: High," and copied to multiple recipients; and Mr. Streit's express written refusal to communicate through counsel removes any defense based on inadvertence.

33. Civil contempt is appropriate because there is "*no fair ground of doubt*" that the conduct violated the stay. *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799 (2019); *In re Walters*, 868 F.2d 665 (4th Cir. 1989). Civil contempt is also supported by 11 U.S.C. § 105(a) and Federal Rule of Bankruptcy Procedure 9020.

## VII. Damages

34. The Debtor itemizes the following actual damages caused by IBI's post-petition stay violations:

a. Attorney's fees and costs incurred in connection with: (i) drafting, filing, and litigating the Motion [DE #60]; (ii) responding to the Opposition [DE #68]; (iii) preparing and prosecuting this Supplement and the contemporaneously filed Emergency Motion for TRO and Order to Show Cause; (iv) preparing the C&D Letter and reviewing the VerStandig Response; (v) preparing the now-urgent Rule 2004 discovery; and (vi) preparing for and attending all related hearings. The amount is established by the contemporaneous declaration of undersigned counsel filed (or to be filed) prior to the continued hearing.

b. Disruption of the reorganization: the Debtor's ability to administer the estate, negotiate with creditors, and effectuate a confirmable plan has been materially disrupted by IBI's pressure campaign on the Debtor's principal.

c. Distress to the Debtor's managing member, established by her contemporaneous declaration. The course of contacts targeted Ms. Williams personally at her personal email and personal mobile telephone, threatened her personally with loss of property and equity, and persisted after Ms. Williams expressly directed the contacts to counsel.

d. Impairment of marketability and refinancing caused by the recorded post-petition Affidavit of Foreclosure (Doc. # 2025110562) and Deed of Appointment of Substitute Trustee (Doc. # 2025112580), and now compounded by IBI's sustained pressure campaign and its publicly maintained position that "the enforcement process" will continue.

e. <u>Punitive damages</u> are warranted by the willfulness, persistence, and express refusal to honor counsel's direction. *In re Walters*, 868 F.2d 665.

## VIII.  Both IBI Falcon US LLC and IBI SBL Investment LP Are Properly Respondents

35.  In the Opposition [DE #68] at 13–14, IBI argued IBI SBL Investment LP could not be a proper respondent because IBI Falcon and IBI SBL are "separate juridical entities." The May 3 email and the WhatsApp record decisively undercut that argument. Mr. Golan and Mr. Streit speak for both entities in the first person plural — "we are the holder of the first mortgage," "we are proceeding with the enforcement process," "we want to see if we can get into an agreement with you," "we are ready to dismiss the bankruptcy," "we can continue at FC." They do not distinguish between IBI Falcon and IBI SBL because they treat them as a single enterprise. The Court has already authorized 60 days of Rule 2004 discovery on the standing question; the new record is itself substantial evidence on that issue.

## IX.   Relief Requested

WHEREFORE, the Debtor respectfully requests that this Honorable Court enter an Order:

A.   Finding that IBI Falcon US LLC and IBI SBL Investment LP have willfully violated the automatic stay under 11 U.S.C. § 362(a)(1), (3), (4), and (6) by, *inter alia*, the April 28, April 30, on-or-about April 29 – May 3, and May 3, 2026 communications described herein;

B.   Holding IBI Falcon US LLC and IBI SBL Investment LP in civil contempt under 11 U.S.C. § 105(a) and Federal Rule of Bankruptcy Procedure 9020;

C.   Awarding the Debtor its actual damages, including all attorney's fees and costs incurred in connection with the prosecution of the Motion and this Supplement, in an amount established by declaration prior to the continued hearing;

D.   Awarding the Debtor punitive damages in an amount the Court determines just and proper to deter further violations;

E.   Entering injunctive relief directing IBI Falcon US LLC, IBI SBL Investment LP, their officers, directors, principals, agents, attorneys (including Maurice B. VerStandig, Esq., Anthony J. Gingo, and Russell S. Drazin), employees, affiliates, and all persons in active concert with them, including without limitation Amir Golan, Oren Streit, Tova Greenbaum, and Michael J. Palumbo, to **immediately cease and desist** from any communication of any kind — whether by email, telephone, WhatsApp or other messaging application, text message, social media, in-person contact, or otherwise — with the Debtor, the Debtor's managing member Zanetta M. Williams, any prospective buyer or refinancing lender, or any third party concerning the Loan, the Property, or any "enforcement" thereof, except (i) by motion or pleading filed with this Court, or (ii) in writing by Maurice B. VerStandig, Esq. directed to undersigned counsel;

F.   Granting the relief previously sought in the Motion, including a declaration that the post-petition Affidavit of Foreclosure (Doc. # 2025110562) and Deed of Appointment of Substitute Trustee (Doc. # 2025112580) recorded in the District of Columbia land records are void *ab initio*, and directing IBI to record an instrument noting the voidness of those filings;

G.   Reserving the Debtor's right, in light of IBI's newly disclosed pursuit of Ms. Williams as personal guarantor, to seek extension of the automatic stay to Ms. Williams under 11 U.S.C. § 105(a) and *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986); and

H.    Granting such other and further relief as this Court deems just and proper.

Date: May 12, 2026                              Respectfully submitted,


                                               /s/ Deirdre T. Johnson

                                               Deirdre T. Johnson, Esq.
                                               Bar No. MD14227
                                               9701 Apollo Dr, Suite 301
                                               Upper Marlboro, MD 20774
                                               Phone: (301) 742-5385
                                               dtjesq@dtjohnsonlaw.com
                                               *Counsel for the Debtor and
                                               Debtor-in-Possession*


                              EXHIBITS


The Declaration of Zanetta M. Williams, filed contemporaneously herewith, attaches as exhibits:

Ex. 1 – WhatsApp message from Oren Streit (opening contact)

Ex. 2 – WhatsApp message from Oren Streit (identifying Amir Golan)

Ex. 3 – WhatsApp message from Oren Streit (foreclosure threat / ultimatum)

Ex. 4 – WhatsApp exchange (direction to counsel; Streit's express refusal)

Ex. 5 – WhatsApp call log (missed voice calls 4/28/26 and 4/30/26)

Ex. 6 – Email from Amir Golan dated May 3, 2026

Ex. 7 – Missed Phone Call from Amir Golan

Ex. 8 – Cease & Desist Letter from undersigned to Maurice B. VerStandig, Esq. (May 5, 2026)

Ex. 9 – Response Letter from Maurice B. VerStandig, Esq. (May 5, 2026)

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of May, 2026, a copy of the foregoing was served via the Court's CM/ECF system on all parties registered to receive electronic notice in this case, including:

 • Maurice B. VerStandig, Esq., Counsel for IBI Falcon US LLC and IBI SBL Investment LP,

mac@mbvesq.com


 • L. Jeanette Rice, Chapter 11 Trustee, Jeanette.Rice@usdoj.gov


 • Office of the U.S. Trustee – Greenbelt, USTPRegion04.GB.ECF@USDOJ.GOV




/s/ Deirdre T. Johnson


Deirdre T. Johnson, Esq.