**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF MARYLAND (GREENBELT DIVISION)**

| | | |
|---|---|---|
| In re: | &#124; | |
| 5410 30th Street DC, LLC, | &#124; | Case No.: 25-19605 |
| Debtor | &#124; | Chapter 11 |
| | &#124; | |

DECLARATION OF ZANETTA M. WILLIAMS IN SUPPORT OF DEBTOR'S SUPPLEMENT TO MOTION TO ENFORCE THE AUTOMATIC STAY AND FOR SANCTIONS, AND IN SUPPORT OF DEBTOR'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND ORDER TO SHOW CAUSE

I, ZANETTA M. WILLIAMS, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, the following:

1. I am over the age of eighteen, am competent to testify, and have personal knowledge of the matters set forth in this Declaration. I make this Declaration voluntarily and on the basis of my own personal knowledge, except where stated to be on information and belief.

2. I am the managing member of 5410 30th Street DC, LLC (the "Debtor"), the Debtor and Debtor-in-Possession in this Chapter 11 bankruptcy case.

3. The Debtor owns the real property located at 5631 MacArthur Boulevard NW, Washington, DC 20016 (the "Property").

**A.   Identification of the IBI Principals Who Have Contacted Me**

4. Prior to the bankruptcy filing, my contacts at IBI for matters concerning the Loan secured by the Property were Dor [last name], who held the title of Vice President, and Oren Streit. I am familiar with Mr. Streit's identity through prior loan correspondence.

5. Following the petition date, I was informed by Mr. Streit that Dor was no longer with IBI and that Amir Golan had become the "managing partner." The number +972 54-761-6860, which appears in my WhatsApp call log as a missed call on Thursday, April 30, 2026, matches the Israeli mobile number reflected in the email signature of the May 3, 2026 email from Amir Golan, identifying him as the sender of that missed call.

**B.   The April 28, 2026 Missed Voice Call**

6. On Tuesday, April 28, 2026, Oren Streit placed a WhatsApp voice call to my personal mobile telephone. I did not answer; the call was missed. The call is reflected in the WhatsApp call log attached as **Exhibit 5** to this Declaration.

**C.   The April 30, 2026 Missed Voice Call from Amir Golan**

7. On Thursday, April 30, 2026, Amir Golan placed a WhatsApp voice call to my personal mobile telephone from +972 54-761-6860. I did not answer; the call was missed. The call is reflected in the WhatsApp call log attached as **Exhibit 5** to this Declaration.

**D.   The WhatsApp Text Exchange — Threats and Refusal to Communicate Through Counsel**

8. On or about April 30 through May 3, 2026, Mr. Streit engaged me in a WhatsApp text exchange. The exchange occurred on a WhatsApp chat in which Mr. Streit identifies himself as

"Oren Streit." True and accurate screenshots of the exchange, taken from my personal mobile telephone, are attached as **Exhibits 1 through 4** to this Declaration.

9. Mr. Streit opened the exchange by writing: "*Hi Zanetta, The managing partner want to talk with you. Wanted to speak with you and the managing partner. Can we jump into a call today at your morning?*" (Exhibit 1).

10. I asked who the managing partner was: "*The Managing Partner? Dor?*" (Exhibit 1).

11. Mr. Streit responded: "*No, Dor was the VP and I replaced him. Amir is the managing partner. He wants to talk with you. Let's jump to a quick call today at your morning pls*" (Exhibits 1 and 2).

12. I responded asking what the call would be about: "*So Dor is no longer there and this is a new person? And what would the calm [sic] be about?*" (Exhibit 2).

13. Mr. Streit responded with a threat:

> "*Zanetta, we want to see if we can get into an agreement with you. We are ready to dismiss the bankruptcy and eventually you will loose [sic] the property and bear a lot of legal costs. We can jump to a call to try and settle or we can continue at FC with your bankruptcy. I am fine with both – your choices.*" (Exhibits 2 and 3).

14. I understood "FC" in this message to mean "foreclosure." The message threatened that I would lose the Property and incur substantial legal costs unless I capitulated to settlement on IBI's terms.

15. On the morning of the next day, at 10:28 a.m. EDT, I responded to Mr. Streit (Exhibit 4):

> "*Good Morning Oren. I apologize for the delay. The day got away from Me. Please reach out to my attorney regarding the proposed settlement. Her name is Deirdre Johnson and her email address is dtjesq@dtjohnsonlaw.com.*"

16. Four minutes later, at 10:32 a.m. EDT, Mr. Streit responded (Exhibit 4):

"*We prefer to discuss commercial terms with you directly.*"

17. I have not had any direct communication with Mr. Streit since that exchange. I have not authorized Mr. Streit, Mr. Golan, or any IBI personnel or counsel (other than Mr. VerStandig in his capacity as IBI's bankruptcy counsel of record) to communicate with me directly concerning the Loan, the Property, or this case.

18. The WhatsApp screenshots attached as Exhibits 1 through 5 are true and accurate copies of the messages and call log as they appear on my personal mobile telephone. They have not been altered, edited, or staged. I have disabled the "disappearing messages" feature on the Streit chat to ensure preservation, as reflected in Exhibit 4 ("You turned off disappearing messages"). My WhatsApp data is backed up.

### E.    The May 3, 2026 Email from Amir Golan

19. On Sunday, May 3, 2026, at approximately 7:02 a.m. EDT (11:02 a.m. UTC), I received an email from Amir Golan at his email address Amir@IBI.co.il, sent to my personal email address (zanettaw@yahoo.com), copying my counsel Deirdre T. Johnson, and copying Oren Streit (OrenS@IBI.co.il), Tova Greenbaum (TovaG@IBI.co.il), and Anthony Gingo (anthony@gplawllc.com). The email was marked "Importance: High." A true and correct copy of the email, including the full message header, is attached as **Exhibit 6**.

20. The email reads, in pertinent part:

"*Hello Deirdre and Zanetta,*

*As you are aware, we are the holder of the first mortgage on the property located at 5631 MacArthur Boulevard.*

*At this stage, we are proceeding with the enforcement process in respect of the property.*

*That said, our intention is not to prolong proceedings unnecessarily. We believe it may still be in all parties' interest to explore whether a mutually agreeable resolution—such as a settlement or refinancing alternative—can be reached.*

*If your client is open to discussing such a path, we would be glad to engage and review any concrete proposal.*

*Absent progress in that direction, we will continue to move forward with the process as required. If the process continues without a resolution, it is very likely to result in the loss of the property and Zanetta's equity."*

21. I have not responded to that email and have not authorized Mr. Golan to communicate with me directly. I forwarded the email to my counsel.

## F.   The Cease-and-Desist Demand and Mr. VerStandig's Response

22. On May 5, 2026, my counsel transmitted a written cease-and-desist demand to Maurice B. VerStandig, Esq. (counsel of record for IBI Falcon US LLC and IBI SBL Investment LP) by email and U.S. mail. A true and correct copy of that letter is attached as **Exhibit 8**.

23. Later on May 5, 2026, Mr. VerStandig sent a letter in response. A true and correct copy of Mr. VerStandig's letter is attached as **Exhibit 9**. To the best of my understanding, Mr. VerStandig's letter:

a. does not deny that any of the WhatsApp messages, voice calls, or the May 3 email occurred;

b. does not represent that IBI has agreed to cease the contacts, but rather states that Mr. VerStandig *"will certainly ensure"* my desire that the communications cease *"is relayed to my client"*;

c. maintains that the contacts are *"not"* violations of the automatic stay; and

d. discloses, for what I am informed and believe is the first time on the record of this case, that "*the debtor's principal has personally guaranteed the subject obligations.*"

24. I am the principal referenced in Mr. VerStandig's letter. I personally signed a guaranty in connection with the Loan. The fact that I am a personal guarantor was known to IBI and its counsel from the inception of the Loan, but to my knowledge and based on my review of the case docket, IBI has not previously raised that fact in connection with these post-petition contacts. I understood IBI's communications — and in particular Mr. Streit's threat that "*you will loose [sic] the property and bear a lot of legal costs*" and Mr. Golan's warning of "*the loss of the property and Zanetta's equity*" — to be efforts to coerce me, in my capacity as the Debtor's principal and as a personal guarantor, to capitulate to IBI's demands and to surrender the Property to foreclosure.

## G.   Impact on Me and on the Reorganization

25. The contacts described above have caused me significant personal stress and disruption. The threats — particularly the explicit warnings that I would "loose [sic] the property and bear a lot of legal costs" and that "the process … is very likely to result in the loss of the property and Zanetta's equity" — were directed at me personally, at my personal email and personal mobile telephone, by IBI's most senior representatives in Tel Aviv.

26. The contacts have disrupted my work as managing member of the Debtor. I have been required to divert time and attention from operating the Debtor's business, formulating the Debtor's Chapter 11 plan, and pursuing refinancing and sale options, in order to consult with counsel about IBI's contacts and to assist in preparing the Debtor's response.

27. The contacts have made it more difficult to engage with prospective buyers, brokers, and refinancing lenders. The recorded post-petition foreclosure documents and the now-public knowledge that IBI is pressing "the enforcement process" outside of court create uncertainty that has materially impaired the Debtor's reorganization options.

28. Mr. VerStandig's letter does not allay my concerns. Because Mr. VerStandig has stated that he does not believe the contacts are violations of the automatic stay, I understand that IBI takes the position that it may resume the contacts at any time. Without a court order, I do not have any assurance that the contacts have actually stopped, and the disclosure that IBI is also pursuing me as a personal guarantor only heightens my concern that IBI will continue to attempt to use threats against my personal liability as a means of pressuring the Debtor.

## H.    Preservation

29. I have preserved my mobile telephone and the WhatsApp data on it. I have not factory-reset the device, have not deleted any messages, and have disabled the "disappearing messages" feature on the chat with Mr. Streit. I have preserved the original .msg file of the May 3, 2026 email and have provided it to counsel. I have preserved the original of Mr. VerStandig's May 5, 2026 letter as received by counsel.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 5th day of May, 2026.

/s/ Zanetta Williams

Zanetta M. Williams
Managing Member,
5410 30th Street DC, LLC


EXHIBITS TO DECLARATION


Exhibit 1 — WhatsApp screenshot, opening contact (Streit message of approximately 6:15 a.m.; declarant's response 6:16 a.m.; Streit reply 6:25 a.m.).

Exhibit 2 — WhatsApp screenshot, follow-up identifying Amir Golan; declarant's 6:26 a.m. inquiry; beginning of Streit's 6:47 a.m. message.

Exhibit 3 — WhatsApp screenshot, Streit's 6:47 a.m. message in full (foreclosure threat / ultimatum).

Exhibit 4 — WhatsApp screenshot, declarant's direction to counsel (10:28 a.m.) and Streit's 10:32 a.m. refusal.

Exhibit 5 — WhatsApp call log showing missed voice calls from Oren Streit on 4/28/26 and from +972 54-761-6860 on Thursday (4/30/26).

Exhibit 6 — Email from Amir Golan dated May 3, 2026 (with full headers).

Exhibit 7 — Phone call from Amir Golan

Exhibit 8 — Cease-and-Desist Letter from undersigned counsel to Maurice B. VerStandig, Esq., dated May 5, 2026.

Exhibit 9 — Letter from Maurice B. VerStandig, Esq. to undersigned counsel, dated May 5, 2026 (response to Cease-and-Desist Letter).