UNITED STATES BANKRUPTCY COURT

DISTRICT OF MARYLAND (GREENBELT DIVISION)

| | | |
|---|---|---|
| In re: | | |
| 5410 30th Street DC, LLC, | | Case No.: 25-19605 |
| Debtor | | Chapter 11 |
| | | |

## DEBTOR'S OPPOSITION TO IBI FALCON US LLC'S MOTION FOR PROTECTIVE ORDER TO PREVENT DEBTOR FROM DEPOSING MICHAEL PALUMBO

5410 30th Street DC, LLC, the Debtor and Debtor-in-Possession (the "Debtor"), by and through undersigned counsel, hereby opposes the Motion for Protective Order to Prevent Debtor from Deposing Creditor's Counsel [DE #159] (the "Motion") filed by IBI Falcon US LLC ("IBI Falcon"), and in support states as follows:

## I.   Introduction

The Motion is meritless. Michael J. Palumbo is not, in any meaningful sense, "outside trial counsel" for IBI Falcon within the protections of *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986). He is the corporate *signatory* who personally executed the two post-petition recorded instruments at the heart of this dispute — the Affidavit of Non-Residential Mortgage Foreclosure (DC Doc. # 2025110562, signed Nov. 11, 2025) and the Deed of Appointment of Substitute Trustee (DC Doc. # 2025112580, signed Nov. 18, 2025) — in his capacity as "*Authorized Signatory*" of IBI Falcon US LLC. He swore to those documents under oath, expressly attesting to his "*personal knowledge of the matters referred to herein*." Affidavit, ¶ 1. He is a percipient fact witness on the willfulness of the stay violations now before this Court — the actor

whose mental state, knowledge of the bankruptcy, and authority to record the documents are squarely at issue.

*Shelton* was not intended to protect, and does not protect, transactional or in-house attorneys who are themselves fact witnesses to the events giving rise to the litigation. The Motion never addresses Mr. Palumbo's status as a signatory or as a sworn personal-knowledge declarant; instead, it characterizes him generically as "outside counsel" and asks the Court to apply the most protective branch of attorney-deposition law to him without regard to the role he actually played. The Motion should be denied.

Three further points warrant emphasis at the outset:

(1) The Court has already considered and rejected the substance of IBI Falcon's position. In opposing the Debtor's motion for entry of a scheduling order, IBI Falcon raised the same protest. *See* Opposition [DE #155]. The Court overruled the objection and entered the Scheduling Order [DE #156], expressly setting a deadline for Mr. Palumbo's deposition. The Motion concedes as much. Motion at 1–2. IBI Falcon now seeks the same relief under a different label.

(2) Mr. Palumbo's knowledge is uniquely his. No other witness can speak to (a) when he personally learned of the Debtor's Chapter 11 case relative to his execution of the Affidavit and the Deed of Appointment, (b) the basis for his sworn attestation of "personal knowledge," (c) his communications with the District of Columbia Recorder of Deeds in connection with recording the documents post-petition, (d) the chain of authority by which he was empowered to act as "Authorized Signatory" of IBI Falcon US LLC, and (e) his interactions with Anthony J. Gingo (his notary, his apparent law-firm namesake-partner, and an active participant in IBI Falcon's

subsequent direct-contact campaign against the Debtor's managing member). None of that is privileged. None of it can be obtained from any other witness.

(3) Privilege concerns, to the extent any exist, are addressable through ordinary objections at the deposition under Federal Rule of Civil Procedure 30(c)(2). They do not justify the extraordinary remedy of barring the deposition altogether.

II.   Background

1.   On November 13, 2025 — thirty (30) days after the Petition Date — IBI Falcon recorded in the District of Columbia land records an Affidavit of Non-Residential Mortgage Foreclosure (Doc. # 2025110562) (the "Affidavit"). The Affidavit was signed on November 11, 2025 by Michael J. Palumbo, identified on the face of the Affidavit as "*Authorized Signatory*" of IBI Falcon US LLC. *See* Motion to Enforce Stay [DE #60], Ex. 1. Mr. Palumbo, in the Affidavit, expressly attested:

> "*I, Michael J. Palumbo, … of IBI Falcon US LLC, a Delaware limited liability company ('Lender'), make oath and say that: 1. **I have personal knowledge of the matters referred to herein.**"*

2.   On November 19, 2025, IBI Falcon recorded in the District of Columbia land records a Deed of Appointment of Substitute Trustee (Doc. # 2025112580) (the "Trustee Substitution"). The Trustee Substitution was signed on November 18, 2025 by Mr. Palumbo, again in his capacity as "*Authorized Signatory*" of IBI Falcon US LLC. *See* [DE #60], Ex. 2.

3.   Both documents were notarized by Anthony J. Gingo of the State of Ohio. Mr. Gingo is also a participant in the post-hearing direct-contact campaign against the Debtor's managing member that is the subject of the Debtor's Supplement to Motion to Enforce Stay, having been copied on

the May 3, 2026 email from Amir Golan in which IBI Falcon declared it was "*proceeding with the enforcement process*."

4.   The Motion to Enforce Stay [DE #60] put the Affidavit and the Trustee Substitution directly at issue. IBI Falcon's Opposition [DE #68] argued that IBI Falcon had no notice of the Chapter 11 case at the time those documents were recorded. The willfulness of the recordings under *In re Bennett*, 317 B.R. 313 (Bankr. D. Md. 2004), turns on what the actor — Mr. Palumbo — knew and when.

5.   In the Scheduling Order [DE #156], the Court overruled IBI Falcon's objections and set, among other deadlines, a deadline for Mr. Palumbo's deposition. The Scheduling Order preserved each party's right to seek a protective order, but expressly conditioned that reservation on the requirement that any such motion be "*raised promptly*" and "*shall not be used to defeat the schedule*." [DE #156] at 3.

6.   On May 8, 2026, undersigned counsel inquired by email about dates on which Mr. Palumbo could sit for his deposition. The Motion followed three days later.

III.   Argument

A.   *Shelton* Does Not Apply Because Mr. Palumbo Is a Fact Witness, Not Trial Counsel.

7.   The *Shelton* three-prong test, on which the Motion exclusively relies, was crafted to protect *trial* attorneys from depositions intended to mine their litigation strategy and work product. As the Eighth Circuit itself later clarified in *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726 (8th Cir. 2002):

"***Shelton was intend[ed] to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy.*** *Because the attorney's deposition concerned only the prior, concluded litigation, the depositions were not an attempt to delve into trial preparation in the present case, and the protections of Shelton did not apply.*"

281 F.3d at 730 (emphasis added). *Accord In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003) (rejecting a "rigid" *Shelton* approach and applying the "flexible approach" of Federal Rule of Civil Procedure 26 to depositions of attorneys who are also fact witnesses).

8. Mr. Palumbo is not IBI Falcon's trial counsel and is not litigating any matter before this Court. He is, by his own sworn declaration, an "Authorized Signatory" of IBI Falcon US LLC. He executed the two recorded instruments at issue in this case. He attested to "*personal knowledge*" of the underlying matters under oath. He is a transactional/agency actor whose own conduct — signing and recording post-petition instruments — constitutes the stay violations the Debtor alleges.

9. The Motion implicitly concedes the point. It refers to Mr. Palumbo's "ministerial execution of documents as his client's *attorney-in-fact* (and attorney-at-law)." Motion at 5 (emphasis added). An "attorney-in-fact" is an agent, not trial counsel. By signing the Affidavit and the Trustee Substitution in his capacity as "Authorized Signatory," Mr. Palumbo placed his fact role — not his role as a lawyer — at the center of this dispute. He is the only person who can be asked, under oath, what he knew, when he knew it, and on whose instruction he acted.

10. The Fourth Circuit has not adopted *Shelton*. While certain Maryland district court decisions have cited *Shelton* approvingly, the Fourth Circuit itself has never imposed *Shelton*'s rigid three-prong framework, and other circuits have moved decisively away from it. *See Friedman*, 350 F.3d

at 70–72. At a minimum, the strict *Shelton* framework should not be mechanically applied to a fact-witness attorney like Mr. Palumbo.

## B.   Even If *Shelton* Applied, All Three Prongs Are Met.

11. Under *Shelton*, the proponent must show (1) no other means exist to obtain the information; (2) the information is relevant and non-privileged; and (3) the information is crucial to the case. *Shelton*, 805 F.2d at 1327. Each prong is satisfied here.

12. <u>Prong one: no other means to obtain the information</u>. Mr. Palumbo's personal knowledge cannot be obtained from any other witness. The relevant inquiries include:

a. What did Mr. Palumbo personally know, on November 11, 2025, when he swore under oath that he had "personal knowledge" of the matters in the Affidavit?

b. Did he know, when he signed the Affidavit on November 11, 2025, or when he signed the Deed of Appointment on November 18, 2025, that the Debtor had filed for Chapter 11 protection on October 14, 2025?

c. On whose instruction did he sign each document, and what authority did he have to act as "Authorized Signatory" of IBI Falcon US LLC?

d. What due diligence, if any, did he undertake to confirm the borrower's status before signing instruments captioned as foreclosure-related?

e. What were the logistics by which the Affidavit and Trustee Substitution were transmitted to the District of Columbia Recorder of Deeds, and at whose direction?

f. What was the relationship between Mr. Palumbo, Anthony J. Gingo (his notary and apparent law-firm partner), and Russell S. Drazin (the substitute trustee named in the Trustee Substitution)?

g. What role, if any, did Mr. Palumbo play in the post-petition direct-contact campaign — the WhatsApp threats, the missed voice calls, and the May 3, 2026 email — described in the Debtor's Supplement to Motion to Enforce Stay?

13. Each of these is a fact-based inquiry. None can be answered by IBI Falcon's 30(b)(6) designee with the same particularity (and indeed, IBI Falcon may well designate Mr. Palumbo himself for any 30(b)(6) topics covering his own conduct). None can be answered from documents alone — the documents do not reveal mental state.

14. <u>Prong two: relevant and non-privileged</u>. Each of the foregoing topics is plainly relevant. The willfulness of the stay violations turns directly on what Mr. Palumbo knew and when. *In re Bennett*, 317 B.R. at 316. None of the topics requires disclosure of privileged attorney-client communications or attorney work product. Asking Mr. Palumbo when he learned of the bankruptcy is not asking him for legal advice he gave or received. Asking him about his interactions with the Recorder of Deeds is asking him about ministerial acts, not privileged consultation. Asking him about his interactions with the Debtor's managing member or with the Israeli IBI principals is fact discovery, not privileged communication.

15. Critically, by swearing to "personal knowledge" in a recorded public document, Mr. Palumbo placed his personal knowledge directly at issue. A witness who has sworn under oath cannot now shield the basis for that oath behind a generalized privilege claim.

16. The Motion concedes that "*to whatever extent Mr. Palumbo has had any interactions with the Debtor's principal, such are written communications that are presumptively possessed by the Debtor (and which Mr. Palumbo would not object to producing himself outside the confines of a deposition).*" Motion at 5. But the Debtor's entitlement to depose Mr. Palumbo about those interactions does not turn on whether he "would object" to producing them; it turns on whether he is a percipient witness to relevant facts. He is.

17. <u>Prong three: crucial to the case</u>. The information goes to the heart of two of the most contested issues in this matter:

a. **Willfulness** of the November 2025 recordings — central to the Motion to Enforce Stay [DE #60] and the Debtor's Supplement thereto.

b. **Standing** of IBI Falcon US LLC as a party in interest — the precise subject on which the Court granted the Debtor sixty (60) days of discovery. The chain of authority by which Mr. Palumbo became "Authorized Signatory" of IBI Falcon US LLC, and the circumstances of the FTF → IBI SBL → IBI Falcon transfer of the Note and Deed of Trust, are matters on which he has unique percipient knowledge.

C.    The Court Has Already Considered and Rejected the Substance of IBI Falcon's Position.

18. In opposing the Debtor's motion for entry of a scheduling order, IBI Falcon raised the same objection it now repackages as a protective-order motion. *See* Opposition [DE #155] at 5; Motion at 1–2 (acknowledging that the issue "was previously raised when opposing the Debtor's motion

for entry of a scheduling order … and was unavailing in that context"). The Court entered the Scheduling Order [DE #156], expressly setting a deadline for Mr. Palumbo's deposition.

19. The Motion offers no changed circumstances, no new law, and no new facts. Although the Scheduling Order preserved each party's right to seek a protective order under Federal Rule of Civil Procedure 26(c), that reservation cannot be used as a vehicle to relitigate the same issue the Court already decided. The Scheduling Order itself recognized this risk and expressly conditioned the reservation on the requirement that any protective-order motion "*shall not be used to defeat the schedule*" entered. [DE #156] at 3. Granting the Motion would do precisely that.

## D.    Privilege Concerns Are Addressable at the Deposition.

20. To the extent any specific question at the deposition would call for genuinely privileged attorney-client communication or attorney work product, IBI Falcon may interpose appropriate objections and instructions under Federal Rule of Civil Procedure 30(c)(2) on a question-by-question basis. That is the universal practice in federal discovery. It is also the practice expressly contemplated by the Scheduling Order, which preserved "*any party's right to assert applicable privileges.*" [DE #156] at 3.

21. The mere fact that *some* questions might touch on privilege does not justify the wholesale prohibition of the deposition. Indeed, the Motion identifies no specific privileged topic that the Debtor cannot avoid; it instead asserts in conclusory fashion that all of Mr. Palumbo's relevant knowledge is privileged. That is demonstrably wrong: Mr. Palumbo's mental state on the day he swore to "personal knowledge" in a public recording is not a privileged communication, and his chain of corporate authority to act as "Authorized Signatory" of a Delaware LLC is not work product.

E.    The Motion's Footnote on Venue Is a Red Herring.

22. In footnote 1, IBI Falcon suggests that Mr. Palumbo's deposition would have to occur within the Northern District of Ohio under Rule 45(c)(1). The Motion then concedes — correctly — that the Court may rule on the protective-order question regardless. The same Rule that prescribes the 100-mile geographic limit for subpoenas to *non-party* witnesses does not prevent the parties from agreeing to a location for the deposition or, more to the point, from this Court ordering an officer/agent of a party-creditor to appear by videoconference, which is the universal post-2020 practice in this District. The geography footnote provides no basis for a protective order.

IV.    Conclusion

23. Mr. Palumbo is the actor who signed and caused the recording of the two post-petition instruments that triggered this entire dispute. He is a fact witness with unique, non-privileged knowledge bearing directly on willfulness and on the standing inquiry the Court already authorized. *Shelton* does not protect him; and even if it did, every prong is met. The Court has already rejected the substance of IBI Falcon's position once, in entering the Scheduling Order. There is no reason to reach a different result now.

WHEREFORE, the Debtor respectfully requests that this Honorable Court:

A. DENY the Motion;

B. Order that the deposition of Michael J. Palumbo proceed in accordance with the Scheduling Order [DE #156], by videoconference if the parties so agree, and within the deadlines already established;

C. Award the Debtor its reasonable attorney's fees and costs incurred in opposing the Motion pursuant to Federal Rule of Civil Procedure 26(c)(3) and 37(a)(5)(B), made applicable by Federal Rule of Bankruptcy Procedure 7026 and 7037; and

D. Grant such other and further relief as this Court deems just and proper.

Date: May 13, 2026

Respectfully submitted,

/s/ Deirdre T. Johnson

Deirdre T. Johnson, Esq.
Bar No. MD14227
9701 Apollo Dr, Suite 301
Upper Marlboro, MD 20774
Phone: (301) 742-5385
dtjesq@dtjohnsonlaw.com
*Counsel for the Debtor and*
*Debtor-in-Possession*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of May, 2026, a copy of the foregoing was served via the Court's CM/ECF system on all parties registered to receive electronic notice in this case, including:

• Maurice B. VerStandig, Esq., Counsel for IBI Falcon US LLC and IBI SBL Investment LP, mac@mbvesq.com

• L. Jeanette Rice, Subchapter V Trustee, Jeanette.Rice@usdoj.gov

• Office of the U.S. Trustee – Greenbelt, USTPRegion04.GB.ECF@USDOJ.GOV

/s/ Deirdre T. Johnson

Deirdre T. Johnson, Esq.