IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 25-19605-LSS |
| | ) | (Chapter 11) |
| 5410 30TH STREET DC LLC | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

**RESPONSE TO DEBTOR'S OBJECTION TO
AMENDED CLAIM OF IBI FALCON US LLC**

Comes now IBI Falcon US LLC ("IBI Falcon"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 3007 and Local Rule 3007-1, and in opposition to the objection (the "Objection"), DE #132, of 5410 30th Street DC LLC (the "Debtor") to the amended claim of IBI Falcon (the "Claim"), Claims Register #2-2, states as follows:

## I.      Introduction

Over the past several weeks, this case has assumed an abnormally aggressive posture rooted, largely, in the Debtor's misstatements of governing law. These misstatements have been punctuated by the Debtor's citation, in one brief, to a case that does not exist. *See* Motion to Strike, DE #135, at § 16 (citing to "In re Remsen (9th Cir. BAP 2023)," a case that does not actually exist). These misstatements have extended—in the instantly at-issue Objection—to the Debtor's attribution of a quotation, cited as being in the District of Columbia Code, when no such quotation exists in the District of Columbia Code. And these misstatements have been frequently punctuated by citations, in various docket entries, to cases for propositions that are simply not supported by those cases.

Problematically, it is not merely that the Debtor is using citations in a manner that is not consistent with the proper presentation of legal arguments. The problem, rather, is more profound: through misstatements of law, the Debtor has created a strawman construct that does not actually

1

resemble the objective legal dictates governing this matter. At the center of this is a notion that a secured claimholder—like IBI Falcon—must defend every endorsement and transfer of a promissory note (and deed of trust), while also showing that allonges are physically bound to the promissory note they convey. Such is demonstrably untrue: the Debtor's theory of affixing allonges is premised upon a seemingly-fabricated quote. And, more importantly, as the holder of the note the Debtor acknowledges signing, *see* Objection, DE #132, at ¶ 9, IBI Falcon is, automatically, also the beneficiary of the deed of trust the Debtor acknowledges having executed therewith, *id.* at ¶ 10.

Nearly the whole of the Objection is rooted in these facial misstatements of governing law. And such is why the Objection necessary fails: the Debtor is not using actual, applicable law to challenge the Claim—the Debtor is endeavoring to wage a fight in a parallel universe founded upon rules and standards that do not actually mirror those governing cases in this Honorable Court.

For want of ambiguity: IBI Falcon is the holder of the promissory note (the "Note") at issue in this case and, as a matter of law, the beneficiary of the deed of trust securing the Note. IBI Falcon has offered to permit the Debtor to inspect the wet-ink, original note where it is maintained in the offices of IBI Falcon's outside counsel in Ohio. At a hearing on the Objection, IBI Falcon will present evidence that it is the holder of the Note and that it has been the holder of the Note since before this bankruptcy case was commenced—even though such is not necessary because the Objection never succeeds in shifting the burden to require IBI Falcon to make *any* showing.

## II.    Standard

Familiarly, title 11 of the United States Code (the "Bankruptcy Code") provides creditors may file proofs of claim. 11 U.S.C. § 501(a). Any party in interest is then permitted to docket an objection thereto. 11 U.S.C. § 502(a). As this Honorable Court has previously observed:

> If an objection is filed, section 502(b) of the Code requires the Court to determine the amount of the claim and to disallow the claim under certain circumstances, including to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured. . . "

*Chroba v. Quantum3 Grp. LLC (In re Chorba)*, 582 B.R. 380, 384 (Bankr. D. Md. 2018) (quoting 11 U.S.C. § 502(b)(1)).

The Objection is premised, at least partially, on the Debtor's assertion that "[w]here the legal effectiveness of the instruments underlying a claim is challenged on the face of the record, the burden shifts to the claimant to establish it is the lawful holder of a valid, enforceable claim." Objection, DE #132, at ¶ 16. In support of this assertion, the Debtor cites to "In re Harford Sands Inc., 372 F.3d 637, 640 (4th Cir. 2004)." *Id.* Yet such is not quite what *Harford Sands* actually provides.

In *Harford Sands*, insiders of the debtor (family members of the debtor's owner) claimed to have entered into an oral contract for the sale of dirt from a rubble landfill owned by the insiders. *Harford Sands*, 372 F.3d at 639. The debtor, in turn, allegedly agreed (again, orally) to pay the insiders for the dirt. *Id.* The insiders claimed the resulting receivable (which was payable on vague terms) was transferred to a company they formed. *Id.*

The insiders asserted that even though they subsequently sold the business, they retained this one specific receivable at the time of sale. *Id.* at 640. When the insiders demanded payment, the debtor refused such and denied any liability before later petitioning for chapter 11 relief. *Id.* A claim objection ensued. *Id.*

On review, the Fourth Circuit observed, *inter alia*, "[t]he creditor's filing of a proof of claim constitutes prima facie evidence of the amount and validity of the claim. The burden then shifts to the debtor to object to the claim. **The debtor must introduce evidence to rebut the claim's presumptive validity**." *Id.* (citing 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f); 11 U.S.C. §

502(b); *Canal Corp. v. Finnman*, 960 F.2d 396, 404 (4th Cir. 1992); Fed. R. Bankr. P. 9017; Fed. R. Evid. 301; 4 *Collier* at P 501.02[3][d]) (emphasis added). The Fourth Circuit went on to note that "[t]he creditor's burden is heightened when it is an 'insider' of the debtor." *Harford Sands*, 372 F.3d at 640-41 (citing *Pepper v. Litton*, 308 U.S. 295, 306 (1939)).

So the actual holding of *Harford Sands*—which is quite familiar in the realm of claim objections—is that the burden is on the debtor to produce evidence rebutting the *prima facie* validity of a proof of claim. And the court noted that, should a debtor succeed in so doing, the burden then shifts in a way that invites a heightened burden for a creditor that happens to be an insider.

Yet that is not what the Debtor asserts *sub judice*. The Debtor, rather, asserts that *Harford Sands* stands for the proposition that "[w]here the legal effectiveness of the instruments underlying a claim is challenged on the face of the record, the burden shifts to the claimant to establish it is the lawful holder of a valid, enforceable claim." Objection, DE #132, at ¶ 16.

This is not a faithful recitation. The Debtor is saying all that is needed is for an objector to challenge the validity of an instrument, with the burden automatically shifting as soon as a challenge—no matter how hollow—is docketed. Yet *Harford Sands* actually says the precise opposite: it is incumbent upon an objecting party to produce evidence of the invalidity of a claim. Simply asking questions and demanding more proof is not enough to overcome the *prima facie* validity of a proof of claim.

This reality is buttressed by a wide swath of case law, from within this judicial circuit, noting the obligation of an objecting party to produce actual proof of the grounds of their objection (as opposed to simply challenging the validity of documents). As observed by the United States Bankruptcy Court for the Eastern District of Virginia:

4

> The party objecting to the claim has the burden of going forward and of introducing evidence sufficient to rebut the presumption of validity. Such evidence must be sufficient to evidence a true dispute and **must have probative force equal to the contents of the claim.** Upon introduction of sufficient evidence by the objecting party, the burden of proof must then be met by the claimant by a preponderance of the evidence.

*In re Comput. Learning Ctrs., Inc.*, 298 B.R. 569, 578 (Bankr. E.D. Va. 2003) (quoting In re Saunders, 159 B.R. 482, 484 (Bankr. W.D. Va. 1993) (quoting 8 Collier on Bankruptcy P 3001.05 (15th ed. 1993))) (emphasis added). *See also In re Falwell*, 434 B.R. 779, 784 (Bankr. W.D. Va. 2009) ("If the debtor is to prevail, the evidence must be sufficient to demonstrate the existence of *a true dispute* and must have probative force equal to the contents of the claim.") (citing 9 Collier on Bankruptcy, ¶ 3001.09[2] (15th ed. 1993) (citing *In re Wells,* 51 B.R. 563 (D. Colo. 1985); *In re Unimet Corp.,* 74 B.R. 156 (Bankr. N.D. Ohio 1987))) (emphasis in original); *In re Kora & Williams Corp.*, 2006 Bankr. LEXIS 4207, at *40 (Bankr. D. Md. Oct. 28, 2006) ("Such evidence must be sufficient to demonstrate a true dispute and must have probative force equal to the contents of the claim.") (quoting *Collier on Bankruptcy,* P 3001.9[2](15th ed. rev. 2006)); *In re Cranston*, 387 B.R. 480, 484 (Bankr. D. Md. 2008) ("If an objection to a proof of claim is raised, the objecting party bears the burden of going forward to produce evidence sufficient to negate the prima facie validity of the filed claim.") (citing *In re Lewis*, 363 B.R. 477, 481-82 (Bankr. D.S.C. 2007) (citing *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173 (3d Cir. 1992))).

## III.    Argument: The Objection Should be Overruled

### a.  The Debtor Has Invented a Statutory Quotation

As discussed in greater detail *infra*, much of the Objection is premised upon the notion that IBI Falcon must show various ministerial documents were executed by various persons on various dates. This is not nearly a faithful recitation of governing law. To the contrary, the law is plain that the holder of a promissory note is entitled to enforce the promissory note and that a deed of trust

5

automatically follows a promissory note. But, both tellingly and insidiously, the Debtor's argument appears to be premised—in part—on a wholly-fabricated statutory quotation.

The Claim Objection argues, *inter alia*: "Under UCC § 3-204(a), adopted at D.C. Code § 28:3-204(a), a valid endorsement must be written on the instrument or on a paper 'so firmly affixed thereto as to become a part thereof.'" Claim Objection, DE #132, at ¶ 61 (putatively quoting D.C. Code § 28:3-204(a)).

This quotation does not appear to exist. That quotation is not in the cited portion of the District of Columbia Code. The word "firmly" is not in the cited portion of the District of Columbia Code. Nor does the word "firm" or any conjugated iteration thereof appear in the cited statute. And a search of the whole District of Columbia Code reveals the quotation does not exist anywhere therein either.

That a quotation has been seemingly made up is enormously problematic for numerous reasons (some of which stretch beyond the reach of this brief). Yet the falsity of the quotation also necessarily calls attention to the core problem with the Objection: the Debtor either does not understand the law governing the transfer of promissory notes or, worse, is trying to mislead this Honorable Court concerning the contours of such law.

### b. As the Holder of the Note, IBI Falcon is Entitled to Enforce the Note—and the Deed of Trust

#### i. The Debtor is Confusing the "Holder" of a Note with a "Holder in Due Course"

A key component of the Debtor's Claim Objection is that IBI Falcon cannot qualify as a "holder in due course" and, thusly, cannot enforce the Note. This portion of the Debtor's argument is particularly vital because the Debtor cannot deny that IBI Falcon has possession of the Note. Nor can the Debtor deny that the Deed of Trust has been assigned to IBI Falcon. So the Debtor seeks to undermine the manner in which IBI Falcon came to hold the paper by urging, quite

passionately, that IBI Falcon does not qualify as a "holder in due course." The problem with this is that IBI Falcon is the holder of the Note and is seeking to enforce the Note as the holder thereof— not as a holder in due course. It does not appear that the Debtor appreciates the distinction between a "holder" and a "holder in due course."

The Claim Objection asserts, *inter alia*, "[e]ven assuming the endorsements were valid, IBI Falcon cannot be a holder in due course under D.C. Code § 28:3-302 because the Note was overdue at the time of the purported transfer (matured June 1, 2024; effective date of Second Allonge June 30, 2025- thirteen months later)." Claim Objection, DE #132, at ¶ 75.

As a starting point, this is demonstrably false. The maturity date of the Note was extended to September 1, 2024. *See* June 2024 Agreement (defined *infra*), attached hereto as Exhibit A. The maturity date was then extended to June 18, 2025. *See* September 2024 Agreement (defined *infra*), attached hereto as Exhibit B. The maturity date was then extended, once more, to June 30, 2025. *See* June 2025 Agreement (defined *infra*), attached hereto as Exhibit C. So the Note was *not* overdue at the time of the transfer to IBI Falcon. And IBI Falcon accordingly *can* qualify as a holder in due course.

Critically, however, IBI Falcon does not need to be a holder in due course. IBI Falcon, rather, merely needs to be the holder of the Note. As noted by the United States Bankruptcy Court for the District of Columbia (the jurisdiction in which the collateral in this case is situated):

> Richardson asserts that Nationstar did not receive the Note from Ocwen in good faith and thus cannot be a holder in due course. However, she does not dispute that the Note was assigned to Nationstar, and has not challenged the recitation in the proof of claim that Nationstar "directly or through an agent, has possession of the promissory note." She has failed to adduce any facts showing that Nationstar is not a holder of the Note. As a holder of the Note, Nationstar has rights in the Note regardless of whether it is a holder in due course. If it is a holder in due course, that would preclude assertion of many defenses to the Note obligation that existed at the time it became a holder. The point, however, is that, as discussed above, Richardson has not presented evidence showing that she had a defense to the Note

as of December 17, 2013, the date Nationstar became a holder. Because she has not shown that there was such a defense, it does not matter whether Nationstar is a holder in due course or only a holder.

*Richardson v. Nationstar Mortg. (In re Richardson)*, 2018 Bankr. LEXIS 2865, at *4-5 (Bankr. D.D.C. Sep. 20, 2018) (citing D.C. Code § 28:3-301; D.C. Code § 28:3-305(b)).

Judge Teel's point is certainly correct: under the District of Columbia Code, the "holder of the instrument" is entitled to enforce a given instrument. D.C. Code § 28:3-301. And it would thusly seem that IBI Falcon—as the party undisputedly in possession of the Note—is entitled to enforce the Note

### ii.   The Debtor's Focus on Allonges Misses that IBI Falcon is in Possession of the Note

A significant part of the Claim Objection is devoted to the Debtor's various theories about when allonges where executed, who executed each allonge, and the placement of signatures on allonges in lieu of on the Note itself. As happens to be the case, IBI Falcon has properly complied with every legal rigor on these fronts (something that ought not be missed). But even if, *arguendo*, the Debtor's theories proved accurate, and one or more allonges were not executed on the dates indicated, IBI Falcon would *still* be the holder of the Note and entitled to enforce the Note.

As noted above, *see, supra,* § II(b), under District of Columbia law, the "holder of the instrument" is entitled to enforce an instrument. D.C. Code § 28:3-301. And "holder," in turn, is defined as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." D.C. Code § 28:1-201(21)(A).

Here, there is no dispute but that IBI Falcon is the "person in possession" of the Note. Nor does there appear to be any dispute but that, through two allonges, the Note has been made payable to IBI Falcon. So IBI Falcon is assuredly the "holder" of the Note under the District of Columbia Code.

8

The Debtor actually appears to know this, even though the Debtor does not expressly acknowledge as much in the Claim Objection. Such may well be why the Debtor posits, in attacking the two allonges, *inter alia*, "[u]nder UCC § 3-403, adopted at D.C. Code § 28:3-403, an unauthorized signature does not operate as the signature of the represented person." Claim Objection, DE #132, at ¶ 45. Problematically, however, such is not nearly an honest summary of the cited statutory text, which reads:

> Unless otherwise provided in this article or Article 4, an unauthorized signature is ineffective except as the signature of the unauthorized signer in favor of a person who in good faith pays the instrument or takes it for value. An unauthorized signature may be ratified for all purposes of this article.

D.C. Code § 28:3-403(a).

Stated otherwise: even if, *arguendo*, there were an issue with one or both of the allonges, such would be wholly inconsequential—and of absolutely no legal moment—so long as (i) IBI Falcon paid for the Note; (ii) IBI Falcon otherwise took the Note for value; *or* (iii) the transfer has been ratified. And while some evidence may be needed to demonstrate the first two alternative prongs, the third criterion is plain from the record in this case: All three historic noteholders are on notice of this bankruptcy proceeding, yet only IBI Falcon has filed a proof of claim. *See* D.C. Code § 28:3-403 cmt. 3 ("Ratification is a retroactive adoption of the unauthorized signature by the person whose name is signed and may be found from conduct as well as from express statements."). Moreover, and quite importantly, the Debtor has repeatedly recognized the transfer of the Note from the originator to IBI Falcon's predecessor holder. *See, infra*, § III(C).

There is a more basic problem with the Debtor's theory, though: "[t]ransfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument. . ." D.C. Code § 28:3-203(b). Or, stated otherwise, as long as IBI Falcon has been transferred the Note, IBI Falcon has the right to enforce the Note—regardless

of what allonges were, or were not, created along the way, as well as regardless of whether or not deeds of trust were formally assigned along the way. As explained by the District of Columbia Court of Appeals: "The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter." *Smith v. Wells Fargo Bank*, 991 A.2d 20, 30 n.19 (D.C. 2010) (quoting *Carpenter v. Longan*, 83 U.S. 271, 275 (1873)).

### iii.   The Deed of Trust Assignments are Both Valid and Unnecessary

The Debtor also attacks the assignments of the Deed of Trust, arguing that because a power of attorney was allegedly not recorded until after an assignment was recorded, the assignment is accordingly void. This is wrong for two reasons: (i) there is no obligation to record a power of attorney before recording a trust assignment; and (ii) there is no obligation to enter into—much less record—an assignment of a deed of trust.

The Claim Objection theorizes, *inter alia*, "D.C. Code § 21-2603.03 requires that where an agent executes an instrument conveying an interest in real property, the power of attorney must be recorded with or prior to that instrument," Claim Objection, DE #132, at ¶ 37, and "[r]ecording the POA is a condition precedent to a valid conveyance by an agent under D. C.," *id.* at ¶ 41. These are not accurate statements of law.

First, the referenced provision of the District of Columbia Code only provides that a power of attorney must be recorded before a *deed* is recorded. *See, e.g.*, D.C. Code § 21-2603.03 ("If a power of attorney authorizes the agent to sell, grant, or release any interest in real property, it shall be executed in the same manner as a deed and **shall be recorded with or prior to the deed executed pursuant to the power of attorney**. . .") (emphasis added). The assignment of rights in a trust created under a deed of trust is assuredly not to be confused with an actual deed conveying real property. The trustee under the deed of trust is the one who legally holds the property; the

10

assignment of a deed of trust does not alter the trustee or the property ownership—the assignment simply effectuates a change in the beneficiary of the trust.

Second, and more plainly: a deed of trust does not need to ever be assigned—the deed of trust follows the promissory note it secures. *See, e.g.*, *Smith*, 991 A.2d at 30 n.19 ("The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter."). *See also Quinteros v. Capital Ventures Int'l LLC (In re Quinteros)*, 2020 Bankr. LEXIS 2712, at *10 (Bankr. D.D.C. Sep. 29, 2020) ("As the debtor notes, an assignment of a note carries the mortgage with it. As long as Capital Ventures is the assignee of the *Note*, it matters not whether the *Mortgage* was assigned to it.") (citing *Northup v. Reese*, 67 So. 136, 137 (Fla. 1914); internal citations omitted) (emphasis in original).

So as long as IBI Falcon is in possession of the Note (which, as discussed *supra*, gives IBI Falcon the rights of a holder), IBI Falcon is, too, entitled to enforce the Deed of Trust. And this point matters a great deal: as long as IBI Falcon has the Note, IBI Falcon *is* the first position secured creditor in this case.

### c.  The Debtor Has Released All of the Claims it is Now Trying to Pursue

There is another overriding problem with the Claim Objection: the Debtor—long before seeking chapter 11 relief—waived nearly all of the defenses it is now endeavoring to raise. The Debtor also acknowledged the validity of the transfer of the Note—and the assignment of the Deed of Trust—from the note originator (FTF Lending LLC) to IBI SBL Investment LP (the entity that eventually transferred the same to IBI Falcon). Yet the Debtor is now endeavoring to ignore the relevant acknowledgments—and the agreements through which those acknowledgements were made—and pursue claims that have been waived and released.

11

Before seeking bankruptcy relief, the Debtor negotiated for a series of extensions of the Note. The latter three such agreements were deemed effective as of (i) June 2024 (the "June 2024 Agreement"), attached hereto as Exhibit A; (ii) September 2024 (the "September 2024 Agreement"), attached hereto as Exhibit B;[1] and (iii) June 2025 (the "June 2025 Agreement"), attached hereto as Exhibit C. Each off the three agreements bargained valuable consideration—in the form of a loan extension—to the Debtor. And each of the three agreements, in turn, contained covenants, representations, warranties and releases to which the Debtor remains bound.

Specifically, the September 2024 Agreement recites, *inter alia*, "FTF Lending LLC transferred and assigned the Loan Documents to IBI SBL Investment LP on or about March 6, 2024," and "IBI SBL Investment LP is the current holder of the Loan Documents." *See* September 2024 Agreement, attached hereto as Exhibit B, at p. 1. The same document goes on to provide, in reference to the two foregoing recitals (as well as other recitals), "[t]he foregoing recitals are incorporated herein by reference and are true and accurate in all material respects and contain no material misrepresentations or omissions." *Id.* at § 1.

The June 2025 Agreement similarly provides, *inter alia*, "FTF Lending LLC transferred and assigned the Loan Documents to IBI SBL Investment LP on or about March 6, 2024," and "IBI SBL Investment LP is the current holder of the Loan Documents." *See* June 2025 Agreement, attached hereto as Exhibit C, at p. 1. Much as with the predecessor agreement, that document further contains' the parties' agreement that "[t]he foregoing recitals are incorporated herein by reference and are true and accurate in all material respects and contain no material misrepresentations or omissions." *Id.* at § 1.

---

[1] The September 2024 Agreement was signed by the Debtor on March 21, 2025. *See* September 2024 Agreement, attached hereto as Exhibit B, at p. 8.

The September 2024 and June 2025 agreements also each contain fully-capitalized clauses providing:

> EACH BORROWER AND GUARANTOR FULLY ACKNOWLEDGES THAT EACH BORROWER AND GUARANTOR HAS CONDUCTED WHATEVER INVESTIGATION EACH BORROWER AND GUARANTOR DEEMS NECESSARY TO ASCERTAIN ALL FACTS AND MATTERS RELATING TO THIS AMENDMENT.

*Id.* at § 10(e).

The documents also contain provisions in which the Debtor "ratifies and affirms . . . its liability to Lender pursuant to the terms of the Loan. . .," *id.* at § 13, with "Lender" being defined as IBI SBL Investment LP, *id.* at p. 1. And, not surprisingly, the agreements also contain blanket releases—including releases of all defenses to enforcement of the relevant loan documents. *Id.* at ¶ 10(a).

So the Debtor—which is now expending untold resources, and forcing IBI Falcon to incur extraordinary fees, in connection with an investigation into whether or not the Note and Deed of Trust were properly transferred from their originators to IBI SBL Investment LP—has already formally covenanted, on at least two occasions, that such is precisely what happened. The Debtor has also waived every defense it may have had to collection, by IBI SBL Investment LP, on at least two occasions. Yet the Debtor is now trying to raise the waived defenses in the Claim Objection and litigate the veracity of events the Debtor has already formally acknowledged to have occurred. Such is assuredly not the proper fodder of a claim objection.

## IV.    Conclusion

IBI Falcon holds the Note. The original, wet-ink note is sitting in the office of IBI Falcon's outside counsel in Ohio. As the holder of the Note, IBI Falcon is entitled to enforce the deed of trust. The Debtor has—on at least two separate occasions—acknowledged the validity of the Note's original transfer and waived any defenses rooted in that transfer.

The Objection does not present any evidence to overcome these basic realities. Rather, the Objection is premised upon a quotation that does not exist, misstatements of law, and the application of faulty legal theories to faulty factual theories. And it is thusly appropriate to overrule the Objection.

WHEREFORE, IBI Falcon respectfully prays this Honorable Court (i) enter an order protecting its outside counsel, Mr. Palumbo, from being subject to deposition; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: May 15, 2026

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for IBI Falcon US LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of May, 2026, a copy of the foregoing was served electronically upon filing via the ECF system, with copies to:

- Deirdre Theresa Johnson    dtjesq@dtjohnsonlaw.com
- L. Jeanette Rice    Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- US Trustee - Greenbelt    USTPRegion04.GB.ECF@USDOJ.GOV
- Maurice Belmont VerStandig    mac@mbvesq.com, lisa@mbvesq.com;mahlon@dcbankruptcy.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

/s/ Maurice B. VerStandig
Maurice B. VerStandig

14