IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 25-19605-LSS |
| | ) | (Chapter 11) |
| 5410 30TH STREET DC LLC | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

**OPPOSITION TO DEBTOR'S SUPPLEMENT TO MOTION
TO ENFORCE THE AUTOMATIC STAY AND FOR SANCTIONS**

Comes now IBI Falcon US LLC ("IBI Falcon"), by and through undersigned counsel, in response to the motion of 5410 30th Street DC LLC (the "Debtor") for sanctions stemming from a putative violation of the automatic stay (the "Motion"), DE #160, and states as follows:

## I.    Introduction

Principals of IBI Falcon contacted the Debtor's principal in an effort to negotiate an amicable resolution to the issues at the heart of this bankruptcy case. No lawsuit was filed and no foreclosure was scheduled. Yet the Debtor now wishes to characterize these communications as a violation of the automatic stay enshrined in section 362 of title 11 of the United States Code (the "Automatic Stay"). Doing so is in legal error and misses that settlement efforts are critical to— and not violative of—the bankruptcy process.

The Motion also finally acknowledges a reality the Debtor has heretofore ignored: the Debtor's principal is a guarantor of the full debt owed to IBI Falcon. While such is not disclosed on the Debtor's schedules, this obligation creates a universe in which IBI Falcon can not only communicate with the Debtor's principal but, indeed, can actually go so far as to bring suit against the Debtor's principal. Unless and until the principal files her own petition or title 11 relief, she is not—and will not be—insulated by the Automatic Stay.

1

For these reasons, and as extrapolated upon *infra*, it is respectfully urged the Motion be denied.

**II.      Argument: No Stay Violation Has Occurred**

     **a.  The Communications Do Not Offend § 362**

As a threshold matter, if the principals of debtors and creditors were not permitted to negotiate during a bankruptcy case, the chapter 11 system would suffer grave consequences. Moreover, while negotiations most frequently occur between counsel for parties, the reality remains that (i) the intervention of principals is sometimes helpful in pushing beyond the formality of counsel; and (ii) there does not exist a legally-meaningful distinction between negotiations had between counsel (literal agents of their clients) and negotiations had between principals themselves.

Familiarly, ". . . the automatic stay does not bar settlement negotiations. . ." *In re Lutheran Home & Servs. for the Aged, Inc.*, 670 B.R. 874, 876 (Bankr. N.D. Ill. 2025). If the Automatic Stay did prohibit settlement discussions, Federal Rule of Bankruptcy Procedure 9019 would become partially obsolete insofar as it is difficult to negotiate a compromise of any claim against a debtor if the mere act of negotiating is forbade. *See* Fed. R. Bankr. P. 9019(a) ("On the trustee's motion and after notice and a hearing, the court may approve a compromise or settlement. . .").

A minority of courts have held that settlement negotiations may be violative of the stay if the negotiations cross into "coercive or harassing" territory. *See In re Keaty*, 350 B.R. 723, 726 (Bankr. W.D. La. 2006); *Diamond v. Premier Capital, Inc. (In re Diamond)*, 346 F.3d 224, 227 (1st Cir. 2003); *In re Lyubarsky*, 615 B.R. 924, 930 (Bankr. S.D. Fla. 2020).

The Fourth Circuit has never adopted this test, and this Honorable Court has declined to do so when previously prompted. *See, e.g.*, *Palazzo v. Bayview Loan Servicing LLC*, 2023 U.S.

Dist. LEXIS 57322, at *15 (D. Md. Mar. 31, 2023) ("Palazzo cites a string of opinions from other jurisdictions indicating that a stay violation occurs when the context surrounding the statements indicates that a creditor's conduct is harassing or coercive. . .").

The *Keaty* Court confronted a situation where post-petition settlement negotiations occurred via telephone. The debtor asserted such to be a violation of the Automatic Stay. The court plainly disagreed, noting, *inter alia*, "Mr. Keaty argues that Mr. Danner's telephone call to Ms. Alston to convey a settlement offer was sufficient conduct to constitute the 'act' proscribed by the statute. For the following reasons, the court disagrees." *Keaty*, 350 B.R. at 725.

The *Diamond* Court, by contrast, *did* find a stay violation to have potentially occurred on account of coercive or harassing conduct. Yet, in that case, a longtime real estate industry professional (i.e., a natural person) filed a chapter 13 petition that was subsequently converted to chapter 7. *Diamond*, 346 F.3d at 226. An unsecured creditor filed a section 727 suit to challenge the debtor's discharge. *Id.* During settlement negotiations (which the court does not suggest to have been wrongful unto themselves), an attorney for the creditor "allegedly told Diamond's attorney that if the dischargeability issue was not resolved in Premier's favor, he would take action at the New Hampshire Real Estate Commission to revoke Diamond's real estate broker's license." *Diamond*, 346 F.3d at 226.

Of course threatening administrative action, if a case is not suitably settled, is actionable. Putting aside the stay violation, the conduct in *Diamond* appears to literally constitute extortion. *See* Md. Code, Crim. Law § 3-701.

The *Lyubarsky* Court also confronted facts that seemingly fell within the ambit of extortion. There, a creditor's attorney reached out to a debtors' attorney to set up a meeting. *Lyubarsky*, 615 B.R. at 928-29. The debtors dispatched their counsel to the meeting, *id.* at 929, where counsel for

3

the creditor "demanded the Debtors pay [the creditor] $250,000.00 by June 25, 2018, or [the creditor's attorney] would send the chapter 7 trustee and the United States Attorney all the information he had about assets [the creditor's attorney] claimed the Debtors owned and had not disclosed on their bankruptcy schedules." *Id.*

So even if the "coercive or harassing" test did apply in this Honorable Court, the conduct alleged by the Debtor—a legal entity (as opposed to a natural person)—comes nowhere near the threshold that has been established by other courts. This is assuredly not a case where any of the allegations rise within the vaguest sphere of extortion, as found in *Diamond* and *Lyubarsky*. And the *Keaty* Court, while recognizing the "harassing or coercive" standard to exist, expressly found settlement communications to not meet that standard.

Moreover, the cases cited by the Debtor do not advance this theory either. The Debtor relies principally on a case from the Untied States Bankruptcy Court for the District of North Carolina, discussed below, *see, infra,* § II(b), in which a stay violation is found to have *not* occurred, and on *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259 (3d Cir. 2013). *See* Motion, DE #160, at ¶ 21. Yet *Simon* is not actually a case concerning an alleged violation of the Automatic Stay; *Simon* is, rather, a case in which the Third Circuit confronts the eccentricities of trying to square the Fair Debt Collection Practices Act with the necessity of filings claims, and taking certain creditor-centric actions, in a bankruptcy case. *See id.* at 271 ("We have not previously addressed whether, or to what extent, an FDCPA claim can arise from a debt collector's communications to a debtor in a pending bankruptcy proceeding."). Focusing on the so-called "mini-Miranda" notice required under the FDCPA (a statement of a debtor's rights to contest a debt and demand verification thereof), the Third Circuit ultimately found such to be incompatible with the bankruptcy framework:

> If, as the Simons argue, a § 1692e(11) claim could arise from the fact that the Weinstein & Riley letters and subpoenas did not include the "*mini-Miranda*" notice, the firm would violate the automatic stay provision of the Bankruptcy Code by including the notice or violate the FDCPA by not including the notice. This conflict precludes allowing a claim under § 1692e(11) for failing to include the "*mini-Miranda*" notice in the letters and Rule 2004 examination subpoenas sent to the Simons through their bankruptcy counsel.

*Id.* at 280.

The question of how the FDCPA interacts with bankruptcy law is fascinating. The issue also appears to be one the Fourth Circuit is yet to firmly address. Yet such is of absolutely no moment to this case, where the Debtor is a legal entity and not a "consumer," 15 U.S.C. § 1692a(3), and where IBI Falcon is a noteholder and not a "debt collector," 15 U.S.C. § 1692a(6).

What the Debtor alleges instantly is that (i) agents of IBI Falcon tried to call, and then text-messaged the Debtor's principal, *see* Motion, DE #160, at ¶¶ 6-11; (ii) indicated that they wished to speak with the Debtor's principal "to see if we can get into an agreement with you," *id.* at ¶ 8; (iii) indicated that settling is preferable because the Debtor is otherwise likely to lose its sole real estate asset through the bankruptcy process, at significant legal expense, *id.*; (iv) made clear IBI Falcon was content to proceed with bankruptcy litigation if discussions were not desirable, *id.*; (v) stressed a desire to speak with the Debtor's principal directly, as opposed to going through counsel, *id.* at ¶ 10; and (vi) indicated IBI Falcon would enforce its rights if no resolution was reached, *id.* at ¶ 11.

These are not coercive or harassing communications—these are efforts to negotiate with a party that is apparently unwilling to negotiate. The Debtor's risk of loss of property, through this chapter 11 case, is objective and manifest: the Debtor is deeply insolvent, owes far more in claims than even the Debtor maintains the property to be worth, and will inevitably lose the asset through one means or another (as even the Debtor's own proposed plan of reorganization contemplates).

5

Moreover, IBI Falcon's desire to pursue and enforce its rights through the bankruptcy case is no doubt manifest.

Most importantly, though, IBI Falcon never indicated a desire to take any collection actions *outside* the bankruptcy case. It is assuredly not a stay violation to merely—and rather matter-of-factly—indicate that if a settlement is not reached, a case might convert, be dismissed, or see a creditor plan confirmation. Each of those prospects is plain from an examination of both the docket in this case and title 11 of the United States Code.

### b.   The Debtor Has Not Alleged Any Damages

One of the hallmarks of the Debtor's two motions seeking damages for putative violations of the Automatic Stay has been a failure to allege any legally cognizable damages. These motions feel less like genuine grievances and more like efforts to exert pressure on a secured creditor. This shortcoming is ultimately dispositive unto itself, as a stay violation without damages—in a corporate case—is not fodder for relief.

One of the cases relied upon by the Debtor, in the Motion, is most demonstrative of the damages-centric problem *sub judice*. The Debtor relies on *In re Brock Utils. & Grading*, 185 B.R. 719 (Bankr. E.D.N.C. 1995). *See* Motion, DE #160, at ¶ 21. That case is illustrative as, there, the Internal Revenue Service ". . . knew of the debtor's bankruptcy, but notwithstanding that knowledge, on July 3, 1995, a computer-generated notice of intention to levy was mailed to the debtor from the IRS office in Memphis, Tennessee." *Brock*, 185 B.R. at 720. However, "the only actual damages claimed by the debtor are those incurred in the prosecution of this motion." *Id.* The *Brock* Court, in turn, noted:

> The court need not decide in this case whether the IRS's violation of the stay was "willful" because under the facts of this case, the debtor suffered no injury. Debtor's counsel had established contact with Mr. Richardson of the IRS and had received assurances from him that the IRS would not seek to collect its claim in violation of

6

the stay. A simple phone call to Mr. Richardson would have allayed any fears that the debtor might have had, and the motion for sanctions would not have been required. Any costs involved in bringing this motion were unnecessarily incurred and should not be reimbursed by the IRS.

*Id.* at 720-21.

Much as in *Brock*, the Debtor here has not alleged any damages beyond self-created legal fees correlative to preparing the Motion. While the Debtor claims communications have been disruptive to reorganization, *see* Motion, DE #160, at ¶ 34(b), it is genuinely difficult to understand how dealing with a secured creditor has derailed the marketing of a parcel of real estate. Similarly, "distress to the Debtor's managing member," *id.* at ¶ 34(c), is hardly cognizable—especially when, as discussed *infra*, the Debtor's sole member is a personal guarantor of the at-issue obligation. And the other feigned forms of damages appear to relate not to the issues discussed in this Motion but, rather, those raised in a prior motion, DE #60, that have already been opposed in a separate brief, DE #68.

## III.    Argument: The Debtor's Principal is Not Protected by the Automatic Stay

Finally, insofar as the gravamen of the Motion is that IBI Falcon ought not contact the Debtor's principal, and insofar as part of the putative damages relate to "distress" allegedly occasioned by that principal, it bears notation that the principal is a guarantor of the debt. While this is not faithfully recited (or at all acknowledged) on Schedule H, *see* DE #18, Zanetta Williams ("Ms. Williams") has unconditionally guaranteed the obligation to IBI Falcon. *See* Guaranty, attached hereto as Exhibit A. Ms. Williams, meanwhile, is not protected by the Automatic Stay.

As something of a bedrock principal of chapter 11 caselaw, non-debtors are not shielded by the automatic stay:

> Nothing in § 362 suggests that Congress intended that provision to strip from the creditors of a bankrupt debtor the protection they sought and received when they required a third party to guaranty the debt. Congress knew how to extend the automatic stay to non-bankrupt parties when it intended to do so. Chapter 13, for

example, contains a narrowly drawn provision to stay proceedings against a limited category of individual cosigners of consumer debts.  No such protection is provided to the guarantors of Chapter 11 bankrupts by § 362(a).

*Credit All. Corp. v. Williams*, 851 F.2d 119, 121 (4th Cir. 1988) (citing *Williford v. Armstrong World Industries, Inc.*, 715 F.2d 124, 126-27 (4th Cir. 1983); 11 U.S.C. § 1301(a)). *See also CresCom Bank v. Terry*, 499 B.R. 494, 496 (D.S.C. 2013) ("Section 362(a) of the Bankruptcy Code provides that the filing of a petition for bankruptcy operates as a stay against all entities in any litigation against the debtor that commenced prior to the filing of the petition. This automatic stay provision applies to judicial proceedings and enforcement of judgments against only the debtor, not third party defendants or co-defendants.") (citing 11 U.S.C. § 362(a)(1); *Williams*, 851 F.2d at 121 (4th Cir. 1988); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)).

Especially in the post-2024 environment, the availability of non-debtor relief in chapter 11 is breathtakingly limited. *See, generally, Harrington v. Purdue Pharma L.P.,* 603 U.S. 204 (2024) (prohibiting non-debtor releases in chapter 11). And while there may exist some theoretical, highly esoteric universe in which an exceedingly limited non-debtor stay might be potentially imposable, any such construct would almost assuredly invite some combination of (i) an equity holder making a significant cash infusion into a debtor; (ii) the debtor making significant adequate protection payments to an impacted creditor; and (iii) a clearly-confirmable plan of reorganization sitting on the docket. None of those factors are present here.

All of which matters for precisely the reasons that underlie the Motion: the Debtor is protesting that Ms. Williams ought not be contacted by IBI Falcon but, in reality, IBI Falcon has the right to not merely contact Ms. Williams but, too, file suit against Ms. Williams. And such is ultimately demonstrative of the fallacy in the Debtor's overly-prophylactic interpretation of the Automatic Stay. After all, if IBI Falcon is entitled to serve Ms. Williams with a summons, propound discovery upon her, have her sit for a deposition, and attend a state court-ordered

8

settlement conference with her, then assuredly IBI Falcon is, too, entitled to try to barter a negotiated settlement with her.

## IV. Conclusion

WHEREFORE, IBI Falcon respectfully prays this Honorable Court (i) deny the Motion; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: May 26, 2026

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for IBI Falcon US LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of May, 2026, a copy of the foregoing was served electronically upon filing via the ECF system, with copies to:

- Deirdre Theresa Johnson    dtjesq@dtjohnsonlaw.com
- L. Jeanette Rice    Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- US Trustee - Greenbelt    USTPRegion04.GB.ECF@USDOJ.GOV
- Maurice Belmont VerStandig    mac@mbvesq.com, lisa@mbvesq.com;mahlon@dcbankruptcy.com;mac@dcbankruptcy.com;verstand ig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

/s/ Maurice B. VerStandig
Maurice B. VerStandig

9