UNITED STATES BANKRUPTCY COURT

DISTRICT OF MARYLAND (GREENBELT DIVISION)

In re:

5410 30th Street DC, LLC,                                          Case No.: 25-19605

     Debtor                                                          Chapter 11

---

DECLARATION OF ZANETTA WILLIAMS IN SUPPORT OF
DEBTOR'S MOTION TO CONTINUE DOCUMENT INSPECTION,
TO MODIFY SCHEDULING ORDER, AND FOR RELATED RELIEF

I, Zanetta Williams, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the sole member and authorized representative of 5410 30th Street DC, LLC, the debtor and debtor-in-possession in the above-captioned Chapter 11 case. I have personal knowledge of the matters stated herein and could and would testify competently to the same.

2. On May 8, 2026, the Court entered the Scheduling Order [D.E. #156] establishing a May 6, 2026 deadline for disclosure of the Debtor's forensic document examiner and a May 29, 2026 deadline for inspection of the original wet-ink promissory note and alonges. Those dates were proposed by the Debtor in good faith, with the expectation that the forensic expert I was working to retain would confirm his availability in time.

3. I personally identified and retained Gerald LaPorte of Riley Welch LaPorte & Associates Forensic Laboratories (Frankenmuth, Michigan) as the Debtor's forensic document examiner. I sought Mr. LaPorte out based on his exceptional credentials, which include his service as Chief Research Forensic Chemist for the United States Secret Service (where he administered the world's largest forensic ink library), his appointment by the U.S. Attorney General as a

Commissioner on the National Commission on Forensic Science, his role as Chair of the OSAC Forensic Document Examination Subcommittee (the body that sets national standards for forensic document examination), his current position as Laboratory Director for the DHS-Homeland Security Investigations (HSI) Forensic Laboratory, and his record of over 110 expert witness appearances across federal courts, state courts, international arbitral tribunals, and the High Court of Justice in England. His curriculum vitae is being disclosed to this Court and to IBI's counsel contemporaneously with this filing.

4. At the time the Scheduling Order dates were proposed, Mr. LaPorte had been appointed as a court-appointed special master by a judge of the Clark County District Court in Las Vegas, Nevada, in the estate proceedings of the late Tony Hsieh, founder of Zappos, Inc. In that capacity, Mr. LaPorte was tasked with evaluating whether forensic testing should be conducted on a disputed will and with proposing a testing protocol. I became aware of this appointment, and its effect on Mr. LaPorte's availability, in the course of my efforts to retain him. His court appointment was subsequently reported in KTNV News (Las Vegas) on May 18, 2026.

5. Mr. LaPorte's obligations as a court-appointed special master in the Hsieh estate proceedings were ongoing, and continuing through at least June 1, 2026—the date on which his proposed forensic testing is scheduled to occur in that matter. Because his judicial service in Nevada was not concluding until that date, Mr. LaPorte was unable to confirm his availability for this engagement until May 27, 2026. I could not ask him to abandon his court appointment in another jurisdiction to meet this case's scheduling deadlines.

6. I could not have anticipated, when the scheduling deadlines were proposed, that Mr. LaPorte's service as a special master would extend precisely through this window. This circumstance was entirely outside the Debtor's control. I selected Mr. LaPorte specifically because

of his exceptional qualifications and because of his published protocol in the Hsieh matter, which directly addresses the detection of document backdating through chemical analysis—precisely what is at issue here.

7. Mr. LaPorte has now confirmed that his obligations in the Hsieh estate matter are concluding and that he is available to conduct the forensic inspection in this case on June 15, 2026. He has confirmed that he can complete and serve his forensic document examination report by June 19, 2026.

8. I am advised by my counsel, Deirdre T. Johnson, Esq., that on May 26, 2026, she received a communication from Maurice B. VerStandig, Esq., counsel for IBI Falcon, in which he proposed on a Rule 408 basis that the inspection could take place at the federal courthouse in Greenbelt, Maryland, with the documents overnighted to his custody. I have no objection to that logistical arrangement for the June 15, 2026 inspection. However, Mr. LaPorte's court-imposed obligations in Nevada make proceeding on May 29 impossible regardless of logistics.

9. Mr. LaPorte has advised me that certain critical analyses—most notably, ink age dating by high-performance thin-layer chromatography (HPTLC) and related chemical techniques— require the extraction of minute quantities of ink or paper for laboratory testing. These minimally destructive techniques involve the removal of nanogram to microgram quantities of material. Mr. LaPorte's own written recommendations in the Hsieh estate matter state that detecting backdating and alterations "must be evaluated using a range of forensic laboratory equipment." Without the ability to perform minimally destructive chemical analysis, Mr. LaPorte's examination will be materially limited in addressing the authenticity questions central to this contested matter.

10. I have discussed the proposed inspection protocol with Mr. LaPorte and understand that any minimally destructive sampling would be conducted pursuant to a written protocol agreed

to by the parties' and/or their experts in advance, that IBI's counsel would receive advance notice of all proposed tests, and that all extracted samples would be preserved and made available to IBI's experts.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: May 28, 2026

/s/ Zanetta Williams
Zanetta Williams
Sole Member, 5410 30th Street DC, LLC