UNITED STATES BANKRUPTCY COURT

DISTRICT OF MARYLAND (GREENBELT DIVISION)

In re:

5410 30th Street DC, LLC,                                    Case No.: 25-19605

     Debtor                                                      Chapter 11

---

**DEBTOR'S REPLY TO IBI FALCON'S OPPOSITION TO MOTION TO CONTINUE DOCUMENT INSPECTION, TO MODIFY SCHEDULING ORDER, AND FOR RELATED RELIEF**

5410 30th Street DC, LLC, the debtor and debtor-in-possession (the "Debtor"), by and through undersigned counsel, hereby replies to the Opposition to Motion to Modify Scheduling Order (the "Opposition") filed by IBI Falcon US LLC ("IBI Falcon") in response to the Debtor's Motion to Continue Document Inspection, to Modify Scheduling Order, and for Related Relief, DE #176 (the "Motion"), and states as follows:

## I.  PRELIMINARY STATEMENT

IBI Falcon's Opposition is built on a premise the Debtor never advanced: that this is a "show me the note" or "wet ink" dispute over mere possession of the original promissory note. It is not. The Debtor does not dispute that IBI Falcon possesses a document it represents to be the original note and two allonges. The Debtor disputes whether that document — as it exists today, in the form IBI Falcon now holds it — is the same document it purports to be: whether it was executed when and as represented, whether the allonges were affixed to it in the chain and

1

sequence IBI Falcon claims, and whether IBI Falcon ever paid value to acquire it. These are questions of authenticity and validity, not questions of custody.

IBI Falcon's offer to let Debtor's counsel view the note through glass in the courthouse jury lounge does not answer any of those questions, because looking at a document does not reveal whether its ink is six months old or six years old, whether a staple hole was punched once or twice, or whether a signature was affixed on the date the document bears. Only the forensic protocol the Debtor has proposed — to be executed by one of the most credentialed forensic document examiners in the United States — can answer them. By recasting a validity challenge as a possession dispute, IBI Falcon's Opposition asks this Court to deny discovery into the very questions this case will ultimately turn on.

## II. ARGUMENT

*A. This Is a Challenge to the Validity and Authenticity of the Note and Alonges — Not a "Show Me the Note" Argument.*

*1. The distinction IBI Falcon elides is the distinction that controls this Motion.*

"Show me the note" and "wet ink" arguments rest on a narrow theory: that a negotiable instrument cannot be enforced unless the holder produces the original physical document, regardless of whether anything is actually wrong with the document the holder possesses. See Green v. 1900 Capital Tr. II, 619 B.R. 121, 130–31 (D. Md. 2020) (rejecting argument premised on the assertion that "[t]hese false creditors do not possess the original wet ink mortgage note"). That is not what the Debtor argues here, and IBI Falcon's Opposition does not contend otherwise — it simply does not engage the distinction. The Debtor does not ask this Court to find the note unenforceable because IBI Falcon cannot locate or produce a piece of paper. The Debtor has

retained a forensic document examiner, Gerald LaPorte — formerly Chief Research Forensic Chemist for the United States Secret Service and currently Laboratory Director for the Department of Homeland Security's Homeland Security Investigations forensic laboratory — to examine specific, identifiable features of the note and allonges bearing on whether those documents were created, executed, and assembled when and as IBI Falcon represents. That is a challenge to validity, not a demand for production.

    *2. Federal Rule of Evidence 1003 confirms the Debtor is entitled to test the original once a genuine question of authenticity is raised.*

Rule 1003 provides that "a duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003. The Advisory Committee's Note instructs that courts should be liberal in finding that such a genuine question has been raised. A visual-only viewing of the note in the courthouse jury lounge — the accommodation IBI Falcon offers in place of the relief the Debtor seeks — would let the Debtor's principal and counsel confirm that a document exists. It would not allow Mr. LaPorte to determine the chemical age of the ink, detect indentation or pressure patterns consistent with page substitution, or examine the physical attachment points of the allonges under laboratory conditions. None of the indicia of fabrication the Motion identifies — ink age and chemistry, pressure and indentation patterns, staple-hole alignment, and matching scanner artifacts — can be assessed through glass in a jury lounge. The genuine question the Debtor has raised about the authenticity of this specific instrument is exactly the circumstance Rule 1003 contemplates, and it is why examination of the original — not a photocopy, and not a guarded viewing — is required.

*3.  Maryland's Uniform Commercial Code places the burden of proving validity on IBI Falcon once the Debtor specifically denies it.*

Under Maryland's enactment of the Uniform Commercial Code, "the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings," and once "the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity." Md. Code Ann., Com. Law § 3-308(a). The Debtor has specifically denied the validity of the signatures and the allonges at issue. The burden the statute places on IBI Falcon to establish validity cannot be satisfied by IBI Falcon's own unilateral decision that the Debtor may look, but not test. IBI Falcon may not invoke a statute that places the burden of proof on it while simultaneously controlling the only means by which that burden can be tested.

*B.  Green v. 1900 Capital Trust II and the Cases It Cites Do Not Govern a Forensically Supported Validity Challenge.*

IBI Falcon's Opposition rests almost entirely on a single line from Green: that "this Court has repeatedly rejected the 'wet ink' or 'show me the note' argument." 619 B.R. at 131 (citing Powell v. Countrywide Bank, 2016 U.S. Dist. LEXIS 138838 (D. Md. Oct. 4, 2016); Jones v. Bank of New York Mellon, 2014 U.S. Dist. LEXIS 102898 (D. Md. July 29, 2014)). But Green answers a question the Debtor does not ask. Green was a pro se Chapter 13 debtor who objected to a proof of claim by asserting that the note was forged and that he separately possessed "original wet ink and canceled notes" of his own — an assertion offered without any forensic support whatsoever.

The Debtor's challenge is not Mr. Green's. The Debtor has retained a forensic document examiner with a documented career spanning the United States Secret Service, the Department of

Justice, and the Department of Homeland Security — an examiner whom a Nevada district court overseeing the high-profile Tony Hsieh estate proceedings recently selected, on its own initiative, to evaluate forensic testing of a disputed will — and has proposed a specific, scientifically grounded protocol targeting the precise indicia of fabrication and backdating that forensic document examination is designed to detect. That is the difference between an unsupported accusation and a discovery request grounded in expert methodology. IBI Falcon identifies no decision — from this Court, the Fourth Circuit, or elsewhere — holding that a forensically supported, expert-driven challenge to a note's authenticity must be treated the same as a bare assertion that a creditor lacks the original.

C. *The Mirchandani Factors IBI Falcon Itself Invokes Favor the Protocol the Debtor Has Already Proposed.*

IBI Falcon is correct that this Court evaluates proposed minimally destructive testing under a four-factor test: (1) whether the proposed testing is reasonable, necessary, and relevant to proving the movant's case; (2) whether the non-movant's ability to present evidence will be hindered, or the non-movant otherwise prejudiced; (3) whether less prejudicial alternative methods exist; and (4) whether adequate safeguards exist to minimize prejudice to the non-movant. Mirchandani v. Home Depot, U.S.A., Inc., 235 F.R.D. 611, 614 (D. Md. 2006). IBI Falcon is incorrect that these factors favor denying the Motion. Each favors granting it.

Necessity and relevance. IBI Falcon asserts that "it is altogether unclear if the testing is 'necessary' insofar as the Debtor has not actually explained what the proposed testing will entail." Opp'n at 2. That assertion does not survive a reading of the Motion. The Motion identifies the non-destructive methods available — visual microscopy, UV/IR spectroscopy, Raman spectroscopy — and explains why each is insufficient to date ink chemically or assess its composition. It identifies

the minimally destructive methods proposed in their place: high-performance thin-layer chromatography, the recognized standard for dating ballpoint pen inks, along with laser ablation ICP-MS and LC-MS, each requiring extraction of a sample measured in nanograms to micrograms. The testing is necessary because the questions it answers — whether the ink was applied when the document purports to have been signed, and whether the allonges were affixed in the sequence IBI Falcon claims — cannot be answered any other way, and relevant because they go to whether the instrument IBI Falcon seeks to enforce is valid at all.

Prejudice to IBI Falcon's ability to present evidence. IBI Falcon argues it "cannot testify that it holds an original, unaltered note and allonges" if any testing occurs. Opp'n at 2–3. But the testing the Debtor proposes does not alter the note in any way that affects its legal character or enforceability. The quantities to be extracted are, by design, invisible to the naked eye. IBI Falcon will remain able to produce the note, rely on its terms, and use it for everything it is offered to prove; what changes is that the note will also have been examined for indicia of fabrication that only laboratory analysis can detect. That is not the kind of prejudice Mirchandani protects against — it is the ordinary consequence of permitting discovery a party would rather not face.

Less prejudicial alternatives. IBI Falcon offers, as a substitute, a visual viewing of the note and allonges in the courthouse jury lounge. That is not a less prejudicial alternative method of obtaining the same evidence — it is a method that cannot produce the evidence at all. No visual inspection, however careful, can chemically date ink or detect the micro-level indentation and pressure patterns Mr. LaPorte's protocol is designed to assess. An alternative that cannot answer the question is not a less prejudicial way of answering it.

Adequate safeguards. The Debtor has already proposed the safeguards Mirchandani requires: a written sampling protocol served on IBI Falcon's counsel at least three business days

before any inspection, so that IBI Falcon may evaluate and raise any objection to specific testing methods in advance; extraction of the minimum quantity of material necessary for each identified test; and preservation of every extracted sample, made available to IBI Falcon's own experts for confirmatory or rebuttal testing. IBI Falcon's Opposition does not engage with any of these safeguards. It asserts, without elaboration, that "there do not appear to be any safeguards in place," Opp'n at 3 — a statement that overlooks the protocol the Motion itself describes.

III.  THE LENIENT "FOR CAUSE" STANDARD GOVERNS THE PRINCIPAL RELIEF SOUGHT, AND THE STRICTER EXCUSABLE-NEGLECT STANDARD IS SATISFIED IN ANY EVENT.

Federal Rule of Bankruptcy Procedure 9006(b)(1) draws a distinction IBI Falcon's Opposition does not acknowledge. Where a request to enlarge a deadline is made before that deadline expires, the Court may grant it "for cause shown" — a standard markedly more forgiving than the "excusable neglect" standard that applies only to requests made after a deadline has already lapsed. Fed. R. Bankr. P. 9006(b)(1)(A), (B).

The deadline that matters most here — the May 29, 2026 deadline for inspection of the note and allonges — had not yet expired when the Debtor filed the Motion on May 28, 2026, one day before it ran. The lenient, pre-expiration "for cause" standard therefore governs the request to continue that deadline to June 15, 2026, and to modify the Scheduling Order's "non-destructive" limitation. Cause is readily shown: Mr. LaPorte, the Debtor's retained expert, was simultaneously serving as a court-appointed special master in the Tony Hsieh estate proceedings pending in Clark County, Nevada, with testing in that matter scheduled for June 1, 2026 — an obligation the Debtor had no authority to ask him to abandon. IBI Falcon's own pending Motion to Quash Subpoena,

7

DE #173, independently leaves the location of any inspection unresolved, reinforcing that a brief continuance serves efficiency rather than delay.

IBI Falcon's Opposition focuses instead on the separate May 6, 2026 deadline for disclosure of the Debtor's expert's identity, which had already passed by the time the Motion was filed. Even measured against the stricter excusable-neglect standard that governs that distinct deadline, the result is the same. The Fourth Circuit applies four factors in assessing excusable neglect: the danger of prejudice to the non-movant, the length of the delay and its potential impact on the proceedings, the reason for the delay — including whether it was within the movant's control — and whether the movant acted in good faith. Thompson v. E.I. du Pont de Nemours & Co., 76 F.3d 530, 534 (4th Cir. 1996). Here, "the reason for the delay" is the most important factor. The reason here was a judicially imposed obligation in another jurisdiction, entirely outside the Debtor's control — precisely the kind of reason the Fourth Circuit treats as weighing decisively in the movant's favor.

This case bears no resemblance to Robinson v. Wix Filtration Corp., LLC, 599 F.3d 403 (4th Cir. 2010), in which the Fourth Circuit declined to find excusable neglect where counsel made a calculated decision to ignore known technical problems and never inquired whether dispositive motions had been filed by their deadline. The Debtor did the opposite: it disclosed Mr. LaPorte's conflicting judicial appointment, explained the reason for the delay in detail, and moved before the more consequential of the two deadlines at issue had even expired. Nor is there any prejudice from the short continuance requested. IBI Falcon's own production deadline (June 1, 2026) and expert disclosure deadline (June 24, 2026), and the hearings and status conference that follow, were unaffected by either the seventeen-day continuance of the inspection deadline or the two-day extension of the report deadline.

## IV.  IBI FALCON'S REFERENCE TO THE DEBTOR'S RESPONSE TO CLAIM OBJECTION DOES NOT BEAR ON THIS MOTION.

IBI Falcon notes that the Debtor, in its Response to Claim Objection, DE #167, at § III(c), previously addressed the execution and enforceability of the note. Whatever weight that pleading may ultimately carry on the merits of the underlying claim dispute, it does not resolve — and is not before the Court on — this discovery motion. The question presented here is not whether the Debtor at some point referenced having signed a promissory note; it is whether the specific instrument and allonges IBI Falcon now offers as the original — with the backdating, fabricated-allonge-chain, and lack-of-consideration questions Mr. LaPorte's protocol is designed to test — are authentic and valid. A general reference to a note's execution in an earlier pleading is not a stipulation that this document, in its current form, is free of the defects the Debtor's forensic expert has been retained to examine, and the burden Md. Code Ann., Com. Law § 3-308(a) places on IBI Falcon to prove validity is not discharged by pointing to the Debtor's own prior filings. This is, at most, a merits argument for another day on another motion; it is not a basis to deny the inspection protocol now before the Court.

## V.  CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Motion, the Debtor respectfully requests that this Court overrule IBI Falcon's Opposition and enter an order: (i) continuing the deadline for inspection of the original note and allonges to a mutually-agreeable date, at a mutually-agreeable location; (ii) extending the deadline for service of the Debtor's Forensic Document Examiner's Report to a date one (1) week after the inspection; (iii) modifying the Scheduling Order, DE #156, to permit minimally destructive examination, subject to the

safeguards proposed in the Motion; and (iv) granting such other and further relief as is just and proper.

Respectfully submitted,

Dated: June 24, 2026

/s/ Deirdre T. Johnson
Deirdre T. Johnson, Esq.
dtjesq@dtjohnsonlaw.com
Counsel for 5410 30th
Street DC, LLC

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of June, 2026, a copy of the foregoing DEBTOR'S REPLY TO IBI FALCON'S OPPOSITION TO MOTION TO CONTINUE DOCUMENT INSPECTION, TO MODIFY SCHEDULING ORDER, AND FOR RELATED RELIEF was served electronically via the ECF system, with copies to:

Maurice B. VerStandig, Esq. (mac@mbvesq.com);

Office of the U.S. Trustee (USTPRegion04.GB.ECF@USDOJ.GOV);

and all parties requesting notice.

/s/ Deirdre T. Johnson
Deirdre T. Johnson

11