IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | | |
|---|---|---|
| In re: | &#124; | |
| | &#124; | |
| 5410 30th Street DC, LLC, | &#124; | Case No.: 25-19605 |
| | &#124; | |
| Debtor | &#124; | Chapter 11 |
| | &#124; | |

---

## DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM AUTOMATIC STAY

5410 30th Street DC LLC, the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through undersigned counsel, respectfully submits this Opposition to IBI Falcon US LLC's Motion for Relief from Automatic Stay (DE #195) (the "Motion"), and in support thereof states as follows:

## 1. INTRODUCTION

IBI Falcon US LLC ("IBI Falcon") moves this Court for relief from the automatic stay under 11 U.S.C. § 362(d)(2), seeking permission to foreclose upon the real property located at 5631 MacArthur Blvd., NW, Washington, DC 20016 (the "Property"). IBI Falcon's Motion should be denied for three independent reasons. First, IBI Falcon lacks standing to bring this Motion because it is not a "party in interest". Only a party in interest may seek relief from the automatic stay. 11 U.S.C. § 362(d).  IBI Falcon has no valid claim against the Debtor, no enforceable lien on the Property, and therefore no cognizable interest that would give it standing to invoke this Court's authority under § 362(d). The instruments purporting to transfer the promissory note and deed of trust to IBI Falcon are void under the Uniform Commercial Code and District of Columbia law, leaving IBI Falcon as a legal stranger to the transaction between FTF Lending, LLC and the Debtor. Second, even if IBI Falcon had standing, it has failed to satisfy its burden of proof under

§ 362(d)(2). IBI Falcon bears the burden of proving that the Debtor lacks equity in the Property. IBI Falcon's assertions regarding the Property's value and the quantum of secured claims rest on speculation, incomplete analysis, and an inaccurate understanding of lien priority. The Debtor maintains equity in the Property. Third, the Debtor has demonstrated that the Property is necessary to an effective reorganization that is in prospect. IBI Falcon's characterization of this case as one where "reorganization is impossible" is contradicted by the record. The Debtor has actively marketed the Property and pursued a plan-centric asset sale. The mere fact that the Debtor has vigorously defended against IBI Falcon's invalid claim does not establish futility—it establishes fiduciary diligence. For these reasons, and as set forth in detail below, this Court should deny IBI Falcon's Motion for Relief from Stay.

## 2. STATEMENT OF FACTS

**The Bankruptcy Filing and IBI Falcon's Participation**. The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on October 14, 2025. IBI Falcon filed Amended Proof of Claim No. 2, asserting a secured claim in the amount of $2,676,531.91 as of the petition date. IBI Falcon has since filed a motion to convert this case to Chapter 7 (DE #95), objections to the Debtor's proposed plan, and now this Motion for Relief from Stay. The Debtor filed a comprehensive objection to IBI Falcon's proof of claim, demonstrating the invalidity of the purported transfers. Concurrently, the Debtor filed a Motion for Determination that IBI Falcon is Not a Party in Interest, seeking an order barring IBI Falcon from exercising party-in-interest rights in this case.

**The Underlying Loan Transaction and Purported Transfers**.   The Debtor executed a promissory note in the original principal amount of $2,222,000.00 in favor of FTF Lending, LLC, secured by a deed of trust encumbering the Property. FTF Lending, LLC purportedly transferred the note and deed of trust through a series of assignments and allonges that are facially defective

and legally ineffective. The first purported transfer occurred through an allonge bearing an "effective date" but no execution date, signed by Nolan Helline as "Capital Markets Financial Analyst" for FTF Lending, LLC. No documentary evidence establishes that Mr. Helline possessed actual, implied, or apparent authority to endorse a negotiable instrument in excess of $2 million on behalf of FTF Lending. Under the Uniform Commercial Code as adopted in the District of Columbia, an unauthorized signature is wholly ineffective. Simultaneously, FTF Lending executed an Assignment of Deed of Trust, also signed by Mr. Helline as agent. This Assignment suffers from a fatal defect: no power of attorney authorizing Mr. Helline to convey FTF Lending's interest in real property was recorded in the DC Land Records prior to or simultaneously with the Assignment. District of Columbia law mandates that a power of attorney authorizing conveyance of real property must be recorded "with or prior to" the instrument it authorizes. The failure to record the power of attorney renders the Assignment void. The second purported transfer—from IBI SBL Investment LP to IBI Falcon—is equally defective. Because IBI SBL never validly received the note through the first allonge, it had nothing to transfer through the second allonge. One cannot endorse an instrument one does not hold. The second Assignment of Deed of Trust, signed by Anthony J. Gingo through Gingo Palumbo Law Group LLC as Attorney-in-Fact for IBI SBL, suffers from the same recording defect: the authorizing power of attorney was not recorded until October 6, 2025—89 days after the Assignment was recorded on July 9, 2025. Both allonges bear only an "effective date," not an execution date, and both were submitted for the first time only after the Debtor objected to IBI Falcon's original proof of claim. The inference is inescapable: the allonges were created after the Debtor's objection, and the "effective dates" were inserted as retroactive backdating devices.

**The Loan Extension Agreements Reveal Further Defects in IBI Falcon's Chain of Title**.   The original Note matured, by its terms, on June 30, 2024. Between the original maturity date and the purported transfer to IBI Falcon, the loan was purportedly extended four times, each extension conditioned on payment of a fee and each riddled with defects that further undermine IBI Falcon's

claim to hold a valid, enforceable interest in the Note and Deed of Trust. The first extension, which purported to extend the maturity date to September 1, 2024, does not identify the lender on whose behalf it was signed—Paragraph 1 refers only to "the lender" without naming FTF Lending, IBI SBL, or any other entity—and bears no name or date beneath the signature line. By its own terms, the first extension became null and void if the accompanying $22,220.00 extension fee was not paid; that fee was not paid, rendering the first extension void from its inception. Because each subsequent extension depends on the validity of the one before it, the second, third, and fourth extensions are likewise ineffective. The second extension, though purporting to extend the maturity date to June 18, 2025 retroactive to September 2024, was not executed until March 23, 2025—nearly six months after the period it purports to cover had already run, consistent with the same pattern of after-the-fact backdating reflected in the allonges described above.

The third and fourth extensions independently fail for lack of authority. IBI SBL's transfer of the Note to IBI Falcon was, according to IBI Falcon's own document production, effective June 30, 2025. Yet the third extension—purporting to extend the maturity date and assessing an additional $66,660.00 in fees—was signed on behalf of IBI SBL on July 1, 2025, one day after IBI SBL had purportedly divested itself of any interest in the Note. The fourth extension, purporting to extend the maturity date to September 30, 2025 and assessing another $66,660.00 in fees, was signed on behalf of IBI SBL on July 13, 2025—thirteen days after the transfer to IBI Falcon. Having already transferred the Note, IBI SBL possessed no authority to grant further extensions or to impose additional fees on the Debtor's obligation, and IBI Falcon has produced no evidence that it authorized or ratified either extension. None of the extension documents contain corporate authorization for the individual who signed on behalf of the borrower's principal, and the purported Bill of Sale from IBI SBL to IBI Falcon likewise omits any statement of consideration and bears no date of signature—only an unexplained "effective date"—while displaying the same FTF Lending footer that appears throughout documents purportedly generated by unrelated corporate entities. These irregularities, taken together with the defects in the allonges and assignments

described above, confirm that IBI Falcon cannot establish an unbroken, authenticated chain of title to the Note or Deed of Trust.

**The Property and Other Secured Claims**. The Property is currently listed for sale at approximately $3,999,000.00. In addition to IBI Falcon's disputed claim, the Property is subject to a secured claim held by Santorini Capital, LLC in the amount of at least $975,000.00. The Property is also subject to unpaid real estate taxes in the amount of $41,643.15. Under District of Columbia law, tax liens constitute a superpriority lien on real property. IBI Falcon asserts that the Property is burdened by a total of $4,075,358.20 in secured claims and that the Debtor therefore lacks equity. This assertion is based on flawed arithmetic, an inflated claim amount that includes unsubstantiated post-petition interest, and a failure to account for the invalidity of IBI Falcon's lien.

**The Debtor's Reorganization Efforts**. The Debtor has actively marketed the Property and pursued a plan of reorganization centered on an asset sale that would provide a recovery to creditors. IBI Falcon's characterization of the Debtor's efforts as "truly bizarre spats" ignores the Debtor's fiduciary obligation to challenge invalid claims that threaten the estate. The Debtor's challenge to IBI Falcon's claim is not frivolous litigation—it is essential estate administration.

### 3. LEGAL STANDARD

A bankruptcy court "shall grant relief from the stay" under 11 U.S.C. § 362(d)(2) upon a showing that (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization. The movant bears the burden of proof on the issue of the debtor's equity in the property. 11 U.S.C. § 362(g)(1); The debtor bears the burden of proof on all other issues, including whether the property is necessary to an effective reorganization. 11 U.S.C. § 362(g)(2). As a threshold matter, only a "party in interest" may seek relief from the automatic stay. 11 U.S.C. § 362(d). The determination of party-in-interest status under § 362(d) requires that the movant demonstrate a legally cognizable interest in the property or obligation at issue. *Veal v.*

*Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897 (B.A.P. 9th Cir. 2011).* A party seeking relief from the automatic stay must establish standing by showing it holds a property interest in, or is entitled to enforce or pursue remedies relating to, the secured obligation that forms the basis of its motion.

### 4. <u>ARGUMENT</u>

**<u>IBI Falcon Lacks Standing to Seek Relief from Stay Because It Is Not a Party in Interest.</u>**

Only a Party in Interest May Seek Relief from the Automatic Stay Section 362(d) provides that "on request of a party in interest," the Court may grant relief from the automatic stay. The Bankruptcy Code does not define "party in interest" in the context of § 362(d), but case law establishes that status must be determined by the interest asserted and how that interest is affected by the automatic stay. *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897 (B.A.P. 9th Cir. 2011).* A party seeking relief from the automatic stay under § 362(d) must demonstrate a property interest in or entitlement to enforce the secured obligation that forms the basis of its request. Courts across jurisdictions recognize that an entity claiming to hold a secured claim must produce evidence of its right to enforce the underlying obligation. While some courts have held that a movant need only present a "colorable claim" rather than every piece of evidence required to prove a right to foreclose under state law, *Brown Bark I L.P v. Ebersole (In re Ebersole), 440 B.R. 690, 694 (Bankr. W.D. Va. 2010)* even this lower threshold requires the movant to establish some evidentiary basis for its asserted interest.

**<u>IBI Falcon Has Failed to Establish a Colorable Claim to the Note or Deed of Trust</u>**. IBI Falcon cannot satisfy even the "colorable claim" standard because the instruments purporting to transfer the note and deed of trust to it are void under the Uniform Commercial Code and District of Columbia law.

**<u>The First Allonge Is Ineffective Under UCC § 3-403</u>**. The first allonge, signed by Nolan Helline as "Capital Markets Financial Analyst" for FTF Lending, LLC, is ineffective under D.C. Code § 28:3-403 because Mr. Helline had no documented authority to endorse a $2,222,000.00 negotiable

instrument on behalf of a corporate entity. Under the UCC, an unauthorized signature does not operate as the signature of the represented person. UCC § 3-403.   An agent's signature on a negotiable instrument is unauthorized if made "without actual, implied, or apparent authority." Md. Code Ann., Com. Law §1-201(43).   Apparent authority must be created by manifestations from the principal to the third party; an agent cannot create his own authority, and actions or statements by the agent alone are insufficient to bind the principal absent the principal's conduct conveying such authority. *Auvil v. Grafton Homes, Inc., 92 F.3d 226 , 230 (4th Cir. 1996)*. In this case, IBI Falcon has produced no evidence that FTF Lending manifested to any third party that Mr. Helline possessed authority to endorse multi-million-dollar negotiable instruments. The allonge itself—signed by Mr. Helline—cannot create his own authority.   Because the first allonge is ineffective, the note was never validly negotiated to IBI SBL Investment LP.

**The First Assignment of Deed of Trust Is Void Under D.C. Law.**   The first Assignment of Deed of Trust, also signed by Mr. Helline as agent for FTF Lending, is void under D.C. Code § 21-2603.03 because no power of attorney authorizing Mr. Helline to convey FTF Lending's interest in real property was recorded in the DC Land Records prior to or simultaneously with the Assignment. District of Columbia law requires that a power of attorney authorizing conveyance of real property be recorded "with or prior to" the instrument it authorizes. This is not a mere technicality—it is a condition precedent to a valid conveyance by an agent under D.C. law. The failure to satisfy this recording requirement renders the Assignment void and ineffective to transfer any interest in the deed of trust.

**The Second Allonge and Second Assignment Are Equally Defective**.   The second allonge, purporting to transfer the note from IBI SBL to IBI Falcon, is void because IBI SBL never validly received the note through the first allonge. One cannot endorse an instrument one does not hold. The UCC is clear: negotiation requires transfer of possession and a valid endorsement by the holder. Because IBI SBL was not the holder, its purported endorsement is a nullity. The second Assignment of Deed of Trust suffers from the same recording defect as the first: the authorizing

power of attorney was not recorded until October 6, 2025—89 days after the Assignment was recorded on July 9, 2025. The mandatory "with or prior to" recording requirement was not satisfied. Additionally, the Second Assignment fails to cross-reference any recorded power of attorney as required by D.C. law, rendering it defective and incapable of providing constructive notice.

**IBI Falcon Cannot Demonstrate It Held the Note as of the Petition Date**.   Both allonges bear only an "effective date," not an execution date. No evidence has been produced of when either allonge was actually signed. Both were submitted for the first time only after the Debtor objected to IBI Falcon's original claim, which was filed without them. The only reasonable inference is that the allonges were created after the Debtor's objection, and the "effective dates" were inserted as retroactive backdating devices. Standing to seek relief from the automatic stay must be established as of the petition date. IBI Falcon cannot demonstrate it held the note or deed of trust as of the petition date because it has produced no evidence of actual execution or delivery prior to that date. Under the Uniform Commercial Code, an allonge must affixed to the instrument; a loose allonge not physically attached at the time of transfer does not effectively become part of the negotiable instrument. D.C. Code § 28:3-204. IBI Falcon's original proof of claim was filed without either allonge attached, confirming that the allonges were not affixed to the Note at the time the claim was first asserted and evidencing a broken chain of title.

**The Extension Agreements Confirm That IBI SBL Lacked Authority to Act After Transferring the Note and That the Related Fees Are Unenforceable**.   The defects in the loan extension agreements independently confirm IBI Falcon's lack of a valid claim. The first extension agreement was, by its own terms, rendered null and void when the corresponding fee was not paid, and no valid extension of the maturity date has been established thereafter. Even accepting IBI Falcon's version of events, the third and fourth extensions—together assessing $133,320.00 in additional fees—were executed by IBI SBL after IBI SBL had already transferred the Note to IBI Falcon, at a time when IBI SBL held no interest in the Note and no authority to modify its terms

or impose additional charges. An entity cannot extend, modify, or collect fees on an instrument it no longer owns. To the extent IBI Falcon's claim amount incorporates fees assessed under the third and fourth extensions, that portion of the claim is unenforceable and must be excluded, further undermining IBI Falcon's assertion that it holds a properly calculated secured claim of $3,058,715.05.

**IBI Falcon Is a Stranger to the Transaction and Has No Claim**.   The cumulative effect of these defects is that IBI Falcon is a legal stranger to the transaction between FTF Lending and the Debtor. It holds neither the note nor the deed of trust through any valid chain of title. It has no right to payment from the Debtor. This is not a case where a creditor's claim has been "disallowed" under 11 U.S.C. § 502(b) for technical deficiencies while the claimant retains some underlying legal relationship to the debtor. IBI Falcon is an entity that purports to have acquired instruments that were never validly transferred to it. If the allonges and assignments are void, IBI Falcon has no legal relationship to the Debtor whatsoever. It is not a holder of the note, not the beneficiary of the deed of trust, and not a party to the original loan transaction. A complete stranger to a transaction has no "right to payment" from the debtor and therefore no "claim" under § 101(5), no status as a "creditor" under § 101(10), and no standing as a "party in interest" under § 1109(b). Because IBI Falcon is not a party in interest, it lacks standing to seek relief from the automatic stay, and its Motion must be dismissed.

**IBI Falcon Has Failed to Meet Its Burden Under § 362(d)(2)(A) to Prove the Debtor Lacks Equity in the Property**.   Even if IBI Falcon had standing—and it does not—its Motion fails on the merits because IBI Falcon has not met its burden of proving that the Debtor lacks equity in the Property.

**IBI Falcon Bears the Burden of Proving Lack of Equity**.   Under § 362(d)(2), the movant bears the burden of proving that the debtor does not have equity in the property. 11 U.S.C. § 362(g)(1). IBI Falcon must establish this element by competent evidence, not speculation or incomplete analysis.

**IBI Falcon's Calculation of Secured Claims Is Inflated and Inaccurate**.   IBI Falcon asserts that the Property is burdened by $4,075,358.20 in secured claims, calculated as follows: Santorini's claim of $975,000.00, IBI Falcon's claim of $3,058,715.05 (including post-petition interest), and unpaid taxes of $41,643.15. IBI Falcon then compares this figure to the Property's listing price of approximately $3,999,000.00 and concludes the Debtor lacks equity. This calculation is flawed in multiple respects. As set forth above, a substantial portion of IBI Falcon's claimed principal balance reflects extension fees assessed by IBI SBL after it had transferred the Note to IBI Falcon and lacked any authority to impose such fees, further inflating the claimed secured amount. First, IBI Falcon's claim amount of $3,058,715.05 includes $382,183.14 in post-petition interest calculated at $1,481.33 per day for 258 days. IBI Falcon has provided no evidentiary support for this rate of interest or its contractual entitlement to post-petition interest at this rate. Even assuming arguendo that IBI Falcon held a valid secured claim—which it does not—post-petition interest on a secured claim accrues only to the extent the creditor is oversecured. 11 U.S.C. § 506(b). IBI Falcon has not demonstrated that it is oversecured, and therefore has not established entitlement to any post-petition interest. Second, IBI Falcon has not accounted for the invalidity of its own lien. As demonstrated above, IBI Falcon holds no valid lien on the Property because the assignments purporting to transfer the deed of trust are void. A calculation of "secured claims" that includes a void lien is meaningless. Third, IBI Falcon's reliance on the Property's listing price as conclusive evidence of fair market value is misplaced. The fact that a property is listed at a certain price does not establish that its fair market value is "not more than" that price. Market value is determined by the price a willing buyer would pay to a willing seller, not by the asking price in a distressed bankruptcy sale.   IBI Falcon has produced no appraisal, broker price opinion, or other competent evidence of the Property's fair market value. Fourth, the tax lien in the amount of $41,643.15 is de minimis in comparison to the overall valuation and can be satisfied from sale proceeds or cured through the Debtor's plan. The existence of a small tax lien does not eliminate the Debtor's equity.

**The Debtor Maintains Equity in the Property**.   When IBI Falcon's inflated and invalid claim is removed from the calculation, the analysis changes dramatically. The only valid secured claim on the Property is Santorini's claim of $975,000.00 plus the tax lien of $41,643.15, for a total of $1,016,643.15 in valid secured claims. Against a fair market value of approximately $3,999,000.00 — and potentially higher upon proper appraisal—the Debtor maintains substantial equity in the Property. IBI Falcon has failed to meet its burden under § 362(g)(1) to prove that the Debtor lacks equity in the Property.

**The Debtor Can Demonstrate That the Property Is Necessary to an Effective Reorganization.** That Is in Prospect Even if the Court were to find that IBI Falcon had standing and that the Debtor lacked equity—and neither is true—relief from stay would still be inappropriate because the Property is necessary to an effective reorganization that is in prospect.

**The Debtor Bears the Burden of Proving Necessity and Reorganization in Prospect.**   Once the movant establishes lack of equity, the burden shifts to the debtor to establish that the collateral is "necessary to an effective reorganization."   Under United States v. Timbers of Inwood Forest Associates, this means the property must be essential for an effective reorganization that is "in prospect." A reorganization is "in prospect" if there is a reasonable possibility of a successful reorganization within a reasonable time. *United States v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 375–76 (1988)*.

**The Debtor Has Actively Pursued a Plan-Centric Asset Sale**. Contrary to IBI Falcon's characterization, the Debtor has not abandoned reorganization efforts in favor of "truly bizarre spats." The Debtor has actively marketed the Property and pursued a plan of reorganization centered on an asset sale. The Property is the Debtor's primary asset, and its sale is the cornerstone of any viable plan. The Property is therefore necessary to an effective reorganization by definition. IBI Falcon argues that the Debtor's proposed plan is facially unconfirmable and therefore cannot form the basis for finding reorganization in prospect. This argument is premature. The Debtor's

plan has not yet been the subject of a confirmation hearing, and IBI Falcon—as a non-party-in-interest—lacks standing to challenge it. Moreover, the Debtor's vigorous defense of the estate against IBI Falcon's invalid claim is not evidence of bad faith or lack of reorganization prospects—it is evidence of responsible fiduciary conduct. A debtor-in-possession has a duty to maximize the value of the estate for the benefit of all creditors. Challenging an invalid $3 million claim that threatens to consume the estate is precisely the type of conduct the Bankruptcy Code contemplates and rewards.

**Policy Considerations Favor Denying Relief**.  Granting relief from stay to an entity that holds no valid claim or lien would undermine the integrity of the bankruptcy process and create perverse incentives. It would signal to assignees of distressed debt that chain-of-title defects, unauthorized signatures, and recording failures can be overlooked so long as the movant is aggressive enough in bankruptcy court. This Court should reject that approach. The purpose of the automatic stay is to provide the debtor with breathing room to reorganize and to ensure an orderly distribution to creditors. Lifting the stay in favor of a non-creditor with no valid lien would defeat both purposes.

## 5. CONCLUSION

IBI Falcon's Motion for Relief from Stay should be denied because IBI Falcon is not a party in interest with standing to bring the Motion, because IBI Falcon has failed to prove the Debtor lacks equity in the Property, and because the Property is necessary to an effective reorganization that is in prospect. Each of these grounds is independently sufficient to deny the Motion.

For the foregoing reasons, 5410 30th Street DC LLC respectfully requests that this Honorable Court:

1. Deny IBI Falcon US LLC's Motion for Relief from Automatic Stay (DE #195) in its entirety;

2. Determine that IBI Falcon US LLC is not a party in interest with standing to seek relief from the automatic stay under 11 U.S.C. § 362(d);

3. Find that IBI Falcon has failed to meet its burden under § 362(g)(1) to prove that the Debtor lacks equity in the Property;

4. Find that the Property is necessary to an effective reorganization that is in prospect; and

5. Grant such other and further relief as this Honorable Court may deem just and proper.

Respectfully submitted,

Dated: July 10, 2026

By: /s/ Deirdre T. Johnson, Esq.
Deirdre T. Johnson, Esq.
Bar No. MD14227
9701 Apollo Dr, Suite 301
Upper Marlboro, MD 20774
301. 742-5385
dtjesq@dtjohnsonlaw.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of July, 2026, a copy of the foregoing Opposition to Motion for Relief from Automatic Stay was served electronically via the Court's ECF system upon all parties registered to receive notice, including:

Maurice B. VerStandig, Esq.  mac@mbvesq.com

Jeanette Rice  Jeanette.Rice@usdoj.gov

Office of the United States Trustee  USTPRegion04.GB.ECF@USDOJ.GOV

/s/ Deirdre T. Johnson, Esq.