IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 25-19605-LSS |
| | ) | (Chapter 11) |
| 5410 30TH STREET DC LLC | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

## OPPOSITION TO MOTION TO COMPEL

Come now IBI Falcon US LLC ("IBI Falcon") and IBI SBL Investment LP ("IBI SBL"), by and through undersigned counsel, in response to the motion to compel (the "Motion"), ECF No. 205, filed by 5410 30th Street DC LLC (the "Debtor"), and states as follows:

### I.       Introduction

IBI Falcon and IBI SBL have collectively produced just over 2,000 pages of documents, answered 60 interrogatories, answered an additional 60 requests for admission, produced Michael Palumbo for deposition, and presented wet ink original loan documents for inspection in the courthouse jury lounge. The two entities have produced an enormous swath of materials requested by the Debtor, even though many such documents are not relevant as a matter of law. But the two IBI entities have objected to the production of documents that do not exist or that are so flagrantly irrelevant as to be burdensome, have explained they cannot produce documents that do not exist, and—quite sincerely—do not know what more the Debtor is expecting of them, except for the production of a verification for previously-served interrogatory answers (which the two IBI entities acknowledge needing to produce but which is also non-substantive by any account).

The Debtor's various contentions are addressed, in order, below. As a matter of law, almost everything the Debtor protests to have not been produced is either (i) not in existence (and, ergo, not capable of production) or (ii) irrelevant as a matter of law.

1

**II.     Argument: The Motion Should be Denied**

 **a.  Verification**

The Debtor indicates interrogatory answers must be verified. *See* Motion, ECF No. 205, at § V(A). IBI Falcon and IBI SBL agree and told the Debtor as much the day before the Motion was filed. There is absolutely no dispute but that an individual in Israel needs to sign the answers under oath. The two IBI entities have indicated this will be done.

 **b.  Typos**

The Debtor has also pointed out for typographical errors, where one IBI entity referenced the other IBI entity in discovery responses. *Id.* at § V(B). As with the verification, the IBI entities responded by indicating this will be corrected. The version of interrogatory answers to be produced with signatures will correct these typos.

It bears notation that this is not substantive. The typos are typos. The Debtor knows they are typos and ably identified them as such. No information is being withheld and no genuine confusion is afoot.

 **c.  Interrogatories**

  **i.  IBI Falcon Interrogatory No. 4**

   **1.  Interrogatory Text**

"Identify every payment ever received by IBI Falcon US LLC on account of the Note directly into a bank account held in its own name, stating for each the date, amount, source, and receiving account."

### 2. Response Text

"Notwithstanding and without waiving IBI Falcon US LLC's general objection(s) to these Interrogatories, IBI Falcon US LLC states as follows: IBI Falcon US LLC states it has not received any payment from Debtor since June 30, 2025."

### 3. Discussion

The Debtor is being a touch disingenuous in connection with this interrogatory, insofar as IBI Falcon has already explained—through counsel—that "at no point in time has the Debtor ever made a payment to IBI Falcon US LLC []. The date indicated in this response is the date upon which IBI Falcon came to hold the note." *See* Response to Good Faith Letter, ECF No. 208-1, at § 2.

There is assuredly not any contention that IBI Falcon received any payments *before* holding the promissory note. And the Debtor most certainly has not suggested it *ever* paid any monies to IBI Falcon, much less before IBI Falcon came to hold the note. Plainly, and for want of ambiguity, the Debtor has never paid a dollar to IBI Falcon.

IBI Falcon's wording in this answer might be awkwardly precise but the response, coupled with counsel's good faith explanation, more-than-address this interrogatory.

### ii. IBI Falcon Interrogatory No. 25

### 1. Interrogatory Text

"Identify the present location of the original wet-ink Note and each natural person who has had physical custody of the original Note from May 3, 2023 to the present."

### 2. Response Text

"Notwithstanding and without waiving IBI SBL Investment LP's general objection(s) to these Interrogatories, IBI Falcon US LLC states as follows: IBI Falcon US LLC states the present

location of the original First Allonge and the original Second Allonge are at The VerStandig Law Firm, LLC."

### 3.  Discussion

As noted in the response sent to the Debtor's counsel before the Motion was filed, the issue with this interrogatory is the strange phraseology of "natural person" elected by the Debtor. Specifically:

> I believe the issue here may be your client's request for a listing of every "natural person" who has possessed the promissory note. The note was held, following execution, by FTF Lending, LLC (which is, of course, not a natural person). FTF continued to hold the note, as a custodian for the benefit of IBI SBL Investment LP (and, in turn, IBI Falcon US LLC), until shortly after this case was commenced— continuing to preclude custody by a natural person. Once this case was commenced, and your client inquired as to the note's whereabouts, the note was then transferred to my clients' counsel in Ohio (as noted in prior communications and motions practice), before being transferred to my law firm. Since the law firms are, too, not "natural persons," it genuinely does not appear a natural person has served as a custodian at any time.
>
> For want of ambiguity, my firm does not maintain formal office space in which the note is held. While I am reticent to share (with anyone) exactly where I have elected to keep the note since it was conveyed to my firm (to be held for the benefit of my client), I can share that it has resided (i) under lock and key; (ii) in a fireproof environment accessibly only by myself; (iii) in the State of Maine. When I brought the note to the Beltway region, in anticipation of producing the document for inspection at the Greenbelt courthouse, the note was stored in a similarly secure environment accessible (and known) only to myself. In bringing the document to— and from—the Beltway region, the document traveled with me on an airplane, in a carry-on bag, encased in waterproof packaging, and only left my physical control while placed in TSA screening. Upon returning to Maine, the document was restored to the aforesaid environment under lock and key.

Response to Good Faith Letter, ECF No. 208-1, at § 3.

Plainly, the note was never in the custody of a natural person until it was shipped to undersigned counsel to be at the ready for production for inspection in this case. This is not a case where there exists a vault in Iron Mountain with custody logs and sign-in sheets. This is a case where there is a commercial note that was held by the original lender (a legal entity, not a natural

person), before being conveyed to IBI Falcon's counsel for safekeeping (post-petition, once the Debtor commenced asking for the note), before being conveyed to undersigned counsel for safekeeping and production.

The Debtor knows where the note has been at all times. No information is being withheld. The problem appears to be that the Debtor expects there to have been a natural person charged with custody of the note at every stop along the way and such is simply not an accurate premise; until the note landed in the hands of undersigned counsel, there was never a specific individual charged with the custody of the document.

### iii.   IBI SBL Interrogatory No. 3 and No. 4

#### 1.   Interrogatory 3 Text

"Explain in detail why, on July 10, 2025—ten (10) days after the 'effective date' of the Second Allonge purporting to transfer the Note to IBI Falcon—IBI SBL executed the July 2025 Extension with the Debtor as 'Lender.'"

#### 2.   Interrogatory 3 Response

"Notwithstanding and without waiving IBI SBL Investment LP's general objection(s) to these Interrogatories, IBI SBL Investment LP states as follows: As of the effective date of the July 2025 Extension, IBI SBL Investment LP was the Lender and the appropriate party to sign the same."

#### 3.   Interrogatory 4 Text

"State whether IBI SBL contends that, as of July 10, 2025, IBI SBL still held the right to enforce or modify the Note, and state the factual and legal basis for that contention."

#### 4.  Interrogatory 4 Response

"Notwithstanding and without waiving IBI SBL Investment LP's general objection(s) to these Interrogatories, IBI SBL Investment LP states as follows: As of the effective date of the July 2025 Extension, IBI SBL Investment LP was the Lender and the appropriate party to sign the same."

#### 5.  Discussion

The manner in which interrogatory 3 is worded is a touch confusing, insofar as there is no July 2025 extension. The Debtor and IBI SBL negotiated an extension in June 2025 (*before* the note was conveyed to IBI Falcon on June 30, 2025). The extension is expressly effective as of June 18, 2025, per the text of the document itself (again, *before* the note was conveyed). However, the parties had some delay in executing the document, so it was ultimately executed in July 2025.

Since the document was effective as of June 18, 2025 (when IBI SBL was still the noteholder), the document was signed by IBI SBL. And that is why the response to interrogatory 4 indicates that IBI SBL was the lender "[a]s of the effective date" of the document.

### iv.  IBI SBL Interrogatory No. 5

#### 1.  Interrogatory Text

"Identify the source, form, and date of all authority pursuant to which Gingo Palumbo (including Anthony J. Gingo and Michael J. Palumbo) executed the Second Allonge and the Second Assignment on Your behalf."

#### 2.  Response Text

"Notwithstanding and without waiving IBI SBL Investment LP's general objection(s) to these Interrogatories, IBI SBL Investment LP states as follows: The source is that certain Limited

6

Power of Attorney entered by and between IBI SBL Investment LP and Gingo Palumbo Law Group LLC effective as of September 10, 2024."

### 3.  Discussion

IBI SBL very genuinely does not understand the Debtor's issue with this answer. IBI SBL is being asked about the source of authority to execute an allonge and is responding by citing to a very specific power of attorney, identifying the parties thereto, and identifying the date thereof.

The Debtor seems to be confused by the fact that there exist more than one power of attorney. But such is immaterial to this interrogatory and answer; IBI Falcon has been posed with a specific question and is responding with a specific answer.

### d.  Relevance

The Debtor takes issue with the blanket relevance objections posed by IBI Falcon and IBI SBL. *See* Motion, ECF No. 205, at § V(D). Yet the Debtor does not point to any single item that has not been produced, or interrogatory that has not been answered, on account of this blanket objection. And, notably, the Debtor does not address the core issue: much of what is being sought—and what has been produced nonetheless—is not relevant.

The Debtor is trying to construct a case arguing that IBI Falcon is not the noteholder because there exists some technical flaw or defect in the allonges to the note, or in the chain of custody, or in powers of attorney, or in possession of the physical document.[1] IBI Falcon and IBI SBL have heeded this Honorable Court's directives and tried, in good faith, to produce the evidence that shows the Debtor is simply in error. Again, more than 2,000 pages have been

---

[1] In fairness, the Debtor appears to have backed away from the "show me the note" argument premised on physical possession, after a recent hearing in this case, and shifted to a different variety of "show me the note" argument that has also been rejected, as discussed *infra*. Such did not stop the Debtor, however, from proceeding with a physical inspection of the note and allonges yesterday morning.

produced. But such does not change that the Debtor lacks standing to pursue these lines of inquiry in the first instance:

> . . . Green lacks standing to challenge the various assignments of the Note and Deed of Trust. State contract law governs whether a plaintiff can challenge a mortgage assignment. In Maryland, only a party or third-party beneficiary to a contract can sue to enforce the terms of that contract. The intervening assignments do not affect Green's rights in that, regardless of their validity, he "still has an obligation under the note to make payments." The assignments only affect to whom he must make those payments. Because Green is not a party to, or an intended third-party beneficiary of, any of the allegedly improper assignments, he has no standing to challenge them.

*Green v. 1900 Capital Tr. II*, 619 B.R. 121, 131 (D. Md. 2020) (citing *Wolf v. Fed. Nat'l Mortg. Ass'n*, 512 F. App'x 336, 342 (4th Cir. 2013) (per curiam); *120 W Fayette St., LLLP v. Mayor & City Council of Balt.*, 426 Md. 14, 43 A.3d 355, 368 (Md. 2012); quoting *Wolf*, 512 F. App'x at 342).

Very notably, IBI SBL is not contending it holds the promissory note or has the rights to enforce the note. Nor is the note originator. *Only* IBI Falcon is claiming to be the noteholder and *only* IBI Falcon is endeavoring to enforce the note. If things were otherwise, and one of the predecessor noteholders were disputing IBI Falcon's standing, such would be a very different universe. But that is plainly not the case. And, per *Green*, these are accordingly issues the Debtor lacks standing to raise—making the issues facially irrelevant to discovery.

### e. Chain of Custody

The Debtor is asking for a chain of custody log. *See* Motion, ECF No. 205, at § V(E). As noted *supra*, the entire history of the note's whereabouts has been shared with the Debtor (up to— and including—the admittedly-strange efforts to hold the document in an undisclosed location in Maine).

Critically, though, there does not exist a "chain of custody log" or any document of the like. This is not a consumer note, bundled into a securitized bond, held in a temperature controlled

8

vault with access logs. This is a commercial note. It was held by the original lender, for its own benefit, until sold. Then it was held by the original lender for the benefit of the purchaser. Then it was held for the benefit of a subsequent assignee. Then it was conveyed to counsel, in Ohio, after issues were raised in this case. Then it was conveyed to undersigned counsel. Yesterday morning, it was in the courthouse jury room.

### f. Request for Production 30

#### i. Request Text

"All documents that refute, contradict, or are otherwise inconsistent with any allegation, contention, or position taken by IBI Falcon in the Proof of Claim, the Amended Proof of Claim, the Response to the Original Claim Objection (DE #126), the Opposition to the Motion to Enforce Stay (DE #68), or any opposition to the Party-in-Interest Motion."

#### ii. Response Text

"IBI Falcon US LLC objects to this Request as not relevant or likely to lead to the discovery of admissible evidence."

#### iii. Discussion

For want of ambiguity, IBI Falcon has *not* withheld any documents on account of this objection and is *not* aware of the existence of any responsive documents.

### g. Privilege Log

The Debtor is asking IBI Falcon and IBI SBL to produce privilege logs. *See* Motion, ECF No. 205, at § V(G). What the Debtor is not mentioning, however, is that no document has been withheld on account of a privilege objection alone, with IBI Falcon and IBI SBL having made clear that privileged documents are also objected to on relevance grounds.

A privilege log is only appropriate for documents that would be otherwise discoverable. *See* Fed. R. Civ. P. 26(b)(5) ("When a party withholds information **otherwise discoverable** by claiming that the information is privileged. . .") (emphasis added).

Information that is not relevant is, by necessity, not discoverable. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . .").

Where discovery is sought of information that is not relevant, such necessarily means no privilege log must be produced since the information sought is not "otherwise discoverable." Fed. R. Civ. P. 26(b)(5). *See also Gergawy v. United States Bakery, Inc.*, 2021 U.S. Dist. LEXIS 248521, at *11 (E.D. Wash. Feb. 8, 2021) ("Because the evidence is not relevant, the Court need not consider whether, as Plaintiffs argue, a privilege log for this claim was required."); *Pem-America, Inc. v. Sunham Home, LLC*, 2007 U.S. Dist. LEXIS 96277, at *7 (S.D.N.Y. Feb. 13, 2007) (collecting cases).

For want of ambiguity, no documents of a relevant nature have been withheld on the basis of attorney/client privilege.

### h.  IBI Falcon Request for Admission No. 9

#### i.  Request Text

"Admit that the payoff statement attached to the Amended Proof of Claim as Document #8 directs payment to IBI Falcon High Yield, LP, an entity other than IBI Falcon US LLC."

#### ii.  Response Text

"Deny."

### iii. Discussion

Here, the Debtor's chief qualm appears to be that it does not think the response is correct. Such is not fodder for a motion to compel in the first instance, as the request for admission assuredly has been answered in a manner compliant with governing law. *See* Fed. R. Civ. P. 36(a)(4).

Lest there be any confusion as to why this answer has been provided, though, counsel has clarified such as part of the good faith discussion preceding the Motion being docketed:

> For want of ambiguity, however, I would share that the entity to which payment is to be sent is an entity that would hold monies for the benefit of IBI Falcon, not an entity that holds the note or purports to have an independent entitlement to collect on the note. I would also point out that this is a rather common practice amongst lenders and servicers of secured debt, especially since many noteholders do not have their own depository accounts.

Response to Good Faith Letter, ECF No. 208-1, at § 10.

### i. Metadata

The Debtor asserts that metadata has not been produced. *See* Motion, ECF No. 205, at § V(K). This is simply not an accurate statement.

IBI Falcon has made two document productions to the Debtor. Both are in PDF format and both were prepared in a manner as to preserve *all* metadata from the individual documents being loaded into the PDF. Each individual document is bookmarked in the PDF, extractable as a single document from the PDF, and retentive of *all* metadata.

An enormous amount of time and effort went into bundling the PDFs so they would retain metadata and not be "flattened" or "cleansed," as is typical in cases such as this. IBI Falcon and IBI SBL have absolutely complied with this request. And there is not a good faith basis for the Debtor to assert otherwise.

11

### III.     No Award of Fees is Appropriate

Finally, IBI Falcon and IBI SBL would urge fees not be awarded in connection with the Motion for two reasons: (i) excepting the need to correct typographical errors and verify interrogatory answers, there are no discovery shortcomings; and (ii) commanding an award of fees, from a creditor to the Debtor, would be contra to the very purposes of chapter 11.[2]

An award of fees is discretionary. *See* Fed. R. Civ. P. 37(c)(1)(A) (using "may" language); Fed. R. Civ. P. 37(a)(5)(A) (allowing discretion in connection with a fee award where responses are "substantially justified" or an award would be "unjust"). *See also Parsons v. Peninsula Reg'l Med. Ctr.*, 2011 U.S. Dist. LEXIS 153628, at *5 (D. Md. Feb. 10, 2011) (". . . the Court finds it appropriate to exercise its discretion to eschew an award for the $6,755.50 of fees relating to discovery matters due to the existence of a reasonable issue as to the matter.")

IBI Falcon and IBI SBL have expended tens of thousands of dollars complying with the Debtor's discovery requests, many of which are far reaching and facially irrelevant. Counsel has personally incurred the expense of flying a promissory note to—and from—Greenbelt, Maryland, for inspection. And this all comes in the context of a case where there is no dispute but that the Debtor is not making adequate protection payments.

It is respectfully urged an award of fees is not justified in this context. Alternatively, if fees are to be awarded, IBI Falcon asks such fees be setoff against the Debtor's obligations to IBI Falcon.

---

[2] Insofar as legal fees are a secured obligation under the promissory note, IBI Falcon does not see a benefit to asking for an award of fees in its favor.

12

## IV.    Conclusion

WHEREFORE, IBI Falcon and IBI SBL respectfully pray this Honorable Court deny the

Motion and afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: July 21, 2026
                  By: /s/ Maurice B. VerStandig
                    Maurice B. VerStandig, Esq.
                    Bar No. 18071
                    The VerStandig Law Firm, LLC
                    9812 Falls Road, #114-160
                    Potomac, Maryland 20854
                    Phone: (301) 444-4600
                    Facsimile: (301) 444-4600
                    mac@mbvesq.com
                    *Counsel for IBI Falcon US LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of July, 2026, a copy of the foregoing was

served electronically upon filing via the ECF system, with copies to:

- Deirdre Theresa Johnson    dtjesq@dtjohnsonlaw.com
- L. Jeanette Rice    Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- US Trustee - Greenbelt    USTPRegion04.GB.ECF@USDOJ.GOV
- Maurice Belmont VerStandig    mac@mbvesq.com, lisa@mbvesq.com;mahlon@dcbankruptcy.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

                    /s/ Maurice B. VerStandig
                    Maurice B. VerStandig

13