IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

In re:

5410 30th Street DC LLC,

Debtor.

Case No. 25-19605-LSS

Chapter 11

**DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT**

**FOR DEBTOR'S SECOND AMENDED PLAN OF LIQUIDATION (As Filed July 22, 2026)**

**THIS DISCLOSURE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT UNDER 11 U.S.C. § 1125. ACCORDINGLY, THIS DISCLOSURE STATEMENT IS NOT BEING USED TO SOLICIT ACCEPTANCES OR REJECTIONS OF THE PLAN. THE INFORMATION CONTAINED HEREIN IS SUBJECT TO CHANGE, WHETHER AS A RESULT OF FURTHER AMENDMENT OF THE PLAN, ADDITIONAL DISCOVERY, RULINGS OF THE BANKRUPTCY COURT AT THE AUGUST 5, 2026 OMNIBUS HEARING (INCLUDING WITH RESPECT TO THE IBI FALCON CLAIM OBJECTION AND THE PARTY IN INTEREST MOTION), OR OTHERWISE. NO PERSON MAY RELY ON THIS DOCUMENT FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN ONCE THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT AND TRANSMITTED IN ACCORDANCE WITH 11 U.S.C. § 1125(b) AND BANKRUPTCY RULE 3015.**

## I. INTRODUCTION

5410 30th Street DC LLC (the "Debtor"), debtor and debtor in possession in the above-captioned Chapter 11 case, submits this Second Amended Disclosure Statement (this "Disclosure Statement") pursuant to 11 U.S.C. § 1125 in connection with the solicitation of votes on the Debtor's Second Amended Plan of Liquidation (the "Plan"), filed contemporaneously herewith. This Disclosure Statement is intended to provide holders of Claims against and Interests in the Debtor with "adequate information" of a kind, and in sufficient detail, to enable a hypothetical reasonable investor of the relevant Class to make an informed judgment about the Plan, consistent with 11 U.S.C. § 1125(a) and the multi-factor test applied by bankruptcy courts in *In re Metrocraft Publishing Services, Inc., 39 B.R. 567 (Bankr. N.D. Ga. 1984)*.

This Disclosure Statement supersedes and replaces the Debtor's Amended Disclosure Statement filed March 5, 2026 (DE #121), which IBI Falcon US LLC ("IBI Falcon") objected to (DE #122). IBI Falcon has since filed its own competing Substitute Disclosure Statement and Substitute Plan (DE #129, #130), to which the Debtor has objected (DE ## filed July 16, 2026) on numerous independent grounds. This Disclosure Statement and the accompanying Plan are intended to (a) cure every deficiency IBI Falcon identified in its objection to the Debtor's prior Disclosure Statement.   This disclosure statement also explains the material differences between the Debtor's proposed Plan and IBI Falcon's competing Plan, provides creditors with information relevant to evaluating both proposals, and explains why the Debtor's Plan, not IBI Falcon's Substitute Plan, should be approved and confirmed.

All capitalized terms used but not defined in this Disclosure Statement have the meanings given to them in the Plan. A copy of the Plan is annexed hereto and should be read in its entirety together with this Disclosure Statement. In the event of any inconsistency between this Disclosure Statement and the Plan, the terms of the Plan control.

**A. Response to IBI Falcon's Objection to the Debtor's Prior Disclosure Statement and Plan (DE #122).**

On March 17, 2026, IBI Falcon objected to the Debtor's prior Disclosure Statement and Plan (DE #120, #121) on numerous grounds, including that the prior plan: (a) did not specify any sale timeline, price, or terms; (b) purported to release secured creditors' liens before a sale of the Property occurred; (c) contained an exculpation and release provision; (d) permitted payment of professional fees without Bankruptcy Court approval; (e) did not properly classify all creditors, including scheduled but unfiled general unsecured claims; (f) omitted material information regarding the Property's value, marketing history, physical description, and the Debtor's prior real estate history, and did not include a liquidation analysis or an estimate of professional fees; and (g) miscited or omitted controlling authority, including citing the certiorari grant rather than the opinion in Florida Dep't of Revenue v. Piccadilly Cafeterias, Inc., 554 U.S. 33 (2008), and citing a Subchapter V provision (11 U.S.C. § 1184) inapplicable to this case. This Disclosure Statement and the accompanying Plan cure each of these deficiencies: Article IV below discloses the Property's appraisal, physical description, current listing price, and marketing history; Article III below discloses the Debtor's history, including its principal's prior real estate activity; Article V.B below and Section 4.4 of the Plan confirm that Class 4 includes all scheduled, undisputed general unsecured claims in addition to any timely filed proofs of claim; Article VI below sets forth a liquidation analysis; Article X below discloses known Professional Fee Claims; Section 5.1 of the Plan sets forth a defined marketing and sale process with a twelve-month outside date; and Section 9.1 of the Plan confirms that secured creditors' liens are not released, extinguished, or discharged until Closing.

**B. Response to IBI Falcon's Substitute Plan and Disclosure Statement, and the Debtor's Objection Thereto.**

On April 14, 2026, IBI Falcon filed its own competing Substitute Plan and Substitute Disclosure Statement (DE #129, #130), proposing a courthouse-steps auction of the Property with a minimum opening bid of only $400,000.00 — less than 8% of the Debtor's appraised value and roughly 10% of the Property's current listing price — at which IBI Falcon may credit-bid without posting the $150,000.00 deposit required of every other bidder. On July 16, 2026, the Debtor objected to IBI Falcon's Substitute Plan and Disclosure Statement on grounds including: (i) lack of adequate information under § 1125(a), including the absence of any competent valuation evidence supporting the $400,000.00 minimum bid and the absence of any liquidation analysis comparing recoveries to Chapter 7; (ii) improper embedding of sale procedures in the Plan itself, controlled entirely by IBI Falcon's counsel, without competitive marketing, bidder qualification, or overbid protection; (iii) inherent conflicts of interest, since IBI Falcon simultaneously serves as plan proponent, secured creditor, credit bidder, and auction administrator, and would acquire the Debtor's causes of action through the sweep of unclaimed assets to the "Successful Bidder"; (iv) failure to satisfy the best-interests test of 11 U.S.C. § 1129(a)(7), including IBI Falcon's own admission that certain claims it proposes to pay as priority wage claims (T&AA Construction LLC and BHI Construction, totaling $32,300.00) likely do not qualify for priority under 11 U.S.C. § 507(a)(4); (v) an overbroad exculpation and release provision inconsistent with 11 U.S.C. § 524(e); (vi) infeasibility under 11 U.S.C. § 1129(a)(11), because the Substitute Plan's own Effective Date is conditioned on the auction "fetch[ing] monies sufficient" to pay senior classes in full, with no contingency if it does not; and (vii) IBI Falcon's lack of standing to propose any plan at all, given the pending Party in Interest Motion challenging the validity of IBI Falcon's claimed lien and note-holder status. These deficiencies are discussed further in Article IV.E and Article V.E below, and the Debtor submits that IBI Falcon's Substitute Plan cannot be confirmed for these reasons, independent of and in addition to the reasons this Plan should be preferred under 11 U.S.C. § 1129(c).

**Important Dates**

| Event | Date |
| --- | --- |
| Omnibus Hearing, including hearing on approval of this Disclosure Statement (Bankruptcy Rule 3015) | August 5, 2026 |
| Deadline to object to this Disclosure Statement | As set by the Bankruptcy Court in connection with the Omnibus Hearing |
| Voting record date | [TO BE SET BY THE BANKRUPTCY COURT |

| Event | Date |
|---|---|
| | UPON APPROVAL OF THIS DISCLOSURE STATEMENT] |
| Deadline to submit ballots accepting or rejecting the Plan | [TO BE SET BY THE BANKRUPTCY COURT] |
| Deadline to object to confirmation of the Plan (Bankruptcy Rule 3015-2 | [TO BE SET BY THE BANKRUPTCY COURT] |
| Deadline to file tally of ballots (Local Bankruptcy Rule 3018-1: no later than 7 days before the confirmation hearing) | [TO BE SET BY THE BANKRUPTCY COURT] |
| Confirmation hearing | [TO BE SET BY THE BANKRUPTCY COURT] |

## II. VOTING PROCEDURES AND REQUIREMENTS FOR CONFIRMATION

### A. Who May Vote.

Under 11 U.S.C. § 1126, only holders of Allowed Claims in Impaired Classes that will receive a distribution under the Plan are entitled to vote. Classes 2, 4, and 5 are Impaired under the Plan and entitled to vote, provided that IBI Falcon's right to vote its Class 2 Claim remains subject to resolution of the Party in Interest Motion and the amount, if any, Allowed in connection with the IBI Falcon Claim Objection, including possible temporary allowance for voting purposes only under Bankruptcy Rule 3018. Class 3 is Unimpaired and, together with Class 1 if paid in full on the Effective Date, is conclusively presumed to accept the Plan under 11 U.S.C. § 1126(f) and is not entitled to vote.

### B. Ballots.

A ballot conforming to Official Form 314 will be provided to each holder of a Claim or Interest entitled to vote, together with the court-approved Disclosure Statement, the Plan (or a court-approved summary), and notice of the deadline to vote, in accordance with Bankruptcy Rule 3018-1. Ballots must be actually received by the deadline set by the Bankruptcy Court in order to be counted.

### C. Tabulation.

Acceptance of the Plan by a Class requires acceptance by holders of at least two-thirds in amount and more than one-half in number of the Allowed Claims in that Class that actually vote, determined in accordance with 11 U.S.C. § 1126(c). A Class of Interests accepts the Plan if holders of at least two-thirds in amount of the Allowed Interests in that Class that actually vote, accept the

Plan, determined in accordance with 11 U.S.C. § 1126(d). A tally of ballots will be filed with the Clerk of the Bankruptcy Court no later than seven (7) days before the confirmation hearing, in accordance with Local Bankruptcy Rule 3018-1.

**D. Confirmation Standards.**

For the Plan to be confirmed, the Bankruptcy Court must find that all of the applicable requirements of 11 U.S.C. § 1129(a) are satisfied, including, among others, that the Plan complies with applicable law, was proposed in good faith, satisfies the "best interests of creditors" test described in Article VI below with respect to each Impaired Class, and is feasible under 11 U.S.C. § 1129(a)(11). If any Impaired Class does not accept the Plan, the Debtor may nonetheless seek confirmation over that Class's rejection (a "cramdown") under 11 U.S.C. § 1129(b), provided the Plan does not discriminate unfairly and is "fair and equitable" with respect to the dissenting Class, as further described in Article V.C below. Because IBI Falcon has filed a competing plan, 11 U.S.C. § 1129(c) additionally applies, as described in Article V.E below.

## III. GENERAL BACKGROUND

**A. The Debtor and the Property.**

The Debtor, 5410 30th Street DC LLC, is a Maryland limited liability company formed on February 14, 2023, and engaged in residential renovation and development. Zanetta Marie Williams is the Debtor's sole member and manager, and is a REALTOR® affiliated with Keller Williams Capital Properties. The Debtor's sole asset of any material value is the Property, located at 5631 MacArthur Boulevard NW, Washington, D.C. 20016 (Hickory Creek, Lot 15, Section 3; Square/Suffix 1446/0043), which the Debtor acquired and has been renovating with the intention of a subsequent sale. Per the Debtor's October 11, 2025 appraisal, the Property is improved by a newly constructed (2025) single-family residence in the Colonial style, containing thirteen (13) total rooms, comprising five (6) bedrooms and five (6) full and one (1) half bathrooms, with approximately 6,902 square feet of gross living area, situated on a lot of approximately 6,534 square feet.

**B. Events Leading to the Chapter 11 Filing.**

According to the Debtor, the filing of this Chapter 11 case was precipitated by the collapse of the servicing arrangements of the Debtor's original construction lender, Fund That Flip DBA Upright, , which was tied to the 2024 failure and bankruptcy of its banking-as-a-service partner, Synapse Financial Technologies. That failure disrupted the Debtor's ability to facilitate continuity of construction and service and refinance its acquisition and construction financing on ordinary terms, and contributed materially to the circumstances leading to this filing.

**C. Procedural History.**

The following is a summary of material events in the Chapter 11 case to date:

| Date | Event |
|---|---|
| 10/14/2025 | Petition Date. Voluntary Chapter 11 petition filed (DE #1). |
| 10/29/2025 | Debtor's schedules filed (DE #15), listing the IBI Falcon debt as disputed on Schedule D. |
| 11/17/2025 | Section 341 meeting of creditors; Debtor discloses that Ms. Williams, a licensed real estate agent, is actively marketing the Property. |
| 12/03/2025 | Debtor files Motion to Enforce the Automatic Stay and for Sanctions (DE #60), alleging IBI Falcon recorded post-petition foreclosure instruments (an Affidavit of Non-Residential Mortgage Foreclosure recorded 11/13/2025 and a Deed of Appointment of Substitute Trustee recorded 11/19/2025) with actual and imputed notice of the bankruptcy. |
| 12/17/2025 | IBI Falcon opposes the stay-violation motion (DE #68). |
| 01/29/2026 | IBI Falcon files Motion to Convert Case to Chapter 7 (DE #95) and Proof of Claim No. 2-1 ($2,676,531.91, asserted secured, 24% interest rate). |
| 02/07/2026 | Debtor opposes the Motion to Convert. |
| 02/26/2026 | Debtor objects to IBI Falcon's original Proof of Claim (DE #116). |
| 03/05/2026 | Debtor files its original Amended Disclosure Statement and Plan of Liquidation (DE #120, #121). |
| 03/17/2026 | IBI Falcon objects to the Debtor's Amended Disclosure Statement and Plan (DE #122). |
| 03/28/2026 | IBI Falcon files Amended Proof of Claim No. 2-2 and a response to the Debtor's claim objection (DE #126), attaching two alonges to the promissory note for the first time. |
| 04/14/2026 | IBI Falcon files its competing Substitute Plan (DE #129) and Substitute Disclosure Statement (DE #130). |
| 04/15/2026 | Debtor files its Objection to Amended Proof of Claim No. 2 (DE #132), the Motion for Determination That IBI Falcon Is Not a Party in Interest (DE #133), a Motion to Strike, and a Motion for Leave to Conduct Rule 2004 Examination and Discovery. The Bankruptcy Court has authorized discovery, including a deposition of Michael Palumbo. |
| 04/29/2026 | IBI Falcon files its Amended Opposition to the Party in Interest Motion (DE #151). |

| Date | Event |
|---|---|
| 06/25/2026 | District of Columbia Office of Tax and Revenue issues a tax sale notice for unpaid real property taxes of $41,643.15, due July 14, 2026 (Notice No. L0016664823). |
| 06/29/2026 | IBI Falcon files a Motion for Relief from the Automatic Stay (DE #195). |
| 07/10/2026 | Debtor files its Opposition to the Motion for Relief from the Automatic Stay. |
| 07/16/2026 | Debtor files its Objection to Approval of IBI Falcon's Substitute Disclosure Statement and Plan. This Disclosure Statement and the Plan are filed. |
| 08/05/2026 | Scheduled  Omnibus Hearing on: (1) the Party in Interest Motion; (2) the Motion to Convert; (3) the IBI Falcon Claim Objection; (4) approval of this Disclosure Statement and Plan; (5) approval of IBI Falcon's Substitute Disclosure Statement and Plan; and (6) the Stay Relief Motion. |

The IBI Falcon Claim Objection, the Party in Interest Motion, the Motion to Convert, and the Stay Relief Motion all remain pending and are scheduled to be heard at the Omnibus Hearing, together with approval of this Disclosure Statement and IBI Falcon's competing Substitute Disclosure Statement.

**D. Prior Real Estate Activity.**

IBI Falcon's Objection to the Debtor's prior Disclosure Statement (DE #122) noted that public land records reflect that the Debtor's principal previously acquired a separate real estate asset for approximately $855,000.00 in 2022 and sold that asset for approximately $1.16 million in 2023, and asserted that the address of that prior asset was not listed as a previous business location on the Debtor's Statement of Financial Affairs. That prior transaction is in no way relevant to this Chapter 11 proceeding as it involved a different business entity (LLC), a different property, was unrelated to the chain of title of the Debtor's Property, and the Debtor asserts there has been no diversion of proceeds from that transaction to or from the Debtor

**E. The August 5, 2026 Omnibus Hearing and Interaction of Pending Matters.**

The Bankruptcy Court has scheduled six matters for hearing together on August 5, 2026.  Because several contested matters are scheduled for the same hearing, the following summarizes how each possible outcome affects the implementation of the Plan.

(1) Party in Interest Motion. If granted, IBI Falcon is not a creditor or party in interest, its Claim is disallowed, its Motion to Convert and Stay Relief Motion are subject to dismissal for lack of standing, and any amount held in the IBI Falcon Disputed Claim Escrow under Section 4.2 of the Plan reverts to the Estate. If denied, the IBI Falcon Claim Objection proceeds on the merits, with the Class 2 escrow mechanism preserving all parties' positions pending resolution.

(2) Motion to Convert. The Debtor opposes conversion. As set forth in Article VI below, liquidation under this confirmable, actively-marketed Plan is expected to yield materially better recoveries to creditors than a Chapter 7 liquidation, which would impose a statutory trustee's commission under 11 U.S.C. § 326(a) and require new professionals unfamiliar with the Property and its marketing history.

(3) IBI Falcon Claim Objection. Remains pending; the Plan's escrow mechanism (Section 4.2) ensures that confirmation need not await final resolution of the disputed claim.

(4) Approval of this Disclosure Statement and Plan. The Debtor submits this Disclosure Statement contains "adequate information" under 11 U.S.C. § 1125(a) and that the Plan is confirmable, for the reasons set forth throughout this Disclosure Statement.

(5) Approval of IBI Falcon's Substitute Disclosure Statement and Plan. The Debtor submits, for the reasons set forth in Article III.B and Article IV.E, that IBI Falcon's Substitute Disclosure Statement should not be approved and that its Substitute Plan is not confirmable.

(6) Stay Relief Motion. The Debtor's Opposition demonstrates substantial equity above valid liens once IBI Falcon's disputed claim is excluded, and that a reorganization (in the sense of an orderly, court-supervised liquidating sale) remains in prospect through this Plan, defeating relief under both 11 U.S.C. § 362(d)(1) and (d)(2).

## IV. THE PROPERTY, VALUATION, AND MARKETING EFFORTS

### A. Appraisal.

The Debtor obtained a Uniform Residential Appraisal Report (Fannie Mae Form 1004/UAD) with an effective date of October 11, 2025, prepared by Emmanuel Nimako of Shabach Realty Services, Inc. (D.C. License/Certification No. CR2002017). The appraisal concluded a value of $5,050,000 under the sales comparison approach, corroborated by a cost approach indication of $5,075,350 and an income approach indication of $5,040,000. The appraisal's Market Conditions Addendum, however, reports a trailing twelve-month median comparable sale price of $3,641,750, a declining sale-price trend of approximately negative 7.2% per month for directly comparable luxury properties, and approximately a thirty-six-month supply of competing inventory in that narrow comparable set. The appraisal's Intended User clause identifies F2 Finance LLC as the sole intended user; the Debtor offers the appraisal here solely as evidence of value, not as a representation regarding any other intended use.

### B. IBI Falcon's Own Valuation.

IBI Falcon's Proof of Claim No. 2-1, filed January 29, 2026, states a value of the Property of $3,655,000.00 on the face of the proof of claim form itself, consistent with the appraisal's own twelve-month median comparable sale price, and materially below the appraisal's $5,050,000 sales-comparison conclusion. The Debtor notes that IBI Falcon's Proof of Claim is internally

inconsistent: it lists $3,655,000.00 as the value of the collateral securing the claim and $0.00 as any unsecured portion, yet asserts a total claim of only $2,676,531.91 — figures that do not reconcile and that the Debtor submits further undermine the reliability of IBI Falcon's valuation and claim generally. Separately, IBI Falcon's Substitute Plan proposes a $400,000.00 minimum auction bid with no independent appraisal or broker price opinion to support it. Absent any independent appraisal or broker price opinion, the proposed $400K minimum bid provides no objective basis to conclude that the auction would maximize value for the Estate or protect creditor recoveries.

### C. Marketing History.

The Property has been actively marketed for sale since August 29, 2025 (DOM 43 as of the appraisal date, per Bright MLS listing #DCDC2215732), including: listing on the Multiple Listing Service; multiple strategic price adjustments in response to market feedback (from an initial post-appraisal listing price of $4,645,000 to $4,445,000 on October 16, 2025, to $4,295,000 approximately nine days later, to $3,999,900 in November 2025, and currently $3,999,901); broker and public open houses; social media and digital marketing campaigns; professional photography and videography; luxury signage; direct outreach to brokers specializing in the luxury residential market; and disclosure of the appraisal to qualified prospective purchasers.

According to Bright MLS's June 2026 Housing Market Report (issued July 10, 2026), the Washington, D.C. metro area recorded 5,274 closed sales in June 2026 (up 4.4% year-over-year), 5,452 new listings (up 3.7% year-over-year), 11,168 active listings at month-end (up 9.0% year-over-year), and a median sold price of $675,000 (up 3.8% year-over-year and near the region's record high). Regional inventory and transaction volume for the Mid-Atlantic market as a whole are likewise at multi-year highs, with the median days on market holding at 11 days region-wide in June 2026. While these region-wide figures are not specific to the Property's luxury single-family segment — where the appraisal's Market Conditions Addendum reports localized softness — the Debtor believes the overall strength and liquidity of the broader D.C. metro market support the feasibility of completing a sale within the marketing timeline set by the Plan.

### D. Continued Marketing and Sale Process Under the Plan.

The Plan provides for continued marketing of the Property by the Broker, subject to a Bankruptcy Court-approved retention, with formal 120-day reviews of pricing and marketing strategy reported to the Bankruptcy Court, and an outside date of twelve (12) months after the Effective Date by which the Property must be sold, subject to extension by the Bankruptcy Court for cause, failing which the Debtor must either pursue a Bankruptcy Court-supervised sale under 11 U.S.C. § 363 or consent to conversion of the case to Chapter 7. This structure preserves the flexibility the Debtor believes is necessary to achieve the best price for the Property, while providing the defined outer time limit that IBI Falcon's objections to the prior plan identified as missing.

**E. Comparison to IBI Falcon's Substitute Plan.**

The following table summarizes material differences between this Plan and IBI Falcon's competing Substitute Plan, which the Debtor submits are directly relevant to the Bankruptcy Court's consideration under 11 U.S.C. § 1129(c) if both plans are otherwise found confirmable, and independently demonstrate that IBI Falcon's Substitute Plan cannot satisfy 11 U.S.C. § 1129(a) and (b).

| Feature | Debtor's Plan | IBI Falcon's Substitute Plan |
|---|---|---|
| Sale process | Continued broker-led marketing at fair market value, with 120-day court-reported reviews and a 12-month outside date before any forced § 363 sale | Courthouse-steps auction approximately 21 days after confirmation, controlled by IBI Falcon's counsel |
| Valuation support | Independent third-party appraisal ($5,050,000 sales-comparison value) plus 10 months of active marketing data | No independent appraisal or broker opinion offered |
| Minimum/opening bid | N/A — market-based private sale | $400,000.00 (approximately 8% of appraised value) |
| Bidder deposit | N/A | $150,000.00 required of all bidders except IBI Falcon, which is exempt |
| Treatment of estate causes of action | Retained and prosecuted for the benefit of the Estate (Section 5.5 of the Plan) | Swept to the "Successful Bidder" (potentially IBI Falcon via credit bid) |
| Exculpation/release | Section 9.4 of the Plan | Broad exculpation and injunction for IBI Falcon and professionals, carved out only for fraud, gross negligence, and intentional misconduct |
| Priority claims | Classified consistent with 11 U.S.C. § 507; no claims paid as priority absent qualification | Proposes paying T&AA Construction and BHI Construction as priority wage claims while conceding they likely do not qualify under § 507(a)(4) |
| Standing of proponent | Not disputed | Subject to the pending Party in Interest Motion challenging IBI |

10

| Feature | Debtor's Plan | IBI Falcon's Substitute Plan |
|---|---|---|
| | | Falcon's status as a creditor or note holder |

## V. SUMMARY OF THE PLAN

The following is a summary of the classification and treatment of Claims and Interests under the Plan. This summary is qualified in its entirety by reference to the Plan itself, which controls in the event of any inconsistency.

| Class | Description | Impairment | Summary of Treatment |
|---|---|---|---|
| 1 | Priority Tax Claims | Unimpaired if paid in full on the Effective Date | Paid in full in Cash at Closing, or in installments over not more than 5 years from the Petition Date if not paid at Closing. |
| 2 | IBI Falcon Secured Claim | Impaired | Disputed portion escrowed pending resolution of the Party in Interest Motion and IBI Falcon Claim Objection; Allowed Secured portion paid in full or retains lien with deferred payments; disallowed/reclassified portion becomes a Class 4 Claim; no recovery if IBI Falcon is determined not to be a party in interest. |
| 3 | Santorini Secured Claim | Unimpaired | Paid in full in Cash at Closing to the extent Allowed; lien rides through pending a bar-date motion. |
| 4 | General Unsecured Claims | Impaired | Pro rata share of the Unsecured Distribution Fund (greater of $100,000 or full payment if Net Sale Proceeds allow). |
| 5 | Equity Interests (Zanetta Williams) | Impaired | Retains membership interest; receives Cash or property only if Class 4 accepts the Plan, or if Classes 1-4 and Allowed |

11

| Class | Description | Impairment | Summary of Treatment |
|-------|-------------|------------|----------------------|
|       |             |            | Administrative Claims are paid in full and a Surplus remains. |

### A. The IBI Falcon Claim Objection and Its Effect on the Plan.

The Debtor has objected to IBI Falcon's Amended Proof of Claim No. 2 on multiple independent grounds, including: (i) the allonges purporting to endorse the underlying promissory note bear only undated "effective dates" rather than execution dates and were first produced only after the Debtor's original claim objection; (ii) the assignments of the deed of trust are defective for lack of a timely recorded power of attorney under D.C. Code § 21-2603.03; (iii) IBI Falcon cannot establish holder-in-due-course status because the note was allegedly overdue when transferred; (iv) approximately $88,880.00 in extension and forbearance fees are unsupported or were assessed by an entity that had already transferred the note; (v) the default-interest calculation (24% versus the note's original 12.49% rate) is unsupported; and (vi) the payoff statement directs payment to a different, though related, entity ("IBI Falcon High Yield, LP"). These issues are also the subject of the Party in Interest Motion, under which the Debtor seeks a determination that IBI Falcon's chain of title is void, such that it is not a creditor or party in interest at all. The outcome of the IBI Falcon Claim Objection and the Party in Interest Motion is not known as of the date of this Disclosure Statement and is a material risk factor described in Article VIII below.

### B. The Unsecured Distribution Fund.

Holders of Allowed Class 4 Claims will share Pro Rata in the Unsecured Distribution Fund, which is the greater of a $100,000 minimum distribution or the full amount of Net Sale Proceeds remaining after Classes 1 through 3 and Allowed Administrative Claims are paid in full, up to payment of Class 4 in full. This means Class 4's actual recovery will depend on the final sale price of the Property and the outcome of the IBI Falcon Claim Objection and Party in Interest Motion, and could range from a Pro Rata share of $100,000 to payment in full.

According to the Debtor's Schedule E/F (DE #16, §§ 3.5–3.6), the Debtor has scheduled approximately $593,000in additional general unsecured claims that are marked as disputed, contingent, or unliquidated, or an unknown dollar amount and for which no valid proof of claim appears to have been filed as of the date of this Disclosure Statement. Pursuant to Bankruptcy Rule 3003(b)(1), such scheduled Claims are deemed Allowed Class 4 Claims for voting and distribution purposes unless and until superseded by a timely filed proof of claim or successfully objected to by the Reorganized Debtor subject to any objection filed by the Reorganized Debtor or Order of the Court.

### C. Treatment of Equity Interests and Compliance with the Absolute Priority Rule.

The Debtor's prior plan, filed March 5, 2026, provided that Ms. Williams would retain 100% of the equity in the Debtor and receive any surplus sale proceeds, while Class 4 received only "a pro

rata distribution, if any." The Debtor understands this structure to be the most likely basis for IBI Falcon's objection that the prior plan was "facially unconfirmable," because 11 U.S.C. § 1129(b)(2)(B)(ii) generally prohibits a junior interest holder from receiving or retaining any property on account of a prior interest where a senior impaired class of unsecured claims is not paid in full and does not accept the plan, and this restriction cannot be avoided without a market-tested new value contribution.

The Plan addresses this issue directly: Ms. Williams may retain her Interest and any Surplus only if either (i) Class 4 votes to accept the Plan, in which case the Plan may be confirmed consensually without regard to the absolute priority rule as among accepting classes, or (ii) Classes 1 through 4 and all Allowed Administrative Claims are paid in full before any Surplus is distributed to her. If Class 4 does not accept the Plan and is not paid in full, Ms. Williams will not receive or retain any property on account of her Interest. Because this structure requires no new-value contribution by Ms. Williams and does not permit her to retain value ahead of a dissenting senior class, the Debtor believes it satisfies 11 U.S.C. § 1129(b)(2)(B)(ii) regardless of whether Class 4 accepts the Plan.

### D. The Santorini Claim and the Effect of No Proof of Claim Being Filed.

Santorini Capital, LLC ("Santorini") is scheduled by the Debtor as a secured creditor holding a junior lien on the Property in an asserted amount of approximately $975,000.00, but has not filed a proof of claim in this case. The absence of a filed proof of claim does not, without more, extinguish Santorini's lien: it is a fundamental principle, reaffirmed by the Supreme Court in Dewsnup v. Timm, 502 U.S. 410 (1992), and codified at 11 U.S.C. § 506(d)(2), that a lien on property passes through bankruptcy unaffected unless the underlying claim is disallowed for a reason other than the mere failure to file a proof of claim, or the lien is otherwise avoided, modified, or satisfied through a claim objection, adversary proceeding, or plan provision affording the lienholder due process. The Plan therefore treats the Santorini Claim as Unimpaired and provides for payment in full to the extent Allowed, while directing the Reorganized Debtor to promptly seek an order fixing a bar date for Santorini to file a proof of claim and, if none is timely filed, to seek to fix the Allowed amount of the Santorini Claim by motion on notice to Santorini, consistent with due process and Bankruptcy Rule 3003-1.

### E. The Competing Plan Standard Under 11 U.S.C. § 1129(c).

Because IBI Falcon has filed a competing plan, 11 U.S.C. § 1129(c) governs if both plans independently satisfy 11 U.S.C. § 1129(a) and, where applicable, § 1129(b): the Bankruptcy Court "may confirm only one plan," and in choosing between confirmable plans "shall consider the preferences of creditors and equity security holders." The Debtor submits, for the reasons set forth in Articles III.B and IV.E above, that IBI Falcon's Substitute Plan does not independently satisfy § 1129(a) — including the good faith, best-interests, and feasibility requirements — and therefore § 1129(c) is not reached as to that plan. Independently, and if the Bankruptcy Court finds both plans confirmable, the Debtor submits creditors' preferences favor this Plan because it: (i) is supported by an independent appraisal and ten months of active marketing data, rather than an

unsupported $400,000.00 minimum bid; (ii) preserves estate causes of action, including claims against IBI Falcon itself, for the benefit of all creditors; (iii) avoids the conflicts of interest inherent in IBI Falcon simultaneously acting as proponent, secured creditor, and auction administrator; and (iv) is proposed by the party — the Debtor and its principal, an experienced and licensed real estate professional — with the strongest incentive and demonstrated ability to maximize sale proceeds for the benefit of all creditors.  The Debtor believes its Plan better maximizes value for creditors and complies with the confirmation requirements of Chapter 11.

## VI. LIQUIDATION ANALYSIS (BEST INTERESTS OF CREDITORS TEST)

11 U.S.C. § 1129(a)(7) requires that each holder of a Claim or Interest in an Impaired Class either accept the Plan or receive or retain property of a value, as of the Effective Date, not less than such holder would receive or retain if the Debtor were liquidated under Chapter 7. The following analysis compares recoveries under the Plan to a hypothetical Chapter 7 liquidation, under three illustrative valuation scenarios for the Property. These figures are illustrative only and are qualified by the risk factors described in Article VIII.

### A. Chapter 7 Trustee Compensation.

In a Chapter 7 case, a trustee's compensation is capped by 11 U.S.C. § 326(a) at 25% of the first $5,000 of moneys disbursed or turned over to parties in interest (excluding the debtor but including holders of secured claims), 10% of the next $45,000, 5% of the next $950,000, and 3% of amounts disbursed in excess of $1,000,000. Applying this formula to illustrative gross sale proceeds yields the following maximum statutory trustee compensation:

| Illustrative Gross Sale Proceeds | Maximum Ch. 7 Trustee Commission (11 U.S.C. § 326(a)) |
|---|---|
| $3,655,000 (IBI Falcon's own Proof of Claim value) | $132,900 |
| $3,999,901 (current listing price) | $143,247 |
| $5,050,000 (appraisal headline value) | $174,750 |

This trustee commission is a cost unique to Chapter 7 and would not be incurred under the Plan, under which the Debtor, not a Chapter 7 trustee, sells the Property. A Chapter 7 trustee would also likely need to retain new real estate and legal professionals unfamiliar with the Property and its marketing history, resulting in additional delay, expense, and loss of marketing momentum, further reducing net recoveries to creditors in a Chapter 7 scenario as compared to the Plan.

14

**B. Comparative Recovery Analysis.**

| Class | Estimated Chapter 7 Recovery | Recovery Under the Plan | Comparison |
|---|---|---|---|
| 1 – Priority Tax | Paid in full (§ 507(a)(8) priority in both cases) | Paid in full | No worse off |
| 2 – IBI Falcon | Paid to extent of Allowed Secured Claim under § 506(a) in both cases; disputed status litigated in either forum | Same result, without added cost/delay of a new trustee and professionals | No worse off |
| 3 – Santorini | Paid in full to extent Allowed | Paid in full to extent Allowed | No worse off |
| 4 – General Unsecured | Pro rata share of proceeds remaining after secured, priority, and administrative claims, reduced by the Ch. 7 trustee's statutory commission and likely additional Ch. 7 professional fees | Pro rata share of the Unsecured Distribution Fund (minimum $100,000, up to payment in full), without a trustee's commission | Expected to be better off |
| 5 – Equity | Would receive nothing unless all senior classes paid in full, after trustee commission and fees | May retain Interest and receive a Surplus only after Classes 1-4 and Administrative Claims are paid in full (or if Class 4 accepts) | No worse off; potentially better off |

Based on the foregoing, the Debtor believes that each Impaired Class will receive or retain property of a value not less than such Class would receive in a hypothetical Chapter 7 liquidation, satisfying 11 U.S.C. § 1129(a)(7).

## VII. FEASIBILITY

11 U.S.C. § 1129(a)(11) requires that confirmation of the Plan not be likely to be followed by liquidation or the need for further financial reorganization, unless the Plan itself proposes liquidation. Because the Plan is a plan of liquidation of the Debtor's sole asset, feasibility here depends on whether the Property can be sold within the timeframe and mechanisms described in the Plan for an amount sufficient to fund the payments the Plan requires.

The Debtor has an active and, based on the marketing history described in Article IV.C, substantial marketing effort underway, conducted by Ms. Williams — a REALTOR® with approximately six years of brokerage experience who has closed approximately 25 transactions over the preceding five years with an aggregate value of approximately $15.7 million, including sales up to $1.7 million — supported by Keller Williams Capital Properties. The Debtor believes the Property can be sold within the twelve-month outside date set by the Plan, particularly given the built-in toggle to a Bankruptcy Court-supervised sale process if a private sale has not closed by that date, and given the strength of the broader D.C. metro housing market reflected in Bright MLS's June 2026 data (record and near-record median sold prices, rising transaction volume, and growing inventory), as described in Article IV.C.  . As of the date of this Disclosure Statement, the property continues to be actively marketed.

The Debtor notes that administrative solvency depends on the timing and amount of Net Sale Proceeds. As of the date of this Disclosure Statement, the known Administrative Claims include a supplemental Professional Fee Claim of Debtor's counsel, Deirdre T. Johnson, Esq., totaling not less than $70,116.60, which remains subject to a fee application and final allowance by the Bankruptcy Court under 11 U.S.C. §§ 330 and 331. This amount, together with any other Allowed Administrative Claims, will be paid in full at Closing, ahead of Class 4 and Class 5, and reduces the Net Sale Proceeds otherwise available for Distribution to those Classes. The Debtor will supplement this Disclosure Statement with any additional Professional Fee Claims or other Administrative Claims that accrue before the Disclosure Statement hearing.

### Effect of Aug 5 2-26 Omnibus Hearing

The Debtor recognizes that several contested matters scheduled for hearing on August 5, 2026, may materially affect implementation of the Plan.  However the Plan has been structured to account for the possible outcomes of those matters , including through the escrow provisions applicable to the IBI Falcon Claim. Depending upon the Court's rulings, the amount available for distribution to creditors may increase or decrease, but the Debtor believes the Plan remains capable of implementation under each reasonably anticipated outcome.

## VIII. RISK FACTORS

Holders of Claims and Interests should carefully consider the following risk factors, among others, before voting on the Plan.

### A. Valuation Risk.

Estimates of the Property's value range from approximately $3,641,750 (the appraisal's own twelve-month market median for directly comparable properties) to $5,050,000 (the appraisal's sales comparison conclusion), a difference of over $1.4 million. The Property's current listing

price, $3,999,901, and IBI Falcon's own stated valuation of $3,655,000 on its Proof of Claim, fall within that range. The appraisal itself reports a declining price trend and an oversupplied market within the narrow luxury comparable set. Actual recoveries to Class 4 and Class 5 depend heavily on which of these values (or some other value) is realized upon an actual sale.

**B. Claim Objection and Standing Risk.**

The IBI Falcon Claim Objection and the Party in Interest Motion are pending and unresolved. If IBI Falcon's claim is substantially allowed as an approximately $3 million (and growing) secured claim, recoveries to Class 4 and Class 5 will be correspondingly reduced, potentially to zero. If the Claim Objection or the Party in Interest Motion succeed in whole or in part, recoveries to Class 4 (which would then include any reclassified unsecured portion of the IBI Falcon Claim, diluting other Class 4 claimants) and potentially Class 5 would improve, but the timing and outcome of that litigation cannot be predicted, and discovery is ongoing.

**C. Tax Sale Risk.**

The District of Columbia Office of Tax and Revenue noticed a tax sale based on $41,643.15 in unpaid real property taxes, with an original payment deadline of July 14, 2026, subsequently rescheduled to August 19, 2026. However the property is protected by the automatic stay imposed under 11 U.S.C. 362, which prohibits the District of Columbia from conducting a tax sale absent relief from the Bankruptcy Court.

**D. Market and Marketing Risk.**

The appraisal's own Market Conditions Addendum reports a declining price trend and a substantial supply of competing inventory in the Property's specific luxury comparable set, even though the broader D.C. metro market reported by Bright MLS shows overall strength. There can be no assurance the Property will sell within the Plan's twelve-month outside date, or at a price sufficient to pay Class 4 in full or to produce a Surplus for Class 5.

**E. Conversion Risk.**

If the Property is not sold by the outside date described in Section 5.1 of the Plan, and the Debtor does not timely pursue a Bankruptcy-Court-supervised sale process, the case may convert to Chapter 7, which the analysis in Article VI suggests would likely reduce net recoveries to unsecured creditors due to statutory trustee compensation and the loss of marketing continuity.

**F. No Discharge.**

As described in Section 9.2 of the Plan, because this is a plan of liquidation under which the Debtor, a non-individual entity, does not intend to continue business after consummation, the Debtor will not receive a discharge upon confirmation, pursuant to 11 U.S.C. § 1141(d)(3). Holders of Claims not paid in full will retain their rights and remedies against the Debtor and the Reorganized Debtor after the Effective Date, subject to the limited injunction described in Section 9.3 of the Plan.

**G. Confirmation and Competing Plan Risk.**

IBI Falcon has objected to the Debtor's prior plan and disclosure statement, has filed its own competing Substitute Plan and Disclosure Statement, and is expected to object to this Plan and Disclosure Statement as well. There can be no assurance that the Bankruptcy Court will approve this Disclosure Statement, confirm this Plan as proposed, or resolve the choice between competing plans under 11 U.S.C. § 1129(c) in the Debtor's favor, or that this Plan will not require further modification in response to objections raised at or before the Omnibus Hearing.

## IX. CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The federal, state, and local income tax consequences of the Plan to the Debtor, the Reorganized Debtor, and holders of Claims and Interests may be complex and will depend on each holder's particular circumstances. The Debtor has not obtained an opinion of counsel or a ruling from the Internal Revenue Service regarding the tax consequences of the Plan. Each holder of a Claim or Interest is strongly urged to consult its own tax advisor regarding the federal, state, local, and other tax consequences of the Plan applicable to that holder.

## X. PROFESSIONALS RETAINED AND TO BE RETAINED

Deirdre T. Johnson, Esq. is retained as counsel to the Debtor in this Chapter 11 case, subject to Bankruptcy Court approval of her retention application and periodic fee applications under 11 U.S.C. §§ 327, 330, and 331. As of the date of this Disclosure Statement, Ms. Johnson holds a supplemental Professional Fee Claim, for fees and costs incurred in this case beyond amounts previously awarded, totaling not less than $70,116.60. This amount is included as an Administrative Claim under Section 2.2 of the Plan and remains subject to a fee application and final review and allowance by the Bankruptcy Court before payment.

The Debtor intends to seek Bankruptcy Court approval, under 11 U.S.C. §§ 327(a) and 328(a) and Bankruptcy Rule 2014, of the retention of Zanetta Williams and Keller Williams Capital Properties as the real estate broker for the sale of the Property. Ms. Williams is a REALTOR® affiliated with Keller Williams Capital Properties, with approximately six years of active brokerage experience; over the preceding five years she has closed approximately 25 transactions with an aggregate value of approximately $15.7 million and an average sale price of approximately $626,800, including sales up to $1.7 million, in the District of Columbia and Maryland markets. Because Ms. Williams is an insider of the Debtor (its sole member and manager), the retention application will fully disclose her relationship to the Debtor, the proposed commission structure, and any other connections required to be disclosed under Bankruptcy Rule 2016-1. No such retention order has been entered as of the date of this Disclosure Statement.

## XI. SECURITIES LAW MATTERS

The Plan does not provide for the issuance of any new securities. All Distributions under the Plan are to be made in Cash. Accordingly, the Debtor does not believe the securities registration requirements of 11 U.S.C. § 1145 are implicated by the Plan.

## XII. RECOMMENDATION

For the reasons set forth in this Disclosure Statement, the Debtor believes that the Plan provides the best available recovery to holders of Claims against and Interests in the Debtor, is feasible, complies with the applicable requirements of 11 U.S.C. § 1129(a) and (b), and is in the best interests of the Debtor's creditors and the Estate. The Debtor further believes that, to the extent the Bankruptcy Court reaches the comparative analysis required by 11 U.S.C. § 1129(c), this Plan should be preferred over IBI Falcon's competing Substitute Plan for the reasons set forth in Articles III.B, IV.E, and V.E above. The Debtor recommends that holders of Claims and Interests entitled to vote on the Plan vote to ACCEPT the Plan.

Dated: July 22nd, 2026

Respectfully submitted,

**5410 30TH STREET DC LLC,**
Debtor and Debtor in Possession

By counsel:

/s/ Deirdre T. Johnson, Esq.
Deirdre T. Johnson, Esq.
Bar No. MD14227
9701 Apollo Dr, Suite 301
Upper Marlboro, MD 20774
(301) 742-5385 | dtjesq@dtjohnsonlaw.com
Counsel for Debtor, 5410 30th Street DC LLC

19

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 22nd day of July, 2026, a copy of the foregoing DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT FOR DEBTOR'S SECOND AMENDED PLAN OF LIQUIDATION was served by US Mail, postage prepaid, upon all parties in interest, including:

Maurice B. VerStandig, Esq. (mac@mbvesq.com)

L. Jeanette Rice Jeanette.Rice@usdoj.gov, and

Office of the United States Trustee (USTPRegion04.GB.ECF@USDOJ.GOV)

And by US Mail (First Class) pursuant to Local Bankruptcy Rules of the District of Maryland upon:

•     All Creditors and Parties in Interest as listed on the Court's Mailing Matrix (attached)

<u>/s/ Deirdre T. Johnson, Esq.</u>

Attn: Albeiro Medina
T&AA Construction, and Any / All Affiliates
11820 Parklawn Dr, Suite 380
Rockville, MD  20852

BHI Construction, and Any/All Affiliates
9342 Annapolis Rd
Lanham, MD  20706

City Concrete, and Any / All Affiliates
9284 Corp Circle
Manassas, VA 20110

DC Municipal Investments, LLC
c/o:  Heidi S. Kenny, Esq
Kenny Law Group, LLC
11426 York Rd, 1st Floor
Cockeysville, MD  21030

DC Office of Tax & Revenue
Office of CFO
1101 4th St, SW
Washington, DC  20024

DC Water
1385 Canal St, SE
Washington, DC  20003

Fund That Flip / Upright
1300 E. 9th St, Suite 1310
Cleveland, OH  44114

IBI SBL Investment LP
IBI Falcon US, LLC
c/o The VerStandig Law Firm
9812 Falls Rd, #114-160
Potomac, MD  20854

Kylie Properties, LLC
Suite 200 #1060
12345 Parklawn Dr
Washington, DC 20002

PEPCO
701 9th St, NW
Washington, DC  20068

Santorini Capital LLC, and Any/All
Affiliates
Suite 200
2000 Massachusetts Ave, NW
Washington, DC 20036

Washington Gas
Attn:  Customer Care
6801 Industrial Rd
Springfield, VA  22151

Yonis Benitez
612 Oglethorpe St, NW
Washington, DC  20011