IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF MARYLAND

~~Greenbelt Division~~

~~In re: 5410 30th Street DC, LLC~~      ~~Case No.: 25 − 19605~~

~~Debtor~~      ~~Chapter 11~~

GREENBELT DIVISION

In re:            Case No. 25-19605-LSS

5410 30th Street DC LLC,      Chapter 11

Debtor.

**DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT**

**FOR ~~DEBTOR'S~~DEBTOR'S SECOND AMENDED PLAN OF LIQUIDATION (As Filed July 22, 2026)**

**THIS DISCLOSURE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT UNDER 11 U.S.C. § 1125. ACCORDINGLY, THIS DISCLOSURE STATEMENT IS NOT BEING USED TO SOLICIT ACCEPTANCES OR REJECTIONS OF THE PLAN. THE INFORMATION CONTAINED HEREIN IS SUBJECT TO CHANGE, WHETHER AS A RESULT OF FURTHER AMENDMENT OF THE PLAN, ADDITIONAL DISCOVERY, RULINGS OF THE BANKRUPTCY COURT AT THE AUGUST 5, 2026 OMNIBUS HEARING (INCLUDING WITH RESPECT TO THE IBI FALCON CLAIM OBJECTION AND THE PARTY IN INTEREST MOTION), OR OTHERWISE. NO PERSON MAY RELY ON THIS DOCUMENT FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN ONCE THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT AND TRANSMITTED IN ACCORDANCE WITH 11 U.S.C. § 1125(b) AND BANKRUPTCY RULE 3015.**

# I. INTRODUCTION

5410 30th Street DC LLC (the "Debtor"), debtor and debtor in possession in the above-captioned Chapter 11 case, submits this Second Amended Disclosure Statement (this "Disclosure Statement") pursuant to 11 U.S.C. § 1125 in connection with the solicitation of votes on the Debtor's Second Amended Plan of Liquidation (the "Plan"), filed contemporaneously herewith. This Disclosure Statement is intended to provide holders of Claims against and Interests in the Debtor with "adequate information" of a kind, and in sufficient detail, to enable a hypothetical reasonable investor of the relevant Class to make an informed judgment about the Plan, consistent with 11 U.S.C. § 1125(a) and the multi-factor test applied by bankruptcy courts in *In re Metrocraft Publishing Services, Inc., 39 B.R. 567 (Bankr. N.D. Ga. 1984)*.

This Disclosure Statement supersedes and replaces the Debtor's Amended Disclosure Statement filed March 5, 2026 (DE #121), which IBI Falcon US LLC ("IBI Falcon") objected to (DE #122). IBI Falcon has since filed its own competing Substitute Disclosure Statement and Substitute Plan (DE #129, #130), to which the Debtor has objected (DE ## filed July 16, 2026) on numerous independent grounds. This Disclosure Statement and the accompanying Plan are intended to (a) cure every deficiency IBI Falcon identified in its objection to the Debtor's prior Disclosure Statement. This disclosure statement also explains the material differences between the Debtor's proposed Plan and IBI Falcon's competing Plan, provides creditors with information relevant to evaluating both proposals, and explains why the Debtor's Plan, not IBI Falcon's Substitute Plan, should be approved and confirmed.

All capitalized terms used but not defined in this Disclosure Statement have the meanings given to them in the Plan. A copy of the Plan is annexed hereto and should be read in its entirety together with this Disclosure Statement. In the event of any inconsistency between this Disclosure Statement and the Plan, the terms of the Plan control.

## A. Response to IBI Falcon's Objection to the Debtor's Prior Disclosure Statement and Plan (DE #122).

On March 17, 2026, IBI Falcon objected to the Debtor's prior Disclosure Statement and Plan (DE #120, #121) on numerous grounds, including that the prior plan: (a) did not specify any sale timeline, price, or terms; (b) purported to release secured creditors' liens before a sale of the Property occurred; (c) contained an exculpation and release provision; (d) permitted payment of professional fees without Bankruptcy Court approval; (e) did not properly classify all creditors, including scheduled but unfiled general unsecured claims; (f) omitted material information regarding the Property's value, marketing history, physical description, and the Debtor's prior real estate history, and did not include a liquidation analysis or an estimate of professional fees; and (g) miscited or omitted controlling authority, including citing the certiorari grant rather than the opinion in Florida Dep't of Revenue v. Piccadilly Cafeterias, Inc., 554 U.S. 33 (2008), and citing a Subchapter V provision (11 U.S.C. § 1184) inapplicable to this case. This Disclosure Statement

and the accompanying Plan cure each of these deficiencies: Article IV below discloses the Property's appraisal, physical description, current listing price, and marketing history; Article III below discloses the Debtor's history, including its principal's prior real estate activity; Article V.B below and Section 4.4 of the Plan confirm that Class 4 includes all scheduled, undisputed general unsecured claims in addition to any timely filed proofs of claim; Article VI below sets forth a liquidation analysis; Article X below discloses known Professional Fee Claims; Section 5.1 of the Plan sets forth a defined marketing and sale process with a twelve-month outside date; and Section 9.1 of the Plan confirms that secured creditors' liens are not released, extinguished, or discharged until Closing.

**B. Response to IBI Falcon's Substitute Plan and Disclosure Statement, and the Debtor's Objection Thereto.**

On April 14, 2026, IBI Falcon filed its own competing Substitute Plan and Substitute Disclosure Statement (DE #129, #130), proposing a courthouse-steps auction of the Property with a minimum opening bid of only $400,000.00 — less than 8% of the Debtor's appraised value and roughly 10% of the Property's current listing price — at which IBI Falcon may credit-bid without posting the $150,000.00 deposit required of every other bidder. On July 16, 2026, the Debtor objected to IBI Falcon's Substitute Plan and Disclosure Statement on grounds including: (i) lack of adequate information under § 1125(a), including the absence of any competent valuation evidence supporting the $400,000.00 minimum bid and the absence of any liquidation analysis comparing recoveries to Chapter 7; (ii) improper embedding of sale procedures in the Plan itself, controlled entirely by IBI Falcon's counsel, without competitive marketing, bidder qualification, or overbid protection; (iii) inherent conflicts of interest, since IBI Falcon simultaneously serves as plan proponent, secured creditor, credit bidder, and auction administrator, and would acquire the Debtor's causes of action through the sweep of unclaimed assets to the "Successful Bidder"; (iv) failure to satisfy the best-interests test of 11 U.S.C. § 1129(a)(7), including IBI Falcon's own admission that certain claims it proposes to pay as priority wage claims (T&AA Construction LLC and BHI Construction, totaling $32,300.00) likely do not qualify for priority under 11 U.S.C. § 507(a)(4); (v) an overbroad exculpation and release provision inconsistent with 11 U.S.C. § 524(e); (vi) infeasibility under 11 U.S.C. § 1129(a)(11), because the Substitute Plan's own Effective Date is conditioned on the auction "fetch[ing] monies sufficient" to pay senior classes in full, with no contingency if it does not; and (vii) IBI Falcon's lack of standing to propose any plan at all, given the pending Party in Interest Motion challenging the validity of IBI Falcon's claimed lien and note-holder status. These deficiencies are discussed further in Article IV.E and Article V.E below, and the Debtor submits that IBI Falcon's Substitute Plan cannot be confirmed for these reasons, independent of and in addition to the reasons this Plan should be preferred under 11 U.S.C. § 1129(c).

**Important Dates**

| Event | Date |
|---|---|
| Omnibus Hearing, including hearing on approval of this Disclosure Statement (Bankruptcy Rule 3015) | August 5, 2026 |
| Deadline to object to this Disclosure Statement | As set by the Bankruptcy Court in connection with the Omnibus Hearing |
| Voting record date | [TO BE SET BY THE BANKRUPTCY COURT UPON APPROVAL OF THIS DISCLOSURE STATEMENT] |
| Deadline to submit ballots accepting or rejecting the Plan | [TO BE SET BY THE BANKRUPTCY COURT] |
| Deadline to object to confirmation of the Plan (Bankruptcy Rule 3015-2 | [TO BE SET BY THE BANKRUPTCY COURT] |
| Deadline to file tally of ballots (Local Bankruptcy Rule 3018-1: no later than 7 days before the confirmation hearing) | [TO BE SET BY THE BANKRUPTCY COURT] |
| Confirmation hearing | [TO BE SET BY THE BANKRUPTCY COURT] |

## II. VOTING PROCEDURES AND REQUIREMENTS FOR CONFIRMATION

**A. Who May Vote.**

Under 11 U.S.C. § 1126, only holders of Allowed Claims in Impaired Classes that will receive a distribution under the Plan are entitled to vote. Classes 2, 4, and 5 are Impaired under the Plan and entitled to vote, provided that IBI Falcon's right to vote its Class 2 Claim remains subject to resolution of the Party in Interest Motion and the amount, if any, Allowed in connection with the IBI Falcon Claim Objection, including possible temporary allowance for voting purposes only under Bankruptcy Rule 3018. Class 3 is Unimpaired and, together with Class 1 if paid in full on the Effective Date, is conclusively presumed to accept the Plan under 11 U.S.C. § 1126(f) and is not entitled to vote.

**B. Ballots.**

A ballot conforming to Official Form 314 will be provided to each holder of a Claim or Interest entitled to vote, together with the court-approved Disclosure Statement, the Plan (or a court-

approved summary), and notice of the deadline to vote, in accordance with Bankruptcy Rule 3018-1. Ballots must be actually received by the deadline set by the Bankruptcy Court in order to be counted.

## C. Tabulation.

Acceptance of the Plan by a Class requires acceptance by holders of at least two-thirds in amount and more than one-half in number of the Allowed Claims in that Class that actually vote, determined in accordance with 11 U.S.C. § 1126(c). A Class of Interests accepts the Plan if holders of at least two-thirds in amount of the Allowed Interests in that Class that actually vote, accept the Plan, determined in accordance with 11 U.S.C. § 1126(d). A tally of ballots will be filed with the Clerk of the Bankruptcy Court no later than seven (7) days before the confirmation hearing, in accordance with Local Bankruptcy Rule 3018-1.

## D. Confirmation Standards.

For the Plan to be confirmed, the Bankruptcy Court must find that all of the applicable requirements of 11 U.S.C. § 1129(a) are satisfied, including, among others, that the Plan complies with applicable law, was proposed in good faith, satisfies the "best interests of creditors" test described in Article VI below with respect to each Impaired Class, and is feasible under 11 U.S.C. § 1129(a)(11). If any Impaired Class does not accept the Plan, the Debtor may nonetheless seek confirmation over that Class's rejection (a "cramdown") under 11 U.S.C. § 1129(b), provided the Plan does not discriminate unfairly and is "fair and equitable" with respect to the dissenting Class, as further described in Article V.C below. Because IBI Falcon has filed a competing plan, 11 U.S.C. § 1129(c) additionally applies, as described in Article V.E below.

## III. GENERAL BACKGROUND

## A. The Debtor and the Property.

The Debtor, 5410 30th Street DC LLC, is a Maryland limited liability company formed on February 14, 2023, and engaged in residential renovation and development. Zanetta Marie Williams is the Debtor's sole member and manager, and is a REALTOR® affiliated with Keller Williams Capital Properties. The Debtor's sole asset of any material value is the Property, located at 5631 MacArthur Boulevard NW, Washington, D.C. 20016 (Hickory Creek, Lot 15, Section 3; Square/Suffix 1446/0043), which the Debtor acquired and has been renovating with the intention of a subsequent sale. Per the Debtor's October 11, 2025 appraisal, the Property is improved by a newly constructed (2025) single-family residence in the Colonial style, containing thirteen (13) total rooms, comprising five (6) bedrooms and five (6) full and one (1) half bathrooms, with approximately 6,902 square feet of gross living area, situated on a lot of approximately 6,534 square feet.

**B. Events Leading to the Chapter 11 Filing.**

According to the Debtor, the filing of this Chapter 11 case was precipitated by the collapse of the servicing arrangements of the Debtor's original construction lender, Fund That Flip DBA Upright, , which was tied to the 2024 failure and bankruptcy of its banking-as-a-service partner, Synapse Financial Technologies. That failure disrupted the Debtor's ability to facilitate continuity of construction and service and refinance its acquisition and construction financing on ordinary terms, and contributed materially to the circumstances leading to this filing.

**C. Procedural History.**

The following is a summary of material events in the Chapter 11 case to date:

| Date | Event |
|---|---|
| 10/14/2025 | Petition Date. Voluntary Chapter 11 petition filed (DE #1). |
| 10/29/2025 | Debtor's schedules filed (DE #15), listing the IBI Falcon debt as disputed on Schedule D. |
| 11/17/2025 | Section 341 meeting of creditors; Debtor discloses that Ms. Williams, a licensed real estate agent, is actively marketing the Property. |
| 12/03/2025 | Debtor files Motion to Enforce the Automatic Stay and for Sanctions (DE #60), alleging IBI Falcon recorded post-petition foreclosure instruments (an Affidavit of Non-Residential Mortgage Foreclosure recorded 11/13/2025 and a Deed of Appointment of Substitute Trustee recorded 11/19/2025) with actual and imputed notice of the bankruptcy. |
| 12/17/2025 | IBI Falcon opposes the stay-violation motion (DE #68). |
| 01/29/2026 | IBI Falcon files Motion to Convert Case to Chapter 7 (DE #95) and Proof of Claim No. 2-1 ($2,676,531.91, asserted secured, 24% interest rate). |
| 02/07/2026 | Debtor opposes the Motion to Convert. |
| 02/26/2026 | Debtor objects to IBI Falcon's original Proof of Claim (DE #116). |
| 03/05/2026 | Debtor files its original Amended Disclosure Statement and Plan of Liquidation (DE #120, #121). |
| 03/17/2026 | IBI Falcon objects to the Debtor's Amended Disclosure Statement and Plan (DE #122). |
| 03/28/2026 | IBI Falcon files Amended Proof of Claim No. 2-2 and a response to the Debtor's claim objection (DE #126), attaching two allonges to the promissory note for the first time. |

| Date | Event |
|---|---|
| 04/14/2026 | IBI Falcon files its competing Substitute Plan (DE #129) and Substitute Disclosure Statement (DE #130). |
| 04/15/2026 | Debtor files its Objection to Amended Proof of Claim No. 2 (DE #132), the Motion for Determination That IBI Falcon Is Not a Party in Interest (DE #133), a Motion to Strike, and a Motion for Leave to Conduct Rule 2004 Examination and Discovery. The Bankruptcy Court has authorized discovery, including a deposition of Michael Palumbo. |
| 04/29/2026 | IBI Falcon files its Amended Opposition to the Party in Interest Motion (DE #151). |
| 06/25/2026 | District of Columbia Office of Tax and Revenue issues a tax sale notice for unpaid real property taxes of $41,643.15, due July 14, 2026 (Notice No. L0016664823). |
| 06/29/2026 | IBI Falcon files a Motion for Relief from the Automatic Stay (DE #195). |
| 07/10/2026 | Debtor files its Opposition to the Motion for Relief from the Automatic Stay. |
| 07/16/2026 | Debtor files its Objection to Approval of IBI Falcon's Substitute Disclosure Statement and Plan. This Disclosure Statement and the Plan are filed. |
| 08/05/2026 | Scheduled  Omnibus Hearing on: (1) the Party in Interest Motion; (2) the Motion to Convert; (3) the IBI Falcon Claim Objection; (4) approval of this Disclosure Statement and Plan; (5) approval of IBI Falcon's Substitute Disclosure Statement and Plan; and (6) the Stay Relief Motion. |

The IBI Falcon Claim Objection, the Party in Interest Motion, the Motion to Convert, and the Stay Relief Motion all remain pending and are scheduled to be heard at the Omnibus Hearing, together with approval of this Disclosure Statement and IBI Falcon's competing Substitute Disclosure Statement.

**D. Prior Real Estate Activity.**

IBI Falcon's Objection to the Debtor's prior Disclosure Statement (DE #122) noted that public land records reflect that the Debtor's principal previously acquired a separate real estate asset for approximately $855,000.00 in 2022 and sold that asset for approximately $1.16 million in 2023, and asserted that the address of that prior asset was not listed as a previous business location on the Debtor's Statement of Financial Affairs. That prior transaction is in no way relevant to this Chapter 11 proceeding as it involved a different business entity (LLC), a different property, was

unrelated to the chain of title of the Debtor's Property, and the Debtor asserts there has been no diversion of proceeds from that transaction to or from the Debtor

**E. The August 5, 2026 Omnibus Hearing and Interaction of Pending Matters.**

The Bankruptcy Court has scheduled six matters for hearing together on August 5, 2026. Because several contested matters are scheduled for the same hearing, the following summarizes how each possible outcome affects the implementation of the Plan.

(1) Party in Interest Motion. If granted, IBI Falcon is not a creditor or party in interest, its Claim is disallowed, its Motion to Convert and Stay Relief Motion are subject to dismissal for lack of standing, and any amount held in the IBI Falcon Disputed Claim Escrow under Section 4.2 of the Plan reverts to the Estate. If denied, the IBI Falcon Claim Objection proceeds on the merits, with the Class 2 escrow mechanism preserving all parties' positions pending resolution.

(2) Motion to Convert. The Debtor opposes conversion. As set forth in Article VI below, liquidation under this confirmable, actively-marketed Plan is expected to yield materially better recoveries to creditors than a Chapter 7 liquidation, which would impose a statutory trustee's commission under 11 U.S.C. § 326(a) and require new professionals unfamiliar with the Property and its marketing history.

(3) IBI Falcon Claim Objection. Remains pending; the Plan's escrow mechanism (Section 4.2) ensures that confirmation need not await final resolution of the disputed claim.

(4) Approval of this Disclosure Statement and Plan. The Debtor submits this Disclosure Statement contains "adequate information" under 11 U.S.C. § 1125(a) and that the Plan is confirmable, for the reasons set forth throughout this Disclosure Statement.

(5) Approval of IBI Falcon's Substitute Disclosure Statement and Plan. The Debtor submits, for the reasons set forth in Article III.B and Article IV.E, that IBI Falcon's Substitute Disclosure Statement should not be approved and that its Substitute Plan is not confirmable.

(6) Stay Relief Motion. The Debtor's Opposition demonstrates substantial equity above valid liens once IBI Falcon's disputed claim is excluded, and that a reorganization (in the sense of an orderly, court-supervised liquidating sale) remains in prospect through this Plan, defeating relief under both 11 U.S.C. § 362(d)(1) and (d)(2).

## IV. THE PROPERTY, VALUATION, AND MARKETING EFFORTS

**A. Appraisal.**

The Debtor obtained a Uniform Residential Appraisal Report (Fannie Mae Form 1004/UAD) with an effective date of October 11, 2025, prepared by Emmanuel Nimako of Shabach Realty Services, Inc. (D.C. License/Certification No. CR2002017). The appraisal concluded a value of $5,050,000 under the sales comparison approach, corroborated by a cost approach indication of $5,075,350

and an income approach indication of $5,040,000. The appraisal's Market Conditions Addendum, however, reports a trailing twelve-month median comparable sale price of $3,641,750, a declining sale-price trend of approximately negative 7.2% per month for directly comparable luxury properties, and approximately a thirty-six-month supply of competing inventory in that narrow comparable set. The appraisal's Intended User clause identifies F2 Finance LLC as the sole intended user; the Debtor offers the appraisal here solely as evidence of value, not as a representation regarding any other intended use.

## B. IBI Falcon's Own Valuation.

IBI Falcon's Proof of Claim No. 2-1, filed January 29, 2026, states a value of the Property of $3,655,000.00 on the face of the proof of claim form itself, consistent with the appraisal's own twelve-month median comparable sale price, and materially below the appraisal's $5,050,000 sales-comparison conclusion. The Debtor notes that IBI Falcon's Proof of Claim is internally inconsistent: it lists $3,655,000.00 as the value of the collateral securing the claim and $0.00 as any unsecured portion, yet asserts a total claim of only $2,676,531.91 — figures that do not reconcile and that the Debtor submits further undermine the reliability of IBI Falcon's valuation and claim generally. Separately, IBI Falcon's Substitute Plan proposes a $400,000.00 minimum auction bid with no independent appraisal or broker price opinion to support it. Absent any independent appraisal or broker price opinion, the proposed $400K minimum bid provides no objective basis to conclude that the auction would maximize value for the Estate or protect creditor recoveries.

## C. Marketing History.

The Property has been actively marketed for sale since August 29, 2025 (DOM 43 as of the appraisal date, per Bright MLS listing #DCDC2215732), including: listing on the Multiple Listing Service; multiple strategic price adjustments in response to market feedback (from an initial post-appraisal listing price of $4,645,000 to $4,445,000 on October 16, 2025, to $4,295,000 approximately nine days later, to $3,999,900 in November 2025, and currently $3,999,901); broker and public open houses; social media and digital marketing campaigns; professional photography and videography; luxury signage; direct outreach to brokers specializing in the luxury residential market; and disclosure of the appraisal to qualified prospective purchasers.

According to Bright MLS's June 2026 Housing Market Report (issued July 10, 2026), the Washington, D.C. metro area recorded 5,274 closed sales in June 2026 (up 4.4% year-over-year), 5,452 new listings (up 3.7% year-over-year), 11,168 active listings at month-end (up 9.0% year-over-year), and a median sold price of $675,000 (up 3.8% year-over-year and near the region's record high). Regional inventory and transaction volume for the Mid-Atlantic market as a whole are likewise at multi-year highs, with the median days on market holding at 11 days region-wide in June 2026. While these region-wide figures are not specific to the Property's luxury single-

family segment — where the appraisal's Market Conditions Addendum reports localized softness — the Debtor believes the overall strength and liquidity of the broader D.C. metro market support the feasibility of completing a sale within the marketing timeline set by the Plan.

**D. Continued Marketing and Sale Process Under the Plan.**

The Plan provides for continued marketing of the Property by the Broker, subject to a Bankruptcy Court-approved retention, with formal 120-day reviews of pricing and marketing strategy reported to the Bankruptcy Court, and an outside date of twelve (12) months after the Effective Date by which the Property must be sold, subject to extension by the Bankruptcy Court for cause, failing which the Debtor must either pursue a Bankruptcy Court-supervised sale under 11 U.S.C. § 363 or consent to conversion of the case to Chapter 7. This structure preserves the flexibility the Debtor believes is necessary to achieve the best price for the Property, while providing the defined outer time limit that IBI Falcon's objections to the prior plan identified as missing.

**E. Comparison to IBI Falcon's Substitute Plan.**

The following table summarizes material differences between this Plan and IBI Falcon's competing Substitute Plan, which the Debtor submits are directly relevant to the Bankruptcy Court's consideration under 11 U.S.C. § 1129(c) if both plans are otherwise found confirmable, and independently demonstrate that IBI Falcon's Substitute Plan cannot satisfy 11 U.S.C. § 1129(a) and (b).

| Feature | Debtor's Plan | IBI Falcon's Substitute Plan |
|---|---|---|
| Sale process | Continued broker-led marketing at fair market value, with 120-day court-reported reviews and a 12-month outside date before any forced § 363 sale | Courthouse-steps auction approximately 21 days after confirmation, controlled by IBI Falcon's counsel |
| Valuation support | Independent third-party appraisal ($5,050,000 sales-comparison value) plus 10 months of active marketing data | No independent appraisal or broker opinion offered |
| Minimum/opening bid | N/A — market-based private sale | $400,000.00 (approximately 8% of appraised value) |
| Bidder deposit | N/A | $150,000.00 required of all bidders except IBI Falcon, which is exempt |
| Treatment of estate causes of action | Retained and prosecuted for the benefit of the Estate (Section 5.5 of the Plan) | Swept to the "Successful Bidder" (potentially IBI Falcon via credit bid) |

| Feature | Debtor's Plan | IBI Falcon's Substitute Plan |
|---|---|---|
| Exculpation/release | Section 9.4 of the Plan | Broad exculpation and injunction for IBI Falcon and professionals, carved out only for fraud, gross negligence, and intentional misconduct |
| Priority claims | Classified consistent with 11 U.S.C. § 507; no claims paid as priority absent qualification | Proposes paying T&AA Construction and BHI Construction as priority wage claims while conceding they likely do not qualify under § 507(a)(4) |
| Standing of proponent | Not disputed | Subject to the pending Party in Interest Motion challenging IBI Falcon's status as a creditor or note holder |

## V. SUMMARY OF THE PLAN

The following is a summary of the classification and treatment of Claims and Interests under the Plan. This summary is qualified in its entirety by reference to the Plan itself, which controls in the event of any inconsistency.

| Class | Description | Impairment | Summary of Treatment |
|---|---|---|---|
| 1 | Priority Tax Claims | Unimpaired if paid in full on the Effective Date | Paid in full in Cash at Closing, or in installments over not more than 5 years from the Petition Date if not paid at Closing. |
| 2 | IBI Falcon Secured Claim | Impaired | Disputed portion escrowed pending resolution of the Party in Interest Motion and IBI Falcon Claim Objection; Allowed Secured portion paid in full or retains lien with deferred payments; disallowed/reclassified portion becomes a Class 4 Claim; no recovery if IBI Falcon is determined not to be a party in interest. |

| Class | Description | Impairment | Summary of Treatment |
|---|---|---|---|
| 3 | Santorini Secured Claim | Unimpaired | Paid in full in Cash at Closing to the extent Allowed; lien rides through pending a bar-date motion. |
| 4 | General Unsecured Claims | Impaired | Pro rata share of the Unsecured Distribution Fund (greater of $100,000 or full payment if Net Sale Proceeds allow). |
| 5 | Equity Interests (Zanetta Williams) | Impaired | Retains membership interest; receives Cash or property only if Class 4 accepts the Plan, or if Classes 1-4 and Allowed Administrative Claims are paid in full and a Surplus remains. |

## A. The IBI Falcon Claim Objection and Its Effect on the Plan.

The Debtor has objected to IBI Falcon's Amended Proof of Claim No. 2 on multiple independent grounds, including: (i) the allonges purporting to endorse the underlying promissory note bear only undated "effective dates" rather than execution dates and were first produced only after the Debtor's original claim objection; (ii) the assignments of the deed of trust are defective for lack of a timely recorded power of attorney under D.C. Code § 21-2603.03; (iii) IBI Falcon cannot establish holder-in-due-course status because the note was allegedly overdue when transferred; (iv) approximately $88,880.00 in extension and forbearance fees are unsupported or were assessed by an entity that had already transferred the note; (v) the default-interest calculation (24% versus the note's original 12.49% rate) is unsupported; and (vi) the payoff statement directs payment to a different, though related, entity ("IBI Falcon High Yield, LP"). These issues are also the subject of the Party in Interest Motion, under which the Debtor seeks a determination that IBI Falcon's chain of title is void, such that it is not a creditor or party in interest at all. The outcome of the IBI Falcon Claim Objection and the Party in Interest Motion is not known as of the date of this Disclosure Statement and is a material risk factor described in Article VIII below.

## B. The Unsecured Distribution Fund.

Holders of Allowed Class 4 Claims will share Pro Rata in the Unsecured Distribution Fund, which is the greater of a $100,000 minimum distribution or the full amount of Net Sale Proceeds remaining after Classes 1 through 3 and Allowed Administrative Claims are paid in full, up to payment of Class 4 in full. This means Class 4's actual recovery will depend on the final sale price of the Property and the outcome of the IBI Falcon Claim Objection and Party in Interest Motion, and could range from a Pro Rata share of $100,000 to payment in full.

According to the Debtor's Schedule E/F (DE #16, §§ 3.5–3.6), the Debtor has scheduled approximately $593,000in additional general unsecured claims that are marked as disputed, contingent, or unliquidated, or an unknown dollar amount and for which no valid proof of claim appears to have been filed as of the date of this Disclosure Statement. Pursuant to Bankruptcy Rule 3003(b)(1), such scheduled Claims are deemed Allowed Class 4 Claims for voting and distribution purposes unless and until superseded by a timely filed proof of claim or successfully objected to by the Reorganized Debtor subject to any objection filed by the Reorganized Debtor or Order of the Court.

**C. Treatment of Equity Interests and Compliance with the Absolute Priority Rule.**

The Debtor's prior plan, filed March 5, 2026, provided that Ms. Williams would retain 100% of the equity in the Debtor and receive any surplus sale proceeds, while Class 4 received only "a pro rata distribution, if any." The Debtor understands this structure to be the most likely basis for IBI Falcon's objection that the prior plan was "facially unconfirmable," because 11 U.S.C. § 1129(b)(2)(B)(ii) generally prohibits a junior interest holder from receiving or retaining any property on account of a prior interest where a senior impaired class of unsecured claims is not paid in full and does not accept the plan, and this restriction cannot be avoided without a market-tested new value contribution.

The Plan addresses this issue directly: Ms. Williams may retain her Interest and any Surplus only if either (i) Class 4 votes to accept the Plan, in which case the Plan may be confirmed consensually without regard to the absolute priority rule as among accepting classes, or (ii) Classes 1 through 4 and all Allowed Administrative Claims are paid in full before any Surplus is distributed to her. If Class 4 does not accept the Plan and is not paid in full, Ms. Williams will not receive or retain any property on account of her Interest. Because this structure requires no new-value contribution by Ms. Williams and does not permit her to retain value ahead of a dissenting senior class, the Debtor believes it satisfies 11 U.S.C. § 1129(b)(2)(B)(ii) regardless of whether Class 4 accepts the Plan.

**D. The Santorini Claim and the Effect of No Proof of Claim Being Filed.**

Santorini Capital, LLC ("Santorini") is scheduled by the Debtor as a secured creditor holding a junior lien on the Property in an asserted amount of approximately $975,000.00, but has not filed a proof of claim in this case. The absence of a filed proof of claim does not, without more, extinguish Santorini's lien: it is a fundamental principle, reaffirmed by the Supreme Court in Dewsnup v. Timm, 502 U.S. 410 (1992), and codified at 11 U.S.C. § 506(d)(2), that a lien on property passes through bankruptcy unaffected unless the underlying claim is disallowed for a reason other than the mere failure to file a proof of claim, or the lien is otherwise avoided, modified, or satisfied through a claim objection, adversary proceeding, or plan provision affording the lienholder due process. The Plan therefore treats the Santorini Claim as Unimpaired and provides for payment in full to the extent Allowed, while directing the Reorganized Debtor to promptly seek an order fixing a bar date for Santorini to file a proof of claim and, if none is timely filed, to

seek to fix the Allowed amount of the Santorini Claim by motion on notice to Santorini, consistent with due process and Bankruptcy Rule 3003-1.

### E. The Competing Plan Standard Under 11 U.S.C. § 1129(c).

Because IBI Falcon has filed a competing plan, 11 U.S.C. § 1129(c) governs if both plans independently satisfy 11 U.S.C. § 1129(a) and, where applicable, § 1129(b): the Bankruptcy Court "may confirm only one plan," and in choosing between confirmable plans "shall consider the preferences of creditors and equity security holders." The Debtor submits, for the reasons set forth in Articles III.B and IV.E above, that IBI Falcon's Substitute Plan does not independently satisfy § 1129(a) — including the good faith, best-interests, and feasibility requirements — and therefore § 1129(c) is not reached as to that plan. Independently, and if the Bankruptcy Court finds both plans confirmable, the Debtor submits creditors' preferences favor this Plan because it: (i) is supported by an independent appraisal and ten months of active marketing data, rather than an unsupported $400,000.00 minimum bid; (ii) preserves estate causes of action, including claims against IBI Falcon itself, for the benefit of all creditors; (iii) avoids the conflicts of interest inherent in IBI Falcon simultaneously acting as proponent, secured creditor, and auction administrator; and (iv) is proposed by the party — the Debtor and its principal, an experienced and licensed real estate professional — with the strongest incentive and demonstrated ability to maximize sale proceeds for the benefit of all creditors.  The Debtor believes its Plan better maximizes value for creditors and complies with the confirmation requirements of Chapter 11.

### VI. LIQUIDATION ANALYSIS (BEST INTERESTS OF CREDITORS TEST)

11 U.S.C. § 1129(a)(7) requires that each holder of a Claim or Interest in an Impaired Class either accept the Plan or receive or retain property of a value, as of the Effective Date, not less than such holder would receive or retain if the Debtor were liquidated under Chapter 7. The following analysis compares recoveries under the Plan to a hypothetical Chapter 7 liquidation, under three illustrative valuation scenarios for the Property. These figures are illustrative only and are qualified by the risk factors described in Article VIII.

### A. Chapter 7 Trustee Compensation.

In a Chapter 7 case, a trustee's compensation is capped by 11 U.S.C. § 326(a) at 25% of the first $5,000 of moneys disbursed or turned over to parties in interest (excluding the debtor but including holders of secured claims), 10% of the next $45,000, 5% of the next $950,000, and 3% of amounts disbursed in excess of $1,000,000. Applying this formula to illustrative gross sale proceeds yields the following maximum statutory trustee compensation:

| Illustrative Gross Sale Proceeds | Maximum Ch. 7 Trustee Commission (11 U.S.C. § 326(a)) |
|---|---|
| $3,655,000 (IBI Falcon's own Proof of Claim value) | $132,900 |
| $3,999,901 (current listing price) | $143,247 |
| $5,050,000 (appraisal headline value) | $174,750 |

This trustee commission is a cost unique to Chapter 7 and would not be incurred under the Plan, under which the Debtor, not a Chapter 7 trustee, sells the Property. A Chapter 7 trustee would also likely need to retain new real estate and legal professionals unfamiliar with the Property and its marketing history, resulting in additional delay, expense, and loss of marketing momentum, further reducing net recoveries to creditors in a Chapter 7 scenario as compared to the Plan.

**B. Comparative Recovery Analysis.**

| Class | Estimated Chapter 7 Recovery | Recovery Under the Plan | Comparison |
|---|---|---|---|
| 1 – Priority Tax | Paid in full (§ 507(a)(8) priority in both cases) | Paid in full | No worse off |
| 2 – IBI Falcon | Paid to extent of Allowed Secured Claim under § 506(a) in both cases; disputed status litigated in either forum | Same result, without added cost/delay of a new trustee and professionals | No worse off |
| 3 – Santorini | Paid in full to extent Allowed | Paid in full to extent Allowed | No worse off |
| 4 – General Unsecured | Pro rata share of proceeds remaining after secured, priority, and administrative claims, reduced by the Ch. 7 trustee's statutory commission and likely additional Ch. 7 professional fees | Pro rata share of the Unsecured Distribution Fund (minimum $100,000, up to payment in full), without a trustee's commission | Expected to be better off |
| 5 – Equity | Would receive nothing unless all senior classes paid in full, after trustee commission and fees | May retain Interest and receive a Surplus only after Classes 1-4 and Administrative Claims are | No worse off; potentially better off |

| Class | Estimated Chapter 7 Recovery | Recovery Under the Plan | Comparison |
|---|---|---|---|
| | | paid in full (or if Class 4 accepts) | |

Based on the foregoing, the Debtor believes that each Impaired Class will receive or retain property of a value not less than such Class would receive in a hypothetical Chapter 7 liquidation, satisfying 11 U.S.C. § 1129(a)(7).

## VII. PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

## FEASIBILITY

11 U.S.C. § 1129(a)(11) requires that confirmation of the Plan not be likely to be followed by liquidation or the need for further financial reorganization, unless the Plan itself proposes liquidation. Because the Plan is a plan of liquidation of the Debtor's sole asset, feasibility here depends on whether the Property can be sold within the timeframe and mechanisms described in the Plan for an amount sufficient to fund the payments the Plan requires.

The Debtor has an active and, based on the marketing history described in Article IV.C, substantial marketing effort underway, conducted by Ms. Williams — a REALTOR® with approximately six years of brokerage experience who has closed approximately 25 transactions over the preceding five years with an aggregate value of approximately $15.7 million, including sales up to $1.7 million — supported by Keller Williams Capital Properties. The Debtor believes the Property can be sold within the twelve-month outside date set by the Plan, particularly given the built-in toggle to a Bankruptcy Court-supervised sale process if a private sale has not closed by that date, and given the strength of the broader D.C. metro housing market reflected in Bright MLS's June 2026 data (record and near-record median sold prices, rising transaction volume, and growing

inventory), as described in Article IV.C. . As of the date of this Disclosure Statement, the property continues to be actively marketed.

The Debtor notes that administrative solvency depends on the timing and amount of Net Sale Proceeds. As of the date of this Disclosure Statement, the known Administrative Claims include a supplemental Professional Fee Claim of Debtor's counsel, Deirdre T. Johnson, Esq., totaling not less than $70,116.60, which remains subject to a fee application and final allowance by the Bankruptcy Court under 11 U.S.C. §§ 330 and 331. This amount, together with any other Allowed Administrative Claims, will be paid in full at Closing, ahead of Class 4 and Class 5, and reduces the Net Sale Proceeds otherwise available for Distribution to those Classes. The Debtor will supplement this Disclosure Statement with any additional Professional Fee Claims or other Administrative Claims that accrue before the Disclosure Statement hearing.

**Effect of Aug 5 2-26 Omnibus Hearing**

The Debtor recognizes that several contested matters scheduled for hearing on August 5, 2026, may materially affect implementation of the Plan. However the Plan has been structured to account for the possible outcomes of those matters , including through the escrow provisions applicable to the IBI Falcon Claim. Depending upon the Court's rulings, the amount available for distribution to creditors may increase or decrease, but the Debtor believes the Plan remains capable of implementation under each reasonably anticipated outcome.

## VIII. RISK FACTORS

Holders of Claims and Interests should carefully consider the following risk factors, among others, before voting on the Plan.

### A. Valuation Risk.

Estimates of the Property's value range from approximately $3,641,750 (the appraisal's own twelve-month market median for directly comparable properties) to $5,050,000 (the appraisal's sales comparison conclusion), a difference of over $1.4 million. The Property's current listing price, $3,999,901, and IBI Falcon's own stated valuation of $3,655,000 on its Proof of Claim, fall within that range. The appraisal itself reports a declining price trend and an oversupplied market within the narrow luxury comparable set. Actual recoveries to Class 4 and Class 5 depend heavily on which of these values (or some other value) is realized upon an actual sale.

### B. Claim Objection and Standing Risk.

The IBI Falcon Claim Objection and the Party in Interest Motion are pending and unresolved. If IBI Falcon's claim is substantially allowed as an approximately $3 million (and growing) secured claim, recoveries to Class 4 and Class 5 will be correspondingly reduced, potentially to zero. If the

Claim Objection or the Party in Interest Motion succeed in whole or in part, recoveries to Class 4 (which would then include any reclassified unsecured portion of the IBI Falcon Claim, diluting other Class 4 claimants) and potentially Class 5 would improve, but the timing and outcome of that litigation cannot be predicted, and discovery is ongoing.

### C. Tax Sale Risk.

The District of Columbia Office of Tax and Revenue noticed a tax sale based on $41,643.15 in unpaid real property taxes, with an original payment deadline of July 14, 2026, subsequently rescheduled to August 19, 2026. However the property is protected by the automatic stay imposed under 11 U.S.C. 362, which prohibits the District of Columbia from conducting a tax sale absent relief from the Bankruptcy Court.

### D. Market and Marketing Risk.

The appraisal's own Market Conditions Addendum reports a declining price trend and a substantial supply of competing inventory in the Property's specific luxury comparable set, even though the broader D.C. metro market reported by Bright MLS shows overall strength. There can be no assurance the Property will sell within the Plan's twelve-month outside date, or at a price sufficient to pay Class 4 in full or to produce a Surplus for Class 5.

### E. Conversion Risk.

If the Property is not sold by the outside date described in Section 5.1 of the Plan, and the Debtor does not timely pursue a Bankruptcy-Court-supervised sale process, the case may convert to Chapter 7, which the analysis in Article VI suggests would likely reduce net recoveries to unsecured creditors due to statutory trustee compensation and the loss of marketing continuity.

### F. No Discharge.

As described in Section 9.2 of the Plan, because this is a plan of liquidation under which the Debtor, a non-individual entity, does not intend to continue business after consummation, the Debtor will not receive a discharge upon confirmation, pursuant to 11 U.S.C. § 1141(d)(3). Holders of Claims not paid in full will retain their rights and remedies against the Debtor and the Reorganized Debtor after the Effective Date, subject to the limited injunction described in Section 9.3 of the Plan.

### G. Confirmation and Competing Plan Risk.

IBI Falcon has objected to the Debtor's prior plan and disclosure statement, has filed its own competing Substitute Plan and Disclosure Statement, and is expected to object to this Plan and Disclosure Statement as well. There can be no assurance that the Bankruptcy Court will approve this Disclosure Statement, confirm this Plan as proposed, or resolve the choice between competing plans under 11 U.S.C. § 1129(c) in the Debtor's favor, or that this Plan will not require further modification in response to objections raised at or before the Omnibus Hearing.

## IX. CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The federal, state, and local income tax consequences of the Plan to the Debtor, the Reorganized Debtor, and holders of Claims and Interests may be complex and will depend on each holder's particular circumstances. The Debtor has not obtained an opinion of counsel or a ruling from the Internal Revenue Service regarding the tax consequences of the Plan. Each holder of a Claim or Interest is strongly urged to consult its own tax advisor regarding the federal, state, local, and other tax consequences of the Plan applicable to that holder.

## X. PROFESSIONALS RETAINED AND TO BE RETAINED

Deirdre T. Johnson, Esq. is retained as counsel to the Debtor in this Chapter 11 case, subject to Bankruptcy Court approval of her retention application and periodic fee applications under 11 U.S.C. §§ 327, 330, and 331. As of the date of this Disclosure Statement, Ms. Johnson holds a supplemental Professional Fee Claim, for fees and costs incurred in this case beyond amounts previously awarded, totaling not less than $70,116.60. This amount is included as an Administrative Claim under Section 2.2 of the Plan and remains subject to a fee application and final review and allowance by the Bankruptcy Court before payment.

The Debtor intends to seek Bankruptcy Court approval, under 11 U.S.C. §§ 327(a) and 328(a) and Bankruptcy Rule 2014, of the retention of Zanetta Williams and Keller Williams Capital Properties as the real estate broker for the sale of the Property. Ms. Williams is a REALTOR® affiliated with Keller Williams Capital Properties, with approximately six years of active brokerage experience; over the preceding five years she has closed approximately 25 transactions with an aggregate value of approximately $15.7 million and an average sale price of approximately $626,800, including sales up to $1.7 million, in the District of Columbia and Maryland markets. Because Ms. Williams is an insider of the Debtor (its sole member and manager), the retention application will fully disclose her relationship to the Debtor, the proposed commission structure, and any other connections required to be disclosed under Bankruptcy Rule 2016-1. No such retention order has been entered as of the date of this Disclosure Statement.

## XI. SECURITIES LAW MATTERS

The Plan does not provide for the issuance of any new securities. All Distributions under the Plan are to be made in Cash. Accordingly, the Debtor does not believe the securities registration requirements of 11 U.S.C. § 1145 are implicated by the Plan.

## XII. RECOMMENDATION

For the reasons set forth in this Disclosure Statement, the Debtor believes that the Plan provides the best available recovery to holders of Claims against and Interests in the Debtor, is feasible, complies with the applicable requirements of 11 U.S.C. § 1129(a) and (b), and is in the best

interests of the Debtor's creditors and the Estate. The Debtor further believes that, to the extent the Bankruptcy Court reaches the comparative analysis required by 11 U.S.C. § 1129(c), this Plan should be preferred over IBI Falcon's competing Substitute Plan for the reasons set forth in Articles III.B, IV.E, and V.E above. The Debtor recommends that holders of Claims and Interests entitled to vote on the Plan vote to ACCEPT the Plan.

Dated: July 22nd, 2026

Respectfully submitted,

**5410 30TH STREET DC LLC,**

Debtor and Debtor in Possession

By counsel:

/s/ Deirdre T. Johnson, Esq.

Deirdre T. Date: February 10, 2026

Johnson, Esq.

Deirdre T. Johnson, Esq
Bar No. MD14227
9701 Apollo Dr, Suite 301
Upper Marlboro, MD 20774
Phone: (301) 742-5385
dtjesq@dtjohnsonlaw.com
Counsel for the Debtor

TABLE OF CONTENTS
I. INTRODUCTION ................................................................................................ 4
A. Introduction and Summary ............................................................................. 4
B. Disclaimer ...................................................................................................... 5
II. BACKGROUND INFORMATION ...................................................................... 6
A. The Debtor's Businesses and Description of the Property ............................... 6
B. The IBI Falcon Debt ...................................................................................... 6
C. The Santorini Capital Debt ............................................................................ 6
III. EVENTS LEADING TO BANKRUPTCY ........................................................ 6
IV. THE BANKRUPTCY CASE ............................................................................. 7
A. The Bankruptcy Filing ................................................................................... 7
B. Continuation of the Business .......................................................................... 7
C. Professionals Retained ................................................................................... 7

D. Management .......................................................................................................................... 8
E. Significant Events ............................................................................................................... 8
(1) Meeting of Creditors ........................................................................................................ 8
(2) Schedules and Statement of Financial Affairs ............................................................... 8
F. Claims Asserted against the Estate ................................................................................... 8
G. The Debtor's Assets and Liabilities ................................................................................. 8
V. IMPLEMENTATION OF THE PLAN ............................................................................... 9
A. Purpose of the Plan ............................................................................................................ 9
B. Overview .............................................................................................................................. 9
C. Operations .......................................................................................................................... 10
VI. TREATMENT OF CLAIMS UNDER THE PLAN .......................................................... 10
VII. CLASSIFICATION OF CLAIMS ...................................................................................... 10
VIII. TREATMENT OF CLAIMS............................................................................................. 11
IX. VOTING PROCEDURES AND REQUIREMENTS .......................................................... 12
A. Vote Required for Acceptance by a Class ....................................................................... 12
B. Classes Entitled to Vote ................................................................................................... 13
C. Classes Not Entitled to Vote ........................................................................................... 13
D. Voting Procedures ............................................................................................................. 13
X. OTHER PLAN COMPONENTS ......................................................................................... 14
A. Distribution Procedures .................................................................................................. 14
B. Treatment of Disputed Claims ....................................................................................... 15
C. Conditions of Effectiveness of Plan ............................................................................... 16
D. Effect of Confirmation ..................................................................................................... 17
E. Administrative Provisions ............................................................................................... 19
XI. RISKS AND CONSIDERATIONS ..................................................................................... 21
A. Risk Factors ....................................................................................................................... 21
B. Bankruptcy Considerations ............................................................................................ 21
XII. PLAN CONFIRMATION AND CONSUMMATION ....................................................... 22
A. Confirmation Hearing....................................................................................................... 22
B. Plan Confirmation Requirements under the Bankruptcy Code ................................. 22
C. Best Interests Test ............................................................................................................ 22
D. Section 1129(b)................................................................................................................... 23
XIII. ALTERNATIVE TO CONFIRMATION AND CONSUMMATION OF THE PLAN............................ 24
A. Chapter 7 Liquidation ...................................................................................................... 24
XIV. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ............................ 24

XV. RECOMMENDATION AND CONCLUSION ............................................................ 25

CERTIFICATE OF SERVICE .................................................................................................
26

**TERMS OF CONSTRUCTION**

Capitalized terms used and not otherwise defined in this Disclosure Statement shall have the meaning set forth in the Jointly Administered Plan of Liquidation Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Plan") of 5410 30th Street DC, LLC, a copy of which is attached as **Exhibit 1** hereto and is incorporated herein by reference. In the event a capitalized term is not defined therein, then it shall have the meaning given in the Bankruptcy Code or the Bankruptcy Rules. In the event a capitalized term is not defined in the Plan, the Bankruptcy Code, or the Bankruptcy Rules, then it shall have the meaning such term has in ordinary usage, and if one or more meaning for such term exists in ordinary usage, then it shall have the meaning which is most consistent with the purposes of this Disclosure Statement, the Plan and the Bankruptcy Code. The terms of this Disclosure Statement shall not be construed against any Person but shall be given a reasonable construction, consistent with the purposes hereof and of the Plan and the Bankruptcy Code.

**I. INTRODUCTION**

**A. Introduction and Summary**

On October 14, 2025, Debtor 5410 30th Street DC, LLC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court. The Debtor is in possession of its their assets, and intends to continue to operate and manage their affairs as a debtor in possession pursuant to § 1184 of the Bankruptcy Code.

The Bankruptcy Code requires that the party proposing a Chapter 11 plan prepare and file with the Bankruptcy Court a document called a "disclosure statement." **11 U.S.C. § 1125.** Under the Bankruptcy Code, the Debtor has the exclusive right to propose a plan of liquidation for the first 120 days after the Petition Date, which period may be extended by the Bankruptcy Court. Creditors will be asked to vote to approve the plan and confirmation of such plan will be subject to Bankruptcy Court approval. The Debtor prepared this Disclosure Statement in connection with solicitation of votes for acceptance of the Plan. This Disclosure Statement is intended to provide

adequate information of a kind, and in sufficient detail, to enable the Debtor's Creditors to make an informed judgment about the Plan, including whether to accept or reject the Plan. As described more fully herein, the Debtor asserts that the Plan is in the best interests of all Creditors and the Estate. The Debtor urges the Holders of Impaired Claims entitled to vote to accept the Plan and to evidence such acceptance by properly voting and timely returning their Ballot.

To the extent that the information provided in this Disclosure Statement and the Plan (including any attached exhibits and Plan Supplements) are in conflict, the terms of the Plan (including any attached exhibits and Plan Supplements) will control. Creditors should refer only to this Disclosure Statement and the Plan to determine whether to vote to accept or reject the Plan. The Debtor asserts that approval of the Plan is indisputably in the best interests of the Debtor's Creditors. Creditors may request additional copies of this Disclosure Statement and/or any voluminous exhibits that are referenced but not attached from the Debtor's counsel at the following address:

Deirdre T. Johnson, Esq
9701 Apollo Dr, Suite 301
Upper Marlboro, MD 20774
dtjesq@dtjohnsonlaw.com

Pursuant to the Bankruptcy Code, only Creditors who actually vote on the Plan will be counted for purposes of determining whether the required number of acceptances have been obtained. Failure to deliver a properly completed Ballot by the Voting Deadline will result in an abstention; consequently, the vote will neither be counted as an acceptance nor rejection of the Plan.

**B. Disclaimer**

NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, OTHER EXHIBITS, SUPPLEMENTS TO THE PLAN AND THIS DISCLOSURE STATEMENT. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME HEREAFTER. ALL CREDITORS SHOULD READ CAREFULLY AND CONSIDER FULLY THE "RISKS AND CONSIDERATION" SECTION OF THIS DISCLOSURE STATEMENT BEFORE VOTING FOR OR AGAINST THE PLAN. TO THE EXTENT OF ANY INCONSISTENCY BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLAN SHALL CONTROL.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS, OR ANY FUTURE ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT, LIABILITY, STIPULATION, ESTOPPEL, OR WAIVER. THIS DISCLOSURE STATEMENT SUMMARIZES CERTAIN PROVISIONS OF THE PLAN, STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE PLAN, EVENTS IN THE DEBTOR'S CHAPTER 11 CASES AND FINANCIAL INFORMATION. ALTHOUGH THE DEBTOR BELIEVES THAT THE PLAN AND RELATED SUMMARIES ARE FAIR AND ACCURATE, SUCH

SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS. FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTOR IN THEIR VARIOUS FILINGS IN THIS CHAPTER 11 CASE AND FROM OTHER PARTIES' FILINGS, EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED. ANY VALUE GIVEN AS TO ASSETS OF THE DEBTOR ARE BASED UPON AN ESTIMATION OF SUCH VALUE. ALTHOUGH THE DEBTOR HAS UNDERTAKEN REASONABLE AND DILIGENT EFFORTS TO PRESENT ACCURATE AND COMPLETE INFORMATION, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING THE FINANCIAL INFORMATION, IS COMPLETELY ACCURATE. THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS BEING PROVIDED BY THE DEBTOR AND NOT BY ITS COUNSEL, AND IS INCLUDED FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.

THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST THE DEBTOR. YOU ARE URGED TO CONSULT YOUR OWN COUNSEL AND FINANCIAL TAX ADVISORS ON ANY QUESTIONS OR CONCERNS RESPECTING TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS.

The Order approving this Disclosure Statement sets forth the deadlines, procedures and instructions for voting to accept or reject the Plan and for filing objections to confirmation of the Plan. For those who are entitled to vote, a Ballot is also enclosed. Voting instructions accompany each Ballot. Each Holder of a Claim entitled to vote on the Plan should read this Disclosure Statement and Plan, the Order approving this Disclosure Statement, and the instructions accompanying the Ballot in their entireties before voting on the Plan. CONSULTATION WITH COUNSEL IS ALSO RECOMMENDED.

## II. BACKGROUND INFORMATION

### A. The Debtor's Business and Description of the Property

5410 30th Street DC, LLC is a Maryland limited liability company formed on February 14, 2023, with its headquarters located in Bowie, Maryland. 5410 30th Street DC, LLC is engaged in the business of residential renovation and development. Zanetta Williams serves as the Sole 100% Member of 5410 30th Street DC, LLC.

5410 30th Street DC, LLC owns a sole business asset, the real property / residence located at 5631 Macarthur Blvd NW Washington, DC 20016.

### B. The IBI Falcon US LLC Debt

IBI Falcon US, LLC (hereinafter "IBI Falcon") is the Debtor's senior secured creditor. IBI Falcon has filed a Claim against the Debtor in the amount of $$2,676,531.91. This debt is listed as "Disputed: on the Debtor's Schedule D – Creditors Who Have Claims Secured by Property.

### C. The Santorini Capital, LLC Debt

Santorini Capital, LLC (hereinafter "Santorini Capital") is the Debtor's junior secured creditor. To date, Santorini Capital has not filed a Claim against the Debtor. However, Debtor listed Santorini Capital on Schedule D – Creditors Who Have Claims Secured by Property in the amount of $975,000.00.

### III. EVENTS LEADING TO BANKRUPTCY

The Debtor's bankruptcy filing was precipitated by lengthy debilitating disruptions in loan servicing and financing, including insufficient funding for renovation, the lender's repeated delays and failures in issuing required construction draws, and a significant gap in lender support during which the lender and its servicer were largely unreachable for approximately two to three months and loan servicing was effectively halted and consequently the debtor's projects were negatively impacted and forced into default. It was later discovered that Upright/Fund that Flip (the debtor's lender) had experienced a financial crisis where Upright/Fund that Flip had investor funds frozen due to the bankruptcy of their banking as a service partner, Synapse Financial Technologies. In addition, for approximately one year, the lender failed to act on the Debtor's repeated efforts to cure and reinstate the loan. These events collectively forced the Debtor to suspend construction activities, imposed substantial financial strain on the Debtor's business, creating a cascading financial negative impact that adversely affected cash flow and the Debtor's ability to timely complete, stabilize, and market the Property and forced another property into foreclosure. The Debtor further determined that, the delayed reinstated and completion of the property caused an entrance of the completed project into market conditions that were different that what was initially planned. The market changed significantly in a year's time. The real estate market is and has been strained since the property was listed for sale. The Debtor determined that seeking to reorganize or liquidate its affairs through the Bankruptcy process will allow it to maintain and ultimately increase the enterprise value to the benefit of the Debtor, Creditors, and any other parties-in-interest.

### IV. THE BANKRUPTCY CASE

#### A. The Bankruptcy Filing

On October 14, 2025, Debtor 5410 30th Street DC, LLC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court. Subsequently, the Bankruptcy Court notified the parties that the meeting of creditors would take place on November 17, 2025, that the last day to file Proofs of Claim for all Creditors, except governmental units, is February 17, 2026, and that the last day to file Proofs of Claim for governmental units is April 13, 2026.

The Debtor, with the assistance of counsel and financial advisors, have determined in their business judgment that a sale of the sole real property asset will maximize the benefit to the Debtor's estate, creditors, and other parties in interest.

#### B. Continuation of the Business

After the Petition Date, the Debtor has continued to operate the Businesses as a debtor in possession under the Bankruptcy Code. Pursuant to the Bankruptcy Code, the Debtor is required to comply with certain statutory reporting requirements, including the filing of monthly operating reports. Upon completion of the Plan (attached as Exhibit 1), and filing of all outstanding tax returns, the Debtor shall not continue to exist as a limited liability company, and shall terminate such existence under applicable law.

#### C. Professionals Retained

In connection with the commencement of the Chapter 11 Case, the Debtor sought and obtained Bankruptcy Court approval for the retention of Deirdre T. Johnson, Esq. as their bankruptcy counsel. Zanetta Williams, the sole member of the Debtor LLC is a licensed real estate agent with Keller Williams Realty, and will effectuate the sale of the sole real property asset.

### D.   Management

At the filing of the Debtor's petition, and prior thereto, Zanetta Williams served as the LLC's sole member.  Ms. Williams will remain in this position through the duration of the Bankruptcy Case.

### E.   Significant Events

#### 1.   Meeting of Creditors

The meeting of creditors pursuant to Section 341 of the Bankruptcy Code was conducted on November 17, 2025 by the Office of the United States Trustee. The Debtor answered all appropriate inquiries for which they possessed information at that time, and thereafter provided all information requested of them to the Office of the United States Trustee.

#### 2.   Schedules and Statement of Financial Affairs

The Debtor filed their Statements of Financial Affairs and Schedules on October 29, 2025.

### F.   Claims Asserted against the Estate

The Debtor has undertaken a review of the Proofs of Claim filed to prepare a preliminary reconciliation of the filed Proofs of Claim with the Debtor's Schedules and their books and records with a view to eliminate duplicative or erroneous Claims and to ensure only valid Claims are ultimately Allowed.

Three (3) Proofs of Claim have been filed against the Debtor. Based on a review of the Proofs of Claim, no (0) Proofs of Claims are asserted as Priority Tax Claims; one (1) Proof of Claim totaling $2,676,531.91 is asserted as a Secured Claim; and two (2) Proofs of Claim are asserted as Unsecured Claims aggregating $541,287.90.

Administrative Expense Claims, other than Professional expenses, have been paid by the Debtor in the ordinary course. As of February 10, 2026, not including Professional expenses, the Debtor recorded administrative expenses in the approximate amount of $1,500.00, although the Debtor expects additional billing for Professional fees to be forthcoming. The Debtor estimates that, as of the Effective Date of the Plan, the Debtor will have $0 in unpaid administrative expenses, not including Professional expenses.

### G.   The Debtor's Assets and Liabilities

#### 1.   Asset – Real Property

As stated above, the Debtor owns a sole business asset, the real property / residence located at 5631 Macarthur Blvd NW Washington, DC 20016.  The Debtor disputes the Claim filed by the senior secured creditor,  IBI Falcon US, LLC.

#### 2.   Liabilities

a.   **Administrative Expenses**.  The Debtor has incurred and continues to incur liabilities for Professional fees and expenses in connection with this Chapter 11 Case. The

Debtor estimates that, as of the Effective Date, they have been billed approximately $1,500.00 for fees and expenses of Professionals in this Chapter 11Case, although the Debtor expects additional billing for Professional accrued fees to be forthcoming.

b. **Secured Claims**

1. Secured Claim of IBI Falcon US, LLC. IBI Falcon US, LLC is the Debtor's senior secured creditor. IBI Falcon has filed a Claim against the Debtor in the amount of $XXX,XXX.XX. This debt is listed as "Disputed: on the Debtor's Schedule D – Creditors Who Have Claims Secured by Property.

2. Secured Claim of Santorini Capital, LLC. Santorini Capital, LLC is the Debtor's junior secured creditor. Santorini Capital has not yet filed a Claim against the Debtor.

c. **Priority Tax Claims**. The Debtor listed the District of Columbia Government Office of Tax and Revenue on Schedule E/F as a Creditor in the amount of $30,000.00 for real property taxes. Additional property tax assessments may be forthcoming. The District of Columbia Government Office of Tax and Revenue has not yet filed a Claim against the Debtor.

d. **Unsecured Claims**. As of the Petition Date, the Debtor recorded a total of approximately $593,000.00 in Unsecured Claims. The Debtor has performed a preliminary claims reconciliation of (a) the Claims listed in the Debtor's Schedules, (b) the Proofs of Claims filed, and (c) Disputed Claims. Based on this analysis, the total of Unsecured Claims is in the amount of $1,046,287.90.

**V.    IMPLEMENTATION OF THE PLAN**

**A. Purpose of the Plan**.

The purpose of the Plan is to provide a means for the Debtor to complete the sale of the sole business asset, provide a meaningful Distribution to all Allowed Claims, and thereafter conduct an orderly winding down of the business.

**B. Overview**

Upon confirmation of the Plan, the Debtor will implement the terms of the Plan, including selling the sole business asset and making Distributions to Holders of Allowed Claims as set forth in the Plan. The Plan provides that all Allowed Claims will be paid in order of their priority, and any sale of the Debtor's Real Property will be free and clear of all liens, claims and encumbrances pursuant to the Confirmation Order.

The Plan provides for payments to Holders of Allowed Claims. Payments made under the Plan on or after the Effective Date will be derived from the proceeds of the Sale of the Debtor's Real Property Asset. All Claims against the Debtor shall be classified and treated pursuant to the terms of the Plan. As noted more fully below, the Plan contains four (4) Classes of Claims.

Overall, the Plan provides that Holders of Allowed Administrative Expense Claims and Holders of Allowed Priority Tax Claims will be paid in full on the latest of (a) the Effective Date, (b) the tenth (10th) Business Day after the date upon which such Claim becomes an Allowed Claim, (c) the date upon which such Allowed Claim becomes due according to its terms, or (d) as otherwise ordered by a Final Order of the Bankruptcy Court.

~~C. Operations~~

~~Subject to the provisions of the Plan, the Debtor shall be authorized to operate the business only to the extent required to sell the sole business asset free of any restrictions contained in the Bankruptcy Code or Bankruptcy Rules, and to wind down the business operations thereafter.~~

## ~~VI. TREATMENT OF CLAIMS UNDER THE PLAN~~

~~As required by the Bankruptcy Code, this Plan places Claims into various Classes according to their right to priority. However, in accordance with the provisions of § 1123(a)(1)~~ ... ~~ms, and Priority Tax Claims are not considered impaired pursuant to §1129(a)(9)(A)~~ ... ~~this Plan because they are automatically entitled to specific~~ ... ~~treatment provided for them in the Bankruptcy Code. As such, the Debtor has not placed these Claims in a Class. The treatment of these unclassified Claims is as provided below.~~

| CLASS | DESIGNATION | IMPAIRMENT | ENTITLED TO VOTE |
|---|---|---|---|
| 1 | Allowed Secured Claim of JPL Falcon | YES | YES |
| 2 | Allowed Secured Claim of Santorini Capital | YES | YES |
| 3 | Allowed Priority Unsecured Claims | YES | YES |
| 4 | Allowed General Unsecured Claims | YES | YES |

~~**6.1 Allowed Administrative Claims**. Each Holder of an Allowed Administrative Claim, subject to the General Administrative Claims Bar Date, shall be Paid in Cash in accordance with the priority of distribution set forth in § 507(a)(2) of the Bankruptcy Code, on the tenth (10th) Business Day after the sale of the Debtor's sole residential real property asset closes, or as otherwise ordered by a Final Order of the Bankruptcy Court. Any Holder of an Allowed Administrative Claim may agree to a different, but not better, treatment of its Claim, in which event the Debtor shall pay such Claim in accordance with such agreement. In the case of a Professional with an Allowed Administrative Claim, that Professional shall be paid first from any retainer held by such Professional, and as to a balance, if any, after application of the retainer, shall be paid from Cash.~~

~~**6.2 Allowed Priority Claims**. Each Holder of an Allowed Priority Claim shall be Paid in Cash in accordance with the priority of distribution set forth in § 507(a)(2), (a)(3), or (a)(8) of the Bankruptcy Code, on the tenth (10th) Business Day after the sale of the Debtor's sole residential real property asset closes, or as otherwise ordered by a Final Order of the Bankruptcy Court. Any Holder of an Allowed Priority Claim may agree to a different, but not better, treatment of its Claim, in which event the Debtor shall pay such Claim in accordance with such agreement.~~

~~**6.3 Priority Tax Claims**. Each Holder of an Allowed Priority Tax Claim shall receive under this Plan on account of such Claim, payments in Cash in accordance with §507(a)(8) as specified in § 1129(a)(9)(C) of the Bankruptcy Code commencing on the tenth (10th) Business Day after the sale of the Debtor's sole residential real property asset closes, or as soon as reasonably practicable after the date of a Final Order Allowing such Priority Tax Claim. Any Holder of an Allowed Priority Tax Claim may agree to a different, but not better, treatment of its Claim, in which event the Debtor shall pay such Claim in accordance with such agreement.~~

~~6.3.1 District of Columbia Government Office of Tax and Revenue. Claims made by the District of Columbia Government Office of Tax and Revenue, explicitly designated and, if Allowed as a "Priority" Claim, shall receive the "Priority Tax Claim" treatment as specified in this section. The District of Columbia Government Office of Tax and Revenue has not filed a Claim, however, the Debtor has listed them om Schedule E/F for real estate taxes in the amount of $30,000.00.~~

## ~~VII. CLASSIFICATION OF CLAIMS~~

~~**7.1. General Overview**. As required by §§ 1122 and 1123, this Plan places Claims into various Classes according to their right to priority and other relative rights. A Claim is in a particular Class for purposes of voting on, and of receiving Distributions pursuant to the Plan only~~

to the extent such Claim has not been paid, released, or otherwise settled prior to the Effective Date. Administrative Expense Claims and Priority Claims of the kinds specified in § 507(a)(2) and (a)(8) have not been classified and are excluded from the following classes in accordance with § 1123(a)(l).

7.2. **Designation of Classes**. This Plan provides for the establishment of the following Classes of Claims:

| CLASS | DESIGNATION | IMPAIRMENT | ENTITLED TO VOTE |
|-------|-------------|------------|------------------|
| 1 | Allowed Secured Claim of IBI Falcon | YES | YES |
| 2 | Allowed Secured Claim of Santorini Capital | YES | YES |
| 3 | Allowed Priority Unsecured Claims | YES | YES |
| 4 | Allowed General Unsecured Claims | YES | YES |

| CLASS | DESIGNATION | IMPAIRMENT | ENTITLED TO VOTE |
|-------|-------------|------------|------------------|
| 1 | Allowed Secured Claim of IBI Falcon | YES | YES |
| 2 | Allowed Secured Claim of Santorini Capital | YES | YES |
| 3 | Allowed Priority Unsecured Claims | YES | YES |
| 4 | Allowed General Unsecured Claims | YES | YES |
| 5 | Equity Interests | YES | YES |

7.3. **Classes Impaired and Entitled to Vote.** All Classes of Claims are Impaired and thus are entitled to vote on the Plan.

**VIII. TREATMENT OF CLAIMS**

Allowed Claims shall be treated under this Plan in the manner set forth in this Article 8. The treatment of, and the consideration to be received by, Holders of Allowed Claims hereunder shall be in full and final satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims (of any nature whatsoever), including any Liens securing such Allowed Claims. All Allowed Claims will be paid in order of their priority, and any sale of the Debtor's Real Property will be free and clear of all liens, claims and encumbrances pursuant to the Confirmation Order.

8.1. **Class 1: Allowed Secured Claim of IBI Falcon**

A. Treatment: To the extent that the Claim of IBI Falcon is an Allowed Claim, the Holder of the IBI Falcon Secured Claim shall receive payment in full of the undisputed portion of its Allowed Secured Claim, including principal, interest, Allowed attorneys' fees incurred prior to the Petition Date and during the Bankruptcy Case in enforcing its rights under the Loan Documents, and any other allowed charges required by the Loan Documents, through the date on which the undisputed portion of the Allowed Claim is Paid in Full, on the later to occur of (i) as soon as practicable on or after the Closing Date, or (ii) the Effective Date. Any disputed amounts claimed by IBI Falcon shall be paid into escrow at Closing and released only upon agreement of the Debtor and IBI Falcon or upon Final Order of the Court. The Debtor anticipates paying IBI Falcon on its Allowed Secured Claim at Closing.

B. Lien Retention: The Holder of the IBI Falcon Secured Claim shall release any lien on the Real Property Asset, with any such lien attaching to the proceeds of any sale. The Confirmation Order and any Sale Order shall provide that IBI Falcon is paid at Closing and that

~~purchasers of Debtor's Property are purchasing the Property free and clear of any liens, claims and encumbrances.~~

~~C. Impairment: Class 1 is Impaired by this Plan and, therefore, the Holder of the Claim in Class 1 is entitled to vote to accept or reject the Plan, subject to Section 9.C, below.~~

~~**8.2. Class 2: Allowed Secured Claim of Santorini Capital LLC**~~

~~A. Treatment: To the extent that the Claim of Santorini Capital is an Allowed Claim not previously paid, the Holder of the Santorini Capital Secured Claim shall receive payment in full of its Allowed Secured Claim, including principal, interest, Allowed attorneys' fees incurred prior to the Petition Date and during the Bankruptcy Case in enforcing its rights under the Loan Documents, and any other allowed charges required by the Loan Documents, through the date on which the Allowed Claim is Paid in Full, on the later to occur of (i) as soon as practicable on or after the Closing Date, or (ii) the Effective Date. The Debtor anticipates paying Santorini Capital on its Allowed Secured Claim at Closing.~~

~~B. Lien Retention: The Holder of the Santorini Capital Secured Claim shall release any lien on the Real Property Asset, with any such lien attaching to the proceeds of any sale. The Confirmation Order and any Sale Order shall provide that Santorini Capital is paid at Closing and that purchasers of Debtor's Property are purchasing the Property free and clear of any liens, claims and encumbrances.~~

~~C. Impairment: Class 2 is Impaired by this Plan and, therefore, the Holder of the Claim in Class 1 is entitled to vote to accept or reject the Plan.~~

~~**8.3. Class 3: Allowed Priority Unsecured Claims**~~

~~A. Treatment: After Class 1 and 2 Claims have been paid in full, Holders of Allowed Priority Unsecured Claims shall receive payments on their Allowed Priority Unsecured Claims in order of their priority. The Confirmation Order and any Sale Order(s) shall provide that purchasers are purchasing the Debtor's Property free and clear of any liens, claims and encumbrances.~~

~~B. Impairment: Class 3 is Impaired by this Plan and, therefore, each Holder of a Claim in Class 3 is entitled to vote to accept or reject the Plan.~~

~~**8.3. Class 4: Allowed General Unsecured Claims**~~

~~A. Treatment: **After payment in full of all Allowed Administrative Expenses (including, without limitation, professional fees, sale-related costs, commissions, and closing expenses), Allowed Priority Claims, and Allowed Secured Claims in accordance with this Plan, the Holder of each Allowed General Unsecured Claim shall receive a pro rata distribution, if any, from Net Sale Proceeds and/or other available estate funds remaining after such payments.**~~

~~**No distribution shall be made on account of any General Unsecured Claim that is disputed, contingent, unliquidated, or unsupported by sufficient documentation unless and until such claim becomes an Allowed Claim by agreement or Final Order of the Court.**~~

~~**Any General Unsecured Claim for which a timely Proof of Claim is not filed in accordance with applicable Bankruptcy Rules and orders of the Court shall be deemed disallowed and shall not receive any distribution under this Plan.**~~

~~**No distribution shall be made on account of any General Unsecured Claim unless such claim constitutes an Allowed Claim supported by sufficient documentation in accordance with Bankruptcy Rule 3001 and applicable law.**~~

The Debtor reserves all rights to object to any General Unsecured Claim, including on the grounds that such claim does not arise from, relate to, or benefit the Debtor's estate or the Property.

Distributions, if any, shall be made as soon as reasonably practicable following the closing of any sale of the Property and reconciliation of claims. The Claims Register listing all General Unsecured Claims is attached to the Disclosure Statement as **Exhibit 2**.

B. Impairment: Class 4 is Impaired by this Plan and, therefore, each Holder of a Claim in Class 4 is entitled to vote to accept or reject the Plan.

**8.3. Class 5: Equity Interests**

A. **Treatment:** All equity interests in the Debtor shall be retained by the Debtor's Sole Member. To the extent any funds remain after payment in full of all Allowed Administrative Expenses, Allowed Priority Claims, and other Allowed Claims in accordance with this Plan, any remaining funds shall be distributed to the Debtor's Sole Member.

B. Impairment: Class 5 is Impaired by this Plan and, therefore, each Holder of a Claim in Class 5 is entitled to vote to accept or reject the Plan.

**IX. VOTING PROCEDURES AND REQUIREMENTS**

Only Impaired Classes of Claims are entitled to vote. If the Claim or Claims you hold are not in one of those Classes, you are not entitled to vote, and thus you will not receive a Ballot from the Debtor's counsel. Holders of Claims that are entitled to vote should read the Ballot provided by the Debtor's counsel and follow the accompanying instructions carefully.

**ANY QUESTIONS CONCERNING THE BALLOT OR ANY OTHER CONTENTS OF THE SOLICITATION PACKAGE SHOULD BE DIRECTED TO THE DEBTOR'S COUNSEL AT (301) 742-5385 OR BY EMAIL AT DTJESQ@DTJOHNSONLAW.COM.**

A. **Vote Required for Acceptance by a Class**

As a Holder of an Allowed Claim in a voting Class, your acceptance of the Plan is very important. At least one voting Class must vote to accept the Plan. If any voting Class votes to accept the Plan, the Debtor will attempt to invoke the "cramdown" provisions of the Bankruptcy Code with respect to Holders of any Claims in a Class that votes to reject the Plan.

A Class of Claims entitled to vote to accept or reject the Plan shall be deemed to accept the Plan if the Holders of Claims in such voting Class that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Claims that vote in such Class vote to accept the Plan.

B. **Classes Entitled to Vote**

Pursuant to § 1126 of the Bankruptcy Code, each Impaired Class of Claims that will receive a Distribution pursuant to the Plan may vote separately to accept or reject the Plan. Each Holder of an Allowed Claim in such an Impaired Class as of the Voting Record Date shall receive a Ballot and may cast a vote to accept or reject the Plan.

31

### C. Classes Not Entitled to Vote

The following Holders of Claims are not entitled to vote if, as of the Voting Record Date, the Claim (i) has been disallowed, (ii) is the subject of a pending objection, or (iii) was listed on the Debtor's Schedules as unliquidated, contingent or disputed and a Proof of Claim was not filed or was filed for an unliquidated, contingent or Disputed Claim, unless on or before the Voting Record Date the Bankruptcy Court enters a Final Order directing otherwise. However, if a Claim is disallowed in part, the Holder shall be entitled to vote the Allowed portion of the Claim.

### D. Voting Procedures

The preferred method of voting and communication is by email to dtjesq@dtjohnsonlaw.com.

The Debtor's counsel will facilitate the solicitation and voting process, if any. If you have any questions regarding voting procedures, your eligibility to vote, to accept or reject the Plan, to object to the Plan, or if you need additional copies of documents included in the solicitation package, please contact the Debtor's counsel at the below mailing address, phone number, and email address:

> Deirdre T. Johnson, Esquire
> 9701 Apollo Dr, Suite 301
> Upper Marlboro, Maryland 20774
> (301) 742-5385
> **dtjesq@dtjohnsonlaw.com**

**BALLOTS CAST BY HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN MUST BE ACTUALLY RECEIVED BY THE DEBTOR'S COUNSEL AT THE ABOVE ADDRESS BY THE VOTING DEADLINE. THE DEBTOR RESERVES THE RIGHT TO DECIDE WHETHER OR NOT TO COUNT BALLOTS RECEIVED BY THE DEBTOR'S COUNSEL AFTER THE VOTING DEADLINE.**

If a Ballot is damaged or lost, you may contact the Debtor's counsel to request another Ballot. Any Ballot received by the Debtor's counsel which does not indicate an acceptance or rejection of the Plan will not be counted.

## X. OTHER PLAN COMPONENTS

### A. Distribution Procedures

Only Allowed Claims may receive Distributions under and in accordance with the Plan.

#### 1. Allocation of Distributions

Unless otherwise provided herein, Distributions to any Holder of an Allowed Claim shall be allocated first to the principal portion of any such Allowed Claim, and, only after the principal portion of any such Allowed Claim is satisfied in full, to any portion of such Allowed Claim comprising interest or other charges (but solely to the extent that such interest or other charges are an allowable portion of such Allowed Claim). All payments shall be made in accordance with the priorities established by the Bankruptcy Code.

### 2. Delivery of Distributions and Undeliverable Distributions

Distributions to Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the Schedules filed with the Bankruptcy Court unless superseded by the address as set forth on the Proofs of Claim filed by such Holders or other writing notifying the Debtor of a change of address. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Debtor is notified of such Holder's then current address, at which time all missed Distributions shall be made to such Holder, without interest from the date of the first attempted Distribution. All Claims for undeliverable Distributions shall be made on or before sixty (60) days after the date such undeliverable Distribution was initially made.

### 3. Time Bar for Check Payments

Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Debtor by the Holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the sixty (60) day period following the date of issuance of such check. After such date, all funds held on account of such voided check shall, in the discretion of the Debtor, be used to satisfy the costs of administering and fully consummating this Plan, to the extent such costs would otherwise be paid from available Cash, or become available Cash for Distribution in accordance with this Plan, and the Holder of any such Claims shall not be entitled to any other or further Distribution under this Plan on account of such Claim.

### 4. Setoffs

The Debtor may, in accordance with § 553 of the Bankruptcy Code and applicable non-bankruptcy law, setoff against any Allowed Claim and the Distributions to be made pursuant to this Plan on account of such Claim (before any Distribution is made on account of such Claim), the claims, rights and causes of action of any nature that the Debtor may hold against the Holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claims, rights and causes of action that the Debtor may possess against such Holder. The Debtor shall have the exclusive right and authority to settle claims and recognize setoff rights.

### 5. Cure Non-Compliance

If any Party in Interest holding any Allowed Claim fails to receive a payment as provided under the Plan, or if any Party in Interest questions the Debtor's compliance with the Plan in any way, such party shall give the Debtor written notice thereof, and the Debtor may cure such non-compliance within sixty (60) days of such notice.

## B. Treatment of Disputed Claims

### 1. No Distribution Pending Allowance

Notwithstanding any other provision of the Plan, no payments shall be distributed under this Plan on account of any Disputed Claim unless and until such Claim becomes an Allowed Claim.

### 2. Resolution of Disputed Claims

Notwithstanding any other provision of this Plan to the contrary, after the Confirmation Date, unless otherwise ordered by the Bankruptcy Court after notice and a hearing, Parties in Interest shall have the right (except as to applications for allowances of compensation and reimbursement of expenses under §§ 330 and 503 of the Bankruptcy Code, and except as to any objections which have been filed prior to the Confirmation Date by any party) to make and file objections to Claims and shall serve a copy of each objection upon the Holder of the Claim to which the objection is made as soon as practicable, but in no event later than forty-five (45) days after the Confirmation Date. From and after the Confirmation Date, all objections shall be litigated to a Final Order except to the extent the Debtor elects to withdraw any such objection or the Debtor and the claimant elect to compromise, settle or otherwise resolve any such objection, in which event they may settle, compromise or otherwise resolve any Disputed Claim for an amount of $10,000.00 or more subject to approval of the Bankruptcy Court and for amounts of $9,999.99 or less without approval of the Bankruptcy Court.

### 3. Estimation

The Debtor may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to § 502(c) of the Bankruptcy Code regardless of whether the Debtor has previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during litigation concerning any objection to such Claim. In the event that the Bankruptcy Court estimates any Disputed Claim, the estimated amount may constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim. All of the aforementioned Claim objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. On and after the Confirmation Date, Claims which have been estimated subsequently may be compromised, settled, withdrawn or otherwise resolved subject to approval by the Bankruptcy Court as provided in this Plan.

### 4. Reserve Accounts for Disputed Claims

On and after the Effective Date, the Debtor shall hold in the Disputed Claims Reserve funds in an aggregate amount sufficient to pay to each Holder of a Disputed Claim the amount that such Holder would have been entitled to receive under this Plan if such Claim had been an Allowed Claim on the Effective Date. Funds withheld and reserved for payments to Holders of Disputed Claims shall be held and deposited by the Debtor in one or more segregated reserve accounts, as determined by the Debtor, to be used to satisfy such Claims if and when such Disputed Claims become Allowed Claims.

### 5. Investment of Disputed Claims Reserve

The Debtor shall be permitted, from time to time, in their sole discretion, to invest all or a portion of the funds in the Disputed Claims Reserve in savings accounts, United States Treasury Bills, interest-bearing certificates of deposit, tax exempt securities or investments permitted by § 345 of the Bankruptcy Code or otherwise authorized by the Bankruptcy Court, using prudent efforts to enhance the rates of interest earned on such funds without inordinate credit risk or interest rate risk. All interest earned on such funds shall be held in the Disputed Claims Reserve and, after satisfaction of any expenses incurred in connection with the maintenance of the

Disputed Claims Reserve, including taxes payable on such interest income, if any, shall be transferred out of the Disputed Claims Reserve and, in the discretion of the Debtor, be used to satisfy the costs of administering and fully consummating this Plan or become available Cash for Distribution in accordance with this Plan.

### 6. Release of Funds from Disputed Claims Reserve

If at any time or from time to time after the Effective Date, there shall be funds in the Disputed Claims Reserve in an amount in excess of the Debtor's maximum remaining payment obligations to the then existing Holders of Disputed Claims under this Plan, such excess funds shall become available to the Debtor generally and shall, in the discretion of the Debtor be used to satisfy the costs of administering and fully consummating this Plan or become available Cash for Distribution in accordance with this Plan.

### D. Conditions of Effectiveness of Plan

Under the Plan, in order for the Effective Date to occur, the conditions of the Debtor as set forth in the Plan and described below must be satisfied or waived:

The conditions precedent to the Effective Date of the Plan as to the Debtor are as follows:

1. The Bankruptcy Court shall have entered the Confirmation Order;

2. Any other order necessary to satisfy any conditions to effectiveness of the Plan shall be a Final Order; and

3. All other documents provided for under the Plan shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited by such documents.

If any of the conditions to consummation and the occurrence of the Effective Date as to the Debtor have not been satisfied or duly waived by the Debtor (i) on or before the first Business Day that is more than thirty (30) days after the Confirmation Date or (ii) by such later date as is proposed by the Debtor after notice and a hearing approved by the Bankruptcy Court, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to consummation are either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated for failure to satisfy the conditions precedent, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any Administrative Expenses, Claims against the Debtor, (b) prejudice in any manner the rights of the Holder of any Administrative Expense, against the Debtor, or (c) prejudice in any manner the rights of the Debtor in its bankruptcy case.

### E. Effect of Confirmation

#### 1. Binding Effect

Except as otherwise provided in § 1141 of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this Plan shall bind any Holder of a Claim against, or Interests in, the Debtor and their respective successors and assigns, whether or not the Holder of the Claim has timely filed a proof of its Claim, the Claim or Interest of such Holder is Impaired under this Plan and whether or not such Holder has accepted the Plan.

**2. Avoidance**

Except as otherwise expressly provided in the Plan or in the Confirmation Order, upon entry of the Confirmation Order, the following are avoided under this Plan: any liens arising out of or in connection with judgment liens, or any other liens against the Debtor, the Debtor's Property or the Debtor's estate, including liens in favor of any Claimants not contemplated by this Plan. Lien Creditors holding such avoided Claims shall execute, and otherwise cooperate to affect, any releases reasonably required by the Debtor to obtain releases of such Claims.

**3. Injunction against Interference with Plan**

Upon entry of the Confirmation Order, all Holders of a Claim along with their respective present or former assignees, employees, agents, officers, directors or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

**4. Injunction against Certain Actions**

As of the Confirmation Date, all Holders of a Claim are permanently enjoined, from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) to enforce the Claim against the Debtor or an Affiliate, or any of their property or any direct or indirect successor in interest to the Debtor or any property of any such successor; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order relating to the Claim against the Debtor or an Affiliate or any of their property or any direct or indirect successor in interest to the Debtor or any property of any such successor; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind relating to the Claim against the Debtor or any direct or indirect successor in interest to the Debtor or any property of any such successor; and (d) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the fullest extent permitted by applicable law.

**5. Rights of Action**

On and after the Confirmation Date, the Debtor shall have the exclusive right and standing to enforce for the benefit of the Debtor and their Creditors, any and all present or future rights, claims or causes of action against any person and rights of the Debtor that arose before or after the Petition Date, including, but not limited to, rights, claims, causes of action, avoiding powers, suits and proceedings arising under §§ 510, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code. On and after the Confirmation Date, all persons are permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of or respecting any claim, debt, right or cause of action of

the Debtor for which the Debtor retains sole and exclusive authority to pursue in accordance with this Section.

### 6. Discharge

Confirmation of the Plan shall discharge all debts of and Claims against the Debtor and their assets other than for obligations expressly provided by this Plan or the Confirmation Order. The discharge of the Debtor shall be effective as to each Claim regardless of whether a Proof of Claim therefore was filed, whether the Claim is an Allowed Claim, or whether the Holder thereof votes to accept or reject the Plan. On the Effective Date, as to every discharged Claim or Interest, any Holder of such Claim shall be precluded from asserting against the Debtor or their assets, any other or further Claim based upon any document, instrument, act, omission, transaction or other activity of any kind or nature which occurred before the Effective Date. The order confirming the Plan shall provide that the commencement or continuation of any action, employment of process or act to collect, offset, enforce or recover the Claims discharged are enjoined. Pursuant to § 524(e) of the Bankruptcy Code, the discharge of the Debtor does not affect the liability of any third party on a debt of the Debtor.

### 8. Exculpation

Neither the Debtor, nor any of their members, attorneys, attorneys of the members, consultants, advisors and agents (acting in such capacity) shall have or incur any liability to any entity for any act taken or omitted to be taken in connection with and subsequent to the commencement of the Chapter 11 Case, the formulation, preparation, dissemination, implementation, confirmation or approval of this Plan, any other plan of reorganization or liquidation or any compromises or settlements contained herein, any disclosure statement related thereto or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the transactions set forth in the Plan or in connection with any other proposed plan; provided, however, that the foregoing provisions shall not affect the liability that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct. Each of the foregoing parties in all respects shall have been and shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities during the Chapter 11 Case and under this Plan.

### 9. Exemption from Certain Transfer Taxes

Pursuant to § 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan which is ultimately confirmed, is not taxable under any law imposing a stamp or similar tax. Moreover, any transfer of assets from the Debtor to any other entity in accordance with, in contemplation of, or in connection with the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment pursuant to § 1146(a) of the Bankruptcy Code.

### F. Administrative Provisions

#### 1. Retention of Jurisdiction

The Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to, the Chapter 11 Case and this Plan pursuant to, and for the purposes of §§ 105(a) and 1142 of the Bankruptcy Code and for, among other things the following purposes until such time as the Debtor's obligations under the Plan are fully discharged:

(a) To determine any and all pending adversary proceedings, applications and contested matters;

(b) To hear and determine any objection to any Claims or Interests;

(c) To liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated Claim;

(d) To adjudicate all Claims to any lien on any of the Debtor's assets or any proceeds thereof;

(e) To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated, and/or if the Effective Date never occurs;

(f) To issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code;

(g) To consider any modifications of this Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(h) To hear and determine all applications for compensation and reimbursement of expenses of Professionals under §§ 330, 331 and 503(b) of the Bankruptcy Code;

(i) To enforce and interpret the Plan and to hear and determine any dispute or any other matter arising out of or related to this Plan;

(j) To recover all assets of the Debtor, wherever located;

(k) To hear and determine matters concerning state, local and federal taxes in accordance with §§ 346, 505 and 1146 of the Bankruptcy Code;

(l) To enforce and interpret the discharge of Claims effected by this Plan and to enter and implement such orders as may be appropriate with regard thereto;

(m) To hear any other matter consistent with the provisions of the Bankruptcy Code;

(n) To enter a final decree closing the Chapter 11 Case; and

(o) To hear and determine such other issues as the Court deems necessary and reasonable to carry out the intent and purposes of this Plan.

#### 2. Professional Fees and Expenses

After the Effective Date, the Debtor shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the Professionals employed by the Debtor in connection with the implementation and consummation of this Plan, the claims reconciliation process and any other matters as to which such Professionals may be engaged.

#### 3. Waiver of Certain Fees

All Holders of Claims waive all penalties, default interest and/or late fees that may have accrued on their Claims other than as provided for in this Plan.

**4. U.S. Trustee Fees**

The Debtor is current, and shall remain current, in paying all fees owed to the United States Trustee until the Chapter 11 Case is closed.

**5. Payment of Statutory Fees**

All fees payable pursuant to Chapter 123 of Title 28, United States Code, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid by the Debtor.

**6. Modification of the Plan**

The Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan at any time prior to the entry of the Confirmation Order. After the entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with § 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan. A Holder of an Allowed Claim or Interest that is deemed to have accepted this Plan shall be deemed to have accepted this Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim or Interest of such Holder.

**7. Withdrawal or Revocation of the Plan**

The Debtor may withdraw or revoke this Plan at any time prior to the Confirmation Date. If the Debtor withdraws or revokes this Plan prior to the Confirmation Date Deadline or if the Confirmation Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

**8. Cram Down**

The Debtor may utilize the provisions of § 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of this Plan over the rejection, if any, of any Class entitled to vote to accept or reject this Plan.

**9. Exemption from Certain Transfer Taxes**

To the extent that the issuance of an asset under the Plan falls within the exception of Bankruptcy Code § 1146(a), no stamp or similar tax is payable upon such transfer. Pursuant to § 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan which is ultimately confirmed, is not taxable under any law imposing a stamp or similar tax. Moreover, any transfer of assets from the Debtor to any other entity (including the contemplated transfer of real property pursuant to the Plan) in accordance with, in contemplation of, or in connection with the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or

other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment pursuant to § 1146(a) of the Bankruptcy Code.

### 10. Governing Law

Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the United States of America and, when applicable, the State of Maryland, without giving effect to the principles of conflicts of law thereof.

## XI. RISKS AND CONSIDERATIONS

### A. Risk Factors

Prior to deciding whether and how to vote on the Plan, each Holder of a Claim should consider carefully all of the information in this Disclosure Statement and should particularly consider the risk factors inherent in the Debtor's plan of liquidation.

### B. Bankruptcy Considerations

Although the Debtor believes that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will confirm the Plan as proposed. Moreover, there can be no assurance that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate the re-solicitation of votes. Although the Debtor believes that the Effective Date will occur soon after the Confirmation Date, there can be no assurance as to such timing.

In the event the conditions precedent described in the Plan have not been satisfied, or waived (to the extent possible) by the Debtor or applicable party (as provided for in the Plan) as of the Effective Date, then the Confirmation Order will be vacated, no Distributions will be made pursuant to the Plan, and the Debtor and all Holders of Claims and Interests will be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred.

## XII. PLAN CONFIRMATION AND CONSUMMATION

### A. Confirmation Hearing

Bankruptcy Code § 1128(a) requires the Bankruptcy Court, after appropriate notice, to hold a hearing on confirmation of a Plan. On, or as promptly as practicable after, the filing of the Plan and this Disclosure Statement, the Debtor will request, pursuant to the requirements of the Bankruptcy Code and the Bankruptcy Rules, that the Bankruptcy Court schedule the Confirmation Hearing. Notice of the Confirmation Hearing will be provided to all known Creditors, Interest Holders or their representatives. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any subsequent adjourned Confirmation Hearing.  Pursuant to Bankruptcy Code § 1128(b), any party-in-interest may object to

confirmation of a plan. Any objection to confirmation of the Plan must be in writing, must conform to the Bankruptcy Rules, must set forth the name of the objector, the nature and amount of Claims or Interests held or asserted by the objector against the Debtor, the basis for the objection and the specific grounds of the objection, and must be filed with the Bankruptcy Court, with a copy to Chambers, together with proof of service thereof, and served upon (i) the U.S. Trustee's Office; (ii) counsel for Debtor,

Deirdre T. Johnson, Esq, 9701 Apollo Dr, Suite 301, Upper Marlboro, MD, 20774, dtjesq@dtjohnsonlaw.com; and (iii) such other parties as the Bankruptcy Court may order.

Bankruptcy Rule 9014 governs objections to confirmation of the Plan.

**UNLESS AN OBJECTION TO CONFIRMATION OF THE PLAN IS TIMELY SERVED UPON THE PARTIES LISTED ABOVE AND FILED WITH THE BANKRUPTCY COURT, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT IN DETERMINING CONFIRMATION OF THE PLAN.**

### B. Plan Confirmation Requirements under the Bankruptcy Code

At the Confirmation Hearing, the Bankruptcy Court will consider the terms of the Plan and determine whether the Plan terms satisfy the requirements set out in § 1129 of the Bankruptcy Code.

### C. Best Interests Test

The Bankruptcy Code requires that, with respect to an Impaired Class of Claims or Interests, each Holder of an Impaired Claim or Interest in such Class either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the amount (value) such Holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date. Chapter 7 is not desirable as it would result in (a) a termination of the Debtor's operation, and (b) loss of the Debtor's ability to sell certain valuable real estate. Further, in a Chapter 7 liquidation assets would be disposed of in a shorter timeframe and would likely result in proceeds commensurate with forced liquidation values, as opposed to orderly liquidation values contemplated under the Plan.

The Debtor's costs of a Chapter 7 liquidation would necessarily include fees payable to a trustee in bankruptcy, as well as fees likely to be payable to attorneys, advisors, and other professionals that such a Chapter 7 trustee may engage to carry out its duties under the Bankruptcy Code. Other costs of a Chapter 7 liquidation would include the expenses incurred during the bankruptcy case and allowed by the Bankruptcy Court in the Chapter 7 case, such as reimbursable compensation for the Debtor's Professionals, including, but not limited to, attorneys, financial advisors, appraisers, and accountants.

The foregoing types of claims, costs, expenses, and fees that may arise in a Chapter 7 liquidation case would be paid in full from the proceeds of the sale of the Debtor's sole asset before the balance of those sales proceeds would be made available to pay pre-Chapter 11priority and unsecured claims.

### D. Section 1129(b)

Section 1129(b) of the Bankruptcy Code provides that the Bankruptcy Court may confirm a plan even if a class of impaired claims or interests votes to reject the plan if the plan does not unfairly discriminate and is fair and equitable with respect to each impaired class of claims or interests that has not accepted the plan.

#### 1. No Unfair Discrimination

The "no unfair discrimination" test requires that the plan not provide for unfair treatment with respect to classes of claims or interests that are of equal priority, but are receiving

42

different treatment under the plan.

**2. Fair and Equitable**

The fair and equitable requirement applies to classes of claims of different priority and status, such as secured versus unsecured. The plan satisfies the fair and equitable requirement if no class of claims receives more than 100% of the allowed amount of the claims in such class. Further, if a class of claims is considered a dissenting class ("Dissenting Class"), *i.e.*, a class of claims that is deemed to reject the plan because the required majorities in amount and number of votes is not received from the class, the following requirements apply:

**a. Class of Secured Claims:**

Each holder of an impaired secured claim either (i) retains its liens on the subject property, to the extent of the allowed amount of its secured claim and receives deferred cash payments having a value, as of the effective date of the plan, of at least the allowed amount of such claim, (ii) has the right to credit bid the amount of its claim if its property is sold and retains its liens on the proceeds of the sale (or if sold, on the proceeds thereof) or (iii) receives the "indubitable equivalent" of its allowed secured claim.

**b. Class of Unsecured Creditors:**

Either (i) each holder of an impaired unsecured claim receives or retains under the plan distributions of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the Dissenting Class will not receive anything under the plan.

The Debtor believes the Plan will satisfy the "fair and equitable" requirement notwithstanding that certain Classes of Claims are deemed to reject the Plan because no Class that is junior to such Class will receive or retain any property on account of the Claims in such Class.

**XIII. ALTERNATIVE TO CONFIRMATION AND CONSUMMATION OF THE PLAN**

The Debtor believes the Plan is in the best interests of its Creditors and should accordingly be accepted and confirmed. If the Plan as proposed, however, is not confirmed, the following three alternatives may be available to the Debtor: (a) a liquidation of the Debtor's assets pursuant to Chapter 7 of the Bankruptcy Code, (b) a plan of reorganization may be proposed and confirmed, or (c) the Debtor's asset may be sold pursuant to Bankruptcy Code § 363.

**A. Chapter 7 Liquidation**

If a plan pursuant to Chapter 11 of the Bankruptcy Code is not confirmed by the Bankruptcy Court, the Chapter 11 Case may be converted to a liquidation case under Chapter 7 of the Bankruptcy Code in which a trustee would be elected or appointed, pursuant to applicable provisions of Chapter 7 of the Bankruptcy Code, to liquidate the assets of the Debtor for distribution in accordance with the priorities established by the Bankruptcy Code. A discussion of the effect that a Chapter 7 liquidation would have on the recoveries of Holders of Claims is set forth in Section XII hereof. The Debtor believes that such a liquidation would result in smaller Distributions being made to the Debtor's Creditors than those provided for in the Plan because (i)

the likelihood that Debtor's primary asset, the Property, would have to be sold or otherwise disposed of in a less orderly fashion, (ii) additional administrative expenses attendant to the appointment of a trustee and the trustee's employment of attorneys and other professionals, and (iii) additional expenses and Claims, some of which may be entitled to priority.

## XIV. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

Each Holder of a Claim should consult its own tax advisor to determine what effect, if any, the treatment afforded its respective Claim by the Plan may have under federal, state and local tax laws and the laws of any applicable foreign jurisdictions.

No statement in this Disclosure Statement should be construed as legal or tax advice. Neither the Plan proponents nor their Professionals assume any responsibility or liability for the tax consequences the Holder of a Claim may incur as a result of the treatment afforded its Claim under the Plan.

The principal income tax consequence for a Creditor relates to its ability to deduct a portion of its Claim in the event the Creditor does not receive full payment of its Allowed Claim. Here, however, Allowed Claims are being paid in full. Section 166 of the Internal Revenue Code of 1986, as amended ("IRC") (relating to the deductibility of bad debts) generally provides that:

(a) a totally worthless business bad debt is deductible only in the tax year in which it becomes worthless;

(b) a partially worthless business bad debt is deductible in an amount not in excess of the part charged off on the taxpayer's within the taxable year; and

(c) in the case of a taxpayer other than a corporation, a nonbusiness bad debt which becomes completely worthless during that taxable year is deductible as a short-term capital loss and is subject to the limitations imposed on the deductibility of such losses.

For purposes of IRC section 166, a "nonbusiness debt" means a debt other than

(a) one created or acquired in connection with the taxpayer-creditor's trade or business or

(b) the loss from the worthlessness of which was incurred during the operation of the taxpayer-creditor's trade or business.

Pursuant to Treas. Reg. § 1.166-2(c), a bankruptcy filing is generally an indication of the worthlessness of at least a part of an unsecured and unperfected debt. In bankruptcy cases, a debt may become worthless before settlement in some instances, and in others only when a settlement has been reached. In either case, the mere fact that bankruptcy proceedings are terminated in a later year, thereby confirming the conclusion that the debt is worthless, does not authorize the shifting of the deduction under IRC section 166 to such later year. Pursuant to Treas. Reg. § 1.166-1(2)(ii), only the difference between the amount received in distribution of assets of a debtor, and the amount of the claim may be deducted under IRC § 166 as a bad debt.

Generally, a taxpayer is entitled to a bad debt deduction with respect to accounts receivable only if the taxpayer has recognized as income the accounts receivable in the year in which the bad debt deduction is claimed or a prior taxable year. Thus, bad debt deductions for worthless or partially worthless accounts receivable are normally available only to accrual method taxpayers. Likewise, worthless debts arising from unpaid wages, salaries, fees, rents and similar items of taxable income are not allowed as a bad debt deduction unless such items have been reported as income in the year for which the deduction as a bad debt is claimed or for a prior taxable year.

Business bad debts deductible under IRC § 166 generally may be deducted using either the specific charge-off method or, if certain requirements are met, the nonaccrual experience method. Under the specific charge-off method, specific business bad debts that become either partially or totally worthless during the tax year may be deducted in the manner permitted by IRC § 166.

If a deduction is taken for a bad debt which is recovered in whole or part in a latter tax year, the taxpayer may have to include in gross income the amount recovered, except, under limited circumstances, the amount of the deduction that did not reduce taxes in the year deducted.

## XV. RECOMMENDATION AND CONCLUSION

The Debtor believes the Plan is in the best interests of all Creditors and urges the Holders of Impaired Claims entitled to vote to accept the Plan and to evidence such acceptance by properly voting and timely returning their **Ballots.**

5410 30th STREET DC, LLC

By: _____

Name: _____

Title: _____

Deirdre T. Johnson, Esq
Bar No. MD14227
9701 Apollo Dr, Suite 301
Upper Marlboro, MD  20774
Phone: (301) 742-5385
dtjesq@dtjohnsonlaw.com
*Counsel for the Debtor*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this ~~10th~~22nd day of ~~February~~July, 2026, a copy of the foregoing ~~Amended Chapter 11 Disclosure Statement~~DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT FOR DEBTOR'S SECOND AMENDED PLAN OF LIQUIDATION was served ~~electronically~~by US Mail, postage prepaid, upon ~~filing via the ECF system, with copies to:~~all parties in interest, including:


Maurice ~~•~~B. VerStandig, Esq. (mac@mbvesq.com)

L. Jeanette Rice ~~Jeanette.Rice@usdoj.gov,~~ Jeanette.Rice@usdoj.gov, and

Office of the United States Trustee (USTPRegion04.GB.ECF@USDOJ.GOV)

~~• US Trustee - Greenbelt USTPRegion04.GB.ECF@USDOJ.GOV~~

And by

> ~~• Maurice VerStandig    MAC@MBVESQ.COM~~

~~I FURTHER CERTIFY that on this 10th day of February, 2026, a copy of the foregoing was also sent via~~ US Mail~~, postage prepaid,~~ (First Class) pursuant to ~~all parties~~Local Bankruptcy Rules of the District of Maryland upon:

• All Creditors and Parties in Interest as listed on the ~~mailing matrix~~ Court's Mailing Matrix (attached ~~hereto.~~)


                            /s/ Deirdre T. Johnson, Esq.

_____

~~Deirdre T. Johnson, Esq~~
~~Deirdre T Johnson, Attorney at Law~~
~~9701 Apollo Dr, Suite 301~~
~~Upper Marlboro, MD  20772~~

Attn: Albeiro Medina
T&AA Construction, and Any / All Affiliates
11820 Parklawn Dr, Suite 380
Rockville, MD  20852

BHI Construction, and Any/All Affiliates
9342 Annapolis Rd
Lanham, MD  20706

City Concrete, and Any / All Affiliates
9284 Corp Circle
Manassas, VA 20110

DC Municipal Investments, LLC
c/o:  Heidi S. Kenny, Esq
Kenny Law Group, LLC
11426 York Rd, 1st Floor
Cockeysville, MD  21030

DC Office of Tax & Revenue
Office of CFO
1101 4th St, SW
Washington, DC  20024

DC Water
1385 Canal St, SE
Washington, DC  20003

Fund That Flip / Upright
1300 E. 9th St, Suite 1310
Cleveland, OH  44114

IBI SBL Investment LP
IBI Falcon US, LLC
c/o The VerStandig Law Firm
9812 Falls Rd, #114-160
Potomac, MD  20854

Kylie Properties, LLC
Suite 200 #1060
12345 Parklawn Dr
Washington, DC 20002

PEPCO
701 9th St, NW
Washington, DC  20068

Santorini Capital LLC, and Any/All
Affiliates
Suite 200
2000 Massachusetts Ave, NW
Washington, DC 20036

Washington Gas
Attn:  Customer Care
6801 Industrial Rd
Springfield, VA  22151

Yonis Benitez
612 Oglethorpe St, NW
Washington, DC  20011