IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF MARYLAND
*Greenbelt Division*

In re: 5410 30th Street DC, LLC                    Case No.: 25 – 19605

Debtor                                             Chapter 11

---

GREENBELT DIVISION

In re:

5410 30th Street DC LLC,
Debtor.

Case No. 25-19605-LSS

Chapter 11

---

## DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION

OF 5410 30th Street DC, LLC

---

**(As Filed July 22, 2026)**

5410 30th Street DC, LLC, the debtor and debtor in possession in the above-captioned case (the "Debtor"), proposes the following Second Amended Plan of Liquidation (this "Plan") pursuant to Chapter 11of the United States Bankruptcy Code.

ARTICLE 1
INTRODUCTION

On October 14, 2025, Debtor 5410 30th Street DC, LLC filed 11 U.S.C. § 1121(a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court. The Debtor is in possession of its assets, and intends to continue to manage its affairs as a debtor in possession pursuant to §1184 of the Bankruptcy Code.

1

<u>The Debtor</u>

5410 30th Street DC. LLC is a Maryland limited liability company formed on February 14, 2023, with its headquarters located in Bowie, Maryland. Zanetta Williams serves as the Sole 100% Member of 5410 30th Street DC, LLC.

The Debtor's bankruptcy filing was precipitated by lengthy debilitating disruptions in loan servicing and financing, including insufficient funding for renovation, the lender's repeated delays and failures in issuing required construction draws, and a significant gap in lender support during which the lender and its servicer were largely unreachable for approximately two to three months and loan servicing was effectively halted and consequently the debtor's projects were negatively impacted and forced into default. It was later discovered that Upright/Fund that Flip (the debtor's lender) had experienced a financial crisis where Upright/Fund that Flip had investor funds frozen due to the bankruptcy of their banking-as-a-service partner, Synapse Financial Technologies. In addition, for approximately one year, the lender failed to act on the Debtor's repeated efforts to cure and reinstate the loan. These events collectively forced the Debtor to suspend construction activities, imposed substantial financial strain on the Debtor's business, creating a cascading financial negative impact that adversely affected cash flow and the Debtor's ability to timely complete, stabilize, and market the Property and forced another property into foreclosure. The Debtor further determined that, the delayed reinstated and completion of the property caused an entrance of the completed project into market conditions that were different that what was initially planned. The market changed significantly in a year's time. The real estate market is and has been strained since the property was listed for sale. The Debtor determined that seeking to reorganize its affairs through the Bankruptcy process will allow it to maintain and ultimately

2

increase the enterprise value to the benefit of the Debtor, Creditors, and any other parties-in-interest.

Chapter 11 allows a debtor to propose a plan of reorganization and/or liquidation. ). This Plan provides for the orderly liquidation of the Debtor's business through the sale of the sole business asset, the real property located at 5631 Macarthur Blvd NW Washington, DC 20016. The Plan anticipates distribution to the Allowed Claims of Creditors from the proceeds of the sale. Each of the Debtor's assets and claims are identified below. The net proceeds from the sale of the Debtor's asset will be distributed to Holders of Allowed Claims against the Debtor in accordance with their rights and priorities under the Bankruptcy Code and under other applicable law.

Explanation of the Confirmation and Voting Process

Enclosed in the same envelope as this Plan is the Debtor'ssupersedes and replaces, in its entirety, the Debtor's Amended Plan of Liquidation and Amended Disclosure Statement and a cover letter. Thefiled March 5, 2026 (DE #120, #121). Reference should be made to the accompanying Second Amended Disclosure Statement is being sent along with this Plan in order to provide to you critical information about the Debtor, to help you understand this Plan, and to evaluate the merits of this Plan. Final approval of the Disclosure statement will be considered at the hearing on Confirmation of the Plan. The (the "Disclosure Statement describes this Plan and the procedures for voting on the Plan. It also discusses the Debtor's business, the Debtor's assets and liabilities, and projections for completion and implementation of the Plan. Creditors ") for a discussion of the Debtor's history, the events leading to this proceeding, a summary and analysis of this Plan, the Debtor's response to the objections of creditor IBI Falcon US LLC ("IBI Falcon"), a comparison of this Plan to the competing Substitute Plan filed by IBI Falcon (DE #129), and certain risk factors. This Plan and the Disclosure Statement are filed in advance of the omnibus hearing scheduled for August 5, 2026, at which the Bankruptcy Court is expected to consider, together: (i) the Debtor's Motion for Determination That IBI Falcon Is Not a Party in Interest (DE #133); (ii) IBI Falcon's Motion to Convert Case to Chapter 7 (DE #95); (iii) the Debtor's Objection to IBI Falcon's Amended Proof of Claim No. 2 (DE #132); (iv) approval of this Disclosure Statement and Plan; (v) approval of IBI Falcon's competing Substitute Disclosure Statement and

Plan; and (vi) IBI Falcon's Motion for Relief from the Automatic Stay (DE #195). All holders of Claims against, and Interests in, the Debtor are encouraged to read this Plan, and the Disclosure Statement and all exhibits thereto in their entirety.

Subject to certain restrictions and requirements as set forth in §1127 of the Bankruptcy Code, Bankruptcy Rule 3019 and those restrictions on modifications to the Plan, as set forth therein, the Debtor expressly reserves the right to alter, amend, modify, revoke, or withdraw the Plan one or more times, prior to the Effective Date.

IN THE OPINION OF THE DEBTOR, THE TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN CONTRMPLATES A GREATER AND FASTER AND MORE CERTAIN RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVESFOR THE REORGANIZATION OR OTHER MEANS OF LIQUIDATION OF THE DEBTOR.   ACCORDINGLY, THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTEREST OF ALL CREDITORS AND RECOMMENDS THAT CREDITORS VOTE TO ACCEPT THE PLAN.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THE PLAN AND IN THE ACCOMPANYING DISCLOSURE STATEMENT CONCERNING THE HISTORY OF THE DEBTOR'S BUSINESS, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DENTOR, TRANSACTIONS TO WHICH THE DEBTOR WAS OR IS A PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON HOLDERS OF CLAIMS AGAINST THE DEBTOR ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTOR AND NOT TO ANY OTHER PARTY.

## ARTICLE 2I

## DEFINITIONS AND RULES OF CONSTRUCTION

2.1 .1 **Definitions.** ~~Unless the context otherwise specifies or requires, the~~

The following terms ~~shall~~used in this Plan have the meanings ~~herein specified, such definitions as applicable equally to the singular and plural forms of such terms and to all genders:~~set forth below. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Local Bankruptcy Rules, has the meaning given to that term in the Bankruptcy Code or the Local Bankruptcy Rules, as applicable.

~~2.1.1 "Administrative Claim" means a Claim for costs and expenses of the administration of the Bankruptcy Case which is entitled to administrative priority status pursuant to §§503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, a Claim of a professional employed at the expense of the Estate and any fees or charges asserted against the Estate under 28 U.S.C. §1930.~~

~~2.~~

| Administrative Claim | A Claim for costs and expenses of administration of the Chapter 11 Case allowed under 11 U.S.C. § 503(b) and entitled to priority under 11 U.S.C. § 507(a)(2), including, without limitation, Professional Fee Claims (including the Supplemental Fee Claim described in Section 2.2) and fees payable under 28 U.S.C. § 1930. |
|---|---|
| Allowed | With respect to a Claim or Interest, a Claim or Interest (a) scheduled by the Debtor pursuant to Federal Rule of Bankruptcy Procedure 1007-1, other than a Claim scheduled as disputed, contingent, unliquidated, or in an unknown amount; or (b) as to which a proof of claim or interest has been timely filed on or before the bar date (c) as to which any objection has been resolved by a Final Order in favor of the holder, or (d) that has been allowed by a Final Order or by this Plan (e) that is deemed filed pursuant to 11 U.S.C 1111(a) and Bankruptcy Rule 3003, provided that such claim is not scheduled as disputed, contingent, amount unknown, or unliquidated and has not been superseded by a timely filed proof of claim A claim scheduled as disputed, contingent, unliquidated, or as "Unknown" for which no |

| | timely Proof of Claim was filed before the Bar Date is NOT an Allowed Claim. |
|---|---|
| **Bankruptcy Code** | Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as in effect on the Confirmation Date. |
| **Bankruptcy Court** | The United States Bankruptcy Court for the District of Maryland, Greenbelt Division. |
| **Bankruptcy Rules** | The Federal Rules of Bankruptcy Procedure, together with the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland ("Local Rules"). |
| **Broker** | Zanetta Williams, a REALTOR® affiliated with Keller Williams Capital Properties, and Keller Williams Capital Properties, subject to retention as real estate broker under Section 5.2 of this Plan. |
| **Cash** | Legal tender of the United States of America. |
| **Chapter 11 Case** | The above-captioned case, In re 5410 30th Street DC LLC, Case No. 25-19605-LSS, pending in the Bankruptcy Court. |
| **Claim** | As defined in 11 U.S.C. § 101(5). |
| **Claims Objection Deadline** | The date that is ninety (90) days after the Effective Date, or such later date as may be fixed by the Bankruptcy Court, by which the Reorganized Debtor must file objections to Claims (other than the IBI Falcon Claim Objection, which is unaffected by this deadline). |
| **Closing** | The closing of a sale of the Property, whether pursuant to a private contract of sale or a sale under 11 U.S.C. § 363. |
| **Confirmation Date** | The date on which the Bankruptcy Court enters the Confirmation Order on its docket. |
| **Confirmation Order** | The order of the Bankruptcy Court confirming this Plan pursuant to 11 U.S.C. § 1129. |
| **Debtor** | 5410 30th Street DC LLC, a Maryland limited liability company. |
| **Disclosure Statement** | The Second Amended Disclosure Statement for this Plan, as approved by the Bankruptcy Court under 11 U.S.C. § 1125, as it may be amended, modified, or supplemented. |

| Distribution | Any distribution of Cash or other property under this Plan. |
|---|---|
| Effective Date | The first Business Day on which all conditions to the effectiveness of this Plan set forth in Section 8.2 have been satisfied or waived. |
| Estate | The estate created in the Chapter 11 Case pursuant to 11 U.S.C. § 541. |
| Final Order | An order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for reargument or rehearing is pending, has been waived, or, if sought, has been finally resolved without further right of review. |
| General Unsecured Claim | Any Claim against the Debtor that is not a Secured Claim, an Administrative Claim, or a Priority Tax Claim, including, without limitation, any portion of the IBI Falcon Claim that is disallowed as a Secured Claim or reclassified as unsecured, and all undisputed Claims listed on Schedule E/F not superseded by a timely filed proof of claim. |
| IBI Falcon | IBI Falcon US LLC. |
| IBI Falcon Claim | The Claim asserted by IBI Falcon against the Debtor, as reflected in Proof of Claim No. 2-1 (filed January 29, 2026, in the asserted amount of $2,676,531.91) and Amended Proof of Claim No. 2-2 (filed March 28, 2026, asserting the same amount), asserted to be secured by a deed of trust encumbering the Property. |
| IBI Falcon Claim Objection | The Debtor's Objection to Amended Proof of Claim No. 2 (DE #132, filed April 15, 2026), together with the Motion for Determination That IBI Falcon Is Not a Party in Interest (DE #133), and all further proceedings thereon, including any determination that IBI Falcon's claimed lien or note-holder status is void, unperfected, or otherwise unenforceable. |
| Impaired | With respect to a Class of Claims or Interests, a Class that is impaired within the meaning of 11 U.S.C. § 1124. |
| Interest | Any membership interest in the Debtor, including the 100% membership interest held by Zanetta Williams. |

| | |
|---|---|
| **Net Sale Proceeds** | The gross proceeds of any sale of the Property, less customary and reasonable closing costs, transfer and recordation taxes, and the Broker's Bankruptcy-Court-approved commission. |
| **Omnibus Hearing** | The hearing scheduled for August 5, 2026, at which the Bankruptcy Court is expected to consider the Party in Interest Motion, the Motion to Convert, the IBI Falcon Claim Objection, approval of this Disclosure Statement and Plan, approval of the IBI Substitute Disclosure Statement and Plan, and the Stay Relief Motion. |
| **Party in Interest Motion** | The Debtor's Motion for Determination That IBI Falcon Is Not a Party in Interest (DE #133). |
| **Person** | As defined in 11 U.S.C. § 101(41). |
| **Petition Date** | October 14, 2025. |
| **Plan** | This Second Amended Plan of Liquidation, as it may be amended, modified, or supplemented from time to time. |
| **Priority Tax Claim** | Any Claim of a governmental unit entitled to priority under 11 U.S.C. § 507(a)(8), including the claim of the District of Columbia Office of Tax and Revenue ("OTR") for unpaid real property taxes on the Property. |
| **Pro Rata** | The proportion that an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in that Class. |
| **Property** | The real property located at 5631 MacArthur Boulevard NW, Washington, D.C. 20016 (Square/Suffix 1446/0043; Hickory Creek, Lot 15, Section 3), together with all improvements thereon, which constitutes substantially all of the Debtor's assets. |
| **Reorganized Debtor** | The Debtor, or any successor thereto, on and after the Effective Date. |
| **Sale** | The sale of the Property as contemplated by Article V of this Plan. |
| **Santorini** | Santorini Capital, LLC. |
| **Santorini Claim** | The Claim asserted by Santorini to be secured by a junior lien on the Property, in an asserted amount of approximately $975,000.00, as to which no proof of claim has been filed as of the date of this Plan. |

| Secured Claim | A Claim that is secured by a lien on property of the Estate, to the extent of the value of such collateral, as determined in accordance with 11 U.S.C. § 506(a). |
|---|---|
| Stay Relief Motion | IBI Falcon's Motion for Relief from the Automatic Stay (DE #195, filed June 29, 2026). |
| Supplemental Fee Claim | The Administrative Claim of Debtor's counsel, Deirdre T. Johnson, Esq., for supplemental attorney's fees and costs described in Section 2.2, totaling not less than $70,116.60 as of the date of this Plan, subject to supplementation through the Confirmation Date. |
| Unsecured Distribution Fund | The Cash fund described in Section 4.4 of this Plan, from which holders of Allowed Class 4 Claims shall receive their Pro Rata Distributions. |
| U.S. Trustee | The United States Trustee for Region 4. |

**1.2** "Affiliate" means any Person that is an "affiliate" within the meaning of §101(2) of the Bankruptcy Code.

2.1.3 "Allowed Amount" means the dollar amount in which a Claim is allowed.

2.1.4 "Allowed" with respect to any Claim means: (i) a Claim against the Debtor which has been listed on the Debtor's Schedules, as such Schedules may be amended from time to time pursuant to Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been filed, (ii) any Claim for which a Proof of Claim was properly and timely filed in accordance with any order of the Bankruptcy Court, the Plan, the Bankruptcy Code, and the Bankruptcy Rules, as to which no objection to allowance is made by the Debtor' or a Party in Interest or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder or (iii) any claim expressly allowed by a Final Order or pursuant to the Plan. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim has been timely filed, is

not considered Allowed and shall be expunged on the Effective Date without further action by the Debtor and without any further notice to or action, order or approval of the Bankruptcy Court.  The Debtor asserts that, if you failed to file a Proof of Claim and the Debtor's Schedules do not acknowledge your debt, your right to vote and participate in the distribution from the Plan does not exist.  A recognized list of Claims for voting purposes is set forth in the Claims Register and Listing, which lists claims against the Debtor, and is attached as Exhibit 2 to the Disclosure Statement.

2.1.5   "Allowed Class [#] Claim"  means an Allowed Claim in the particular Class described.

2.1.6  "Ballot"  means the ballot, the form of which has been approved by the Bankruptcy Court, accompanying the Disclosure Statement provided to each Holder of a Claim entitled to vote to accept or reject this Plan.

2.1.7   "Bankruptcy Case"  means the Chapter 11 bankruptcy case commenced by the Debtor on the Petition Date  and pending before the Bankruptcy Court under Case No. 25-19605-LSS.

2.1.8  "Bankruptcy Code"  means Title 11 of the United States Code, 11 U.S.C. §§101 et seq., as in effect on the Petition Date, together with all amendments and modifications thereto.

2.1.9  "Bankruptcy Counsel"  means Deirdre T. Johnson, Esq.

2.1.10 "Bankruptcy Court"  means the United States Bankruptcy Court for the District of Maryland or, as the context requires, any other court of competent jurisdiction exercising jurisdiction over the Bankruptcy Case.

2.1.11 "Bankruptcy Rules"  means (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under §2075 of Title 28 of the United States Code, (b) the Federal Rules of Civil Procedure, as amended and promulgated under §2072 of Title 28 of the United States Code, (c)

the Local Rules of the Bankruptcy Court, and (d) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto to the extent applicable to the Bankruptcy Case or proceedings herein, as the case may be.

2.1.12 "Bar Date" means the last date for creditors chose claims or interests are not scheduled or are scheduled as disputed, contingent, or unliquidated in the Debtor's Schedules to file Proofs of Claim. The Bar Date is February 17, 2026 (i) for Creditors other than Governmental Units and (ii) April 13, 2026 for Governmental Units.

2.1.13 "Business Day" means any day other than (a) a Saturday, (b) a Sunday, (c) a "legal holiday" (as "legal holiday" is defined in Bankruptcy Rule 9006(a)), or (d) a day on which commercial banks in the State of Maryland are required or authorized to close by law.

2.1.14 "Cash" means cash, cash equivalents and other readily marketable direct obligations of the United States, as determined in accordance with generally accepted accounting principles, including bank deposits, certificates of deposit (CDs), checks, and similar items. When used in the Plan with respect to a distribution under the Plan, the term "Cash" means lawful currency of the United States, a certified check, a cashiers check, a wire transfer of immediately available funds from any source, or a check drawn on a domestic bank.

2.1.5 "Claim" has the meaning ascribed to such term in §101(5) of the Bankruptcy Code

2.1.16 "Class" means a category of Claims classified in Article 4 of this Plan pursuant to §§1122 and 1123 of the Bankruptcy Code.

2.1.17 "Clerk" means the Clerk of the Bankruptcy Court.

2.1.18 "Clerk's Office" means the Office of the Clerk of the Bankruptcy Court.

2.1.19 "Closing" means the closing of a sale transaction pursuant to the Sale Order(s).

2.1.20 "Closing Date" means the date on which the closing of a sale transaction occurs pursuant to a Sale Order entered with, or in supplementation of, the Confirmation Order.

2.1.21 "Collateral" means Property in which the Estate has (or had) an interest and that secures (or secured), in whole or in part, whether by agreement, statute, or judicial decree, the payment of a Claim.

2.1.22 "Confirmation" or "Confirmation of the Plan" means the approval of the Plan by the Bankruptcy Court at the Confirmation Hearing.

2.1.23 "Confirmation Date" means the date on which the Confirmation Order is entered on the Docket by the Clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 5003(a).

2.1.24 "Confirmation Hearing" means the hearing which will be held before the Bankruptcy Court to consider Confirmation of the Plan and related matters pursuant to §1128(a) of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time. The date and time of the commencement of the Confirmation Hearing is set forth in the Disclosure Statement Approval Order.

2.1.25 "Confirmation Order" means the order of the Bankruptcy Court in the Bankruptcy Case confirming the Plan pursuant to §1129 and other applicable sections of the

2.1.26 "Creditor" means the Holder of a Claim, with the meaning of §101 of the Bankruptcy Code, including Secured Creditors, Unsecured Creditors, and Creditors with Administrative Claims, Priority Tax Claims, and Priority Claims.

2.1.27 "Debt" has the meaning ascribed to such term in §101(12) of the Bankruptcy Code.

2.1.28 "Debtor" means 5410 30th Street DC, LLC, a Maryland limited liability company, as Debtor and Debtor in Possession under the Bankruptcy Case.

2.1.29 "Debtor in Possession" means the Debtor, as Debtor in Possession in the Bankruptcy Case.

2.1.30 "Disallowed Claim" means any Claim which has been disallowed by an order of the Bankruptcy Court, which order has not been stayed pending appeal.

2.1.31 "Disclosure Statement" means that certain Disclosure Statement for Debtor's Plan of Liquidation Pursuant to Chapter 11 of the United States Bankruptcy Code, including all Exhibits thereto, as submitted and filed by the Debtor pursuant to §1125 of the Bankruptcy Code and approved by the Bankruptcy Court in the Disclosure Statement Approval Order.

2.1.32 "Disclosure Statement Approval Order" means that certain order of the Bankruptcy Court, dated TBD, 2026, conditionally approving, among other things, the Disclosure Statement as containing adequate information pursuant to §1125 of the Bankruptcy Code, and setting various deadlines in connection with final approval of the Disclosure Statement and Confirmation of the Plan.

2.1.33 "Disputed Claim" means any Claim or portion thereof (other than a Disallowed Claim) that is not an Allowed Claim and (a) as to which a Proof of Claim has been filed with the Clerk's Office or is deemed filed under applicable law or order of the Bankruptcy Court, or (b) which has been included in the Schedules, and, in the case of subparagraph (a) and (b) above, as to which an objection has been or may be timely filed or deemed filed under the Plan, the Bankruptcy Code, the Bankruptcy Rules, or an Order of the Bankruptcy Court and any such objection has not been (1) withdrawn, (ii) overruled by an order of the Bankruptcy Court, or (iii) sustained by an order of the Bankruptcy Court. To the

extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the amount subject to objection.

2.1.34 "Disputed" when used as an adjective herein (such as Disputed Administrative Claim, Disputed Priority Tax Claim, Disputed Priority Claim, Disputed Secured Claim, and Disputed Unsecured Claim) has a corresponding meaning.

2.1.35 "Disputed Claims Reserve" means Cash to be set aside by the Debtor in a separate interest-bearing account, in an amount sufficient to pay Disputed Claims in accordance with the provisions hereof, and as to be maintained as set forth more fully herein.

2.1.36 "Distribution" means the Cash that is required to be distributed under this Plan to the Holders of Allowed Claims.

2.1.37 "Distribution Date" means the date or dates under the Plan when a Distribution is required to be made in accordance with the Plan.

2.1.38 "Docket" means the docket in the Bankruptcy Case maintained by the Clerk.

2.1.39 "Effective Date" means a date selected by the Debtor, but in no event later than ninety (90) days after the Confirmation Date.

2.1.40 "Entity" has the meaning ascribed to such term in §101(15) of the Bankruptcy Code.

2.1.41 "Estate" means the Debtor's bankruptcy estate created pursuant to §541 of the Bankruptcy Code.

2.1.42 "Exculpated Parties" has the meaning ascribed to such term in Article 10.

2.1.43 "Exhibit" means an exhibit to the Disclosure Statement.

2.1.44 "Final Order" means an order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified, or amended and (i) as to which

14

~~the time to appeal or seek reconsideration or rehearing thereof or file a petition for certiorari has expired; (ii) in the event of a motion for reconsideration or rehearing or petition for certiorari has been filed, such motion or petition shall have been denied by an order or judgment of the Bankruptcy Court or other applicable court; or (iii) in the event an appeal is filed and pending, a stay pending appeal has not been entered; provided, however, that with respect to an order or judgment of the Bankruptcy Court allowing or disallowing a Claim, such order or judgment shall have become final and non-appealable; and provided further, however, that the possibility of a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.~~

~~2.1.45 "General Administrative Claims Bar Date" means the date by which all requests for payment of Administrative Claims shall be filed with the Bankruptcy Court and served upon the Debtor, which date shall be no later than sixty (60) days after the Effective Date.~~

~~2.1.46 "Governmental Unit" has the meaning ascribed to such term in §101(27) of the Bankruptcy Code.~~

~~2.1.47 "Holder" means as to any Claim, (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, (ii) if no Proof of Claim has been filed with respect to such claim, the owner or holder of such Claim as such is reflected in the Schedules or the books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court, (iii) if the owner or holder of such Claim has assigned or transferred the Claim to a third party and the Debtor has received sufficient written evidence of such assignment or transfer, the assignee or transferee; or (iv) any subrogee of a holder of a Secured Claim.~~

2.1.48 "Impaired" refers to any Claim that is impaired within the meaning of §1124 of the Bankruptcy Code.

2.1.49 "Indemnification Rights" means any obligations or rights of the Debtor to indemnify, reimburse, advance, or contribute to the losses, liabilities, or expenses of an Indemnitee pursuant to the Debtor's articles of organization, operating agreement, or policy of providing indemnification, applicable law, or a specific agreement in respect of any claims, demands, suits, causes of action, or proceedings against an indemnitee based upon any act or omission related to an Indemnitee's service with, for, or on behalf of the Debtor. Indemnification rights include, but are not limited to Zanetta Williams, Sole Member of the Debtor LLC.

2.1.50 "Indemnitee" means all present and former members, partners, agents, or representatives of the Debtor LLC entitled to assert Indemnification Rights.

2.1.51 "Lenders" means senior secured creditor (a) IBI Falcon US, LLC, and (b) junior secured creditor Santorini Capital, LLC. Further definitions relating to the Lender(s) and their respective collateral and loan documents are contained in this Section 2.1.

2.1.52 "Liabilities" means any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now, or hereafter owing, arising, due or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, in law, equity or otherwise, of or relating to the Debtor or any predecessor thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtors or any predecessor thereof, and Property of the Debtor, the business or operations of the Debtor, the Bankruptcy Case, or the Plan, including any and all liabilities, obligations, judgments, damages,

charges, costs, Debts, and indebtedness based in whole or in part upon any claim of or relating to successor liability, transferee liability,  or other similar theory.

2.1.53  "Lien"  means, with respect to any property, any mortgage, pledge, security interest, lien, right of first refusal, option or other right to acquire, assignment, charge, claim, easement, conditional sale agreement, title retention agreement, defect in title, or other encumbrance  or hypothecation or restriction of any nature pertaining to or affecting such Property, whether voluntary   or involuntary and whether arising by law, contract or otherwise.

2.1.54  "Net Sale Proceeds"  means the cash generated from the sale of one or more Real Property Assets, less the expenses, closing costs, taxes, Post-Confirmation Expenses, and Administrative Claims incurred in furtherance of such sale.

2.1.55  "Official Bankruptcy Forms" means forms promulgated and required by the Bankruptcy Court.

2.1.56  "Paid in Full"  means the Debtor's payment obligation to a particular Creditor under this Plan has been fully satisfied.

2.1.57 "Party in Interest" means the Debtor, or any Creditor of them.

2.1.58   "Person"   means any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency or political subdivision thereof, or any Entity  or other institution of any type whatsoever, including any "person" as such term is defined in §101(41) of the Bankruptcy Code.

2.1.59  "Petition Date"  means October 14, 2025 which is the date on which the Debtor commenced the Bankruptcy Case by filing it voluntary petition under Chapter 11 of the Bankruptcy Code.

2.1.60  "Plan" means the Debtor's Plan of Liquidation Pursuant to Chapter 11 of the United States bankruptcy Code dated February 10, 2026, as the

same may be amended, supplemented, modified or amended and restated from time to time in accordance with the provisions of the Plan and the Bankruptcy Code.

2.1.61 "Plan Documents" means all documents that aid in effectuating the Plan.

2.1.62 "Plan Term" means the period required for liquidation of all Real Property Asset(s) and distribution of proceeds. It is estimated to be a 24 month Plan Term with distributions occurring as rapidly as possible at, or promptly following, a closing on a sale of Debtor's Real Property Asset.

2.1.63 "Post-Confirmation Expenses" means the fees and expenses incurred by the Debtor or its Professionals following the Confirmation Date (including the fees and costs of Professionals) for the purpose of (i) objecting to and resolving Disputed Claims and Disputed Liens; (ii) selling the real property asset; (iii) effectuating Distributions under the Plan; or (iv) otherwise consummating the Plan and closing the Debtor's Bankruptcy Case.

2.1.64 "Prepetition" means arising or accruing prior to the Petition Date.

2.1.65 "Priority Claim" means a Claim, other than an Administrative Claim or Priority Tax Claim, entitled to priority in payment pursuant to §507 of the Bankruptcy Code.

2.1.66 "Priority Tax Claim" means a Claim of a Governmental Unit that is entitled to a priority in payment pursuant to §507(a)(8) of the Bankruptcy Code.

2.1.67 "Professional" means any person employed in the Bankruptcy Case pursuant to a Final Order of the Bankruptcy Court in accordance with §§327 or 1103 of the Bankruptcy Code.

2.1.68 "Proof of Claim" means a proof of claim filed by a Creditor with the Bankruptcy Court in which the Creditor sets forth the amount of its Claim in accordance with Bankruptcy Rule(s) 3001, 3002, or 3003.

2.1.69 "Property" means any property or asset of any kind, whether real, leased, personal or mixed, tangible or intangible, whether now existing or hereafter acquired or arising, and wherever located , and any interest of any kind therein, including without limitation the Real Property Assets.

2.1.70 "Real Property Asset" means the real property located at 5631 Macarthur Blvd NW Washington, DC 20016.

2.1.71 "Released Parties" means the Debtor, the Debtor's Estate, and their professionals.

2.1.72 "Sale Order" means one or more order(s) authorizing the sale of Assets/Property free and clear of liens, claims, and encumbrances, to be entered by the Court approving the sale of the Debtor's Real Property Asset pursuant to §363 of the Bankruptcy Code pursuant to or in supplementation of the Confirmation Order.

2.1.73 "Schedules" means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor pursuant to Bankruptcy Code §521, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended from time to time through the Confirmation Date.

2.1.74 "Secured Claim" means any Claim of a Creditor that is (a) secured in whole or in part, as of the Petition Date, by a Lien (i) on Collateral and (ii) which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or (b) subject to setoff under §553 of the Bankruptcy Code, but, with respect to both (a) and (b) above, only to the extent of the value of such Creditor's interest in the

Estate's interest in such Collateral or the amount subject to setoff, as the case may be. Except as otherwise provided in the Plan, if the value of a Creditor's interest in the Estate's interest in such collateral or the amount subject to setoff is less than the amount of the Allowed Claim, then such deficiency shall constitute an Unsecured Claim.

2.1.75 "Secured Creditor" means any Creditor holding a Secured Claim.

2.1.76 "Tax" means any tax, charge, fee, levy, or other assessment by any federal, state, local, or foreign taxing authority, including without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation, and withholding tax. "Tax" shall include any interest or additions attributable to, or imposed on or with respect to, such assessments.

2.1.77 "Tax Claim" means any Claim, pre-petition or post-petition, relating to a Tax.

2.1.78 "Unimpaired" refers to a Claim that is not impaired.

2.1.79 "Unsecured Claim" means any Claim which is not an Administrative Claim, Priority Tax Claim, Priority Claim, or a Secured Claim, including (a) any Claim arising from the rejection of an executory contract or unexpired lease under §365 of the Bankruptcy Code, (b) except as otherwise provided in the Plan, any portion of a Claim to the extent the value of the Creditor's interest in the Estate's interest in the Collateral securing such Claim is less than the amount of the Allowed Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Allowed Claim, as determined pursuant to §506(a) of the Bankruptcy Code, (c) any Claim arising from the provision of goods or services to the Debtor prior to the Petition Date, and (d) any Claim designated as an Unsecured Claim elsewhere in the Plan.

20

2.1.80 "Unsecured Creditor" means any Creditor holding an unsecured Claim.

2.1.81 "Unsecured Priority Claim" means Claims of Governmental Units for pre-petition tax liability. The unclassified Unsecured Priority Claims expressly exclude claims under §507(a)(1)(a).

2.1.82 "U.S. Trustee" or "United States Trustee" means the office of the United States Trustee.

2.2 **Rules of Construction.** Capitalized terms used in this Plan shall have the meaning set forth herein. In the event a capitalized term is not defined herein, then it shall have the meaning given in the Bankruptcy Code or the Bankruptcy Rules. In the event a capitalized term is not defined in any of the Plan, the Bankruptcy Code, or the Bankruptcy Rules, then it shall have the meaning such term has in ordinary usage and if one or more meaning for such term exists in ordinary usage, then it shall have the meaning which is most consistent with the purposes of this Plan and the Bankruptcy Code. The terms of this Plan shall not be construed against any person, but shall be given reasonable construction , consistent with the purposes hereof, and of the Bankruptcy Code.

The words "herein", "hereof", "hereunder", and others of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.

## ARTICLE 3
## TREATMENT OF ADMINISTRATIVE EXPENSE
## CLAIMS, PRIORITY CLAIMS, AND PRIORITY TAX CLAIMS

As required by the Bankruptcy Code, this Plan places Claims into various Classes according to their right to priority. However, in accordance with the provisions of §1123(a)(1) of the Bankruptcy Code, Administrative Claims, certain Priority Claims, and Priority Tax Claims are deemed "unclassified". These Claims are not considered impaired pursuant to §1129(a)(9)(A) or (C), and they do not vote

on this Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Debtor has not placed these Claim(s) in a Class. The treatment of these unclassified Claims is provided below.

3.1    Allowed Administrative Claims.    Each Holder of an Allowed Administrative Claim, subject to the General Administrative Claims Bar Date, shall be paid in accordance with the priority of distribution set forth in §507(a)(2) of the Bankruptcy Code, as ordered by a Final Order of the Bankruptcy Court. Any Holder of an Allowed Administrative Claim may agree to a different, but not better, treatment of its Claim, in which event the Debtor shall pay such Claim in accordance with such agreement. In the case of a Professional with an Allowed Administrative Claim, that Professional shall be paid first from any retainer held by such Professional, and as to a balance, if any, after application of the retainer, shall be paid from Cash.

3.2    Allowed Priority Claims. Each Holder of an Allowed Priority Claim shall be paid in Cash in accordance with the priority of distribution set forth in §507(a)(2), (a)(3)m or (a)(7) of the Bankruptcy Code, on the latest of (a) the tenth (10th) Business Day after the day upon which such Claim becomes an Allowed Claim, (b) the date upon which such Allowed Claim becomes due according to its terms, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court. Any Holder of an Allowed Priority Claim may agree to a different, but not better, treatment of its Claim, in which event the Debtor shall pay such Claim in accordance with such agreement.

3.3    Priority Tax Claims. Each Holder of an Allowed Priority Tax Claim shall receive under this Plan  on account of such Claim, payment in Cash in accordance with §507(a)(8) as specified in §1129(a)(9)(C) of the Bankruptcy Code commencing on the latter of (i) the Effective Date or as soon thereafter a reasonably practicable, or (ii) as soon as reasonably practicable after the date of a Final Order

Allowing such Priority Tax Claim. Any Holder of an Allowed Priority Tax Claim may agree to a different, but not better, treatment of its Claim, in which event the Debtor shall pay such Claim in accordance with such agreement.

A. Washington, District of Columbia. The District of Columbia Government Office of Tax and Revenue is listed on Debtor's Schedule E/F as a Priority tax Creditor in the amount of $30,000.00 for real property taxes.

## ARTICLE 4
## CLASSIFICATION OF CLAIMS

4.1 General Overview. As required by §§1122 and 1123, this Plan places Claims into various Classes according to their right to priority and other relative rights. A Claim is in a particular Class for purposes of voting on, and of receiving Distributions pursuant to the Plan only to the extent such Claim has not been paid, released, or otherwise settled prior to the Effective Date. Administrative Expense Claims and Priority Claims of the kinds specified in §507(a)(2) and (a)(8) (set forth in Article 2 herein) have not been classified and are excluded from the following classes in accordance with §1123 (a)(1).

4.2 Designation of Classes. This Plan provides for the establishment of the following Classes of Claims:

| CLASS | DESIGNATION | IMPAIRMENT | ENTITLED TO VOTE |
|-------|-------------|------------|------------------|
| 1 | Allowed Secured Claim of IBI Falcon | YES | YES |
| 2 | Allowed Secured Claim of Santorini Capital | YES | YES |
| 3 | Allowed Priority Unsecured Claims | YES | YES |
| 4 | Allowed General Unsecured Claims | YES | YES |

## ARTICLE 5

23

TREATMENT OF CLAIMS

Allowed Claims under this Plan shall be treated in the manner set forth in this Article 5.  The treatment of, and the consideration to be received by Holder of Allowed Claims hereunder shall be in full and final satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims (of any nature whatsoever), including any Liens securing such Allowed Claims.  All Allowed Claims will be paid in order of their priority, and any sale of the Debtor's Real Property shall be free and clear of all Liens, claims, and encumbrances pursuant to the Confirmation Order.

5.1     Class 1:  Allowed Secured Claim of IBI Falcon

A.     Treatment: To the extent that the Claim of IBI Falcon is an Allowed Claim, the Holder of the IBI Falcon Secured Claim shall receive payment in full of the undisputed portion of its Allowed Secured Claim, including principal, interest, Allowed attorneys' fees incurred prior to the Petition Date and during the Bankruptcy Case in enforcing its rights under the Loan Documents, and any other allowed charges required by the Loan Documents, through the date on which the undisputed portion of the Allowed Claim is Paid in Full, on the later to occur of (i) as soon as practicable on or after the Closing Date, or (ii) the Effective Date.  Any disputed amounts claimed by IBI Falcon shall be paid into escrow at Closing and released only upon agreement of the Debtor and IBI Falcon or upon Final Order of the Court. The Debtor anticipates paying IBI Falcon on its Allowed Secured Claim at Closing.

B. Lien Retention: The Holder of the IBI Falcon Secured Claim shall release any lien on the Real Property Asset, with any such lien attaching to the proceeds of any sale. The Confirmation Order and any Sale Order shall provide that

24

IBI Falcon is paid at Closing and that purchasers of Debtor's Property are purchasing the Property free and clear of any liens, claims and encumbrances.

C. Impairment: Class 1 is Impaired by this Plan and, therefore, the Holder of the Claim in Class 1 is entitled to vote to accept or reject the Plan

5.2    Class 2:Allowed Secured Claim of Santorini Capital LLC

A. Treatment: To the extent that the Claim of Santorini Capital is an Allowed Claim not previously paid, the Holder of the Santorini Capital Secured Claim shall receive payment in full of its Allowed Secured Claim, including principal, interest, Allowed attorneys' fees incurred prior to the Petition Date and during the Bankruptcy Case in enforcing its rights under the Loan Documents, and any other allowed charges required by the Loan Documents, through the date on which the Allowed Claim is Paid in Full, on the later to occur of (i) as soon as practicable on or after the Closing Date, or (ii) the Effective Date.  The Debtor anticipates paying Santorini Capital on its Allowed Secured Claim at Closing.

B. Lien Retention: The Holder of the Santorini Capital Secured Claim shall release any lien on the Real Property Asset, with any such lien attaching to the proceeds of any sale. The Confirmation Order and any Sale Order shall provide that Santorini Capital is paid at Closing and that purchasers of Debtor's Property are purchasing the Property free and clear of any liens, claims and encumbrances.

C. Impairment: Class 2 is Impaired by this Plan and, therefore, the Holder of the Claim in Class 1 is entitled to vote to accept or reject the Plan.

5.3    Class 3: Allowed Priority Unsecured Claims

A. Treatment: After Class 1 and 2 Claims have been paid in full, Holders of Allowed Priority Unsecured Claims shall receive payments on their Allowed Priority Unsecured Claims in order of their priority. The Confirmation

Order and any Sale Order(s) shall provide that purchasers are purchasing the Debtor's Property free and clear of any liens, claims and encumbrances.

B. Impairment: Class 3 is Impaired by this Plan and, therefore, each Holder of a Claim in Class 3 is entitled to vote to accept or reject the Plan.

5.4    Class 4: Allowed General Unsecured Claims

A. Treatment: **After payment in full of all Allowed Administrative Expenses (including, without limitation, professional fees, sale-related costs, commissions, and closing expenses), Allowed Priority Claims, and Allowed Secured Claims in accordance with this Plan, the Holder of each Allowed General Unsecured Claim shall receive a pro rata distribution, if any, from Net Sale Proceeds and/or other available estate funds remaining after such payments.**

No distribution shall be made on account of any General Unsecured Claim that is disputed, contingent, unliquidated, or unsupported by sufficient documentation unless and until such claim becomes an Allowed Claim by agreement or Final Order of the Court.

Any General Unsecured Claim for which a timely Proof of Claim is not filed in accordance with applicable Bankruptcy Rules and orders of the Court shall be deemed disallowed and shall not receive any distribution under this Plan.

No distribution shall be made on account of any General Unsecured Claim unless such claim constitutes an Allowed Claim supported by sufficient documentation in accordance with Bankruptcy Rule 3001 and applicable law.

The Debtor reserves all rights to object to any General Unsecured Claim, including on the grounds that such claim does not arise from, relate to, or benefit the Debtor's estate or the Property.

**Distributions, if any, shall be made as soon as reasonably practicable following the closing of any sale of the Property and reconciliation of claims.**

The Claims Register listing all General Unsecured Claims is attached to the Disclosure Statement as Exhibit 2.

B. Impairment: Class 4 is Impaired by this Plan and, therefore, each Holder of a Claim in Class 4 is entitled to vote to accept or reject the Plan.

**5.5    Class 5: Equity Interests**

A. Treatment:   All equity interests in the Debtor shall be retained by the Debtor's Sole Member. To the extent any funds remain after payment in full of all Allowed Administrative Expenses, Allowed Priority Claims, and other Allowed Claims in accordance with this Plan, any remaining funds shall be distributed to the Debtor's Sole Member.

B. Impairment: Class 5 is Impaired by this Plan and, therefore, each Holder of a Claim in Class 5 is entitled to vote to accept or reject the Plan.

ARTICLE 6
IMPLEMENTATION OF THE PLAN

6.1    This Article 6 explains the means by which the Debtor intends to effectuate the reorganization provided for hereunder and how the Debtor intends to fund the obligations to Creditors undertaken in this Plan.  This Article 6 also provides information on other material issues bearing upon the performance of this Plan.

6.2    Funding.  This Plan will be funded from one (1) source:  Net Sale Proceeds generated by the sale of the Debtor's Real Property Asset in accordance with the Confirmation Order and any Sale Order.

6.2.1   Sale of Real Property Asset.   This Plan contemplates the sale of Debtor's Real Property Asset.   The Confirmation Order shall incorporate by reference and/or provide for supplemental orders authorizing the sale free and clear of liens, claims, and encumbrances, and authorizing the Debtor to take all actions required to consummate the sale of the Real Property Asset.   The sale of the Real Property Asset pursuant to the Sale Order and this Plan, in all respects, shall be a sale pursuant to §§105 and 363 of the Bankruptcy Code, in accordance with and under the provisions §1123 of the Bankruptcy Code, under a Plan confirmed pursuant to §1129 of the Bankruptcy Code, effectuated pursuant to §1141 of the Bankruptcy Code, and in accordance with §1146 of the Bankruptcy Code and exempt from the payment of transfer and recordation taxes.[1]  See Fla Dept of Revenue v Picadilly Cafeterias, Inc., 2007 U.S. LEXIS 13007, 552 U.S. 1074, 128 S. Ct. 741, 169 L. Ed. 2d 579, 76 U.S.L.W. 3303.  Closing on the sale of Debtor's Real Property Asset shall convey title to the purchaser free of all liens, claims, encumbrances and interests to the extent provided in the Sale Order, and without successor liability.   The purchaser of the Debtor's Real Property Asset shall conclusively be considered to have purchased such Asset "in good faith" pursuant to Bankruptcy Code §363(m), and the Confirmation Order shall include a specific finding and determination to that effect.   If a Person who asserts a lien with respect to the Real Property Asset so sold does not object to this Plan, such Person shall be deemed to have consented to the sale free and clear of such Person's asserted Lien.

6.3   Conditions of Effectiveness of Plan.  Under the Plan, in order for the Effective Date to occur, the conditions of the Debtor as set forth in the Plan and described below must be satisfied or waived:

---

[1] Section 1146(a) states that "[t]he issuance, transfer, or exchange of a security, or the making of a delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax."

The conditions precedent to the Effective Date of the Plan as to the Debtor are as follows:

1.  The Bankruptcy Court shall have entered the Confirmation Order;

2.  Any other order necessary to satisfy any conditions to effectiveness of the Plan shall be a Final Order; and

3.  All other documents provided for under the Plan shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefitted by such documents.

If any of the conditions to consummation and the occurrence of the Effective Date as to the Debtor have not been satisfied or duly waived by the Debtor (i) on or before the first Business Day that is more than thirty (30) days after the Confirmation Date or (ii) by such later date as is proposed by the Debtor after notice and a hearing approved by the Bankruptcy Court, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such motion, the Confirmation Order shall not be vacated if each of the conditions to the consummation is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated for failure to satisfy the conditions precedent, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any Administrative Expenses, Claims against the Debtor, (b) prejudice in any manner the rights of the Holder of any Administrative Expense, against the Debtor, or (c) prejudice in any manner the rights of the Debtor in its Bankruptcy Case.

6.4  Failure to Achieve Effective Date. In the event that the transactions contemplated in the Sale Order do not occur for any reason, or the Effective Date does not otherwise occur, The Debtor shall have the right to modify the Plan pursuant

to §1127 of the Bankruptcy Code, and all Creditors expressly reserve the right to support or oppose such Plan modification.

6.5   Continued Corporate Existence.   Upon completion of the Plan, and filing of all outstanding tax returns, the Debtor shall not continue to exist as a limited liability company, and shall terminate such existence under applicable law.

## ARTICLE 7

### ACCEPTANCE OR REJECTION OF THE PLAN

7.1   Each Impaired Class Entitled to Vote Separately.   The holders of Claims in each impaired Class of Claims shall be entitled to vote separately to accept or reject the Plan.   Because this Plan pays all Allowed Creditors in order of their priority in complete liquidation of all Property, the Debtor asserts that all Classes are impaired and are entitled to vote.

7.2   Acceptance by an Impaired Class.   Consistent with §1126(c) of the Bankruptcy Code and except as provided for in §1126(e) of the Bankruptcy Code, an impaired Class of Claims shall have accepted this Plan if it is accepted by at least two thirds in dollar amount and more than one half in number of the Holders of Allowed Claims of such Class that have timely and properly voted on this Plan.

7.3   Impairment Controversies.   If a controversy arises as to whether any Claim of Class of Claims is Impaired under the Plan, such Claim or Class of Claims shall be treated as specified in the Plan unless the Bankruptcy Court shall determine such controversy upon motion of the party challenging the characterization of a particular Claim or a particular Class of Claims under the Plan.

7.4 Cram Down. The Debtor may utilize the provisions of §1129(b) of the Bankruptcy Code to satisfy the requirements of confirmation of this Plan over the rejection, if any, of any Class entitled to vote to accept or reject this Plan.

## ARTICLE 8
## PROVISIONS GOVERNING DISTRIBUTIONS

8.1 Allocation of Distributions. Except as otherwise provided herein, distributions to any Holder of an Allowed Claim shall be allocated first to the principal portion of any such Allowed Claim , and, only after the principal portion of any such Allowed Claim is satisfied in full, to any portion of such Allowed Claim comprising interest or other charges (but solely to the extent that such interest or other charges are an allowable portion of such Allowed Claim). All payments shall be made in accordance with the priorities established by the Bankruptcy Code.

8.2 Delivery of Distributions and Undeliverable Distributions. All distributions To Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the Schedules filed with the Bankruptcy Court unless superseded by the address as set forth on the Proof of Claim filed by such Holder(s) or other writing notifying the Debtor of a change of address. If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Debtor is notified of such Holder's then-current address, at which time any/all missed distributions shall be made to such Holder, without interest from the date of the first attempted distribution. All Claims for undeliverable distributions shall be made on or before sixty (60) days after the date such undeliverable distribution was initially made. After such date, all unclaimed property shall, at the discretion of the Debtor, be used to satisfy the costs of

administering and fully consummating the Plan, to the extent such costs would otherwise be paid from available Cash, or become available Cash for distribution in accordance with the Plan, and the Holder of any such Claim shall not be entitled to any other or further distribution under the Plan on account of such Claim.

8.3    Cure Non-Compliance.  If any Party in Interest holding any Allowed Claim fails to Receive a payment as provided under the Plan, or if any Party in Interest questions the Debtor's compliance with the Plan in any way, such Party shall give the Debtor written notice thereof, and the Debtor may cure such non-compliance within sixty (60) days of such notice.

8.4    Time Bar for Check Payments.  Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.  The Holder of the Allowed Claim to whom a check originally was issued shall make any request for reissuance of a check so voided to the Debtor.  Any such request for reissuance shall be made on or before thirty (30) days after the expiration of the sixty (60) day period following the date of issuance of such check.  After such date, all funds held on account of such voided check shall, at the discretion of the Debtor, be used to satisfy the costs of administering and fully consummating the Plan, to the extent such costs would otherwise be paid from available Cash, or become available Cash for distribution in accordance with the Plan, and the Holder of any such Claim shall not be entitled to any other or further distribution under the Plan on account of such Claim.

8.5    Setoffs.  The Debtor may, in accordance with §553 of the Bankruptcy Code and applicable non-bankruptcy law, setoff against any allowed Claim and the distributions to be made pursuant to this Plan on account of such Claim (before any distribution is made on account of such Claim) the claims, rights, and causes of

action of any nature that the Debtor may hold against the Holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claims, rights, and causes of action that the Debtor may possess against such Holder. The Debtor shall have the exclusive right and authority to settle claims and recognize setoff rights.

ARTICLE 9
PROCEDURES FOR RESOLVING
AND TREATING DISPUTED CLAIMS

9.1 No Distribution Pending Allowance. Notwithstanding any other provision of this Plan, no payments shall be distributed under this Plan on account of any Disputed Claim unless and until such Claim becomes an Allowed Claim.

9.2 Resolution of Disputed Claims. Notwithstanding any other provision of this Plan to the contrary, after the Confirmation Date, unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Debtor shall have the exclusive right (except as to applications for allowances of compensation and reimbursement of expenses under §§330 and 503 of the Bankruptcy Code, and except as to any objections which have been filed prior to the Confirmation Date by any party) to make and file objections to Claims and shall serve a copy of each objection upon the Holder of the Claim to which the objection is made as soon as practicable , but in to event later than sixty (60) days after the Confirmation Date. From and after the Confirmation Date, all objections shall be litigated to a Final Order except to the extent the Debtor elects to withdraw any such objection or the

Debtor and the Holder elect to compromise, settle, or otherwise resolve any Disputed Claim for an amount of Ten Thousand Dollars ($10,000.00) or more subject to the approval of the Bankruptcy Court  and for amounts of Nine Thousand Nine Hundred Ninety Nine and 99/100 Dollars ($9,999.99) or less without approval of the Bankruptcy Court.

9.3    Estimation.  The Debtor may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to §502(c) of the Bankruptcy Code regardless of whether the Debtor has previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim  at any time, including during litigation concerning any objection to such Claim.  In the event that the Bankruptcy Court estimates any Disputed Claim, the estimated amount may constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim.  All of the aforementioned Claim objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.  On and after the Confirmation Date, Claims which have been estimated subsequently  may be compromised, settled, withdrawn, or otherwise resolved subject to approval by the Bankruptcy Court as provided in this Plan.

9.4    Cancellation of Liens.  Except as otherwise provided herein, as of The Effective Date, any Lien securing any Secured Claim shall be deemed released and discharged, and the Holder of each such Secured Claim shall be authorized and directed to release any Collateral  or other property of the Debtor held by such Holder and to take such actions as may be reasonably requested by the Debtor to evidence release of such Lien, including without limitation, by the execution, delivery, and filing or recording of such releases as may be requested by the Debtor.

## ARTICLE 10
## DISCHARGE, EXCULPATION FROM
## LIABILITY, RELEASE, AND GENERAL INJUNCTION

10.1   Discharge of Claims.   Except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall operate as a discharge, pursuant to §1141(d) of the Bankruptcy Code to the fullest extent permitted by applicable law, as of the Effective Date, of the Debtor, and any of their successors or assigns, from any and all Debts, Liabilities or Claims of any nature whatsoever against the Debtor that arose at any time prior to the Effective Date, including any and all Claims for principal and interest, whether accrued before, on, or after the Petition Date.  Except as otherwise expressly provided herein or in the Confirmation Order, but without limiting the generality of the foregoing, on the Effective Date, the Debtor and any of their successors or assigns shall be discharged, to the fullest extent permitted by applicable law, from any Claim or Debt that arose prior to the Effective Date and from any and all Debts of the kind specified in §§502(g), §502(h), or §502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based on such Debt was filed pursuant to §501 of the Bankruptcy Code, (b) a Claim based on such Debt is an Allowed Claim pursuant to §502 of the Bankruptcy Code, or (c) the Holder of a Claim based on such Debt has voted to accept the Plan. As of the Effective Date, all Persons, including all Holders of claims, shall be forever precluded and permanently enjoined from asserting directly or indirectly against the Debtor, and any of their successors and assigns, any other or further Claims, Debts, rights, causes of action, remedies, Liabilities or interests based upon any act, omission, document, instrument, transaction, event, or other activity of any kind or nature that occurred prior to the Effective date or that occurs in connection with implementation of the Plan, and the Confirmation Order shall contain appropriate injunctive language to that effect.  In accordance with the foregoing, except as

35

~~otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall be a judicial determination of the discharge or termination of all such Claims and other Debts and liabilities against the Debtor, pursuant to §§524 and 1141 of the Bankruptcy Code, to the fullest extent permitted by applicable law, and such discharge shall void any judgment obtained against the Debtor, at any time, to the extent that such judgment relates to a discharged or terminated Claim, Liability, Debt, or interest. Notwithstanding the foregoing, the Debtor shall remain obligated to make payments and distributions to the Holders of Allowed Claims as required pursuant to the Plan.~~

~~10.2   Release.   Upon completion of all payments under the Plan, for good and valuable consideration, the adequacy of which is hereby confirmed, Creditors Claims shall be discharged and not have or incur, and the Debtor is hereby released from, any claim, obligation, cause of action, or liability to one another, for any act or omission before or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the operation of the Debtor's business (other than liabilities incurred in the ordinary course of business), this Chapter 11 case, the filing of this case, the formulation, preparation, dissemination, approval, confirmation, administration, implementation, or consummation of the Plan.~~

For purposes of this Plan: (a) any reference to the Bankruptcy Code or the Local Bankruptcy Rules, includes any successor statute, rule, or regulation; (b) unless otherwise specified, all references to Articles and Sections are references to Articles and Sections of this Plan; (c) words denoting the singular include the plural and vice versa; (d) the words "include," "includes," and "including" are not limiting; and (e) the rules of construction set forth in 11 U.S.C. § 102 apply.

## ARTICLE II

## ADMINISTRATIVE CLAIMS

In accordance with 11 U.S.C. § 1123(a)(1), Administrative Claims are not classified under this Plan.

### 2.1 Administrative Claims.

Except to the extent that a holder of an Allowed Administrative Claim agrees to different treatment, each holder of an Allowed Administrative Claim shall be paid the full unpaid amount of such Allowed Administrative Claim in Cash (a) on the Effective Date, or as soon as reasonably practicable thereafter, or (b) if such Administrative Claim is not Allowed as of the Effective Date, within fourteen (14) days after the date such Claim becomes an Allowed Administrative Claim,

consistent with 11 U.S.C. § 1129(a)(9)(A). Professional Fee Claims remain subject to final review and approval by the Bankruptcy Court under 11 U.S.C. §§ 330 and 331. No Professional Fee Claim shall be paid, in the ordinary course of business or otherwise, from Net Sale Proceeds, Cash on hand, or any other source, unless and until allowed by a separate order of the Bankruptcy Court entered on a properly noticed fee application filed in accordance with 11 U.S.C. §§ 330 and 331 and Local Bankruptcy Rule 2016-1; this Plan does not authorize payment of any Professional Fee Claim without prior Bankruptcy Court approval.

**2.2 Supplemental Attorney Fee Claim.**

Deirdre T. Johnson, Esq., counsel for the Debtor, holds a Professional Fee Claim for supplemental attorney's fees and costs incurred in this Chapter 11 Case that, as of the date of this Plan, totals not less than $70,116.60 (the "Supplemental Fee Claim"). The Supplemental Fee Claim is an Administrative Claim, treated in accordance with Section 2.1, and remains subject to a fee application and final review and allowance by the Bankruptcy Court under 11 U.S.C. §§ 330 and 331 before payment. The Debtor has included the Supplemental Fee Claim, as it may be supplemented through the Confirmation Date, in the projections and liquidation analysis set forth in the Disclosure Statement.

**2.3 Statutory Fees.**

All fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court, have been or will be paid in full on or before the Effective Date, consistent with 11 U.S.C. § 1129(a)(12).

**ARTICLE III**

**CLASSIFICATION OF CLAIMS AND INTERESTS**

Pursuant to 11 U.S.C. § 1122, Claims against and Interests in the Debtor (other than Administrative Claims, which are unclassified pursuant to Article II) are classified for all purposes, including voting, confirmation, and distribution under this Plan, as follows. A Claim or Interest is placed in a particular Class only to the extent the Claim or Interest falls within the description of that Class, and is placed in a different Class to the extent the remainder of the Claim or Interest falls within the description of a different Class. Each Class of Claims scheduled or filed against the Debtor — including undisputed general unsecured claims scheduled on Schedule E/F for which no proof of claim has been filed — is classified in Class 4, so that no creditor is omitted from the Plan's classification scheme.

| Class | Designation | Impairment | Voting Rights |
|---|---|---|---|
| Class 1 | Priority Tax Claims | Unimpaired if paid in full on or before the Effective Date; otherwise Impaired | Not entitled to vote if Unimpaired |

| Class | Designation | Impairment | Voting Rights |
|-------|-------------|------------|---------------|
|  |  |  | (deemed to accept under 11 U.S.C. § 1126(f)); entitled to vote if Impaired |
| Class 2 | IBI Falcon Secured Claim | Impaired | Entitled to vote (subject to resolution of the Party in Interest Motion) |
| Class 3 | Santorini Secured Claim | Unimpaired | Not entitled to vote (deemed to accept under 11 U.S.C. § 1126(f)) |
| Class 4 | General Unsecured Claims | Impaired | Entitled to vote |
| Class 5 | Equity Interests | Impaired | Entitled to vote |

## ARTICLE IV

### TREATMENT OF CLAIMS AND INTERESTS

**4.1 Class 1 – Priority Tax Claims (Unimpaired if Paid in Full; Otherwise Impaired).**

Except to the extent that the holder of an Allowed Priority Tax Claim agrees to different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the Debtor's election, either: (a) payment in full in Cash from Net Sale Proceeds at Closing or on the Effective Date, whichever is later; or (b) regular installment payments in Cash of a total value, as of the Effective Date, equal to the Allowed amount of such Claim, over a period ending not later than five (5) years after the Petition Date (i.e., not later than October 14, 2030), with interest at the rate required by 11 U.S.C. § 511, in a manner not less favorable than the most favored nonpriority unsecured Claim provided for by this Plan, consistent with 11 U.S.C. § 1129(a)(9)(C).

The Debtor shall pay the allowed Class1 Priority Tax Claim of the District of Columbia Office of Tax and Revenue in accordance with this Section from Available funds, including from Net Sale Proceeds at closing if necessary.

**4.2 Class 2 – IBI Falcon Secured Claim (Impaired).**

The IBI Falcon claim remains subject to the Party in Interest Motion and the IBI Falcon Claim objection. Nothing contained herein shall prejudice either party's position regarding those contested matters. Pending Final Order, treatment shall occur as provided herein. No distribution, cash payment, or cure shall be made to Class 2 unless and until the holder obtains an Order of the Bankruptcy Court establishing an Allowed Claim. At Closing, the Debtor shall place disputed funds into a segregated escrow account pending resolution of the Debtor's claim objection. If the Class 2 Claim is disallowed in whole or in part the disallowed portion shall receive $0.00 dollars under this plan. The full factual grounds supporting the Debtor's objection to Class 2 are set forth in the Disclosure Statement.

Distribution on account of Class 2 is governed as follows:

(1) Escrow at Closing. At Closing, the Debtor shall pay, from Net Sale Proceeds, into a segregated, interest-bearing escrow account (the "IBI Falcon Disputed Claim Escrow"), an amount equal to the amount asserted by IBI Falcon as of the Closing Date, or such lesser amount as the Bankruptcy Court determines is adequate pending resolution of the IBI Falcon Claim Objection and the Party in Interest Motion, to be held pending a Final Order or a settlement approved by the Bankruptcy Court under Local Bankruptcy Rule 9019.

(2) Treatment if IBI Falcon Is Determined Not to Be a Party in Interest. If the Bankruptcy Court determines, in connection with the Party in Interest Motion, the IBI Falcon Claim Objection, or otherwise, that IBI Falcon is not a creditor or party in interest, or that its claimed lien or note-holder status is void, unperfected, or otherwise unenforceable, IBI Falcon shall receive no Distribution on account of the IBI Falcon Claim under this Plan, its Claim shall be disallowed in its entirety, and any amount held in the IBI Falcon Disputed Claim Escrow shall revert to the Estate for Distribution in accordance with Section 5.3.

(3) Treatment of the Allowed Secured Portion. To the extent the IBI Falcon Claim (or any portion thereof) is Allowed as a Secured Claim by Final Order or approved settlement, IBI Falcon shall receive, on account of such Allowed Secured Claim, at the Debtor's election: (a) payment in full in Cash from the IBI Falcon Disputed Claim Escrow, in an amount equal to the lesser of (i) the Allowed Secured Claim, or (ii) the value of IBI Falcon's interest in the Property's Net Sale Proceeds as determined under 11 U.S.C. § 506(a); or (b) retention of its lien on the Net Sale Proceeds to the extent of the Allowed Secured Claim, with deferred Cash payments satisfying 11 U.S.C. § 1129(b)(2)(A)(i)(I).

(4) Treatment of Any Disallowed or Reclassified Portion. To the extent the IBI Falcon Claim, or any portion of it, is disallowed, avoided, or reclassified as unsecured pursuant to a Final Order or approved settlement, such amount shall not be paid as a Class 2 Claim. Instead, to the extent thereafter Allowed as a general unsecured claim, it shall be treated exclusively as a Class 4 Claim under Section 4.4.

(5) Fees, Costs, and Interest. To the extent IBI Falcon holds an Allowed Secured Claim and is oversecured within the meaning of 11 U.S.C. § 506(b), it shall be entitled to reasonable fees, costs, and interest provided for under its loan documents, to the extent Allowed by Final Order. The disputed extension fees, forbearance fee, default-interest calculation, and any fees or costs attributable to the post-petition foreclosure instruments described in the IBI Falcon Claim Objection shall not be paid absent a Final Order specifically allowing them.

(6) Reversion of Excess Escrow. Any funds remaining in the IBI Falcon Disputed Claim Escrow after payment of the Allowed Secured Claim (if any) shall revert to the Estate and shall be distributed in accordance with the priority scheme set forth in Section 5.3.

### 4.3 Class 3 – Santorini Secured Claim (Unimpaired).

As of the date of this Plan, Santorini has not filed a proof of claim in the Chapter 11 Case. The absence of a filed proof of claim does not, by itself, extinguish or avoid a validly perfected lien; a secured creditor's lien passes through bankruptcy unaffected unless properly avoided, limited, or disallowed by a Final Order, motion, or plan provision that affords the lienholder due process. *See* 11 U.S.C. § 506(d)(2). Accordingly:

(7) To the extent Allowed, the Santorini Claim shall be paid in full in Cash from Net Sale Proceeds at Closing, and Santorini's lien shall otherwise ride through unimpaired to Closing in accordance with Section 9.1.

(8) Class 3 is Unimpaired and is conclusively presumed to accept this Plan pursuant to 11 U.S.C. § 1126(f).

### 4.4 Class 4 – General Unsecured Claims (Impaired).

Class 4 consists only of Allowed General unsecured Claims. A holder of a Claim required under the Bankruptcy Code, Bankruptcy Rules, or order of the Bankruptcy Court to file a proof of claim, but who did not timely do so, shall not receive a distribution unless otherwise ordered by the Bankruptcy Court. Nothing contained herein shall constitute an admission regarding the validity, amount, priority, or allowance of any scheduled or filed claim. This includes any Claim listed on the Debtor's Schedule E/F (DE #16, §§ 3.5–3.6) that is not marked as disputed, contingent, an amount that is unknown, or unliquidated —to the extent not superseded by a timely filed proof of claim, in accordance with Bankruptcy Rule 3003(b)(1). The Reorganized Debtor shall reconcile all such scheduled Claims against the claims register and, in advance of any Distribution under this Section, shall file with the Bankruptcy Court a schedule identifying all Claims treated as Allowed Class 4 Claims for purposes of that Distribution. The Reorganized Debtor expressly reserves all rights to object to any claim prior to distribution.

Each holder of an Allowed Class 4 Claim shall receive its Pro Rata share of the Unsecured Distribution Fund, in full and final satisfaction of such Claim. The "Unsecured Distribution Fund" means Cash in an amount equal to the greater of:

(9) $100,000.00 (the "Minimum Distribution"), payable from Net Sale Proceeds at Closing, or, if Net Sale Proceeds remaining after payment in full of Classes 1 through 3 and all Allowed Administrative Claims are less than $100,000.00, the largest amount then available, provided that in no event shall funding of the Minimum Distribution reduce or delay amounts required to be paid to Classes 1 through 3 or to Allowed Administrative Claims; or

(10) The amount, if any, by which Net Sale Proceeds exceed the amounts required to pay Classes 1, 2, and 3 in full (including full funding of the IBI Falcon Disputed Claim Escrow under Section 4.2) and all Allowed Administrative Claims in full, up to the full Allowed amount of all Class 4 Claims, such that Class 4 is paid one hundred cents on the dollar if Net Sale Proceeds are sufficient to do so.

(11) Any creditor (including any schedule creditor listed as disputed, unliquidated, contingent, or an unknown dollar amount) required to file a proof of claim that failed to timely do so shall not be entitled to receive a Distribution under this plan unless otherwise ordered by the Bankruptcy Court. This term applies regardless of whether the Debtor holds positive equity in the Property, or whether such equity is subsequently revalued, adjusted, or realized upon Sale. No unfiled, disallowed, or time-barred creditor shall have any right or claim to any portion of the Debtor's surplus equity.

If the Unsecured Distribution Fund is insufficient to pay all Allowed Class 4 Claims in full, each holder of an Allowed Class 4 Claim shall receive its Pro Rata share, and, except as provided in Section 4.5, no property shall be distributed to or retained by Class 5 on account of its Interests, consistent with 11 U.S.C. § 1129(b)(2)(B)(ii).

**4.5 Class 5 – Equity Interests (Impaired).**

The holder of the Class 5 Interest (Zanetta Williams) shall retain her Interest in the Reorganized Debtor. However, consistent with the absolute priority rule, this Plan does not permit Ms. Williams to retain her Interest or receive any distribution ahead of, or without the consent of, a dissenting impaired Class of unsecured creditors:

(12) If Class 4 votes to accept this Plan as a Class (determined in accordance with 11 U.S.C. § 1126(c), and without counting any acceptance by an insider for purposes of 11 U.S.C. § 1129(a)(10)), and this Plan otherwise satisfies 11 U.S.C. § 1129(a), the Class 5 Interest holder may retain her Interest and receive any Surplus (as defined below) notwithstanding that Class 4 may not be paid in full, consistent with consensual confirmation under 11 U.S.C. § 1129(a)(8) and (10).

(13) If Class 4 does not accept this Plan as a Class, the Class 5 Interest holder shall receive or retain Cash or other property on account of her Interest only if and to the extent that: (a) Classes 1 through 4 have been paid or treated in full as required by Sections 4.1 through 4.4 (including full funding of the IBI Falcon Disputed Claim Escrow), and (b) all Allowed Administrative

Claims have been paid in full, in which case the Class 5 Interest holder shall receive any Net Sale Proceeds remaining thereafter (the "Surplus"). If the conditions in this subsection are not satisfied, the Class 5 Interest holder shall not receive or retain any property on account of her Interest, consistent with 11 U.S.C. § 1129(b)(2)(B)(ii).

(14) No Distribution shall be made to Class 5 unless and until the IBI Falcon Disputed Claim Escrow has been finally resolved by Final Order or Bankruptcy-Court-approved settlement, and any reverted excess has first been applied to complete payment of Class 4 in accordance with Section 4.4.

Any and all equity, surplus value, or unencumbered asset value remaining from the Sale of the Property after the satisfaction of Allowed Claims in Classes 1 through 4 and Allowed Administrative Claims shall revert entirely to the Debtor and be retained by the Equity Interest Holder (Ms. Williams) pursuant to 11 U.S.C. 1123(a)(5)(D)

This structure requires no new-value contribution and because Ms. Williams retains her Interest only where a dissenting Class 4 is paid in full or affirmatively accepts the Plan, she receives no property "on account of" her prior Interest ahead of a non-consenting senior impaired class.

## ARTICLE V

## MEANS OF IMPLEMENTATION

### 5.1 Continued Marketing and Sale of the Property.

This Plan is a plan of liquidation. The sole source of funding for Distributions under this Plan is the Sale of the Property. The Debtor has marketed the Property since August 29, 2025, as described in the Disclosure Statement, and shall continue such marketing efforts through the Reorganized Debtor following the Effective Date, as follows:

• Listing Price. The Reorganized Debtor shall market the Property through the Broker at a listing price determined by the Reorganized Debtor in the exercise of reasonable business judgment, in consultation with the Broker, subject to adjustment based on market conditions.

• 120-Day Marketing Reviews. Not later than every 120 days after the Effective Date, the Reorganized Debtor shall review pricing and marketing strategy with the Broker and shall file with the Bankruptcy Court, with copies to IBI Falcon (if its Claim remains pending or Allowed), Santorini, and the U.S. Trustee, a status report describing marketing efforts undertaken, offers received (if any), and any proposed adjustment to the listing price or marketing strategy.

• Outside Date. If the Property has not been sold within twelve (12) months after the Effective Date (the "Outside Date"), unless extended by the Bankruptcy Court for cause shown on

motion of the Reorganized Debtor filed before the Outside Date, the Reorganized Debtor shall, within fourteen (14) days after the Outside Date, either: (a) file a motion to sell the Property free and clear of liens, claims, and interests pursuant to 11 U.S.C. § 363(b) and (f), with such liens, claims, and interests to attach to the proceeds of sale, through a Bankruptcy-Court-supervised auction or marketing process with notice in accordance with Bankruptcy Rule 6004 and any other applicable Local Rule; or (b) consent to conversion of the Chapter 11 Case to a case under Chapter 7. This mechanism provides a defined outer limit on the sale process while preserving flexibility to continue an active, broker-led marketing and sale process for so long as it is producing results — an approach the Debtor submits will realize materially more value for all creditors.

Nothing contained herein shall prohibit the Debtor from accepting an offer at any time that, in the exercise of reasonable business judgement, and subject to Bankruptcy Court approval where required, maximizes value for the Estate.

**5.2 Retention of Broker.**

Concurrently with or promptly after confirmation of this Plan, the Debtor shall seek Bankruptcy Court approval, under 11 U.S.C. §§ 327(a) and 328(a) and Bankruptcy Rule 2014, of the retention of Zanetta Williams and Keller Williams Capital Properties as the real estate broker to market and sell the Property, on a commission to be disclosed in the retention application and subject to Bankruptcy Court approval. Ms. Williams is a REALTOR® with approximately six years of active brokerage experience who has closed approximately 25 transactions over the preceding five years with an aggregate value of approximately $15.7 million, including sales up to $1.7 million, and has represented both buyers and sellers in the District of Columbia and Maryland markets. The retention application shall fully disclose Ms. Williams's status as an insider of the Debtor (its sole member and manager) and any other connections required to be disclosed under Bankruptcy Rule 2014(a).

**5.3 Closing and Order of Distribution.**

Upon Closing, the Reorganized Debtor shall distribute Net Sale Proceeds in the following order of priority, with each tier paid in full (to the extent funds are available) before any Distribution is made to the next tier:

(15) Class 1 (Priority Tax Claims), to the extent then due under Section 4.1;

(16) Class 3 (Santorini Secured Claim), in full;

(17) Class 2 (IBI Falcon Secured Claim), including full funding of the IBI Falcon Disputed Claim Escrow, as provided in Section 4.2;

(18) Allowed Administrative Claims, in full, including the Supplemental Fee Claim described in Section 2.2, to the extent Allowed;

(19) Class 4 (General Unsecured Claims), as provided in Section 4.4; and

(20) Class 5 (Equity Interests), as provided in Section 4.5.

**5.4 IBI Falcon Disputed Claim Escrow.**

The IBI Falcon Disputed Claim Escrow described in Section 4.2 shall be held by an escrow agent acceptable to the Bankruptcy Court (which may be a licensed title or escrow company) in an interest-bearing account, and shall be released only upon a Final Order or a settlement approved by the Bankruptcy Court under Bankruptcy Rule 9019.

**5.5 Prosecution of the IBI Falcon Claim Objection, the Party in Interest Motion, and Retained Causes of Action.**

The Reorganized Debtor shall continue to prosecute the IBI Falcon Claim Objection, the Party in Interest Motion, and retains all causes of action belonging to the Debtor or the Estate, including under 11 U.S.C. §§ 502(b), and 506(a), except to the extent any such cause of action is expressly released, settled, or compromised by Final Order or Bankruptcy-Court-approved settlement. This Plan preserves those causes of action for the benefit of the Estate and creditors generally.

**5.6 Post-Confirmation Management.**

Zanetta Williams shall continue to serve as the sole manager of the Reorganized Debtor after the Effective Date, subject to the reporting obligations of Section 5.1 and the Bankruptcy Court's retained jurisdiction under Article X.

**5.7 Dissolution.**

Upon completion of all Distributions required by this Plan and the filing of a final report and accounting with the Bankruptcy Court, the Reorganized Debtor may be dissolved in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court.

**ARTICLE VI**

**PROVISIONS FOR RESOLVING DISPUTED CLAIMS**

**6.1 Objections to Claims.**

The Reorganized Debtor may object to any Claim through the Claims Objection Deadline, or such later date as the Bankruptcy Court may allow on motion made before expiration of the Claims Objection Deadline.

**6.2 The IBI Falcon Claim Objection and Party in Interest Motion.**

Confirmation of this Plan shall not affect, resolve, waive, or otherwise limit the IBI Falcon Claim Objection or the Party in Interest Motion, both of which shall continue to be prosecuted by the Reorganized Debtor until resolved by Final Order or by a settlement approved by the Bankruptcy Court under Bankruptcy Rule 9019.

**6.3 No Distribution Pending Allowance.**

Except as otherwise expressly provided in this Plan (including the escrow mechanism in Sections 4.2 and 5.4), no Distribution shall be made on account of a Claim that is not an Allowed Claim unless and until it becomes an Allowed Claim.

**6.4 Reservation of Rights.**

Nothing contained in this Plan shall waive any objections to any Claim, defense, offset recoupment, cause of action, or other rights of the Estate or the Reorganized Debtor unless expressly provided herein or by Final Order of the Bankruptcy Court.

## ARTICLE VII

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.1 Assumption of Broker Agreement.**

Any listing or brokerage agreement between the Debtor and Ms. Williams or Keller Williams Capital Properties shall be assumed as of the Effective Date, subject to and conditioned upon Bankruptcy Court approval of the retention application described in Section 5.2.

**7.2 Rejection of Other Contracts.**

Except as otherwise provided in this Plan or previously ordered by the Bankruptcy Court, all executory contracts and unexpired leases to which the Debtor is a party that have not been previously assumed, assumed and assigned, or rejected shall be deemed rejected as of the Effective Date.

## ARTICLE VIII

### CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

**8.1 Conditions to Confirmation.**

Entry of the Confirmation Order is subject to the Bankruptcy Court having determined that the Disclosure Statement contains "adequate information" within the meaning of 11 U.S.C. § 1125(a), following notice and a hearing in accordance with Bankruptcy Rule 3015-2. The Bankruptcy Court

has scheduled the Omnibus Hearing for August 5, 2026, at which approval of this Disclosure Statement, together with the Party in Interest Motion, the Motion to Convert, the IBI Falcon Claim Objection, approval of IBI Falcon's competing Substitute Disclosure Statement, and the Stay Relief Motion, are expected to be considered.

## 8.2 Conditions to the Effective Date.

The following are conditions to the occurrence of the Effective Date: (a) the Confirmation Order shall have been entered by the Bankruptcy Court; and (b) either the fourteen-day period described in Bankruptcy Rule 3022-1 shall have expired without a stay having been obtained, or any such stay shall have been vacated or shall have expired.

## 8.3 Waiver of Conditions.

The Debtor may waive any condition to the Effective Date set forth in Section 8.2, except the requirement of entry of the Confirmation Order.

## ARTICLE IX

## EFFECT OF CONFIRMATION ~~10.3~~

## 9.1 Vesting of Property.

Except as otherwise provided in this Plan, on the Effective Date, all property of the Estate, including the Property (until Sale) and any Net Sale Proceeds, shall vest in the Reorganized Debtor, free and clear of all Claims, liens, and Interests, except as expressly provided in this Plan, pursuant to 11 U.S.C. § 1141(b) and (c). Notwithstanding the foregoing, and consistent with 11 U.S.C. § 1129(b)(2)(A)(i)(I), the Allowed Secured Claims of Class 2 and Class 3 are not released, extinguished, waived, or discharged by this vesting provision or by confirmation of this Plan. The liens securing such Allowed Secured Claims shall continue, unaltered and unimpaired, to encumber the Property until Closing, and shall thereafter attach to the Net Sale Proceeds with the same validity, priority, and extent as existed immediately before the Effective Date, until such Allowed Secured Claims are paid in full in accordance with Sections 4.2 and 4.3 or the holder thereof otherwise consents, in writing, to release of its lien.

## 9.2 No Discharge.

Because this Plan provides for the liquidation of substantially all of the property of the Estate and the Debtor does not intend to continue business after consummation of this Plan, and because the Debtor, as a non-individual (limited liability company) debtor, would be denied a discharge under 11 U.S.C. § 727(a)(1) if the Chapter 11 Case were a case under Chapter 7, confirmation of this Plan does NOT result in a discharge of the Debtor's debts pursuant to 11 U.S.C. § 1141(d)(3). Holders of Claims not paid in full under this Plan therefore retain, after the Effective Date, whatever rights and remedies they would otherwise have against the Debtor and the Reorganized Debtor with respect to the unpaid portion of their Claims, except as such rights and remedies are

limited by the injunction in Section 9.3, the vesting provisions of Section 9.1, and applicable non-bankruptcy law.

### 9.3 Injunction.

Except as otherwise provided in this Plan or the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims against or Interests in the Debtor are permanently enjoined from taking any of the following actions on account of such Claims or Interests, to the extent inconsistent with the treatment provided in this Plan: (a) commencing or continuing any action or proceeding against the Reorganized Debtor or property distributed or to be distributed under this Plan, other than to enforce rights expressly preserved by this Plan (including rights preserved by Section 9.2); (b) enforcing, attaching, collecting, or recovering any judgment, award, decree, or order against the Reorganized Debtor or Net Sale Proceeds otherwise than in accordance with the priority scheme set forth in Section 5.3; and (c) creating, perfecting, or enforcing any lien or encumbrance against the Property or Net Sale Proceeds other than the liens expressly preserved under Section 9.1 and the liens (if any) securing Allowed Class 1, Class 2, and Class 3 Claims. This injunction does not enjoin: (i) any Person from asserting or prosecuting the IBI Falcon Claim Objection, the Party in Interest Motion, or any defense thereto; (ii) the U.S. Trustee from performing its statutory duties; or (iii) any Person from pursuing a Claim against any Person other than the Debtor or the Reorganized Debtor. This injunction is limited to the specific acts described above and does not constitute a release, exculpation, or discharge of any Claim except as, and to the extent, a discharge is available under Section 9.2.

### 9.4 Exculpation and Release.

Exculpation from Liability.  Neither the Debtor, nor the Sole Member of the LLC, nor any of their attorneys, consultants, advisors, and agents (acting in such capacity) (collectively, the "Exculpated Parties") shall have or incur any liability to any person or Entity for any act taken or omitted to be taken in connection with or arising out of the commencement of the Chapter 11 Case, the formulation, preparation, dissemination, implementation, confirmation or approval of this Plan, any other plan of reorganization or any compromises or settlements contained herein, any disclosure statement related thereto or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the transactions set forth in the Plan or in connection with any other proposed plan; provided, however, that the foregoing provisions shall not affect the liability that otherwise would result from any such act or omission to the extent that any such act or omission is determined in a Final Order to have constituted gross negligence, willful misconduct or bad faith.  Each of the foregoing parties in all respects shall have been and shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities during the Chapter 11 Case and under this Plan.  The rights granted under this paragraph are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law.  Nothing in this Section 10.3 or elsewhere in this Plan shall release, discharge, or exculpate any non-Debtor party from (a) any claim owed to the United States government or its

agencies, including any liability arising  under the Internal Revenue Code or criminal laws of the United States, (b)  any claim arising pre-petition, or (c)  any claim of any Claimant except as expressly set forth herein.  This exculpation from liability provision is an integral part of the Plan and is essential to its implementation.

Release.   Upon completion of all payments under the Plan, for good and valuable consideration, the adequacy of which is hereby confirmed, Creditors Claims shall be discharged and not have or incur, and the Debtor is hereby released from, any claim, obligation, cause of action,  or liability to one another, for any act or omission before or after the Petition Date through and including the Effective Date  in connection with, relating to, or arising out of the operation of the Debtor's business (other than liabilities incurred in the ordinary course of business), this Chapter 11 case, the filing of this case, the formulation, preparation, dissemination, approval, confirmation, administration, implementation, or consummation of the Plan.

10.4   General Injunction.   Pursuant to §§105, 363, 365, 524, 1123, 1129, and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for herein, as of the Confirmation Date, except as otherwise expressly provided for herein or in the Confirmation Order, all Persons that have held, currently hold, or may hold a Claim, Debt, Lien, judgment, arbitration award, or liability that is discharged or terminated pursuant to the terms of this Plan are and shall be permanently enjoined and forever barred from taking any of the following actions on account of any such discharge or terminated Claims, Debts, Liens, judgments, arbitration awards, or liabilities, other than actions brought to enforce any rights or obligations under the Plan or the Plan Documents:

(a)   commencing or continuing  in any manner, directly or indirectly, any action or other proceeding (including, without limitation, any proceeding  in a judicial, arbitral, administrative, or other forum) against the Debtor and any of their successors and assigns, and their assets or property;

(b)   enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, arbitration award or order against the Debtor and any of their successors and assigns, and the assets or property of any of them;

(c)   creating, perfecting,  or enforcing any Lien or encumbrance against the Debtor and any of their successors and assigns, and the assets or property of any of them;

> (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability, or obligation due to the Debtor and any of their successors and assigns, and the assets or property of any of them;
>
> (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or
>
> (f) interfering with or in any manner whatsoever disturbing the rights and remedies the Debtor and any of their successors and assigns, and the assets or property of any of them, under the Plan and the Plan Documents and the other documents executed in connection therewith.

The Debtor shall have the right to independently seek enforcement of this general injunction provision. This general injunction provision is an integral part of the Plan and is essential to its implementation.

10.5 Term of Certain Injunctions and Automatic Stay.

10.5.1 All injunctions or automatic stays for the benefit of the Debtor pursuant to §§105, 362 or other applicable provision of the Bankruptcy Code, or otherwise provided for in the Bankruptcy Case, and in existence on the Confirmation Date, shall remain in full force and effect following the Confirmation Date, unless otherwise agreed by the Debtor or ordered by the Bankruptcy Court.

10.5.2 With respect to lawsuits, if any, pending in courts in any jurisdiction (other than the Bankruptcy Court) that seek to establish the Debtor's liability on Prepetition Claims asserted herein and that are stayed pursuant to §362 of the Bankruptcy Code , such lawsuits shall be deemed dismissed as of the effective date, unless the Debtor affirmatively elects to have such liability established by such other courts, and any pending motion(s) seeking relief from the automatic stay for the purposes of continuing any such lawsuits in such other courts shall be deemed denied as of the Effective Date, and the automatic stay shall continue in effect, unless the Debtor affirmatively elects to have the automatic stay lifted and to have such liability established by such other courts; and the Prepetition Claims at issue in such

lawsuits, if any, shall be determined and either allowed or disallowed in whole or in part by the Bankruptcy Court pursuant to the applicable provisions of the Plan, unless otherwise elected by the Debtor as provided herein.

10.5.3   Lawsuits, if any, pending in courts in any jurisdiction (other than the Bankruptcy Court) that seek to establish liability of the Debtor on Prepetition Claims asserted therein shall be deemed dismissed with prejudice as of the Effective Date.

10.6   Liability for Tax Claims.   Unless it is a tax arising from the sale contemplated by this Plan, a taxing Governmental Unit has asserted a Claim against the Debtor before the Bar Date established therefore, no Claim of such Governmental Unit shall be Allowed against the Debtor or their member(s), or agents for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtor, any of their member(s), or affiliates, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period, or (ii) an audit of any return for a period before the Petition Date.

10.7   Regulatory or Enforcement Actions.   Nothing in this Plan shall restrict any federal government regulatory agency from pursuing any regulatory or police enforcement action against the Debtor, or their successors or assigns, but only to the extent not prohibited by the automatic stay of §362 of the Bankruptcy Code or discharged or enjoined pursuant to §§524 or 1141(d) of the Bankruptcy Code.

## ARTICLE 11 X

## RETENTION OF JURISDICTION

11.1 Jurisdiction of the Bankruptcy Court. Unless otherwise provided by a prior Order in the Bankruptcy Case, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to, the Bankruptcy Case and this Plan pursuant to, and for the purposes of §§105(a) and 1142 of the Bankruptcy Code and for, among other things the following purposes until such time as the Debtor's obligations under the Plan are fully discharged:

(a) ToNotwithstanding confirmation of this Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case to the fullest extent permitted by law, including jurisdiction to:

(21) hear and determine any and all pending adversary proceedings, applications, and contested mattersthe Party in Interest Motion, the IBI Falcon Claim Objection, and any other objections to Claims;

(b) To(22) hear and determine any objections to any Claims'

(c) To liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated Claim;

(d) To adjudicate all Claimsthe Motion to any Lien on any of the Debtor's assets, or proceeds thereofConvert, if not previously resolved or if renewed;

(e) To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated, and/or if the Effective Date never occurs;

(f) To issue such orders in aid of execution of this Plan to the extent authorized by §1142 of the Bankruptcy Code;

(g) To consider any modifications of this Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(h)   To(23) hear and determine the Stay Relief Motion and any renewal thereof;

(24) hear and determine all applications for compensation and reimbursement of expenses of Professionals under §§330, 331, and 503(b) of the Bankruptcy Codeand the Broker, including the fee application for the Supplemental Fee Claim described in Section 2.2;

(i)   To(25) enforce and interpret the Planterms and conditions of this Plan;

(26) resolve any disputes arising under or related to this Plan, including disputes regarding the IBI Falcon Disputed Claim Escrow or the Santorini Bar Date;

(27) hear and determine any dispute or any other matter arising out of or the Debtor's Motion to Enforce the Automatic Stay and for Sanctions and any related to causes of action;

(28) enter such orders as are necessary to implement or consummate this Plan; and

(j)   To recover all assets of the Debtor, wherever located;

(k)   To hear and(29) determine matters concerning state, local, and federal taxes in accordance with §§346, 505, and 1146 of the Bankruptcy Code;

(l)   To enforce and interpret the dischargethe allowance or disallowance of Claims affected by and the entitlement of any creditor to participate in Distributions under this Plan and to enter and implement such orders as may be appropriate with regard thereto;Plan.

(m)   To hear any other matter consistent with the provisions of the Bankruptcy Code;

(n)   To(30) enter a final decree closing the BankruptcyChapter 11 Case; and.

(o)   To hear and determine such other issues as the Court deems necessary and reasonable to carry out the intent and purposes of this Plan.

**ARTICLE ~~12~~ XI**

TAX CONSEQUENCES OF THE PLAN

12.1  No Tax on Transfers.  Pursuant to §1146(a) of the Bankruptcy Code: (i) the issuance, distribution, transfer or exchange of interests or other Property; (ii) the creation, modification, consolidation, or recording of any deed of trust or other security interest, the securing of additional indebtedness by such means or by other means in furtherance of or in connection with this Plan, the Confirmation Order, and any related documents; (iii) the making, assignment, modification or recording of any lease or sublease; (iv) the sale or transfer of Real Property Asset(s), shall be deemed exempt from all taxes arising from such sale or transfer which would otherwise be imposed at the time of transfer or sale, which are determined by consideration for or value of the Property being transferred, or as a percentage thereof, including taxes imposed by the State of Maryland and/or the District of Columbia or other applicable law, or (v) the making, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, the Confirmation Order, any related documents or any transaction contemplated above, or any transaction(s) arising out of, contemplated by or in any way related to the foregoing, including without limitation the Real Property, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall be, and hereby are directed to forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

12.2   Tax Consequences to Holders of Claims.   The implementation of this Plan may have federal, state, and local tax consequences to the Holders of Claims. No tax opinion has been sought or will be obtained with respect to any tax consequences of this Plan.   HOLDERS OF CLAIMS ARE ADVISED TO CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM OF THE TRANSACTIONSS CONTEMPLATED BY THIS PLAN.

12.3   Federal Income Tax Consequences to the Debtor.   The implementation of this Plan may have federal, state, and local tax consequences to the Debtor's member(s). THE DEBTORS MEMBER(S) ARE ADVISED TO CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THIS PLAN.

ARTICLE 13
**MISCELLANEOUS PROVISIONS**

13.1   Professional Fees and Expenses.   As of the Effective Date, the Debtor shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the Professionals employed by the Debtor in connection with the implementation and consummation of this Plan, the claims reconciliation process, and any other matters as to which such Professionals may be engaged.

13.2   Waiver of Certain Fees.   Unless otherwise provided in this Plan, all Holders of Allowed Unsecured Claims or Allowed Priority Claims waive all penalties, default interest, and/or late fees that may have accrued on their Claims.

54

Nothing in this Plan shall impair or affect the Holders of Allowed Secured Claims to collect penalties, default interest and/or late fees.

13.3   U.S. Trustee Fee.  The Debtor is and shall remain current  in paying all fees owed to the U.S. Trustee until the Bankruptcy Case is closed.

13.4   Payment of Statutory Fees.   All fees payable pursuant to Chapter 123 of Title 28, United States Code, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid by the Debtor.

13.5   Modification of the Plan.  **11.1 Modification of Plan.**

The Debtor reserves the exclusive right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or to modify this Plan and to solicit acceptances of any amendments or modifications hereto, before the Confirmation Date.

After the entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with §1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.  A Holder of an Allowed Claim that is deemed to have accepted this Plan shall be deemed to have accepted this Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such Holder.

13.6   Withdrawal or Revocation.   The Debtor may withdraw or revoke this Plan at any time prior to the Confirmation Date.  If the Debtor withdraws or revokes this Plan prior to the Confirmation Date or if the Confirmation Date does not occur for any reason, then this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute confirmation in accordance with 11 U.S.C. § 1127(a waiver or release of any Claim by or against the Debtor or any other Person

~~or to prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.~~), and after confirmation in accordance with 11 U.S.C. § 1127(b).

~~13.7   Courts of Competent Jurisdiction.   If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of this Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise  of jurisdiction by any other court having competent jurisdiction with respect to such matter.~~

~~13.8   Notice to Debtor.   Any notices, or requests of, the Debtor by a Party in Interest under or in connection with this Plan shall be in writing and served either (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following Parties:~~

**11.2 Amended Plan Filings.**

Any further amendment to this Plan or the Disclosure Statement shall be filed and served in accordance with Local Bankruptcy Rule 3016-2, including a clean copy and a copy showing all changes from the previously filed version, with stricken material lined through or bracketed and new material underlined or in bold face type.

**11.3 Governing Law.**

Except to the extent governed by the Bankruptcy Code or Bankruptcy Rules, the rights and obligations arising under this Plan shall be governed by the laws of the State of Maryland, without giving effect to principles of conflicts of law, except that matters concerning title to, and liens against, the Property shall be governed by the law of the District of Columbia.

**11.4** ~~Deirdre T. Johnson, Esq~~
~~9701 Apollo Dr, Suite 301~~
~~Upper Marlboro, MD  20774~~

~~56~~
56

13.9   **Severability.**   In the event that the Bankruptcy Court determines If, prior to the Confirmation Date, thatconfirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, withat the consentrequest of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose offof the term or provision to be held invalid void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, theThe remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**11.5 Notices.**

All notices required or permitted to be made in accordance with this Plan shall be in writing and served in accordance with the Bankruptcy Rules and Local Rules, including Local Bankruptcy Rule 2002-1, and addressed as follows:

Deirdre T. Johnson, Esq
Attorney at Lae
9701 Apollo Dr, Suite 301
Upper Marlboro, MD  20774

13.10 Governing Law.   Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the United States of America and, when applicable, the State of Maryland, without giving effect to the principles of conflicts of law thereof.

13.11 Headings.   Headings are used in this Plan for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

11.6 Successors and Assigns.

This Plan is binding upon and inures to the benefit of the Debtor, the Reorganized Debtor, and all holders of Claims against and Interests in the Debtor, and their respective successors and assigns.

Dated: July 22, 2026

Respectfully submitted,

**5410 30th Street30TH STREET DC, LLC,**

By: _____

Name: _____

Title: _____

_____

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th day of February, 2026, a copy of the foregoing Chapter 11 Disclosure Statement was served electronically upon filing via the ECF system, with copies to:
- L. Jeanette Rice Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
  - US Trustee Greenbelt USTPRegion04.GB.ECF@USDOJ.GOVDebtor and Debtor in Possession

By counsel:

- Maurice VerStandig MAC@MBVESQ.COM

I FURTHER CERTIFY that on this 10th day of February, 2026, a copy of the foregoing was also sent via US Mail, postage prepaid, to all parties on the mailing matrix attached hereto.

/s/ Deirdre T. Johnson, Esq.

_____

Deirdre T. Johnson, Esq

Deirdre T. Johnson, ~~Attorney at Law~~Esq.
Bar No. MD14227
9701 Apollo Dr, Suite 301
Upper Marlboro, MD ~~20772~~20774
(301) 742-5385 | dtjesq@dtjohnsonlaw.com
Counsel for Debtor, 5410 30th Street DC LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of July, 2026, a copy of the foregoing DEBTOR'S SECOND AMENDED PLAN OF LIQUIDATION was served by US Mail, postage prepaid, upon all parties in interest, including:

Maurice

B. VerStandig, Esq. (mac@mbvesq.com)

L. Jeanette Rice Jeanette.Rice@usdoj.gov, and

Office of the United States Trustee (USTPRegion04.GB.ECF@USDOJ.GOV)

And by US Mail (First Class) pursuant to Local Bankruptcy Rules of the District of Maryland upon:

• All Creditors and Parties in Interest as listed on the Court's Mailing Matrix (attached)

/s/ Deirdre T. Johnson, Esq.

Attn: Albeiro Medina
T&AA Construction, and Any / All Affiliates
11820 Parklawn Dr, Suite 380
Rockville, MD  20852

BHI Construction, and Any/All Affiliates
9342 Annapolis Rd
Lanham, MD  20706

City Concrete, and Any / All Affiliates
9284 Corp Circle
Manassas, VA 20110

DC Municipal Investments, LLC
c/o:  Heidi S. Kenny, Esq
Kenny Law Group, LLC
11426 York Rd, 1st Floor
Cockeysville, MD  21030

DC Office of Tax & Revenue
Office of CFO
1101 4th St, SW
Washington, DC  20024

DC Water
1385 Canal St, SE
Washington, DC  20003

Fund That Flip / Upright
1300 E. 9th St, Suite 1310
Cleveland, OH  44114

IBI SBL Investment LP
IBI Falcon US, LLC
c/o The VerStandig Law Firm
9812 Falls Rd, #114-160
Potomac, MD  20854

Kylie Properties, LLC
Suite 200 #1060
12345 Parklawn Dr
Washington, DC 20002

PEPCO
701 9th St, NW
Washington, DC  20068

Santorini Capital LLC, and Any/All Affiliates
Suite 200
2000 Massachusetts Ave, NW
Washington, DC 20036

Washington Gas
Attn:  Customer Care
6801 Industrial Rd
Springfield, VA  22151

Yonis Benitez
612 Oglethorpe St, NW
Washington, DC  20011