**EXHIBIT**

**56**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 25-19605-LSS |
| | ) | (Chapter 11) |
| 5410 30TH STREET DC LLC | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

## DISCLOSURE STATEMENT FOR
## CHAPTER 11 PLAN OF LIQUIDATION OF 5410
## 30TH STREET DC LLC FILED BY IBI FALCON US LLC

Comes now IBI Falcon US LLC ("IBI," the "Secured Creditor," or the "Plan Proponent"),

by and through undersigned counsel, pursuant to section 1125 of title 11 of the United States Code,

and provides the following disclosure statement (the "Disclosure Statement") correlative to its plan

of reorganization (the "Plan") for 5410 30th Street DC LLC (the "Debtor"):

THIS DISCLOSURE STATEMENT IS DESIGNED TO PROVIDE ADEQUATE INFORMATION TO ENABLE HOLDERS OF CLAIMS AGAINST THE DEBTOR TO MAKE AN INFORMED JUDGMENT ON WHETHER TO ACCEPT OR REJECT THE PLAN. ALL HOLDERS OF CLAIMS ARE HEREBY ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, WHICH IS ANNEXED HERETO AS EXHIBIT "A" AND OTHER DOCUMENTS REFERENCED AS FILED WITH THE COURT BEFORE OR CONCURRENTLY WITH THE FILING OF THIS DISCLOSURE STATEMENT. FURTHERMORE, THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN THE SUBJECT OF AN AUDIT. SUBSEQUENT TO THE DATE HEREOF, THERE CAN BE NO ASSURANCE THAT: (A) THE INFORMATION AND REPRESENTATIONS CONTAINED HEREIN WILL CONTINUE TO BE MATERIALLY ACCURATE; AND (B) THIS DISCLOSURE STATEMENT CONTAINS ALL MATERIAL INFORMATION.

ALL HOLDERS OF CLAIMS SHOULD READ AND CONSIDER CAREFULLY THE MATTERS DESCRIBED IN THIS DISCLOSURE STATEMENT AS A WHOLE PRIOR TO VOTING ON THE PLAN. IN MAKING A DECISION TO ACCEPT OR REJECT THE PLAN, EACH CREDITOR MUST RELY ON ITS OWN EXAMINATION OF THE DEBTOR AS DESCRIBED IN THIS DISCLOSURE STATEMENT AND THE TERMS OF THE PLAN, INCLUDING THE MERITS AND RISKS INVOLVED.

1

NO PARTY IS AUTHORIZED BY THE SECURED CREDITOR TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS WITH RESPECT TO THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT. NO REPRESENTATIONS OR INFORMATION CONCERNING THE DEBTOR, ITS FUTURE BUSINESS OPERATIONS OR THE VALUE OF ITS PROPERTY HAVE BEEN AUTHORIZED BY THE DEBTOR. ANY INFORMATION OR REPRESENTATIONS GIVEN TO OBTAIN YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH ARE DIFFERENT FROM OR INCONSISTENT WITH THE INFORMATION OR REPRESENTATIONS CONTAINED HEREIN AND IN THE PLAN SHOULD NOT BE RELIED UPON BY ANY CREDITOR IN VOTING ON THE PLAN.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NONBANKRUPTCY LAW. PERSONS OR ENTITIES HOLDING OR TRADING IN, OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST, OR SECURITIES OF, THE DEBTOR, IF ANY, SHOULD EVALUATE THIS DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, NOR HAS SUCH COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN. WITH RESPECT TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER PENDING OR THREATENED ACTIONS, THE DISCLOSURE STATEMENT AND PLAN AND THE INFORMATION CONTAINED THEREIN SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS STATEMENTS MADE IN SETTLEMENT NEGOTIATIONS GOVERNED BY RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND ANY OTHER RULE OR STATUTE OF SIMILAR IMPORT. THIS DISCLOSURE STATEMENT AND PLAN SHALL NEITHER BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE SECURED CREDITORS OR ANY OTHER PARTY NOR BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN. EACH CREDITOR SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN OR THE TRANSACTIONS CONTEMPLATED THEREBY.

This Disclosure Statement and the Plan annexed hereto as Exhibit "A" are being furnished by the Plan Proponent to holders of Claims pursuant to section 1125 of the Bankruptcy Code, to permit creditors the opportunity to either accept or reject the Plan (and the transactions contemplated thereby, as disclosed herein), as necessary. Capitalized terms in this Disclosure Statement, to the extent not otherwise defined herein, shall have the same definition that is assigned to capitalized terms in the Plan.

2

## I.      Introduction

The Debtor filed a petition for relief under section 301 of title 11 of the United States Code on October 14, 2025 (the "Petition Date"). Assuming the veracity of schedules subsequently filed by the Debtor, the Debtor's lone asset is the real property commonly known as 5631 MacArthur Blvd., NW, Washington, DC 20016, together with the improvements thereupon (the "Real Estate"). Upon information and belief, the Debtor also holds a *de minimis* sum of Cash on Hand (as that term is defined in the Plan).

While the Debtor has remained in possession throughout the duration of this case, little has be done to advance a liquidation of the Real Estate. The Debtor has, however, filed regular operating reports and, as of the filing of the Plan, is also pursuing a claim—stemming from an alleged breach of the automatic stay—against IBI. (Suffice it to posit, IBI vehemently denies having violated the automatic stay or having any monetary obligation to the Debtor.)

The Plan is one that calls for liquidation and dissolution of the Debtor. The Plan also calls for the payment, in full, of any priority tax creditors of the Estate, and payment of all allowed administrative expense claims of the Estate. The Plan also proposes to pay priority wage claimants, at the lower of (i) the size of their priority claim or (ii) the applicable statutory cap, to the extent their claims are allowed (something of which IBI is doubtful but for which no formal objection has been filed as of yet). While the Plan does provide for the payment of general unsecured creditors, after payment of all foregoing creditor claims, IBI is doubtful monies will be available for payment to general unsecured creditors. The Plan provides that if general unsecured creditors are paid in full, excess funds will inure to the benefit of the Debtor's equity holder.

## II.      The Chapter 11 Confirmation Process

The chapter 11 confirmation process is governed, in large part, by title 11 of the United States Code (the "Bankruptcy Code"). Under the Bankruptcy Code, to be confirmed, the Plan must be accepted by at least one (1) class of creditors whose claims against the Debtor will be "impaired" under the Plan. Claimants who are scheduled to receive full payment on their claims without modification or changes to their right to payment are deemed to have accepted the Plan and do not vote. Only creditors whose claims are "impaired" or their right to payment terms is modified or changed are entitled to vote in favor of accepting or rejecting the Plan. A class of claims is "impaired" if the amount to be paid to the class provides the claimants in that class with less than full payment of the allowed claims in that class or the terms for repayment are extended beyond the contractual due date or some other contractual terms are changed. Acceptance by such class requires that at least one-half of the creditors in the class who cast accepting votes on the Plan, and hold at least two-thirds of the total dollar amount of the claims in that class casting votes on the Plan. A class of claims that is likely to receive nothing under the Plan is not entitled to vote thereon and, to the contrary, is presumed to have rejected the Plan.

As indicated in the instructions accompanying the ballot (the "Ballot"), which is the form on which you may cast your vote to accept or reject the Plan, the Ballot must be delivered to the Plan Proponent's counsel in time to ensure that your Ballot will be received by the due date. Ballots received after the due date may not be counted.

Pursuant to Federal Rule of Bankruptcy Procedure 3017, a Ballot shall be mailed only to "creditors and equity security holders entitled to vote on the plan." The Plan consists of two classes of claims entitled to vote on the Plan, and thus those classes will receive ballots. All other classes of claims are presumed to have rejected the Plan.

### III.        Debtor's Background and Financial History

The Debtor was formed as a Maryland limited liability company on February 14, 2023. The Debtor is not presently—and does not appear to have ever been—registered as a foreign entity in the District of Columbia.

The Debtor acquired the real estate commonly known as 5410 30th Street, NW, Washington, DC 20015, for a sum believed to be $1,160,000.00, on or about March 31, 2023. The ultimate manner of disposition of that asset is unclear, though it appears the asset may have been lost to foreclosure on September 5, 2025.

The Debtor acquired the real estate commonly known as 5631 MacArthur Blvd., NW, Washington, DC 20016 (defined above as the "Real Estate") on or about May 3, 2023, for $1,500,000.00. The acquisition was funded—at least in part—by a loan in the amount of $2,222,000.00 from FTF Lending, LLC. IBI is the current holder of the correlative promissory note, which is secured by a lien on the Real Estate.

The Real Estate was listed for sale, on or about August 29, 2025, for $4,645,000.00. The Debtor has scheduled the Real Estate as having a value, as of the Petition Date, of $5,000,000.00. It is not clear why the Debtor scheduled the Real Estate as being worth more than $300,000.00 in excess of the then-current listing price. On or about October 16, 2025, the asking price for the Real Estate was lowered to $4,445,000.00. Approximately nine days later, the asking price was against lowered, this time to $4,295,000.00. In or about November 2025, the price was again reduced, this time to $3,999,900.00. It appears the asking price was increased—by one dollar—on or about February 17, 2026.

It is not believed the Debtor has ever acquired, owned, controlled, operated, or otherwise enjoyed possession of any other real estate asset, excepting the two aforesaid assets. It is not believed the Debtor has ever conducted any business other than operation of the Real Estate.

The Debtor sought bankruptcy protection, thereby commencing this case, on October 14, 2025.

### IV.        Description and Valuation of Assets

The Real Estate is believed to be improved by a six bedroom, seven bathroom home in a generally desirable part of the District of Columbia.

While the Debtor has scheduled the Real Estate as being worth $5,000,000.00, the asset—as discussed *supra*—is currently being marketed for less than $4,000,000.00. Since the inception of this case, the Debtor has not presented any offers to acquire the Real Estate, for judicial approval. It is not known if any such offers have been received. The Real Estate appears to be listed by the Debtor's principal who appears to be a licensed real estate agent.

The Debtor has not scheduled any other assets. While it is possible the Debtor holds certain Causes of Action (as that term is defined in the Plan), IBI is not presently in a position to conclusively and definitively assert such. If the Debtor does have any other assets, they will inure to the benefit of the Successful Bidder that acquires the Real Estate.

## V.    Summary of the Plan and Treatment of Claims and Interests

The Plan provides for the Real Estate to be auctioned on the courthouse steps, with a starting bid of $400,000.00. The required deposit to bid is $150,000.00, though IBI is not required to post a deposit and is permitted to credit bid its claim.

The Plan further provides for cash raised through the auction (if any—a successful credit bid by IBI would result in no additional cash entering the Debtor's estate), coupled with the Debtor's cash on hand, to be distributed to creditors in accord with the governing priority scheme.

The Plan provides for the following classifications of creditors' claims:

Class 1 – Allowed Secured Claim of IBI. Class 1 consists of all secured claims held by IBI against the Debtor. It is anticipated this class will be paid in part or full under the Plan.

Class 2 – Priority Claims of the T&AA Construction LLC and BHI Construction. Class 2 consists of two priority claims. Both arise under section 507(a)(4) of the Bankruptcy Code. These claims are capped at $17,150.00 (one being for $15,150.00, one being subject to the cap), since that is the statutory cap for such a priority. IBI doubts either claim is entitled to priority but has nonetheless placed them in this class since the Debtor has not objected to these claims. It is expected this class will be paid in part or full under the Plan.

Class 3 – Allowed General Unsecured Claims. Class 3 consists of all general unsecured claims—including the non-priority portion of the claims of T&AA Construction LLC and BHI Construction. It is not known if there will be any monies available to pay this class, though it is strongly doubted there will be sufficient monies to pay this class in full.

Class 4 - Equity Interest. This class shall receive any proceeds of a sale of the Real Estate *after* the payment of all other classes. It is doubted any monies will be paid to this class.

**Full Satisfaction and Release**. The payments, distributions and other treatment afforded to holders of allowed claims and interests under the Plan shall be in full and complete satisfaction, discharge and release of such allowed claims or interests against the Debtor.

## VI.    Designation and Treatment of Unclassified Claims

**Administrative Expense Claims.**  On the Effective Date or at such time as otherwise agreed, the holder of an allowed Administrative Claim against the Debtor shall receive, in full and final satisfaction of such Holder's allowed Claim, cash in an amount equal to the unpaid portion of such allowed Claim. Upon information and belief, the only administrative expense claimant herein is counsel for the Debtor, who is believed to be holding a retainer that should cover most— if not all—of counsel's fees. To the extent said retainer is insufficient to cover such fees, any

5

Administrative Claim will be paid (i) first, from the Cash on Hand; and (ii) second, to the extent necessary, from the proceeds of the Auction.

**U.S. Trustee's Fees.** The U.S. Trustee shall receive payment, on or before the Effective Date, of all fees owed under 28 U.S.C. § 1930(a)(6) on account of disbursements made by the Debtor from the Petition Date through the Effective Date. Any U.S. Trustee's fees owed subsequent to the Effective Date will be paid on the date on which the case is closed or converted to a case under chapter 7. The Cash on Hand shall be used to pay these fees. Should Cash on Hand be insufficient to pay these fees, any U.S Trustee fees shall be paid from the proceeds of the Auction.

**Priority Tax Claims.** Unless a Final Order otherwise provides, at the time of a closing of a sale of the Real Estate—whether through the Auction or otherwise—each Holder of a Priority Tax Claim that is an allowed Claim against the Debtor shall receive, in full and final satisfaction of such Holder's allowed Claim cash in an amount equal to the unpaid portion of such allowed Claim. For the avoidance of doubt, the terms of this Plan are constructed to ensure such payment occur not later than a date within five (5) years of the Petition Date. Notwithstanding the foregoing, the Holder of an allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the allowed Priority Tax Claim. It is believed the sole Priority Tax Claim in this case is that of the DC Office of Tax & Revenue, which the Debtor has scheduled in the amount of $30,000.00 but which is believed to actually be in the sum of $43,292.42.

### VII.        Bar Date for Filing Claims

The bar date for filing a proof of claim in this case was February 17, 2026 for all creditors (except a governmental unit). The bar date for governmental entities to file proofs of claim was April 13, 2026. The failure to file or deliver a proof of claim or a proof of interest by the applicable bar date constitutes a bar against the assertion, allowance or distribution on account of any such claim or interest.

### VIII.        Acceptance and Confirmation of Plan

Except as discussed below, a prerequisite to the confirmation of the Plan is the acceptance of the Plan by each impaired class. A class is impaired unless, with respect to each claim or interest in such class, the Plan: (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default, (a) cures any such default that occurred before or after the Petition Date (other than "ipso facto" defaults as specified in section 365(b)(2) of the Bankruptcy Code); (b) reinstates the maturity of such claim or interest as such maturity existed before such default; (c) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (d) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

6

In order to carry a designated class for purposes of confirmation of the Plan, the affirmative vote of holders of claims in each such class that hold at least two-thirds in dollar amount and more than one-half in number of the allowed claims in that class who actually vote on the Plan, other than a holder who has been designated by the Court as in bad faith having accepted or rejected the Plan, or whose acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of chapter 11 of the Bankruptcy Code is required. If the requisite acceptances from holders of allowed claims in each class of claims are obtained, and the Plan is confirmed, the Plan will be binding on all holders of claims and interests, including those who did not vote or who voted to reject the Plan (or those who are deemed to reject the Plan).

The Plan Proponent reserves the right to seek to confirm the Plan pursuant to the cramdown provisions of section 1129(b) of the Bankruptcy Code. As a condition to confirmation, the Bankruptcy Code generally requires that each impaired class of claims or interest accepts a plan of reorganization. In the event that an impaired class does not accept the Plan, the Bankruptcy Court may nonetheless confirm the Plan if (i) the Plan satisfies all other requirements of section 1129(a) of the Bankruptcy Code, and (ii) the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each impaired class that has not accepted the Plan.

A plan of reorganization does not discriminate unfairly if (a) the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are identical with those of the non-accepting class, and (b) no class receives payments in excess of that which it is legally entitled to receive for its claims or interests. The Plan Proponent believes that the Plan satisfies these requirements with respect to each class.

The Bankruptcy Code establishes different tests for secured creditors, unsecured creditors and interest holders to determine if the Plan is "fair and equitable." The tests may be summarized as follows:

(a) Secured Creditors: either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred cash payments having a present value as of the Effective Date equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim, or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds, and the liens against such proceeds are treated in accordance with clause (i) or (ii), above.

(b) Unsecured Creditors: either (i) each impaired unsecured creditor receives or retains under the Plan property of a value equal to the amount of its allowed unsecured claim, or (ii) the holders of claims and equity interests that are junior to the claims of the non-accepting Class do not receive any property under the Plan on account of such claims and interests.

(c) Equity Interest Holders: either (i) each interest holder will receive or retain under the Plan property of a value equal to the greater of (a) the fixed liquidation preference or redemption price, if any of its interest or (b) the value of its interest, or (ii) the holders of interests that are junior to the non-accepting class will not receive any property under the Plan.

The Plan Proponent believes that the Plan is "fair and equitable" to interest holders, unsecured creditors, and secured creditors.

7

The Plan Proponent reserves all rights to modify or withdraw the Plan at any time prior to the Effective Date.

**IX.        Alternatives to Confirmation and Consummation of the Plan**

The alternatives to the confirmation and consummation of the Plan include (1) the preparation and presentation of an alternative plan of reorganization and (2) the liquidation of the Debtor under chapter 7 of the Bankruptcy Code. The Plan Proponent believes that neither alternative provides any greater return to its creditors.

**Alternative Plans of Reorganization.** The Plan Proponent does not believe that an alternative plan would be viable or in the best interest of creditors or parties in interest. The Plan liquidates all assets of the Debtor and provides for the payment of claimants from the proceeds in accordance with the priority scheme established by the Bankruptcy Code. Accordingly, the Plan Proponent does not believe that rejection of the Plan in favor of a theoretical alternative would result in a greater distribution to any class of creditors or equity holders. The Plan Proponent firmly believes that the Plan is the best option for maximizing returns to creditors.

**Liquidation Under Chapter 7 of the Bankruptcy Code.** If no plan can be confirmed, it is the Plan Proponent's firm belief that liquidation under chapter 7 would result in lesser distribution than proposed by the Plan. Administrative claims would be increased as a result of the chapter 7 trustee fees and related administrative expense claims. Additionally, a chapter 7 conversion would cause creditors to wait longer before receiving what is anticipated to be equal or lesser payment of their claims.

**X.        Implementation of the Plan**

**Feasibility.** The Plan provides for a liquidation of the Debtor's assets and is thusly feasible.

**Auction of Real Estate.** The Plan provides for the Real Estate to be auctioned in open court, approximately three weeks after the Plan is to occur, with a closing to occur within fifteen Business Days of the auction. IBI is permitted to credit bid its Claim at the auction; any other bidder would need to post a deposit of $150,000.00. The opening bid shall be $400,000.00.

**Cash on Hand.** The Debtor's Cash on Hand will be used to pay Claims in accord with the Priority Scheme. The Debtor's Cash on Hand is believed to be *de minimis*; the overwhelming majority of payments will come from proceeds of the Auction.

**XI.        Distribution**

**Delivery of Distributions.** Distributions and deliveries to holders of allowed claims shall be made at the addresses set forth on the proofs of claim filed by such holders (or at the last known addresses of such holders if no proof of claim is filed).

**No Interest Unless Otherwise Provided.** No interest shall be paid on any claim unless, and only to the extent permitted, under the terms of the Plan.

**Undistributed Property**. If any Distribution remains unclaimed for a period of 90 days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the Holder entitled thereto ("Unclaimed Property"), such Unclaimed Property shall be forfeited by such Holder and be delivered to the Class 4 interest. Should any Unclaimed Property remain unclaimed for a period of 90 days after it has been delivered (or attempted to be delivered) to the Class 4 interest in accordance with the Plan, then such Unclaimed Property shall be donated to The University of Miami School of Law Bankruptcy Clinic, to be administered by Patricia Redmond in the charitable manner she deems most fit.

## XII.  Retention of Jurisdiction

Pursuant to Sections 1334 and 157 of Title 28 of the United States Code, the Bankruptcy Court shall retain jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan, for the purposes of Sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)     to hear and determine any and all adversary proceedings, applications, or contested matters, including avoidance actions, and any remands from any appeals;

(b)     to hear and to determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan;

(c)     to consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(d)     to enter, enforce and implement such orders (including orders entered prior to the Confirmation Date) as may be necessary or appropriate to execute, interpret, implement, consummate or enforce the terms and conditions of the Plan and the transactions contemplated hereunder;

(e)     to enter and to implement such orders (including orders entered prior to the Confirmation Date) as may be necessary or appropriate to execute, interpret, implement or enforce the terms and conditions of the Plan;

(f)     to hear and to determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan; and

(g)     to enter a final decree closing this Chapter 11 case.

## XIII.  Certain Tax Consequences

The following discussion summarizes certain federal income tax consequences to the Debtor and Debtors' holders of claims and equity interests. This summary is based upon the Internal Revenue Code of 1986, as amended (the "Tax Code"), Treasury Regulations promulgated thereunder, judicial decisions and published administrative rulings and pronouncements of the

9

IRS, as in effect on the date hereof. Legislative, judicial or administrative changes or interpretations enacted or promulgated hereafter could alter or modify the analysis and conclusions set forth below. Any such changes or interpretations may be retroactive and could affect significantly the federal income tax consequences discussed below. This summary does not address foreign, state or local tax law, or any estate or gift tax consequences of the Plan, nor does it purport to address the federal income tax consequences of the Plan to special categories of taxpayers who are holders of claims (such as taxpayers who are not domestic corporations or citizens or residents of the United States, or are S corporations, banks, mutual funds, insurance companies, financial institutions, regulated investment companies, broker-dealers and tax-exempt organizations) and assumes that each creditor holds its claim directly.

The federal income tax consequences of the Plan are complex and are subject to significant uncertainties. The Plan Proponent has not requested and will not request a ruling from the IRS with respect to any of the tax aspects of the Plan.

**THE TAX CONSEQUENCES TO HOLDERS OF CLAIMS AND EQUITY INTERESTS MAY VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER. MOREOVER, THE TAX CONSEQUENCES OF CERTAIN ASPECTS OF THE PLAN ARE UNCERTAIN DUE TO THE LACK OF APPLICABLE LEGAL PRECEDENT AND THE POSSIBILITY OF CHANGES IN THE APPLICABLE TAX LAW. THERE CAN BE NO ASSURANCE THAT THE IRS WILL NOT CHALLENGE ANY OF THE TAX CONSEQUENCES DESCRIBED HEREIN, OR THAT SUCH A CHALLENGE, IF ASSERTED, WOULD NOT BE SUSTAINED. ACCORDINGLY, EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FOREIGN, FEDERAL, STATE AND LOCAL TAX CONSEQUENCES OF THE PLAN.**

**Certain Federal Income Tax Consequences to Debtor.** Upon information and belief, the Debtor is a pass-through entity for federal income tax purposes. Thus, the Debtor is not subject to taxes imposed under chapter 1 of the Tax Code. Accordingly, any net operating income or losses generated by the Debtor during a taxable year ("NOLs") will pass through to the equity interest.

Upon a sale of the Debtor' property any recognized gain or loss equal to the difference between the pre-distribution sale proceeds and Debtors' adjusted tax basis in the property that may be subject to capital gains tax will pass through to equity interest. The amount of gain recognized will include the full proceeds from any sale of property, including the amount of any indebtedness assumed by the buyer to which the property is subject. If the sale of the property results in a gain and such property was used in Debtors' trade or business, such gain would generally be treated as a "section 1231 gain." Such gain would be combined with other Tax Code § 1231 gains and losses. Generally, Tax Code § 1231 gains and losses are offset against each other on an annual basis, and net gain is treated as long-term capital gain, while net loss is treated as ordinary loss. Net § 1231 gains must, however, be treated as ordinary income to the extent of net § 1231 losses taken over the five most recent years, to the extent such losses have not been previously "recaptured."

**Certain Federal Income Tax Consequences to Creditors.** The federal income tax consequences of the Plan to a creditor will depend upon several factors, including but not limited to: (i) whether

the creditor's claim (or portion thereof) constitutes a claim for principal or interest; (ii) whether the creditor is a resident of the United States for tax purposes (or falls into any of the special classes of taxpayers excluded from this discussion as noted above); and (iii) whether the creditor has taken a bad debt deduction with respect to its claim. In addition, if a claim is a "security" for tax purposes, different rules may apply.

**CREDITORS ARE STRONGLY ADVISED TO CONSULT WITH THEIR TAX ADVISORS WITH RESPECT TO THE TAX TREATMENT UNDER THE PLAN OF THEIR PARTICULAR CLAIMS.**

A creditor receiving solely cash in exchange for its claim will generally recognize taxable gain or loss in an amount equal to the difference between the amount realized and its adjusted tax basis in the allowed claim. The amount realized will equal the amount of cash to the extent that such consideration is not allocable to any portion of the allowed claim representing accrued and unpaid interest, as further discussed below.

The character of any recognized gain or loss (i.e., ordinary income, or short-term or long-term capital gain or loss) will depend upon the status of the creditor, the nature of the allowed claim in the creditor's hands, the purpose and circumstances of its acquisition, the creditor's holding period of the allowed claim, and the extent to which the creditor previously claimed a deduction for the worthlessness of all or a portion of the allowed claim. A loss generally is treated as sustained in the taxable year for which there has been a closed and completed transaction, and no portion of a loss with respect to which there is a reasonable prospect of reimbursement may be deducted until it can be ascertained with reasonable certainty whether or not such reimbursement will be recovered.

A portion of the consideration received by a creditor in satisfaction of an allowed claim may be allocated to the portion of such claim (if any) that represents accrued but unpaid interest. If any portion of the distribution were required to be allocated to accrued interest, such portion would be taxable to the creditor as interest income, except to the extent the creditor has previously reported such interest as income.

In the event that a creditor has not previously reported the interest income, only the balance of the distribution after the allocation of proceeds to accrued interest would be considered received by the creditor in respect of the principal amount of the allowed claim. Such an allocation would reduce the amount of the gain, or increase the amount of loss, realized by the creditor with respect to the allowed claim. If such loss were a capital loss, it would not offset any amount of the distribution that was treated as ordinary interest income (except, in the case of individuals, to the limited extent that capital losses may be deducted against ordinary income).

**Federal Income Tax Consequences to Holders of Equity Interests Receiving Distributions.** Holders of allowed equity interests receiving distributions will generally recognize loss or gain in the amount of each such holder's adjusted tax basis in the equity interest. The character of any recognized loss or gain (i.e., ordinary income, or short-term or long-term capital gain or loss) will depend upon the status of the holder, the nature of the equity interest in the holder's hands, the purpose and circumstances of its acquisition, the holder's holding period, and the extent to which

11

the holder had previously claimed a deduction for the worthlessness of all or a portion of the equity interest.

A gain or loss generally is treated as sustained in the taxable year for which there has been a closed and completed transaction, and no portion of loss with respect to which there is a reasonable prospect of reimbursement may be deducted until it can be ascertained with reasonable certainty whether or not such reimbursement will be recovered.

**Importance of Obtaining Professional Tax Assistance. No holder of a claim or equity interest should rely on the tax discussion in this Disclosure Statement in lieu of consulting with one's own tax professional. The foregoing is intended to be a summary only and not a substitute for consultation with a tax professional. The federal, state, local and foreign tax consequences of the Plan are complex and, in some respects, uncertain. Such consequences may also vary based upon the individual circumstances of each holder of a claim or equity interest. Accordingly, each holder of a claim or equity interest is strongly urged to consult with its own tax advisor regarding the federal, estate, local and foreign tax consequences of the Plan.**

### XIV.        Miscellaneous Provisions

**Severability.**  Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any claim or equity interest or transaction, the Plan Proponent may modify the Plan in accordance with the Plan, as applicable, so that such provision shall not be applicable to the holder of any claim or equity interest.

**Binding Effect.**  Upon the entry of the Confirmation Order, all provisions of the Plan shall be binding upon, and shall inure to the benefit of, the Debtor, the holders of claims and equity interests, and such persons' respective successors and assigns.

**Governing Law.**  Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the laws of the State of Maryland shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

**Timing of Distributions.**  Any distribution required to be made hereunder on a day other than a business day shall be due and payable on the next succeeding business day.

**Revocation or Withdrawal of Plan.**  The Plan Proponent reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order. If the Plan is withdrawn or revoked, then the result shall be the same as if the Confirmation Order had not been entered and the Effective Date had not occurred. If the Plan is revoked or withdrawn prior to the entry of the Confirmation Order, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor or any other person or to prejudice in any manner the rights of the such entity or any person in any further proceedings involving such entity.

**Nonmaterial Modifications.**  The Plan Proponent may, with the approval of the Bankruptcy Court and without notice to holders of claims and equity interests, correct any

12

nonmaterial defect, omission, or inconsistency herein in such manner and to such extent as may be necessary or desirable.

**Material Modifications.** Modifications of the Plan may be proposed in writing by the Plan Proponent at any time prior to confirmation, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code, and the Plan Proponent shall have complied with Section 1125 of the Bankruptcy Code. The Plan may be modified at any time after confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under Section 1129 of the Bankruptcy Code, and the circumstances warrant such modification.

**Notices.** Any notice required or permitted to be provided hereunder shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) prepaid overnight delivery service and addressed as follows:

> Maurice B. VerStandig, Esq.
> THE VERSTANDIG LAW FIRM, LLC
> 9812 Falls Road, #114-160
> Potomac, Maryland 20854
> *Counsel for the Plan Proponent*

**Successors and Assigns.** The rights, benefits and obligations of any person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such person.

## XV.      Confirmation Request

The Plan Proponent respectfully urges all parties entitled to vote on the Plan to do so in favor of the Plan, and respectfully pray this Honorable Court confirm the Plan.

Respectfully submitted,

Dated: April 14, 2026

> By: /s/ Maurice B. VerStandig
> Maurice B. VerStandig, Esq.
> Bar No. MD18071
> The VerStandig Law Firm, LLC
> 9812 Falls Road, #114-160
> Potomac, Maryland 20854
> Phone: (301) 444-4600
> Facsimile: (301) 444-4600
> mac@mbvesq.com
> *Counsel for IBI*