

5410 30th Street DC LLC, a Maryland Limited Liability Company
(Borrower)

to

FTF Lending, LLC, a Delaware Limited Liability Company
(Lender)

## LOAN AGREEMENT

Loan Number
FTF_158847_71928

Loan Amount
$2,222,000.00

Date
May 3, 2023

Property

| Address | Square ID | Lot ID |
|---|---|---|
| 5631 MacArthur Boulevard Northwest, Washington, D.C. 20016 | 1446 | 0043 |

PREPARED BY AND RETURN TO:
Fund That Flip
1300 E. 9th St., Suite 800, Cleveland, OH 44114

49

5410 30th Street DC LLC, a Maryland Limited Liability Company
FTF_158847_71928 Tranche

IBI Falcon US LLC - 000061

## LOAN AGREEMENT

THIS LOAN AGREEMENT (the "Agreement") is made and entered into on May 3, 2023, by and between 5410 30th Street DC LLC, a Maryland Limited Liability Company (the "Borrower"), having an address for purposes of notices and legal process of 12138 Central Avenue, Suite 388, Bowie, Maryland 20721, and FTF Lending, LLC, a Delaware Limited Liability Company (the "Lender"), having an address for purposes of notices and legal process of 1300 E. 9th St., Suite 800, Cleveland, OH 44114.

## WITNESSETH:

WHEREAS, subject to and upon the terms and conditions hereinafter set forth, Borrower wishes to borrow from Lender and Lender is willing to lend to Borrower, amounts up to but not exceeding $2,222,000.00 in the aggregate; and

NOW, THEREFORE, in consideration of the mutual covenants hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lender and Borrower hereby agree as follows:

## ARTICLE 1
## DEFINITIONS

Use of or reference to the following terms herein shall be construed as indicated:

1.1.    Advance.  Any disbursement of a portion of the Loan by Lender pursuant to the terms hereof.

1.2.    Budget.  Borrower's estimate of the cost to renovate the Improvements in accordance with the Scope of Work, which estimate is still to be delivered to Lender, as the same may be revised from time to time with Lender's approval in accordance with the terms of this Agreement.

1.3.    Budgeted Amount.  The portion of the Loan that Borrower expects to be advanced for any particular line item of Hard Costs and Soft Costs ("Budget Line Item"), as set forth in the Budget.

1.4.    Business Day.  Any day other than a Saturday, Sunday or other day on which commercial banks in the District of Columbia is authorized or required by law to close.

1.5.    Collateral Documents.  The Mortgage, any Uniform Commercial Code financing statement or fixture filing filed in connection with the Mortgage and/or the Assignment, the Environmental Indemnity, any Guaranty executed by any Guarantor in favor of Lender (individually and collectively, the "Guaranty"), and any and all other loan documents executed by the Borrower and/or the Guarantor for the benefit of Lender in connection with the Loan.

1.6.    Construction Work.  The renovation of the Project, which is to be carried out by Borrower using the proceeds of the Loan and Borrower's funds in compliance with the Budget, in accordance with the Scope of Work.

1.7.    Scope of Work.  The trade payment breakdown that is still to be delivered to Lender, which will be derived from the plans and specifications previously submitted to Lender, as the same may hereafter be modified or amended with the express consent of Lender and Lender's Consultant.

50

IBI Falcon US LLC - 000062

1.8.    Funding Date. The date on which an Advance is actually disbursed.

1.9.    Guarantor(s). Zanetta Marie Williams

1.10.   Hard Costs. The costs of labor, materials and equipment necessary for the completion of the Construction Work in accordance with the Scope of Work, as set forth and itemized in the Budget.

1.11.   Improvements. Shall mean a single-family residence.

1.12.   Lender's Consultant. The appointed designee of Lender.

1.13.   Legal Requirements. All laws, statutes, treaties, codes, permits, decrees, ordinances, orders, rules, regulations, determinations, or requirements of any governmental authority, arbiter or court, including, without limitation, any environmental laws, any building, use, zoning and land use laws or regulations (including set back requirements), and any applicable covenants and restrictions pursuant thereto.

1.14.   Loan. $2,222,000.00 in the aggregate, or so much thereof as may be advanced by Lender pursuant to the terms and conditions of this Agreement.

1.15.   Loan Amount. Up to $2,222,000.00 in the aggregate.

1.16.   Loan Term. The period of time commencing on the date hereof and ending on the Maturity Date, as defined in the Note.

1.17.   Maturity Date. June 1, 2024 unless otherwise extended pursuant to the terms of the Promissory Note.

1.18.   Mortgage. The Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement of even date hereof, that has been executed and delivered by Borrower to Lender, which encumbers the Property and the Improvements and secures, among other things, Borrower's obligations under the Note and under this Agreement.

1.19.   Net Loan. The aggregate of all Hard Costs and Soft Costs.

1.20.   Project. The Property together with the Improvements.

1.21.   Promissory Note. The Promissory Note in the original principal amount of up to $2,222,000.00, dated the date hereof, that has been executed and delivered by Borrower in favor of Lender and which evidences the Loan.

1.22.   Property. That certain real estate more commonly known as 5631 MacArthur Boulevard Northwest, Washington, D.C. 20016, and more particularly described in the Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement executed on even date here.

1.23.   Requisition. A written certification and request for an Advance signed by Borrower and delivered to Lender via electronic mail to draws@fundthatflip.com.

51

IBI Falcon US LLC - 000063

1.24. <u>Scheduled Completion Date</u>. On or before June 1, 2024 unless otherwise extended pursuant to the terms of the Promissory Note.

1.25. <u>Soft Costs</u>. The costs relating to the Construction Work or the Loan, including but not limited to, fees of architects and engineers, construction management fees, Lender's attorney's fees; recording taxes and title charges in respect of the Loan Mortgage, leasing commissions, survey costs, costs of bonding mechanics' liens and insurance premiums, that are part of the "cost of improvement" with respect to the Construction Work but are not Hard Costs, as itemized in the Budget.

1.26. <u>Title Company</u>. Velocity National Title Company, LLC.

1.27. <u>Title Policy</u>. The title insurance commitment, marked and re-dated as of the date hereof, that has been issued by the Title Company insuring the first mortgage lien of the Mortgage, as the same shall be updated from time to time in accordance with the pending disbursements endorsement that is included therein.

ARTICLE 2
GENERAL

2.1. <u>Agreement to Lend</u>. Subject to the terms and conditions of this Agreement and Borrower's compliance with all the provisions hereof, and relying on Borrower's representations set forth herein, Lender agrees to lend to Borrower, and Borrower agrees to borrow from Lender, an amount not to exceed the Loan Amount, to be disbursed in several advances at such times and in such amounts as Lender shall reasonably determine in accordance with the procedures set forth in this Agreement.

2.2. Advances Generally.

    2.2.1. Subject to the terms and conditions of this Agreement, each Advance shall be in an amount determined by Lender to be equal to the total Hard Costs and Soft Costs incurred, or paid for, by the Borrower and then due through the end of the period covered by the applicable Requisition <u>less</u> the aggregate amount of Advances previously made.

    2.2.2. Lender shall not be required to make an Advance more than once in any 30-day period.

    2.2.3. Lender shall not be required to make an Advance if the sum of that Advance plus the sum of all Advances previously made, when deducted from the amount of Net Loan, leaves an amount that Lender reasonably determines is insufficient to pay in full the remaining Hard Costs and Soft Costs necessary to complete the Construction Work unless Borrower shall provide Lender with evidence satisfactory to Lender in its sole but commercially reasonable discretion that Borrower has the balance of the required funds to pay for the remaining Hard Costs and Soft Costs necessary to complete the Construction Work.

    2.2.4. Lender shall not be required to make any Advance other than to pay for, or to reimburse to Borrower for amounts paid for, those line items of Hard Costs and Soft Costs set forth in the Budget ("<u>Line Item</u>"). Lender shall not be required to make any Advance for any Line Item that would cause the aggregate amount advanced for such Line Item to exceed the Budgeted Amount for such Line Item, without the Lender's written consent which consent shall not be unreasonably withheld, delayed or conditioned, provided, however, that (i) the Borrower's contingency line item of the Budget may be used for Hard Cost and Soft Cost

52

5410 30th Street DC LLC, a Maryland Limited Liability Company
FTF_158847_71928 Tranche

IBI Falcon US LLC - 000064

Line Items without the Lender's prior approval upon prior notice to Lender, and (ii) to the extent that the Hard Costs and Soft Costs related to any Line Item has been completed for less than the amount of such Line Item, then any such surplus may be re-allocated by the Borrower upon prior notice to Lender. If the Project cannot be completed in strict conformity with the Budget, the Borrower will immediately submit to the Lender for its approval a revised cost breakdown which will supersede all previously approved cost breakdowns once approved. Lender further reserves the right to require that Borrower deposit with Lender, within 15 days of Lender's demand therefor, good and readily available funds equal to the amount that Lender (or Lender's Consultant) reasonably determines is in excess of the Budget amount of any Line Item that is necessary to complete the Construction Work and the undisbursed portion of such Line Item ("Line Item Deficiency Amount").

2.2.5.   Lender shall not be required to make Advances for building materials that have not been incorporated into the Improvements, unless: (i) the Lender's Consultant shall have inspected such materials and found them to be of acceptable quality and in conformance with the applicable Scope of Work; (ii) Borrower shall have delivered to Lender bills of sale or other evidence reasonably satisfactory to Lender of the cost of, and Borrower's title to, such materials; (iii) Borrower shall have delivered evidence reasonably satisfactory to Lender specifying (1) the security measures that have been taken to protect such materials from theft, casualty or deterioration, and (2) the steps that have been taken to identify and to segregate such materials so as adequately to give notice to all third parties of Borrower's title in and to such materials; (iv) Borrower shall have provided evidence reasonably satisfactory to Lender that such materials are insured against all risk of loss for their full replacement cost; (v) such materials shall be stored on the Property; and (vi) to the extent that Advances with respect to materials that have not been incorporated in the Improvements shall exceed $50,000.00, Lender shall have received UCC-1 financing statements or other evidence reasonably satisfactory to Lender of Lender's perfected first priority lien on and security interest in such materials.

2.2.6.   Regardless of whether Borrower has submitted a Requisition therefor, Lender, in its sole and absolute discretion, may, from time to time, advance amounts that become due for Hard Costs and Soft Costs for which Borrower is responsible for payment provided that Borrower has not paid same within ten (10) days of receipt of written notice from Lender. Such advances may be made directly to (i) parties to whom such amounts are due, or (ii) Lender to reimburse Lender for sums due to it. All such advances (the "Direct Advances") shall be deemed Advances hereunder and shall be secured by the Collateral Documents to the same extent as if they were made directly to Borrower.

2.2.7.   All Advances, other than Direct Advances, shall be made to Borrower's account at an account established at a bank that is insured by the Federal Deposit Insurance Corporation (the "Bank").

2.2.8.   If Lender, Lender's Consultant or Title Company shall so require, Borrower shall submit with its Requisitions estoppel certificates, lien waivers or other similar certifications in form satisfactory to Lender and Title Company, in their reasonable discretion, showing amounts paid and amounts due to all persons or organizations furnishing labor or materials in connection with the completion of the Improvements.

53

5410 30th Street DC LLC, a Maryland Limited Liability Company
FTF_158847_71928 Tranche

IBI Falcon US LLC - 000065

2.2.9.    The making of an Advance by Lender shall not constitute Lender's approval or acceptance of the construction theretofore completed. Lender's inspection and approval of the Scope of Work, the Construction Work, the Improvements, or the workmanship and materials used therein, shall impose no liability of any kind on Lender, the sole obligation of Lender as the result of such inspection and approval being to make the Advances if, and to the extent, required by this Agreement.  Any disbursement made by Lender without Lender having received each of the items to which it is entitled under this Agreement shall not constitute breach or modification of this Agreement, nor shall any written amendment to this Agreement be required as a result thereof.

2.2.10.    ALL POTENTIAL LIENORS ARE HEREBY CAUTIONED TO EXERCISE SOUND BUSINESS JUDGMENT IN THE EXTENSION OF CREDIT TO BORROWER.  NO POTENTIAL LIENOR SHOULD EXPECT LENDER TO MAKE ADVANCES OF THE LOAN IN AMOUNTS AND AT TIMES SUCH THAT IT WILL NOT BE NECESSARY FOR EACH SUCH POTENTIAL LIENOR TO EXERCISE SOUND BUSINESS JUDGMENT IN THE EXTENSION OF CREDIT TO BORROWER.

2.2.11.    If at any time the undisbursed balance of a Line Item is, in Lender's judgment, excessive, the excess may be reallocated to any other Line Item balance which Lender deems to be insufficient.

2.2.12.    Loan Balancing.  Notwithstanding anything contained herein to the contrary, if at any time Lender notifies Borrower that, in Lender's sole but commercially reasonable judgment, the undisbursed balance of the Loan is insufficient to pay the remaining Hard Costs and Soft Costs, Borrower shall within 20 days of Lender's notification as aforesaid, deposit with Lender an amount equal to such deficiency (the "Loan Deficiency Amount"), which Lender may from time to time apply, or allow Borrower to apply, to such costs.  Borrower hereby agrees that Lender shall have a lien on and security interest in any sums deposited pursuant to this Section and that Borrower shall have no right to withdraw any such sums except for the payment of the aforesaid costs as approved by Lender in its sole but commercially reasonable discretion.  Lender shall have no obligation to make any further Advances of proceeds of the Loan until the sums required to be deposited pursuant this Section have been exhausted, and, the Loan is back "in balance".  Any such sums not used as provided in this Section (m) shall be released to Borrower when and to the extent that Lender determines that the amount thereof is more than the excess, if any, of the total remaining Hard Costs and Soft Costs of completion of the Improvements over the undisbursed balance of the Loan, provided, however, that should an Event of Default occur and be continuing, Lender may, at its option, apply such amounts either to the costs of completion of the Improvements or to the immediate reduction of outstanding principal and/or interest under the Note.

2.2.13.    Advance Limitations.  Lender shall not be required to make more than a one time a month Advance during the term of this Agreement, separate and in addition to the Final Advance (as defined below).

2.2.14.    Lender shall have absolutely no obligation to make any Advances after the Scheduled Completion Date.  Borrower shall indemnify Lender, and hold Lender harmless from, any liability or claim of any nature whatsoever that arises from Lender's due right under this Agreement to discontinue Advances following the Scheduled Completion Date.

54

IBI Falcon US LLC - 000066

2.3. <u>Certain Conditions Precedent to Lender's Obligation to Make Advances of the Loan.</u> Lender shall not be obligated to make any Advance unless all of the following conditions shall be satisfied as of the proposed Funding Date of such Advance:

2.3.1. Lender and Lender's Consultant shall have each received a Requisition from Borrower, at least ten (10) Business Days prior to the proposed Funding Date, together with (i) paid receipts (including invoices, bills and copies of payments made in connection therewith), if any and lien waivers for all Hard Costs that were included in any prior Advances and invoices for all Hard Costs and Soft Costs proposed to be included in the applicable Advance and (ii) an application and certificate for payment (AIA G702) signed by the Architect and Construction Manager, along with a completed continuation sheet (AIA G703).

2.3.2. If payment or reimbursement is being requested for any Hard Costs, or any fees of architects and engineers, or construction management fees, Lender shall have received a written statement from Lender's Consultant, at least five (5) Business Days prior to the proposed Funding Date, certifying to Lender (i) the amount of Hard Costs (broken down by Line Item) and the amount of any fees of architects and engineers, or construction management fees, that have been incurred by Borrower, (ii) the estimated total Hard Costs and Soft Costs (broken down by Line Item) necessary to complete the Construction Work in accordance with the Scope of Work, (iii) whether all municipal governmental agency inspections that should have occurred with respect to the completed construction have occurred, and (iv) whether the completed construction has been performed in a good and workman like manner and in accordance with the Scope of Work.

2.3.3. At Borrower's sole cost and expense, Lender shall have received an endorsement to the Title Policy pursuant to the pending disbursements clause thereof, changing the date of the Title Policy to the applicable Funding Date, insuring that there has been no change in the state of title to the Property since the previous Advance and that the Mortgage remains a first lien encumbering the Project, and increasing the coverage of the Title Policy to include the amount of the applicable Advance. If an Advance is being requested for payment of funds expended for exterior work performed with respect to the Improvements, such endorsement shall include either (i) an update of the survey reading that is included in the Title Policy, which update shall show no new encroachments unless such new encroachments shall be permitted by applicable law and the Title Policy shall insure that such new encroachments may remain as long as the Improvements shall stand, or (ii) a statement to the effect that the Title Policy shall not be subject to any exceptions by reason of such survey reading having not been updated.

2.3.4. Lender shall have received evidence satisfactory to Lender in the form of a title continuation report that there are no conditional sales contracts, chattel mortgages, leases of personality, financing statements or title retention agreements affecting any of the Mortgaged Property (as such term is defined in the Mortgage).

2.3.5. Each of the representations and warranties contained in this Agreement shall be true and correct in all material respects as of the proposed Funding Date, as determined by Lender in its sole but commercially reasonable discretion.

55

5410 30th Street DC LLC, a Maryland Limited Liability Company
FTF 158847 71928 Tranche

IBI Falcon US LLC - 000067

2.3.6. No Event of Default shall have occurred and be continuing and no event that with the passage of time or notice, or both, would constitute an Event of Default shall have occurred or be continuing.

2.3.7. Borrower shall have paid to Lender all reasonable fees and expenses required to be paid by Borrower under this Agreement.

2.3.8. Borrower shall have presented to Lender fixed-price contracts for labor and material concerning the subject Advance, between Borrower and Construction Manager and applicable subcontractors.

2.3.9. Borrower shall provide evidence to Lender that the proceeds of the most recent previous Advance hereunder have been applied to Hard Costs and Soft Costs, and otherwise to construct the Improvements, subject to Lender's confirmation and approval in its sole but commercially reasonable discretion.

2.3.10. Special Condition Precedent to Lender's Obligation to Make the First Advance. In addition to the terms and conditions set forth in this Agreement, prior to the First Advance hereunder, Borrower shall provide evidence to Lender that: (1) Borrower has obtained all permits and approvals in accordance with applicable Legal Requirements from the applicable municipal authorities as are necessary to commence and complete the Construction Work, as confirmed by Lender in its sole but commercially reasonable discretion; and (2) all proceeds of the Loan have been applied to purchase the Property or to Hard Costs and Soft Costs, and otherwise to construct the Improvements, subject to Lender's confirmation and approval in its sole but commercially reasonable discretion. Further, notwithstanding anything to the contrary herein, in addition to the terms and conditions set forth in this Agreement, prior to the First Advance hereunder, Lender shall have approved, in its sole but commercially reasonable discretion, a Budget and Scope of Work for the Project and Improvements as submitted by Borrower, along with all supporting documentation and information reasonably requested by Lender. The Budget and Scope of Work shall be subject to the review of Lender, Lender's Consultant, Lender's attorneys and any other consultants or professionals deemed necessary by Lender. Borrower shall be responsible for all reasonable fees and costs incurred by Lender in reviewing the submitted Budget and Scope of Work, on demand, which fees and costs shall be secured by the Mortgage. If the Budget, in the aggregate, is greater than the sum of the Loan governed hereby, then any such overage sum shall constitute an equity contribution that Borrower must contribute, as a condition precedent to receiving the First Advance hereunder, from its own funds, as raised pursuant to its organizational documents, to be applied to Hard Costs and Soft Costs, and otherwise to construct the Improvements, subject to Lender's confirmation and approval in its sole but commercially reasonable discretion. Immediately upon Lender's review and approval of the Budget and Scope of Work, Borrower shall, as a further condition precedent to the First Advance hereunder, execute and return to Lender any amendment to this Agreement that Lender deems reasonably necessary to reflect the submitted and approved Budget and Scope of Work, for which amendment the Title Company must issue an endorsement to the Title Policy, as approved by Lender in its sole but commercially reasonable discretion.

2.4. Special Conditions Precedent to Lender's Obligation to Make the Final Advance. Without limiting the generality of the foregoing, Lender shall not be obligated to make the final Advance ("Final Advance"), which shall be, subject to the terms and conditions set forth in this Agreement, unless,

56

IBI Falcon US LLC - 000068

in addition to the terms and conditions set forth in this Agreement, the additional following conditions shall be satisfied as of the proposed Funding Date for the Final Advance:

2.4.1. Lender and Lender's Consultant shall have received a completed AIA Form G704 signed by the Architect, Construction Manager, and Borrower evidencing that the Construction Work has been substantially completed;

2.4.2. The Project shall be substantially complete, and the Lender shall have received from the Borrower's Architect a certificate of substantial completion;

2.4.3. Lender and Lender's Consultant shall have received a signed and sealed "as-built" survey of the Project dated within 10 days of the proposed Funding Date, certified to Lender and Title Company, and showing the completed Improvements.

2.4.4. Lender shall have received written certification from Lender's Consultant that the Construction Work has been at least 100.000% completed in accordance with the Scope of Work.

2.4.5. Lender shall have received an original hazard insurance policy written complying with the terms of the Mortgage and evidence that the current premium or installment payment due on such policy has been paid and that the policy is in full force and effect.

2.4.6. Lender shall have received a new title policy, or an endorsement to the Title Policy, insuring that the Mortgage is a first lien encumbering the Project for the amount of the outstanding principal indebtedness of the Note, with a survey reading showing no new encroachments unless (i) such new encroachments shall be permitted by applicable law, and (ii) the applicable title policy shall insure that such new encroachments may remain as long as the Improvements shall stand.

2.4.7. Lender shall have received final lien waivers from the Construction Manager, and all contractors and all subcontractors that worked on the Project.

2.5. Construction Reserve .

2.5.1. Establishment of Construction Reserve. Out of the Loan proceeds, Lender will hold in reserve an amount equal to $1,000,372.68 (the "Construction Reserve"). Subject to applicable law, the Construction Reserve may be administered by a funds control agent selected by Lender, in its sole and absolute discretion.

2.5.2. Use of Construction Reserve.

2.5.2.1. Lender will hold the Construction Reserve to use to pay obligations in Lender's discretion in accordance with the Scope of Work and Budget (the "Disbursement Schedule"). Borrower understands, acknowledges and agrees that Lender will not disburse funds in excess of the Construction Reserve and any cost overruns shall be the sole responsibility of Borrower.

2.5.2.2. Lender shall have no obligation to make advances from the Construction Reserve if the remaining balance of the Construction Reserve is not sufficient, as determined in Lender's sole and absolute discretion, to complete construction in

57

IBI Falcon US LLC - 000069

accordance with the government approved plans and the Disbursement Schedule. If Lender at any time determines in its sole and absolute discretion that the amount of the Construction Reserve that remains to be disbursed is insufficient, or will be insufficient, to fully complete and pay for the completion of the construction, then within 10 days after receipt of a written demand from Lender, Borrower shall deposit cash funds in an amount equal to the deficiency as determined by Lender. Any pending or future disbursements may be withheld until such deposit is made; the judgment and determination of Lender under this provision shall be final and conclusive. Any cash funds deposited by Borrower in accordance herewith shall be held and disbursed in accordance with the disbursement procedures applicable to the Construction Reserve. Any funds deposited by Borrower hereunder shall be disbursed prior to further disbursement from the Construction Reserve.

2.5.2.3. In the event there are any funds in the Construction Reserve following completion of the construction of the Improvements (as defined in the Security Instrument), or termination of construction of the Improvements for any reason, Lender shall allocate the remaining funds in any manner it elects, in its sole and absolute discretion.

2.5.3. *Administration of Construction Reserve.* All costs associated with administering the Construction Reserve, including but not limited to inspections by Lender and or its agents, shall be the sole responsibility of Borrower and may be withdrawn from the Construction Reserve at the election of Lender, in its sole and absolute discretion.

2.5.4. *Conditions Precedent to Advances.* In Lender's discretion, Lender's obligation to make an advance of Construction Reserve shall be subject to receipt of the following documents and satisfaction of the following conditions precedent:

2.5.4.1. Receipt of evidence satisfactory to Lender (such as will-serve letters from appropriate governmental entities) of the availability to the Property of all public utility services and facilities when needed for construction and for use, occupancy, and operation of the Improvements.

2.5.4.2. Receipt of evidence satisfactory to Lender that Borrower has complied with all covenants, conditions, restrictions, and reservations affecting the Property, that the Property is duly and validly zoned for the intended use, and that Borrower has obtained all zoning, subdivision, and environmental approvals, permits, and maps required to be obtained in order to construct the Improvements.

2.5.4.3. Receipt and approval by Lender of all building and other permits required for construction of the Improvements in accordance with government approved plans (the "Plans").

2.5.4.4. Receipt by Lender of the performance and the material and labor bonds, if any.

2.5.4.5. Receipt and approval by Lender of a site plan showing the location of any existing Improvements, the proposed location of all Improvements to be constructed in accordance with the Plans, and the location of all parking areas, and listing the number of parking spaces provided by such parking areas and the number of parking spaces required by applicable zoning ordinances and certified by any

5410 30th Street DC LLC, a Maryland Limited Liability Company
FTF 158847 71928 Tranche

IBI Falcon US LLC - 000070

necessary design professional or other licensed architect to be true and correct regarding the Plans.

2.5.4.6. Any additional subcontracts in excess of $20,000.00 not previously submitted to Lender must be submitted to and approved by Lender.

2.5.4.7. Receipt by Lender of any other documents and assurances as it may reasonably request, including but not limited to all vendor invoices establishing work performed.

2.5.4.8. Evidence satisfactory to Lender that the Property is not located in an area identified as a flood-prone area as defined by the U.S. Department of Housing and Urban Development pursuant to the Flood Disaster Protection Act of 1973.

2.5.4.9. Lender reserves the right to inspect the property at any time provided Lender provides at least twenty-four hours' notice to Borrower prior to an inspection to confirm the workmanship and quality of the work performed prior to any disbursements. Borrower shall be responsible for all inspection fees by Lender or Lender's agents.

2.5.4.10.     Borrower shall be in full compliance and shall not be in default under this Agreement or under any of the Loan Documents, provided, however, that Lender may, in its discretion, elect to make advances despite the existence of a default, and any advance so made shall be deemed to have been made under this Agreement and shall be secured by the loan documents.

2.5.4.11.     Neither the Improvements, to the extent then constructed, nor all or any part of the Property shall have been materially damaged, destroyed, condemned, or threatened with condemnation.

2.5.4.12.     No order or notice shall have been made by, or received from, any governmental agency having jurisdiction stating that the work of construction is or will be in violation of any law, ordinance, code, or regulation affecting the Property.

2.5.4.13.     Before each disbursement, Lender may, at Lender's option and at Borrower's sole cost and expense, require a "date down endorsement" to Lender's mortgagee policy of title insurance in form and containing no additional exceptions other than those acceptable to Lender in Lender's sole discretion, and such other endorsements to its title insurance policy as Lender may, in its reasonable discretion, determine are necessary. All such endorsements must be satisfactory to Lender and all such title costs including any title searches shall be at the sole expense of Borrower.

2.5.4.14.     Any additional subcontracts not previously approved by Lender must be submitted to and approved by Lender.

2.5.4.15.     No later than seven business days prior to any request for a disbursement, Borrower shall deliver to Lender or its agents the following:

5410 30th Street DC LLC, a Maryland Limited Liability Company
FTF_158847_71928 Tranche

IBI Falcon US LLC - 000071

2.5.4.15.1.    A completed and signed draw request form (the "Draw Request Form");

2.5.4.15.2.    Pictures of completed work item(s) (the "Work Items");

2.5.4.15.3.    Copies of lien waivers signed by all parties (subcontractors, Borrower or others) that provided services or labor for each Work Item(s) listed in the Draw Request Form that involved services or labor;

2.5.4.15.4.    Copies of paid receipts for materials and goods purchased in order to complete the Work Item(s) identified in the Draw Request Form

2.5.4.15.5.    Copies of permits and copies of evidence of inspection and acceptable completion for any Work Item(s), listed in the Draw Request Form, which requires a permit or inspection by applicable codes, regulations or law.

2.5.4.16.    Written approval by an inspector of the necessary government entity, if

2.5.4.17.    Written approval by Lender at Lender's absolute discretion for any Work Item(s) which do not require an inspection by a government entity.

2.5.4.18.    Any additional conditions reasonably required by Lender or its agents.

2.5.5.    *Conditions Precedent to Final Advance.* In addition to compliance with the conditions precedent set forth in this Section, Lender's obligation to make the final advance described in the Disbursement Schedule shall be subject to receipt of the following documents and satisfaction of the following conditions precedent:

2.5.5.1.    Completion of all required construction and rehabilitation work, including, but not limited to all work described in the Disbursement Schedule, to the satisfaction of Lender in its sole and absolute discretion.

2.5.5.2.    Written confirmation of final approval of the construction by any and all required governmental agencies.

2.5.5.3.    Borrower's failure to comply with all conditions precedent for the final advance at least 3 months prior to the Maturity Date shall be a default under this Agreement and Lender shall have no obligation to make the final advance.

2.5.6.    *Covenants, Zoning, and Codes.* Borrower has complied and will continue to comply with all applicable environmental statutes and regulations to be complied with in connection with the construction of the Improvements. All permits, consents, approvals, or authorizations by, or registrations, declarations, withholding of objections, or filings with, any governmental body necessary in connection with the valid execution, delivery, and performance of the Loan Documents and the Environmental Indemnity, and any and all other documents executed in connection with any of the Loan Documents, or presently necessary for the construction of the Improvements, have been obtained, are valid, adequate, and in full force and effect, or will be obtained before the commencement of the construction of any part of the Improvements, construction of the Improvements and the

60

5410 30th Street DC LLC, a Maryland Limited Liability Company
FTF 158847 71928 Tranche

IBI Falcon US LLC - 000072

intended use, occupancy, and operation of the Improvements will in all respects conform to and comply with all covenants, conditions, restrictions, and governmental regulations.

2.6.   Interest Reserve. Out of the Loan proceeds, Lender will hold in reserve an amount equal to $23,127.32 as an interest reserve (the "Interest Reserve"). Lender will use the Interest Reserve to pay the monthly interest-only payments due for the period from May 3, 2023 through June 30, 2023. Upon an Event of Default, Lender may use the Interest Reserve to protect its Security Instrument, by: (i) making interest payments hereunder, (ii) making protective advances under the Security Instrument, or (iii) paying down the principal amount owed on the Loan, in Lender's sole and absolute discretion. Should Lender be required to utilize the Interest Reserve for anything other than the payment of interest payments herein, Borrower shall be required to replenish funds in the Interest Reserve. The failure to replenish the Interest Reserve upon 5 business days written notice by Lender to Borrower shall be an additional Event of Default under this Agreement. Upon full repayment of the Loan, and subject to any prepayment premium required in the Note, Lender shall credit the Interest Reserve balance and reduce any beneficiary demand accordingly.

## ARTICLE 3
## REPRESENTATIONS AND WARRANTIES

3.1.   Representations and Warranties. Borrower represents and warrants to Lender, knowing that Lender will rely on such representations and warranties as incentive to make the Loan, that:

3.1.1.   Borrower is a limited liability company duly organized and validly existing under the laws of the District of Columbia and has the authority to do business in the District of Columbia. Borrower has, and will continue to have, the full power and authority and legal rights to own its properties, to carry on its business as now conducted and to perform its obligations under this Agreement. Borrower conducts no business directly or indirectly except owning and operating the Project.

3.1.2.   Borrower has the authority and legal right to execute and deliver this Agreement. No consent, approval, authorization, exemption, notice, report, registration, filing or declaration that has not been obtained or made is required to be obtained or made with respect to the execution and delivery by Borrower of this Agreement.

3.1.3.   Borrower has furnished Lender with true, correct and complete copies of its organizational documents.

3.1.4.   Borrower, Guarantor, the Project and the Construction Work are in material compliance with all Legal Requirements applicable to Borrower, Guarantor, the Project or the Construction Work, and no written notice of noncompliance with any such Legal Requirements has been received Borrower, any Guarantor, or, to the best of Borrower's knowledge, by any other person or entity.

3.1.5.   Neither Borrower nor Guarantor is in violation of any agreement the violation of which might reasonably be expected to have a material adverse effect on Borrower's or any Guarantor's business or assets.

3.1.6.   Neither this Agreement nor the performance, fulfillment of or compliance with the terms and provisions hereof, nor the consummation of the transactions contemplated hereby,

61

IBI Falcon US LLC - 000073

conflicts or will conflict with, or will result in a breach of, the terms, conditions or provisions of, or otherwise constitute a default under, or result in the creation of any lien (other than the lien of any of the Collateral Documents) upon any of the properties or assets of Borrower or any Guarantor under any agreement, instrument, arbitration award, order, judgment, decree, statute, law, ordinance, franchise, certificate, permit, rule, regulation or the like to which Borrower or any Guarantor is subject, or by which properties or assets of Borrower or any Guarantor or the Construction Work are bound or affected.

3.1.7.   This Agreement does not contain any untrue statement of a material fact.

3.1.8.   To Borrower's knowledge, no litigation, investigation or administrative proceeding of or before any court, arbitrator or governmental authority is pending or, to Borrower's knowledge, threatened against Borrower, any Guarantor, or any assets thereof that (i) might have a material adverse effect on Borrower's ability to perform its obligations under this Agreement in accordance with the terms thereof, or Guarantors' ability to perform their respective obligations under the Guaranty, (ii) might adversely affect the financial condition of the Borrower or any Guarantor, (iii) might impair the value of the Project, (iv) seeks to enjoin or similarly prevent the Construction Work or the use of the Improvements, or (v) might question the validity of this Agreement.

3.1.9.   No condemnation or taking by eminent domain of any portion of the Property, or affecting any roadways or utilities abutting the Property, or access to the Property therefrom has commenced, or, to Borrower's knowledge, is threatened or contemplated by any governmental authority.

3.1.10.  All management, leasing, marketing, engineering, architectural, construction and maintenance contracts, relating to the Project or the Construction Work to which Borrower or any affiliates of Borrower is a party are listed in the schedule of contracts most recently furnished to Lender by Borrower, and true and complete copies of all such contracts, including all amendments thereto, have been made available to Lender or Lender's Consultant. All contracts listed in such schedule are in full force and effect in accordance with their respective terms, and, except as described in such schedule, no party to any such contract has asserted any written claim of default or offset against Borrower or any affiliate of Borrower, with respect thereto, which claim, default or offset has not been cured or resolved.

3.1.11.  Borrower has not sold, conveyed, assigned or otherwise transferred, or agreed to sell, convey, assign or otherwise transfer, any development, air or floor-area-ratio rights with respect to the Property.

3.1.12.  Borrower's estate, rights, title and interest in, to and under the Mortgaged Property are subject to no liens, charges or encumbrances other than those set forth in the Title Policy ("Permitted Exceptions"), and the Mortgage, when executed, delivered and recorded, shall constitute a valid lien on such estate, rights, title and interest (which shall be subject only to Permitted Exceptions).

3.1.13.  The Budget, when delivered by Borrower to Lender and approved by Lender pursuant to the terms hereof, sets forth all of the costs, expenses and fees (including costs, expenses and fees in connection with the making of the Loan) that Borrower expects to pay or anticipates becoming obligated to pay to complete the Construction Work. Borrower is

62

IBI Falcon US LLC - 000074

not aware of any permits required for the completion of the Project that should not be available as-of-right upon the submission of all required applications therefor.

3.1.14. Borrower has not dealt with any mortgage broker or other broker or finder in connection with the Loan other than the broker(s), if any.

3.1.15. All financial statements of Borrower and Guarantor heretofore given and hereafter to be given to Lender, are and will be true and complete in all material respects as of their respective dates, fairly represent the financial conditions of the businesses or persons to which they pertain, and no materially adverse change has occurred in the financial conditions reflected therein since the respective dates thereof.

3.1.16. When completed according to the Scope of Work, the Improvements will comply with all Legal Requirements.

3.1.17. All utility services necessary for the Construction Work and the use of the Improvements are available to the Property or will be available upon completion of the Construction Work. All roads necessary for the full use of the Project for its intended purpose have been completed or will be available upon completion of the Construction Work, or the necessary rights-of-way therefor have been acquired or dedicated or will be available upon completion of the Construction Work, and all necessary steps to date have been taken to insure the completion thereof.

3.1.18. All documents furnished to Lender by or on behalf of Borrower, as part of or in support of the Loan application or pursuant to this Agreement or otherwise in connection with the Loan or the Collateral Documents, are true, correct, and complete and accurately represent, in all material respects, the matters to which they pertain.

3.1.19. Borrower and Guarantor are, and upon consummation of the transaction contemplated by this Agreement, the Collateral Documents and any other related documents, will be, solvent.

3.2. Continuing Effectiveness. All representations and warranties contained herein shall be deemed continuing and in effect at all times while Borrower remains indebted to Lender and shall be deemed to be incorporated by reference in each requisition for advance by Borrower, unless Borrower specifically notifies Lender of any change therein.

ARTICLE 4
COVENANTS OF BORROWER

4.1. Covenants. Borrower covenants and agrees as follows:

4.1.1. Borrower shall cause the Construction Work to be performed continuously and in a timely manner in accordance with the Scope of Work and the schedule heretofore approved by Lender and in compliance with all Legal Requirements, so that the Construction Work shall be complete by the Scheduled Completion Date, TIME BEING OF THE ESSENCE, unless extended by exercise of any option in the Note, if any exists, for such period, and as otherwise extended by Lender in its sole and absolute discretion.

63

IBI Falcon US LLC - 000075

4.1.2.  Borrower shall use such proceeds solely and exclusively for the Line Items set forth in the Budget, subject to no material changes except such changes as have been approved by Lender.

4.1.3.  Borrower shall keep the Project free from liens and encumbrances (except for the Mortgage), shall pay promptly all persons or entities supplying work or materials with respect to the Construction Work and shall promptly discharge by bond or otherwise, or make other arrangements acceptable to Lender in its sole but commercially reasonable discretion with respect to, any mechanic's or other lien filed against the Project or the Borrower.

4.1.4.  Borrower shall pay promptly when due and before the accrual of penalties thereon all taxes including all real and personal property taxes and assessments levied or assessed against Borrower or the Project and all utility fees and charges in connection with the Project, and to provide Lender with receipted bills therefor if requested by Lender.

4.1.5.  Borrower will maintain adequate fire and extended risk insurance coverage, business interruption, workers' compensation, commercial general liability, and other insurance required by law or as may be required by Lender. All insurance policies will be in amounts, upon terms, and in a form acceptable to Lender. All policies must be carried with insurers acceptable to Lender. Borrower will provide evidence satisfactory to Lender of all insurance and that the policies are in full force and effect and all insurance on the Collateral will name Lender as a mortgagee and loss payee, will include a lender's loss payable endorsement, and will require 10 days advance written notice to Lender of any cancellation of coverage. If the Borrower fails to maintain required insurance, the absence of the required insurance will be an Event of Default. If this happens, Lender may buy the insurance, but will have no obligation to buy it. These amounts paid by Lender will be added to the Indebtedness or will be payable on demand, at Lender's option.

4.1.6.  Borrower shall pay all commitment, loan, reasonable servicing, administrative and inspection fees of Lender, and all reasonable expenses involved in perfecting the lien status or priority provided by the Collateral Documents and all other reasonable out-of-pocket expenses of Lender directly related to the Loan, the protection and preservation of the Project or the enforcement of any provision of this Agreement or of the Collateral Documents, including, without limitation, recording fees and taxes, tax, title and lien search charges, title insurance charges, the Lender's Consultant's reasonable fees and costs and reasonable attorneys' fees (including fees for appellate proceedings), real property taxes, personal property taxes and insurance premiums, and shall indemnify and hold Lender harmless against all claims, losses, expenses and liabilities, including reasonable attorneys' fees, incurred by Lender on account of any claim by any party arising out of the Loan or Lender's interest in or lien upon the Property or Improvements, except for claims, losses, expenses or liabilities arising out of the gross negligence or willful misconduct of Lender, its employees, officers, directors or members.

4.1.7.  Borrower shall deposit the Loan Deficiency Amount and/or the Line Item Deficiency Amount with Lender within 20 days after Lender's demand therefor.

4.1.8.  Borrower shall: (i) furnish promptly to Lender such information as Lender may reasonably require concerning: costs, progress of construction, marketing, and such other factors as Lender may reasonably specify; (ii) notify Lender promptly of (A) any litigation instituted

64

5410 30th Street DC LLC, a Maryland Limited Liability Company
FTF  158847  71928  Tranche

IBI Falcon US LLC - 000076

or threatened against Borrower or any Guarantor, to the extent that such litigation could have a material adverse effect on Guarantor, any deficiencies asserted or liens filed by the Internal Revenue Service against Borrower, any Guarantor, to the extent that such litigation could have a material adverse effect on Guarantor, the Property or the Improvements, any audits of any Federal or State tax return of Borrower or any Guarantor, and the results of any such audit, (B) any condemnation or similar proceedings with respect to any of the Property or Improvements or any proceeding seeking to enjoin the Construction Work and/or the intended use of the Improvements, (C) all changes in governmental requirements pertaining to the Construction Work, the Project, utility availability, and Borrower's anticipated cost of completion of the Construction Work to the extent that such changes could have a material adverse effect on the Project, and (D) any other matters which could reasonably be expected to adversely affect Borrower's ability to perform its obligations under this Agreement.

4.1.9.   Borrower shall maintain complete and accurate account books and records with respect to the Loan, the Project, and the Construction Work, which books and records shall reflect the consistent application of accepted accounting principles, and to make such books and records available at reasonable times and upon reasonable notice for inspection and copying by Lender or its agent.

4.1.10.   Borrower shall permit Lender and its agents to have access to the Project at reasonable times provided such access does not in any way impair Borrower's operations on the Project; shall permit Lender to maintain a sign on the Property and otherwise publicize Lender's role as construction lender; and shall name Lender as construction lender in Borrower's publicity and promotion.

4.1.11.   Borrower shall not authorize or permit any material changes to the Scope of Work or any material changes to the working drawings with respect to any portion of the Construction Work, without the prior written consent of (i) all governmental bodies having jurisdiction to the extent such approval is required by law or regulation, (ii) Lender, and, at Lender's option, (iii) Lender's Consultant.

4.1.12.   Borrower shall notify Lender promptly of the names and addresses of all contractors, subcontractors and materialmen who are employed in connection with the construction of the Improvements, and whose names and addresses were not heretofore supplied to Lender, to the full extent Borrower possesses such information.

4.1.13.   Borrower shall furnish to Lender, if Lender so requests, the contracts, bills of sale, receipted vouchers and agreements, or any of them, under which Borrower claims title to the materials, articles, fixtures and other personal property used or to be used in the construction or operation of the Improvements.

4.1.14.   Borrower shall not permit any materials, equipment, fixtures or any other part of the Improvements to be purchased or installed under any security agreement or other arrangement wherein the seller reserves or purports to reserve the right to remove or to repossess any such items or to consider them personal property after their incorporation in the Project, unless authorized in advance by Lender in writing.

65

IBI Falcon US LLC - 000077

4.1.15. Borrower shall, at Lender's request, execute and deliver to Lender all further documents and perform all other acts which Lender reasonably deems necessary or appropriate to perfect or protect its security for the Loan.

4.1.16. Borrower shall not enter into any agreement or take any action that would result in the occurrence of an Event of Default or would otherwise cause Borrower's representations and warranties contained herein to be materially incorrect or misleading.

4.1.17. Borrower shall not engage in any business other than the operating, owning, managing, developing, leasing, marketing and sale of the Project.

4.1.18. Borrower shall furnish to Lender's Consultant copies of all construction contracts, and any modifications thereto, when and as the same shall be executed and delivered. Each construction contract (and each agreement with respect to the Project and/or Construction Work between Borrower and Architect or Construction Manager) shall contain provisions in form and substance reasonably satisfactory to Lender pursuant to which Lender shall be entitled to notice and an opportunity to cure any defaults by Borrower thereunder and to assume (at Lender's sole option) the rights and obligations of Borrower thereunder following the occurrence and during the continuance of any Event of Default.

4.1.19. Borrower shall timely obtain all permits required for the completion of the Construction Work.

4.1.20. Borrower (i) shall permit and shall cause each contractor to permit Lender's Consultant and any other agent or representative of Lender, at Borrower's sole cost and expense, to enter upon the Project at all reasonable times during the Construction Work, upon reasonable notice and accompanied by Borrower or Borrower's agents, to inspect the Construction work, the Improvements and all materials to be used in the Project provided such entrance does not in any way impair Borrower's operations on the Project, and (ii) shall permit Lender, Lender's Consultant and any other agent or representative of Lender, at reasonable times upon reasonable notice, to examine all information and documents, including books, contracts and records, relating to the Construction Work and/or the Project, and shall cooperate and shall use reasonable efforts to cause each contractor to cooperate with the Lender's Consultant to enable it to perform its functions hereunder. At the time of each inspection by Lender's Consultant, Borrower shall make available to Lender's Consultant daily log sheets, if available, covering substantially all of the period since the immediately preceding inspection, showing, for each day during such period, contractors and sub-contractors on the job, the number of workers employed by each, delays encountered and the status of construction. Notwithstanding the foregoing, Lender shall not have any duty to make inspections or cause inspections to be made and shall not incur any liability or obligation as a result of making or not making any such inspection.

4.1.21. Borrower, upon written demand of Lender's Consultant, together with a reasonable explanation therefor, shall correct or cause the responsible contractor(s) to correct all material defects in the Construction Work, or any part thereof, that may be noted by the Lender's Consultant. The making of any Advance shall not constitute a waiver of the right of Lender to require compliance with this covenant with respect to any such defects.

4.1.22. Borrower shall not make any payment to any contractor with respect to labor or materials relating to the Project unless, in compliance with the District of Columbia law, Borrower

66

IBI Falcon US LLC - 000078

shall simultaneously obtain a lien waiver from such contractor with respect to labor performed or materials furnished by such contractor.

4.1.23.  Borrower shall duly perform and observe, or shall cause to be performed and observed, all of the covenants, agreements and conditions on its part to be performed and observed under the Note, the Collateral Documents, and by this reference all of such covenants, agreements and conditions are hereby made a part of this Agreement to the same extent as if fully set forth herein.

4.1.24.  Borrower shall give notice to Lender within 2 Business Days after Borrower becomes aware of any representation or warranty of Borrower contained herein is no longer true and correct in any material respect.

4.1.25.  All Construction Work shall be done in a manner that shall adequately protect tenants, if any, under the Leases, and their employees and invites, from personal injury and loss of property, and shall otherwise be consistent with the requirements of such leases with respect to the continued occupancy of such tenants during the Construction Work.

4.1.26.  Borrower shall maintain its existence and shall be in good standing at all times.

4.1.27.  Borrower shall employ suitable means to protect from theft or vandalism all portions of the Improvements and all tools and building materials stored on the Property.

## ARTICLE 5
## EVENTS OF DEFAULT

5.1.  Events of Default.  The occurrence of any of the events listed in this Article shall constitute an event of default ("Event of Default") under this Agreement:

5.1.1.  *Assignment.*  The assignment or attempted assignment by Borrower of this Agreement, any rights hereunder, or any Advance to be made hereunder, or the conveyance, lease, mortgage, or any other alienation or encumbrance of the Project or any part thereof, or any estate or right therein without the prior written consent of Lender, except as explicitly permitted herein or by the Collateral Documents.

5.1.2.  *False Statements.*  If any certificate, statement, representation, warranty or audit heretofore or hereafter furnished by or on behalf of Borrower pursuant to or in connection with this Agreement or otherwise (including, without limitation, representations and warranties contained herein) or as an inducement to Lender to extend any credit to or to enter into this Agreement proves to have been false or misleading in any material respect at the time as of which the facts therein set forth were stated or certified or to have omitted a material fact or any substantial contingent or unliquidated liability or claim against Borrower or any Guarantor or if on the date of execution of this Agreement there shall have been any materially adverse changes in any of the facts previously disclosed by any such certificate, statement, representation, warranty or audit, which change shall not have been disclosed to Lender at or prior to the time of such execution.

5.1.3.  *Construction Defaults.*  The failure by Borrower to meet the following requirements within 30 days of Lender providing written notice to Borrower of Borrower's failure to comply:

67

IBI Falcon US LLC - 000079

5.1.3.1. Borrower shall comply with all Action Items required by Lender to the satisfaction of Lender in Lender's sole and absolute discretion. The term "Action Items" as used herein shall mean actions that Lender, in Lender's sole and absolute discretion, has determined Borrower shall take to ensure that the construction on the Property is being conducted and completed to the satisfaction of Lender. Lender may inspect the Property at any time and require Borrower to remediate construction if any work performed at the Property is considered substandard by Lender in Lender's absolute discretion. The failure to complete any additional work required by Lender upon inspection of the Property within 30 days' notice by Lender or its agents to Borrower shall be considered an additional Event of Default under this Agreement.

5.1.3.2. Borrower shall not permit cessation of construction for a period in excess, in the aggregate, of 30 calendar days for any reason. Notwithstanding the foregoing, this 30 calendar-day period shall be extended, but only up to an aggregate maximum of 3 months not to exceed the Maturity Date in any event, for any delays that are beyond the control of Borrower, including delays caused by strikes, acts of God, weather, inability to obtain labor or materials, inability to obtain governmental permits or approvals, governmental restrictions, civil commotion, fire, or similar causes ("Unavoidable Delay") (but excluding financial circumstances or events that may be resolved by the payment of money), and provided Borrower has notified Lender of such delay within 10 days of its occurrence, and provided that no Unavoidable Delay shall (i) suspend or otherwise abate any obligation of Borrower to pay any sum of money, including principal and interest, under the Loan Documents, (ii) suspend or abate any other obligation of Borrower under the Loan Documents, or (iii) extend the Scheduled Completion Date or the Maturity Date.

5.1.3.3. The failure by Borrower to satisfy the conditions to the Final Advance set forth in this Agreement on or before the Scheduled Completion Date.

5.1.4. *Loss to Improvements.* A casualty loss to the Improvements such that Lender is not obligated under the Mortgage to advance insurance proceeds to Borrower.

5.1.5. *No Title Policy.* The failure or refusal by Title Company to issue a Title Policy insuring the Mortgage and Security Agreement in First Lien Position, or the refusal of the Title Company to issue any endorsement.

5.1.6. *Noncompliance with Lender Agreements.* If Borrower shall fail to keep, observe and/or perform any of the other covenants, conditions, obligations or agreements contained in this Agreement, and such default shall continue for a period of 10 days after written notice from Lender to Borrower; provided, however, that if such default can be cured but cannot reasonably be cured within such 10 day period, an Event of Default shall not be deemed to have occurred so long as (i) Borrower commences an action to remedy such default promptly after notice, and (ii) Borrower pursues such remedial action to completion with due diligence and dispatch.

5.1.7. *Default Under Loan Documents.* If an "Event of Default" (as such terms is defined in the Mortgage or under any Related Document under this Loan) shall occur under the Mortgage or any of the Collateral Documents.

68

IBI Falcon US LLC - 000080

5.1.8.   *Invalidity.* If any representation or warranty contained in this Agreement shall no longer be true and correct in all material respects.

5.1.9.   *Judgments or Attachments.* The institution by any lienholder of a foreclosure action against the Project or any part thereof, or if there is entered against either Borrower or Guarantor a judgment that materially affects the Borrower's business, financial condition or the Property, or if a tax lien, levy, writ of attachment, garnishment, execution, or similar item is or will be issued against the Collateral with or which materially affects Borrower's business, financial condition, or the Property, and which remains unpaid, unstayed on appeal, undischarged, unbonded, or undismissed for thirty days after it was issued.

5.1.10.  *Mechanic's Lien.* The filing of any mechanic's lien against the Project that is not removed of record or adequately bonded (in Lender's sole but commercially reasonable discretion) within 30 days after filing.

5.1.11.  *Material or Adverse Change.* Any material adverse change in the financial condition of Borrower or any Guarantor, or the existence of any other condition which shall constitute an impairment of Borrower's ability to perform its obligations under this Agreement or any other document evidencing or securing the Loan, and which condition is not remedied within 20 days after written notice to Borrower thereof or, if the condition cannot be fully remedied within said 20 days, diligent, good faith progress has not been made within said 20 days toward remedy of the condition.

5.1.12.  *Default on Unrelated Debt.* If Borrower materially defaults under a provision of an agreement with a third party of if the indebtedness under such an agreement is accelerated.

5.1.13.  *Insecurity.* The Lender has good-faith belief that any Party is unable or will soon be unable to perform that Party's duties under this Agreement or under the Related Documents.

5.1.14.  *Death.* The death of any guarantor or obligor of the obligations of Borrower under the Loan.

5.2.   Event of Default "Continuing". An Event of Default shall be deemed to be "continuing" for all purposes of this Agreement, notwithstanding any purported curing of such Event of Default, unless, prior to the receipt by Borrower of a notice from Lender stating that Lender shall have elected to accelerate the indebtedness evidenced by the Note Borrower shall have cured such Event of Default and so notified Lender.

## ARTICLE 6
## REMEDIES UPON DEFAULT

6.1.   If any Event of Default shall have occurred and be continuing, all obligations of Lender under this Agreement shall, at the option of Lender, cease and terminate, and Lender may immediately exercise any or all rights, remedies and recourse available to it at law or in equity or under any of the Collateral Documents, including, without limitation, the right to accelerate the Loan and foreclose any and all liens and security interests securing the repayment of the Loan under any of the Collateral Documents including, without limitation, the Mortgage.

6.2.   In addition to the foregoing, if any Event of Default shall have occurred and be continuing, all obligations of Lender under this Agreement, including, without limitation, the obligation to make

69

IBI Falcon US LLC - 000081

Advances, shall, at the option of Lender, cease and terminate, and Lender may immediately exercise any or all rights, remedies and recourse available to it at law or in equity or under the Note or any of the Collateral Documents, including, without limitation, the right to accelerate the Loan and foreclose any and all interests securing the repayment of the Loan. In addition to, and without limiting the foregoing, if any Event of Default shall have occurred and be continuing, Lender may take immediate possession of the Project as well as all other property to which title is held by Borrower and in which Lender has a lien as is necessary to fully complete the Construction Work and do anything in its sole judgment to fulfill the obligations of Borrower hereunder, including availing itself of and procuring performance of existing contracts, amending the same, or entering into new contracts with the same contractors or others and employment of watchmen to protect the Project from injury. Notwithstanding anything to the contrary contained herein, Lender shall not be obligated to attempt to use, operate, occupy or manage the Project or any part thereof, perform the Construction Work, or perform any of the terms, conditions and agreements herein or in any construction contracts or in any other document on the part of Borrower to be performed, and Lender shall have no liability to Borrower, Guarantors or any other person or entity for failing, attempting to perform, or ceasing to perform the same, or for the manner of performing or attempting to perform the same, or any part thereof.

6.3.    Upon an Event of Default, Lender may use the Construction Reserve to protect its Security Instrument, by: (i) making interest payments hereunder, (ii) making protective advances under the Security Instrument, or (iii) paying down the principal amount owed on the loan, in Lender's sole and absolute discretion. Should Lender be required to utilize the Construction Reserve for anything other than the construction and development of the Property in accordance with the Disbursement Schedule, Borrower shall be required to replenish funds in the Construction Reserve. The failure to replenish the Construction Reserve upon 5 Business Days written notice by Lender to Borrower shall be an additional event of default under this Agreement. Upon full repayment of the loan, Lender shall credit the Construction Reserve balance and reduce any beneficiary demand accordingly.

6.4.    If legal proceedings are instituted to enforce the terms of this agreement, Borrower agrees to pay all costs and expenses of the Lender in connection therewith, including reasonable attorneys' fees and expenses.

<u>ARTICLE 7</u>
<u>MISCELLANEOUS</u>

7.1.    <u>Entire Agreement; Modification, Etc</u>. This Agreement (together with the Collateral Documents and any certificates delivered simultaneously herewith) embody and constitute the entire understanding between the parties with respect to the transaction contemplated by this Agreement, and all prior agreements, understandings, representations and statements, oral and written, with respect to the transaction that is the subject of this Agreement are merged into this Agreement. Neither this Agreement nor any provision hereof may be waived, modified, amended, discharged or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

7.2.    <u>Exclusiveness</u>. ALL CONDITIONS TO THE OBLIGATIONS OF LENDER TO MAKE ADVANCES HEREUNDER ARE IMPOSED SOLELY AND EXCLUSIVELY FOR THE BENEFIT OF LENDER AND LENDER'S SUCCESSORS AND ASSIGNS AND NO OTHER

70

5410 30th Street DC LLC, a Maryland Limited Liability Company
FTF 158847 71928 Tranche

IBI Falcon US LLC - 000082

PERSON OR ENTITY SHALL HAVE STANDING TO REQUIRE SATISFACTION OF SUCH CONDITIONS IN ACCORDANCE WITH THEIR TERMS OR BE ENTITLED TO ASSUME THAT LENDER WILL REFUSE TO MAKE ADVANCES IN THE ABSENCE OF STRICT COMPLIANCE WITH ANY OR ALL THEREOF AND NO OTHER PERSON OR ENTITY SHALL, UNDER ANY CIRCUMSTANCES, BE DEEMED TO BE BENEFICIARY OF SUCH CONDITIONS, ANY OR ALL OF WHICH MAY BE FREELY WAIVED IN WHOLE OR IN PART BY LENDER ANY TIME IF IN ITS SOLE DISCRETION IT DEEMS IT ADVISABLE TO DO SO.

7.3.    Notices. Except as may otherwise be expressly provided in this Agreement, any notice, request, demand, instruction or other communication pursuant to this Agreement shall be in writing and shall be given in the manner provided in the Mortgage.

7.4.    Governing Law; Jurisdiction. This Agreement, the Note, the Collateral Documents and all other documents or instruments relating to the Loan, and the rights and obligations of the parties thereto, shall be construed and interpreted in accordance with the laws of the District of Columbia. Lender and Borrower each hereby waives and renounces any right to a jury trial in any action, suit or proceeding in connection with this Agreement, the Note or any other Collateral Document.

7.5.    Headings. All descriptive headings of articles and sections in this Agreement are inserted for convenience only and shall not affect the construction or interpretation hereof.

7.6.    Severability. If any provision of this Agreement shall be held to be invalid, illegal, void or unenforceable in any respect, (a) such provision shall be given force to the fullest possible extent that it is valid, legal and enforceable, (b) such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement, and (c) this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained in this Agreement.

7.7.    No Agency, Partnership or Joint Venture. Lender is not the agent or representative of Borrower, and Borrower is not the agent or representative of Lender. Borrower and Lender intend and agree that the relationship between them shall be solely that of creditor and debtor. Neither any provision in any of this Agreement nor any act or omission of Lender or Borrower shall be construed to create a partnership or joint venture between Borrower and Lender. This Agreement shall not make Lender liable to materialmen, contractors, craftsmen, laborers or others for goods delivered to or services performed by them upon the Project, or for debts or claims accruing to such parties against Borrower and there is no contractual relationship, either expressed or implied, between Lender and any materialmen, subcontractors, craftsmen, laborers, or any other person supplying any work, labor or materials for the Construction Work.

7.8.    Waiver; Successive Remedies. Any failure (or series of failures) by Lender to insist (or election, or series of elections, by Lender not to insist) upon the strict performance of any of the terms, provisions and conditions of this Agreement or any of the other Loan Documents shall not be deemed to be a waiver of the same or any other term, provision or condition hereof or thereof and Lender shall have the right at any time thereafter to insist upon strict performance of any and all of the same. If Lender makes any Advance in the absence of strict compliance with any or all of the conditions of Lender's obligations to make such Advance, the same shall be deemed to have been made in pursuance of this Agreement and not in modification hereof. No course of dealing and no delay or omission by Lender in exercising any right or remedy hereunder or with respect to any indebtedness of Borrower to Lender shall operate as a waiver thereof or of any other right or remedy and no single or partial exercise thereof shall preclude any other or further exercise thereof or the

71

IBI Falcon US LLC - 000083

exercise of any other right or remedy. Lender may remedy any default by Borrower to Lender or any other person, firm or corporation in any reasonable manner without waiving the default remedied and without waiving any other prior or subsequent default by Borrower and shall be reimbursed for any and all of its expenses in so remedying such default. All rights and remedies of Lender hereunder are cumulative.

7.9.     Assignability.  Neither this Agreement nor any right or obligation hereunder, nor any Advance to be made hereunder is assignable by Borrower.  The rights of Lender under this Agreement are assignable in part or wholly and any assignee of Lender shall succeed to and be possessed of the rights of Lender hereunder to the extent of the assignment made, including the right to make advances to Borrower or any approved assignee of Borrower in accordance with this Agreement.

7.10.    Inconsistencies with Other Loan Documents.  In the event of any conflict between this Agreement and the provisions of any of the Collateral Documents, the provisions of this Agreement shall control; provided, however, that any provision of any Collateral Document that imposes additional burdens on Borrower or restricts the rights of Borrower or gives Lender additional rights or remedies shall not be deemed to be in conflict or inconsistent with this Agreement and shall be given full force and effect.

7.11.    Survival.  All of the representations, warranties, terms, covenants, agreements and conditions contained in this Agreement shall specifically survive the execution and delivery of this Agreement and the making of all Advances and shall, unless otherwise expressly provided, continue in full force and effect until the indebtedness evidenced by the Note and any other amounts payable to Lender hereunder, or under any of the Collateral Documents, shall have been paid in full.

7.12.    Negotiated Document.  Borrower acknowledges that the provisions and the language of this Agreement and the Collateral Documents have been negotiated, and are reasonable in light of all circumstances attendant to the execution hereof and thereof, and agrees that no provision of this Agreement or any Collateral Document shall be construed against either Lender or Borrower by reason of either Lender or Borrower having drafted such provision, this Agreement or any Collateral Document.

7.13.    Exhibits.  All exhibits referred to herein are by such reference incorporated into this Agreement as if fully set forth herein.

7.14.    Note; Mortgage.  The Loan shall be evidenced by and repaid in accordance with the Note.  The performance of Borrower's obligations under the Note and this Agreement shall be secured by the Mortgage and the other Collateral Documents.

7.15.    Expenses.  The Parties agree to pay all of Lender's reasonable expenses incidental to perfecting Lender's security interests and liens, all insurance premiums, Uniform Commercial Code search fees, and all reasonable fees incurred by Lender for audits, inspection, and copying of the Parties' books and records.  The Parties also agree to pay all reasonable costs and expenses of Lender in connection with the enforcement of Lender's rights and remedies under this Agreement, the Related Documents, and any other agreement between one or more Parties and Lender, and in connection with the preparation of all amendments, modifications, and waivers of consent with respect to this Agreement, including reasonable attorneys' fees.

7.16.    Set off.  Borrower agrees that, in addition to (and without limitation of) any right of setoff, bankers' lien or counterclaim Lender may otherwise have, Lender shall be entitled, at its option, to offset

72

IBI Falcon US LLC - 000084

balances (general or special, time or demand, provisional or final) held by it for the account of Borrower at any of Lender's offices against any amount payable by Borrower to Lender hereunder or under any other Collateral Document which is not paid when due (regardless of whether such balances are then due to Borrower), in which case it shall promptly notify Borrower thereof; provided that Lender's failure to give such notice shall not affect the validity thereof. Payments by Borrower hereunder or under the other Collateral Documents shall be made without setoff or counterclaim.

7.17.   Borrower's Statement.  A true statement under oath verified by Borrower is attached hereto and made a part hereof as Schedule D and all the terms of such oath are incorporated herein by this reference.

7.18.   Indemnification.  Borrower agrees to indemnify Lender and hold Lender harmless from and against all claims, actions, suits, proceedings, actual costs, expenses, brokerage or other fees, losses, damages and liabilities of any kind including in tort, penalties and interest, which Lender may incur in any manner other than Lender's own negligence or willful misconduct, by reason of any matter relating, directly or indirectly, to the Loan, the Construction Work, the Mortgage or the ownership, condition, development, construction, sale, rental or financing of the Project or any part thereof. This indemnification shall continue in effect whether or not the Loan is partially or fully advanced. This indemnity shall not apply to claims, actions, suits, proceedings, costs, expenses, brokerage or other fees, losses, damages and liabilities caused by any actions taken by, or omissions of, the Lender, at such times as the Lender actually owns and holds fee title to the Property, or is in physical possession thereof.

[END OF PAGE – SIGNATURE PAGE TO FOLLOW]

73

IBI Falcon US LLC - 000085

IN WITNESS WHEREOF, the Borrower, by and through the Borrower's authorized signatory, has executed and delivered this Loan Agreement to the Lender on May 3, 2023.

BORROWER:
5410 30th Street DC LLC, a Maryland Limited Liability Company,

By: Zanetta Marie Williams
Its: Sole Member and Manager

## NOTARIAL CERTIFICATE

STATE OF Maryland )
) SS:
COUNTY OF Anne Arundel )

An oath was administered to the signer with regard to the notarial act.

The foregoing Instrument was sworn and subscribed before me this 3rd day of May, 2023 by Zanetta Marie Williams, the Sole Member and Manager, of 5410 30th Street DC LLC, a Maryland Limited Liability Company.

[NOTARIAL SEAL]

Notary Public
State of Maryland

My Commission expires 4/22/2025

74

5410 30th Street DC LLC, a Maryland Limited Liability Company
FTF 158847 71928 Tranche

IBI Falcon US LLC - 000086

IN WITNESS WHEREOF, the Lender, by and through the Lender's authorized signatory, has executed this Loan Agreement with an effective date of May 3, 2023.

LENDER:
FTF LENDING, LLC,
a Delaware limited liability company

By: Fund That Flip, Inc.,
a Delaware corporation
Its: Sole Member


 /s Tayyaba Monto Esq.
By: Tayyaba Monto Esq.
Its: Authorized Signatory

75

5410 30th Street DC LLC, a Maryland Limited Liability Company
FTF 158847 71928 Tranche

IBI Falcon US LLC - 000087