EXHIBIT

66

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

In re:                                    )        Case No. 25-19605-LSS
                                          )        (Chapter 11)
5410 30TH STREET DC LLC                   )
                                          )
              Debtor.                     )
_____ )

## OPPOSITION TO MOTION TO ENFORCE
## THE AUTOMATIC STAY AND FOR SANCTIONS

Come now IBI Falcon US LLC ("IBI Falcon") and IBI SBL Investment LP, by and through

undersigned counsel, in opposition to the motion to enforce the automatic stay and for sanctions,

DE #60 (the "Motion"), filed by 5410 30th Street DC LLC (the "Debtor"), and state as follows:

### I.       Introduction

The Debtor failed to give IBI Falcon notice of this bankruptcy case, with IBI Falcon first

learning of the matter on November 19, 2025 through the investigation of counsel. Between the

petition date and that date, IBI Falcon undertook two actions the Debtor maintains to have been

violations of the automatic stay enshrined in Section 362 of Title 11 of the United States Code (the

"Automatic Stay"): (i) appointing a substitute trustee; and (ii) filing an affidavit in the land records

of the District of Columbia. Neither of these actions actually constitutes a violation of the

Automatic Stay but, in any event, IBI Falcon has—since learning of this case—engaged

undersigned bankruptcy counsel and taken no further actions outside of this Honorable Court.

For the avoidance of any doubt or ambiguity: no property of the Debtor has been

foreclosed. No property of the Debtor will be foreclosed absent leave of this Honorable Court or

dismissal of this case. No violation of the Automatic Stay has occurred. And, most certainly, no

knowing violation of the Automatic Stay has occurred.

1

The Debtor is aware of the foregoing yet, in a move that can be best characterized as equally aggressive and reckless, is now asserting IBI Falcon has violated the Automatic Stay. In so doing, the Debtor seeks ill-defined damages, endeavors to have documents "withdrawn" from land records (something that does not appear to be possible), and seeks to hold IBI Falcon in contempt.

For the reasons intimated above, and as extrapolated upon *infra*, the Motion merits denial.

## II.      Relevant Factual Timeline: Notice of Bankruptcy

The Debtor petitioned for chapter 11 relief on October 14, 2025. *See* Voluntary Petition, DE #1. The mailing matrix appended thereto lists IBI Falcon at an address in Tel Aviv, Israel. *See* Matrix, DE #1-6. The notice of bankruptcy filing was accordingly not actually sent to IBI Falcon but, instead, IBI Falcon was "bypassed" based upon the foreign address. *See* Certificate of Notice, DE #7.

IBI Falcon is a Delaware limited liability company with a registered agent in Delaware. It is at-best unclear why the Debtor did not furnish this Honorable Court with a domestic mailing address for IBI Falcon.

A related entity—IDI SBL Investment LP—was listed, with a domestic address, on the initial mailing matrix. *See* Matrix, DE #1-6. It does not appear, however, that IBI SBL Investment LP actually received mailed notice of this case until on or about December 1, 2025. Both entities, though, became aware of this case on November 19, 2025, when a search of PACER was conducted after another borrower—an entity that does not appear to be of direct relation to the Debtor *sub judice*—sought bankruptcy protection in the District of Columbia, *see In re Euclid Realty Capital V, LLC*, Case No. 25-518-ELG (Bankr. D.D.C. 2025), and a decision was made to investigate whether this Debtor had also sought bankruptcy relief.

Insolvency counsel was then retained by IBI Falcon and promptly appeared herein. *See* Notice of Appearance, DE #56.

Three days later, the Debtor amended the mailing matrix in this case to include IBI Falcon at an address in Ohio. DE #57.

## III.   Relevant Factual Timeline: Land Records Filings

On November 13, 2025—just under a week before first learning of this case—IBI Falcon filed a Notice of Non-Residential Mortgage Foreclosure (the "Affidavit") in the land records of the District of Columbia. *See* Affidavit, DE #60 at pp. 4-5. As discussed *infra*, this document is *not* actually notice of a foreclosure being scheduled or occurring but, rather, is a somewhat esoteric notice that characterizes the nature of a loan document as being non-consumer in nature.

On November 19, 2025—just before learning of this case—IBI Falcon also filed a Deed of Appointment of Substitute Trustee (the "Trustee Substitution") in the land records of the District of Columbia. *See* Trustee Substitution, DE #60 at pp. 6-9.

For clarity, at no time since the filing of this case has IBI Falcon foreclosed any asset of the Debtor, and no foreclosure auction is presently scheduled or noticed. There is absolutely *not* a foreclosure pending.

## IV.   Argument: No Stay Violation has Occurred

### a.   The Appointment of a Substitute Trustee is Not a Stay Violation

The appointment of a substitute trustee, under a deed of trust, does not constitute a violation of the Automatic Stay. Not only is such a ministerial act but, more relevantly, the naming of a substitute trustee is little more than the designation of a lender's legal fiduciary under a deed of trust—not an effort to collect thereunder or to take any actions forbade by Title 11 of the United States Code.

3

The Motion rests on three portions of the Automatic Stay: Sections 362(a)(1), 362(a)(3), and 362(a)(4). *See* Sanctions Motion, DE #60, at ¶ 9. These provisions, in turn, prohibit the (i) "commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor," 11 U.S.C. § 362(a)(1); (ii) "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;" 11 U.S.C. § 362(a)(3); and (iii) "any act to create, perfect, or enforce any lien against property of the estate," 11 U.S.C. § 362(d)(4).

As is facially evident from the Trustee Substitution, all IBI Falcon did in substituting trustees was to replace First American TR Services of D.C., LLC with Russell Drazin as the trustee under a deed of trust. The Trustee Substitution does not allege the Debtor to be in default of its obligations on the underlying deed of trust. The Trustee Substitution does not commence a foreclosure. The Trustee Substitution does not impact or in any way impair the Debtor's legal interest in the real estate encumbered by the deed of trust. The Trustee Substitution simply changes trustees.

This cannot be the "commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor," 11 U.S.C. § 362(a)(1), for the simple reason that no such action or proceeding has ever been commenced by IBI Falcon—much less continued by IBI Falcon.

Nor is the Trustee Substitution an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The Debtor's real estate was held, pursuant to a deed of trust, by a third party trustee pre-petition. IBI Falcon simply changed the identity of that trustee. No interest of the Debtor (or the Debtor's estate) in the real property was compromised or altered. None of the proverbial bundle of rights,

4

held by the Debtor in the real estate, were changed, altered, impaired, or hampered in any way whatsoever. Again, all that occurred was a change of a third party fiduciary, with the new trustee taking no more—and, too, no less—than what was already held, in trust, by the prior trustee.

Similarly, the filing of the Trustee Substitution did not constitute an "act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(d)(4). The deed of trust under which the substitution occurred is, most certainly, a lien against property of the Debtor's estate. But that deed of trust was recorded long before this case was commenced and the Automatic Stay became effective. *See* Deed of Appointment of Substitute Trustee, DE #60, at p. 6 (reciting the deed of trust to have been executed on May 3, 2023). Changing the trustee thereunder does not create a new lien, does not enhance the already-perfected nature of the existing lien, and is not an act to enforce that existing lien.

Familiarly, trustees under deeds of trust are substituted quite regularly. Sometimes it is because an original trustee retires. Sometimes it is because an original trustee passes away. Sometimes it is because an original trustee—normally, in the District of Columbia, a lawyer representing the lender—loses her or his client to a different attorney. And, yes, sometimes it is because a lender wishes to change trustees in contemplation of potentially foreclosing on the deed of trust. But nothing about the substitution itself is *ipso facto* a part of the foreclosure process, much less an action in contravention of the Automatic Stay.

### b.  The Filing of the Affidavit if Not a Stay Violation

Notwithstanding the nomenclature of being an "Affidavit of Non-Residential Mortgage Foreclosure," the Affidavit did not actually cause any foreclosure to occur, did not serve to schedule (or provide notice of) any foreclosure, and was neither executed nor filed in connection

5

with a foreclosure. While the word "foreclosure" is in the title of the Affidavit, there is a palpable difference between filing such an instrument and actually conducting a foreclosure.

### i. District of Columbia Non-Judicial Foreclosure Protocol

The District of Columbia—like many other jurisdictions—permits non-judicial foreclosures to be carried in various circumstances. In such instances, there is no judicial involvement in the process whatsoever. *See, e.g., Rogers v. Advance Bank*, 111 A.3d 25, 29 (D.C. 2015) ("In short, non-judicial foreclosures are private debt collection procedures conducted without participation by the court.") (citing *Pappas v. E. Sav. Bank, FSB*, 911 A.2d 1230, 1237 (D.C. 2006)). So, unlike many instances in Maryland, a commercial foreclosure in the District of Columbia does not require an "order to docket" or the signature of any judge, clerk, or judicial officer. *Id.*

To carry out a non-judicial foreclosure for a *non-residential* mortgage or deed of trust, five notice-centric requirements must be satisfied under District of Columbia law:

(1) (A) A foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument, shall not take place unless the holder of the note secured by the deed of trust, mortgage, or security instrument, or its agent, **gives written notice of the intention to foreclose**, by certified mail, postage prepaid, return receipt requested, and by first-class mail, of the sale to the borrower and, if different from the borrower, to the person who holds the title of record, of the real property encumbered by the deed of trust, mortgage, or security instrument at his last known address.

(B) A copy of the notice required by subparagraph (A) of this paragraph shall be sent to the Mayor, at least 30 days in advance of the date of the sale.

(2) **The notice shall be in such format and contain such information as the Mayor shall, by rule, prescribe.**

(3) The Mayor shall give written acknowledgment to the holder of the note, or its agent, on the day that he receives the notice, that the notice has been received, indicating the date of receipt of the notice.

(4) The 30-day period shall commence to run on the date of receipt of the notice by the Mayor.

(5) The notice required by this subsection in regard to the mortgages and deeds of trust shall be in addition to the notice described by subsection (b) of this section.

D.C. Code § 42-815(c) (emphasis added).

There are two particularly important items about the preceding requirements of a *non-residential* foreclosure in the District of Columbia, relevant to the instant Motion: (i) a different procedure applies to *residential* non-judicial foreclosures; and (ii) the notice required by code is *not* the Affidavit recorded by IBI Falcon but, rather, is a wholly separate and distinct document that was never executed, much less recorded, in this case.

In terms of the distinction from residential foreclosures: the District of Columbia Code requires a slightly distinct protocol for such matters, inclusive of the obtainment of a "mediation certificate." D.C. Code § 42-815(b)(2). This is because, in 2011, the District of Columbia City Council elected to enact a scheme "requiring lenders and home owners to participate in mediation prior to foreclosure," where consumer property is implicated. *Rogers*, 111 A.3d at 28 (citing D.C. Council Comm. on Consumer and Regulatory Affairs, Report on Bill 18-691 at 2, 5 (2010)). So, most simply stated, a non-judicial *residential* foreclosure requires mediation and certification thereof, whereas a *non-residential* foreclosure imposes no such requirement.[1]

A *non-residential* foreclosure accordingly requires only compliance with the statutory rigors quoted above, including the filing and serving of the notice prescribed by the Mayor of the District of Columbia. D.C. Code § 42-815(c), That notice, in turn, looks *very* different than the Affidavit at issue in this case. *See* Notice of Foreclosure Sale of Real Property or Condominium Unit, attached hereto as Exhibit A. *See also S & G Inv., Inc. v. Home Fed. Sav. & Loan Asso.*, 505

---

[1] Lest the word "residential" appear deceptive: District of Columbia law defines "residential mortgage" in such a manner that expressly excludes ". . . debts incurred, and currently obligating solely, an entity. . . " D.C. Code § 42-815.01(a). Or, stated more simply, a mortgage is only "residential" if the obligor thereupon is a natural person, not a legal entity, and if several other requirements are also satisfied.

F.2d 370, 381 (D.C. Cir. 1974) (noting the form of notice to be that required by Public Law 90-566).[2]

All of which invites the following: the Affidavit in this case is *not* the Notice of Foreclosure Sale of Real Property or Condominium Unit that is required to effectuate a non-residential foreclosure in the District of Columbia. Nor is the Affidavit in this case a document that is required as part of the non-judicial foreclosure process in the District of Columbia, for non-residential foreclosures. The Affidavit is simply something that was filed—and that lenders frequently file—to distinguish a non-residential loan from a residential loan. It is, if anything, an indication that *if* a foreclosure is ever to occur, and *if* IBI Falcon chooses to pursue such through a non-judicial route, *then*—and only *then*—the at-issue real estate is to be regarded as non-residential in nature.

For clarity: A lender could file a document in substantially the same form as the Affidavit in this case, on the very day a deed of trust is executed and a loan is closed upon, long before any default is even contemplated to occur. The Affidavit does *not* recite a default to have occurred. The Affidavit does *not* schedule—much less give notice of—a foreclosure. The Affidavit is *not* a default instrument. It is simply a ministerial document aimed at formally labeling a non-consumer deed of trust as just that: a non-consumer (or, as it is, non-residential) deed of trust.

A review of the Affidavit—as appended to the Motion as Exhibit 1—crystalizes this point. All the document does is (i) recite the name of the property owner; (ii) identify the lender; (iii) identify the lender's authorized signatory; (iv) identify the location of the real estate; (v) identify where, in the land records, the deed of trust may be found; (vi) attest that the at-issue deed of trust

---

[2] The form of notice dates to 1968, D.C. Code § 1983-11(III)(1)(G), which is notably prior to District of Columbia home rule, and the relevant implementing legislation is thusly a Public Law of the United States. *See* U.S. Const. art. 1, § 8, cl. 17 (granting Congress the power to legislate for the District of Columbia); Pub. L. No. 93-198, 87 Stat. 774 (the District of Columbia Home Rule Act).

is not a residential mortgage; and (vii) conclude that any foreclosure thereof accordingly would not require the filing of a mediation certificate. *See* Motion, DE #60, at p. 4. There is no attestation that a default has occurred. *Id.* There is no notice that a foreclosure will ensue. *Id.* There is no effort to commence the process laid out in Section 42-815(c) of the District of Columbia Code. *Id.* There are just these non-controversial, objective notations. *Id.*

### ii.  Absence of a Stay Violation

Recognizing the Affidavit to not actually commence, continue, effectuate, or otherwise play a role in the performance of a foreclosure, greater clarity encompasses that the filing of the Affidavit is not a violation of the Automatic Stay. Just as with the Trustee Substitution, the document filed in the land records does not run afoul of Title 11 of the United States Code. Once more, an examination of the three pertinent provisions of the Automatic Stay, relied upon by the Debtor, emphasizes this reality.

Just as with the Trustee Substitution, the Affidavit cannot be the "commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor," 11 U.S.C. § 362(a)(1), for the simple reason that no such action or proceeding has ever been commenced by IBI Falcon—much less continued by IBI Falcon.

Similarly, the Affidavit is assuredly not an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The Affidavit is a ministerial notation that identifies the lender, the borrower, and the nature of the real property. The Affidavit does not seek possession, does not schedule a foreclosure, and does not do anything—or commence to do anything—to alter the ownership of, or possessory interest in, the real property.

Further, the filing of the Affidavit did not constitute an "act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(d)(4). Just as with the Trustee Substitution, the correlative deed of trust is, most certainly, a lien against property of the Debtor's estate. But that deed of trust was recorded long before this case was commenced and the Automatic Stay became effective. Filing the Affidavit does not create a new lien, does not enhance the already-perfected nature of the existing lien, and is not an act to enforce that existing lien.

### c.  IBI Falcon was Not on Notice of this Case

As noted above, there is a larger issue with the Motion: IBI Falcon was not on notice of this case—and, as such, of the implementation of the Automatic Stay—when the Trustee Substitution and Affidavit were recorded. This is because the Debtor failed to give notice of the case to IBI Falcon. And the contention to the contrary, in the Motion, is demonstrably counterfactual.

Familiarly, a five prong inquiry controls actions for damages stemming from stay violations, in the Fourth Circuit:

> To recover damages for a willful violation of the automatic stay, a debtor must establish five elements: (1) a bankruptcy petition was filed, (2) the debtor is an "individual" under the automatic stay provision, (3) the creditor received notice of the petition, (4) the creditor's actions in violation of the stay were willful, and (5) the debtor suffered damages. Debtors carry the burden of proof and must prove a willful violation of the automatic stay by a preponderance of the evidence.

*In re Weathers*, 670 B.R. 20, 32 (Bankr. D.S.C. 2025). *See also Ford Motor Credit Co. v. Hemsley (In re Bennett)*, 317 B.R. 313, 316 (Bankr. D. Md. 2004) ("A violation of the stay is willful if the creditor knew of the automatic stay and intentionally performed the actions that violated the stay[.]") (quoting *Barnett v. Edwards (In re Edwards)*, 214 BR. 613, 620 (9th Cir. BAP 1997)).

Here, IBI Falcon did not receive notice of the petition. *See, supra*, § II. IBI Falcon literally did not know the Debtor had filed a bankruptcy petition at the time the Affidavit was filed and,

10

similarly, literally did not know the Debtor had filed a bankruptcy petition at the time the Trustee Substitution was filed.

The Debtor insists otherwise, urging "Creditor received notice of the bankruptcy via BNC on October 15, 2025. . ." Motion, DE #60, at ¶ 6. This is a demonstrably counterfactual assertion. As a starting point (though less relevantly), there is no BNC notice dated October 15, 2025. *See* Docket, *passim*. More pertinently, the BNC notice of the case's commencement expressly lists IBI Falcon as a "BYPASSED RECIPIENT[]." *See* BNC Notice, DE #7, at p. 1.

Yes, notice was sent to IBI SBL Investment LP, *id.*, but, as noted *infra*, IBI SBL Investment LP is not the entity that holds the deed of trust, is not the entity that recorded the Affidavit, and is not the entity that recorded the Trustee Substitution. If the Debtor means to suggest the two entities have some relation, the Debtor is certainly correct. But that does not mean a notice sent to one entity would reach the other. And, as noted *supra*, the notice in question was not received by IBI SBL Investment LP until December 1 in any event.

What the record makes clear is that once IBI Falcon learned of this case, IBI Falcon engaged undersigned counsel who then entered an appearance. Nothing has been docketed in the land records since. No notice of foreclosure has been filed. No foreclosure has been carried out. No auction is due to commence.

Again, it is the Debtor's burden to prove IBI Falcon was on notice of this case. *Weathers*, 670 B.R. at 32. Since the Debtor used an international address for IBI Falcon, and seemingly ignored that BNC accordingly bypassed IBI Falcon in giving notice of this case, it is difficult to conceive of how the Debtor could possibly carry this burden.

### d. The Debtor Has Suffered No Cognizable Damages

Another issue permeates the Motion: the Debtor could not possibly have suffered any damages and is seeking a remedy—removal of recorded instruments from the land records of a federal territory—that, as best as counsel understands, is literally impossible. The Debtor is assuredly correct that any actions in contravention of the Automatic Stay are void, *see* Motion, DE #60, at ¶10, but seems to somehow miss that even if, *arguendo*, something did technically offend the stay, this very voidness means no damages have been incurred.

As this Honorable Court has previously observed, "actual damages should be awarded only if there is concrete evidence supporting the award of a definite amount. . . 'A damages award cannot be based on mere speculation, guess or conjecture.'" *Rawles v. Wych (In re Rawles)*, 2009 Bankr. LEXIS 2988, at *7 (Bankr. D. Md. June 17, 2009) (quoting and citing *Heghmann v. Indorf (In re Heghmann)*, 316 B.R. 395, 405 (B.A.P. 1st Cir. 2004)).

Here, though, the Motion does not actually allege any damages, whatsoever. *See* Motion, DE #60, *passim*. There is no allegation of any actual harm. And such is facially problematic, insofar as the incursion of damages is elemental to a finding of a violation of the Automatic Stay. *See, supra, Weathers*, 670 B.R. at 32.[3]

Moreover, the remedy seemingly sought by the Debtor—removal of items from the land records—appears to be a literal impossibility. There is no apparent mechanism for anyone to remove anything from the land records of the District of Columbia, which—understandably—are

---

[3] An accompanying motion to shorten time suggested the Affidavit and Trustee Substitution are creating "a negative impact to Debtors [sic] prospects for sale of the property. . ." Motion to Shorten Time, DE #61. As noted in an opposition to that motion, though, the Debtor has not so much as sought to engage the services of a realtor or broker. And it is difficult to fathom a "negative impact," of some stigmatic variety, that is not wholly mooted by the fact that the Debtor (i) is in chapter 11; and (ii) needs leave of court to sell the property in any event.

12

intended to function as a comprehensive archive, not a cherry-picked recitation of history. And even when there is a compelling legislative interest in striking odious items from the land records, such as to be rid of the historic stain of unlawful restrictive covenants pegged to race, color, religion, or national origin, the remedy imposed by District of Columbia law is to have an amendment filed noting the voidness of the prior filing, not to strike or delete the prior filing. *See* Uniform Unlawful Restriction in Land Records Amendment Act of 2024, 2023 D.C. ALS 498; 2023 D.C. Ch. 498 (2024).

This is not a point of form over substance but, rather, a matter of larger relevance: IBI Falcon cannot file a notice of cancellation of a foreclosure sale since IBI Falcon never gave notice of a foreclosure sale. IBI Falcon cannot file a notice rescinding a deed to a foreclosure purchaser since the Debtor's property was not sold at foreclosure. There is nothing IBI Falcon can do, vis a vis the two at-issue documents, for the very reason that the two at-issue documents do not constitute stay violations: neither accomplished any tangible or non-ministerial ends.

### e. Nothing is Alleged of IBI SBL Investment LP

Finally, it bears notation that the Debtor is seeking relief not merely against IBI Falcon but, too, against IBI SBL Investment LP ("IBI SBL"). This is puzzling insofar as IBI SBL does not appear anywhere on the Affidavit or Trustee Substitution, other than in a prefatory paragraph of the Trustee Substitution that recites how IBI SBL conveyed the deed of trust to IBI Falcon on July 8, 2025. *See* Deed of Appointment of Substitute Trustee, DE #60, at p. 6.

It is difficult to understand what IBI SBL has to do with the Motion, other than—admittedly somewhat cynically—pondering if the Debtor is trying to fuse two distinct (albeit related) entities for purposes of remedying the Debtor's failure to give IBI Falcon notice of this case. If so, there is, obviously, no basis in law to conflate IBI Falcon and IBI SBL. *See, e.g., Wood v. U.S. Bank*

13

*Nat'l Ass'n*, 246 A.3d 141, 148 (Del. Ch. 2021) ("The Delaware Uniform Limited Liability Act . . . makes clear that an LLC has a separate juridical existence distinct from its members.") (citing 6 Del. C. § 18-201(b)). Two related entities are assuredly not one and the same. And the Debtor's efforts to nonchalantly suggest otherwise, and bring IBI SBL before this Honorable Court, are wholly improper.

## V.    Conclusion

WHEREFORE, IBI Falcon respectfully prays this Honorable Court (i) deny the Motion; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: December 17, 2025

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for IBI Falcon US LLC and
IBI SBL Investment LP*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of December, 2025, a copy of the foregoing was served electronically upon filing via the ECF system, with copies to:

- Deirdre Theresa Johnson    dtjesq@dtjohnsonlaw.com
- L.    Jeanette    Rice    Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- US Trustee - Greenbelt    USTPRegion04.GB.ECF@USDOJ.GOV

/s/ Maurice B. VerStandig
Maurice B. VerStandig

14