IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | | |
|---|---|---|
| In re: | &#124; | |
| | &#124; | |
| 5410 30th Street DC, LLC, | &#124; | Case No.: 25-19605 |
| | &#124; | |
| Debtor | &#124; | Chapter 11 |
| | &#124; | |

---

### DEBTOR'S BRIEF ON STANDING ISSUES AND ON WHO IS OR MAY BE ENTITLED TO ENFORCE THE NOTE AND DEED OF TRUST

Pursuant to the Court's Order Setting Expedited Briefing Schedule entered July 23, 2026 [Dkt. No. 222], Debtor 5410 30th Street DC, LLC (the "Debtor"), by and through undersigned counsel, respectfully submits this brief addressing: (1) whether, under District of Columbia law, the Debtor has standing to challenge the assignments of the Note and Deed of Trust in connection with the Debtor's Objection to Proof of Claim No. 2; (2) whether, under bankruptcy law, IBI Falcon US LLC ("IBI Falcon") has standing to bring its Motion for Relief from the Automatic Stay; and (3) whether, under District of Columbia and bankruptcy law, IBI Falcon has standing to bring its Motion to Convert this case to Chapter 7. In addition, and because each of the foregoing questions ultimately turns on it, this brief sets out in detail why IBI Falcon is not entitled to enforce the Note and Deed of Trust under District of Columbia law, and who is, or may be, so entitled.

### I. INTRODUCTION

The Court has identified standing as a threshold issue cutting across multiple contested matters pending in this case, including the Debtor's Motion for Determination that IBI Falcon is Not a Party in Interest, the Debtor's Objection to Proof of Claim No. 2 (and Amended Proof of Claim), IBI Falcon's Motion for Relief from Stay, and IBI Falcon's Motion to Convert. These motions

collectively turn on two threshold questions: Does the Debtor, as debtor-in-possession, have standing to challenge defects in the chain of title to a promissory note and deed of trust encumbering its sole asset? And is IBI Falcon entitled to enforce the Note and Deed of Trust, such that it has standing to prosecute motions seeking to control or terminate this bankruptcy case?

The Debtor has never disputed that a loan was originated in 2023 in the original principal amount of $2,222,000.00. The issue before this Court is not whether a loan exists. The issue is whether IBI Falcon — or any other entity now before the Court — has carried its burden of establishing that it is the entity legally entitled to enforce that obligation and to receive payment from this bankruptcy estate.

As debtor-in-possession, the Debtor has an express statutory duty under 11 U.S.C. §§ 1107(a), 1106(a)(1), and 704(a)(5) to examine proofs of claim and to object to the allowance of any claim that is improper, where a purpose would be served in doing so. IBI Falcon, in turn, seeks extraordinary relief: it asks this Court to recognize a secured claim exceeding $2.6 million, to authorize foreclosure of the Debtor's principal asset, and to convert this reorganization case to a liquidation under Chapter 7. Before obtaining any of that relief, IBI Falcon bears the burden of first proving that it is legally entitled to enforce the Deed of Trust and Note under District of Columbia law. It has not done so. As set out in detail below, the defects in IBI Falcon's asserted chain of title are numerous, are independently fatal, and are demonstrated on the face of the District of Columbia land records and the instruments IBI Falcon itself has produced.

The practical benefit to the estate of resolving these standing questions correctly is the protection of the bankruptcy estate itself. As debtor-in-possession, the Debtor owes a fiduciary duty to preserve estate assets, protect estate equity, maximize value for the benefit of all creditors holding

allowable claims, and to ensure that the estate is administered in accordance with the Bankruptcy Code. This is not merely a dispute about who ultimately gets paid. It is about ensuring that a party asking this Court to recognize and enforce a multi-million-dollar secured claim, to lift the automatic stay so that it may foreclose, and to convert this case to a liquidation, has first established that it is the party legally entitled to do so. If IBI Falcon cannot establish such legal entitlement because of defects in ownership, authority, endorsement, or the chain of title, then granting any of the relief it seeks risks serious and irreparable prejudice to the estate and to every other creditor. If another entity ultimately establishes that it holds the legal right to enforce the obligation, the Bankruptcy Code provides a mechanism — the claims-allowance process — for that claim to be asserted and adjudicated. Until that determination is made, however, the Debtor has a fiduciary obligation to require any claimant seeking payment from this estate, or seeking to control its disposition, to first establish that it is legally entitled to do so.

This case therefore turns on IBI Falcon's burden of proof. IBI Falcon — not the Debtor — must establish every link in the chain by which it claims the right to enforce the Note and Deed of Trust. Missing authority, unrecorded powers of attorney, unaffixed allonges, and unsupported endorsements cannot be supplied by presumption, by possession alone, or by the passage of time. This brief addresses each of the Court's questions in turn, explains the applicable legal framework, and demonstrates why IBI Falcon is not entitled to enforce the Note and Deed of Trust under District of Columbia law.

## II. STATEMENT OF FACTS

**A. The Loan, the Note, and the Deed of Trust**

On May 3, 2023, the Debtor executed a promissory note (the "Note") in favor of FTF Lending, LLC ("FTF Lending") in the original principal amount of $2,222,000.00, secured by a Deed of Trust encumbering real property located at 5631 MacArthur Blvd NW, Washington, DC 20016 (the "Property"). The Property is the Debtor's sole asset. The Note and Deed of Trust were recorded in the land records of the District of Columbia.

An appraisal of the Property prepared by Shabach Realty Services, Inc., with an effective date of October 11, 2025, opines a market value of $5,050,000.00. Compared against IBI Falcon's asserted secured claim of $2,676,531.91, the record therefore reflects substantial equity in the Property — a fact directly relevant to IBI Falcon's burden under 11 U.S.C. § 362(g)(1), addressed in Part IV.C, infra.

IBI Falcon's own filings confirm the scale of that equity. On April 14, 2026, IBI Falcon filed a Disclosure Statement for its own proposed Chapter 11 Plan of Liquidation of the Debtor [Dkt. No. 130], which values the Property, consistent with the Debtor's own schedules, at $5,000,000.00, and recites that the Property had been listed for sale as recently as August 2025 for $4,645,000.00. That same Disclosure Statement and the accompanying Plan propose to auction the Property with an opening bid of only $400,000.00 — at which auction IBI Falcon would be permitted to credit bid its own disputed claim without posting any deposit, while any other bidder would be required to post a $150,000.00 deposit merely to participate. The practical effect of IBI Falcon's own proposed Plan, then, would be to allow IBI Falcon to acquire a property it values at $5,000,000.00 for a credit bid as low as $400,000.00, based on a secured claim IBI Falcon has not proven it is entitled to enforce. That proposal is directly relevant to the equity analysis under 11 U.S.C. § 362(g) and to the prejudice-to-the-estate analysis under 11 U.S.C. § 1112(b), both addressed below.

**B. The Purported Chain of Assignments**

IBI Falcon claims to hold the Note and to be the beneficiary of the Deed of Trust through a two-step chain. First, FTF Lending purportedly assigned the Deed of Trust to IBI SBL Investment LP ("IBI SBL") by an Assignment of Deed of Trust executed by FTF Lending's purported agent, Nolan Helline, who identifies himself only as a "Capital Markets Financial Analyst." A corresponding allonge (the "First Allonge") purports to endorse the Note from FTF Lending to IBI SBL, bearing an "effective date" of March 6, 2024. Second, IBI SBL purportedly assigned the Deed of Trust to IBI Falcon by a further Assignment of Deed of Trust executed July 8, 2025 and recorded July 9, 2025, by Anthony Gingo, solely in his stated capacity as attorney-in-fact for IBI SBL. A corresponding allonge (the "Second Allonge") purports to endorse the Note from IBI SBL to IBI Falcon, bearing an "effective date" of June 30, 2025.

Neither allonge was produced with IBI Falcon's original Proof of Claim No. 2. Both allonges were produced for the first time only after the Debtor challenged that claim — a fact from which a reasonable factfinder could infer that the allonges were not attached to the Note when the claim was filed, and that they were created, or at least reduced to a form capable of production, only after the Debtor's objection.

**C. The Marcus Power of Attorney and the Belatedly Recorded Authority for the Second Assignment**

IBI Falcon has produced a Limited Power of Attorney purporting to authorize Mr. Gingo to execute the Second Assignment on IBI SBL's behalf, bearing a stated effective date of September 10, 2024. That instrument was not recorded in the District of Columbia land records until October 6, 2025 — approximately three months after the Second Assignment itself was executed (July 8, 2025)

and recorded (July 9, 2025). The Second Assignment does not cross-reference any previously recorded power of attorney, as D.C. Code § 21-2603.03 requires.

Separately, IBI SBL's own discovery responses identify a different power of attorney — executed by Amir Golan, notarized in Israel on June 26, 2025, and also not recorded until October 6, 2025 (the "Marcus POA") — as the instrument associated with the Second Assignment. Whether the September 10, 2024 instrument and the Marcus POA are the same document under two different descriptions, or two different documents, has not been reconciled in any sworn discovery response; if they are the same document, its stated effective date is nine months removed from the instrument's actual execution date; if they are different documents, IBI SBL's interrogatory answer identifying the authority for the Second Assignment omitted an instrument squarely responsive to the request. Either way, the timing and content of the operative power of attorney for the Second Assignment remains unresolved on IBI Falcon's own record, and the Debtor respectfully submits that this discrepancy independently undermines any showing that the Second Assignment was authorized as of its execution date.

Further, Paragraph 3(a) of the Limited Power of Attorney conditioned Mr. Gingo's authority to act as attorney-in-fact upon IBI SBL's prior consent to the specific document at issue, to be given by email, text message, or other written communication. IBI Falcon has produced no evidence that such prior written consent was ever given for either the Second Assignment of Deed of Trust or the Second Allonge.

### D. Physical Inspection of the Original Note

On July 20, 2026, IBI Falcon produced the original Note for review at the courthouse in Greenbelt, Maryland. Upon inspection, the Debtor observed that the allonges are not permanently affixed to

the Note in any manner consistent with a contemporaneous, bona fide negotiation. Rather, they were attached only by a paper clip or binder clip — not stapled, glued, sewn, or otherwise joined to the instrument so as to become "affixed" within the meaning of D.C. Code § 28:3-204(a). *See* D.C. Code § 28:3-204(a) & cmt. 1 . The Debtor observed no staple holes or other physical indicia suggesting the allonges had ever been permanently attached to the Note; each allonge appeared instead as a loose, readily removable, standalone document.

**E. The Four Purported Extension Agreements**

The record reflects four purported loan extension agreements, each independently defective on its face.

**First Extension Agreement** (purportedly effective through September 1, 2024): This document fails to identify or name "the Lender," leaving that defined term blank, and the signature block associated with the Lender bears an illegible mark with no printed name or date beneath it. Although "Fund That Flip, Inc." appears in the document's footer, Fund That Flip, Inc. is not a named or identified party. Under the agreement's own Paragraph C(3), if the required extension fee was not paid by September 1, 2024, "this Amendment shall be null and void and the full balance of the Loan shall become immediately due and payable on the original Maturity Date." The Debtor did not pay that fee. By the extension agreement's own express terms, it is null and void, and the extensions and fees purportedly built upon it lack a valid foundation.

**Second Extension Agreement** (executed March 23, 2025, purportedly effective retroactively to September 1, 2024 through June 18, 2025): This agreement was not executed until nearly seven months after its stated effective date. A retroactive effective date, standing alone, does not establish that mutual assent in fact existed as of the earlier date it purports to describe.

**Third Extension Agreement** (purportedly effective June 18, 2025 through June 30, 2025): This agreement was executed by IBI SBL on July 1, 2025 — one day after IBI SBL purportedly transferred all of its interest in the Note to IBI Falcon, effective June 30, 2025, according to IBI Falcon's own chain-of-title documents. IBI SBL therefore purported to sign an extension of a loan it no longer owned.

**Fourth Extension Agreement** (purportedly effective June 30, 2025 through September 30, 2025): This agreement was executed on July 13, 2025 — thirteen days after the previous purported transfer to IBI Falcon. As with the Third Extension Agreement, IBI SBL purported to extend a loan, and to impose associated fees, at a time when its own documents show it no longer held any interest in that loan.

Each of the four agreements described above was accompanied by substantial extension fees. The Debtor's position, addressed further in Part IV.F below, is that these agreements — and any waivers, releases, or fee obligations purportedly arising from them — are unenforceable, both because IBI SBL lacked valid title to extend a loan it did not own and because the Third and Fourth Extension Agreements were executed by an entity that, on IBI Falcon's own timeline, had already divested itself of any interest in the Note.

**F. The Bankruptcy Case and the Contested Matters Now Before the Court**

The Debtor filed its voluntary petition under Chapter 11 on October 14, 2025 (the "Petition Date"). The Debtor is a debtor-in-possession and remains in control of its estate.

On January 29, 2026, IBI Falcon filed Proof of Claim No. 2, asserting a secured claim of $2,676,531.91. On February 26, 2026, the Debtor filed its Objection to Proof of Claim No. 2, challenging IBI Falcon's standing and its entitlement to enforce the Note and Deed of Trust. On

April 15, 2026, the Debtor filed its Motion for Determination that IBI Falcon is Not a Party in Interest. IBI Falcon has separately filed a Motion to Convert Case to Chapter 7 [Dkt. No. 95] and a Motion for Relief from the Automatic Stay [Dkt. No. 195]. The Court continued a previously scheduled hearing to permit the Debtor to conduct discovery into IBI Falcon's standing, and by Order entered July 23, 2026 [Dkt. No. 222], directed the parties to submit briefing on the standing issues addressed here.

The Debtor notes, for the sake of completeness, that although IBI SBL and IBI Falcon are represented in this case by the same counsel, they are separate legal entities — a limited partnership and a limited liability company, respectively. Only IBI Falcon has filed a proof of claim, and only IBI Falcon is the movant on the Motion for Relief from Stay and the Motion to Convert. The loan modification and extension agreements described above, by contrast, identify IBI SBL — not IBI Falcon — as the purported holder and lender at the time each was executed. That asymmetry bears directly on the chain-of-title analysis that follows.

## III. LEGAL STANDARD

**A. Standing in the District of Columbia**

Standing in the District of Columbia requires a plaintiff to establish: (1) an injury in fact that is concrete and particularized; (2) that the injury is fairly traceable to the defendant's challenged conduct; and (3) that the injury is likely to be redressed by a favorable decision. UMC Dev., LLC v. District of Columbia, 120 A.3d 37 (D.C. 2015). A defect of standing is a defect in subject-matter jurisdiction. Id.

**B. Standing to Seek Relief from the Automatic Stay (11 U.S.C. § 362(d))**

Under 11 U.S.C. § 362(d), only a "party in interest" may request relief from the automatic stay. Cruz v. Strauss (In re Cruz), 516 B.R. 594 (Bankr. D. Md. 2014); In re Lee, 467 B.R. 906 (Bankr. D.D.C. 2012). A "party in interest" in this context is one with a colorable claim to enforce a right against property of the estate. Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 914-15 (9th Cir. BAP 2011); Cruz, 516 B.R. 594. To establish standing to seek relief from the stay, the movant must show that it holds a property interest in, or is entitled to enforce or pursue remedies relating to, the secured obligation that forms the basis of its motion. Thomas v. Fannie Mae (In re Thomas), 469 B.R. 915 (Bankr. W.D. Okla. 2012); Singh v. Lai, 417 F. Supp. 3d 694, 699 (D. Md. 2019). The determination of whether a movant is a "party in interest" for purposes of § 362(d) is made on a case-by-case basis, with reference to the interest asserted and how that interest is affected by the automatic stay. In re Lee, 467 B.R. 906. Generally, the real party in interest under § 362(d) is the one who, under applicable substantive law, holds the legal right sought to be enforced. Id.

### C. Standing to Move for Conversion to Chapter 7 (11 U.S.C. § 1112(b))

Under 11 U.S.C. § 1112(b), the Court may convert a Chapter 11 case to Chapter 7 "on request of a party in interest." A "party in interest" under 11 U.S.C. § 1109(b) includes a "creditor," which 11 U.S.C. § 101(10) defines as an entity holding a "claim" against the debtor that arose at or before the order for relief. A "claim" is, in turn, defined in 11 U.S.C. § 101(5) as a right to payment. While Congress intended "claim" to carry the broadest available definition, Midland Funding, LLC v. Johnson, 581 U.S. 224 (2017), that breadth does not eliminate the requirement that the claimant possess some legally cognizable, state-law basis for payment, because property interests — including rights to payment — are created and defined by state law absent a controlling federal interest. Travelers Cas. & Sur. Co. of Am. v. PG&E, 549 U.S. 443 (2007). An entity with no valid

claim has no status as a "creditor" and therefore no standing as a "party in interest" under § 1109(b). Even where movant status as a party in interest is established, § 1112(b)(1) places the burden on the movant to prove "cause" for conversion by a preponderance of the evidence, and § 1112(b)(2) forecloses conversion, even where cause is shown, if the Court identifies "unusual circumstances" establishing that conversion is not in the best interests of creditors and the estate.

**D. Rights and Powers of a Debtor-in-Possession (11 U.S.C. § 1107(a))**

Under 11 U.S.C. § 1107(a), a debtor-in-possession has all the rights, other than the right to compensation under § 330, and all the powers, and performs all the functions and duties, of a trustee serving in a Chapter 11 case, except as limited by 11 U.S.C. §§ 1106(a)(2)-(4). Because § 1106(a)(1) is not among the excepted provisions, the debtor-in-possession performs the trustee's duty under 11 U.S.C. § 704(a)(5) to examine proofs of claim and to object to the allowance of any claim that is improper, where a purpose would be served by doing so. The debtor-in-possession also possesses the trustee's so-called "strong-arm" avoiding powers under 11 U.S.C. § 544(a)(3), which, as of the Petition Date, confer upon the Debtor the rights and powers of a hypothetical bona fide purchaser of the Debtor's real property, without regard to actual knowledge. Under District of Columbia law, interests in real property generally are not effective against subsequent bona fide purchasers and creditors without notice until properly executed and recorded. D.C. Code §§ 42-401, 42-801.

**E. The Burden-Shifting Framework Governing Proofs of Claim**

A proof of claim executed and filed in accordance with Federal Rule of Bankruptcy Procedure 3001 constitutes prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). That presumption, however, is rebuttable: once the debtor produces evidence sufficient to negate one or more of the claim's essential allegations, the burden shifts back to the claimant to

prove, by a preponderance of the evidence, that it is entitled to the claim asserted. Stancill v. Harford Sands Inc. (In re Harford Sands Inc.), 372 F.3d 637, 640 (4th Cir. 2004). This burden-shifting framework governs the analysis throughout this brief: the Debtor's documented and physical evidence of irregularity in the allonges, assignments, and powers of attorney is more than sufficient to rebut any presumption of validity attaching to Proof of Claim No. 2, after which the burden rests on IBI Falcon — not the Debtor — to prove its claim, including its status as a person entitled to enforce the Note, by a preponderance of the evidence.

**F. Conditions Precedent and the Consequence of Non-Satisfaction**

Much of the analysis below draws on the general contract-law principle of a condition precedent — an event, not certain to occur, that must occur before performance under a contract becomes due or before an instrument takes legal effect. Restatement (Second) of Contracts §§ 224, 225 (1981). Where a condition precedent is not satisfied, the obligation or conveyance made contingent upon it does not come into existence or effect; there is nothing to enforce, ratify, or waive, because the condition's non-satisfaction prevents the underlying right or duty from arising in the first instance. Id. § 225(1) ("Performance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is excused.").

The Debtor submits that this same principle illuminates the proper reading of D.C. Code § 21-2603.03's command that a power of attorney authorizing a real-property conveyance "shall be recorded with or prior to" the deed or instrument executed pursuant to it. By its plain terms, the statute prescribes a mandatory sequence — recordation with or before the conveyance, not after — and nothing in the statute suggests that sequence may be satisfied retroactively by a later recording paired with an earlier stated "effective date." Whether or not a court would formally characterize that statutory sequence as a "condition precedent" in the Restatement sense, the

consequence the Debtor urges is the same either way: where, as here, the power of attorney is recorded well after the instrument it purports to authorize, the statute's own terms have not been satisfied, and the conveyance should not be treated as effective as of a date preceding the recordation the statute requires.

## IV. ARGUMENT

**A. IBI Falcon Is Not Entitled to Enforce the Note and Deed of Trust Under District of Columbia Law**

Under D.C. Code § 28:3-301, a "person entitled to enforce" a negotiable instrument is the holder of the instrument, a nonholder in possession who has the rights of a holder, or a person not in possession who is entitled to enforce the instrument under D.C. Code § 28:3-309 or § 28:3-418(d). A "holder" is the person in possession of an instrument payable to bearer or to an identified person that is the person in possession. D.C. Code § 28:1-201(b)(21)(A). IBI Falcon bears the burden of establishing each link in the chain by which it claims that status. As set out below, it has not carried that burden as to either step of its asserted chain of title.

**1. The Purported Transfer from FTF Lending to IBI SBL Is Unproven**

The first Assignment of Deed of Trust — from FTF Lending to IBI SBL — was executed by FTF Lending's purported agent, Nolan Helline, who identifies himself only as a "Capital Markets Financial Analyst." D.C. Code § 21-2603.03 requires that a power of attorney authorizing an agent to convey an interest in real property "be recorded with or prior to" the deed or instrument executed pursuant to that power. No power of attorney authorizing Mr. Helline to convey FTF Lending's interest in the Property has ever been recorded in the D.C. land records, and the Assignment does not cross-reference any such recorded instrument. Because this mandatory recording sequence was never satisfied, and because — as the Debtor submits by analogy to condition-precedent doctrine,

see Part III.F, supra — a statutory prerequisite of this kind must be satisfied before, not after, the conveyance it governs, the first Assignment did not take legal effect, and IBI Falcon has failed to establish the first link in its chain of title to the Deed of Trust.

The First Allonge suffers from an independent, equally fatal defect. It was executed by the same Mr. Helline, purporting to endorse a $2,222,000.00 negotiable instrument on FTF Lending's behalf. Under D.C. Code § 28:3-403(a), "an unauthorized signature is ineffective except as the signature of the unauthorized signer in favor of a person who in good faith pays the instrument or takes it for value." During discovery, the Debtor specifically requested any power of attorney or corporate resolution establishing Mr. Helline's authority to bind FTF Lending. None has been produced. The Debtor's position is not that it has affirmatively proven the First Allonge to be a forgery; rather, once the Debtor rebuts the presumptive validity of Proof of Claim No. 2 by identifying this documented absence of authority, the burden shifts to IBI Falcon — as the claimant relying on the instrument — to come forward with proof of Mr. Helline's authority. Stancill, 372 F.3d at 640; Fed. R. Bankr. P. 3001(c)-(f). IBI Falcon has not done so, and it may not discharge that burden by suggesting that the Debtor obtain the missing proof of authority from FTF Lending itself; once the presumption of validity is rebutted, the burden of proving a signer's authority rests on the party seeking to enforce the instrument, not on the obligor resisting enforcement. Id.

The First Allonge fails for a third, independent reason: it was not affixed to the Note. D.C. Code § 28:3-204(a) provides that an allonge must be "affixed" to a negotiable instrument to become a part of it. See also D.C. Code § 28:3-204(a) cmt. 1. IBI Falcon's original Proof of Claim No. 2 was filed without either allonge. Both allonges were produced for the first time only after the Debtor challenged the claim, and when the original Note was produced for inspection on July 20, 2026, the allonges were found attached only by a paper clip or binder clip — not stapled, glued, or

otherwise permanently joined to the instrument. The Debtor does not ask the Court to find, as an adjudicated fact, precisely when the allonges were created; rather, this sequence of events — no allonges attached to the original claim, production only after objection, and a loose, non-permanent method of attachment upon physical inspection — is evidence from which the Court may reasonably infer that the allonges were not affixed to the Note either at the time of the purported 2024 transfer or as of the Petition Date, and it is IBI Falcon's burden, not the Debtor's, to come forward with evidence establishing a contemporaneous, bona fide affixation. It has not done so.

Because IBI Falcon has not established that the first Assignment of Deed of Trust complied with D.C. Code § 21-2603.03, that the First Allonge was executed by an authorized signatory under D.C. Code § 28:3-403(a), or that the First Allonge was affixed to the Note as required by D.C. Code § 28:3-204(a), IBI Falcon has not proven that the first transfer — from FTF Lending to IBI SBL — was legally effective. Because every subsequent link in IBI Falcon's asserted chain of title depends on that first transfer having been effective, IBI Falcon's failure of proof as to the first transfer is, standing alone, sufficient to defeat its claimed status as the person entitled to enforce the Note and Deed of Trust.

### 2. The Purported Transfer from IBI SBL to IBI Falcon Is Independently Unproven

Even if the Court were to conclude that the first transfer was effective — which the Debtor disputes — IBI Falcon independently fails to establish that IBI SBL validly transferred either the Deed of Trust or the Note to IBI Falcon.

As to the Deed of Trust, the second Assignment was executed by Anthony Gingo, solely as attorney-in-fact for IBI SBL, on July 8, 2025, and recorded July 9, 2025. As described in Part II.C, supra, the power of attorney IBI Falcon has produced to support Mr. Gingo's authority was not recorded until October 6, 2025 — approximately three months after the Assignment it purportedly

authorizes. D.C. Code § 21-2603.03's "with or prior to" recording requirement was not satisfied, and, consistent with the analysis in Part III.F, supra, the statute's plain terms do not permit that defect to be cured retroactively by a later recording combined with an earlier stated "effective date." The Second Assignment also fails to cross-reference any recorded power of attorney, depriving subsequent bona fide purchasers and creditors — including the Debtor-in-Possession standing in the shoes of a hypothetical bona fide purchaser under 11 U.S.C. § 544(a)(3) — of the constructive notice that D.C. Code §§ 42-401 and 21-2603.03 are designed to provide.

Separately, and independent of the recording defect, Paragraph 3(a) of the power of attorney conditions Mr. Gingo's authority to act on IBI SBL's prior written consent to the specific document at issue. IBI Falcon has produced no evidence that such consent was given for the Second Assignment. Because that consent requirement is itself a condition precedent to Mr. Gingo's authority, its non-satisfaction means the authority to execute the Second Assignment never arose, regardless of the recording defect described above.

As to the Note, the Second Allonge suffers from the same category of defects. Although the power of attorney generally purports to authorize note endorsements, that authority was, again, conditioned on IBI SBL's prior written consent under Paragraph 3(a), and no evidence of that consent has been produced. The Second Allonge also was not produced with IBI Falcon's original claim, but only after the Debtor's challenge, and — like the First Allonge — was found attached to the Note only by a binder clip upon physical inspection, with no staple holes or other indicia of permanent affixation. IBI Falcon has therefore failed to establish that the Second Allonge was affixed to the Note as required by D.C. Code § 28:3-204(a), just as it failed to do so for the First Allonge.

The timing of the Third and Fourth Extension Agreements independently corroborates the Debtor's position that the Second Allonge and Second Assignment cannot be relied upon as effective as of their stated dates. Both agreements were executed by IBI SBL — not IBI Falcon — after June 30, 2025, the date on which IBI Falcon's own records show the Note and Deed of Trust had already been transferred to it. An entity cannot extend, or charge fees to extend, an obligation it no longer owns. That IBI SBL nonetheless purported to do so in July 2025 raises a further, independent question about whether the underlying June 30, 2025 transfer to IBI Falcon was itself treated as effective by the parties to it at the time, or whether — consistent with the allonges' unaffixed condition and post-objection production — the paper chain of title was still being assembled well after the dates it recites.

### 3. Who Is or May Be Entitled to Enforce the Note and Deed of Trust

On the present record, no entity has carried its burden of establishing that it is a person entitled to enforce the Note and Deed of Trust. Because the first transfer — from FTF Lending to IBI SBL — has not been shown to be legally effective for the reasons set out in Part IV.A.1, supra, IBI SBL has not been shown to have acquired any enforceable interest in the Note capable of being passed to IBI Falcon. Because IBI SBL's own title is unproven, the second transfer to IBI Falcon necessarily fails as well, independent of the additional, freestanding defects described in Part IV.A.2, supra, that affect the IBI SBL-to-IBI Falcon transfer on its own terms.

The Debtor's position is not that title to the Note has vanished, but that on the current record, none of the entities that have appeared in this case — IBI SBL or IBI Falcon — has proven itself to be the person entitled to enforce it. The last entity shown by the documentary record to have validly held the Note and Deed of Trust is FTF Lending, the original payee and beneficiary, because the Debtor's evidence rebuts, and IBI Falcon's proof has not overcome, the presumption that the

subsequent transfers away from FTF Lending were effective. The Debtor does not concede, and this brief should not be read to suggest, that FTF Lending in fact retains an enforceable claim; FTF Lending has not filed a proof of claim in this case, and the deadline to do so has passed. The Debtor's point is narrower and more fundamental: whoever ultimately claims the right to enforce the Note and Deed of Trust — FTF Lending, IBI SBL, IBI Falcon, or some other transferee not yet identified in this record — bears the burden of proving, with competent evidence, a complete and legally effective chain of authorized, properly recorded, and properly affixed transfers connecting it to the original instrument. Stancill, 372 F.3d at 640; Fed. R. Bankr. P. 3001(c)-(f). No entity has made that showing here.

Because IBI Falcon has not established that it is a holder, a nonholder in possession with the rights of a holder, or otherwise a person entitled to enforce the Note under D.C. Code § 28:3-301, and because the deed of trust follows the note only where the note itself has been validly transferred, Logan v. Lasalle Bank Nat'l Ass'n, 80 A.3d 1014 (D.C. 2013), IBI Falcon likewise has not established that it is the beneficiary of the Deed of Trust. It is neither a holder nor a holder in due course of the Note, and its possession of the original instrument, standing alone, does not supply the missing proof of a valid chain of endorsement.

**B. Under District of Columbia Law, the Debtor Has Standing to Challenge the Assignments of the Note in Connection With Its Claim Objection**

**1. General Standing Principles Support the Debtor's Challenge**

District of Columbia law permits an obligor to challenge the validity of an assignment where the purported assignee seeks to enforce the obligation against the obligor. Community Credit Union Services, Inc. v. Federal Express Services Corp., 534 A.2d 331 (D.C. 1987); Little v. SunTrust Bank, 204 A.3d 1272 (D.C. 2019). In Community Credit Union, the D.C. Court of Appeals held

that a lien creditor has standing to challenge a deed purporting to remove a debtor's assets from its reach, explaining that standing requirements were satisfied because the creditor suffered a potential injury, could trace that injury to the property transfer, and would obtain redress if the transfer were invalidated. 534 A.2d at 333-34. Little v. SunTrust Bank reaffirmed that, to establish standing, a party must allege an injury-in-fact that is concrete and particularized, fairly traceable to the challenged conduct, and likely to be redressed by a favorable decision. 204 A.3d at 1276-77.

Here, the Debtor satisfies each requirement. The Debtor has suffered an actual, concrete injury: IBI Falcon has filed a proof of claim asserting a secured claim of $2,676,531.91 against the Property, the Debtor's sole asset, directly threatening the Debtor's equity in the Property and its ability to reorganize. That injury is fairly traceable to the challenged assignments — if the assignments are void or ineffective, IBI Falcon holds no valid lien and no right to payment from the Debtor. And the injury would be redressed by a favorable decision: invalidation, or a determination of non-enforceability, would remove the cloud on title and permit the Debtor to pursue reorganization unencumbered by an unproven claim. Separately, as debtor-in-possession, the Debtor stands in the shoes of a hypothetical bona fide purchaser under 11 U.S.C. § 544(a)(3), and a hypothetical purchaser examining the D.C. land records as of the Petition Date would find no recorded power of attorney supporting the first Assignment, and a second Assignment that fails to cross-reference the power of attorney belatedly recorded eighty-nine days after the Assignment itself — defects a bona fide purchaser could not resolve from the public record alone.

## 2. Rivera v. Rosenberg & Assocs., LLC: A Detailed Analysis

In Rivera v. Rosenberg & Assocs., LLC, 142 F. Supp. 3d 149, 155 (D.D.C. 2015), the United States District Court for the District of Columbia addressed a borrower's standing to challenge the validity of an assignment of her mortgage loan. The plaintiff, Ms. Rivera, sued the loan servicer

and others under the Fair Debt Collection Practices Act ("FDCPA") and related District of Columbia common law, alleging, among other things, that an assignment in her loan's chain of title was invalid. Id. at 152-55. The court held that "[b]ecause an individual who is not a party to, or an intended beneficiary of, an assignment lacks standing to challenge the validity of the assignment," Ms. Rivera lacked standing to attack the assignment at issue, reasoning that "regardless of whether the Deed of Trust was properly assigned," Ms. Rivera "was still obligated to make her mortgage payments and, upon a default, was subject to foreclosure by the current beneficiary of the Deed of Trust." Id. at 155. The court further noted, in footnote 3, that a different result might follow where a plaintiff alleges fraud or a knowing irregularity in the assignment process, citing Clarke v. Dunn, No. DKC 14-1401, 2014 WL 4388344 (D. Md. Sept. 4, 2014). Rivera, 142 F. Supp. 3d at 155 n.3.

To be candid with the Court, Rivera's core holding, read in isolation, states a rule that IBI Falcon can be expected to attempt to invoke against the Debtor: an obligor who is not a party to, or an intended beneficiary of, an assignment lacks standing to challenge its validity, because the assignment does not alter the obligor's underlying payment obligation regardless of which entity holds it. IBI Falcon will likely argue that this rule forecloses the Debtor's challenge here, because the Debtor was not a party to, and was not an intended beneficiary of, the assignments among FTF Lending, IBI SBL, and IBI Falcon.

**Similarities between Rivera and this case.** The two cases share an important surface similarity: in both, the party challenging the assignment is the obligor on the underlying debt, not a stranger to the loan altogether. In both cases, the obligor's basic payment obligation — assuming a valid loan and a valid holder somewhere in the chain — does not change merely because the debt has been assigned from one lender to another. And in both cases, the assignee's response to the standing

challenge is the same: that the obligor suffers no legally cognizable injury from a change in assignee, because it must pay somebody regardless of who that somebody is.

**Differences between Rivera and this case.** The differences between Rivera and the present case, however, are substantial and, in the Debtor's submission, controlling.

**First — procedural posture.** Rivera arose in a plenary civil action asserting FDCPA and common-law claims, in which the plaintiff was required to establish Article III and prudential third-party standing wholly independent of any statutory claims-resolution framework. This case, by contrast, arises within a pending bankruptcy claims-allowance proceeding. IBI Falcon filed a proof of claim asserting a secured claim of $2,676,531.91 against the estate, see 11 U.S.C. § 502(a), and the Debtor, as debtor-in-possession, is vested with the rights and powers of a bankruptcy trustee to object to that claim under 11 U.S.C. §§ 1107(a), 1109(b), and Federal Rule of Bankruptcy Procedure 3007. Standing to object to a proof of claim, and to challenge the assignments on which that claim depends, arises directly from the Bankruptcy Code and Rules — it is not the freestanding, prudential third-party-standing doctrine that governed Rivera.

**Second — the premise underlying Rivera's holding does not hold true here.** Rivera's rationale rests on the proposition that the identity of the true assignee is largely irrelevant to the obligor because the payment obligation does not change based on who holds the debt. Rivera, 142 F. Supp. 3d at 155. In a bankruptcy claims-allowance proceeding, by contrast, the identity and validity of the claimant is the very question before the Court: if IBI Falcon is not a person entitled to enforce the Note, it has no allowable claim against the estate at all, and the Property is not encumbered by any lien in IBI Falcon's favor. The rationale that drove Rivera's outcome — that a change in

assignee causes the obligor no cognizable injury — does not extend to a dispute over whether the movant holds any enforceable claim whatsoever.

**Third — the nature of the injury.** The injury asserted by the Rivera plaintiff was largely conjectural: a hypothetical risk of facing a future collection or foreclosure action brought by the wrong party. The Debtor's injury here is concrete and immediate: IBI Falcon has filed a $2,676,531.91 proof of claim against the estate, has moved for relief from the automatic stay to foreclose on the Property, and has moved to convert this case to Chapter 7 — all based on the same disputed chain of assignments. Each motion directly and presently affects the administration of the estate and the Debtor's ability to reorganize.

**Fourth — Rivera's own fraud/irregularity exception applies here.** Rivera did not announce an absolute rule; the court expressly recognized that a different result may follow where the plaintiff alleges fraud or a knowing irregularity in the assignment process. Rivera, 142 F. Supp. 3d at 155 n.3 (citing Clarke v. Dunn, 2014 WL 4388344). The Debtor's objection here is not a generic complaint about corporate formalities. It alleges specific, documented irregularities: an endorsement signed by an individual without documented authority to bind FTF Lending, D.C. Code § 28:3-403(a); a power of attorney recorded well after — rather than "with or prior to," as D.C. Code § 21-2603.03 requires — the deed it purportedly authorized; and allonges bearing only retroactive "effective dates," produced only after the Debtor's objection to Proof of Claim No. 2. That inference is corroborated by physical inspection: when IBI Falcon produced the original Note on July 20, 2026, the allonges were attached only by a paper clip, not affixed as would be expected of an endorsement executed and joined to the instrument at the time of a bona fide transfer. See D.C. Code § 28:3-204(a) & cmt. 1. These are precisely the kind of documented irregularities Rivera's own footnote 3 exception contemplates.

**Fifth — the claims-allowance evidentiary framework has no analogue in a plenary FDCPA suit.** As explained in Part III.E, supra, the documentary and physical irregularities described above are sufficient to rebut the presumption of validity attaching to Proof of Claim No. 2 under Federal Rule of Bankruptcy Procedure 3001(f), shifting to IBI Falcon the burden of proving, among other things, that it is a person entitled to enforce the Note — a claims-allowance mechanism with no counterpart in the plenary civil suit at issue in Rivera.

**Anticipated response and reply.** IBI Falcon may respond that the Debtor's true grievance is with the merits of its claim, not with any assignee's identity, and that Rivera therefore controls regardless of the bankruptcy setting because the Debtor's underlying payment obligation does not change based on who holds the Note. That response conflates two distinct questions. Rivera addressed whether an obligor may collaterally attack an assignment between two undisputedly valid claimants, where the obligor's obligation is unaffected either way. This case presents the antecedent question of whether IBI Falcon is a valid claimant against this estate at all. The Debtor's objection does not ask this Court to referee a dispute between FTF Lending, IBI SBL, and IBI Falcon over which of them owns the debt; it asks the Court to determine whether IBI Falcon — the only entity that has filed a claim and sought affirmative relief in this case — has proven the elements necessary to enforce that claim against the estate. That question belongs to the Debtor as debtor-in-possession by direct operation of the Bankruptcy Code, independent of Rivera's third-party-standing analysis.

For these reasons, Rivera does not bar the Debtor's challenge to the assignments. Properly understood, Rivera stands for the narrower proposition that an obligor cannot manufacture standing in a plenary third-party suit based on a purely hypothetical risk of misdirected collection efforts. It says nothing about a debtor-in-possession's statutory right, within its own bankruptcy

case, to object to a proof of claim and test whether the claimant is legally entitled to enforce the instrument on which that claim depends — and it expressly carves out the kind of documented fraud and irregularity the Debtor has shown here.

**C. Under Bankruptcy Law, IBI Falcon Has Not Established Standing to Bring the Motion for Relief From the Automatic Stay**

**1. Only a Party With a Colorable Claim May Seek Relief From the Automatic Stay**

Section 362(d) of the Bankruptcy Code permits relief from the automatic stay only on request of a "party in interest." Cruz v. Strauss (In re Cruz), 516 B.R. 594; In re Lee, 467 B.R. 906. A party seeking relief from stay need only establish a "colorable claim" to enforce a right against property of the estate — it need not conclusively prove that it would prevail in a subsequent foreclosure. Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 914-15 (9th Cir. BAP 2011); Cruz, 516 B.R. 594. That standard, however, does not eliminate the requirement that the movant establish some enforceable interest in the debt or collateral; it permits the Court to determine whether the movant has a plausible legal basis to proceed without finally adjudicating every issue that might arise in a foreclosure action.

**2. Singh v. Lai: A Detailed Analysis**

The Court's July 23, 2026 Order specifically identifies Singh v. Lai, 417 F. Supp. 3d 694, 699 (D. Md. 2019), as relevant to IBI Falcon's standing to bring the Motion for Relief from Stay. In Singh, the United States District Court for the District of Maryland affirmed a bankruptcy court order granting a secured creditor relief from the automatic stay to proceed with foreclosure of the debtor's residence. Id. at 696-99. The debtor opposed relief, arguing that the movant lacked a sufficient interest in the property to qualify as a "party in interest" under § 362(d). Id. at 699. The district

court held that the movant had established, at minimum, a colorable claim to the property sufficient to confer standing to seek stay relief. Id.

**Similarities between Singh and this case.** Both cases present the same threshold legal question: whether a movant seeking relief from the automatic stay has demonstrated a colorable claim to enforce a right against property of the estate. In both cases, the debtor's principal defense to the stay-relief motion is a challenge to the sufficiency of the movant's underlying interest in the debt and collateral. And in both cases, the "colorable claim" standard governs the standing inquiry at this procedural stage.

**Differences between Singh and this case — the critical distinction.** The similarity ends there, and the difference is dispositive. Critically, the movant's colorable claim in Singh rested on a foreclosure sale that had already been conducted and judicially ratified by a Maryland circuit court. Under Maryland law, ratification of a foreclosure sale operates as a final adjudication of the validity of the sale and the purchaser's resulting interest, subject to being set aside only upon clear and convincing proof of fraud, mistake, or irregularity — the same demanding standard that governs a motion to revise an enrolled judgment. See Md. Rule 14-305; Md. Rule 2-535(b); Md. Code Ann., Real Prop. §§ 7-105 to 7-105.17. Because the Singh movant's interest rested on a sale that had already cleared this exacting finality bar, the debtor's attempt to relitigate title in the stay-relief proceeding was foreclosed absent the kind of showing Maryland law requires to disturb a ratified sale.

Singh is readily distinguishable on this record. No foreclosure sale of any kind — ratified or otherwise — has occurred here. IBI Falcon is not asking this Court to respect a completed, judicially confirmed transfer of title; it is asking this Court to lift the stay so that it may conduct a

foreclosure sale for the first time, based on a chain of assignments the Debtor has shown to be facially and evidentially deficient. The finality doctrine that anchored the Singh court's decision — an already-ratified sale, presumptively valid absent clear and convincing evidence of fraud, mistake, or irregularity — simply has no counterpart on this record. Put differently, Singh answers the question "may a debtor use a stay-relief hearing to collaterally attack a foreclosure sale that Maryland law already treats as final?" This case presents a different question entirely: "has the movant shown, in the first instance, that it holds any enforceable interest at all?"

Nor does Singh's "colorable claim" standard rescue IBI Falcon on its own terms. "Colorable" is not synonymous with "irrebuttable," and it is not a synonym for "facially unproven." The colorable-claim standard, articulated consistently across Singh, Veal, and Thomas, filters out movants whose claimed interest is unsupported or facially invalid — precisely the showing the Debtor has made here. The Debtor has shown that: (i) the First Allonge is unsupported by any proof of documented signing authority, see D.C. Code § 28:3-403(a); (ii) the first Assignment of Deed of Trust is likewise unsupported by any recorded power of attorney, see D.C. Code § 21-2603.03; (iii) the Second Allonge depends entirely on the unproven First Allonge, because IBI SBL cannot transfer an interest it has not been shown to hold, see D.C. Code § 28:3-201; (iv) the second Assignment of Deed of Trust rests on a power of attorney recorded eighty-nine days after the Assignment itself, and fails to cross-reference any recorded instrument; and (v) the allonges bear the hallmarks of after-the-fact creation and assembly — omission from the original proof of claim, production only after the Debtor's objection, the use of unexplained "effective dates" rather than execution dates, and, upon physical inspection, attachment to the Note by nothing more than a paper clip.

Moreover, IBI Falcon cannot establish the Debtor's lack of equity in the Property by relying on its own disputed claim amount. Section 362(g) places the burden squarely on IBI Falcon, as the party seeking stay relief, to prove that the Debtor lacks equity in the Property. 11 U.S.C. § 362(g)(1). Equity ordinarily requires comparing the Property's value against the total amount of valid secured claims against it. As set out in Part II.A, supra, an appraisal of the Property with an effective date of October 11, 2025 opines a market value of $5,050,000.00 — more than $2.3 million above IBI Falcon's asserted secured claim of $2,676,531.91, even before accounting for the disputed default interest, extension fees, and other charges IBI Falcon has layered onto that figure. On this record, IBI Falcon is asking the Court to permit foreclosure of a property with substantial equity based on a claim it has not proven it is entitled to enforce at all. Where IBI Falcon's own standing, secured status, principal balance, default interest, and extension fees remain disputed and unproven, the amount properly includible in the secured side of that calculation has not been established, and IBI Falcon cannot satisfy its § 362(g) burden by assuming the very facts in dispute — let alone overcome an equity cushion of this magnitude.

IBI Falcon's own Disclosure Statement, described in Part II.C, supra, confirms as much. It values the Property at $5,000,000.00 — consistent with the Debtor's own schedules — yet proposes an auction with an opening bid of only $400,000.00, at which IBI Falcon may credit bid its own unproven claim without posting any deposit. An entity confident in the size and priority of its own secured position ordinarily has no need to acquire a multi-million-dollar property through a nominal credit bid at a fraction of its appraised value; IBI Falcon's own proposed mechanism for doing so only underscores why the Debtor and the estate's other creditors are entitled to have IBI Falcon's claim, and its right to enforce the Note and Deed of Trust in the first place, tested before any relief from the stay is granted.

**Anticipated IBI Falcon argument and response.** IBI Falcon will likely respond that Singh required only a colorable claim, not conclusive proof of a perfected chain of title, and that the Debtor's objections go to the ultimate merits of foreclosure rather than to standing. That response proves too much. Unlike the movant in Singh, IBI Falcon has never obtained any judicial ratification or other adjudication of its claimed interest in the Note or Deed of Trust — the anchor that supported the Singh court's finding of standing simply does not exist here. A claimed interest resting on a signature made without documented authority, an unrecorded and belatedly filed power of attorney, and allonges physically inconsistent with a bona fide, contemporaneous transfer is not a merits dispute about the weight of competing evidence; it is a facial and evidentiary defect in the chain of title itself — precisely what Singh, Veal, Thomas, and In re Rice all treat as fatal to standing at the threshold. In re Rice, 462 B.R. 651 (Bankr. D.D.C. 2012); Thomas v. Fannie Mae (In re Thomas), 469 B.R. 915 (Bankr. W.D. Okla. 2012) (standing to seek a comfort order under § 362(j) requires the movant to demonstrate a right under state law to enforce the mortgage, with possession of the original note being essential under both state law and the Uniform Commercial Code).

### 3. In re Horton Does Not Establish a More Permissive Standard on These Facts

IBI Falcon can also be expected to invoke In re Horton, 595 B.R. 1 (Bankr. D.D.C. 2019), for the proposition that an entity need only be a holder, not a holder in due course, to enforce a note, and that "the mere assertion" of a right to foreclose — even one disputed under nonbankruptcy law — is generally sufficient to confer standing to seek relief from stay. Horton is correctly decided on its own facts, but its permissive standard presupposes a movant who has actually shown itself to be a holder, or who at least holds a facially regular instrument whose validity is merely contested on the merits. It does not hold, and should not be read to hold, that an entity may obtain party-in-

interest status by asserting holder status without any evidentiary showing at all. Horton itself grounds its holding in the premise that "the holder of the instrument" is entitled to enforce it and that transfer of an instrument vests the transferee with the transferor's enforcement rights — a premise that assumes a transfer has actually been shown to have occurred. Id. Here, for the reasons set out throughout this brief, IBI Falcon has not shown that any transfer occurred at all: not from FTF Lending to IBI SBL, and not from IBI SBL to IBI Falcon. Horton's permissive approach to disputed-but-facially-regular claims does not extend to a claimed interest that rests on unauthorized signatures, an unrecorded and belatedly filed power of attorney, and allonges that were not affixed to the Note — the same category of facial and evidentiary defect that this brief has already shown falls outside Singh's, Veal's, and Thomas's colorable-claim standard. See Part IV.C.2, supra.

Because IBI Falcon holds neither a valid lien under District of Columbia real-property law nor holder status under UCC Article 3 as adopted in the District of Columbia, it has not established a colorable claim to enforce a right against property of the estate, and it has not carried its § 362(g) burden of proving the Debtor's lack of equity. IBI Falcon is accordingly not a "party in interest" under 11 U.S.C. § 362(d), and its Motion for Relief from Stay should be denied for lack of standing or, in the alternative, because IBI Falcon has failed to prove the Debtor lacks equity in the Property.

### D. Green v. 1900 Capital Trust II Does Not Support IBI Falcon's Position and Is Readily Distinguished

IBI Falcon can also be expected to rely on Green v. 1900 Capital Trust II, 619 B.R. 121, 131 (D. Md. 2020), for the proposition that a borrower who is not a party to, or third-party beneficiary of, an assignment lacks standing under Maryland law to challenge that assignment's validity. The Debtor addresses Green directly, both because it is the most factually developed authority within

the Fourth Circuit on note-holder standing and burden-shifting in exactly this posture, and because a candid, unflinching account of its facts shows why it does not aid IBI Falcon here — and why, properly read, its own burden-shifting analysis supports the Debtor's position.

**1. What Green Held**

In Green, the Chapter 13 debtor objected to a secured creditor's proof of claim, arguing among other things that the creditor could not prove an unbroken chain of assignments from the original lender and that the creditor should be required to produce the "wet ink" original note. Green, 619 B.R. at 128-31. The bankruptcy court, affirmed by the district court, applied the same burden-shifting framework at issue in this brief: a properly executed and filed proof of claim is prima facie evidence of the claim's validity, and once the debtor comes forward with evidence sufficient to place that validity in question, the burden shifts to the claimant to prove entitlement to enforce by a preponderance of the evidence. Id. at 129 (citing Stancill v. Harford Sands Inc. (In re Harford Sands Inc.), 372 F.3d 637, 640 (4th Cir. 2004)).

Applying that framework, the Green court held that the debtor lacked standing to challenge the chain-of-title assignments themselves, because he was not a party to, or an intended beneficiary of, those assignments, and the assignments did not alter his own payment obligation regardless of which entity ultimately held the debt. Id. at 130-31 (citing Wolf v. Fed. Nat'l Mortg. Ass'n, 512 F. App'x 336, 342 (4th Cir. 2013), and 120 W Fayette St., LLLP v. Mayor & City Council of Balt., 43 A.3d 355, 368 (Md. 2012)). Separately — and this is the point on which the case actually turned — the court held that the creditor had established holder status without needing to prove the chain of assignments at all, because the note before the court bore a blank indorsement from the original lender, Wells Fargo, making it bearer paper enforceable by whoever possessed it. Id. at 131 (citing Deutsche Bank Nat'l Tr. Co. v. Brock, 63 A.3d 40, 49 (Md. 2013); Thomas v. Nadel, 48 A.3d 279,

285 n.7 (Md. 2012); Anderson v. Burson, 35 A.3d 452, 461-62 (Md. 2011); Md. Code Ann., Com. Law §§ 3-205, 3-301). Because the instrument was bearer paper, mere possession — without any need to trace or prove the intervening assignments — was legally sufficient to establish the creditor's right to enforce. The court accordingly rejected the debtor's "show me the note" and chain-of-title arguments as unsupported by Maryland law on the facts before it.

**2. Green Is Distinguishable on Its Facts, and Its Own Reasoning Supports the Debtor Here**

**First — this is not bearer paper.** Green's outcome did not ultimately rest on its standing holding; it rested on the fact that the note was indorsed in blank and therefore negotiable by possession alone under Md. Code Ann., Com. Law § 3-205 (the District of Columbia's identical enactment appears at D.C. Code § 28:3-205). The Note here is not bearer paper. IBI Falcon's claimed right to enforce depends entirely on two specific, named allonges — from FTF Lending to IBI SBL, and from IBI SBL to IBI Falcon — each purporting to convey the Note to a specific, identified transferee, not to bearer. Where an instrument is transferred by special indorsement to an identified person, rather than indorsed in blank, further negotiation requires the indorsement of that identified person, D.C. Code § 28:3-205(a)-(b), and the identity, authority, and effectiveness of each such indorsement remains squarely at issue. Green's central rationale — that mere possession of bearer paper obviates the need to prove the chain — has no application to an instrument transferred, as this one was, by a sequence of specifically named allonges that the Debtor has shown to be unauthorized, unaffixed, and unrecorded.

**Second — Green's chain of assignment documentation was complete and unchallenged on authority grounds; this one is not.** Green's standing holding addressed a debtor's attempt to relitigate assignments that were not themselves shown to be void or executed without authority Green, 619 B.R. at 130-31. Here, the Debtor's objection is not a generic complaint that it was not

consulted about an assignment between two lenders; it is a documented showing that the individuals who executed the transfer instruments — Nolan Helline for FTF Lending, and Anthony Gingo for IBI SBL — lacked proven authority to do so, that the powers of attorney purporting to grant that authority were recorded after, rather than before, the instruments they authorize, and that the allonges themselves were not affixed to the Note and were produced only after the Debtor's objection. Green did not present, and its standing holding did not purport to resolve, a case involving unauthorized signatures under D.C. Code § 28:3-403(a), a real-property recording statute like D.C. Code § 21-2603.03, or physical evidence of after-the-fact document creation / assembly.

**Third — Maryland's assignment-standing rule and the D.C. recording statute serve different purposes.** Green's standing analysis draws on Maryland contract-law principles concerning who may challenge an assignment as between the parties to it. Wolf, 512 F. App'x at 342; 120 W Fayette St., 43 A.3d at 368. Those cases address an obligor's attempt to unwind a transaction to which it was a stranger. They do not address, and do not purport to limit, a District of Columbia statute — D.C. Code § 21-2603.03 — that imposes an independent, mandatory recording sequence governing the validity of any conveyance of a District of Columbia real-property interest executed by an agent under a power of attorney, addressed in Part III.F, supra. That statute does not exist to protect the obligor's contractual expectations; it exists to protect the integrity of the public land records on which subsequent purchasers, creditors, and — critically — a debtor-in-possession exercising its strong-arm powers under 11 U.S.C. § 544(a)(3) are entitled to rely. Green did not construe, and its standing holding does not speak to, that recording statute at all.

**Fourth — Green's own burden-shifting framework, applied to these facts, favors the Debtor.** Properly read, Green does not relieve a claimant of the burden of proving its entitlement to enforce;

it simply illustrates a case in which that burden — described in Part III.E, supra — was easily met because the instrument was bearer paper. Applying that same framework here, but to the opposite facts: unlike the creditor in Green, IBI Falcon cannot discharge its burden merely by pointing to possession of the original instrument, because the Note here is not indorsed in blank, and possession of an instrument specially indorsed to a named party who has not been shown to have validly acquired it does not establish holder status. D.C. Code §§ 28:3-205, 28:3-301.

**Anticipated IBI Falcon argument and response.** IBI Falcon may argue that Green's standing holding is a categorical rule — that an obligor never has standing to contest an assignment to which it was not a party — and that this rule applies regardless of the bearer-paper distinction. That argument overreads Green. The Green court's standing discussion and its holder-status discussion are analytically distinct, but the court's ultimate ruling rested on the latter: the creditor was entitled to enforce the note because it possessed bearer paper, full stop, without regard to the assignments' validity. Green, 619 B.R. at 131. Where, as here, the instrument is not bearer paper and the claimant's entire theory of enforcement depends on proving a chain of specifically named, individually authorized transfers, the claimant cannot sidestep that proof by invoking a standing rule whose real work, in Green itself, was rendered unnecessary by the presence of a blank indorsement. To the extent Green's standing discussion has independent force here, it is subject to the same fraud-and-irregularity limitation recognized in Rivera and its own line of authority, see Part IV.B.2, supra — a limitation squarely triggered by the unauthorized signatures, unrecorded powers of attorney, and physically unaffixed allonges the Debtor has documented in this case.

**E. Under District of Columbia and Bankruptcy Law, IBI Falcon Has Not Established Standing to Bring the Motion to Convert**

**1. Only a Party in Interest May Move to Convert a Chapter 11 Case to Chapter 7**

Under 11 U.S.C. § 1112(b), the Court may convert a Chapter 11 case to Chapter 7 "on request of a party in interest." A "party in interest" under § 1109(b) includes a creditor, and a "creditor" under 11 U.S.C. § 101(10) is an entity holding a "claim" under 11 U.S.C. § 101(5). For the reasons set out in Part IV.A, supra, IBI Falcon has not established that it holds any legally cognizable claim against the Debtor: its asserted right to payment rests entirely on its claimed status as the holder of the Note and beneficiary of the Deed of Trust, and it has not carried its burden of proving that status. Lacking a valid claim, IBI Falcon lacks status as a "creditor," and therefore lacks standing as a "party in interest" to move for conversion under § 1112(b).

IBI Falcon filed its Motion to Convert this case to Chapter 7 [Dkt. No. 95]. If IBI Falcon is not a party in interest, it lacked standing to file that motion, and the motion should be dismissed on that threshold ground alone. The motion is not a peripheral matter; conversion to Chapter 7 would terminate the Debtor's reorganization and subject the Property to liquidation by a Chapter 7 trustee, causing irreparable harm to the estate and to creditors with a legitimate stake in an orderly Chapter 11 process.

## 2. Even if IBI Falcon Is Found to Have Standing, It Cannot Satisfy Its Burden Under § 1112(b)

Even assuming, arguendo, that the Court finds IBI Falcon possesses threshold standing, its request for conversion independently fails under the substantive standard of 11 U.S.C. § 1112(b). Under § 1112(b)(1), the movant bears the burden of proving "cause" for conversion by a preponderance of the evidence. IBI Falcon has offered no evidence of gross mismanagement, unexcused material loss to the estate, or an inability to effectuate a plan; a good-faith, actively litigated dispute over the validity and enforceability of a purported secured claim does not, by itself, satisfy that burden. The Fourth Circuit has long applied a stringent standard before a debtor's Chapter 11 case may be

terminated over its objection: in the analogous context of dismissal for lack of good faith at the outset of a case, the Fourth Circuit requires a showing both that reorganization is objectively futile and that the case was filed in subjective bad faith, a standard courts have widely recognized as among the most demanding articulated by any circuit. Carolin Corp. v. Miller, 886 F.2d 693 (4th Cir. 1989). While Carolin addresses dismissal at the outset of a case rather than conversion at this later stage, it reflects this Circuit's consistent reluctance to terminate a debtor's reorganization rights based on anything less than a well-documented, particularized showing — a showing IBI Falcon has not attempted to make here, where its only asserted basis for conversion is the same disputed secured claim already before the Court on the Claim Objection. Even where cause might otherwise be shown, § 1112(b)(2) forecloses conversion where "unusual circumstances establish that converting or dismissing the case is not in the best interests of creditors and the estate," provided the debtor demonstrates a reasonable likelihood of confirmation and that the grounds for conversion include an act or omission for which there is a reasonable justification and which will be cured within a reasonable time. 11 U.S.C. § 1112(b)(2). A bona fide, threshold dispute over whether the movant seeking conversion holds any claim against the estate at all is precisely the kind of unusual circumstance that counsels against converting a case to liquidation while that dispute remains pending: converting the case before the Claim Objection and the Motion for Determination that IBI Falcon is Not a Party in Interest are resolved would risk handing control of the estate's principal asset to a Chapter 7 trustee based on the very claim the Debtor disputes. The prejudice this would visit on the estate is not abstract. IBI Falcon's own Disclosure Statement and proposed Plan of Liquidation, described in Part II.C, supra, propose to sell the Property — which IBI Falcon's own filing values at $5,000,000.00 — at an auction with an opening bid of only $400,000.00, at which IBI Falcon may credit bid its own unproven claim without posting any

deposit, while junior classes of creditors and the Debtor's equity holder are left to divide whatever, if anything, remains. Converting this case to Chapter 7 before IBI Falcon's underlying entitlement to enforce the Note and Deed of Trust is resolved would risk delivering exactly that outcome through a Chapter 7 trustee's liquidation, to the detriment of the estate and its legitimate creditors, based on a claim that has not been proven.

At a minimum, the Court should hold the Motion to Convert in abeyance pending resolution of the Claim Objection and the Motion for Determination that IBI Falcon is Not a Party in Interest, so that IBI Falcon's threshold standing to bring that motion may be resolved before the Court expends further resources adjudicating its merits.

**F. Even if IBI Falcon Is Found to Have Standing, the Extension Agreements, Waivers, and Releases Are Unenforceable**

IBI Falcon may argue that the Debtor waived its right to challenge the chain of title by entering into loan modification and extension agreements acknowledging IBI SBL as the holder of the Note, or by accepting the benefit of extended maturity dates. That argument fails for several independent reasons.

First, the loan modification and extension agreements in the record acknowledge IBI SBL — not IBI Falcon — as the holder of the Note. Whether those agreements' recitals accurately describe IBI SBL's status as of their respective execution dates is itself part of what the Debtor disputes and asks the Court to confirm; the Debtor respectfully requests that any factual recitals in those agreements be treated as disputed rather than conceded pending the evidentiary hearing on the Claim Objection. In any event, even taken at face value, those agreements do not address or validate the later, independently defective purported transfer from IBI SBL to IBI Falcon described in Part IV.A.2, supra.

Second, an acknowledgment that IBI SBL held the Note as of a particular date does not estop the Debtor from challenging whether IBI SBL ever validly acquired the Note in the first instance. It is black-letter law that an instrument executed without authority in the first place is void, not merely voidable, and that a void instrument cannot be cured by ratification or by the doctrine of estoppel, because there is no valid act for a later party to ratify.

Third, and independently, a physical examination of each of the four extension agreements described in Part II.E, supra, reveals defects that render each agreement — and any waiver, release, or fee obligation purportedly arising from it — unenforceable on its own terms, without regard to the chain-of-title defects discussed elsewhere in this brief. The First Extension Agreement never identifies "the Lender" and, by its own Paragraph C(3), became "null and void" when the required extension fee was not paid. The Second Extension Agreement was executed in March 2025 but purports to take effect retroactively to September 2024, without evidence establishing that mutual assent in fact existed as of the earlier date. The Third and Fourth Extension Agreements were both executed by IBI SBL after IBI Falcon's own records show IBI SBL had already transferred its interest in the Note to IBI Falcon, meaning IBI SBL purported to extend, and to charge fees on, an obligation it no longer owned as of the date it signed.

For these reasons, even if the Court were to find that IBI Falcon has standing to pursue its motions, any waiver, release, or fee obligation IBI Falcon seeks to enforce through the loan modification or extension agreements should be denied enforcement, both because those agreements do not run in IBI Falcon's favor as to the periods governed by IBI SBL's defective execution, and because the underlying transfers on which IBI Falcon's own standing depends remain unproven.

## V. CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, the Debtor has standing under District of Columbia law to challenge the assignments of the Note and Deed of Trust in connection with its Claim Objection. IBI Falcon has not carried its burden of establishing that it is a person entitled to enforce the Note or the beneficiary of the Deed of Trust under District of Columbia law: the first transfer, from FTF Lending to IBI SBL, is unproven for want of documented signing authority, an unrecorded power of attorney, and an unaffixed allonge; the second transfer, from IBI SBL to IBI Falcon, is independently unproven for the same categories of defects, compounded by the unresolved discrepancy concerning the power of attorney supporting the Second Assignment and the extension agreements IBI SBL purported to execute after divesting itself of any interest in the Note. Because IBI Falcon has not established a colorable claim to enforce a right against property of the estate, it is not a "party in interest" under 11 U.S.C. § 362(d), and its Motion for Relief from the Automatic Stay should be denied. Because IBI Falcon has not established that it holds a valid claim against the Debtor, it is not a "party in interest" under 11 U.S.C. § 1109(b), and its Motion to Convert should be denied under 11 U.S.C. § 1112(b), or at minimum held in abeyance pending resolution of the Claim Objection. Neither Rivera v. Rosenberg & Assocs., Singh v. Lai, nor Green v. 1900 Capital Trust II compels a different result; each is factually and procedurally distinguishable for the reasons set out above, and each, properly read, confirms rather than forecloses the Debtor's position.

WHEREFORE, the Debtor respectfully requests that this Court enter an Order:

1. Determining that the Debtor, as debtor-in-possession, has standing under District of Columbia law to challenge the assignments of the Note and Deed of Trust in connection with its Objection to Proof of Claim No. 2;

2. Sustaining the Debtor's Objection to Proof of Claim No. 2 and disallowing IBI Falcon's asserted secured claim pursuant to 11 U.S.C. § 502(b)(1), on the ground that IBI Falcon has failed to carry its burden of proving that it is a person entitled to enforce the Note and Deed of Trust under D.C. Code §§ 28:3-301, 28:3-204(a), 28:3-403(a), and 21-2603.03;

3. Granting the Debtor's Motion for Determination that IBI Falcon is Not a Party in Interest;

4. Denying IBI Falcon's Motion for Relief from the Automatic Stay under 11 U.S.C. § 362(d) for lack of standing, or, in the alternative, because IBI Falcon has failed to prove the Debtor lacks equity in the Property under 11 U.S.C. § 362(g);

5. Denying IBI Falcon's Motion to Convert this case to Chapter 7 under 11 U.S.C. § 1112(b) because IBI Falcon is not a party in interest and has failed to establish statutory cause, or, at minimum, holding that motion in abeyance pending resolution of the Claim Objection;

6. Declaring that the four purported loan extension agreements described in Part II.E, and any waiver, release, or fee obligation purportedly arising from them, are unenforceable for the reasons set out in Part IV.F above; and

7. Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: July 30, 2026

/s/ Deirdre T. Johnson
Deirdre T. Johnson, Esq.
Bar No. MD14227
9701 Apollo Dr, Suite 301

Upper Marlboro, MD 20774
Phone: (301) 742-5385
dtjesq@dtjohnsonlaw.com
Counsel for Debtor, 5410 30th Street DC, LLC

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 30th day of July, 2026, a copy of the foregoing Debtor's Brief on Standing Issues and on Who Is or May Be Entitled to Enforce the Note and Deed of Trust was served electronically via the Court's CM/ECF system upon all parties registered to receive electronic notice in this case, including:

Maurice B. VerStandig, Esq., Counsel for IBI Falcon US LLC and IBI SBL Investment LP, mac@mbvesq.com

Jeanette Rice, Chapter 11 Trustee, Jeanette.Rice@usdoj.gov

Office of the United States Trustee — Greenbelt, USTPRegion04.GB.ECF@USDOJ.GOV

/s/ Deirdre T. Johnson

Deirdre T. Johnson, Esq.