**Fill in this information to identify the case:**

Debtor 1    5410 30th Street DC LLC

Debtor 2    _____
(Spouse, if filing)

United States Bankruptcy Court for the:   District of Maryland

Case number    25-19605-LSS

Official Form 410

# Proof of Claim

04/25

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

IBI Falcon US LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor   _____

**2. Has this claim been acquired from someone else?**

☑ No

☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Maurice VerStandig
Name

9812 Falls Road, #114-160
Number    Street

Potomac     MD     20854
City     State     ZIP Code

Contact phone   301-444-4600

Contact email   mac@mbvesq.com

Uniform claim identifier (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**Where should payments to the creditor be sent?** (if different)

Name

Number    Street

City     State     ZIP Code

Contact phone _____

Contact email _____

**4. Does this claim amend one already filed?**

☐ No

☑ Yes. Claim number on court claims registry (if known) 2_____

Filed on 01/29/2026
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No

☐ Yes. Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?** $_____ 2,676,531.91 . **Does this amount include interest or other charges?**

☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money loaned

**9. Is all or part of the claim secured?**

☐ No
☑ Yes.   The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:**   Deed of trust

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ 3,655,000.00
**Amount of the claim that is secured:** $ 3,655,000.00
**Amount of the claim that is unsecured:** $_____ 0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____ 2,676,531.91

**Annual Interest Rate** (when case was filed) 24.00 %
☑ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

Official Form 410 | **Proof of Claim** | page 2

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | **Amount entitled to priority** |

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).     $_____

☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).     $_____

☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).     $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).     $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).     $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.     $_____

\* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   03/28/2026
              MM / DD / YYYY

/s/ Maurice B. VerStandig
Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | Maurice | Belmont | VerStandig |
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | The VerStandig Law Firm, LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 9812 Falls Road, #114-160 | | |
| | Number      Street | | |
| | Potomac | MD | 20854 |
| | City | State | ZIP Code |
| Contact phone | 301-444-4600 | Email | mac@mbvesq.com |

<u>PROMISSORY NOTE</u>

$2,222,000.00                                                    Effective May 3, 2023

FOR VALUE RECEIVED, 5410 30th Street DC LLC, a Maryland Limited Liability Company (the "<u>Borrower</u>"), having an address for purposes of notice and legal process at 12138 Central Avenue, Suite 388, Bowie, Maryland 20721, promises to pay to the order of FTF Lending, LLC, a Delaware Limited Liability Company (the "<u>Lender</u>"), having an address for purposes of notice and legal process at 1300 E. 9th St., Suite 800, Cleveland, OH 44114, or at such other place as may be designated in writing by the holder of this Note, the principal sum of $2,222,000.00 in lawful money of the United States of America, together with interest thereon to be computed from the date hereof at the Applicable Interest Rate or Default Rate (as applicable), and to be paid in accordance with the terms of this Note.

1.      BORROWER'S PROMISE TO PAY.

    1.1     In return for a loan made by Lender to Borrower secured by that certain Mortgage (as hereinafter defined), Borrower promises to pay $2,222,000.00 (the "<u>Principal</u>" or "<u>Total Available Funds</u>"), plus interest and other sums due, to the order of Lender, in accordance with the terms of this Note. Borrower will make all payments under this Note in the form of a federal funds transfer to an account designated by Lender or in such other acceptable method of payment as may be designated by Lender. Borrower understands that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is hereinafter called the "<u>Note Holder</u>".

2.      INTEREST UNDER NON-DUTCH LOAN.

    2.1     Absent an Event of Default (as hereinafter defined), interest under this Note shall be due and payable at the "Applicable Interest Rate" (as hereinafter defined) from the date the proceeds have been distributed to or on behalf of the Borrower through the Maturity Date, as the same may be extended, or through the earlier prepayment of the Loan in full. The term "Applicable Interest Rate", as used herein, shall mean an interest rate equal to 12.49% per annum. Interest for any month or fractional part thereof shall be calculated on the basis of a 30-day month and 360-day year, shall accrue on a monthly basis, and shall be due and payable hereunder monthly.

    2.2     The Lender shall advance the Principal to the Borrower in certain tranches (each a "Tranche"), not to exceed three (3) total tranches. The first of such tranches shall be referred to as the "First Tranche" and shall not be advanced prior to 30 days after the closing of the Loan; the second of such tranches shall be referred to as the "Second Tranche" and shall not be advanced prior to 60 days after the closing of the Loan; and so on. The final tranche shall be referred to as the "Final Tranche" and shall be advanced at the completion of the construction project.

    2.3     No later than 15 business days from the Borrower's request for disbursement of a Tranche, the Lender shall advance the amount requested in said Tranche (individually and collectively with any previous Tranche advanced, the "Total Released Funds") to the Borrower for purposes of continuing work on the Property, provided that the Lender has

82

approved all construction work and improvements on the Property (as further described in the Loan Agreement) and any additional conditions reasonably required by the Lender.

2.4 Borrower shall begin paying interest to the Lender at the Applicable Interest Rate only on the full amount of the Total Released Funds and interest begins to accrue immediately upon receipt of the Total Released Funds.

2.5 Borrower shall be credited at payoff by the Lender any amount of monies that have not been advanced to the Borrower for usage.

3. PAYMENT TERMS.

3.1 Borrower agrees to pay into a holdback account sums under this Note in installments as follows:

3.1.1 On the date hereof in the sum of $22,356.41 representing interest only from the date of this Note through May 31, 2023; and

3.1.2 On the date hereof in the sum of $23,127.32 representing interest only from the date of this Note through June 30, 2023; and

3.1.3 Commencing on July 1, 2023, interest shall accrue in accordance with the terms of this Note, and Borrower shall tender Borrower's first interest payment to Lender on August 1, 2023 and on the first day of each month thereafter ("Monthly Payment Date").

3.1.4 The monies held into the holdback account shall be drawn upon first and applied as the monthly interest payments toward the Total Released Funds. Once the holdback account has been exhausted, Borrower will begin to make their interest payments in according with the terms of the Note.

3.2 All accrued and unpaid interest and the unpaid principal balance hereof are due and payable on the earlier to occur of (i) June 1, 2024 (the "Maturity Date"), or (ii) the date on which the Indebtedness (hereinafter defined) becomes immediately due and payable hereunder. Lender shall include in any final payoff figure the accrual of interest against the Total Released Funds.

3.3 On the date hereof, Borrower shall pay to Lender an origination fee in the sum of $44,440.00 which amount shall be fully earned on the date of this Note.

3.4 On the date hereof, Borrower shall pay to Lender all of Lender's costs and expenses related to this Loan, including, without limitation, Loan servicing fees, appraisal, policy of title insurance and endorsements, recordation of the Mortgage (defined below), Lender's reasonable attorneys' fees, broker's origination fee (if any), broker's processing fee (if any), and all other costs and expenses reflected on the settlement statement prepared by the title company serving as escrow agent for closing of the loan.

3.5 Borrower shall have an option to extend the Maturity Date one (1) three (3) month period from the Maturity Date (each, an "Extension Term"), for a fee payable to Lender equal to 1 % of the Principal, (or 1 % of the Principal minus any Minimum Release Price(s) paid

83

by Borrower pursuant to the Property Release Agreement, as applicable), provided that (i) there is no ongoing Event of Default under this Note or the Loan Documents, unless Lender has provided Borrower written notice that it is willing to waive the Event of Default with respect to entering into said extension, and such waiver is not to be construed as a waiver of any right to enforce this provision or any other rights in this Note; (ii) Borrower has delivered written notice to Lender that they wish to exercise such extension at least 7 business days prior to the first day of each Extension Term; and (iii) Borrower has progressed construction satisfactory to Lender, in its sole and absolute discretion. The Maturity Date established by each Extension Term shall be known as the " Extended Maturity Date".

3.6     Borrower shall complete all repairs, replacements and other work listed on Exhibit A, if any, of this Note (collectively, the "Work"), which repairs shall be completed lien-free and in a good and workmanlike manner and in accordance with all applicable laws, rules, ordinances and regulations. Notwithstanding the foregoing, Lender shall have no obligation to provide additional funds to Borrower to pay for the completion of the Work.

4.      Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement.

4.1     This Note is a secured by (a) a mortgage lien in the principal sum of $2,222,000.00 evidenced by a certain Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Mortgage") of even date herewith given by Borrower to Lender encumbering certain real estate situated in the District of Columbia, and more commonly known as 5631 MacArthur Boulevard Northwest, Washington, D.C. 20016 (individually and collectively, the "Property"), and (b) certain other instruments and agreements dated of even date herewith or executed pursuant to this transaction from time to time by Borrower, principal, surety, Guarantor, member, manager, endorser or any other parties for the benefit of Lender (said documents and agreements and all other documents and agreements evidencing or securing the loan, are hereinafter referred to, collectively as the "Loan Documents"). All of the terms, covenants, conditions and agreements contained in the Mortgage are hereby incorporated herein and made a part hereof.

5.      APPLICATION OF PAYMENTS.

5.1     Each payment made by Borrower shall be applied as follows, which, after the occurrence and during the continuance of an Event of Default, shall be at the discretion of Lender:

5.1.1   First, to any costs of collection hereunder; and

5.1.2   Then, to any unpaid costs or balances of advances (excluding the original advance of the Principal) made by Lender in connection with the Mortgage and/or any of the Loan Documents and/or this Note and to any other amounts which may be overdue on account of any of the several terms, provisions, conditions or covenants contained in this Note, the Mortgage and the Loan Documents; and

5.1.3   Then, to late charges and any other fees or charges due hereunder if any; and

5.1.4   Then, to interest then due and payable hereunder (at the Default Rate, if applicable); and

84

5.1.5    The remainder to the Principal balance hereof.

5.2    Monthly installments of interest shall be paid when due, regardless of the prior acceptance by Lender of payments in excess of the regular monthly installment of interest.

5.3    The designation or allocation by Borrower of the disposition or allocation of any payments made will not be binding upon Lender and such payments shall instead be allocated in accordance with Section 5.1 herein; provided that, upon the occurrence and during the continuance of an Event of Default, Lender may allocate any and all such payments to interest, principal and other fees and charges due hereunder or to any one or more of them, in such amount, priorities and proportions as Lender may determine in its sole discretion in accordance with the terms hereof.

6.    DEFAULT AND ACCELERATION.

6.1    It is hereby expressly agreed that (A) the whole of the principal sum of this Note, (B) interest, default interest, late charges, fees and other sums, as provided in this Note, (C) all other monies agreed or provided to be paid by Borrower in this Note, the Mortgage or the Loan Documents, (D) all sums advanced pursuant to the Mortgage and/or the Loan Documents, and (E) all sums advanced and costs and expenses incurred by Lender in connection with the Indebtedness (as hereinafter defined) or any part thereof, any renewal, extension, or change of or substitution for the Indebtedness or any part thereof, or the acquisition or perfection of the security granted pursuant to the Mortgage and the other Loan Documents, whether made or incurred at the request of Borrower or Lender (the sums referred to in (A) through (E) above shall collectively be referred to as the "Indebtedness") shall, WITHOUT NOTICE (unless otherwise provided herein), become immediately due and payable at the option of the Note Holder upon the happening of any of the following events (each, an "Event of Default"):

6.1.1    Borrower fails to pay any amount due to Lender under this Note, within 10 days after the due date for such payment;

6.1.2    Borrower fails to keep, observe or perform any other promise, condition or agreement contained in this Note, the Mortgage, the Loan Documents or any other documents described herein or delivered in connection herewith or is otherwise in default under the terms, covenants and conditions of this Note, the Mortgage and the Loan Documents, and such failure or default is not remedied within 30 days after written notice to Borrower thereof, provided, however, that if such failure or default is not capable of being cured or remedied within said 30 day period, then if Borrower fails to promptly commence to cure the same and thereafter diligently prosecute such cure to completion but in any event within 60 days after notice thereof;

6.1.3    There is a material misstatement in any certificate and/or certification delivered in connection with this Note, the Mortgage, and other Loan Documents, or any representation, disclosure, warranty, statement, financial information, application and/or other instrument, record, documentation or paper made or furnished by or on behalf of Borrower in connection with this Note shall be materially misleading, untrue or incorrect as of the later of (i) the date hereof or (ii) when made;

85

6.1.4    A receiver, liquidator or trustee shall be appointed for Borrower or for any of its property, an assignment shall be made for the benefit of creditors, Borrower or a member or manager of Borrower shall be adjudicated as bankrupt or insolvent, or any petition for bankruptcy, reorganization or arrangement pursuant to the Bankruptcy Reform Act of 1978 codified as 11 U.S.C. § 101 *et seq.*, and the regulations issued thereunder, both as hereafter modified from time to time (the "Federal Bankruptcy Code"), or any similar federal or state statute, shall be filed by or against Borrower, unless such appointment, assignment, adjudication or petition was involuntary, in which event only if the same is not discharged, stayed or dismissed within 60 days;

6.1.5    A final judgment for the payment of money shall be rendered against Borrower or a member or manager of Borrower which would materially adversely affect Borrower's ability to make payments under this Note and Borrower or such member or manager shall not discharge the same or cause it to be discharged within 30 days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered within 10 days, or shall not thereafter secure a stay of execution pending such appeal;

6.1.6    Borrower or a member or manager of Borrower shall have concealed, removed and/or permitted to be concealed or removed any substantial part of its property and/or assets with the intent to hinder, delay or defraud Lender of any of its property and/or assets which may be fraudulent under any federal or state bankruptcy, fraudulent conveyance or similar law now or hereafter enacted, or if Borrower shall have made any transfer of any of its property and/or assets to or for the benefit of a creditor at a time when other creditors similarly situated have not been paid, or if Borrower shall have suffered or permitted to be suffered, while insolvent, any creditor to obtain a lien upon any of its property and/or assets through legal proceedings or distraint which is not vacated within 60 days from the date of entry thereof;

6.1.7    Borrower defaults under any other note, instrument, agreement, contract, pledge, mortgage or encumbrance evidencing and/or securing the Indebtedness or any other indebtedness of Borrower to Lender, now existing or hereinafter arising, and such event or occurrence is not remedied or cured within 10 days after notice thereof or an "event of default" (as defined in such other note, instrument, agreement, contract, pledge, mortgage or encumbrance) shall have occurred; or

6.1.8    If, without the written consent of Lender, the interest of any member or manager of Borrower is assigned or transferred, the Borrower is dissolved, or the manager withdraws, resigns or is replaced, unless due to the death or disability of the manager.

6.2    After the occurrence of an Event of Default, Lender may accept any payments from Borrower without prejudice to the rights and remedies of Lender provided herein or in the Mortgage or the Loan Documents.

86

7.    DEFAULT INTEREST/LATE CHARGES.

7.1    The Default Rate (as hereinafter defined) shall remain in effect until any and all Events of Default shall have been cured. In addition, the Default Rate (as hereinafter defined) shall remain in effect during any period of default even upon the acceleration of the indebtedness evidence by this Note. The Default Rate (as hereinafter defined) shall be in effect at all times after the maturity of the Indebtedness (whether on the Maturity Date, by acceleration or otherwise). Upon acceleration or maturity, the Default Rate (as hereinafter defined) shall remain in effect until all sums due under this Note, the Mortgage and the Loan Documents shall have been paid in full. Any amount assessed or collected as interest under the Note will be limited to the maximum amount of interest allowed by applicable law. If interest collected under the Note exceeds the maximum lawful amount, then any amount will be applied first to the unpaid principal balance with any remainder refunded to the Borrower. This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Indebtedness, or as a waiver of any other right or remedy accruing to Lender by reason of the occurrence of any Event of Default.

7.2    Except for any payment of the Indebtedness after acceleration, if any payment (or part thereof) provided for herein shall not be made when due, a late charge of $0.06 for each $1.00 so overdue shall become immediately due and payable to the Note Holder as liquidated damages for failure to make prompt payment and the same shall be secured by the Mortgage. This fee is not a penalty, but a fee reasonably calculated to reimburse the Note Holder for administrative and staff time. Such charge shall be payable in any event no later than the due date of the next subsequent installment or, at the option of Note Holder, may be deducted from any deposits held by Lender as additional security for this Note. Nothing herein is intended to or shall extend the due dates set forth for payments under this Note. Such late fee may be charged on any subsequent delinquent payment.

7.3    Should the Indebtedness or any part thereof be collected at law or in equity, or in bankruptcy, receivership or any other court proceeding (whether at the trial or appellate level), or should this Note be placed in the hands of attorneys for collection, Borrower agrees to pay, in addition to the principal, any late payment charge and interest due and payable hereunder, all costs of collecting or attempting to collect the Indebtedness, including reasonable attorneys' fees and expenses and court costs, regardless of whether any legal proceeding is commenced hereunder, together with interest thereon at the Default Rate (as hereinafter defined) from the date paid or incurred by Note Holder until such expenses are paid by Note Holder.

7.4    Notwithstanding anything to the contrary herein set forth, in no event shall any interest payable under this Note exceed the maximum interest rate permitted under law or the rate that could subject Lender to either civil or criminal liability as a result of being in excess of the maximum interest rate that Borrower is permitted by applicable law to contract or agree to pay. If by the terms of this Note, Borrower is at any time required or obligated to pay interest on the principal balance due hereunder at a rate in excess of such maximum rate, the interest rate hereinabove set forth, other charges, or the Default Rate (as hereinafter defined), as the case may be, shall be deemed to be immediately reduced to such maximum rate and all previous payments in excess of the maximum rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder. All sums paid or agreed to be paid to Lender for the use, forbearance, or detention of the Indebtedness, shall, to the extent permitted by applicable law, be amortized, prorated,

87

5410 30th Street DC LLC, a Maryland Limited Liability Company
FTF_158847_71928 Tranche

allocated, and spread throughout the full stated term of this Note until payment in full so that the rate or amount of interest on account of the Indebtedness does not exceed the maximum lawful rate of interest from time to time in effect and applicable to the Indebtedness for so long as the Indebtedness is outstanding. Borrower agrees to an effective rate of interest that is the rate stated herein plus any additional rate of interest resulting from any other charges in the nature of interest paid or to be paid by or on behalf of Borrower, or any benefit received or to be received by Note Holder, in connection with this Note.

8.    WAIVERS.

8.1    Borrower and all parties who may become eligible for the payment of all or any part of the Indebtedness, whether principal, surety, guarantor, pledgor, or endorser, hereby waive demand, notice of demand, presentment for payment, notice of intent to accelerate maturity, notice of acceleration of maturity, notice of dishonor, protest, notice of protest and non-payment and all other notices of any kind, except for notices expressly provided for in this Note.

8.2    The liability of Borrower, any guarantor, pledgor or endorser shall be unconditional and shall not be in any manner affected by any indulgence whatsoever granted or consented to by the Note Holder, including, but not limited to any extension of time, renewal, waiver or other modification. No release of any security for the Indebtedness or extension of time for payment of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of this Note, the Mortgage and other Loan Documents, or any other guaranty or instrument made by agreement of Lender or any other person or party shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower and any other person or entity who may become liable for the payment of all or any part of the Indebtedness under this Note.

8.3    No notice to or demand on Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Note Holder to take further action without further notice or demand on Borrower as provided for in this Note. Any failure of the Note Holder to exercise any right hereunder shall not be construed as a waiver of the right to exercise the same or any other right at any time and from time to time thereafter. Lender or any Note Holder may accept late payment, or partial payment, even though marked "payment in full" or containing words of similar import or other conditions, without waiving any of its rights. No amendment, modification or waiver of any provision of this Note nor consent to any departure by Borrower therefrom shall be effective, irrespective of any course of dealing, unless the same shall be in writing and signed by the Note Holder, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

8.4    BORROWER AND EACH ENDORSER AGREE THAT ANY ACTION, SUIT OR PROCEEDING IN RESPECT OF OR ARISING OUT OF THIS NOTE MAY BE INITIATED AND PROSECUTED IN THE STATE OR FEDERAL COURTS, AS THE CASE MAY BE, LOCATED IN THE DISTRICT OF COLUMBIA. BORROWER AND EACH ENDORSER CONSENT TO AND SUBMIT TO THE JURISDICTION OF SUCH COURTS OVER THE SUBJECT MATTER, WAIVE PERSONAL SERVICE OF ANY AND ALL PROCESS UPON IT AND CONSENT THAT ALL SUCH SERVICE OF PROCESS BE MADE BY REGISTERED OR CERTIFIED MAIL OR REPUTABLE

88

OVERNIGHT DELIVERY SERVICE DIRECTED TO BORROWER OR SUCH ENDORSER AT ITS ADDRESS SET FORTH ABOVE OR TO ANY OTHER ADDRESS AS MAY APPEAR IN LENDER'S RECORDS AS THE ADDRESS OF BORROWER OR SUCH ENDORSER.

8.5     IN ANY ACTION, SUIT OR PROCEEDING IN RESPECT OF OR ARISING OUT OF THIS NOTE, BORROWER AND EACH ENDORSER WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THIS NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THIS NOTE, THE MORTGAGE OR ANY OTHER LOAN DOCUMENT, OR ANY ACTS OR OMISSIONS OF NOTE HOLDER, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER AND EACH ENDORSER AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.

8.6     BORROWER AND EACH ENDORSER ALSO WAIVE (I) THE RIGHT TO INTERPOSE ANY SET-OFF OR COUNTERCLAIM OF ANY NATURE OR DESCRIPTION, OTHER THAN A MANDATORY OR COMPULSORY COUNTERCLAIM, (II) ANY OBJECTION BASED ON FORUM NON CONVENIENS OR VENUE, AND (III) ANY CLAIM FOR CONSEQUENTIAL, PUNITIVE OR SPECIAL DAMAGES.

9.      PREPAYMENT.

9.1     Borrower has the right to prepay the principal of this Note in whole or in part at any time before it is due. Such prepayment of Principal is known as a "Prepayment." When Borrower tenders a Prepayment, Borrower will tell Note Holder that it is doing so. Borrower may not make a Prepayment at any time that Borrower has not made all current monthly payments then due under the term of this Note.

9.2     Borrower may make a Prepayment without paying a Prepayment charge. The Note Holder will apply the Prepayment to the outstanding Principal under this Note. However, Note Holder may first apply a Prepayment as provided in Section 5 hereof.

9.3     Notwithstanding the foregoing, if Borrower chooses to make a Prepayment of the loan prior to the date which is 3 months from the date of this Note, Borrower will still be responsible to Note Holder for all interest due to Note Holder under the terms of this Note up and through said 3 month period.

10.     NOTICES.

10.1    All notices to be given pursuant to this Note shall be in writing and sufficient if given by personal in-hand service, by reputable overnight delivery service, or by being mailed postage prepaid, by registered or certified mail, to such party's address first herein above set forth, along with a copy to Lender's attorney Tayyaba Monto , Esq., 1300 E. 9th St., Suite 800, Cleveland, OH 44114.  Notices by registered or certified mail shall be considered delivered and become effective upon the earlier of receipt or 3 days after

89

mailing thereof. Notices by personal hand delivery shall be considered delivered and become effective on the day delivered or refused. Notices by overnight delivery service shall be considered delivered and become effective on the next business day after being sent. Notices may be given by a party's attorneys or agents with the same force and effect as though given by such party.

11. MISCELLANEOUS.

11.1 Time shall be of the essence with respect to all provisions of this Note.

11.2 Borrower represents that Borrower has full power, authority and legal right to execute and deliver this Note, and that this Note constitutes the valid and binding obligations of Borrower.

11.3 Wherever pursuant to this Note it is provided that Borrower pay any costs and expenses, such costs and expenses shall include, without limitation, reasonable legal fees and disbursements of Note Holder with respect to retained firms and the reimbursement of the expenses of Note Holder's in-house staff or counsel. Borrower shall pay to Note Holder on demand any and all expenses, including reasonable legal expenses and attorneys' fees, incurred or paid by Lender in enforcing this Note.

11.4 This Note cannot be changed, modified, amended, waived, extended, discharged or terminated orally or by estoppel or waiver, regardless of any claimed partial performance referable thereto, or by any alleged oral modification or by any act or failure to act on the part of Borrower or Note Holder.

11.5 The agreements contained herein shall remain in full force and effect, notwithstanding any changes in the individuals or entities comprising Borrower, and the term Borrower, as used herein, shall include any alternate or successor entity, but any predecessor entity, and its partners, members or managers, as the case may be, shall not thereby be released from any liability. Nothing in the foregoing shall be construed as consent to, or a waiver of, any prohibition or restriction on transfers of interests in Borrower which may be set forth in this Note, the Mortgage or the Loan Documents.

11.6 Titles of articles and sections are for convenience only and in no way define, limit, amplify or describe the scope or intent of any provision hereof.

11.7 If any paragraph, clause or provision of this Note is construed or interpreted by a court of competent jurisdiction to be void, invalid or unenforceable, such voidness, invalidity or unenforceability will not affect the remaining paragraphs, clauses and provisions of this Note, which shall nevertheless be binding upon the parties hereto with the same effect as though the void or unenforceable part had been severed and deleted.

11.8 If more than one person is named in this Note as Borrower, each obligation of Borrower shall be the joint and several obligation of such party or entity.

11.9 The terms and provision of this Note shall be binding upon and inure to the benefit of Borrower and Note Holder and their respective heirs, executors, legal representatives, successors, successors-in-title, and assigns, whether by voluntary action of the parties or by operation of law. As used herein, the terms Borrower and Lender shall be deemed to

90

include their respective heirs, executors, legal representative, successors, successors-in-title, and assigns, whether by voluntary action of the parties or by operation of law.

11.10 All the terms and words used in this Note, regardless of the number and gender in which they are used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context or sense of this Note or any paragraph or clause herein may require, the same as if such word had been fully and properly written in the correct number and gender.

11.11 Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Loan Documents.

11.12 This Note shall be governed by and construed in accordance with the laws of the District of Columbia.

12. STATE SPECIFIC PROVISION(S).

12.1 From and after the occurrence of an Event of Default, regardless of whether or not there has been a notice of default issued by the Note Holder, interest shall accrue on the outstanding Principal Sum, and shall be payable, at a rate equal to 24%, which shall not exceed the maximum interest rate allowed by law (the "Default Rate"). Should the Default Rate named herein exceed the maximum interest rate allowed by law then it is the parties intention that the Default Rate shall be calculated at the maximum interest rate allowed by law.

[END OF PAGE – SIGNATURE PAGE TO FOLLOW]

91

5410 30th Street DC LLC, a Maryland Limited Liability Company
FTF_158847_71928 Tranche

IN WITNESS WHEREOF, the Borrower, by and through the Borrower's authorized signatory, has executed and delivered this Promissory Note to the Lender on May 3, 2023.

BORROWER:
5410 30th Street DC LLC, a Maryland Limited Liability Company

By: Zanetta Marie Williams
Its: Sole Member and Manager

NOTARIAL CERTIFICATE

STATE OF _Maryland_ )
) SS:
COUNTY OF _Anne Arndel_ )

An oath was administered to the signer with regard to the notarial act.

The foregoing Instrument was sworn and subscribed before me this _3rd_ day of _May_, 2023 by Zanetta Marie Williams.

NOTARIAL SEAL

Notary Public
State of _Maryland_

my Commission expires 6/22/2025

*CHERYL L. LATHAM*
*NOTARY PUBLIC*
*CALVERT COUNTY, MD*

92

5410 30th Street DC LLC, a Maryland Limited Liability Company
FTF_158847_71928 Tranche

INSTRUMENT PREPARED AND RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:
FTF Lending, LLC
c/o Tayyaba Monto
1300 E. 9th Street, Suite 800 Cleveland, Ohio 44114

**TO BE INDEXED NOT ONLY AS A DEED OF TRUST BUT ALSO AS A FIXTURE FILING.**

**BE ADVISED THAT THE PROMISSORY NOTE SECURED BY THIS DEED OF TRUST MAY PROVIDE FOR ONE OR MORE OF THE FOLLOWING: (1) A VARIABLE INTEREST RATE, (2) A BALLOON PAYMENT AT MATURITY, AND/OR (3) DEFERRAL OF A PORTION OF ACCRUED INTEREST UNDER CERTAIN CIRCUMSTANCES WITH INTEREST SO DEFERRED ADDED TO THE UNPAID PRINCIPAL BALANCE OF THE PROMISSORY NOTE AND SECURED HEREBY.**

5410 30th Street DC LLC, a Maryland Limited Liability Company
(Borrower and/or Trustor)

First American TR Services of D.C., LLC
(Trustee)

FTF Lending, LLC, a Delaware Limited Liability Company
(Beneficiary and/or Lender)

**PURCHASE MONEY AS TO $1,198,500.00**

# DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT

THE MAXIMUM PRINCIPAL AMOUNT OF INDEBTEDNESS FOR DISTRICT OF COLUMBIA
RECORDING TAX PURPOSES IS $ 2,222,000.00 .

| | |
|---|---|
| Date: | May 3, 2023 |
| Loan Amount: | $ 2,222,000.00 |
| FTF Loan #: | FTF_158847_71928 |
| Property: | 5631 MacArthur Boulevard Northwest, Washington, D.C. 20016 |
| Square ID: | 1446 |
| Lot ID: | 0043 |

1

## <u>DEED OF TRUST, ASSIGNMENT OF RENTS AND LEASES, FIXTURE FILING AND SECURITY AGREEMENT</u>

**Notwithstanding anything to the contrary set forth in this Deed of Trust, the maximum amount of principal indebtedness secured by this Deed of Trust or which under any contingency may become secured hereby at any time hereafter is $ 2,222,000.00 , and this Deed of Trust also secures interest thereon and all amounts expended by Lender to maintain the lien of this Deed of Trust or protect any of the Property, including without limitation, all amounts in respect to insurance premiums and real estate taxes, charges and assessments, litigation expenses to prosecute or defend the rights, remedies and lien of this Deed of Trust or title to the Property, and any costs, charges or amounts to which Lender becomes subrogated upon payment, whether under recognized principles of law or equity or under express statutory authority.**

**THIS DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT** (the " <u>Deed of Trust</u> ") is made and entered on May 3, 2023 , by and between 5410 30th Street DC LLC, a Maryland Limited Liability Company (the " <u>Borrower</u> " or " <u>Trustor</u> "), having an address for purposes of notice and legal process at 12138 Central Avenue, Suite 388 , Bowie , Maryland 20721 , First American TR Services of D.C., LLC (the " <u>Trustee</u> "), having an address for purposes of notice and legal process in care of 1850 K Street NW, Ste 1050, Washington, DC 20006 , and **FTF Lending, LLC, a Delaware Limited Liability Company** (the " <u>Beneficiary</u> " or " <u>Lender</u> "), having a principal place of business and for purposes of notice and legal process at 1300 E. 9th Street, Cleveland, OH 44114.

### RECITALS

A.   Beneficiary has agreed to loan to Trustor the principal amount of **Two Million Two Hundred Twenty-Two Thousand ($2,222,000.00)** (the "<u>Loan</u> "). The Loan shall be evidenced by a certain promissory note (the " <u>Note</u> ") dated **May 3, 2023** , and made by Trustor payable to Beneficiary in the original principal amount of the Loan and due on the Maturity Date (as defined in the Note) of **June 1, 2024** , except as may be accelerated or extended pursuant to the terms hereof or of the Note or any other Loan Document (as defined in the Note).

B.   A condition precedent to Beneficiary's extension of the Loan to Trustor is, among other things, the execution and delivery by Trustor of this Deed of Trust.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Trustor agrees as follows:

In order to secure the payment of the indebtedness hereinafter referred to and the performance of the obligations, covenants, agreements, warranties and undertakings of Trustor hereinafter described, Trustor hereby GRANTS, BARGAINS, SELLS, CONVEYS, TRANSFERS, ASSIGNS, MORTGAGES, WARRANTS, AND SETS OVER to Trustee for the benefit of Beneficiary, its successors and assigns, and grants to Beneficiary a security interest in, the following described property, rights and interest (referred collectively herein as " <u>Premises</u> ") with the full power of sale thereof, all of which property, rights and interest are hereby granted and pledged primarily and on parity with the real estate (as defined below) and not secondarily:

THE REAL ESTATE is located in the District of Columbia, more commonly known as 5631 MacArthur Boulevard Northwest , Washington , D.C. 20016 , and more specifically described in <u>Exhibit A</u> attached hereto and made a part hereof (" <u>Real Estate</u>" ); and

2

TOGETHER WITH all improvements of every nature whatsoever now or hereafter situated on the Real Estate, and all fixtures and personal property of every nature whatsoever now or hereafter owned by Trustor and located on, or used in connection with the Real Estate or the improvements thereon, or in connection with any construction thereon, including all extensions, additions, improvements, betterments, renewals, substitutions and replacements to any of the foregoing and all of the right, title and interest of Trustor in and to any such personal property or fixtures together with the benefit of any deposits or payments now or hereafter made on such personal property or fixtures by Trustor or on its behalf (" Improvements "); and

TOGETHER WITH all easements, rights of way, gores of real estate, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, mineral rights, air rights, development rights and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances whatsoever, in any way now or hereafter belonging, relating or appertaining to the Real Estate, and the reversions, remainders, rents, issues and profits thereof, and all the estate, right, title, interest, property, possession, claim and demand whatsoever, at law as well as in equity, of Trustor of, in and to the same; and

TOGETHER WITH all rents, revenues, issues, profits, proceeds, income, royalties, "accounts", including "health-care-insurance receivables", escrows, letter-of-credit rights (each as defined in the Code hereinafter defined), security deposits, impounds, reserves, tax refunds and other rights to monies from the Premises and/or the businesses and operations conducted by Trustor thereon, to be applied against the Indebtedness (hereinafter defined), all of which Trustor hereby absolutely and unconditionally assigns to Beneficiary; provided, however, that Trustor, so long as no Event of Default (as hereinafter defined) has occurred hereunder, may collect rent as it becomes due, but not more than 1 month in advance thereof; and

TOGETHER WITH all interest of Trustor in all leases now or hereafter of all or a portion of the Premises, whether written or oral (" Leases "), together with all security therefor and all monies payable thereunder, all of which Trustor hereby absolutely and unconditionally assigns to Beneficiary; subject, however, to the conditional permission hereinabove given to Trustor to collect the rentals under any such Lease; and

TOGETHER WITH all fixtures and articles of personal property now or hereafter owned by Trustor and forming a part of or used in connection with the Real Estate or the Improvements, including, but without limitation, any and all air conditioners, antennae, appliances, apparatus, awnings, basins, bathtubs, bidets, boilers, bookcases, cabinets, carpets, coolers, curtains, dehumidifiers, disposals, doors, drapes, dryers, ducts, dynamos, elevators, engines, equipment, escalators, exercise equipment, fans, fittings, floor coverings, furnaces, furnishings, furniture, hardware, heaters, humidifiers, incinerators, lighting, machinery, motors, ovens, pipes, plumbing, pumps, radiators, ranges, recreational facilities, refrigerators, screens, security systems, shades, shelving, sinks, sprinklers, stokers, stoves, toilets, ventilators, wall coverings, washers, windows, window coverings, wiring, and all renewals or replacements thereof or articles in substitution therefor, whether or not the same are or shall be attached to the Real Estate or the Improvements in any manner; it being mutually agreed that all of the aforesaid property owned by Trustor and placed on the Real Estate or the Improvements, so far as permitted by law, shall be deemed to be fixtures, a part of the realty, and security for the Indebtedness (as hereinafter defined); notwithstanding the agreement hereinabove expressed that certain articles of property form a part of the realty covered by this Deed of Trust and be appropriated to its use and deemed to be realty, to the extent that such agreement and declaration may not be effective and that any of said articles may constitute goods (as said term is used in the Uniform Commercial Code as adopted in the District of Columbia in effect from time to time (" Code "), this instrument shall constitute a security agreement, creating a security interest in such goods, as collateral, in Beneficiary, as a secured party, and Trustor, as Debtor, all in accordance with the Code; and

TOGETHER WITH all of Trustor's interests in "general intangibles" including "payment intangibles" and "software" (each as defined in the Code) now owned or hereafter acquired and related to the Premises,

3

including, without limitation, all of Trustor's right, title and interest in and to: (i) all agreements, licenses, permits and contracts to which Trustor is or may become a party and which relate to the Premises; (ii) all obligations and indebtedness owed to Trustor thereunder; (iii) all intellectual property related to the Premises; and (iv) all choses in action and causes of action relating to the Premises; and

TOGETHER WITH all of Trustor's accounts now owned or hereafter created or acquired as they relate to the Premises, including, without limitation, all of the following now owned or hereafter created or acquired by Trustor: (i) accounts, contract rights, health-care-insurance receivables, book debts, notes, drafts, and other obligations or indebtedness owing to the Trustor arising from the sale, lease or exchange of goods or other property and/or the performance of services; (ii) the Trustor's rights in, to and under all purchase orders for goods, services or other property; (iii) the Trustor's rights to any goods, services or other property represented by any of the foregoing; (iv) monies due to become due to the Trustor under all contracts for the sale, lease or exchange of goods or other property and/or the performance of services including the right to payment of any interest or finance charges in respect thereto (whether or not yet earned by performance on the part of the Trustor); (v) "securities", "investment property", "financial assets", and "securities entitlements" (each as defined in the Code); (vi) proceeds of any of the foregoing and all collateral security and guaranties of any kind given by any person or entity with respect to any of the foregoing; and (vii) all warranties, guarantees, permits and licenses in favor of Trustor with respect to the Premises; and

TOGETHER WITH all proceeds of the foregoing, including, without limitation, all judgments, awards of damages and settlements hereafter made resulting from condemnation proceeds or the taking of the Premises or any portion thereof under the power of eminent domain, any proceeds of any policies of insurance, maintained with respect to the Premises or proceeds of any sale, option or contract to sell the Premises or any portion thereof.

TO HAVE AND TO HOLD the Premises unto Trustee, and its successors and substitutes in this trust and to its and their successors and assigns, in trust, WITH POWER OF SALE AND THE RIGHT OF RE-ENTRY AND POSSESSION, for the benefit of Beneficiary and its successors and assigns, upon the terms, provisions and conditions herein set forth.

FOR THE PURPOSE OF SECURING THE FOLLOWING (collectively, the " Indebtedness "): (i) the payment of the Loan and all interest, late charges, prepayment premium (if any), Prepayment Fee (if any), reimbursement obligations, fees and expenses for letters of credit issued by Beneficiary for the benefit of Trustor, if any, and other indebtedness evidenced by or owing under the Note, any of the other Loan Documents, any interest rate swap or hedge agreement now or hereafter entered into between Trustor and Beneficiary and any application for letters of credit and master letter of credit agreement, together with any extensions, modifications, renewals or refinancings of any of the foregoing; (ii) the performance and observance of the covenants, conditions, agreements, representations, warranties and other liabilities and obligations of Trustor or any other obligor to or benefiting Beneficiary which are evidenced or secured by or otherwise provided in the Note, this Deed of Trust or any of the other Loan Documents, dated on or about the Effective Date which obligations, notwithstanding anything to the contrary in this Deed of Trust, shall not be secured by this Deed of Trust; and (iii) the reimbursement to Beneficiary of any and all sums incurred, expended or advanced by Beneficiary pursuant to any term or provision of or constituting additional indebtedness under or secured by this Deed of Trust, any of the other Loan Documents, any interest rate swap or hedge agreement or any application for letters of credit and master letter of credit agreement, with interest thereon as provided herein or therein.

IT IS FURTHER UNDERSTOOD AND AGREED THAT:

4

5410 30th Street DC LLC, a Maryland Limited Liability Company
FTF_158847_71928 Tranche

1      <u>Title</u> . Trustor represents, warrants and covenants that (a) Trustor is the holder of the Leasehold title to the Premises, free and clear of all liens and encumbrances, except those liens and encumbrances in favor of Beneficiary and as otherwise described on the title insurance policy accepted by Beneficiary (the " <u>Permitted Exceptions</u> "); and (b) Trustor has legal power and authority to mortgage and convey the Premises.

2      <u>Maintenance, Repair, Restoration, Prior Liens, Parking</u> . Trustor covenants that, so long as any portion of the Indebtedness remains unpaid, Trustor will:

     2.1      promptly repair, restore or rebuild any Improvements now or hereafter on the Premises which may become damaged or be destroyed to a condition substantially similar to the condition immediately prior to such damage or destruction, whether or not proceeds of insurance are available or sufficient for the purpose; and

     2.2      keep the Premises in good condition and repair, without waste, and free from mechanics', materialmen's or like liens or claims or other liens or claims for lien (collectively, the " <u>Mechanics' Liens</u> "); and

     2.3      pay when due the Indebtedness in accordance with the terms of the Note and the other Loan Documents and duly perform and observe all of the terms, covenants and conditions to be observed and performed by Trustor under the Note, this Deed of Trust and the other Loan Documents; and

     2.4      pay when due any indebtedness which may be secured by a permitted lien or charge on the Premises on a parity with, superior to or inferior to, the lien hereof, and upon request exhibit satisfactory evidence of the discharge of such lien to the Beneficiary; and

     2.5      complete within a reasonable time any Improvements now or at any time in the process of erection upon the Premises; and

     2.6      comply with all requirements of law, municipal ordinances or restrictions and covenants of record with respect to the Premises and the use thereof; and

     2.7      obtain and maintain in full force and effect, and abide by and satisfy the material terms and conditions of, all material permits, licenses, registrations and other authorizations with or granted by any governmental authorities that may be required from time to time with respect to the performance of its obligations under this Deed of Trust; and

     2.8      make no material alterations in the Premises or demolish any portion of the Premises without Beneficiary's prior written consent, except as required by law or municipal ordinance; and

     2.9      suffer or permit no change in the use or general nature of the occupancy of the Premises, without the Beneficiary's prior written consent; and

     2.10      pay when due all operating costs of the Premises; and

     2.11      not initiate or acquiesce in any zoning reclassification with respect to the Premises, without Beneficiary's prior written consent; and

5

2.12 provide and thereafter maintain adequate parking areas within the Premises as may be required by law, ordinance or regulation (whichever may be greater), together with any sidewalks, aisles, streets, driveways and sidewalk cuts and sufficient paved areas for ingress, egress and right-of-way, to and from the adjacent public thoroughfares necessary or desirable for the use thereof; and

2.13 cause the Premises at all times to be operated in compliance with all federal, state, local and municipal environmental, health and safety laws, statutes, ordinances, rules and regulations, including, without limitation, Trustor will (i) ensure, and cause each of its subsidiaries to ensure, that no person who owns 20.000% or more of the equity interests in the Trustor, or otherwise controls the Trustor or any of its subsidiaries is or shall be listed on the Specially Designated Nationals and Blocked Person List or other similar lists maintained by the Office of Foreign Assets Control (" OFAC "), the Department of the Treasury or included in any Executive Orders, (ii) not use or permit the use of the proceeds of the Loan to violate any of the foreign asset control regulations of OFAC or any enabling statute or Executive Order relating thereto, and (iii) comply, and cause each of its subsidiaries to comply, with all applicable Bank Secrecy Act laws and regulations, as amended.

3 Payment of Taxes and Assessments; Removal of Mechanics' Liens . Trustor will pay when due and before any penalty attaches, all general and special taxes, assessments, water charges, sewer charges, and other fees, taxes, charges and assessments of every kind and nature whatsoever (collectively, the " Taxes "), whether or not assessed against Trustor, if applicable to the Premises or any interest therein, or the Indebtedness, or any obligation or agreement secured hereby, subject to Trustor's right to contest the same, as provided by the terms hereof; and Trustor will, upon written request, furnish to the Beneficiary duplicate receipts therefor within 10 days after Beneficiary's request.

4 Insurance .

4.1 Trustor shall at all times keep all buildings, improvements, fixtures and articles of personal property now or hereafter situated on the Premises insured against loss or damage by fire and such other hazards as may reasonably be required by Beneficiary, in accordance with the terms, coverages and provisions reasonably acceptable to Beneficiary, and such other insurance as Beneficiary may from time to time reasonably require. Unless Trustor provides Beneficiary evidence of the insurance coverages required hereunder, Beneficiary may purchase insurance at Trustor's expense to cover Beneficiary's interest in the Premises. The insurance may, but need not, protect Trustor's interest. The coverages that Beneficiary purchases may not pay any claim that Trustor makes or any claim that is made against Trustor in connection with the Premises. Trustor may later cancel any insurance purchased by Beneficiary, but only after providing Beneficiary with evidence that Trustor has obtained insurance as required by this Deed of Trust. If Beneficiary purchases insurance for the Premises, Trustor will be responsible for the costs of such insurance, including, without limitation, interest and any other charges which Beneficiary may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to the Indebtedness. The cost of the insurance may be more than the cost of insurance Trustor may be able to obtain on its own.

6

4.2    Trustor shall not take out separate insurance concurrent in form or contributing in the event of loss with that required to be maintained hereunder unless Beneficiary is included thereon as the loss payee or an additional insured as applicable, under a standard deed of trust clause acceptable to Beneficiary and such separate insurance is otherwise acceptable to Beneficiary.

4.3    In the event of a loss, Trustor shall give prompt notice thereof to Beneficiary, who shall have the sole and absolute right to make proof of loss. Beneficiary, solely and directly, shall receive such payment for loss from each insurance company concerned. Beneficiary shall have the right, at its option and in its sole discretion, to apply any insurance proceeds received by Beneficiary pursuant to the terms of this Section, after the payment of all of Beneficiary's expenses, either (i) on account of the Indebtedness, irrespective of whether such principal balance is then due and payable, whereupon Beneficiary may declare the whole of the balance of Indebtedness, plus the " Prepayment Fee " (as defined in the Note), to be due and payable, or (ii) to the restoration or repair of the property damaged as provided in Subsection (d) below; provided, however, that Beneficiary hereby agrees to permit the application of such proceeds to the restoration or repair of the damaged property, subject to the provisions of Subsection (d) below, if (i) Beneficiary has received satisfactory evidence that such restoration or repair shall be completed no later than the date that is 2 months prior to the Maturity Date; (ii) that the insurance proceeds will cover all costs of restoration or repair; and (iii) no Event of Default, or event that with the passage of time, the giving of notice or both would constitute an Event of Default, then exists. If insurance proceeds are made available to Trustor by Beneficiary as hereinafter provided, Trustor shall repair, restore or rebuild the damaged or destroyed portion of the Premises so that the condition and value of the Premises are substantially the same as the condition and value of the Premises prior to being damaged or destroyed. Any insurance proceeds applied on account of the unpaid principal balance of the Note shall be subject to the Prepayment Fee. In the event of foreclosure of this Deed of Trust, all right, title and interest of Trustor in and to any insurance policies then in force shall pass to the purchaser at the foreclosure sale.

4.4    If insurance proceeds are made available by Beneficiary to Trustor, Trustor shall comply with the following conditions:

    4.4.1    Before commencing to repair, restore or rebuild following damage to, or destruction of, all or a portion of the Premises, whether by fire or other casualty, Trustor shall obtain from Beneficiary its approval of all site and building plans and specifications pertaining to such repair, restoration or rebuilding; and

    4.4.2    Prior to each payment or application of any insurance proceeds to the repair or restoration of the improvements upon the Premises to the extent permitted in Subsection (c) above (which payment or application may be made, at Beneficiary's option, through an escrow, the terms and conditions of which are satisfactory to Beneficiary and the cost of which is to be borne by Trustor), Beneficiary shall be satisfied as to the following:

    4.4.3    no Event of Default or any event which, with the passage of time or giving of notice would constitute an Event of Default, has occurred; and

7

4.4.4 either such Improvements have been fully restored, or the expenditure of money as may be received from such insurance proceeds will be sufficient to repair, restore or rebuild the Premises, free and clear of all liens, claims and encumbrances, except the lien of this Deed of Trust and the Permitted Exceptions, or, if such insurance proceeds shall be insufficient to repair, restore and rebuild the Premises, Trustor has deposited with Beneficiary such amount of money which, together with the insurance proceeds shall be sufficient to restore, repair and rebuild the Premises; and

4.4.5 prior to each disbursement of any such proceeds, Beneficiary shall be furnished with a statement of Beneficiary's architect (the cost of which shall be borne by Trustor), certifying the extent of the repair and restoration completed to the date thereof, and that such repairs, restoration, and rebuilding have been performed to date in conformity with the plans and specifications approved by Beneficiary and with all statutes, regulations or ordinances (including building and zoning ordinances) affecting the Premises; and Beneficiary shall be furnished with appropriate evidence of payment for labor or materials furnished to the Premises, and total or partial lien waivers substantiating such payments, and title insurance endorsements in form satisfactory to Beneficiary, insuring the continuing first priority of this Deed of Trust, subject only to the Permitted Exceptions.

4.5 If Trustor shall fail to restore, repair or rebuild the Improvements within a time deemed reasonably satisfactory by Beneficiary, then Beneficiary, at its option, may (a) commence and perform all necessary acts to restore, repair or rebuild the said Improvements for or on behalf of Trustor, or (b) declare an Event of Default. If insurance proceeds shall exceed the amount necessary to complete the repair, restoration or rebuilding of the Improvements, such excess shall be applied on account of the Indebtedness irrespective of whether such Indebtedness is then due and payable without payment of any premium or penalty.

5 Condemnation . If all or any part of the Premises are damaged, taken or acquired, either temporarily or permanently, in any condemnation proceeding, or by exercise of the right of eminent domain, the amount of any award or other payment for such taking or damages made in consideration thereof, to the extent of the full amount of the remaining unpaid Indebtedness, is hereby assigned to Beneficiary, who is empowered to collect and receive the same and to give proper receipts therefor in the name of Trustor and the same shall be paid forthwith to Beneficiary. Such award or monies shall be applied on account of the Indebtedness, irrespective of whether such Indebtedness is then due and payable and, at any time from and after the taking Beneficiary may declare the whole of the balance of the Indebtedness, plus the Prepayment Fee, to be due and payable. Notwithstanding the provisions of this Section to the contrary, if any condemnation or taking of less than the entire Premises occurs and provided that no Event of Default and no event or circumstance which with the passage of time, the giving of notice or both would constitute an Event of Default then exists, and if such partial condemnation, in the reasonable discretion of Beneficiary, has no material adverse effect on the operation or value of the Premises, then the award or payment for such taking or consideration for damages resulting therefrom may be collected and received by Trustor, and Beneficiary hereby agrees that in such event it shall not declare the Indebtedness to be due and payable, if it is not otherwise then due and payable.

6 Stamp Tax . If, by the laws of the United States of America, or of any state or political subdivision having jurisdiction over Trustor, any tax is due or becomes due in respect of the execution and delivery of this Deed of Trust, the Note or any of the other Loan Documents, Trustor shall pay such

8

tax in the manner required by any such law. Trustor further agrees to reimburse Beneficiary for any sums which Beneficiary may expend by reason of the imposition of any such tax. Notwithstanding the foregoing, Trustor shall not be required to pay any income or franchise taxes of Beneficiary.

7   Effect of Extensions of Time and Other Changes . If the payment of the Indebtedness or any part thereof is extended or varied, if any part of any security for the payment of the Indebtedness is released, if the rate of interest charged under the Note is changed or if the time for payment thereof is extended or varied, all persons now or at any time hereafter liable therefor, or interested in the Premises or having an interest in Trustor, shall be held to assent to such extension, variation, release or change and their liability and the lien and all of the provisions hereof shall continue in full force, any right of recourse against all such persons being expressly reserved by Beneficiary, notwithstanding such extension, variation, release or change.

8   Effect of Changes in Laws Regarding Taxation . If any law is enacted after the Effective Date requiring (a) the deduction of any lien on the Premises from the value thereof for the purpose of taxation or (b) the imposition upon Beneficiary of the payment of the whole or any part of the Taxes, charges or liens herein required to be paid by Trustor, or (c) a change in the method of taxation of mortgages or debts secured by mortgages or Beneficiary's interest in the Premises, or the manner of collection of taxes, so as to affect this Deed of Trust or the Indebtedness of the holders thereof, then Trustor, upon demand by Beneficiary, shall pay such Taxes or charges, or reimburse Beneficiary therefor; provided, however, that Trustor shall not be deemed to be required to pay any income or franchise taxes of Beneficiary. Notwithstanding the foregoing, if in the opinion of counsel for Beneficiary it is or may be unlawful to require Trustor to make such payment or the making of such payment might result in the imposition of interest beyond the maximum amount permitted by law, then Beneficiary may declare all of the Indebtedness to be immediately due and payable.

9   Beneficiary's Performance of Defaulted Acts and Expenses Incurred by Beneficiary . If an Event of Default has occurred, Beneficiary may, but need not, make any payment or perform any act herein required of Trustor in any form and manner deemed expedient by Beneficiary, and may, but need not, make full or partial payments of principal or interest on prior encumbrances, if any, and purchase, discharge, compromise or settle any tax lien or other prior lien or title or claim thereof, or redeem from any tax sale or forfeiture affecting the Premises or consent to any tax or assessment or cure any default of Trustor in any lease of the Premises. All monies paid for any of the purposes herein authorized and all expenses paid or incurred in connection therewith, including reasonable attorneys' fees, and any other monies advanced by Beneficiary in regard to any tax or to protect the Premises or the lien hereof, shall be so much additional Indebtedness, and shall become immediately due and payable by Trustor to Beneficiary, upon demand, and with interest thereon accruing from the date of such demand until paid at the Default Rate (as defined in the Note) then in effect. In addition to the foregoing, any costs, expenses and fees, including reasonable attorneys' fees, incurred by Beneficiary in connection with (a) sustaining the lien of this Deed of Trust or its priority, (b) protecting or enforcing any of Beneficiary's rights hereunder, (c) recovering any Indebtedness, (d) any litigation or proceedings affecting the Note, this Deed of Trust, any of the other Loan Documents or the Premises, including without limitation, bankruptcy and probate proceedings, or (e) preparing for the commencement, defense or participation in any threatened litigation or proceedings affecting the Note, this Deed of Trust, any of the other Loan Documents or the Premises, shall be so much additional Indebtedness, and shall become immediately due and payable by Trustor to Beneficiary, upon demand, and with interest thereon accruing from the date of such demand until paid at the Default Rate. The interest accruing under this Section shall be

9

immediately due and payable by Trustor to Beneficiary, and shall be additional Indebtedness evidenced by the Note and secured by this Deed of Trust. Beneficiary's failure to act shall never be considered as a waiver of any right accruing to Beneficiary on account of any Event of Default. Should any amount paid out or advanced by Beneficiary hereunder, or pursuant to any agreement executed by Trustor in connection with the Loan, be used directly or indirectly to pay off, discharge or satisfy, in whole or in part, any lien or encumbrance upon the Premises or any part thereof, then Beneficiary shall be subrogated to any and all rights, equal or superior titles, liens and equities, owned or claimed by any owner or holder of said outstanding liens, charges and indebtedness, regardless of whether said liens, charges and indebtedness are acquired by assignment or have been released of record by the holder thereof upon payment.

10    Security Agreement . Trustor and Beneficiary agree that this Deed of Trust shall constitute a Security Agreement within the meaning of the Code with respect to (a) all sums at any time on deposit for the benefit of Trustor or held by the Beneficiary (whether deposited by or on behalf of Trustor or anyone else) pursuant to any of the provisions of this Deed of Trust or the other Loan Documents, and (b) any personal property included in the granting clauses of this Deed of Trust, which personal property may not be deemed to be affixed to the Premises or may not constitute a "fixture" (within the meaning of the Code) (which property is hereinafter referred to as " Personal Property "), and all replacements of, substitutions for, additions to, and the proceeds thereof, and the "supporting obligations" (as defined in the Code) (all of said Personal Property and the replacements, substitutions and additions thereto and the proceeds thereof being sometimes hereinafter collectively referred to as " Collateral "), and that a security interest in and to the Collateral is hereby granted to the Beneficiary, and the Collateral and all of Trustor's right, title and interest therein are hereby assigned to Beneficiary, all to secure payment of the Indebtedness. All of the provisions contained in this Deed of Trust pertain and apply to the Collateral as fully and to the same extent as to any other property comprising the Premises; and the following provisions of this Section shall not limit the applicability of any other provision of this Deed of Trust but shall be in addition thereto:

10.1    Trustor (being the Debtor as that term is used in the Code) is and will be the true and lawful owner of the Collateral and has rights in and the power to transfer the Collateral, subject to no liens, charges or encumbrances other than the lien hereof, other liens and encumbrances benefiting Beneficiary and no other party, and liens and encumbrances, if any, expressly permitted by the other Loan Documents.

10.2    The Collateral is to be used by Trustor solely for business purposes.

10.3    The Collateral will be kept at the Real Estate and, except for Obsolete Collateral (as hereinafter defined), will not be removed therefrom without the consent of Beneficiary (being the Secured Party as that term is used in the Code). The Collateral may be affixed to the Real Estate but will not be affixed to any other real estate.

10.4    The only persons having any interest in the Premises are Trustor, Beneficiary and holders of interests, if any, expressly permitted hereby.

10.5    No Financing Statement (other than Financing Statements showing Beneficiary as the sole secured party, or with respect to liens or encumbrances, if any, expressly permitted hereby) covering any of the Collateral or any proceeds thereof is on file in any public office except pursuant hereto; and Trustor, at its own cost and expense, upon demand, will furnish to Beneficiary such further information and will execute and deliver to Beneficiary such

10

financing statements and other documents in form satisfactory to Beneficiary and will do all such acts as Beneficiary may request at any time or from time to time or as may be necessary or appropriate to establish and maintain a perfected security interest in the Collateral as security for the Indebtedness, subject to no other liens or encumbrances, other than liens or encumbrances benefiting Beneficiary and no other party and liens and encumbrances (if any) expressly permitted hereby; and Trustor will pay the cost of filing or recording such financing statements or other documents, and this instrument, in all public offices wherever filing or recording is deemed by Beneficiary to be desirable. Trustor hereby irrevocably authorizes Beneficiary at any time, and from time to time, to file in any jurisdiction any initial financing statements and amendments thereto that (i) indicate the Collateral as all assets of Trustor (or words of similar effect), regardless of whether any particular asset comprised in the Collateral falls within the scope of Article 9 of the Uniform Commercial Code of the jurisdiction wherein such financing statement or amendment is filed, or as being of an equal or lesser scope or within greater detail, and (ii) contain any other information required by Section 5 of Article 9 of the Uniform Commercial Code of the jurisdiction wherein such financing statement or amendment is filed regarding the sufficiency or filing office acceptance of any financing statement or amendment, including whether Trustor is an organization, the type of organization and any organizational identification number issued to Trustor, and in the case of a financing statement filed as a fixture filing or indicating Collateral as as-extracted collateral or timber to be cut, a sufficient description of real property to which the Collateral relates. Trustor agrees to furnish any such information to Beneficiary promptly upon request. Trustor further ratifies and affirms its authorization for any financing statements and/or amendments thereto, executed and filed by Beneficiary in any jurisdiction prior to the date of this Deed of Trust.

10.6    Upon an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Code, including, without limitation, the right to take immediate and exclusive possession of the Collateral, or any part thereof, and for that purpose, so far as Trustor can give authority therefor, with or without judicial process, may enter (if this can be done without breach of the peace) upon any place where the Collateral or any part thereof may be situated and remove the same therefrom (provided that if the Collateral is affixed to real estate, such removal shall be subject to the conditions stated in the Code); and Beneficiary shall be entitled to hold, maintain, preserve and prepare the Collateral for sale, until disposed of, or may propose to retain the Collateral subject to Trustor's right of redemption in satisfaction of Trustor's obligations, as provided in the Code. Beneficiary may render the Collateral unusable without removal and may dispose of the Collateral on the Premises. Beneficiary may require Trustor to assemble the Collateral and make it available to Beneficiary for its possession at a place to be designated by Beneficiary which is reasonably convenient to both parties. Beneficiary will give Trustor at least 10 days' notice of the time and place of any public sale of the Collateral or of the time after which any private sale or any other intended disposition thereof is made. The requirements of reasonable notice shall be met if such notice is mailed, by certified United States mail or equivalent, postage prepaid, to the address of Trustor hereinafter set forth at least 10 days before the time of the sale or disposition. Beneficiary may buy at any public sale. Beneficiary may buy at private sale if the Collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations. Any such sale may be held in conjunction with any foreclosure sale of the Premises. If Beneficiary so elects, the Premises and the Collateral may be sold as one lot. The net proceeds realized upon any such disposition, after deduction for the expenses of

11

retaking, holding, preparing for sale, selling and the reasonable attorneys' fees and legal expenses incurred by Beneficiary, shall be applied against the Indebtedness in such order or manner as Beneficiary shall select. Beneficiary will account to Trustor for any surplus realized on such disposition.

10.7    The terms and provisions contained in this Section, unless the context otherwise requires, shall have the meanings and be construed as provided in the Code.

10.8    This Deed of Trust is intended to be a financing statement within the purview of the Code with respect to the Collateral and the goods described herein, which goods are or may become fixtures relating to the Premises.   The addresses of Trustor (Debtor) and Beneficiary (Secured Party) are hereinbelow set forth.  This Deed of Trust is to be filed for recording in the Land Records of the District of Columbia.

10.9    To the extent permitted by applicable law, the security interest created hereby is specifically intended to cover all Leases between Trustor or its agents as lessor, and various tenants named therein, as lessee, including all extended terms and all extensions and renewals of the terms thereof, as well as any amendments to or replacement of said Leases, together with all of the right, title and interest of Trustor, as lessor thereunder.

10.10   Trustor represents and warrants that:

10.10.1 Trustor is the record owner of the Premises; and

10.10.2 Trustor is qualified to do business in the District of Columbia; and

10.10.3 The exact legal names of Trustor are as set forth in the first paragraph of this Deed of Trust.

10.11   Trustor agrees that:

10.11.1 Where Collateral is in possession of a third party, Trustor will join with the Beneficiary in notifying the third party of the Beneficiary's interest and obtaining an acknowledgment from the third party that it is holding the Collateral for the benefit of Beneficiary; and

10.11.2 Trustor will cooperate with the Beneficiary in obtaining control with respect to Collateral consisting of: deposit accounts, investment property, letter of credit rights and electronic chattel paper; and

10.11.3 Until the Indebtedness is paid in full, Trustor will not change the state where it is located or change its company name without giving the Beneficiary at least 30 days' prior written notice in each instance

10.12   In addition to Beneficiary's rights under the Code, Beneficiary may, but shall not be obligated to, at any time and at the expense of Trustor (i) give notice to any person of Beneficiary's rights hereunder and enforce such rights; (ii) insure, protect, defend and preserve the Collateral and any rights or interests of Beneficiary therein; (iii) inspect such Collateral; and (iv) endorse, collect and receive any right to payment of money owing to Trustor under or from such Collateral. Beneficiary shall have no duty or obligation to make

12

or give any presentments, demands for performance, notices of non-performance, notices of protest or notices of dishonor in connection with any of such Collateral.

10.13   Trustor and Beneficiary agree that the filing of a financing statement in the records normally having to do with personal property shall never be construed as in any way derogating from or impairing this Deed of Trust and the intention of the parties that everything used in connection with the production of income from the Premises or adapted for use therein or which is described or reflected in this Deed of Trust is, and at all times and for all purposes and in all proceedings both legal or equitable shall be regarded as part of the real estate subject to the lien hereof, irrespective of whether (i) any such item is physically attached to improvements located on such real property or (ii) any such item is referred to or reflected in any financing statement so filed at any time. Similarly, the mention in any such financing statement of (A) the rights in or the proceeds of any fire or hazard insurance policy or (B) any award in eminent domain proceedings for taking or for loss of value or for any cause of action or proceeds thereof in connection with any damage or injury to the Premises or any part thereof shall never be construed as in any way altering any of the rights of Beneficiary as determined by this instrument or impugning the priority of Beneficiary's lien granted hereby or by any other recorded document, but such mention in such financing statement is declared to be for the protection of Beneficiary in the event any court shall at any time hold with respect to matters (A) and (B) above that notice of Beneficiary's priority of interest, to be effective against a particular class of persons, including, without limitation, the Federal government and any subdivision or entity of the Federal government, must be filed in the personal property records or other commercial code records.

10.14   It is understood and agreed that, in order to protect Beneficiary from the effect of the Code, as amended from time to time, in the event that (i) Trustor intends to purchase any goods which may become fixtures to the Real Estate or Improvements, or any part thereof, and (ii) such goods would be subject to a security interest held by a seller or any other party, Trustor shall, before executing any security agreement or other document evidencing such security interest, obtain the prior written approval of Beneficiary, and all requests for such written approval shall be in writing and contain the following information: (A) A description of the fixtures to be replaced, added to, installed or substituted; (B) The address at which the fixtures will be replaced, added to, installed or substituted; and (C) The name and address of the proposed holder and proposed amount of the security interest; and any failure of Trustor to obtain such approval shall be a material breach of Trustor's covenants under this Deed of Trust, and shall, at the option of Beneficiary, entitle Beneficiary to all rights and remedies provided for herein upon default. No consent by Beneficiary pursuant to this Section shall be deemed to constitute an agreement to subordinate any right of Beneficiary in fixtures or other property covered by this Deed of Trust.

10.15   Beneficiary shall have the right to acquire by assignment from the holder of such security interest any and all contract rights, accounts receivable, negotiable or non-negotiable instruments or other evidence of Trustor's indebtedness for such personal property or fixtures and, upon acquiring such interest by assignment, shall have the right to enforce the security interest as assignee thereof in accordance with the terms and provisions of the Code then in effect and in accordance with any other provisions of law.

10.16   If at any time Trustor fails to make any payment on an obligation secured by a security interest in such personal property or fixtures, Beneficiary, at its option, may at any time

13

pay the amount secured by such security interest and the amount so paid shall be (i) secured by this Deed of Trust and shall be a lien on the Premises having the same priorities as the liens and security interests created by this Deed of Trust, and (ii) payable on demand with interest at the rate specified in the Note from the time of such payment. If Trustor shall fail to make such payment to Beneficiary within 10 days after demand, the entire principal sum secured thereby with all unpaid accrued interest and late charges or other amounts owing thereunder, shall, at the option of Beneficiary, become due and payable immediately.

11      Restrictions on Transfer .

11.1    Trustor, without the prior written consent of Beneficiary, shall not effect, suffer or permit any Prohibited Transfer (as defined herein). Any conveyance, sale, assignment, transfer, lien, pledge, partitioning, mortgage, security interest or other encumbrance or alienation or any agreement to do any of the foregoing, with respect to any of the following properties or interests shall constitute a "Prohibited Transfer": (i) The Premises or any part thereof or interest therein, excepting only sales or other dispositions of Collateral (hereinafter called " Obsolete Collateral ") no longer useful in connection with the operation of the Premises, provided that prior to the sale or other disposition thereof, such Obsolete Collateral has been replaced by Collateral of at least equal value and utility which is subject to the lien hereof with the same priority as with respect to the Obsolete Collateral; (ii) Any shares of capital stock of a corporate trustor, a corporation which is a general partner or managing member or manager in a partnership or limited liability company trustor, or a corporation which is the owner of substantially all of the capital stock of any corporation described in this Subsection (other than the shares of capital stock of a corporate trustee or a corporation whose stock is publicly traded on a national securities exchange or on the National Association of Securities Dealers' Automated Quotation System); (iii) All or any part of the managing member or manager interest, as the case may be, in a limited liability company trustor or a limited liability company which is a general partner of a partnership Trustor; (iv) All or any part of the general partner or joint venture interest, as the case may be, of a partnership trustor or a partnership which is a manager of a limited liability company trustor or the conversion of a partnership trustor to a corporation or limited liability company; or (v) if there shall be any change in control (by way of transfers of stock, partnership or member interests or otherwise) of Trustor or in any partner, member, manager or shareholder, as applicable, which directly or indirectly controls the day to day operations and management of Trustor and/or owns a controlling interest in Trustor; or in each case whether any such conveyance, sale, assignment, transfer, lien, pledge, mortgage, security interest, encumbrance or alienation is effected directly, indirectly (including the nominee agreement), voluntarily or involuntarily, by operation of law or otherwise; provided, however, that the foregoing provisions of this Section shall not apply (i) to liens securing the Indebtedness, (ii) to the lien of current taxes and assessments not in default, (iii) to any transfers of the Premises, or part thereof, or interest therein, or any beneficial interests, or shares of stock or partnership or joint venture interests, as the case may be, by or on behalf of an owner thereof, who is deceased or declared judicially incompetent, to such owner's heirs, legatees, devisees, executors, administrators, estate or personal representatives, or (iv) to leases permitted by the terms of the Loan Documents, if any. Notwithstanding the foregoing, as long as all of the Transfer Conditions (as defined below) are satisfied, a transfer of partnership interests in Trustor (i) to a conservator pursuant to court order upon the legal disability of an individual partner or (ii) to a Family Member (hereinafter defined) upon the death of an individual partner shall not require the

14

Beneficiary's consent. "Family Member" shall be defined as an individual partner's spouse and any of his or her direct lineal descendants. The term "Transfer Conditions" shall mean that all of the following conditions are satisfied concurrently with each such transfer: (1) there shall be no change in the day to day operations and management of Trustor and (2) Beneficiary shall be provided with a diagram showing the structure of Trustor and all constituent entities after such transfer occurs and a list of the names, types of interests and percentages of ownership of all owners of interests in Trustor and any constituent entities after such transfer occurs.

11.2    In determining whether or not to make the Loan, Beneficiary evaluated the background and experience of Trustor and its partners/members/officers in owning and operating property such as the Premises, found it acceptable and relied and continues to rely upon same as the means of maintaining the value of the Premises which is Beneficiary's security for the Note. Trustor and its partners, members, and officers are well experienced in borrowing money and owning and operating property such as the Premises, were ably represented by a licensed attorney at law in the negotiation and documentation of the Loan and bargained at arm's length and without duress of any kind for all of the terms and conditions of the Loan, including this provision. Trustor recognizes that Beneficiary is entitled to keep its loan portfolio at current interest rates by either making new loans at such rates or collecting assumption fees and/or increasing the interest rate on a loan, if the security for which is purchased by a party other than the original Trustor. Trustor further recognizes that any secondary junior financing placed upon the Premises (a) may divert funds which would otherwise be used to pay the Note; (b) could result in acceleration and foreclosure by any such junior encumbrancer which would force Beneficiary to take measures and incur expenses to protect its security; (c) would detract from the value of the Premises should Beneficiary come into possession thereof with the intention of selling same; and (d) would impair Beneficiary's right to accept a deed in lieu of foreclosure, as a foreclosure by Beneficiary would be necessary to clear the title to the Premises. In accordance with the foregoing and for the purposes of (i) protecting Beneficiary's security, both of repayment and of value of the Premises; (ii) giving Beneficiary the full benefit of its bargain and contract with Trustor; (iii) allowing Beneficiary to raise the interest rate and collect assumption fees; and (iv) keeping the Premises free of subordinate financing liens, Trustor agrees that if this Section is deemed a restraint on alienation, that it is a reasonable one.

12      Events of Default; Acceleration . Each of the following shall constitute an "Event of Default" for purposes of this Deed of Trust:

12.1    Trustor fails to pay (i) any installment of principal or interest payable pursuant to the Note on the date when due, or (ii) any other amount payable to Beneficiary under the Note, this Deed of Trust or any of the other Loan Documents within 5 days after the date when any such payment is due in accordance with the terms hereof or thereof; or

12.2    Trustor fails to perform or cause to be performed any other obligation or observe any other condition, covenant, term, agreement or provision required to be performed or observed by Trustor under the Note, this Deed of Trust or any of the other Loan Documents; provided, however, that if such failure by its nature can be cured, then so long as the continued operation and safety of the Premises, and the priority, validity and enforceability of the liens created by this Deed of Trust or any of the other Loan Documents and the value of the Premises are not impaired, threatened or jeopardized, then Trustor shall have a period

15

(the " Cure Period ") of 15 days after Trustor obtains actual knowledge of such failure or receives written notice of such failure to cure the same and an Event of Default shall not be deemed to exist during the Cure Period; or

12.3    the existence of any inaccuracy or untruth in any material respect in any representation or warranty contained in this Deed of Trust or any of the other Loan Documents or of any statement or certification as to facts delivered to Beneficiary by Trustor; or

12.4    Trustor files a voluntary petition in bankruptcy or is adjudicated a bankrupt or insolvent or files any petition or answer seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under the present or any future federal, state, or other statute or law, or seeks or consents to, or acquiesces in the appointment of any trustee, receiver or similar officer of Trustor or of all or any substantial part of the property of Trustor or any of the Premises or all or a substantial part of the assets of Trustor are attached, seized, subjected to a writ or distress warrant or are levied upon unless the same is released or located within 30 days; or

12.5    the commencement of any involuntary petition in bankruptcy against Trustor or the institution against Trustor of any reorganization, arrangement, composition, readjustment, dissolution, liquidation or similar proceedings under any present or future federal, state or other statute or law, or the appointment of a receiver, trustee or similar officer for all or any substantial part of the property of Trustor which shall remain undismissed or undischarged for a period of 60 days; or

12.6    the occurrence of a Prohibited Transfer; or

12.7    the occurrence of an "Event of Default" under the Note or any of the other Loan Documents; or

12.8    the occurrence of any default or event of default, after the expiration of any applicable periods of notice or cure, under any document or agreement evidencing or securing any other obligation or indebtedness of Trustor to Beneficiary.  If an Event of Default occurs, Beneficiary may, at its option, declare the whole of the Indebtedness to be immediately due and payable without further notice to Trustor, with interest thereon accruing from the date of such Event of Default until paid at the Default Rate.

13    Remedies and Application of Proceeds .  Upon the occurrence of an Event of Default, Beneficiary may at any time, at its option and in its sole discretion, declare all Indebtedness to be due and payable and the same shall thereupon become immediately due and payable, including the Prepayment Fee, under the terms of the Indebtedness, with interest accruing thereon from the date of the Event of Default until paid, at the Default Rate. In addition to exercising any other remedy available at law, in equity and/or under the other Loan Documents, Beneficiary may also do any or all of the following, concurrently or otherwise, at such time and in such order as Beneficiary may determine, in its sole discretion, although it shall have no obligation to do any of the following:

13.1    Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of Beneficiary's security, enter with or without process of law upon and take possession of the Premises, or any part thereof, and do any acts which Beneficiary deems necessary or desirable to preserve the value, marketability or rentability of the Premises, or to increase the income therefrom or

16

to protect the security hereof and, with or without taking possession of any of the Premises, sue for or otherwise collect all rents and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees and expenses, upon the Indebtedness, all in such order as Beneficiary may determine. The collection of rents and profits and the application thereof shall not cure or waive any Event of Default or notice thereof or invalidate any act done in response thereto or pursuant to such notice. In furtherance of the foregoing, to the fullest extent permitted by applicable law, following the occurrence of an Event of Default and during the continuance thereof, Beneficiary shall have the right to apply to a court of competent jurisdiction for and obtain appointment of a receiver of the Premises as a matter of strict right and without regard to the value of the Premises or the adequacy of the security for the Indebtedness, the existence of a declaration that the Indebtedness is immediately due and payable, or the filing of a notice of default, and Trustor hereby consents to such appointment.

13.2    Bring an action in any court of competent jurisdiction to foreclose this instrument or to enforce any of the covenants hereof.

13.3    Elect to sell by power of sale the Premises and, upon such election, such notice of Event of Default and election to sell shall be given as may then be required by law. Thereafter, upon the expiration of such time and the giving of such notice of sale as may then be required by law, at the time and place specified in the notice of sale, Trustee shall sell such Premises, or any portion thereof specified by Beneficiary, at public auction to the highest bidder for cash in lawful money of the United States. Trustee may, and upon request of Beneficiary shall, from time to time, postpone the sale by public announcement thereof at the time and place noticed therefor. If the Premises consists of several lots, parcels or interests, Beneficiary may designate the order in which the same shall be offered for sale or sold. Trustor waives all rights to direct the order in which any of the Premises will be sold in the event of any sale under this Deed of Trust, and also any of right to have any of the Premises marshaled upon any sale. In the case of a sale under this Deed of Trust, the said property, real, personal and mixed, may be sold in one parcel or more than one parcel. Should Beneficiary desire that more than one such sale or other disposition be conducted, Beneficiary may, at its option, cause the same to be conducted simultaneously, or successively on the same day, or at such different days or times and in such order as Beneficiary may deem to be in its best interest. Any person, including Trustor, Trustee or Beneficiary, may purchase at the sale. Upon any sale, Trustee shall execute and deliver to the purchaser or purchasers a deed or deeds conveying the Premises so sold, but without any covenant or warranty whatsoever, express or implied, whereupon such purchaser or purchasers shall be let into immediate possession. Beneficiary, from time to time before the trustee's sale pursuant to this Section, may rescind any notice of Event of Default and of election to cause to be sold the Premises by executing and delivering to Trustee a written notice of such rescission, which notice, shall also constitute a cancellation of any prior Event of Default and demand for sale. The exercise by Beneficiary of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring or impair the right of Beneficiary to execute and deliver to Trustee, as above provided, other declarations of default and demand for sale, and notices of breach or default, nor otherwise affect any provision, covenant or condition of the Note and/or of this Deed of Trust or any of the rights, obligations or remedies of the parties thereunder or hereunder. In furtherance of the foregoing, the Beneficiary hereby authorizes and empowers the Trustee to take possession of any or all of the Premises and to sell (and in

17

case of any default of any purchaser, resell) any or all of it or any estate or interest therein in accordance with the provisions of the law of the District of Columbia, and/or of any other public or local law relating to or affecting deeds of trust or security agreements, including any amendments thereof or additions thereto (and Trustor hereby declares its assent to the passing of a decree for the sale of any or all of the Premises or any estate or interest therein by any equity court having jurisdiction over the sale of property). Neither the foregoing assent to decree nor the foregoing power of sale shall be exhausted if such proceeding or sale is dismissed or cancelled before the Indebtedness is paid in full.

13.4 Apply any sums then held in escrow or otherwise by Beneficiary in accordance with the terms of this Deed of Trust or any other Loan Document to the payment of the Indebtedness.

13.5 Exercise all rights available to Trustor under the Code.

13.6 Exercise each of its other rights and remedies under this Deed of Trust or any other Loan Documents.

13.7 Except as otherwise required by law, apply the proceeds of any foreclosure or disposition hereunder to payment of the following: (i) the expenses of such foreclosure or disposition, including, without limitation, the fees of Trustee and the costs of the Tests and Studies (hereinafter defined), (ii) the cost of any search or other evidence of title procured in connection therewith and revenue stamps on any deed or conveyance, (iii) all sums expended under the terms hereof, not then repaid, with accrued interest in the amount provided herein, (iv) all other sums secured hereby, and (v) the remainder, if any, to the person or persons legally entitled thereto.

13.8 Upon any sale or sales made under or by virtue of this Section, whether made under the power of sale or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Beneficiary may bid for and acquire the Premises or any part thereof. In lieu of paying cash for the Premises, Beneficiary may make settlement for the purchase price by crediting against the Indebtedness the sales price of the Premises, as adjusted for the expenses of sale and the costs of the action and any other sums for which Trustor is obligated to reimburse Trustee or Beneficiary under this Deed of Trust.

13.9 In the event that Trustor has an equity of redemption and the Premises is sold pursuant to the power of sale or otherwise under or by virtue of this Section, the purchaser may, during any redemption period allowed, make such repairs or alterations (but not additions) on said Premises as may be reasonably necessary for the proper operation, care, preservation, protection and insuring thereof. Any sums so paid together with interest thereon from the time of such expenditures at the Default Rate (if not prohibited by law, otherwise at the highest lawful contract rate) shall be added to and become a part of the amount required to be paid for redemption from such sale.

14 Beneficiary's Right of Possession in Case of Default . At any time after an Event of Default has occurred, Trustor shall, upon demand of Beneficiary, surrender to Beneficiary possession of the Premises. Beneficiary, in its discretion, may, with process of law, enter upon and take and maintain possession of all or any part of the Premises, together with all documents, books, records, papers and accounts relating thereto, and may exclude Trustor and its employees, agents or servants therefrom, and Beneficiary may then hold, operate, manage and control the Premises, either

18

personally or by its agents. Beneficiary shall have full power to use such measures, legal or equitable, as in its discretion may be deemed proper or necessary to enforce the payment or security of the avails, rents, issues, and profits of the Premises, including actions for the recovery of rent, actions in forcible detainer and actions in distress for rent. Without limiting the generality of the foregoing, Beneficiary shall have full power to:

14.1 cancel or terminate any lease or sublease for any cause or on any ground which would entitle Trustor to cancel the same; and

14.2 elect to disaffirm any lease or sublease which is then subordinate to the lien hereof; and

14.3 extend or modify any then-existing leases and to enter into new leases, which extensions, modifications and leases may provide for terms to expire, or for options to lessees to extend or renew terms to expire, beyond the Maturity Date and beyond the date of the issuance of a deed or deeds to a purchaser or purchasers at a foreclosure sale, it being understood and agreed that any such leases, and the options or other such provisions to be contained therein, shall be binding upon Trustor and all persons whose interests in the Premises are subject to the lien hereof and upon the purchaser or purchasers at any foreclosure sale, notwithstanding any redemption from sale, discharge of the Indebtedness, satisfaction of any foreclosure judgment, or issuance of any certificate of sale or deed to any purchaser; and

14.4 make any repairs, renewals, replacements, alterations, additions, betterments and improvements to the Premises as Beneficiary deems are necessary; and

14.5 insure and reinsure the Premises and all risks incidental to Beneficiary's possession, operation and management thereof; and

14.6 receive all of such avails, rents, issues and profits.

15 Application of Income Received by Beneficiary . To the extent permitted by applicable law, Beneficiary, in the exercise of the rights and powers hereinabove conferred upon it, shall have full power to use and apply the avails, rents, issues and profits of the Premises to the payment of or on account of the following, in such order as Beneficiary may determine:

15.1 to the payment of the operating expenses of the Premises, including cost of management and leasing thereof (which shall include compensation to Beneficiary and its agent or agents, if management be delegated to an agent or agents, and shall also include lease commissions and other compensation and expenses of seeking and procuring tenants and entering into leases), established claims for damages, if any, and premiums on insurance hereinabove authorized; and

15.2 to the payment of taxes and special assessments now due or which may hereafter become due on the Premises; and

15.3 to the payment of any Indebtedness, including any deficiency which may result from any foreclosure sale.

16 Rights Cumulative . Each right, power and remedy herein conferred upon Beneficiary is cumulative and in addition to every other right, power or remedy, express or implied, given now or

19

hereafter existing under any of the Loan Documents or at law or in equity, and each and every right, power and remedy herein set forth or otherwise so existing may be exercised from time to time as often and in such order as may be deemed expedient by Beneficiary, and the exercise or the beginning of the exercise of one right, power or remedy shall not be a waiver of the right to exercise at the same time or thereafter any other right, power or remedy, and no delay or omission of Beneficiary in the exercise of any right, power or remedy accruing hereunder or arising otherwise shall impair any such right, power or remedy, or be construed to be a waiver of any Event of Default or acquiescence therein.

17      <u>Beneficiary's Right of Inspection</u> . In addition to Beneficiary's other inspection rights under this Deed of Trust, Beneficiary and its representatives shall have the right to inspect the Premises and the books and records with respect thereto at all reasonable times, and access thereto, subject to the rights of tenants in possession, shall be permitted for that purpose.

18      <u>Release Upon Payment and Discharge of Trustor's Obligations</u> . Beneficiary shall release this Deed of Trust and the lien hereof by proper instrument upon payment and discharge of all indebtedness, including payment of all reasonable expenses incurred by Beneficiary in connection with the execution of such release.

19      <u>Notices</u> . Any notices, demands, requests, communications and waivers under this Deed of Trust shall be in writing and shall be (i) delivered in person, (ii) mailed, postage prepaid, either by registered or certified mail, return receipt requested, (iii) by overnight express carrier, addressed in each case as follows, or (iv) by confirmed facsimile transmission, so long as a duplicate copy of such notice is also sent by one of the other permitted forms of delivery:

         19.1 If to Trustor:      5410 30th Street DC LLC,
                                       a Maryland Limited Liability Company
                                         12138 Central Avenue, Suite 388,
                                         Bowie, Maryland 20721
                                         Attn: Zanetta Marie Williams

         19.2 If to Trustee:      First American TR Services of D.C., LLC
                                         1850 K Street NW, Ste 1050,
                                         Washington, DC 20006

         19.3 If to Beneficiary:      FTF Lending, LLC,
                                         a Delaware Limited Liability Company
                                         1300 E. 9th Street, Cleveland, OH 44114
                                         Attn: Matthew Rodak, Chief Executive Officer

or to any other address as to any of the parties hereto, as such party shall designate in a written notice to the other party hereto. All notices sent pursuant to the terms of this Section shall be deemed received (i) if personally delivered, then on the date of delivery or refusal to accept delivery, (ii) if sent by overnight, express carrier, then on the next federal banking day immediately following the day sent, (iii) if sent by registered or certified mail, then on the earlier of the third federal banking day following the day sent or when actually received or (iv) if sent by facsimile, then on the date of such transmission.

20      <u>Waiver of Rights</u> . The Trustor hereby covenants and agrees that it will not at any time insist upon or plead, or in any manner claim or take any advantage of, any stay, exemption or extension law or

any so-called "Moratorium Law" now or at any time hereafter in force providing for the valuation or appraisement of the Premises, or any part thereof, prior to any sale or sales thereof to be made pursuant to any provisions herein contained, or to decree, judgment or order of any court of competent jurisdiction; or, after such sale or sales, claim or exercise any rights under any statute now or hereafter in force to redeem the property so sold, or any part thereof, or relating to the marshalling thereof, upon foreclosure sale or other enforcement hereof; and without limiting the foregoing:

20.1 To the extent permitted by law, the Trustor hereby expressly waives any and all rights of reinstatement and redemption, if any, under any order or decree of foreclosure of this Deed of Trust, on its own behalf and on behalf of each and every person, it being the intent hereof that any and all such rights of reinstatement and redemption of the Trustor and of all other persons are and shall be deemed to be hereby waived; and

20.2 The Trustor will not invoke or utilize any such law or laws or otherwise hinder, delay or impede the execution of any right, power, or remedy herein or otherwise granted or delegated to the Beneficiary but will suffer and permit the execution of every such right, power and remedy as though no such law or laws had been made or enacted; and

20.3 If the Trustor is a trustee, Trustor represents that the provisions of this Section (including the waiver of reinstatement and redemption rights) were made at the express direction of Trustor's beneficiaries and the persons having the power of direction over Trustor, and are made on behalf of the trust estate of Trustor and all beneficiaries of Trustor, as well as all other persons mentioned above; and

20.4 To the full extent Trustor may do so, Trustor agrees that Trustor will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for any appraisement, valuation, stay, extension or redemption, and Trustor, for Trustor, Trustor's heirs, devisees, representatives, successors and assigns, and for any and all persons ever claiming any interest in the Premises, to the extent permitted by applicable law, hereby waives and releases all rights of redemption, valuation, appraisement, stay of execution, notice of intention to mature or declare due the whole of the secured indebtedness, notice of election to mature or declare due the whole of the secured indebtedness and all rights to a marshaling of assets of Trustor, including the Premises, or to a sale in inverse order of alienation in the event of foreclosure of the liens and/or security interests hereby created. Trustor shall not have or assert any right under any statute or rule of law pertaining to the marshaling of assets, sale in inverse order of alienation, the exemption of homestead, the administration of estates of decedents, or other matters whatever to defeat, reduce or affect the right of Beneficiary under the terms of this Deed of Trust to a sale of the Premises for the collection of the secured indebtedness without any prior or different resort for collection, or the right of Beneficiary under the terms of this Deed of Trust to the payment of the secured indebtedness out of the proceeds of sale of the Premises in preference to every other claimant whatever.

21      Expenses Relating to Note and Deed of Trust

21.1 Trustor will pay all reasonable expenses, charges, costs and fees relating to the Loan or necessitated by the terms of the Note, this Deed of Trust or any of the other Loan Documents, including without limitation, Beneficiary's reasonable attorneys' fees in connection with the negotiation, documentation, administration, servicing and enforcement

21

of the Note, this Deed of Trust and the other Loan Documents, all filing, registration and recording fees, all other expenses incident to the execution and acknowledgment of this Deed of Trust and all federal, state, county and municipal taxes, and other taxes (provided Trustor shall not be required to pay any income or franchise taxes of Beneficiary), duties, imposts, assessments and charges arising out of or in connection with, the execution and delivery of the Note, this Deed of Trust, and any of the other Loan Documents. Trustor recognizes that, during the term of this Deed of Trust, Beneficiary:

21.1.1 May be involved in court or administrative proceedings, including, without restricting the foregoing, foreclosure, probate, bankruptcy, creditors' arrangements, insolvency, housing authority and pollution control proceedings of any kind, to which Beneficiary shall be a party by reason of the Loan Documents or in which the Loan Documents or the Premises are involved directly or indirectly; or

21.1.2 May make preparations following the occurrence of an Event of Default hereunder for the commencement of any suit for the foreclosure hereof, which may or may not be actually commenced; or

21.1.3 May make preparations following the occurrence of an Event of Default hereunder for, and do work in connection with, Beneficiary's taking possession of and managing the Premises, which event may or may not actually occur; or

21.1.4 May make preparations for and commence other private or public actions to remedy an Event of Default hereunder, which other actions may or may not be actually commenced; or

21.1.5 May enter into negotiations with Trustor or any of its agents, employees or attorneys in connection with the existence or curing of any Event of Default hereunder, the sale of the Premises, the assumption of liability for any of the Indebtedness or the transfer of the Premises in lieu of foreclosure; or

21.1.6 May enter into negotiations with Trustor or any of its agents, employees or attorneys pertaining to Beneficiary's approval of actions taken or proposed to be taken by Trustor which approval is required by the terms of this Deed of Trust.

21.2 All expenses, charges, costs and fees described in this Section shall be so much additional Indebtedness, shall bear interest from the date so incurred until paid at the Default Rate and shall be paid, together with said interest, by Trustor forthwith upon demand.

22 Further Instruments . Upon request of Beneficiary, Trustor shall execute, acknowledge and deliver all such additional instruments and further assurances of title and shall do or cause to be done all such further acts and things as may reasonably be necessary fully to effectuate the intent of the Note, this Deed of Trust, and any of the other Loan Documents.

23 Indemnity . Trustor hereby covenants and agrees that no liability shall be asserted or enforced against Beneficiary in the exercise of the rights and powers granted to Beneficiary in this Deed of Trust, and Trustor hereby expressly waives and releases any such liability. Trustor shall indemnify and save Beneficiary harmless from and against any and all liabilities, obligations, losses, damages, claims, costs and expenses (including reasonable attorneys' fees and court costs) (collectively, the

22

" Claims ") of whatever kind or nature which may be imposed on, incurred by, or asserted against Beneficiary at any time by any third party which relate to or arise from: (a) any suit or proceeding (including probate and bankruptcy proceedings), or the threat thereof, in, or to which Beneficiary may or does become a party, either as plaintiff or as a defendant, by reason of this Deed of Trust or for the purpose of protecting the lien of this Deed of Trust; (b) the offer for sale or sale of all or any portion of the Premises; and (c) the ownership, leasing, use, operation or maintenance of the Premises, if such Claims relate to or arise from actions taken prior to the surrender of possession of the Premises to Beneficiary in accordance with the terms of this Deed of Trust; provided, however, that Trustor shall not be obligated to indemnify or hold Beneficiary harmless from and against any Claims directly arising from the gross negligence or willful misconduct of Beneficiary. All costs provided for herein and paid for by Beneficiary shall be so much additional Indebtedness and shall become immediately due and payable upon demand by Beneficiary and with interest thereon from the date incurred by Beneficiary until paid at the Default Rate.

24      Compliance with Environmental Laws

24.1    Trustor covenants and agrees, at Trustor's sole cost and expense, to indemnify, defend (at trial and appellate levels, and with attorneys, consultants and experts reasonably acceptable to Beneficiary), and hold Beneficiary harmless from and against any and all liens, damages (including, without limitation, consequential damages), losses, liabilities, obligations, settlement payments, penalties, claims, judgments, suits, proceedings, costs, disbursements or expenses of any kind or of any nature whatsoever (including reasonable attorneys', consultants' and experts' fees and disbursements actually incurred in investigating, defending, settling or prosecuting any claim, litigation or proceeding) which may at any time be imposed upon, incurred by or asserted against Beneficiary or the Premises, and arising directly or indirectly from or out of: (i) the past, present or future presence, release or threat of release of any hazardous substances on, in, under or affecting all or any portion of the Premises or any surrounding areas, regardless of whether or not caused by or within the control of any Trustor; or (ii) the past, present or future violation of any environmental laws, relating to or affecting the Premises, whether or not caused by or within the control of Trustor.

24.2    Trustor hereby authorizes Beneficiary, any prospective bidder at any foreclosure sale and their respective officers, directors, employees, agents and independent contractors to enter upon all or any portion of the Premises (including, without limitation, following the occurrence of a default hereunder) for the purpose of conducting such tests, inspections, inquiries, examinations, studies, analyses, samples, surveys, and other information gathering activities (collectively, the " Tests and Studies ") with respect to the Premises as any of them may from time to time deem necessary or appropriate, including, without limitation, Tests and Studies with respect to the presence of Hazardous Materials (as defined in the Indemnity) in or around the Premises and the occurrence of any actual, proposed or threatened storage, existence, release, removal, remediation, handling or transportation of any Hazardous Substances (as defined in the Indemnity) in or around the Premises.  Except in case of an emergency, or when the Trustor or any tenant has abandoned the Premises, or if it is impracticable to do so, Beneficiary shall give Trustor reasonable advance notice of Beneficiary's intent to enter the Premises and shall enter the Premises only during normal business hours. Trustor hereby covenants and agrees to cooperate fully with such parties in their efforts to conduct the Tests and Studies, and further covenants and agrees to make available to such parties such portions of the Premises as any of them may designate.  If Beneficiary is refused the right of entry and inspection

23

by the Trustor or any tenant of the Premises, or is otherwise unable to enter and conduct Tests and Studies on the Premises without a breach of peace, Beneficiary may obtain an order from a court of competent jurisdiction, the appointment of a receiver, or both, to enable Beneficiary to exercise its rights under this Section. The decision of Beneficiary as to whether there exists a release or threatened release of Hazardous Substances onto the Premises shall be deemed reasonable and conclusive as between the parties hereto. The results of all Tests and Studies shall be and at all times remain the property of Beneficiary and under no circumstances shall Beneficiary have any obligation whatsoever to disclose or otherwise make available to Trustor or any other party such results or any other information obtained by them in connection with such Tests and Studies.

24.3    Notwithstanding the provisions of Subsection (a) above, Beneficiary hereby reserves the right, and Trustor hereby expressly authorizes Beneficiary to make available to any party (including, without limitation, any governmental agency or authority and any prospective bidder at any foreclosure sale of the Premises), any and all information which Beneficiary may have with respect to the Premises, whether provided by Trustor or any third party or obtained as a result of Tests and Studies, including, without limitation, environmental reports, surveys and engineering reports. Trustor consents to Beneficiary notifying any party (either as part of a notice of sale or otherwise) of the availability of any or all of the Tests and Studies and the information contained therein. Trustor acknowledges that Beneficiary cannot control or otherwise assure the truthfulness or accuracy of the Tests and Studies, and that the release of Tests and Studies, or any information contained therein, to prospective bidders at any foreclosure sale of the Premises may have a material and adverse effect upon the amount which a party may bid at such sale. Trustor agrees that Beneficiary shall have no liability whatsoever as a result of delivering any or all of the Tests and Studies or any information contained therein to any third party, and Trustor hereby releases, remises and forever discharges Beneficiary from any and all claims, damages, or causes of action, arising out of, connected with or incidental to the Tests and Studies or the delivery thereof.

24.4    All costs and expenses incurred by Beneficiary pursuant to this Section, including, without limitation, costs of consultants and contractors, costs of repair of any physical injury to the Premises normal and customary to the Tests and Studies, court costs and reasonable attorneys' fees, whether incurred in litigation or not and whether before or after judgment, shall be payable by Trustor and, to the extent advanced or incurred by Beneficiary, shall be reimbursed to Beneficiary by Trustor upon demand. Any and all costs and expenses incurred or advanced by Beneficiary pursuant to this Section, together with interest thereon at the rate then applicable under the Note, shall be secured by this Deed of Trust and shall enjoy the same priority as the original principal amount of the Note.

25    Miscellaneous .

25.1    Successors and Assigns. This Deed of Trust and all provisions hereof shall be binding upon and enforceable against Trustor and its assigns and other successors. This Deed of Trust and all provisions hereof shall inure to the benefit of Beneficiary, its successors and assigns and any holder or holders, from time to time, of the Note.

25.2    Invalidity of Provisions; Governing Law. In the event that any provision of this Deed of Trust is deemed to be invalid by reason of the operation of law, or by reason of the interpretation placed thereon by any administrative agency or any court, Trustor and

24

Beneficiary shall negotiate an equitable adjustment in the provisions of the same in order to effect, to the maximum extent permitted by law, the purpose of this Deed of Trust, and the validity and enforceability of the remaining provisions, or portions or applications thereof, shall not be affected thereby and shall remain in full force and effect. This Deed of Trust is to be construed in accordance with and governed by the laws of the District of Columbia.

25.3     Beneficiary in Possession. Nothing herein contained shall be construed as constituting Beneficiary a mortgagee in possession in the absence of the actual taking of possession of the Premises by Beneficiary pursuant to this Deed of Trust.

25.4     Relationship of Beneficiary and Trustor. Beneficiary shall in no event be construed for any purpose to be a partner, joint venturer, agent or associate of Trustor or of any lessee, operator, concessionaire or licensee of Trustor in the conduct of their respective businesses, and, without limiting the foregoing, Beneficiary shall not be deemed to be such partner, joint venturer, agent or associate on account of Beneficiary becoming a mortgagee in possession or exercising any rights pursuant to this Deed of Trust, any of the other Loan Documents, or otherwise. The relationship of Trustor and Beneficiary hereunder is solely that of debtor/creditor.

25.5     Time of the Essence. Time is of the essence of the payment by Trustor of all amounts due and owing to Beneficiary under the Note and the other Loan Documents and the performance and observance by Trustor of all terms, conditions, obligations and agreements contained in the Note, this Deed of Trust, and the other Loan Documents.

25.6     No Merger. The parties hereto intend that this Deed of Trust and the lien hereof shall not merge in fee simple title to the Premises, and if Beneficiary acquires any additional or other interest in, or to the Premises or the ownership thereof, then, unless a contrary intent is manifested by Beneficiary as evidenced by an express statement to that effect in an appropriate document duly recorded, this Deed of Trust and the lien hereof shall not merge in the fee simple title and this Deed of Trust may be foreclosed as if owned by a stranger to the fee simple title.

25.7     Consent to Jurisdiction. TO INDUCE BENEFICIARY TO ACCEPT THE NOTE, TRUSTOR IRREVOCABLY AGREES THAT, SUBJECT TO BENEFICIARY'S SOLE AND ABSOLUTE ELECTION, ALL ACTIONS OR PROCEEDINGS IN ANY WAY ARISING OUT OF OR RELATED TO THE NOTE AND THIS DEED OF TRUST WILL BE LITIGATED IN COURTS HAVING SITUS IN THE DISTRICT OF COLUMBIA. TRUSTOR HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY COURT LOCATED WITHIN THE DISTRICT OF COLUMBIA, WAIVES PERSONAL SERVICE OF PROCESS UPON TRUSTOR, AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY REGISTERED MAIL DIRECTED TO TRUSTOR AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE WILL BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT.

25.8     Waiver of Jury Trial. TRUSTOR AND BENEFICIARY (BY ACCEPTANCE HEREOF), HAVING BEEN REPRESENTED BY COUNSEL EACH KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS (a) UNDER THIS DEED OF TRUST OR ANY OTHER LOAN DOCUMENT OR ANY RELATED AGREEMENT

OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION WITH THIS DEED OF TRUST OR (b) ARISING FROM ANY BANKING RELATIONSHIP EXISTING IN CONNECTION WITH THIS DEED OF TRUST, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. TRUSTOR AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST BENEFICIARY OR ANY OTHER PERSON INDEMNIFIED UNDER THIS DEED OF TRUST ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.

25.9    Complete Agreement. This Deed of Trust, the Note and the other Loan Documents constitute the complete agreement between the parties with respect to the subject matter hereof and the same may not be modified, altered or amended except by an agreement in writing signed by both Trustor and Beneficiary.

26    Additional Agreements .

26.1    Beneficiary may substitute the trustee hereunder in any manner now or hereafter provided by law or, in lieu thereof, Beneficiary may from time to time, by an instrument in writing, substitute a successor or successors to any trustee named herein or acting hereunder, which instrument, executed and acknowledged by Beneficiary and recorded in the Land Records of the District of Columbia, shall be conclusive proof of proper substitution of such successor trustee, who shall thereupon and without conveyance from the predecessor trustee, succeed to all its title, estate, rights, powers and duties.

26.2    It is expressly stipulated and agreed to be the intent of Beneficiary and Trustor, at all times to comply with applicable laws governing the highest lawful rate or amount of interest payable on the Loan (or applicable United States federal law to the extent that it permits Beneficiary to contract for, charge, take, reserve or receive a greater amount of interest than under applicable law). If the applicable law is ever judicially interpreted so as to render usurious any amount called for under this Deed of Trust, the Note, or under any of the other Loan Documents, or contracted for, charged, taken, reserved or received with respect to the Loan, or if Beneficiary's exercise of the option to accelerate the maturity of the Note or if any prepayment by Trustor results in Trustor having paid any interest in excess of that permitted by applicable law, then it is Trustor's and Beneficiary's express intent that all excess amounts theretofore collected by Beneficiary be credited on the principal balance of the Note (or, if the Note and all other obligations have been or would thereby be paid in full, refunded to Trustor), and the provisions of this Deed of Trust, the Note and the other Loan Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid or agreed to be paid to Beneficiary for the use, forbearance or detention of the Loan shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the Loan until payment in full, so that the rate or amount of interest on account of the Loan does not exceed the usury ceiling from time to time in effect and applicable to the Loan for so long as the Loan is outstanding. Notwithstanding anything to the contrary contained herein, in the Note, or in any of the other Loan Documents, it is not the intention of Beneficiary to accelerate the maturity of any interest

26

5410 30th Street DC LLC. a Maryland Limited Liability Company
FTF_158847_71928 Tranche

that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

27    Future Advances . This Deed of Trust shall secure not only existing indebtedness, but also such future advances, whether such advances are obligatory or to be made at the option of Beneficiary, or otherwise, to the same extent as if such future advances were made on the date of the execution of this Deed of Trust. Any such future advances, whether obligatory or to be made at the option of the Beneficiary, or otherwise, may be made either prior to or after the due date of the Note or any other notes secured by this Deed of Trust. This Deed of Trust is given for the specific purpose of securing any and all indebtedness by the Trustor to Beneficiary (but in no event shall the secured indebtedness exceed at any time the maximum principal amount set forth in this Section) in whatever manner this indebtedness may be evidenced or represented, until this Deed of Trust is satisfied of record. All covenants and agreements contained in this Deed of Trust shall be applicable to all further advances made by Beneficiary to Trustor under this future advance clause.

28    Commercial Purposes . Trustor certifies that the purpose of this loan is solely to acquire or carry on a business or investment, to wit, the purchase of the subject property as an investment, and not for personal or consumer uses; and that prior to the execution of this trust Trustor has received a fully executed agreement as to the contractual rate of interest relating to the transaction.

29    Cross-Collateralization . In addition to the Note, this Deed of Trust secures all obligations, debts and liabilities, plus interest thereon, of either Trustor to Beneficiary, or any one or more of them, as well as all claims by Beneficiary against Trustor, or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Trustor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party, or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

30    Due on Sale – Consent by Beneficiary . Beneficiary may, at Beneficiary's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Beneficiary's prior written consent, of all or any part of the Premises, or any interest in the Premises. A "sale or transfer" means the conveyance of the Premises or any right, title, or interest in the Premises; whether legal, beneficial, or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than 3 years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Premises, or by any other method of conveyance of an interest in the Premises. However, this option shall not be exercised by Beneficiary if such exercise is prohibited by federal law or by District of Columbia law.

31    Appraisal of the Premises . Beneficiary shall have the right to request an appraisal of the Premises compiled by an appraiser selected by Beneficiary as often as Beneficiary reasonably believes is necessary. Trustor shall reimburse Beneficiary for any such appraisal, through Trustor's obligation to do so, absent an Event of Default or some modification to the indebtedness, shall be limited to once annually. Trustor shall cooperate with Beneficiary's appraiser in providing reasonable access to the Premises and such other information as Beneficiary and/or such appraiser reasonably requires for purposes of completing the appraisal. Any such appraisal shall be the property of Beneficiary. Moreover, if any such appraisal demonstrates that there has been a material decline in the value of

27

the Premises such that the loan to value ratio (as defined below) no longer meets Beneficiary's underwriting requirements, Beneficiary reserves the right to demand from Trustor a principal reduction payment in an amount sufficient to reduce the loan to value ratio to meet such guidelines. Failure of Trustor to make such payment within 60 days after demand therefore shall be an additional Event of Default under this Deed of Trust. As used herein, "loan to value ratio" means the ratio of (i) the then outstanding Debt to (ii) the then "as is" appraised value of the Premises.

32      Waiver of Homestead Exemption . To the fullest extent permitted, Trustor hereby releases and waives all rights and benefits of the homestead exemption laws of the District of Columbia as to all indebtedness secured by this Deed of Trust.

33      Further Powers of Foreclosure .

33.1    **In addition to the remedies and powers granted to Beneficiary, if any default is not cured, Beneficiary at its option may require immediate payment in full of all sums secured by this document without further demand and may invoke the power of sale, assent to decree, and/or any other remedies permitted by applicable law. Beneficiary shall be entitled to collect all expenses incurred in pursuing the remedies provided for in this document, including, but not limited to, reasonable attorneys' fees and costs of title evidence. If Beneficiary invokes the power of sale, Beneficiary shall mail or cause Trustee to mail a notice of sale to Trustor in the manner prescribed by applicable law. Trustee shall give notice of sale by public advertisement and by such other means as required by applicable law. Trustee, without demand on Trustor, shall sell the Premises at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Premises by public announcement at the time and place of any previously scheduled sale and by notice to any other persons as required by applicable law. Beneficiary or its designee may purchase the Premises at any sale. Trustee shall deliver to the purchaser Trustee's deed conveying the Premises without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 5.000% of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this document; and (c) any excess to the person or persons legally entitled to it.**

**THIS IS A BALLOON DEED OF TRUST AND THE FINAL PRINCIPAL PAYMENT OF THE PRINCIPAL BALANCE DUE UPON MATURITY IS $ 2,222,000.00 TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE BENEFICIARY UNDER THE TERMS OF THIS AGREEMENT.**

END OF PAGE – SIGNATURE PAGE TO FOLLOW

28

5410 30th Street DC LLC. a Maryland Limited Liability Company
FTF_158847_71928 Tranche

IN WITNESS WHEREOF, the Trustor, by and through Trustor's authorized signatory, has executed and delivered this Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement to the Beneficiary on May 3, 2023.

TRUSTOR:
5410 30th Street DC LLC, a Maryland Limited Liability Company

By: Zanetta Marie Williams
Its: Sole Member and Manager

## NOTARIAL CERTIFICATE

STATE OF _Maryland_ )
                                       ) SS:
COUNTY OF _Anne Arundel_ )

Before me, a Notary Public in and for said State, personally appeared the Trustor, 5410 30th Street DC LLC, a Maryland Limited Liability Company, by and through its Sole Member and Manager , Zanetta Marie Williams, who proved to me to be he/she whose name is signed on this Instrument, who acknowledged before me that he/she signed this Instrument as his/her free and voluntary act(s) and deed(s) for the use(s) and purpose(s) mentioned in this Instrument, and who on oath stated that he/she is authorized to execute this Instrument and in fact executed this Instrument in his/her authorized capacity on behalf of the Trustor.

In testimony whereof, I have hereunto set my hand and official seal in _Anne Arundel County, Maryland_ (City and State) on this _3rd_ day of _May_ , 20 _23_ .

Notary Public

My commission expires 6/22/2025

[NOTARIAL SEAL]

_____ Personally known    _✓_ Personal identification
                                    Type of identification produced _Driver's License_

CHERYL L. LATHAM
NOTARY PUBLIC
CALVERT COUNTY, MD

29

**EXHIBIT A**

File No.: 23-4932-DC

**LEGAL DESCRIPTION**

ALL that certain lot, parcel or tract of land, situate and lying in the City/County of District of Columbia, State of District of Columbia, and being more particularly described as follows:

All that certain lot or parcel of land together with all the improvements thereon located and being in the City of Washington in the District of Columbia and being more particularly described as follows:

Lot numbered Forty-three (0043) in Square numbered One Thousand Four Hundred Forty-six (1446) in a subdivision by Zoran Dragacevac and Snezana Mitrovic Living Trust, as per plat recorded in the Office of the Surveyor for the District of Columbia in Plat Book 220 at Page 24.

For informational purposes only: Being premises known as 5631 MacArthur Boulevard, NW, Washington, DC 20016

For informationational purposes only: The improvements thereon being commonly referred to as 5631 MacArthur Boulevard Northwest,Washington, DC,20016.

Tax ID #1446- -0043



**Government of the
District of Columbia**
Office of Tax and
Revenue Recorder
of Deeds
**1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374**

## SECURITY AFFIDAVIT — CLASS 1

| 1446 | | 0043 |
|---|---|---|
| **Square** | **Suffix** | **Lot** |

I, (We) | 5410 30th Street DC LLC | the owner(s) of the real property described within certify, subject to criminal penalties for making false statements pursuant to section 22-2405 of the District of Columbia Official Code, that the real property described within is Class 1 Property, as that class of property is established pursuant to section 47-813, with 5 or fewer units:

_Signature_

_Signature_

Subscribed to and sworn to before me this | 3rd | day of | May |, 20 | 23 |.

_Notary Public_

CHERYL L. LATHAM
NOTARY PUBLIC
CALVERT COUNTY, MD

My Commission Expires: | 4/22/2025 |
_mmddyyyy_

Form ROD 21 (Rev. 10/2018)

**Doc #: 2023039109**
**Filed & Recorded**
**05/10/2023 01:46 PM**
**IDA WILLIAMS**
**RECORDER OF DEEDS**
**WASH DC RECORDER OF DEEDS**
  **RECORDING FEES**           **$150.00**

  **SURCHARGE**           **$6.50**
**TOTAL:**           **$156.50**

## ENDORSEMENT AND ALLONGE

THIS ENDORSEMENT AND ALLONGE IS TO BE ATTACHED TO AND MADE AN INTEGRAL PART OF THE FOLLOWING:

| | |
|---|---|
| Instrument: | Promissory Note |
| Date: | 05/03/2023 |
| Borrower/Maker: | 5410 30th Street DC<br>A(n) Maryland Limited Liability Company |
| Original Payee: | FTF Lending, LLC,<br>a Delaware limited liability company |
| Original Principal Amount: | $2,222,000.00 |

PAY TO THE ORDER OF IBI SBL INVESTMENT LP, a Delaware Limited Partnership, 2711 Centerville Road, Wilmington, DE 19808, its successors and/or assigns WITHOUT RECOURSE AND WITHOUT REPRESENTATION OR WARRANTY, EXPRESS, IMPLIED, OR BY OPERATION OF LAW, OF ANY KIND AND NATURE WHATSOEVER.

The effective date of this Endorsement and Allonge is 03/06/2024.

FTF LENDING, LLC,
a Delaware limited liability company

By:     Nolan Helline

Its:     Authorized Agent and Signatory

By:     Nolan Helline
Its:     Capital Markets Financial Analyst

Borrower: 5410 30th Street DC
Loan: FTF_158847_71928
Property: 5631 MacArthur BLVD, Washington, DC, 20016

THIS DOCUMENT WAS PREPARED BY:

FTF Lending LLC,
A Delaware Limited Liability Company
1300 E. 9th St., Suite 800
Cleveland, Ohio 44114
(646) 895-6090
Preparer: Sarah Wheeler

UPON RECORDATION, PLEASE RETURN TO:

FTF Lending LLC,
A Delaware Limited Liability Company
1300 E. 9th St., Suite 800
Cleveland, Ohio 44114
(646) 895-6090

ADDRESS:     5631 MacArthur BLVD, Washington, DC, 20016
COUNTY:      District Of Columbia
LOAN ID:     FTF_71928

## ASSIGNMENT OF
## MORTGAGE/DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING AND SECURITY AGREEMENT

FTF LENDING, LLC, a Delaware limited liability company (the "Assignor"), having an address of 1300 E. 9th St., Suite 800, Cleveland, Ohio 44114, for value received, hereby sells, transfers, assigns, and conveys to IBI SBL INVESTMENT LP, a(n) Delaware Limited Partnership (the "Assignee"), 2711 Centerville Road, Wilmington DE 19808, without recourse or warranty, express or implied, all of Assignor's right, title and interest in that certain:

Mortgage/Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Mortgage") dated 05/03/2023, executed by 5410 30th Street DC., a(n) Maryland Limited Liability Company, delivered to FTF Lending, LLC, a Delaware limited liability company, and recorded in the County of ___District of Columbia___, State of __Washington, DC__ on _05_/_10_/_2023_ in Instrument # _2023039109_____, Book #_____, Page #_____. The Mortgage refers to that certain lot, tract, parcel, or piece of ground described on Exhibit A attached hereto (the "Property") and secures a certain commercial loan in the original principal amount of $2,222,000.00.

This Assignment is made without recourse and without representation or warranty, express, implied, or by operation of law, of any kind and nature whatsoever by the Assignor.

IN WITNESS WHEREOF, the Assignor, by and through Assignor's authorized signatory, has executed this Assignment with an effective date of 03/06/2024.

[END OF PAGE – SIGNATURES TO FOLLOW]

ASSIGNOR:
FTF LENDING, LLC.
a Delaware limited liability company

By:     Nolan Helline
Its:    Authorized Agent and Signatory

By:     Nolan Helline
Its:    Capital Markets Financial Analyst

ACKNOWLEDGEMENT

STATE OF OHIO          )
                       ) SS:
COUNTY OF CUYAHOGA )

Before me, a Notary Public in and for said State, personally appeared the Assignor, FTF Lending, LLC, a Delaware limited liability company, by and through its Authorized Agent and Signatory, Nolan Helline, Capital Markets Financial Analyst, who proved to me through satisfactory evidence of identification, which was [check one]: ___ photo identification; ___ credible witness; or _✓_ personal knowledge, to be the Assignor whose name is signed on this Instrument, who acknowledged to me that the Assignor signed this Instrument as the Assignor's free and voluntary act(s) and deed(s) for the use(s) and purpose(s) mentioned in this Instrument, and who on oath stated that Nolan Helline, Capital Markets Financial Analyst is authorized to execute this Instrument and in fact executed this Instrument on behalf of FTF Lending, LLC, an Delaware limited liability company, in its capacity as Authorized Agent and Signatory of the Assignor. In testimony whereof, I have hereunto set my hand and official seal in Cleveland, Ohio on this __14__ day of __March__, __2024__.

Notary Public
State of Ohio

CHRISTINE MARIE MALEK
Notary Public
State of Ohio
My Comm. Expires
August 8, 2027

## EXHIBIT A

LEGAL DESCRIPTION

ALL that certain lot, parcel or tract of land, situate and lying in the City/County of District of Columbia, State of District of Columbia, and being more particularly described as follows:

All that certain lot or parcel of land together with all the improvements thereon located and being in the City of Washington in the District of Columbia and being more particularly described as follows:

Lot numbered Forty-three (0043) in Square numbered One Thousand Four Hundred Forty-six (1446) in a subdivision by Zoran Dragacevac and Snezana Mitrovic Living Trust, as per plat recorded in the Office of the Surveyor for the District of Columbia in Plat Book 220 at Page 24.

For informational purposes only: Being premises known as 5631 MacArthur Boulevard, NW, Washington, DC 20016

For informationational purposes only: The improvements thereon being commonly referred to as 5631 MacArthur Boulevard Northwest,Washington, DC,20016.

Tax ID #1446- -0043

Doc #: 2024028399
Filed & Recorded
03/27/2024 11:44 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
  RECORDING FEES          $25.00
  SURCHARGE              $6.50
TOTAL:                  $31.50

ENDORSEMENT AND ALLONGE

THIS ENDORSEMENT AND ALLONGE IS TO BE ATTACHED TO AND MADE AN
INTEGRAL PART OF THE FOLLOWING:

| | |
|---|---|
| **Instrument:** | Commercial Promissory Note |
| **Date:** | May 3, 2023 |
| **Original Principal Amount:** | $2,222,000.00 |
| **Loan Number:** | FTF_71928 |
| **Borrower/Maker:** | 5410 30th Street DC LLC,<br>a Maryland limited liability company |
| **Original Lender:** | FTF Lending, LLC,<br>an Ohio limited liability company |

PAY TO THE ORDER OF **IBI FALCON US LLC, a Delaware limited liability company,**
ISAOA/ATIMA, WITHOUT RECOURSE AND WITHOUT REPRESENTATION OR
WARRANTY, EXPRESS, IMPLIED, OR BY OPERATION OF LAW, OF ANY KIND AND
NATURE WHATSOEVER.

The effective date of this Endorsement and Allonge is June 30, 2025.

ASSIGNOR:

IBI SBL Investment LP,
a Delaware limited partnership

By:     Gingo Palumbo Law Group LLC,
        an Ohio limited liability company
Its:     Attorney-in-Fact

By:     Anthony J. Gingo
Its:     Co-Managing Member

Collateral: 5631 MacArthur Boulevard NW, Washington, DC 20016

Doc #: 2025067961
07/09/2025 01:51 PM

PREPARED BY AND RETURN TO:

Anthony J. Gingo, Esq.
Gingo Palumbo Law Group LLC
4700 Rockside Road, Suite 440, Independence, Ohio 44131
(216) 503-9511 / anthony@gplawllc.com

ADDRESS:   5631 MacArthur Boulevard NW, Washington DC 20016
PARCEL ID:   1446- -0043
LOAN ID:   FTF_71928

## ASSIGNMENT OF DEED OF TRUST

**IBI SBL INVESTMENT LP, a Delaware limited partnership,** having a mailing address at 2711 Centerville Road, Suite 400, Wilmington DE 19808, ("Assignor") for value received, hereby sells, transfers, assigns, and conveys to **IBI FALCON US LLC, a Delaware limited liability company,** having a mailing address in care of The Corporation Trust Company, 1209 Orange Street, Wilmington DE 19801, ("Assignee") without recourse or warranty, express or implied, all of Assignor's right, title and interest in and to a certain instrument titled Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement ("Deed of Trust") which secures a lien on certain lot(s), tract(s), or parcel(s) described in Exhibit A attached hereto and is further described as follows:

Dated:   May 3, 2023

Original Loan Amount:   $2,222,000.00

Borrower/Mortgagor:   5410 30th Street DC LLC, a Maryland limited liability company

Recording Information:   May 10, 2023, as Document #2023039109
March 27, 2024 as Document #2024028399

.

TOGETHER with the promissory note(s) or obligation(s) described in, and secured by, said Deed of Trust, and the moneys due and to become due thereon; TO HAVE AND TO HOLD the same unto Assignee and to the successors, legal representatives and assigns of Assignee forever.

Assignor hereby represents and warrants that (i) Assignor is the sole legal and equitable owner and holder of the Deed of Trust, (ii) Assignor has full power to sell, transfer, and assign the interest granted by the Deed of Trust; (iii) Assignor has executed no release, discharge, satisfaction, or cancellation of the Deed of Trust or the indebtedness secured thereby; and (iv) Assignor has no interest in the Deed of Trust other than the interest which is being assigned herein.

This Assignment is made without recourse and without representation or warranty, express, implied, or by operation of law, of any kind and nature whatsoever by Assignor. Assignor, by and through Assignor's authorized signatory, has executed this Assignment to be effective as of June 30, 2025.

IN WITNESS WHEREOF, Assignor has caused the foregoing instrument to be executed by its Attorney-in-Fact, Gingo Palumbo Law Group LLC, an Ohio limited liability company, on the 8th day of July, 2025.

ASSIGNOR:

IBI SBL Investment LP,
a Delaware limited partnership

By:     Gingo Palumbo Law Group LLC,
        an Ohio limited liability company
Its:    Attorney-in-Fact

By:     Anthony J. Gingo
Its:    Co-Managing Member

<u>Notarial Certificate</u>

STATE OF OHIO              )
                           ) SS:
COUNTY OF CUYAHOGA         )

The foregoing Instrument was acknowledged before me on July 8, 2025, by Anthony J. Gingo, in his capacity as Co-Managing Member of Gingo Palumbo Law Group LLC, an Ohio limited liability company, in its capacity as Attorney-in-Fact for IBI SBL Investment LP, a Delaware limited partnership.



Attorney Michael J. Palumbo
Resident Mahoning County
Notary Public, State of Ohio
My Commission Has No Expiration Date
Sec 147.03 RC

Notary Public, State of Ohio

**EXHIBIT A**

**LEGAL DESCRIPTION**

All that certain lot, parcel or tract of land, situate and lying in the City/County of District of Columbia, State of District of Columbia, and being more particularly described as follows:

All that certain lot or parcel of land together with all the improvements thereon located and being in the City of Washington in the District of Columbia and being more particularly described as follows:

Lot Numbered Forty-Three (0043) in Square Numbered One Thousand Four Hundred Forty-Six (1446) in a Subdivision by Zoran Dragacevac and Snezana Mitrovic Living Trust, as per Plat recorded in the Office of the Surveyor for the District of Columbia in Plat Book 220 at Page 24.

For informational purposes only: Being premises known as 5631 MacArthur Boulevard, NW, Washington, DC 20016.

For informational purposes only: The improvements thereon being commonly referred to as 5631 MacArthur Boulevard Northwest, Washington, DC 20016.


Address:      5631 MacArthur Boulevard NW, Washington, DC 20016
Parcel ID:    1446- -0043

Doc #: 2025067961
Filed & Recorded
07/09/2025 01:51 PM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
  RECORDING FEES          $25.00
  SURCHARGE              $5.00
TOTAL:                 $30.00

**IBI INVESTMENT HOUSE FALCON**

October 12, 2025

5410 30TH STREET DC LLC
ZANETTA MARIE WILLIAMS
12138 Central Avenue, Suite 388, Bowie, Maryland 20721

Re: $2,222,000.00 Dated: May 3rd, 2023
Property: 5631 MacArthur Boulevard Northwest, Washington, D.C. 20016

Dear Borrower:

On behalf of IBI Falcon US LLC, a Delaware limited liability company (the "Lender"), we are providing you a settlement letter on the above mortgage loan per your request, conditioned on a payoff by October 15, 2025 ("Payoff Date"). Subject to any payment or advancements made or fees incurred, the amounts due to satisfy the mortgage on the payoff date are as follows:

| | |
|---|---|
| Principal | $2,222,000.00 |
| Outstanding interest due from 06/27/2024-10/15/2025 | $365,651.91 |
| Extension fee 1% Until 06/30/2025 | $22,220.00 |
| Forbearance fee 2% | $44,440.00 |
| Extension fee 1% Until 09/30/2025 | $22,220.00 |

Total                                                              $2,676,531.91

There shall be an adjustment for the per-diem amount of 1,481.33$ per day for later payment. This settlement letter is subject to advancements made by the lender, or other fees or expenses incurred before the loan's payoff in full, including attorney's fees and costs. It shall not diminish or waive in any way the lender's right under the notes, mortgages, or other loan documents. This letter is for settlement purposes and shall expire and be null and void if not paid in full on or before the payoff Date.

Payment should be sent by wire to:

Bank Name: Valley National Bank
Bank Swift: ■■■■■■■■
Bank ABA/Routing: ■■■■■■■■
Account Name: IBI Falcon High Yield, LP
Account Number: ■■■■■■■

Please Reference this transaction in the written memo. Call to confirm wire instructions to prevent fraud. Contact us if any other method of payment is required.

9 Ahad Ha'am st, Tel Aviv 6129101   ◆   Tel: 972 3 5199968   ◆   Fax: 972 3 5199983   ◆   info@ibi.co.il   ◆   www.ibi.co.il