IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| In re:<br><br>5410 30TH STREET DC LLC<br><br>Debtor. | Case No. 25-19605-LSS<br>(Chapter 11) |

**OPPOSITION TO MOTION TO SHORTEN TIME**

Comes now IBI Falcon US LLC ("IBI Falcon"), by and through undersigned counsel, in opposition to the motion to shorten time, ECF No. 267 (the "Motion to Shorten Time"), filed by 5410 30th Street DC LLC (the "Debtor"), and states as follows:

## I. Introduction

The Debtor executed an engagement agreement with special counsel on September 2, 2026 and then waited 72 days to docket an employment application. Now that an employment application has been filed, the document appears to directly contradict a declaration appended thereto and raises myriad conflict-of-interest questions about the proposed work of an attorney who would be representing both the Debtor and its principal. The application is also devoid of much-needed detail and raises concerns about various potential collateral issues.

All of which is to posit the following: the application in question is going to require thoughtful analysis. That analysis ought not be rushed—much less because of an exigency solely of the Debtor's own making. It is unclear why the Debtor decided to wait 72 days to file the application, but it is clear that the Debtor's own delay does not invite the occurrence of "cause" sufficient to shorten time.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged the Motion to Shorten Time be denied.

## II. Argument: There Does Not Exist Good Cause to Shorten Time

### a. The Debtor Created its Own Temporal Exigency

The Debtor seeks to shorten the response time correlative to an employment application, ECF No. 266 (the "Employment Application"), that was filed nearly two-and-a-half months after the underlying engagement agreement, ECF No. 266-3 (the "Engagement Agreement"), was signed. The Debtor seemingly located proposed special counsel on or before September 2, 2026, executed the Engagement Agreement with proposed special counsel, and then—inexplicably—just waited. Now that the Debtor wishes to use counsel to file suit, though, employment is being sought on an expedited basis. This is not an emergency that merits expediting; this is, rather, a situation of the Debtor's own creation.

The standard to shorten time is "for cause." Fed. R. Bankr. P. 9006(c)(1). As noted by the United States Court of Appeals for the Fifth Circuit:

> Bankruptcy Rule 9006(c) permits the bankruptcy court "for cause shown" in its discretion, with or without motion or notice, to reduce the notice period, and ex parte motions for material reductions in the notice period are routinely granted by bankruptcy courts. That practice greatly increases the potential for the elimination of effective notice of a hearing; and even where notice is received, the time required for preparation of an adequate response is virtually lost, all to the benefit of the movant and to the severe detriment of any party in interest taking a position adverse to that of the movant. . . [B]ankruptcy courts should review ex parte motions to reduce the notice period carefully to be certain that there is, indeed, good cause for the handicap to the respondents and to the court's information-gathering capacity that is likely to result.

*In re Hester*, 899 F.2d 361, 364 n.3 (5th Cir. 1990)

Here, the Debtor is seeking to employ the Dixon Law Firm ("Dixon") *nunc pro tunc* to September 4, 2026. *See* Employment Application, ECF No. 266, at ¶ 11. In furtherance of this retroactive employment, the Debtor shares that Dixon ". . . has rendered services under the engagement since on or about September 4, 2026." *Id.* Yet nowhere does the Debtor explain why the Employment Application is just now being filed.

Between September 4, 2026 and the present, the Debtor has (i) attended a hearing in this Honorable Court, *see* ECF No. 259, and (ii) filed four monthly operating reports, *see* ECF Nos. 257, 258, 261, 263. So it is not as though this case did not exist within the sphere of the Debtor's cognizance during this time period. Yet it was not until November 13, 2026 that the Debtor deigned to seek leave to employ counsel who had apparently started work some 72 days prior.

As a sister court has noted: "the length of the delay in seeking judicial approval of employment affects the analysis of extraordinary circumstances—the longer the delay, the more difficult to explain. Emergency services early in a case followed by prompt application for employment are better explanations than neglect and inattention." *In re Miller*, 620 B.R. 637, 643 (Bankr. E.D. Cal. 2020) (citing *In re B.E.S. Concrete Products, Inc.*, 93 B.R. 228, 232 n.5 (Bankr. E.D. Cal. 1988)).

Indeed, "[t]he prevailing view is that the professional's fees are at risk unless an employment application is promptly filed and approved before services are rendered." *In re Young*, 646 B.R. 779, 781 (Bankr. W.D. Pa. 2022). The United States Court of Appeals for the First Circuit—more than thirty years ago—explained that "[p]rior approval is to be preferred because it permits the bankruptcy court to supervise the administration of the estate more closely, and minimizes the chance that the court will be confronted with a *fait accompli*." *In re Jarvis*, 53 F.3d 416, 421 (1st Cir. 1995).

Here, not only did the Debtor wholly neglect to seek prior approval for the engagement of Dixon but, worse, the Debtor is now asking to have this employment approved after-the-fact on an expedited basis. There simply does not exist any good cause for such, within the embrace of Rule 9006. This is not a situation where the Debtor faces a deadline beyond its control and has acted with diligence and dispatch to meet a correlative obligation; this is a situation where the Debtor

either (i) neglected to file an employment application for 72 days or, worse, (ii) decided to seek some strategic advantage by withholding the employment of counsel, from this Honorable Court and other parties in interest, until the last possible moment.

IBI Falcon will give the Debtor the benefit of assuming this is a matter of negligence and not intentionality. Still, it is well settled that determining whether or not an act of negligence gives rise to "cause" is ". . . at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

Here, though, the Debtor has not offered any information with which to undertake the negligence analysis governed by *Pioneer*. Neither the Motion to Shorten Time nor the Employment Application acknowledge the enormously tardy nature of the relief being sought. And there is thusly a vacuum of information: it is genuinely not clear if the delay has been occasioned by (i) strategy; (ii) the Debtor's failure to notify general reorganization counsel; (iii) an absentminded failure to more timely file the Employment Application; or (iv) something else.

Without such an explanation, though, the Motion to Shorten Time cannot be granted. "[T]he reason for the delay" is literally one of the prongs the *Pioneer* Court has instructed be considered when considering requests such as this under Rule 9006. *Pioneer*, 507 U.S. at 395 (citing *In re Pioneer Inv. Servs. Co.*, 943 F.2d 673, 677 (6th Cir. 1991)).

Unless and until an explanation for the delay is presented, it is respectfully urged this failure is, unto itself, grounds sufficient to deny the Motion to Shorten Time.

**b. The Application is Problematic and Requires Further Analysis**

The failure to abide by the rigors of *Pioneer* in explaining the negligence inviting delay, coupled with the general failure to establish "cause" under Rule 9006, is particularly problematic

insofar as the Employment Application is not a straightforward filing that can be assessed as a run-of-the-mill effort to engage counsel. The Employment Application is, rather, a seemingly-contradictory document that does not appear to be in compliance with governing law and that oftentimes raises more questions than it purports to answer.

The anomalies that need to be assessed, as part of a proper opposition to the Employment Application, are numerous. Without limitation, however, the following eccentricities will merit some degree of study and discussion in an opposition brief:

*First*, as noted above, case law generally disfavors allowing counsel to seek retroactive—or *nunc pro tunc*—employment, especially where there is no established rationale for the delay in petitioning for employment. *See Miller*, 620 B.R. at 643; *Young*, 646 B.R. at 781; *Jarvis*, 53 F.3d at 421. Neither the Debtor nor Dixon endeavors to explain why 72 days elapsed between the Engagement Agreement being signed and the Employment Application being filed. Yet the Employment Application nonetheless seeks to make this engagement retroactive. *See* Employment Application, ECF No. 266, at ¶ 11.

*Second*, the Debtor has utterly failed to explain—in any probative detail—just why Dixon is being engaged. The Employment Application indicates, *inter alia*, "Ms. Williams has advised that she intends for the Dixon Law Firm to file suit, and she has requested the registered agents of Fund That Flip . . . , IBI SBL Investment LP . . . , and IBI Falcon, so that those parties may be served." *Id.* at ¶ 6. There is no other discussion of the nature of the suit to be pursued, though there is boilerplate language about the litigation services being offered. *Id.* at ¶ 7.

So it appears some variety of litigation is being brought, but the Debtor has not shared what causes of action are to be pursued or what—if any—pre-suit analysis has been undertaken. And this matters a great deal since the Debtor will almost assuredly be required to pay the legal fees of

IBI Falcon, under the governing promissory note, and is thusly proposing a course of action that may render the Debtor's estate even more deeply administratively insolvent. Moreover, given the Debtor's prior penchant for the pursuit of frivolous legal theories, there are serious questions as to whether or not what is being proposed here is rooted in good faith or, rather, simply yet another dilatory tactic aimed at harassing and obstructing a secured creditor.

*Third*, it is unclear how much has been paid to Dixon. The Employment Application states, *inter alia*, "Ms. Williams has paid the Dixon Law Firm a retainer of $6,000 from her personal funds on behalf of herself and the Debtor." Employment Application, ECF No. 266, at ¶ 9. The Engagement Agreement, however, provides for a payment of $6,000 *each month*. Engagement Agreement, ECF No. 266-3, at § 1. And the declaration of counsel suggests, *inter alia*, "[a]s of November 10, 2026, the Firm has received $18,000 from Ms. Williams personally. Of that sum, $12,000 has been earned and $6000 remains held in trust." Declaration of Wanda J. Dixon, Esq., ECF No. 266-1, at ¶ 6.

So perhaps Dixon has been paid $6,000.00; perhaps Dixon has been paid $18,000.00, of which $12,000.00 has been earned; perhaps the monies were paid solely for the benefit of the Debtor's principal; and perhaps the monies were paid for the benefit of the Debtor *and* its principal. These are troubling tensions and contradictions—of the four foregoing assertions, no more than two can be true.

*Fourth*, the declaration accompanying the Employment Application cites to a "Disclosure of Potential Conflicts of Interest and Informed Consent to Joint Representation, attached as Exhibit A." Declaration of Wanda J. Dixon, Esq., ECF No. 266-1, at ¶ 8. Yet no such disclosure is actually appended to the declaration. Similarly, the same declaration cites to a "Statement Regarding Conflicts Check." *Id.* Again, though, no such statement is actually appended.

*Fifth*, while it is certainly acceptable for special counsel to not be disinterested, *see* 11 U.S.C. § 327(e), counsel still needs to be free of conflicts of interest, *see In re Marvel Entm't Grp.*, 140 F.3d 463, 476 (3d Cir. 1998) ("(1) Section 327(a), as well as § 327(c), imposes a per se disqualification as trustee's counsel of any attorney who has an actual conflict of interest; (2) the district court may within its discretion--pursuant to § 327(a) and consistent with § 327(c)--disqualify an attorney who has a potential conflict of interest. . ."); Md. Rule 19-301.7.

Since neither the Debtor nor Dixon has disclosed exactly what sort of litigation is going to be pursued, this is exceedingly difficult to gauge. Suffice it to posit, however, the Debtor's principal is a guarantor of the monetary obligation owed to IBI Falcon. So to the extent Dixon proposes to represent both the Debtor and its principal (something expressly provided for in the Engagement Agreement), there is at least a potential—if not an actual—conflict of interest afoot. *See, e.g.*, *In re B.E.S. Concrete Prods., Inc.*, 93 B.R. 228, 234 (Bankr. E.D. Cal. 1988) ("A guarantor on a corporate debt has a natural conflict with the principal and with other guarantors. To be sure, the interests of principal and guarantor coalesce so long as the issue is whether anyone is liable on the claim. They become adverse upon the appearance of a genuine question about who is going to pay. Such an issue, *a fortiori,* exists whenever a key player is in bankruptcy."); *In re Plaza Hotel Corp.*, 123 B.R. 466 (B.A.P. 9th Cir. 1990) ("Horner cannot fully advocate the positions of the owners/guarantors and at the same time protect the best interests of the debtor corporation."); *In re Bryant*, 2011 Bankr. LEXIS 4651, at *6 (Bankr. E.D.N.C. June 15, 2011) ("Indeed, dual representation may be a breeding ground for precisely the conflicts of interest disallowed under § 327(c).") (citing *In re Wynne Residential Asset Mgmt., LLC*, 2009 Bankr. LEXIS 4164 (Bankr. W.D.N.C. 2009); *In re Wiley Brown & Assocs., LLC*, 2006 Bankr. LEXIS 1975 (Bankr. M.D.N.C. 2006)).

To be sure, this is why greater detail is needed as to what claims are to be pursued and why a decision has been made to pursue claims on behalf of multiple plaintiffs. Assuming both the Debtor and its principal are to sue IBI Falcon, it is almost unfathomable that IBI Falcon will not counterclaim against the principal to collect upon her guaranty. That will convert what is presently at least a potential conflict (something that is, unto itself, disqualifying under *Marvel Entm't Grp.*) into a hardened actual conflict, as collection of the guaranty would lessen the Debtor's obligations to IBI Falcon—dollar-for-dollar—and thereby advance the best interests of the Debtor and its creditors.

It is altogether unclear why Dixon is proposing to represent not just the Debtor but, too, the Debtor's principal. Nothing on the docket explains why this perilous arrangement is being suggested. Yet the proposal, in the prism of a case where there exists a guaranty, is almost *per se* disqualifying. And it is accordingly appropriate to permit a greater swath of time to respond to the Employment Application, so these issues may be explored and addressed in greater detail.

*Sixth*, the proposed engagement allows for Dixon to be replaced by literally any attorney—regardless of whether or not that attorney complies with the rigors of Rule 2014, whether or not that attorney has a conflict, and whether or not that attorney is topically competent. Indeed, the Engagement Agreement expressly provides: "I understand that the Firm reserves the right to hire substitute counsel to represent me in any hearings that the Firm's staff attorneys are not available to handle. Substitute counsel will be paid the same hourly fee as the Firm." Engagement Agreement, ECF No. 266-3, at ¶ 9.

Using so-called "stand in counsel" is one thing when the lawyer is drawn from the same firm and accordingly subjected to the same conflicts analysis. But where, as here, Dixon proposes

to use *any* lawyer as a substitute at *any* hearing (including a trial), this is not a matter of efficiency so much as a loophole that swallows the whole of section 327(c) and Rule 2014.

## III. Conclusion

WHEREFORE, IBI Falcon respectfully prays this Honorable Court (i) deny the Motion to Shorten Time; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: November 15, 2026

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for IBI Falcon US LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of November, 2026, a copy of the foregoing was served electronically upon filing via the ECF system, with copies to:

- Deirdre Theresa Johnson dtjesq@dtjohnsonlaw.com
- Courtney L. Morgan courtney.l.morgan@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- US Trustee - Greenbelt USTPRegion04.GB.ECF@USDOJ.GOV
- Maurice Belmont VerStandig mac@mbvesq.com, lisa@mbvesq.com;mahlon@dcbankruptcy.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

/s/ Maurice B. VerStandig
Maurice B. VerStandig